IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN,<br><br>   Plaintiffs,<br><br> v.<br><br>BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,<br><br>   Defendants. | Civil Case No. 1:17-cv-2041-RJL |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' SPECIAL MOTION TO DISMISS
UNDER THE D.C. ANTI-SLAPP ACT**

## INTRODUCTION

Plaintiffs—three of Russia's wealthiest oligarchs—seek money from Defendants because they commissioned investigative research from a former British intelligence officer, Christopher Steele. That research resulted in a series of reports, including the one at issue in this suit, Company Intelligence Report 2016/112 ("CIR 112"), which describes the relationship between the Kremlin, Plaintiffs, and a company Plaintiffs control, the Alfa Group.  CIR 112 was published by BuzzFeed, a media outlet, along with a series of other intelligence reports, which have become known in the media as "the Dossier."  Other of the reports in the Dossier related to Donald Trump's connections to Russia and Russian interference in the U.S. 2016 presidential election. This is the exact type of case targeted by D.C.'s law on strategic lawsuits against public participation ("SLAPP"); the relationship between the conduct alleged to be defamatory and "advocacy on issues of public interest" could not be more obvious.

As we demonstrate in Section I below, Defendants easily make the required showing to invoke the protections of D.C.'s Anti-SLAPP Act. And while the D.C. Circuit ruled in *Abbas v. Foreign Policy Group, LLC*, 738 F.3d 1328 (D.C. Cir. 2015) that the protections of the Act did not extend to diversity-jurisdiction suits brought in federal court, we respectfully submit that decision has since been overtaken by the D.C. Court of Appeals' ruling in *Competitive Enterprise Institute v. Mann*, 150 A.3d 1213 (D.C. 2016), as we explain in Section II. Because Plaintiffs cannot show that their defamation claim is likely to succeed on the merits, as we explain in Section III, the case must be dismissed with prejudice.

## ARGUMENT

A strategic lawsuit against public participation ("SLAPP") is "an action 'filed by one side of a political or public policy debate aimed to punish or prevent the expression of opposing

points of view.'" *Mann*, 150 A.3d at 1226 (quoting Council of the Dist. of Columbia, Report of Cmte. on Pub. Safety and the Jud. on Bill 18-893 (Nov. 18, 2010) ("Report on Bill 18-893") at 1). The Anti-SLAPP Act allows for quick resolution of a lawsuit where the defendant can make "a prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502(b). Once that showing is made, dismissal is warranted unless the plaintiff "demonstrates that the claim is likely to succeed on the merits." *Id*.

I. **THE COMPLAINT ESTABLISHES THAT DEFENDANTS WERE ENGAGED IN ADVOCACY ON ISSUES OF PUBLIC INTEREST**

To show a threshold entitlement to dismissal under the Anti-SLAPP Act, Defendants must make "a prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502(b). The Act defines "an act in furtherance of the right of advocacy on issues of public interest" as, *inter alia*, "[a]ny written or oral statement made . . . [i]n a place open to the public or a public forum in connection with an issue of public interest." *Id.* § 16-5501(1)(A)(ii). Alternatively, the concept comprises "[a]ny other expression or expressive conduct that involves . . . communicating views to members of the public in connection with an issue of public interest." *Id.* § 16-5501(1)(B). An "issue of public interest" is in turn defined as "an issue related to health or safety; environmental, economic, or community well-being; the District government; a public figure; or a good, product, or service in the market place." *Id.* § 16-5501(3). That definition clarifies that "private interests" are excluded, meaning "statements directed primarily toward protecting the speaker's commercial interests rather than toward commenting on or sharing information about a matter of public significance." *Id.* Finally, an "act in furtherance of the right to advocacy on issues of public interest" also includes statements made "[i]n connection with an issue under consideration

2

or review by a legislative, executive, or judicial body[].” *Id.* § 16-5501(1)(A)(i).  A defendant whose acts satisfy any one of these three definitions is entitled to dismissal, absent the plaintiff demonstrating the likelihood of success on the merits.

