UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------

MIKHAIL FRIDMAN, PETR AVEN, and ) 
GERMAN KHAN, )
                             )  Case No. 1:17-cv-02041 (RJL)
           *Plaintiffs,* )
                           )
              v. )
                           )
BEAN LLC (a/k/a FUSION GPS) and )
GLENN SIMPSON, )
                           )
           *Defendants.* )

------------------------------------------------------

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS'
SPECIAL MOTION TO DISMISS THE COMPLAINT
<u>BASED ON THE D.C. ANTI-SLAPP STATUTE</u>**

CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.:   212-238-8647
Fax:   212-732-3232
Email: lewis@clm.com

*Attorneys for Plaintiffs
  Mikhail Fridman, et al.*

*Of Counsel:*

   Alan S. Lewis (#NY0252)
   John J. Walsh
   Judith Wallace

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 3

POINT I
THE MOTION MUST BE DISMISSED BECAUSE IT IS UNTIMELY ............................... 3

POINT II
THE SPECIAL MOTION PROCEDURE IS NOT AVAILABLE IN FEDERAL
COURT ......................................................................................................................... 5

    A. *The Holding of Abbas Unequivocally Bars Application of the D.C. Anti-*
    *SLAPP Act in Federal Diversity Cases Because the Act "Answers the*
    *Same Question"as the Federal Rules of Civil Procedure, but Does So*
    *Differently* ............................................................................................................. 5

    B. *The Rulings by the D.C. Circuit in Abbas and by Judge Huvelle in*
    *Deripaska on the Anti-SLAPP Law Are the Holdings of Those Courts*
    *(Not Dicta)* ........................................................................................................... 10

    C. *The Potential for Forum Shopping Does Not Justify Departure From*
    *Abbas* .................................................................................................................... 11

POINT III
IN THE ALTERNATIVE,  DEFENDANTS' MOTION SHOULD BE DENIED ON
THE MERITS ................................................................................................................ 11

    A. *The D.C. Anti-SLAPP Act Was Not Enacted to Immunize Defamation of*
    *Private Citizens by Sophisticated Political Operatives* ...................................... 12

    B. *Plaintiffs Did Not Thrust Themselves Into the Political Campaign* ................... 13

    C. *Defendants Cannot Meet Their Burden to Assert a Prima Facie Case of*
    *Entitlement to the Protections of the Act by Relying on Allegations in the*
    *Amended Complaint That They Dispute* .............................................................. 15

    D. *By Relying on the Allegations in the Amended Complaint, Defendants*
    *Have Conceded the Sufficiency of the Allegation of the Publication of the*
    *Statements at Issue for the Purposes of the 12(b)(6) Motion* .............................. 17

i

    E.    *Plaintiffs Have Demonstrated a Likelihood of Success on the Merits of
        Their Defamation Case* ........................................................................................18

POINT IV
    PLAINTIFFS ARE ENTITLED TO DISCOVERY BEFORE BEING REQUIRED
    TO FULLY RESPOND TO AN ANTI-SLAPP MOTION ON THE MERITS......................18

POINT V
    THE D.C. ANTI-SLAPP ACT ALSO CONFLICTS WITH FEDERAL RULE 38
    AND THE SEVENTH AMENDMENT OF THE U.S. CONSTITUTION ...........................21

CONCLUSION..........................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3M Co. v. Boulter,*
   842 F. Supp. 2d 85 (D.D.C. 2012)................................................................6, 7, 9

*\*Abbas v. Foreign Policy Group, LLC,*
   783 F.3d 1328 (D.C. Cir. 2015).................................................................*passim*

*Abbas v. Foreign Policy Group, LLC,*
   975 F. Supp. 2d 1 (D.D.C. 2013).......................................................................14

*Argentine Republic v. Nat'l Grid Plc,*
   637 F.3d 365 (D.C. Cir. 2011), *cert. denied*, 132 S. Ct. 761 (2011) ........................................4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...........................................................................................6

*Byrd v. Blue Ridge Rural Electric Co-op,*
   356 U.S. 525 (1958). .......................................................................................21

*Callaway v. Hamilton Nat. Bank of Wash.,*
   195 F.2d 556 (D.C. Cir. 1952)...........................................................................7

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,*
   494 U.S. 558 (1990)..........................................................................................21

*Competitive Enter. Inst. v. Mann,*
   150 A.3d 1213 (D.C. 2016) ............................................................................*passim*

*Davis v. Cox,*
   183 Wn.2d 269 (Wash. 2015)..........................................................................21

*Democracy Partners v. Project Veritas Action Fund,*
   No. 17-1047, 2018 U.S. Dist. LEXIS 1270 (D.D.C. Jan. 4, 2018)..........................10

*Deripaska v. The Associated Press,*
   No. 17-00913, 2017 U.S. Dist. LEXIS 171512 (D.D.C. Oct. 17, 2017) ..............................9, 10

*Deripaska v. The Associated Press,*
   No. 17-00913, Memorandum Decision (D.D.C. Oct. 17, 2017) ...............................9

*Doe No. 1 v. Burke,*
   91 A.3d 1031 (D.C. 2014) ...............................................................................15, 17

iii

*Easaw v. Newport,*
   253 F. Supp. 3d 22 (D.D.C. 2017)..................................................................................7

*Farah v. Esquire Mag., Inc.,*
   863 F. Supp. 2d 29 (D.D.C. 2012)...........................................................................13, 20

*\*Herbert v. Lando,*
   441 U.S. 153 (1979)..................................................................................................3, 20

*In re Gawker Media LLC,*
   571 B.R. 612 (S.D.N.Y. Bankr. 2017).....................................................................19, 21

*Joseph Oat Holdings, Inc. v. RCM Digesters, Inc.,*
   2007 U.S. Dist. LEXIS 62879 (D.N.J. Aug. 24, 2007) ..............................................22

*Metabolife International v. Wornick,*
   264 F.3d 832 (9th Cir. 2001) .........................................................................................19

*New York Times Co. v. Sullivan,*
   376 U.S. 254 (1964)........................................................................................................20

*Newmyer v. Sidwell Friends Sch.,*
   128 A.3d 1023 (D.C. 2015) .........................................................................................3, 16

*Opinion of the Justices (SLAPP Suit Procedure),*
   138 N.H. 445 (N.H. 1994) .............................................................................................21

*Park v. Brahmbhatt,*
   2016 D.C. Super. LEXIS 16 (D.C. Super. Ct. Jan. 19, 2016) ............................14, 16

*Ross v. Bernhard,*
   396 U.S. 531 (1970)........................................................................................................22

*Salve Regina College v. Russell,*
   499 U.S. 225 (1991).........................................................................................................8

*\*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.,*
   559 U.S. 393 (2010)................................................................................................5, 9, 11

*\*Sherrod v. Breitbart,*
   720 F.3d 932 (D.C. Cir. 2013) ...............................................................................2, 4, 9

*Sherrod v. Breitbart,*
   843 F. Supp. 2d 83 (D.D.C. 2012) ..................................................................................9

*Simler v. Conner,*
   372 U.S. 221 (1963).........................................................................................................21

iv

*Travelers Cas. Ins. Co. of Am. v. Hirsh,*
    831 F.3d 1179 (9th Cir. 2016) ...........................................................................................7

*Tull v. United States,*
    481 U.S. 412 (1987)...........................................................................................................21

