**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN,<br><br>        Plaintiffs,<br><br>   v.<br><br>BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,<br><br>        Defendants. | Civil Case No. 1:17-cv-2041-RJL |

**REPLY TO PLAINTIFFS' OPPOSITION TO
<u>DEFENDANTS' SPECIAL MOTION TO DISMISS</u>**

## INTRODUCTION

Plaintiffs concede that they cannot show any likelihood of success on their defamation claim and have now made clear that their lawsuit is merely a tactic aimed to punish and harass Defendants with burdensome discovery for exercising their First Amendment rights. Because the D.C. Anti-SLAPP Act protects Defendants from such abusive tactics, this Court should grant their Special Motion and award them costs and fees.

## I.   THE DEFENDANTS' SPECIAL MOTION TO DISMISS WAS TIMELY FILED

The District of Columbia Anti-SLAPP Act, D.C. Code §§ 16-5501 to 16-5505 ("the Act"), provides that "[a] party may file a special motion to dismiss any *claim* . . . within 45 days after service of the *claim*." *Id.* § 16-5502(a) (emphasis added). Plaintiffs served their Complaint alleging a claim of defamation on October 13, 2017. Defendants filed their Special Motion to Dismiss pursuant to the Act on November 21, 2017, well within the 45-day window. Plaintiffs thereafter filed an Amended Complaint, in which they made the same claim as their initial Complaint – a claim for defamation. Therefore, Defendants' initial timely filed Special Motion satisfied the statutory timeliness requirement; the Plaintiffs' filing an Amended Complaint making the same claim cannot erase the Defendants' prior satisfaction of the statutory deadline.

Even if, as Plaintiffs implicitly argue, the filing of an Amended Complaint started the running of a new time deadline – which it did not – Defendants' compliance with this Court's December 27 order granting the Defendants' consent motion for extension satisfied the applicable deadline. When the legal question is based on a procedural issue, the federal court sitting in diversity should apply federal law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The 45-day filing deadline in the Act is clearly a procedural requirement of state law, which this Court need not apply. Indeed, the very case relied on by the Plaintiffs, *Sherrod v. Brietbart*, 720 F.3d 932 (D.C. Cir. 2013), recognized that a federal district court may disregard the statute's 45-

day filing requirement. *See Sherrod*, 720 F.3d at 937 n.4 (assuming that the deadline applied only because "defense presented no argument that the district court could simply – on *Erie* grounds – disregard the D.C. statute's 45-day limitations period for filing a motion under the anti-SLAPP law"). Here, the Federal Rules of Civil Procedure, and the Court's inherent power to manage its docket, authorized this Court to extend Defendants' time for responding to the Amended Complaint with a renewed Special Motion to Dismiss, which extension this Court's December 27 minute order granted.[1] Defendants complied with this Court's order, making their renewed Special Motion timely, as well.

## II. THE SUBSTANTIVE PROTECTIONS OF D.C.'S ANTI-SLAPP ACT ARE AVAILABLE IN FEDERAL COURT

Defendants' argument for why the Act applies here is simple. Before *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015), this Court, along with others, found that defendants could invoke the protections of the Act in the United States District Court for the District of Columbia. *See* Special Mot. at 9 (citing cases). While the D.C. Circuit in *Abbas* held that the Act did not apply in federal court, that holding was premised on its predictive interpretation of state law that the District of Columbia Court of Appeals later rejected in *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1238 n.32 (D.C. 2016). *See* Special Mot. at 6-8. In light of *Mann*, this Court should revert to its prior decision and the pre-*Abbas* weight of authority that found the Act applicable in federal court.

Plaintiffs never meaningfully engage with Defendants' core argument. The majority of Plaintiffs' argument is inapposite, simply repeating the reasoning of *Abbas*. Defendants do not argue that if *Abbas* remains good law, then the Act can somehow still apply in this federal

---

[1] In this case Plaintiffs consented to the motion to extend the deadline for Defendants to respond to the Amended Complaint. *See* Consent Mot., ECF No. 18.