The conduct alleged in the Complaint clearly satisfies at least two of these definitions: (1) statements on an issue of public interest; and (2) expressive conduct on an issue of public interest.  To be clear, Defendants do not accept the Complaint's allegations as true. And, as explained in Defendants' Motion to Dismiss for Failure to State a Claim, Plaintiffs' allegations fail for several reasons, including failure to allege statements capable of defamatory meaning, failure to adequately allege actual malice and/or failure to allege actionable publication, among other defects.  Nonetheless, the allegations of the Complaint, without more, demonstrate why the Plaintiffs' claim is squarely covered by D.C.'s Anti-SLAPP Act.

Plaintiffs, as three of the most internationally prominent and powerful oligarchs in Russian history, have a long-standing relationship with the Kremlin and President Putin.  The Complaint quotes CIR 112's assertions that "the leading figures in Alpha are currently on very good terms with PUTIN" and that "[s]ignificant favors continued to be done in both directions" while "Fridman and Aven continued to give information advice to PUTIN on foreign policy[]." Compl. ¶ 22. The Complaint also quotes sections of the report that state Plaintiffs had an Alfa official "deliver large amounts to illicit cash" to Putin in the 1990s and that Alfa held "kompromat" on Putin "and his corrupt business activities from the 1990s." *Id.* ¶¶ 24, 27. Thus, Plaintiffs contend that the allegedly defamatory statements concerned Plaintiffs' involvement in "a highly inappropriate, and even criminal, relationship with Vladimir Putin," including "acts of criminal bribery." *Id.* ¶¶ 23, 25.

3

The nature of the relationship between the Russian oligarchs and the Kremlin has been the subject of intense public debate for decades. *See* Mem. of P.&A. in Supp. of Defs.' Mot. to Dismiss for Failure to State a Claim at 6-15, 26-30 ("Motion to Dismiss").[1]  As three of the most famous oligarchs in Russian history, Plaintiffs' relationship with Putin is also an issue of public interest.  *Id.*  More specifically, alleged bribery of a high-level official clearly implicates "economic" and "community well-being" within the meaning of the D.C. Anti-SLAPP Act.  The Plaintiffs are also public figures, as explained in Defendants' Motion to Dismiss, independently satisfying the statute's requirements.  *See id.* at 27-30.

When BuzzFeed published CIR 112 on the Internet, the reporting was made public to the world, as Plaintiffs have alleged. Compl. ¶ 31.  Plaintiffs' focus on the intensity of the news coverage the Dossier received, *id.* ¶ 8, itself underscores that, according to the Complaint, Defendants' statements were "about a matter of public significance."  D.C. Code § 16-5501(3).

And while Defendants contest Plaintiffs' allegations that the content or text of CIR 112 has anything to do with the 2016 presidential election, *see, e.g.*, Compl. ¶¶ 23, 28, those allegations plainly bring the action into the purview of the Anti-SLAPP Act. After all, there are a host of governmental investigations into Russian involvement in the election, including by multiple congressional bodies, the FBI, and special counsel for the Department of Justice.

Simply put, there can be no reasonable dispute that Defendants' alleged conduct involved "advocacy on issues of public interest" as defined under the Act.

## II.  THE ANTI-SLAPP ACT APPLIES IN FEDERAL COURT

"The 'broad command of *Erie*,' of course, is that 'federal courts are to apply state substantive law and federal procedural law' when sitting pursuant to their diversity jurisdiction."

---

[1] We incorporate by reference the Motion to Dismiss, in particular to demonstrate the widespread public attention and media scrutiny that this public controversy has received.