*Unity Healthcare, Inc. v. County of Hennepin,*
    308 F.R.D. 537 (D. Minn. 2015) .......................................................................................19

**STATUTES**

D.C. Anti-SLAPP Act of 2010, D.C. Code § 16-5501, *et seq*................................................*passim*

**RULES**

Fed. R. Civ. P. 12................................................................................................................*passim*

Fed. R. Civ. P. 56................................................................................................................*passim*

**OTHER AUTHORITIES**

8 *Moore's Federal Practice*, § 38 (Matthew Bender 3d Ed.)...................................................21, 22

Council of the District of Columbia, Committee on Public Safety and the Judiciary,
    Committee Report on Bill 18-893, the "Anti-SLAPP Act of 2010".........................................12

George W. Pring, *SLAPPS: Strategic Lawsuits against Public Participation,*
    7 PACE ENV. L. REV. 3, 3(1989)) ........................................................................................12

**INTRODUCTION**

Plaintiffs, two of whom are citizens of Israel and Russia and one of whom is a citizen of Russia, are owners of various businesses that operate internationally. They have sued Defendants for defamation based on Defendants' publication of statements that accuse Plaintiffs of various kinds of misconduct.[1] For example, one of those statements accuses two of the plaintiffs of bribery, an accusation that Defendants grudgingly admit "could be potentially defamatory."[2] The defamatory statements are contained in a report that, in combination with several other reports, has become known as the "Trump Dossier" and/or the "Steele Dossier."

Plaintiffs' Amended Complaint alleges that Defendants, in their role as political opposition researchers, published the reports, including the one containing defamatory statements about Plaintiffs, as an outgrowth of consulting work for a private client—a U.S. political campaign. Am. Compl. at ¶¶ 9–16. Defendants, rather than answering the complaint, responded with two motions to dismiss. The first [addressed by Plaintiffs in a separate memorandum] argues that Plaintiffs have failed to state a claim. The second motion [to which this memorandum is addressed] contends that Defendants' alleged defamatory statements are protected under a local statute that immunizes from suit certain acts of "public participation."[3]

The statute on which Defendants rely is the District of Columbia's "Anti-SLAPP" law[4] under which a defendant who makes a *prima facie* showing that he has been sued for an "act in furtherance of the right of advocacy on issues of public interest" may obtain a quick dismissal if

---

[1] *See* Amended Complaint, filed December 12, 2017 [Dkt. 17] (hereafter "Am. Compl.") ¶ 1.

[2] Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the Amended Complaint for Failure to State a Claim, filed January 29, 2018 [Dkt. 20] (hereafter "Defendants' Motion to Dismiss MPA") at 22.

[3] Defendants' Special Motion to Dismiss the Amended Complaint Pursuant to the D.C. Anti-SLAPP Act, filed January 29, 2018 [Dkt. 19] (hereafter "Defendants' Special Motion MPA").

[4] The District of Columbia Anti-SLAPP Act of 2010, D.C. Code § 16-5501, *et seq.* ("Anti-SLAPP Act" or "Act").

he moves within 45 days of service of the claim.[5]   In that circumstance, dismissal, with

prejudice, is required unless the plaintiff "demonstrates that the claim is likely to succeed on the

merits."

Relying on that statute, Defendants argue that their inclusion of the defamatory

statements about Plaintiffs in the Steele Dossier was *an act in furtherance of the right of public

advocacy*—even though Defendants *dispute that they ever published* the defamatory statements.

*See* Motion to Dismiss MPA at 1 (disputing publication); Defendants' Special Motion MPA at 5,

n.1 ("incorporat[ing]] by reference" the Motion to Dismiss).

For a number of independent reasons, Defendants' Anti-SLAPP motion must be denied.

*First*, Defendants' motion is untimely because it was not filed within 45 days of service of the

Amended Complaint.  *See Sherrod v. Breitbart*, 720 F.3d 932, 937-938 (D.C. Cir. 2013).

*Second*,  a motion to dismiss under the Anti-SLAPP Act is not available in federal court because

the Act's procedures are inconsistent with the Federal Rules of Civil Procedure.  *Abbas v.

Foreign Policy Group, LLC*, 783 F.3d 1328, 1332 (D.C. Cir. 2015).   Moreover, as explained

below and contrary to Defendants' argument, the holding of *Abbas* has not been "overtaken" by

the decision of the D.C. Court of Appeals in *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213

(D.C. 2016).  *Third*, even if it were permissible for this Court to entertain a motion under the

Anti-SLAPP Act, the motion should be denied because Defendants have not met their

affirmative burden to make the *prima facie* case required by the Anti-SLAPP Act for entitlement

to its procedures.  Furthermore, Plaintiffs' defamation claims are not SLAPP claims because

---

[5] A number of states have similar statutes.

Plaintiffs seek to vindicate their individual reputations through the lawsuit, not to punish or prevent the expression of opposing points of view regarding any political or public policy debate. Moreover, even if Plaintiffs were required to show that they are likely to succeed on the merits of their claims, they have done so. *Finally*, even if the Court were to hold that Defendants have somehow surmounted all of those obstacles and made out a *prima facie* case, the result should not be dismissal, but rather the commencement of a court-ordered discovery process. At minimum, that process would require the "targeted discovery" envisioned by the Act in those instances in which a Defendant makes a *prima facie* case. D.C. Code § 16-5502(c)(2). Moreover, constitutional considerations require a discovery process broader than the targeted discovery provided for by the Act. *See Herbert v. Lando, et al.*, 441 U.S. 153, 174 (1979) (holding that the First Amendment cannot be used as an "impenetrable barrier" to foreclose inquiry where there is a "specific claim of injury arising from a publication that is alleged to have been knowingly or recklessly false," i.e., "actual malice").

## ARGUMENT

### POINT I

### THE MOTION MUST BE DISMISSED BECAUSE IT IS UNTIMELY

The D.C. Anti-SLAPP Act imposes a strict 45-day limitations period, running from service of the claim, for the making of a motion under the Act. *See* D.C. Code § 16-5502(a) ("A party may file a special motion to dismiss any claim arising from an act in furtherance of the right of advocacy on issues of public interest within 45 days after service of the claim."); *see also Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1043 n. 17 (D.C. 2015) (describing the deadline as "no later than 45 days after service of the claim") (internal citation omitted). Defendants' motion, filed on January 29, 2018—*48* days after service of the complaint—was

outside of that limitations period.  Hence, the Motion to Dismiss based on the Anti-SLAPP Act must be denied.

The Court's Order, dated December 27, 2017, extending Defendants' time to respond to the Amended Complaint to January 29, 2018,  did not extend the 45-day deadline of the D.C. Act.  Instead, when, as here, a court exercises authority afforded by Federal Rule of Civil Procedure 6(b) to extend time, it is limited to "extend[ing] time limits imposed by the court itself or by other Federal Rules, *but not by statute*." *Argentine Republic v. Nat'l Grid Plc*, 637 F.3d 365, 368 (D.C. Cir. 2011) (*per curiam*), *cert. denied*, 132 S. Ct. 761 (2011) (emphasis added). Were there even a scintilla of doubt about how this principle applies to the particular statute in question, the D.C. Anti-SLAPP Act, the D.C. Circuit has resolved it to make it clear that the 45-day limitations period is not extended by a court order of the precise kind issued by this Court. In *Sherrod*, a pre-*Abbas* decision, the defendant argued that his Anti-SLAPP motion, submitted more than 45 days after the claim was served, was timely because the District Court's order granting an extension of time to respond to the complaint also enlarged the statutory deadline for filing the Anti-SLAPP motion.  720 F.3d at 932, 938.  The D.C. Circuit rejected that argument. It held that "[m]otions under Federal Rule of Civil Procedure 6(b) cannot extend statutory time limits" and that therefore "the district court's granting of the 'Consent Motion' to extend time pursuant to Rule 6(b) could not have extended the D.C. statute's 45-day limit." *Id.* Similarly, in this case, the order extending Defendants' time to respond to the Amended Complaint did not extend the statutory 45-day deadline of the D.C. Anti-SLAPP Act.  Defendants' motion must therefore be denied as untimely.