2

diversity case. Given Plaintiffs' misguided challenge, Defendants stand on the arguments in their opening brief.

Only one snippet of the opposition is even possibly responsive to Defendants' Special Motion – Plaintiffs' assertion that "the *Abbas* holding depends significantly on its ruling about federal law, and therefore cannot be abrogated by rulings from local courts interpreting local law." Opp'n at 10, ECF No. 24. But that contention is wrong. The central issue before the D.C. Circuit in *Abbas* was to determine whether the Act conflicts with or complements the Federal Rules of Civil Procedure. *Abbas*, 783 F.3d at 1334 ("The D.C. Anti–SLAPP Act, in other words, conflicts with the Federal Rules[]."). Although the decision had to consider the requirements of federal law, the key question in the Circuit Court's analysis was its predictive interpretation of state law: specifically, its prediction of how the District of Columbia Court of Appeals would interpret the Act's requirement that a claim must be dismissed unless it is "likely to succeed on the merits." D.C. Code § 16-5502(b).[2] *See Abbas*, 783 F.3d at 1334 (stating that the special motion to dismiss created by the Act did not apply in federal court because it "answer[ed] the same question" as the Federal Rules of Civil Procedure – when a court must grant judgment before trial – in a different way). Unless *Abbas* was to decide that purely state law issue, there would have been nothing to compare to the federal rules.

*Abbas* came to one conclusion about what the "likely to succeed on the merits" language in the Act means; the D.C. Court of Appeals in *Mann* subsequently came to a different

---

[2] When faced with an unresolved question of state law in a federal diversity case, the D.C. Circuit has defined its "duty" to be answering the question in the manner that best predicts how the District of Columbia Court of Appeals would answer were it presented with the question. *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 824 (D.C. Cir. 1984); *see also Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006) ("Our duty, then, is to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case."); *Siegel v. Mazda Motor Corp.*, 835 F.2d 1475, 1478 (D.C. Cir. 1987) (same). In *Abbas*, the D.C. Circuit made its best prediction and concluded that the Act's "likelihood of success standard" would be interpreted to be "different from and more difficult for plaintiffs to meet than the standards imposed by Federal Rules 12 and 56." 783 F.3d at 1335. The Circuit Court's prediction proved to be wrong.

3

conclusion. *See* Special Mot. at 6-8. Interpretation of local law is emphatically the province of the D.C. Court of Appeals. *Easaw v. Newport*, 253 F. Supp. 3d 22, 34 (D.D.C. 2017) (concluding that "when the D.C. [Court of Appeals] has spoken clearly and unmistakably to the current state of D.C. law, its views must govern" over those of the D.C. Circuit). Perhaps the D.C. Circuit will one day find that the Act, even under *Mann*'s interpretation, conflicts with how the D.C. Circuit interprets the federal rules. But *Abbas* can no longer be relied upon for that proposition, and the overwhelming weight of pre-*Abbas* authority in this Circuit, including this Court's prior decision in *Sherrod*,[3] militates in favor of applying the Act in this case, given the District of Columbia Court of Appeals' decision in *Mann*.

### III. PLAINTIFFS FAILED TO RESPOND TO DEFENDANTS' PRIMA FACIE SHOWING, THEREBY CONCEDING THAT THEIR COMPLAINT MUST BE DISMISSED

Plaintiffs do not bring forward any evidence to rebut Defendants' *prima facie* showing that "the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502(b). Instead, Plaintiffs make essentially two arguments for why the Act's protections are not triggered here. First, they invent a requirement that the Act is not meant to protect "sophisticated political consultants" or "sophisticated political operatives." *See* Opp'n at 12, 14. Second, they claim the Defendants cannot rely on the allegations in the Amended Complaint. *See id.* at 15-17. Both arguments are without merit.