*Burke v. Air Serv. Int'l, Inc.*, 685 F.3d 1102, 1108 (D.C. Cir. 2012) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). In determining whether to apply a state law, the federal district court must follow two steps. "The 'first question' is whether there is a Federal Rule or statute, the 'scope' of which is 'sufficiently broad to control the issue before the Court.'" *Burke*, 685 F.3d at 1107-08 (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980)); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 421 (2010) ("In some instances, the 'plain meaning' of a federal rule will not come into 'direct collision' with the state law, and both can operate.") (Stevens, J., concurring) (quoting *Walker*, 446 U.S. at 749, 750 n.9). Next, the court must determine whether the state law is substantive or "'outcome-determinative' in the relevant sense," that is, "whether the failure to enforce state law 'would disserve the so-called twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Burke*, 685 F.3d at 1108 (quoting *Hanna*, 380 U.S. at 468; *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 n.6 (1988)).

The D.C. Circuit in *Abbas* drew two conclusions about D.C. law, which drove its holding that D.C.'s Anti-SLAPP Act does not apply in federal diversity actions. Of course, interpretation of D.C. law is ultimately the province of the D.C. Court of Appeals, not the D.C. Circuit. *See Easaw v. Newport*, 253 F.Supp.3d 22, 34-35 (D.D.C. 2017) (where "the D.C. [Court of Appeals] issues a decision that contradicts the D.C. Circuit's prior interpretation of D.C. law," the district court "should apply the D.C. [Court of Appeals'] more recent expression of the law"). Both conclusions by the Circuit Court were rejected as a matter of D.C. law by the D.C. Court of Appeals in *Mann*. 150 A.3d at 1232-41 & n.32. Thus, *Abbas* no longer bars application of the Act in federal court.

5

First, the *Abbas* Court ruled that the Anti-SLAPP Act's "likely to succeed" standard did *not* mirror FRCP 56's summary judgment standard. 783 F.3d at 1335. This conclusion was crucial to *Abbas*'s holding, as the Court expressly recognized "[a]n interesting issue could arise if a State anti-SLAPP act did in fact exactly mirror Federal Rules 12 and 56." 783 F.3d at 1335 n.3. After all, if the standards of the Act and FRCP 56 are the same, there is no "direct collision": they "'can exist side by side, each controlling its own intended sphere of coverage without conflict.'" *Burke*, 685 F.3d at 1108 (quoting *Walker*, 446 U.S. at 752; alterations omitted). The D.C. Court of Appeals in *Mann* directly refuted *Abbas*'s understanding of the differentiation between the Act and FRCP 56: "As concerns the standard to be employed by the court in deciding whether to grant the motion, however, the question is substantively the same: whether the evidence suffices to permit a jury to find for the plaintiff." 150 A.3d at 1238 n.32 (addressing *Abbas*); *see also id.* ("*Abbas* recognized that at the time, this court 'has never interpreted the D.C. Anti–SLAPP Act's likelihood of success standard to simply mirror the standards imposed by' Federal Rule 56. We do so now."); *id.* at 1232 ("[W]e conclude that in considering a special motion to dismiss, the court evaluates the likely success of the claim by asking whether a jury properly instructed . . . could reasonably find that the claim is supported in light of the evidence that has been produced or proffered in connection with the motion."). Indeed, the *Mann* court stated dismissal was warranted under the "likely to succeed" standard only "if the court can conclude that the claimant could not prevail as a *matter of law*, that is, after allowing for the weighing of evidence and permissible inferences by the jury," and followed that assertion by citing a decision that addressed summary judgment. *Id.* at 1236 (emphasis in original; citing *Mixon v. Wash. Metro. Area Transit Auth.*, 959 A.2d 55, 58 (D.C. 2008)).