## POINT II

## THE SPECIAL MOTION PROCEDURE IS NOT AVAILABLE IN FEDERAL COURT

**A.**  *The Holding of Abbas Unequivocally Bars Application of the D.C. Anti-SLAPP Act in Federal Diversity Cases Because the Act "Answers the Same Question" as the Federal Rules of Civil Procedure, but Does So Differently*

As the United States Court of Appeals for the D.C. Circuit has held, a special motion to dismiss based on the D.C. Anti-SLAPP Act is simply not cognizable in federal court. *Abbas*, 783 F.3d at 1334 (holding that "we may not apply the D.C. Anti-SLAPP Act's special motion to dismiss provision").

The core reason why the Anti-SLAPP Act may not be applied in federal court is that, in many ways, it answers some of the same procedural questions as the Federal Rules of Civil Procedure—but answers them differently.  That is fatal to the application of the Anti-SLAPP Act in federal court because a "federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Abbas*, 783 F.3d at 1333 (*quoting Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-99 (2010)).[6]

Two of the Federal Rules of Civil Procedure that speak to the same broad subject as the D.C. Anti-SLAPP Act are Rules 12 and 56.  *See Abbas*, 783 F.3d at 1335 (holding that the special motion to dismiss provision "answers the same question about the circumstances under which a court must grant pre-trial judgment to defendants" that the federal rules answer, but "is different from and more difficult for plaintiffs to meet than the standards imposed by Federal Rules 12 and 56").

---

[6]  There is no claim here that the pertinent Federal Rules of Civil Procedure violate the Rules Enabling Act.

The multiple ways in which Anti-SLAPP procedures differ from the federal rules are obvious, but we nevertheless summarize some of them here.  First, with regard to Rule 12, the "special motion" procedure unquestionably "answers the same question" as that rule.  "[U]nder Federal Rule 12(b)(6), a plaintiff can overcome a motion to dismiss by simply alleging facts sufficient to state a claim that is plausible on its face."  *Id.* at 1334 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  But "the D.C. Anti-SLAPP Act nullifies that entitlement in certain cases" by requiring a plaintiff not only to show that he has plausibly alleged a claim, but also, to show prior to discovery that that claim is likely to succeed on the merits.  In that way, the Act "conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial."  *Id.*

The Anti-SLAPP Act is also more onerous for Plaintiffs than Rule 56.  The Act's "likely to succeed" standard is "an additional hurdle a plaintiff must jump over to get to trial," and therefore is a standard that "is different from and more difficult" for plaintiffs than the Rule 56 summary judgment standard.  *Id.* at 1334-35.  In sum, as the D.C. Circuit held, "[t]he main problem with the defendants' theory [that the Act may be applied in federal court] is that it requires the Court to rewrite the special motion to dismiss provision."  *Id.*

In *3M Co. v. Boulter*, 842 F. Supp. 2d 85 (D.D.C. 2012), Judge Wilkins reached the same conclusion.  He analyzed the inconsistency between the Anti-SLAPP standard and the Federal Rule 12 and Rule 56 standards, noting that the D.C. Anti-SLAPP Act would require a court to resolve disputed facts, and thus that the Anti-SLAPP law cannot be applied in federal court.  "[A]s held by this Circuit in *Callaway*, Rules 12(d) and 56 expressly *prohibit* such an evaluation.  Accordingly, because the D.C. Act requires the court to undertake a fact-finding role, even where there is a genuine issue of material fact, the statute directly collides with the prohibition of Rules

12(d) and 56." *Id.* at 108 (emphasis in original) (*citing Callaway v. Hamilton Nat. Bank of Wash.*, 195 F.2d 556, 558-559 (D.C. Cir. 1952)). *See also Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1183-84 (9th Cir. 2016) (*concurring op.*) ("Using California's standard in federal court means that some plaintiffs with plausible claims will have their cases dismissed before they've had a chance to gather supporting evidence. It's obvious that the two standards conflict.").

Nevertheless, Defendants urge the Court to disregard the holding of *Abbas* and to apply the D.C. Anti-SLAPP Act in this Court on the ground that *Abbas* has been "overtaken" by the decision of the D.C. Court of Appeals in *Mann*. For many reasons, that is wrong.

First, the holding of the D.C. Circuit in *Abbas* cannot be abrogated by a local court or disregarded by a federal district court because the issue that *Abbas* decided— that the "special motion" procedure of the Anti-SLAPP law is not available to a defendant in federal court—is a holding about what the federal rules permit, not purely an interpretation of local law. Second, this Court is obligated to apply *Abbas*, *unless* it concludes that the *holding* of *Abbas* [i.e., there is a conflict between the Federal Rules of Civil Procedure and the D.C. Anti-SLAPP Act] has been "clearly and unmistakably render[ed] inaccurate" by *Mann*. *See Easaw v. Newport*, 253 F. Supp. 3d 22, 35 (D.D.C. 2017). Even the D.C. Court of Appeals recognized that its decision did not unmistakably and fatally undermine *Abbas*. *See Mann*, 150 A.3d at 1238, n.32 (holding that the "applicability of the Anti-SLAPP statute in federal court is not for [the D.C. Court of Appeals] to determine"). Moreover, while in one breath, *Mann* appeared to interpret the Anti-SLAPP statute as "mirroring" Rule 56, in other respects, *Mann* expressly acknowledges various ways in which the Anti-SLAPP procedures are unmistakably and meaningfully different from the procedures set

forth in Federal Rules 12 and 56. *See, e.g, id. at* 1221, n.2 (holding that "the showing required to

defeat an Anti-SLAPP special motion to dismiss is more demanding than is required to overcome

a Rule 12(b)(6) motion to dismiss"); *id.* at 1238, n.32 ("we agree with *Abbas* that the special

motion to dismiss is different from summary judgment in that it imposes the burden on plaintiffs

and requires the court to consider the legal sufficiency of the evidence presented before

discovery is completed"); *id.* at 1237-38 (holding that the D.C. Anti-SLAPP Act reverses "the

allocation of burdens for dismissal of a complaint under" [local D.C. Superior Court] Rule

12(b)(6), giving defendants "the option to up the ante early in the litigation, by filing a special

motion to dismiss that will require the plaintiff to put his evidentiary cards on the table") (*citing*

D.C. Code §§ 16-5502(a), 16-5504(a)).