---

[3] Plaintiffs claim that Defendants have misread this Court's decision in *Sherrod v. Breitbart*, 843 F. Supp. 2d 83 (D.D.C. 2012) (Leon, J.), *aff'd*, 720 F.3d 932 (D.C. Cir. 2013). *See* Opp'n at 9 n.7. But contrary to Plaintiffs' reading, the Court was not agnostic as to whether the Act was procedural or substantive for the purpose of *Erie*. *See Sherrod*, 843 F. Supp. 2d at 85 (stating "defendants' own briefs and the legislative history **make clear that the D.C. Anti–SLAPP Act is substantive.**") (emphasis added). Defendants certainly are not alone in their reading of this Court's decision. *See Abbas v. Foreign Pol'y Grp.*, 975 F. Supp. 2d 1, 10-11 (D.D.C. 2013) (citing *Sherrod* as "noting that the District's Anti–SLAPP statute 'is substantive—or at the very least, has substantive consequences' that would make it applicable in federal court"); *Farah v. Esquire Mag., Inc.*, 863 F. Supp. 2d 29, 36 n.10 (D.D.C. 2012), *aff'd*, 736 F.3d 528 (D.C. Cir. 2014) (same); *Forras v. Rauf*, 39 F. Supp. 3d 45, 52 (D.D.C. 2014) (same).

The plain language of the Act negates the proposition that the Act's application turns on the sophistication of the defendant, or that it is limited to "the context of a request for a governmental approval," or that it requires "grassroots activism." *Id.* at 12. Plaintiffs fail to cite any authority for this proposition, because it does not exist. Rather, courts apply the Act to all types of sophisticated defendants in a variety of contexts. *See generally*, *Boley v. Atlantic Monthly Grp.*, 950 F. Supp. 2d 249, 255 (D.D.C. 2013) (applying the Act to protect *The Atlantic*); *Farah*, 863 F. Supp. 2d at 29 (allowing Hearst Communications to avail itself of the Act's protections).[4]

Recognizing that the Court is unlikely to accept their *ipse dixit* that these "are simply not SLAPP claims," Opp'n at 14, Plaintiffs resort to the novel argument that Defendants cannot rely on *Plaintiffs' allegations* in order to demonstrate *the nature of Plaintiffs' claims*. *See id.* at 15. That allows Plaintiffs to wrongly assert that Defendants' have "not allege[d] their statements" fall into any of the Act's definition of "right of advocacy." *See id.* at 15-16. To the contrary, Defendants have explained in detail how statutory definitions apply to their alleged defamatory conduct. *See* Special Mot. at 3-5.

There is no requirement in the Act or elsewhere that Defendants must concede the truth of Plaintiffs' allegations in order to avail themselves of the Act's protection. *Contra* Opp'n at 16-17. Instead, the Act intentionally provides a procedure – appropriately called a special *motion to dismiss* – that avoids the defendant first having to answer the complaint. Unsurprisingly,

---

[4] Plaintiffs protest that "every defamation claim challenging a false accusation of bribery of a politician or government official would be subject to dismissal" under the Act, and that "political campaigns do not provide a license to make false statements that private persons … are corrupt." Opp'n at 14. This argument is a sleight of hand. A plaintiff can beat back an anti-SLAPP motion where he or she "demonstrates that the claim is likely to succeed on the merits." D.C. Code § 16-5502(b). To the extent Defendants are afforded protection in the context of publications about matters uncovered in their opposition research – making Plaintiffs' task more difficult – that is simply the balance struck by the D.C. Council in light of the public importance of such speech. *See Abbas*, 783 F.3d at 1332 ("Many States have enacted anti-SLAPP statutes to give more breathing space for free speech about contentious public issues.").