Second, the *Abbas* Court, relying on the D.C. Court of Appeals' opinion in *Doe No. 1 v. Burke*, 91 A.3d 1031, 1036 (D.C. 2014), concluded that the Act did not create a substantive right, but rather only a "procedural mechanism."  That conclusion, too, was rejected by *Mann*. As the D.C. Court of Appeals stated: "[e]nacted in 2012, the D.C. Anti–SLAPP Act was designed to protect targets of such meritless lawsuits by creating '***substantive rights*** with regard to a defendant's ability to fend off' a SLAPP." 150 A.3d at 1226 (quoting Report on Bill 18-893, at 1) (emphasis added); *see also id.* at 1235 ("We begin with what the legislature said it was trying to accomplish: to deter SLAPPs by 'extending ***substantive rights*** to defendants in a SLAPP, providing them with the ability to file a special motion to dismiss that must be heard expeditiously by the court.'") (quoting Report on Bill 18-893, at 4) (emphasis added, alteration omitted); *id.* at 1238 n.32 ("Implicit in *Abbas* is that the special motion to dismiss is only procedural in nature rendering it inapplicable in federal court sitting in diversity. [But o]ther federal appellate courts have come to a different conclusion and applied similar state Anti–SLAPP procedures.") (citations omitted).

The D.C. Court of Appeals emphasized that *Mann* was "the first case presented on appeal that raises the proper interpretation and application of the Act's special motion to dismiss."  150 A.3d at 1227. So the *Abbas* Court had little guidance in its effort to interpret state law. *See also Mann*, 150 A.3d at 1237 (acknowledging that the "functional interpretation of the statutory language is not evident from the face of the statute alone").  The D.C. Court of Appeals expressly recognized that "[t]his court's interpretation of the standard . . . will no doubt factor into future analysis of the dicta in *Abbas* concerning the applicability of the Anti-SLAPP Act in litigation brought in federal courts."  *Id.* at 1238 n.32.  "When a decision by the D.C. [Court of Appeals] clearly and unmistakably renders inaccurate a prior decision by the D.C. Circuit

7

interpreting D.C. law, this Court should apply the D.C. [Court of Appeals'] more recent expression of the law." *Easaw*, 253 F. Supp. 3d at 35. That is exactly what has happened here.

Given that *Abbas*—premised on an incorrect understanding of the Anti-SLAPP Act—is no longer good law, this Court should instead revert to the legion authority within this federal district and across the nation that such laws are applicable in federal diversity actions. At least five courts in this district, pre-*Abbas*, applied D.C.'s Anti-SLAPP Act in diversity actions, including this Court. *Sherrod v. Breitbart*, 843 F. Supp. 2d 83, 84-85 (D.D.C. 2012) (Leon, J.); *Farah v. Esquire Magazine, Inc.*, 863 F. Supp. 2d 29, 36 & n.10 (D.D.C. 2012) (Collyer, J.); *Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 254 (D.D.C. 2013) (Walton, J.); *Abbas v. Foreign Policy Grp.*, 975 F. Supp. 2d 1, 10-11 (D.D.C. 2013) (Sullivan, J.) (noting that the D.C. Circuit in affirming *Sherrod* "impli[ed] in its holding . . . that the statute applies in federal court"); *Forras v. Rauf*, 39 F. Supp. 3d 45, 52 (D.D.C. 2014) (Rothstein, J.).[2] Decisions from other circuit courts have also held that analogous anti-SLAPP laws apply in federal court. *See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 970-73 (9th Cir. 1999); *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 168-69 (5th Cir. 2009); *Godin v. Schencks*, 629 F.3d 79, 86-92 (1st Cir. 2010).

---

[2] As far as counsel is aware, the lone exception among pre-*Abbas* decisions was *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 101-104 (D.D.C. 2012) (Wilkins, J.). Notably, that decision distinguished case law from other circuits by reasoning that those "other courts have concluded that the specific state dismissal procedures operated essentially the same as Rules 12 and 56." *Id.* at 109. It thus found "the cases are distinguishable and not necessarily inconsistent with the analysis of this Court." *Id.* In that way, the *3M* decision relies on the same incorrect premise as *Abbas*. Moreover, subsequent decisions recognized but declined to follow *3M Co. See Forras*, 39 F. Supp. 3d at 52 ("*3M Co.* conflicts with the weight of authority."); *Boley*, 950 F. Supp. 2d at 254 (same).