Faced with the holding of *Abbas* and the plain and inarguable differences between the

procedures set forth in the Act and those in the federal rules, Defendants attempt to take refuge in

the notion that the issues addressed in the Anti-SLAPP Act are substantive—even though those

same issues, when addressed in the Federal Rules of Civil Procedure, are deemed to be

procedural.  Defendants make this argument because, generally, federal courts sitting in diversity

apply federal procedural rules and state substantive rules. *See Salve Regina College v. Russell*,

499 U.S. 225, 226 (1991) ("*Erie* mandates that a federal court sitting in diversity apply the

substantive law of the forum State, absent a federal statutory or constitutional directive to the

contrary.").  While the *Mann* court quoted language in the Anti-SLAPP Act "bill report" to the

effect that the Act creates "substantive rights" (*see* Defendants' Special Motion MPA at 8), the

*Mann* court did not actually reject the notion that the procedures set forth in the Act for obtaining

pre-trial dismissal are just that— procedures—which they obviously are.  In any event, whether

the rules for obtaining pre-trial dismissal set forth in the Act are, as Defendants contend, purely

-8-

substantive, or instead, procedures in the sense that they are capable of conflicting with procedures set forth in the federal rules, is a federal question to be answered by federal courts, not a question on which any deference is owed to the District of Columbia or its courts. *See 3M Co.,* 842 F. Supp. 2d at 111 ("[t]he Act is a summary dismissal *procedure* that the Defendants and the District [of Columbia] seek to clothe in the costume of the substantive right of immunity—but this is largely a masquerade"). Indeed, "the D.C. Anti-SLAPP Act is codified with procedural matters in the D.C. Code, and the Act applies to all claims, not just to claims brought under District law, seriously undermining any contention that the Act 'serves the function of defining [state] rights or remedies.'" *Id.* at 110-11 (*quoting Shady Grove,* 559 U.S. at 432). In sum, because the Federal Rules of Civil Procedure and the Act address the same issues, and because those issues are treated as procedural by federal law, they remain procedural when they are also addressed outside of the federal rules, as in the D.C. Act.[7]

In *Deripaska v. The Associated Press,*[8] Judge Huvelle recently rejected the same argument that Defendants make here. Moreover, she has also held that *Abbas* applies to claims

---

[7] Defendants also point to a few earlier decisions of other courts in this district, rendered before *Abbas,* but those holdings are no longer valid in the wake of *Abbas—* including the District Court decision in *Abbas. See* Defendants' Special Motion MPA at 9. For the most part, these decisions simply misread what they took to be earlier [pre-*Abbas*] signals from the D.C. Circuit. Thus, as Defendants note, the District Judge in *Abbas* thought that the D.C. Circuit had "impli[ed]" that the Anti-SLAPP Act applies in federal court—a misimpression that the Circuit would soon correct in that case. Defendants also misstate this Court's decision in *Sherrod v. Breitbart,* 843 F. Supp. 2d 83, 84-85 (D.D.C. 2012) (Leon, J.), as a ruling that anti-SLAPP laws "are applicable in federal diversity actions." To the contrary, this Court did *not* apply the Anti-SLAPP statute in that case (for a number of reasons) and did not state a holding on that ultimate question. In essence, the Court pointed out that the Anti-SLAPP statute was *either* substantive, which would preclude its application in that case because its application would have been retroactive, *or* that it was procedural "thus *barring the application of the D.C. Anti-SLAPP Act in this Court.*" *Id.* at 87 (emphasis added) (*aff'd on other grounds,* 720 F.3d 932).

[8] *Deripaska v. The Associated Press,* No. 17-00913, 2017 U.S. Dist. LEXIS 171512 (D.D.C. Oct. 17, 2017) (deciding 12(b)(6) motion); *Deripaska v. The Associated Press,* No. 17-00913,

asserted pursuant to a federal court's supplemental jurisdiction. *See Democracy Partners v. Project Veritas Action Fund.*[9] In *Deripaska* and *Democracy Partners*, Judge Huvelle explained why the D.C. Circuit's unambiguous holding in *Abbas* precludes a federal court exercising diversity jurisdiction from allowing a defendant to employ the Anti-SLAPP Act's special motion to dismiss procedure. "[T]he D.C. Circuit determined in *Abbas* that the D.C. Anti-SLAPP Act is inconsistent with the federal rules of civil procedure." *See Deripaska* Anti-SLAPP Decision at p. 2; *Democracy Partners*, 2018 U.S. Dist. LEXIS at *43. In other words, the *Abbas* holding depends significantly on its ruling about federal law, and therefore cannot be abrogated by rulings from local courts interpreting local law.

**B.      The Rulings by the D.C. Circuit in Abbas and by Judge Huvelle in Deripaska on the Anti-SLAPP Law Are the Holdings of Those Courts (Not Dicta)**

In *Mann*, the D.C. Court of Appeals referred to "the *dicta* in *Abbas* concerning the applicability of the Anti-SLAPP Act in litigation brought in federal courts." *See Mann*, 150 A.3d at 1238, n.32. Wisely, Defendants do not adopt that characterization, as the ruling in *Abbas* is surely not *dicta*. However, while focusing on Judge Huvelle's decision, in *Deripaska*, on the same issue, Defendants make the same mistake, characterizing that decision as "arguably *dicta*." Defendants' Special Motion MPA at 9, n.2. The reason given by the court in *Mann* and by Defendants in this case for characterizing those rulings as *dicta* is the same (and equally incorrect)—that in *Mann* and in *Deripaska*, the courts, while denying the Anti-SLAPP motions to dismiss, granted the defendants' separate motions to dismiss pursuant to Rule 12(b)(6). *See Mann*, 150 A.3d at 1238, n.32;  Defendants' Special Motion MPA at 9, n.2.

---

Memorandum Decision (D.D.C. Oct. 17, 2017) (denying Anti-SLAPP motion to dismiss) (hereafter the "*Deripaska* Anti-SLAPP Decision," annexed hereto as Exhibit 1).
[9] *Democracy Partners v. Project Veritas Action Fund*, No. 17-1047, 2018 U.S. Dist. LEXIS 1270, at *41 (D.D.C. Jan. 4, 2018).

But the Rule 12(b)(6) dismissals in both cases do not render as *dicta* the decisions in those cases to deny the Anti-SLAPP special motions to dismiss.  In footnote 5, the *Abbas* court held that the Act does not grant attorneys' fees and costs to parties who obtain dismissal by other means, including Federal Rule 12(b)(6).  *Abbas*, 783 F.3d at 1337, n.5.  As a result of the denial of the special motion to dismiss, "attorney's fees under the Anti-SLAPP Act are not available to the defendants in this case."  *Id*.  Accordingly, the determination of the Anti-SLAPP motion was essential to the judgment (on the issue of defendants' entitlement to attorneys' fees) which makes that determination part of the holding, not *dicta*.  The same is true in *Deripaska*.

**C.   *The Potential for Forum Shopping Does Not Justify Departure From Abbas***

The fact that proceeding in local court would theoretically disadvantage Plaintiffs and benefit Defendants—because the local procedures are more friendly to defendants who move to dismiss—does not permit disregarding the binding holding of *Abbas*.  As noted in *Shady Grove*, this is "the inevitable . . . result of a system of uniform federal procedure."  *Shady Grove*, 559 U.S. at 416.  "The short of the matter is that a Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping."  *Id*.

## POINT III

### IN THE ALTERNATIVE,
### DEFENDANTS' MOTION SHOULD BE DENIED ON THE MERITS

Even if the D.C. Anti-SLAPP law's special motion procedure were applicable in federal court—which it is not—Defendants' motion should be denied because (1) Defendants failed to meet their burden to shift the burden to Plaintiffs to demonstrate a likelihood of success on the merits; and (2) the Amended Complaint demonstrates a likelihood of success on the merits.[10]

---

[10]  Plaintiffs' points and authorities in opposition to Defendants' 12(b)(6) motion are incorporated herein by reference.