5

Plaintiffs cite no authority supporting their contrary proposition that the Act does not mean what it plainly says. Instead, Plaintiffs' cases involve situations where the face of the complaint – accepted as true – would be insufficient to meet the Act's *prima facie* standard. *See Park v. Brahmbhatt*, Civil Action No. 2015 CA 005686 B, 2016 D.C. Super. LEXIS 16, *9 (D.C. Sup. Ct. Jan. 19, 2016) (where plaintiff sought to defeat defendant's counterclaims through anti-SLAPP motion, underlying dispute "involved alleged improper sexual conduct by Defendant, her supervisor, in the context of private instead of public interest"); *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1028 (D.C. 2015) (anti-SLAPP motion to dismiss counterclaims failed where underlying dispute involved plaintiff's "campaign" to have his estranged wife's lover fired from his job as a school guidance counselor).[5] Here, the Plaintiffs themselves have pled facts sufficient for the Court to determine that the "claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502(b).

Because the Defendants have made a *prima facie* showing, Plaintiffs must carry their burden to show they are "likely to succeed on the merits." *Id*. On this score, Plaintiffs' opposition to the Special Motion simply cross-references their arguments from their Rule 12(b)(6) opposition. That is patently insufficient under the Act. While Defendants can rely on the Plaintiffs' allegations to make the *prima facie* showing, the point of the Act is to have a defamation plaintiff thereafter "put his ***evidentiary*** cards on the table[]." *Mann*, 150 A.3d at 1238 (emphasis added). Plaintiffs cannot simply point back to their say-so in the Amended Complaint, but instead must come forward with *evidence*. *See id.* at 1233 ("[O]nce the burden

---

[5] Plaintiffs complain they are "required to plead the defamatory words published" and that should not be held against them. Opp'n at 16. It is hard to understand what Plaintiffs mean: obviously, they have to support their defamation claim with allegations that satisfy the elements of the claim. There is nothing "incongruous" about "Defendants' reliance" on the very communication that Plaintiffs say is defamatory. Perhaps it goes without saying, but courts always look to the alleged communication in evaluating an anti-SLAPP motion. *See, e.g.*, *Boley*, 950 F. Supp. 2d at 256; *Forras*, 39 F. Supp. 3d at 54.

has shifted to the claimant, the statute requires more than mere reliance on allegations in the complaint, and mandates the production or proffer of evidence that supports the claim."). Plaintiffs have utterly failed to proffer or to produce any evidence, and so their lawsuit must be dismissed.

## IV. PLAINTIFFS SHOULD NOT BE ALLOWED TO CONDUCT DISCOVERY

As Plaintiffs acknowledge, "[s]ection 16-5502 of the D.C. Anti-SLAPP Act provides for targeted discovery," but only "[w]hen it appears likely that targeted discovery will enable the plaintiff to defeat the motion and that the discovery will not be unduly burdensome . . . ." D.C. Code § 16-5502(c)(2). Plaintiffs do not actually ask for "targeted discovery," presumably because the Plaintiff must pay "any expenses incurred by the defendant in responding to such discovery." *Id.* § 5502(c)(2). Instead, Plaintiffs essentially ask the Court to convert this motion into one for summary judgment under Rule 56, and grant them the "broader discovery allowed before a party has to respond to a Rule 56 motion." Opp'n at 19.

Accepting Plaintiffs' invitation would functionally eviscerate the Act: its core purpose is to protect persons from the burden, expense, and harassment of full-fledged discovery and litigation. *See Abbas*, 975 F. Supp. 2d at 8 ("By imposing upon defendants the burden of defending against a lawsuit, the [District's Committee on Public Safety and the Judiciary] concluded that litigation itself is the plaintiff's weapon of choice, one that was wielded to chill the speech of those who would otherwise speak out on a matter of public interest.") (citations and quotations omitted); *Mann*, 150 A.3d at 1235 ("The special motion to dismiss is a mechanism by which a SLAPP defendant can expeditiously and economically dispense of litigation to alleviate the burdens and cost of defending against a suit that is filed, not to succeed,

but to prevent or punish the defendant's speech or advocacy.") (quotes omitted). It is unsurprising, then, that no court has ever applied the Act in the manner Plaintiffs request.