Defendants recognize that Judge Huvelle, in a recent decision, rejected the arguments advanced here for why *Abbas* no longer governs. *See* Mem. Op., Doc. 16, *Deripaska v. AP*, Civ. No. 17-00913 (ESH) (Oct. 17, 2017). That decision is not binding on this Court, and Defendants respectfully submit it was incorrect. It found the *Mann* decision did not "clearly and unmistakably" alter the interpretation of the law, a finding that cannot be squared with extensive language quoted herein. The entire opinion was also arguably dicta, in that Judge Huvelle separately granted the Defendant's Rule 12 motion to dismiss. *See Mann*, 150 A.3d at 1238 n.32 (classifying *Abbas*'s holding on the applicability of the Anti-SLAPP Act as dicta because the complaint was separately dismissed with prejudice under Rule 12(b)(6)).

Application of the Act, as now authoritatively construed by the D.C. Court of Appeals, furthers the "twin aims" of *Erie* by reducing disuniformity in adjudication of suits between federal and D.C. Superior Court. To not apply the law would mean that speakers receive different levels of protection depending on where the action is filed (which may, in turn, simply depend on where the parties happen to live or on a plaintiff's sophistication in shopping for the most convenient forum). *See Newsham*, 190 F.3d at 973 ("Plainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum. Conversely, a litigant otherwise entitled to the protections of the Anti–SLAPP statute would find considerable disadvantage in a federal proceeding. This outcome appears to run squarely against the 'twin aims' of the *Erie* doctrine."). This Court has already found that the Anti-SLAPP Act is "substantive" (as opposed to "purely procedural . . . such that the *Erie* doctrine bars its application in federal court") by relying on the same legislative history that the *Mann* court emphasized. *See Sherrod*, 843 F. Supp. 2d at 85 & n.4. Without *Abbas* to dictate a contrary conclusion, there is no reason to depart from this Court's prior decision, which upheld the applicability of the Act in federal court.

### III.  PLAINTIFFS CANNOT SHOW THE DEFAMATION CLAIM IS LIKELY TO SUCCEED ON THE MERITS

Because Defendants have made the required prima facie showing, the Court must dismiss the Complaint with prejudice unless Plaintiffs can demonstrate "the claim is likely to succeed on the merits." D.C. Code § 16-5502(b). Defendants' concurrently-filed Motion to Dismiss for Failure to State a Claim sets forth numerous fatal flaws in Plaintiffs' defamation claim. Briefly:

- With one possible exception, none of the statements in the report are defamatory, because they do not state actual facts, are unverifiable, and/or are not reasonably capable of defamatory meaning.

9

- As noted above, at least Messrs. Fridman and Aven are public figures in relation to the topics discussed in the report, and therefore must demonstrate actual malice for liability to attach; the complaint wholly fails to allege malice.

- Plaintiffs fail to adequately allege that Defendants published the report.

- Publication of the report is protected under the neutral reportage doctrine.

In addition, as the *Mann* decision explained, the "likely to succeed" standard mirrors FRCP 56. Therefore, it requires a plaintiff to "present evidence—not simply allegations" that would be "legally sufficient to permit a jury . . . to reasonably find in the plaintiff's favor." 150 A.3d at 1221. As Plaintiffs cannot provide such evidence, *Mann* dictates dismissal, with prejudice.

## CONCLUSION

For the reasons set forth above, the Special Motion to Dismiss should be granted, the Complaint dismissed with prejudice, and briefing ordered on an application for Defendants' fees and costs.

Dated:  November 21, 2017                                      Respectfully submitted,

/s/ *William W. Taylor, III*
William W. Taylor, III (D.C. Bar No. 84194)
Steven M. Salky (D.C. Bar No. 360175)
Rachel F. Cotton (D.C. Bar No. 997132)
**ZUCKERMAN SPAEDER LLP**
1800 M Street, NW, Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
wtaylor@zuckerman.com
ssalky@zuckerman.com
rcotton@zuckerman.com

*Counsel for Defendants BEAN LLC, a/k/a FUSION GPS and Glenn Simpson*