**A.**     ***The D.C. Anti-SLAPP Act Was Not Enacted to Immunize Defamation of Private Citizens by Sophisticated Political Operatives***

Anti-SLAPP laws are designed to allow members of the public to participate in public governmental processes without being subject to meritless retaliatory lawsuits, quintessentially in the context of a request for a governmental approval. They were not enacted to immunize surreptitious political operatives who defame private persons.

As explained in the "seminal article on SLAPPS" cited by the Council of the District of Columbia in support of the enactment of the D.C. Anti-SLAPP Act:

> Americans are being sued for speaking out politically. The targets are typically not extremists or experienced activists, but normal, middle-class and blue-collar Americans, many on their first venture into the world of government decision making. The cases are not isolated or localized . . . in the last two decades, thousands of citizens have been sued into silence.[11]

The D.C. Council's report further notes that "[t]he actions that typically draw a SLAPP are often . . . the kind of grassroots activism that should be hailed in our democracy . . ." and mentions as a specific example in D.C.: "advocates that opposed the efforts of a certain developer" (successfully) and were subsequently sued by the developer because they [quoting from the allegations] "'conducted meetings, prepared petition drives, wrote letters and made calls and visits to government officials, organized protests, organized the preparation and distribution of . . . signs, and gave statements and interviews to various media.'" Comm. Report at 3. Here, by contrast, sophisticated political consultants surreptitiously disseminated false and defamatory

---

[11] *See* Council of the District of Columbia, Comm. on Pub. Safety and the Judiciary, Committee Report on Bill 18-893, the "Anti-SLAPP Act of 2010" ("the Comm. Report") at 2 (2010), *available at* http://lims.dccouncil.us/Download/23048/B18-0893-CommitteeReport1.pdf (quoting George W. Pring, *SLAPPS: Strategic Lawsuits against Public Participation*, 7 Pace Env. L. Rev. 3, 3 (1989)).

statements concerning Plaintiffs in a manner designed to conceal what Defendants said (and to whom) while ensuring that the statements would be published by others.

**B.    *Plaintiffs Did Not Thrust Themselves Into the Political Campaign***

Unlike the willing participants in political debate that became subject to the Anti-SLAPP Act, Plaintiffs did not thrust themselves into the limelight.  In *Farah v. Esquire Mag., Inc.* (a pre-*Abbas* district court decision), Esquire magazine printed a satirical piece about a website that continued to promote the birther conspiracy  (and plug a publication on same) even after President Obama released his long-form birth certificate.  863 F. Supp. 2d 29, 39 (D.D.C. 2012). The court granted Esquire's special motion to dismiss because Esquire had clearly engaged in the type of speech intended to be protected by the Act, and Farah could hardly complain about being a target of such speech since, unlike Plaintiffs, he had vocally and stridently taken a position on the matter of public interest at issue—the Presidents' legitimacy.  *Id.*  Here, Defendants do not contend that Plaintiffs actively campaigned or advocated for any candidate in the presidential election such that they thrust themselves into this debate.

As explained by the *Mann* court, a SLAPP action is filed by one political or policy opponent against another, and is an abuse of process intended to silence that opponent on the issue that is the subject of debate:

> A "SLAPP" (strategic lawsuit against public participation) is an action "filed by one side of a political or public policy debate aimed to punish or prevent the expression of opposing points of view." Council of the District of Columbia, Report of Committee on Public Safety and the Judiciary on Bill 18-893, at 1 (Nov. 18, 2010) (hereinafter Report on Bill 18-893).  Thus, the goal of a SLAPP "is not to win the lawsuit but to punish the opponent and intimidate them into silence." *Id.* at 4 (citing George W. Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 PACE ENVTL. L. REV. 3, 3, 9-11 (1989)). Enacted in 2012, the D.C. Anti-SLAPP Act was designed to protect targets of such meritless lawsuits by creating "substantive rights with regard to a defendant's ability to fend off" a SLAPP.  Report on Bill 18-893 at 1.

*Mann,* 150 A.3d at 1226; *see also Park v. Brahmbhatt,* 2016 D.C. Super. LEXIS 16, *7 (D.C. Super. Ct. Jan. 19, 2016) (defining SLAPPs, and quoting the same D.C. Council report).

That is not Plaintiffs' goal.  Plaintiffs do not seek to and could not hope to silence well-funded and sophisticated political operatives on the topic of the fitness for office of any U.S. political candidate or U.S. public official.  They merely seek a remedy for defamatory statements made about them.

In other words, the core defect in Defendants' Anti-SLAPP motion is that the claims that Defendants seek to dismiss are simply not SLAPP claims:  Plaintiffs filed the lawsuit to vindicate their individual reputations, not to punish or prevent the expression of opposing points of view regarding any political or public policy debate.

Plaintiffs are thus unlike the plaintiff in *Abbas,* who had an official government role by acting in his father's stead, and who himself made the claim that the Palestinian Authority was financially indebted to him.  *Abbas v. Foreign Policy Group, LLC,* 975 F. Supp. 2d 1, 12(D.D.C. 2013).  Plaintiffs have no such role and made no such claims.  Defendants cite no authority for the extreme proposition that all accusations of corruption and bribery are categorically *de facto* statements on an issue of public importance.  If Defendants were correct, every defamation claim challenging a false accusation of bribery of a politician or government official would be subject to dismissal under the Anti-SLAPP Act.  But political campaigns do not provide a license to make false statements that private persons, uninvolved in those campaigns, are corrupt.  Instead, those who make such statements must be prepared to explain and defend themselves against claims that the statements are false and defamatory.

**C.**   ***Defendants Cannot Meet Their Burden to Assert a Prima Facie Case of Entitlement to the Protections of the Act by Relying on Allegations in the Amended Complaint That They Dispute***

Defendants deny that the allegations in the Amended Complaint are true but simultaneously argue that those allegations constitute a *prima facie* case that the statements were made in a public forum and are therefore privileged under the Act.  Thus, in support of *this* motion, Defendants contend that the Amended Complaint alleges public statements by Defendants, but in the simultaneously-filed Motion to Dismiss, Defendants contend that the Amended Complaint does not allege public statements by Defendants.  Defendants cannot rely on allegations that they dispute to make the *prima facie* showing required by the Act to shift the burden to Plaintiffs.  Defendants must meet their burden of proof with affirmative, consistent statements, which they have failed to do.  Absent an affirmative claim that their statements were made in a public forum or involved communicating to the public, Defendants' motion should be denied.

In order to benefit from the procedural protections of the D.C. Anti-SLAPP statute, the "moving party *must show* that his speech is of the sort that the statute is designed to protect." *Doe No. 1 v. Burke*, 91 A.3d 1031, 1036 (D.C. 2014) (emphasis added).  Here, Defendants fail to show or even allege that they engaged in any "act in furtherance of the right of advocacy on issues of public interest" as defined in Section 16-5501.  Accordingly, they fail to meet their burden of proof.