In any event, Plaintiffs' request fails even under the terms of Federal Rule of Civil Procedure 56. Rule 56(d) requires a Plaintiffs to show "by affidavit or declaration" "specified reasons" why "it cannot present facts essential to justify" their opposition. Plaintiffs have provided no such affidavit or declaration. This default alone prevents the discovery they seek. *See Adelson v. Harris*, 973 F. Supp. 2d 467, 503 n.26 (S.D.N.Y. 2013).

The lone authority cited by Plaintiffs, *Herbert v. Lando*, does not address the standards for a court to grant Rule 56 discovery; rather, it dealt with the question of whether or not to recognize an evidentiary privilege. 441 U.S. 153, 177 (1979) ("[Whether] the trial judge properly applied the rules of discovery … is not before us."). Therefore, the Court should reject Plaintiffs' unsupported request to prolong this baseless litigation by taking burdensome discovery of the Defendants – the very burden that the Act protects Defendants against.

## V.   THE ACT IS CONSTITUTIONAL

The Plaintiffs claim that the Act conflicts with their Seventh Amendment right to a jury trial by citing two inapposite decisions of state courts holding that different anti-SLAPP statutes violate the right to a jury trial under those particular states' constitutions. Plaintiffs notably avoid citing to the directly applicable decision of the District of Columbia Court of Appeals in *Mann,* in which the highest court in the District of Columbia interpreted the D.C. Anti-SLAPP Act so as to avoid the Seventh Amendment right to a jury trial issue.[6] In that case, the Court applied the canon of constitutional avoidance to interpret the statutory phrase about which

---

[6] Plaintiffs' Opposition also cites to Federal Rule of Civil Procedure 38, but with offering no additional analysis as to the Rule. *See* Opp'n at 22. Rule 38 simply reads, "The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." Plaintiffs have not pointed to any applicable federal statute, so their Rule 38 challenge fails for the same reasons as their challenge under the Seventh Amendment.

8

Plaintiffs complain – "likely to succeed on the merits" – in "a manner that does not supplant the role of the fact-finder[]." *Mann*, 150 A.3d at 1236.  Accordingly, it announced the following holding: "We, therefore, conclude that to remove doubt that the Anti-SLAPP statute respects the right to a jury trial, the standard to be employed by the court in evaluating whether a claim is likely to succeed may result in dismissal only if the court can conclude that the claimant could not prevail *as a matter of law*, that is, after allowing for the weighing of evidence and permissible inferences by the jury." *Id.* (emphasis in the original) (citations omitted).

This Court is bound to follow the decision of the District of Columbia Court of Appeals on the meaning of the Act, which eliminates the Seventh Amendment issue altogether. Even if this Court were not so bound, the constitutional-avoidance analysis by the District of Columbia Court of Appeals is persuasive, and this Court should follow its reasoning.

## CONCLUSION

For the reasons set forth above and in Defendants' opening brief, Defendants' Special Motion should be granted, the Amended Complaint dismissed with prejudice, and briefing ordered on an application for Defendants' fees and costs.

Dated:  April 16, 2018

Respectfully submitted,

<u>/s/ Steven M. Salky</u>
William W. Taylor, III (DC Bar No. 84194)
Steven M. Salky (DC Bar No. 360175)
Rachel F. Cotton (DC Bar No. 997132)
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel:  (202) 778-1800
Fax: (202) 822-8106
wtaylor@zuckerman.com
ssalky@zuckerman.com
rcotton@zuckerman.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of April, 2018, I electronically filed and served the foregoing using the CM/ECF system.

Respectfully submitted,

*/s/ Rachel F. Cotton*
Rachel F. Cotton