Under Section 16-5501, the "right of advocacy" involves three types of conduct.  First, it protects statements "in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." D.C. Code § 16-5501(1)(a)(i).  Defendants do not allege their statements were made in connection with any such pending action or proceeding.  Second, the Act protects statements made "[i]n a place open

-15-

to the public or a public forum in connection with an issue of public interest." D.C. Code § 16-5501(1)(a)(ii). Defendants argue that they made statements on an issue of public interest, but do not allege that those statements were made to the public or in a public forum. Third, the Act protects "[a]ny other expression or expressive conduct that involves petitioning the government or communicating views to members of the public in connection with an issue of public interest." D.C. Code § 16-5501(1)(B). Defendants fail to allege that their conduct involved their communication of views to members of the public.

Failure to allege conduct specifically protected by the Anti-SLAPP statute requires denial of the motion. *See Park*, 2016 D.C. Super. LEXIS 16, at *9 (denying Anti-SLAPP motion where moving party "failed to allege any facts" that constitute such expression or statements, or any other conduct defined in 16-5501(1) as an "act in furtherance of the right of advocacy . . ."); *Newmyer*, 128 A.3d at 1043 n.17 (affirming denial of Anti-SLAPP motion where the admitted public statements involved a private matter and not any matter of "public importance"); *Mann*, 150 A.3d at 1227, (finding movant made *prima facie* showing and burden shifted to non-movant where there was no dispute that the communications at issue were posted "in a place open to the public" (various websites) and related to "an issue of public interest" (global warming)).

Given the fact that libel plaintiffs are required to plead the defamatory words published (*Mann*, 150 A.3d at 1240), Defendants' reliance on the Amended Complaint's references to CIR 112 to create an appearance of "public interest" within the meaning of the Act is incongruous to say the least, coming from a publisher of those defamatory words, and should be rejected as a matter of law.

Here, Defendants never affirmatively state that they engaged in conduct protected by the Act. Instead, they point to Plaintiffs' allegations, and assert that those "clearly satisf[y] at least two" of the three Anti-SLAPP Act definitions, "(1) statements on an issue of public interest; and (2) expressive conduct on an issue of public interest." Defendants' Special Motion MPA at 4. They then deny that the allegations in the Amended Complaint are true. *See id.* In so doing, Defendants effectively admit that they cannot make a *prima facie* case and are not entitled to the Anti-SLAPP Act's protections.

In sum, to the extent Defendants wish to benefit from the protection of D.C. Code § 16-5502(a)(ii) and (b), they must demonstrate that their expressions or written statements were "made . . . in a place open to the public or a public forum" or alternatively that they "communicat[ed] views to members of the public." *Doe No. 1*, 91 A.3d at 1040. Because they fail to do so, the Special Motion must be denied.

**D.      *By Relying on the Allegations in the Amended Complaint, Defendants Have Conceded the Sufficiency of the Allegation of the Publication of the Statements at Issue for the Purposes of the 12(b)(6) Motion***

To the extent that any of Defendants' assertions are considered on the Special Motion, they must also constitute admissions for the purposes of the Court's evaluation of Defendants' 12(b)(6) motion. In that motion, Defendants claim that the allegation of publication in the Amended Complaint is deficient, yet here they rely on that allegation as evidence that they meet the publication element of the Anti-SLAPP Act.

Defendants concede that to prevail on the Special Motion they must first show that they engaged in "expression or expressive conduct that involves . . . communicating views to members of the public in connection with an issue of public interest" or alternatively, made any "written or oral statement . . . in a place open to the public or a public forum in connection with an issue of public interest." *See* Defendants' Special Motion MPA at 3 (quoting D.C. Code § 16-

-17-

5501(1)).  But as discussed in Point III.C, *supra*, Defendants deny that they made the CIR reports public.

This kind of incongruous "double talk" should not be countenanced as an appropriate means to satisfy Defendants' affirmative obligation to establish a "*prima facie*" case of entitlement to the protection of the D.C. Act.

Accordingly, as discussed further in the memorandum in opposition to Defendants' motion to dismiss the complaint for failure to state a claim, that motion must be denied.

### E.      Plaintiffs Have Demonstrated a Likelihood of Success on the Merits of Their Defamation Case

For the purposes of judicial economy, Plaintiffs' points and authorities in opposition to Defendants' 12(b)(6) motion are incorporated herein by reference, and demonstrate that Plaintiffs have adequately pleaded each element of their defamation claims and demonstrated their likelihood of success.  Defendants have failed to shift the burden to Plaintiffs, Defendants' Special Motion should be denied but, even if the burden has shifted, Defendants have provided sufficient evidence to demonstrate a likelihood of success on each element.

Accordingly, even if the Anti-SLAPP Act were to apply in federal court—which it does not—Defendants have met their burden to demonstrate a likelihood of success on the merits.

## POINT IV

## PLAINTIFFS ARE ENTITLED TO DISCOVERY BEFORE BEING REQUIRED TO FULLY RESPOND TO AN ANTI-SLAPP MOTION ON THE MERITS

To the extent that the D.C. Court of Appeals' holding in *Mann* states that the D.C. Anti-SLAPP law is intended to "mirror" the standard set forth in Federal Rule 56, Plaintiffs should be entitled to discovery and permitted to meet the standard set forth in Federal Rule 56 as defined by the federal courts—including the entitlement to discovery as extensive as allowed before a court rules on a Rule 56 motion, not subject to the limitations of the D.C. Anti-SLAPP Act.

Section 16-5502 of the D.C. Anti-SLAPP Act provides for targeted discovery.  However, federal courts have found the restrictive discovery allowance under Anti-SLAPP statutes to be like "oil to the water of Rule 56's more permissive standard." *See, e.g., Unity Healthcare, Inc. v. County of Hennepin*, 308 F.R.D. 537, 541 (D. Minn. 2015) (rejecting a Minnesota anti-SLAPP motion as inconsistent with Rule 56).  The Anti-SLAPP standard "turns judges into pre-trial fact finders who must decide factual disputes by assessing credibility and weighing evidence, and they must do so without drawing inferences in favor of the nonmoving party.  This standard is anathema to the standard under Rule 56." *Id.* at 542.

Even the Ninth Circuit has held that the expedited procedure used to limit discovery and test evidence before the plaintiff has completed discovery "collides" with broader discovery allowed before a party has to respond to a Rule 56 motion. *See Metabolife International v. Wornick*, 264 F.3d 832, 846–47 (9th Cir. 2001).  That case concerned the defendant's statements about the safety of the plaintiff's herbal supplement product. *Id.* at 836.  The district court in *Metabolife* had decided not to rule on the issue of actual malice, but reached the issue of falsity without allowing discovery of the experts defendant consulted before making the alleged statements. *Id.* at 840.  The Ninth Circuit evaluated evidentiary motions and reversed on this point on the ground that "[t]his information is in the defendants' exclusive control, and may be highly probative to Metabolife's burden of showing falsity." *Id.* at 847.  Other courts interpreting the current state of Ninth Circuit law have stated that "[t]he Ninth Circuit has . . . substantially cut back on the statutory procedures that govern the California anti-SLAPP special motion, essentially treating it as a motion subject to the Federal Rules of Civil Procedure." *In re Gawker Media LLC*, 571 B.R. 612, 633 (S.D.N.Y. Bankr. 2017).

Here, Plaintiffs require discovery about Defendants' knowledge, internal processes, and intentions—information about the *Farah* standard that is exclusively within Defendants' control and material to Plaintiffs' defamation claim.  In *Herbert*, the Supreme Court held that defamation plaintiffs burdened with proof of actual malice are entitled to discovery on a media defendant's editorial process as a constitutional matter, the very issue Defendants argue has not been sufficiently pleaded. 441 U.S. at 169, 175.  Lando's claim of editorial privilege was rejected because it would impermissibly increase the burden on libel plaintiffs to demonstrate actual malice, and likely inhibit their ability to do so. *Id.* at 170 (*quoting New York Times Co. v. Sullivan*, 376 U.S. 254, 285-86 (1964)) ("To erect an impenetrable barrier to the plaintiff's use of such evidence on his side of the case is a matter of some substance, particularly when defendants themselves are prone to assert their good-faith belief in the truth of their publications, and libel plaintiffs are required to prove knowing or reckless falsehood with 'convincing clarity.'").

Accordingly, dismissal prior to the completion of discovery on this point is premature and inconsistent with Rule 56.  As in *Herbert*, discovery concerning the internal mental processes of Defendants is warranted where "there is a specific claim of injury arising from a publication that is alleged to have been knowingly or recklessly false." *Herbert*, 441 U.S. at 174.

The Amended Complaint alleges that Defendants exhibited a reckless disregard for truth when they resurrected 20-year-old unverified allegations from anonymous sources collected by an intermediary, and published reports, defamatory on their face about Plaintiffs.  That conduct was even more reckless in light of Defendants' acknowledgment that as much as 30% of the Dossier is inaccurate. *See* Am. Compl. ¶ 13.  Plaintiffs do not seek discovery "merely to satisfy curiosity." *Herbert*, 441 U.S. at 174.  Accordingly, under *Herbert*, at a minimum, Defendants are entitled to document production from Fusion and depositions of Defendant Simpson—and of

others employed at Fusion.  This discovery is reasonably calculated to create a material issue of

fact, on the issues of truth or falsity and actual malice, and is therefore appropriate under Rule

56, even if it were appropriate to evaluate an Anti-SLAPP motion in this Court.

## POINT V

### THE D.C. ANTI-SLAPP ACT ALSO CONFLICTS WITH FEDERAL RULE 38 AND THE SEVENTH AMENDMENT OF THE U.S. CONSTITUTION

The requirement that a court weigh evidence and make factual findings based on a paper

record at the dispositive motion stage also conflicts with a plaintiff's fundamental right to a trial

by jury.  As noted in *Gawker Media LLC*, "[i]t is not surprising that the highest courts of two

states have concluded that comparable anti-SLAPP statutes violate the right to a jury trial under

that particular state's constitution." *Gawker Media LLC*, 571 B.R. at 633 (*citing Opinion of the*

*Justices (SLAPP Suit Procedure)*, 138 N.H. 445 (N.H. 1994); *Davis v. Cox*, 183 Wn.2d 269

(Wash. 2015) (*en banc*).

The Seventh Amendment right to a jury trial in civil actions is applicable to suits at

common law.  *See* 8 *Moore's Federal Practice*, § 38.10[2], [3] (Matthew Bender 3d Ed.) (*citing*

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 573 (1990) (finding

that employees' claim against union for breach of duty of fair representation was legal rather

than equitable and therefore employees were entitled to jury trial); *Tull v. United States*, 481 U.S.

412, 423 (1987) (a suit enforcing civil penalties for violation of environmental laws must go to

jury)).  It applies not only to federal claims, but also state claims brought in federal court.  The

"Seventh Amendment is applied when federal courts determine state claims, even if the same

claim would not entitle the party to a jury trial in the state court." 8 *Moore's* § 38.11[1] (*citing*

*Byrd v. Blue Ridge Rural Electric Co-op*, 356 U.S. 525, 537–538 (1958)).  *See also Simler v.*

*Conner*, 372 U.S. 221, 222 (1963) (holding that the right to a jury trial is controlled by federal law so that the "uniformity . . . demanded by the Seventh Amendment" may be achieved).

The Supreme Court has described actions for libel and slander as "unmistakably actions at law triable to a jury." *Ross v. Bernhard*, 396 U.S. 531, 533 (1970). *See also Joseph Oat Holdings, Inc. v. RCM Digesters, Inc.*, 2007 U.S. Dist. LEXIS 62879 at *21 (D.N.J. Aug. 24, 2007) (finding that a claim for libel is a claim at law that must be submitted to the jury); 8 *Moore's* § 38.30[1][c][1].

Accordingly, the D.C. Anti-SLAPP Act, by requiring disputed issues of material fact to be decided by a judge on a written record, conflicts with Federal Rule of Civil Procedure 38 and violates the right to a trial by jury on a defamation action provided for in the Seventh Amendment to the U.S. Constitution.

## CONCLUSION

For the reasons set forth above, Defendants' Special Motion to Dismiss Pursuant to the D.C. Anti-SLAPP Act should be denied.

Dated: March 26, 2018

Respectfully submitted,

/s/   *Alan S. Lewis*
Alan S. Lewis (#NY0252)
John J. Walsh
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.:   212-238-8647
Fax:   212-732-3232
Email: lewis@clm.com

*Attorneys for Plaintiffs*
  *Mikhail Fridman, et al.*

# Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| OLEG V. DERIPASKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-00913 (ESH) |
| | ) | |
| THE ASSOCIATED PRESS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Oleg Deripaska has sued the Associated Press ("AP") claiming defamation. In a separate Memorandum Opinion, ECF No. 18, the Court has dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6). The only issue remaining is whether to grant defendant's motion to dismiss under the District of Columbia Anti-Strategic Lawsuits Against Public Participation (Anti-SLAPP) Act of 2010, D.C. Code § 16-5502(a). Because *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015), forecloses application of D.C.'s Anti-SLAPP Act in federal court, the Court will deny the AP's special motion to dismiss, including its request for fees and costs.[1]

"*Erie* mandates that a federal court sitting in diversity apply the substantive law of the forum State, absent a federal statutory or constitutional directive to the contrary." *Salve Regina College v. Russell*, 499 U.S. 225, 226 (1991). Therefore, in diversity cases, "all federal courts have a duty 'to ascertain and apply the state law' as 'it controls decision.'" *Easaw v. Newport*, No. 17–00028, 2017 WL 2062851, at *8 (D.D.C. May 12, 2017) (quoting *Huddleston v. Dwyer*,

---

[1] The relevant factual background is set forth in the Court's Memorandum Opinion, ECF No. 18, dismissing this case under Rule 12(b)(6).

322 U.S. 232, 236 (1944)). Discerning the content of state law requires deferring "to the most recent decisions of the state's highest court, and when interpreting and applying D.C. law, courts fulfill this obligation by looking to the published opinions of the D.C. Court of Appeals." *Id.* (citing *Rogers v. Ingersoll-Rand Co.*, 144 F.3d 841, 843 (D.C. Cir. 1998)). But of course, district courts also remain bound by the decisions of the D.C. Circuit. *Id.*; *see* 28 U.S.C. § 1291.

What to do when these two sources of binding precedent are in conflict has not been "squarely addressed" in this Circuit. *Id.* at *9. Chief Judge Howell has persuasively explained, however, that "when faced with conflicting authority on D.C. law," if the D.C. Court of Appeals "has spoken clearly and unmistakably as to the current state of D.C. law," the district court should defer to that interpretation. *Id.*

Here, the question is whether the D.C. Court of Appeals has spoken clearly and unmistakably such that this Court must depart from the D.C. Circuit's view that a federal court exercising diversity jurisdiction may not apply the D.C. Anti-SLAPP Act's special motion to dismiss provision. *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015). The Court finds that the law at this time that binds this Court is the D.C. Circuit's opinion in *Abbas*, and accordingly, the special motion to dismiss must be denied.

The AP acknowledges that the D.C. Circuit determined in *Abbas* that the D.C. Anti-SLAPP Act is inconsistent with the federal rules of civil procedure, but argues that the D.C. Court of Appeals' decision in *Competitive Enterprise Institute v. Mann*, 150 A.3d 1213 (D.C. 2016), alters the D.C. Circuit's interpretation of the statute's applicability. (Mot. Dismiss at 2, ECF No. 7.) Deripaska responds that this misreads the two opinions and that *Abbas* remains binding precedent. (Opp. Mot. Dismiss at 3–4, ECF No. 9.)

A "federal court exercising diversity jurisdiction should not apply a state law or rule if (1)

a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Abbas*, 783 F.3d at 1333 (quoting *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010)).  Anti-SLAPP statutes, enacted in more than half of the states, are intended "to decrease the 'chilling effect' of certain kinds of libel litigation and other speech-restrictive litigation." Eugene Volokh, *The First Amendment and Related Statutes* 118 (5th ed. 2014).  "Like the various States' anti-SLAPP laws, the D.C. Anti-SLAPP Act makes it easier for defendants sued for defamation and related torts to obtain quick dismissal of harassing lawsuits." *Abbas*, 783 F.3d at 1332.  In particular, it allows defendants to "file a special motion to dismiss 'any claim arising from an act in furtherance of the right of advocacy on issues of public interest.'" *Id.* at 1332 (quoting D.C. Code § 16–5502(a)).  Normally, "under Federal Rule 12(b)(6), a plaintiff can overcome a motion to dismiss by simply alleging facts sufficient to state a claim that is plausible on its face." *Id.* at 1334 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  But "the D.C. Anti-SLAPP Act nullifies that entitlement in certain cases," and thus "conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial." *Id.*  "In short, unlike the D.C. Anti-SLAPP Act, the Federal Rules do not require a plaintiff to show a likelihood of success on the merits in order to avoid pre-trial dismissal." *Id.*

In response to the *Abbas* defendants' argument that "the D.C. Anti-SLAPP Act's likelihood of success standard is just another way of describing the federal test for summary judgment," *id.*, the Circuit explained that the special motion to dismiss provision "answers the same question about the circumstances under which a court must grant pre-trial judgment to defendants" that the Federal Rules answer. *Id.* at 1335.  At that time, "the D.C. Court of Appeals ha[d] never interpreted the D.C. Anti-SLAPP Act's likelihood of success standard to simply

mirror the standards imposed by Federal Rules 12 and 56." *Id.* The following year, however, the D.C. Court of Appeals expressed some agreement with *Abbas* in a footnote, stating "that the special motion to dismiss is different from summary judgment in that it imposes the burden on plaintiffs and requires the court to consider the legal sufficiency of the evidence presented before discovery is completed." *Mann*, 150 A.3d at 1238 n.32. While acknowledging that the "applicability of the Anti-SLAPP statute in federal court is not for [the D.C. Court of Appeals] to determine," that court held that "the D.C. Anti-SLAPP Act's likelihood of success standard [] simply mirror[s] the standards imposed by Federal Rule 56." *Id.* And yet, the Act reverses "the allocation of burdens for dismissal of a complaint under" Rule 12(b)(6),[2] *id.* at 1237, giving defendants "the option to up the ante early in the litigation, by filing a special motion to dismiss that will require the plaintiff to put his evidentiary cards on the table . . . [which] makes the plaintiff liable for the defendant's costs and fees if the motion succeeds." *Id.* at 1238 (citing D.C. Code §§ 16–5502(a), 16–5504(a)).

"*Erie* involved the constitutional power of federal courts to supplant state law with judge-made rules." *Shady Grove*, 559 U.S. at 406. In deciding *Abbas*, the D.C. Circuit was aware that other federal courts of appeal had come to a different conclusion when analyzing other states' Anti-SLAPP statutes in similar circumstances. *Abbas*, 783 F.3d at 1335–36 (citing *Godin v. Schencks*, 629 F.3d 79, 81, 92 (1st Cir. 2010); *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 168–69 (5th Cir. 2009); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999)). But the Court nonetheless expressed agreement with Judge Kozinski and Judge Watford's dissenting view on the Ninth Circuit, and it ultimately concluded

---

[2] The D.C. Court of Appeals here referred to Superior Court Rule of Civil Procedure 12(b)(6), which replicates Federal Rule of Civil Procedure 12(b)(6).

that "Federal Rules 12 and 56 answer the same question as the Anti-SLAPP Act's special motion

to dismiss provision." *Id.* at 1336; *see id.* at 1135–36 (citing *Makaeff v. Trump U., LLC*, 736

F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., dissenting from denial of rehearing en banc)

("California's anti-SLAPP statute impermissibly supplements the Federal Rules' criteria for pre-

trial dismissal of an action."); *Makaeff v. Trump U., LLC*, 715 F.3d 254, 275 (9th Cir. 2013)

(Kozinski, J., concurring) ("Federal courts have no business applying exotic state procedural

rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules.")).

 While this Court is aware that the result here will likely promote the type of forum-

shopping that *Erie* intended to avoid, it is not for district court judges to override the

determinations of circuit precedent. Moreover, the Supreme Court has made clear that in some

circumstances "divergence from state law, with the attendant consequence of forum shopping, is

the inevitable . . . result of a uniform system of federal procedure." *Shady Grove*, 559 U.S.

at 416. "The short of the matter is that a Federal Rule governing procedure is valid whether or

not it alters the outcome of the case in a way that induces forum shopping." *Id.*

 At bottom, the D.C. Circuit was clear, and so, while the D.C. Court of Appeals' opinion

in *Mann* merits analysis, it does not "clearly and unmistakably" resolve the question at issue

here, and this Court must follow the clear guidance of the D.C. Circuit and deny the special

motion to dismiss.

## CONCLUSION

 For the reasons discussed, the AP's special motion to dismiss is denied, as is its request

for fees and costs under D.C.'s Anti-SLAPP Act.

/s/  *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date: October 17, 2017

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------

MIKHAIL FRIDMAN, PETR AVEN, and )
GERMAN KHAN, )
          )   Case No. 1:17-cv-02041 (RJL)
        *Plaintiffs,* )
          )
     v. )
          )
BEAN LLC (a/k/a FUSION GPS) and )
GLENN SIMPSON, )
          )
        *Defendants.* )

-------------------------------------------------------

## PROPOSED ORDER

  Upon consideration of the Special Motion to Dismiss the Amended Complaint Pursuant

to the D.C. Anti-SLAPP Act (the "Special Motion") by Defendants Bean LLC a/k/a Fusion GPS

and Glenn Simpson, and the opposition thereto by Plaintiffs Mikhail Fridman, Petr Aven and

German Khan, and Defendants' reply in further support of the Special Motion, it is hereby

ORDERED that the Special Motion is denied, and it is further ORDERED that Defendants shall

answer the Amended Complaint within fourteen days of notice of this ORDER.

  **SO ORDERED** this _____ day of _____, 2018.


            _____

            RICHARD J. LEON
            United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March 2018, I electronically filed and served the foregoing using the CM/ECF system.

/s/ *Alan S. Lewis*_____
Alan S. Lewis