UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN, <br><br> *Plaintiffs,* <br><br> v. <br><br> BEAN LLC (a/k/a FUSION GPS) and GLENN SIMPSON, <br> *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:17-cv-02041 (RJL) |

**PLAINTIFFS' NOTICE OF ERRATA RELATING TO PLAINTIFFS' SUPPLEMENTAL SUBMISSION  IN FURTHER OPPOSITION TO DEFENDANTS' RULE 12(b)(6) AND ANTI-SLAPP ACT MOTIONS TO DISMISS**

    **PLEASE TAKE NOTICE THAT** page fifteen of Plaintiffs' Supplemental Submission in Further Opposition to Defendants' Rule (12)(b)(6) and Anti-SLAPP Act Motions to Dismiss (Doc. 43) inadvertently cited to Defendants' Memorandum of Points and Authorities in Support of Defendant's Special Motion to Dismiss Under the D.C. Anti-SLAPP Act (Doc. 19-1) instead of Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the Amended Complaint for Failure to State a Claim (Doc. 20-1).  *See* Plaintiff's Supplemental Submission at 15 (referencing "Defs.' Special Mot. at 38-39" and associated footnote defining the abbreviated reference).  The correct citation is "Defs.' Mot. to Dism. at 38-39," without the associated footnote.  A corrected version of Plaintiffs' Supplemental Submission is attached.  It is otherwise identical in all respects to Plaintiffs' November 7, 2018 filing.

Dated:  November 21, 2018

Respectfully submitted,

_____*Alan S. Lewis*_____
Alan S. Lewis (#NY0252)
John J. Walsh
Karen E. Meara
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.:   212-238-8647
Fax:   212-732-3232
Email: lewis@clm.com

*Attorneys for Plaintiffs*
 *Mikhail Fridman, et al.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------

MIKHAIL FRIDMAN, PETR AVEN, and
GERMAN KHAN,

               *Plaintiffs,*

               v.

BEAN LLC (a/k/a FUSION GPS) and GLENN
SIMPSON,

               *Defendants.*

------------------------------------

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:17-cv-02041 (RJL)

## CORRECTED PLAINTIFFS' SUPPLEMENTAL SUBMISSION
## IN FURTHER OPPOSITION TO DEFENDANTS'
## RULE 12(b)(6) AND ANTI-SLAPP ACT MOTIONS TO DISMISS

CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.:    212-238-8647
Fax:    212-732-3232
Email:  lewis@clm.com

*Attorneys for Plaintiffs*
  *Mikhail Fridman, et al.*

*Of Counsel:*

  Alan S. Lewis (#NY0252)
  John J. Walsh
  Karen E. Meara

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................................ii

THE 12(b)(6) MOTION SHOULD BE DENIED ..................................................................................1

Public Figure Status Is An Affirmative Defense ..........................................................................1

*The Iqbal/Twombly Argument* ..............................................................................................5

*Plaintiffs' Public Figure Status In This Case Has Not Been "Already Adjudicated"* .....................6

*Plaintiffs' General Media Presence Does Not Relieve Defendants Of Their Burden To Plead And Prove Public Figure Status* ..............................................................................................9

Plaintiffs Are Not Public Figures For The Controversies Here ................................................9

Even If It Were Appropriate To Saddle Plaintiffs With The Burden To
Plead Actual Malice, They Have Done So ..............................................................................12

THE ANTI-SLAPP MOTION SHOULD BE DENIED ......................................................................13

*The Motion Was Filed Late* .................................................................................................14

*Enforcing The Statutory Deadline Does Not Violate Erie* ......................................................14

*The Anti-SLAPP Procedures May Not Be Applied in Federal Court* .....................................14

*The Anti-SLAPP Statute Does Not otherwise Apply To This Lawsuit* ...................................15

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abbas v. Foreign Policy Grp., LLC,*
    783 F.3d 1328 (D.C. Cir. 2015) .................................................................................... 7, 14

*Argentine Republic v. Nat'l Grid PLC,*
    637 F.3d 365 (D.C. Cir. 2011) (*per curiam*), *cert. denied*, 132 S. Ct. 761 (2011) ................... 14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................6

*Biro v. Condé Nast,*
    963 F. Supp. 2d 255 (S.D.N.Y. 2013) ....................................................................... 3, 4

*Biro v. Condé Nast,*
    807 F.3d 541(2d Cir. 2015). ................................................................................... 3, 12

*Bivens v. Six Unknown Named Agents,*
    403 U.S. 388 (1971) ................................................................................................6

*Clyburn v. News World Commc'ns,*
    705 F. Supp. 635 (D.D.C. 1989), *aff'd*, 903 F.2d 29 (D.C. Cir. 1990) ...................... 2, 5, 9

*Cockrum v. Donald J. Trump for President, Inc.,*
    319 F. Supp. 3d 158 (D.D.C. 2018) ............................................................................ 14

*Competitive Enter. Inst. v. Mann,*
    150 A.3d 1213 (D.C. 2016) ....................................................................................7

*Davis v. Indiana State Police,*
    541 F.3d 760 (7th Cir. 2008) ....................................................................................6

*Deripaska v. Associated Press,*
    282 F. Supp. 3d 133 (D.D.C. 2017) ..........................................................................4

*Deripaska v. Associated Press,*
    No. 17-0091-(ESH) (D.D.C. October 17, 2017) ......................................................... 15

*Doe No. 1 v. Burke,*
    91 A.3d 1031 (D.C. 2014) ........................................................................................9

*Fairbanks v. Roller,*
    314 F. Supp. 3d 85 (D.D.C. 2018) ............................................................................. 14

*Flying Food Group, Inc. v. NLRB*,
    471 F.3d 178 (D.C. Cir. 2006) .................................................................................3

*Fridman v. Steele*,
    2018 CA 002667 B (D.C. Sup. Ct. August 20, 2018) .................................... *passim*

*Gertz v. Welch*,
    418 U.S. 323 (1974) .....................................................................................9, 10

*Jankovic v. Int'l Crisis Grp.*,
    72 F. Supp. 3d 284 (D.D.C. 2014), *aff'd*, 822 F.3d 576 (D.C. Cir. 2016) ...............5

*Kelly-Brown v. Winfrey*,
    717 F.3d 295 (2d. Cir. 2013) .................................................................................3

*Kim v. United States*,
    632 F.3d 713 (D.C. Cir. 2011) .............................................................................3

*Kindergartners Count v. Demoulin*,
    No. 00-4173, 2003 U.S. Dist. LEXIS 2129 (D. Kan. Feb. 11, 2003)...................2

*Krauss v. Globe Int'l, Inc.*,
    251 A.D.2d 191 (1st Dep't 1998) .........................................................................2

*Lohrenz v. Donnelly*,
    223 F. Supp. 2d 25 (D.D.C. 2002), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003) ...............2, 4, 5

*Martin v. Malhoyt*,
    830 F.2d 237 (D.C. Cir. 1987) .............................................................................8

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) .............................................................................4

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) .............................................................................................7

*OAO Alfa Bank v. Center for Public Integrity*,
    387 F. Supp. 2d 20 (D.D.C. 2005) .......................................................................5

*Oparaugo v. Watts*,
    884 A.2d 63 (D.C. 2005).......................................................................................2

*Parisi v. Sinclair*,
    845 F. Supp. 2d 215 (D.D.C. 2012) .....................................................................3

*Patton v. Klein*,
    746 A.2d 866 (D.C. 1999) .....................................................................................8

*Pippen v. NBC Universal Media, LLC,*
    734 F.3d 610 (7th Cir. 2013) ..................................................................................4

*Schatz v. Republican State Leadership Comm.,*
    669 F.3d 50 (1st Cir. 2012) ....................................................................................4

*Schultz v. Reader's Digest Assn., Inc.,*
    No. 770310, 1977 U.S. Dist. LEXIS 12563 (E.D. Mich. 1977) ...........................2

*Sherrod v. Breitbart,*
    720 F.3d 932 (D.C. Cir. 2013) ............................................................................ 14

*Smith v. District of Columbia,*
    629 F. Supp. 2d 53 (D.D.C., 2009) .......................................................................8

*Smith-Haynie v. District of Columbia,*
    155 F.3d 575 (D.C. Cir. 1998) ..........................................................................3, 4

*Tavoulareas v. Piro,*
    817 F.2d 762 (D.C. Cir. 1987) ..............................................................................4

*Waldbaum v. Fairchild Publ'ns, Inc.,*
    627 F.2d 1287 (D.C. Cir. 1980) ...........................................................4, 9, 10, 11

## Statutes

D.C. Code § 16-5502(a) ............................................................................................... 14

## Rules

Fed. R. Civ. P. 6(b) ...................................................................................................... 14

## Other Authorities

2 McCormick on Evidence, §§ 336, 338 (7th ed. 2013) ...............................................8

David E. Sanger, *Harry Reid Cites Evidence of Russian Tampering in U.S. Vote, and Seeks F.B.I. Inquiry,* New York Times (Aug. 29, 2016) ...................................................................... 10

Jeff Stein, *Vladimir Putin's Russia: Will it Rock America's Vote?* Newsweek (Oct. 22, 2016) ............... 10

Paul Musgrave, *Why Would Russia Interfere in the US Election? Because Sometimes it Works,* Washington Post (July 26, 2016) ............................................................................ 10

Restatement (Second) of Judgments § 28 ....................................................................8

## THE 12(B)(6) MOTION SHOULD BE DENIED

At the September 26, 2018 hearing, Defendants primarily argued that the complaint is rendered deficient by its purported failure to plead that Defendants published the defamatory statements with "actual malice." In seeking to foist that pleading burden upon Plaintiffs, Defendants contend that Plaintiffs should be adjudged as limited public figures, now, before the conduct of any evidentiary procedures – and then argue that Plaintiffs' purported public figure status triggers such a pleading burden. But as explained below, that is wrong for four reasons. *First*, except in circumstances not present here, a defamation plaintiff is not saddled with a burden to *plead* the defendant's actual malice: actual malice is an *affirmative defense* which by definition has not yet been pled *by the defendant*, much less established, at the time the complaint is filed. *Second*, determining whether a plaintiff is a limited public figure requires defining the pertinent "controversy" that gave rise to the defamation. That determination, and whether the Plaintiffs thrust themselves into that controversy, present mixed questions of law and fact that are appropriately made after the answer is filed and discovery conducted. *Third*, if Plaintiffs' public/private figure status were to be determined now, before discovery, the conclusion should be that Plaintiffs are *not* limited public figures. That is so whether the controversy is defined as alleged Russian interference in the 2016 presidential election, or instead as the allegations of the defamatory report – that Plaintiffs purportedly have a corrupt relationship with Vladimir Putin. *Fourth*, although Plaintiffs did not bear a burden to plead Defendants' actual malice, the complaint nevertheless does so.

## Public Figure Status Is An Affirmative Defense

Although Plaintiffs previously supplied the Court with authority holding that public figure status is an affirmative defense, Defendants have persisted with a contrary line of argument, going so far as to contend that "the affirmative-defense piece is just dead wrong. It [public figure status] is

an element of defamation." Tr. at 43.[1]  To the contrary, the "affirmative-defense piece" of Plaintiffs'

argument is solidly grounded in controlling authority.  While a defendant's "fault" in publishing a

challenged statement is always an element of a defamation claim, a defendant's "actual malice" is

not.  *See, e.g., Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (listing elements of defamation to

include "that the defendant's fault in publishing the statement amounted to at least negligence").

Proof of a defendant's actual malice can become an evidentiary burden if and only if the court

determines that a plaintiff is a general or limited purpose public figure.  And, except in

circumstances not present here, the court should not make that determination before a defendant

asserts as an affirmative defense, in his answer, his contention that the plaintiff is a public figure.

*See, e.g., Clyburn v. News World Commc'ns*, 705 F. Supp. 635, 639 (D.D.C. 1989) (explaining that, on

summary judgment, "[t]o show that plaintiff is a limited purpose public figure, *defendants must* satisfy

three criteria" (emphasis added)), *aff'd*, 903 F.2d 29 (D.C. Cir. 1990); *Lohrenz v. Donnelly*, 223 F. Supp.

2d 25, 40, 58 (D.D.C. 2002) (granting defendant summary judgment on defamation claim where

defendant established plaintiff's public figure status, one of three "defenses" asserted), *aff'd*, 350 F.3d

1272 (D.C. Cir. 2003);  *Schultz v. Reader's Digest Assn., Inc.*, No. 770310, 1977 U.S. Dist. LEXIS 12563,

*6 (E.D. Mich. 1977) ("The defense that a plaintiff is a 'public figure' is an affirmative defense" in a

defamation case and "the burden is on the defendant to plead and prove [its] elements");

*Kindergartners Count v. Demoulin*, No. 00-4173, 2003 U.S. Dist. LEXIS 2129, *2 (D. Kan. Feb. 11,

2003) (". . . Wheeler's 'public figure' affirmative defense to DeMoulin's defamation counterclaim.").

Because public figure status is an affirmative defense, a defamation plaintiff does not

ordinarily bear a burden to plead facts in his complaint supporting the defendant's actual malice.

Instead, the defendant must plead the public figure affirmative defense and then shoulder the initial

proof burden that comes with it – to prove the plaintiff's general or limited public figure status.

*Krauss v. Globe Int'l, Inc.*, 251 A.D.2d 191, 192 (1st Dep't 1998) ("[T]he public-figure determination

---

[1] "Tr." refers to the transcript of the September 26, 2018 oral hearing on Defendants' pending motions.

should properly be made by the court placing the burden of proof on the defendant." (citation

omitted)).  That conclusion is mandated by the well-established principle that plaintiffs are "not

required to negate an affirmative defense in [their] complaint." *Flying Food Group, Inc. v. NLRB*, 471

F.3d 178, 183 (D.C. Cir. 2006); *see also Kim v. United States*, 632 F.3d 713, 718-19 (D.C. Cir. 2011)

(concluding that plaintiff need not plead exhaustion of statutory remedies under Taxpayer Bill of

Rights because failure to exhaust is affirmative defense).

　　To be sure, under a narrow exception to these principles, an "affirmative defense may be

raised by pre-answer motion under Rule 12(b)," but only "*when the facts that give rise to the defense are*

*clear from the face of the complaint.*"  *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir.

1998) (emphasis added); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d. Cir. 2013). ("[When]

affirmative defense[s] ... require[] consideration of facts outside of the complaint [they are]

inappropriate to resolve on a motion to dismiss. Affirmative defenses may be adjudicated at this

stage in the litigation, however, where the facts necessary to establish the defense are *evident on the face*

*of the complaint.*")(emphasis added); *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013)

(holding that affirmative defense of public figure status could be determined at motion to dismiss

stage where question of plaintiff's private or public figure status could "be determined based upon

the pleadings *alone*") (emphasis added)), *aff'd,* 807 F.3d 541, 544-45 (2d Cir. 2015).

　　At oral argument, Defendants failed to recognize these clearly established principles.  That is,

having failed to point out any "facts that give rise to the defense" in the complaint, even after being

challenged to do so, *see* Tr. at 36-37, they contended, against the crushing weight of the above-cited

authority (and without contrary authority), that public figure status is not an affirmative defense.

　　However, consistent with *Smith-Haynie*, courts may rule on the defamation plaintiff's public

figure status at the motion to dismiss stage only if a plaintiff's complaint concedes that defense or

the plaintiff otherwise concedes the facts that make him a public figure as a matter of law.  In *Parisi*

*v. Sinclair*, 845 F. Supp. 2d 215, 218 n.2 (D.D.C. 2012), for example, this Court expressly noted that

"Plaintiffs concede for the purpose of this motion [to dismiss] that plaintiffs are limited public figures and subject to the actual malice standard." Similarly, in *Deripaska v. Associated Press*, 282 F. Supp. 3d 133 (D.D.C. 2017), the Court entertained a public figure affirmative defense on a 12(b)(6) motion where the plaintiff failed to dispute any material facts asserted by defendants in their discussion of plaintiff's role in the relevant controversy.

Cases from other circuits resolving public figure status on 12(b)(6) motions are generally consistent with the *Smith-Haynie* principle. For example, in *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016), the plaintiff, who described himself in his pleading as a "Grammy-winning artist" and "acclaimed philanthropist," never disputed that he was a public figure for purposes of the pertinent controversy (his failure to perform at a charity concert). It was only for that reason that it was arguably appropriate for the court to consider, at the motion to dismiss stage, whether the plaintiff should be subject to an actual malice standard. *See also Pippen v. NBC Universal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (noting that former professional basketball player conceded public figure status on 12(b)(6) motion); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (noting that elected official conceded public figure status for 12(b)(6) motion); *Biro*, 963 F. Supp. 2d at 271 (finding public figure status could be determined at pleading stage where plaintiff pleaded that "he was a leading authority" on art authentication who had published and lectured extensively on topic, which was also undisputed topic of controversy).

But where, as here, the plaintiffs' public figure status *cannot* "be determined on the face of the pleadings alone," *Biro*, 963 F. Supp. 2d at 270, and the plaintiffs vigorously dispute their purported public figure status, the courts have consistently ruled on the public figure issue at the summary judgment stage or later, after both sides have had an opportunity for discovery, *see, e.g.*, *Lohrenz*, 223 F. Supp. 2d at 37 (granting summary judgment to defendants on affirmative defense of public figure status); *Tavoulareas v. Piro*, 817 F.2d 762, 775 (D.C. Cir. 1987) (holding, based on full trial record, that plaintiff was limited purpose public figure); *Waldbaum v. Fairchild Publ'ns, Inc.*, 627

F.2d 1287, 1296-98 (D.C. Cir. 1980) (affirming public figure determination made at summary judgment stage); *Jankovic v. Int'l Crisis Grp.*, 72 F. Supp. 3d 284 (D.D.C. 2014) (granting summary judgment where defendant "established that the plaintiff is a limited-purpose public figure"), *aff'd*, 822 F.3d 576 (D.C. Cir. 2016).

Here, Plaintiffs dispute that they are limited public figures for purposes of the controversies that gave rise to the publication of CIR 112 and made no statements in their complaint or motion papers that conflict with that position. Defendants therefore must raise public figure status as an affirmative defense in their responsive pleading and then bear the burden of proving that defense. *See Lohrenz*, 223 F. Supp. 2d at 37; *Clyburn*, 705 F. Supp. at 639. As Defendants have not even answered the complaint, it is premature for the Court to determine Plaintiffs' public figure status.

At oral argument (and in their previous papers) Defendants made three contrary arguments. First, they claimed that the Supreme Court's holdings in *Iqbal* and *Twombly* somehow changed a defamation plaintiff's initial pleading burden. *See* Tr. at 44. Second, they argued that Plaintiffs' public figure status has been "already adjudicated," Tr. at 6, thirteen years ago in *OAO Alfa Bank v. Center for Public Integrity*, 387 F. Supp. 2d 20 (D.D.C. 2005) ("*OAO*") and more recently by Judge Epstein in *Fridman v. Steele*, 2018 CA 002667 B (D.C. Sup. Ct. August 20, 2018) (Doc. 34) ("*Steele*"). Finally, because Plaintiffs have received media attention in connection with their businesses, Defendants ask the Court to presume that Plaintiffs are limited public figures for purposes of the controversies that gave rise to the defamation. Those arguments are wrong.

*The Iqbal/Twombly Argument*: In court, Defendants argued that defamation plaintiffs "have to plead actual malice . . . in line with *Iqbal* and *Twombly*." Tr. at 44. To the contrary, neither case says that or has anything to do with the well-settled principle that a defamation plaintiff's public figure status is an affirmative defense (or says anything else about "actual malice"). Instead, *Twombly*

concerned a civil antitrust claim[2] and *Iqbal* concerned a *Bivens*[3] claim.  In *Iqbal*, the Supreme Court applied *Twombly's* "plausibility" pleading standard to the "clear" requirement borne by plaintiffs asserting a *Bivens* "claim [of] invidious discrimination in contravention of the First and Fifth Amendments" to "plead . . . that the defendant acted with discriminatory purpose." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  The Court concluded that the complaint was inadequate because it did "not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind." *Id.* at 683. The reason why this holding is of no aid to Defendants is obvious: *Iqbal* was required by preexisting law to plausibly plead the defendants' discriminatory state of mind – a mandatory *element* of a *Bivens* claim – and he did not, whereas the Plaintiffs in this case are *not* required by any preexisting law to anticipate and plausibly plead around any *affirmative defense* that Defendants may later assert in their answer, including the affirmative defense that Plaintiffs are public figures.  *See Davis v. Indiana State Police*, 541 F.3d 760, 763 (7th Cir. 2008) (citing *Twombly* in support of Plaintiff's argument that "[c]omplaints need not anticipate, and attempt to plead around, potential affirmative defenses").

      *Plaintiffs' Public Figure Status In This Case Has Not Been "Already Adjudicated:"* Citing a decision rendered in 2005 by Judge Bates in *OAO*, and more recently, by D.C. Superior Court Judge Epstein in *Steele*, Defendants argued that Plaintiffs are required to plead Defendants' actual malice on the theory that Plaintiffs' public figure status was "already adjudicated" in those two cases.  Tr. at 6.  But whether an issue has been previously adjudicated  in a fashion that requires other courts to adopt that adjudication depends on the application of the doctrine of "issue preclusion."  A brief analysis illustrates why that doctrine does not apply to the *OAO* or *Steele* cases.

      *OAO* simply did not adjudicate the issue presented in *this case* – whether Plaintiffs are private or limited public figures in connection with the controversy that gave rise to Defendants' *publication*

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
[3] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

of CIR 112 in 2016.  *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (issue preclusion

"foreclose[s] successive litigation of an issue of fact or law actually litigated and resolved" in

previous case).  *OAO* involved defamation claims asserted by Plaintiffs Fridman and Aven [but not

Khan] based on an article dated *August 2, 2000* titled *"Cheney led Halliburton to feast at federal*

*trough/State department questions deal with firm linked to Russian mob."*  The *OAO* court's ruling on

summary judgment that Plaintiffs Fridman and Aven were public figures in connection with the

controversy that gave rise to the defamatory statements published in 2000 simply did not resolve the

question of whether Plaintiffs are limited public figures in connection with the controversy that gave

rise to the defamatory report at issue here – a report dated *September 14, 2016* titled "RUSSIA/US

PRESIDENTIAL ELECTION: KREMLIN-ALPHA GROUP COOPERATION."[4]

Nor is Judge Epstein's decision in *Steele* entitled to preclusive effect.  First, Judge Epstein did

*not* dismiss the complaint in *Steele* on the basis urged by Defendants here – that the complaint failed

to *plead* the defendants' actual malice.  Instead, applying the burden-shifting methodology of the

D.C. Anti-SLAPP Act (the "Act"),[5] a statute whose procedures conflict with the Federal Rules of

Civil Procedure and which may therefore *not* be applied in federal court,[6] Judge Epstein concluded

that the plaintiffs had failed to *adduce sufficient evidence* (prior to the conduct of any discovery).

Moreover, Judge Epstein did not make a finding on the precise issue on which defendants bear the

burden here – whether Plaintiffs *are* limited purpose public figures.  Rather, Judge Epstein

concluded "that Defendants have made *a prima facie case* that . . . Plaintiffs are limited-purpose public

---

[4] Should Defendants assert a "public figure" affirmative defense in their answer, and if and when the time comes for the Court to rule on that issue, Defendants are ultimately unlikely to benefit from Judge Bates' decision on the public figure question in *OAO*.  The defamatory statements in this case arose from a focus on the 2016 presidential election and the statements themselves focus on Plaintiffs' alleged relationship with Vladimir Putin, whereas the *OAO* article long preceded the 2016 election and it never mentions Putin in relation to the Plaintiffs, or otherwise.

[5] *See Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1232 (D.C. 2016) (describing "burden-shifting" nature of the Act); *id.* at 1238, n.32 ("[W]e agree with *Abbas* that the special [Anti-SLAPP] motion to dismiss is different from summary judgment in that it imposes the burden on plaintiffs and requires the court to consider the legal sufficiency of the evidence presented before discovery is completed."); *id.* at 1237 (Anti-SLAPP Act requires "a reversal of the allocation of burdens for dismissal").

[6] *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1332 (D.C. Cir. 2015).

figures." *Steele* at 18. A *prima facie* case that Plaintiffs were limited public figures (according to Judge Epstein's ruling, which awaits appellate review) is not remotely the same thing as the conclusion that Defendants must persuade this Court to reach – that Plaintiffs *are* public figures. 2 MCCORMICK ON EVIDENCE, §§ 336, 338 (7th ed. 2013) (explaining that a *prima facie* showing is a lower burden than, for example, a preponderance of the evidence). In sum, the *Steele* court never considered, much less "actually decided," that Defendants had met *their* burden to prove that Plaintiffs *are* public figures. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 28, note on subsection (4) ("[p]reclusive effect should not be given to the first determination when the party sought to be [pre]cluded had a heavier burden (or his adversary had a lighter burden) in the first proceeding than in the second.").

Furthermore, as the D.C. Circuit held in *Abbas*, the Act's burden-shifting scheme is inconsistent with the Federal Rules of Civil Procedure. That defeats Defendants' effort to assign preclusive effect to the findings made by Judge Epstein under the prism of the Act's burden shifting procedure. Otherwise, this Court would be giving preclusive effect to a determination made using procedures that may not be used in federal court.

Judge Epstein's decision may not be afforded preclusive effect for the additional reason that it is subject to a pending appeal and therefore not yet final.[7] In a federal diversity action, a state [or D.C. Superior Court] determination may only be given preclusive effect when, among other requirements, "D.C. law would give the [determination] of the Superior Court preclusive effect." *Smith v. District of Columbia*, 629 F. Supp. 2d 53, 58 (D.D.C., 2009). Under D.C. Law, among other conditions to the application of issue preclusion, the issue must have been determined in a "*final judgment* on the merits . . . after a full and fair opportunity for litigation by the parties." *Patton v. Klein,* 746 A.2d 866, 869 (D.C., 1999)(emphasis added). *See also Martin v. Malhoyt*, 830 F.2d 237, 264 (D.C. Cir. 1987) (observing that "according preclusive effect to a judgment from which an appeal has been taken [] risks denying relief on the basis of a judgment that is subsequently overturned").

---

[7] Attached are copies of Plaintiffs' notice of appeal and the November 6, 2018 D.C. Court of Appeals scheduling order.

Here, to the extent any issues pertinent to this case were decided by Judge Epstein, his determinations, subject to appeal, are not final and therefore may not be afforded preclusive effect.

*Plaintiffs' General Media Presence Does Not Relieve Defendants Of Their Burden To Plead And Prove Public Figure Status:* Lastly, having failed to identify any content in Plaintiffs' complaint that concedes public figure status, and having failed to identify any authority that precludes Plaintiffs from vigorously disputing their purported public figure status, Defendants take resort in a reference to the media's coverage of the Plaintiffs, as if that were a basis for jettisoning the timeworn principle that public figure status is an affirmative defense. It is not. Instead, where, as here, Defendants argue that Plaintiffs are limited public figures, the Court must undertake a "fact-intensive" inquiry. *Doe No. 1 v. Burke*, 91 A.3d 1031, 1041 (D.C. 2014); *Waldbaum*, 627 F.2d at 1293 ("[A] court analyzing whether a given plaintiff is a public figure must look at the facts, taken as a whole . . . ."). A fact-intensive inquiry is more than a collection of newspaper articles or Google hits; it requires an examination of evidence. *See, e.g., Gertz v. Welch*, 418 U.S. 323, 352 (1974) (explaining that limited public figure determination requires "looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation"). Respectfully that examination must be undertaken after discovery is completed. *See, e.g., Clyburn*, 705 F. Supp. at 639 (deciding plaintiff's public figure status on motion for summary judgment and placing burden on defendants to show plaintiff meets public figure criteria).

## Plaintiffs Are Not Public Figures For The Controversies Here

Even *if* it were appropriate for the Court to make a public figure determination at this juncture, Plaintiffs are not public figures for the "particular controversy *giving rise to* the defamation." *Gertz*, 418 U.S. at 352 (emphasis added); *accord Waldbaum*, 627 F.2d at 1292 (quoting *Ibid*). Here, *Waldbaum's* standard, that a court must look at the "specific questions" people were "discussing" and the press was covering at the time the defamatory statements were made – in 2016 – requires the conclusion that the relevant controversy was alleged Kremlin interference in the 2016

presidential election.  *See, e.g.*, Paul Musgrave, *Why Would Russia Interfere in the US Election? Because Sometimes it Works,* WASHINGTON POST, (July 26, 2016);[8] Jeff Stein, *Vladimir Putin's Russia: Will it Rock America's Vote?* NEWSWEEK (Oct. 22, 2016);[9] David E. Sanger, *Harry Reid Cites Evidence of Russian Tampering in U.S. Vote, and Seeks F.B.I. Inquiry,* NEW YORK TIMES (Aug. 29, 2016).[10]  Looking at that question through the lens of *Gertz*'s "giving rise to" requirement leads to the same conclusion – the reason CIR 112 was published to third parties was because it was one of the seventeen reports in the "Dossier" shared with media outlets and others because of significant interest in possible Russian interference in the U.S. Presidential Election – a subject covered in detail by most of the other dossier reports.  *See, e.g.*, Compl. nn. 2, 3, 5 (citing to articles in MOTHER JONES, YAHOO NEWs, and BUZZFEED referencing or republishing the Dossier).  Even Defendants grudgingly admit as much.  *See* Defs.' Mot. to Dism. at 33-34 (averring that Defendants' briefings on Dossier to media focused on Russian election interference and possible Trump campaign collusion, not Plaintiffs).

Assuming, as Plaintiffs urge, that the relevant public controversy is alleged Kremlin interference in the 2016 presidential election, Defendants have not pointed to any evidence that Plaintiffs have "thrust" themselves into the "forefront" of debate on that topic.  *Gertz*, 418 U.S. at 352; *Waldbaum*, 627 F.2d at 1297.  Not a single article referenced in Defendants' motion papers or mentioned at oral argument supports the notion that Plaintiffs thrust themselves into the debate about purported Russian interference in the 2016 presidential election.  Indeed, Plaintiffs played no role in and did not seek to shape the outcome of that  debate.  Thus, the Court must conclude that Plaintiffs are not limited public figures for purposes of election interference.[11]

---

[8]  https://www.washingtonpost.com/posteverything/wp/2016/07/26/why-would-russia-interfere-in-the-u-s-election-because-it-usually-works/?noredirect=on&utm_term=.db62b73fbc70.

[9]  https://www.newsweek.com/russia-hackers-putin-wikileaks-trump-clinton-sanders-kremlin-guccifer-512679.

[10]  https://www.nytimes.com/2016/08/30/us/politics/harry-reid-russia-tampering-election-fbi.html.

[11]  Given that Plaintiffs have not thrust themselves into the relevant controversy, there is no need to reach the third step of the *Waldbaum* test – the germaneness of each defamatory statement to the controversy.  Should the Court reach that question, the statements relating to bribery and corruption are not germane to the election interference.

At the hearing, Defendants argued that the relevant controversy is instead the purportedly broad controversy of "the relationship between Russian oligarchs and the Russian Government" Tr. at 9.  But Defendants failed to explain how that broad controversy "gave rise" to the writing and circulation of CIR 112 – the *Gertz* standard for defining a controversy.  In any event, Defendants' making of this argument underscores how discovery may enhance the Court's ability to make the most accurate factual determination on that question.  On the one hand, if discovery reveals that Defendant Simpson asked Christopher Steele to produce a report about Plaintiffs because of Simpson's general interest in the relationship between "oligarchs and the Russian government," that might provide some support for Defendants' proposed definition of the controversy.  But, more-likely, if discovery reveals that Simpson's request for the report about Plaintiffs arose from Simpson's engagement by the Clinton campaign and the DNC to create political opposition material related to the 2016 presidential election, that factual record would provide *evidence* for Plaintiffs' proposed definition of the controversy.[12]

At oral argument, Defendants criticized Plaintiffs' definition of the relevant controversy as "ignor[ing] the content of CIR 112." Tr. at 8.  Plaintiffs have two responses.  First, as explained above, the content of the defamatory statement does not necessarily define the controversy, as under *Gertz*, a controversy can "give rise to" defamatory statements whose content is different from the subject matter of that controversy.  Indeed, *Waldbaum* does not say "look at the defamatory language to define the public controversy." It instructs courts that "[t]o determine whether a controversy indeed existed and, if so, to define its contours, the judge must examine whether persons actually were discussing some specific question."  627 F.2d at 1297.

---

[12] Plaintiffs contend that Defendants were not hired to investigate the relationship between the Russian state and Russian oligarchs, but to dig up dirt on a U.S. political candidate, including whether his campaign colluded with Russia to interfere in the U.S. election.  *See, e.g.*, Compl. ¶ 2.

But second, *even if*, using Defendants' proposed methodology, the "content of" the defamatory statement were to define the controversy, that would not aid Defendants either. The summary and detail sections of CIR 112 do not discuss the general issue of the relationship between oligarchs and Russia, and instead make narrower allegations that Plaintiffs have a corrupt relationship with Vladimir Putin. But neither at oral argument nor in their papers filed to date have Defendants offered *any* evidence that Plaintiffs publicly thrust themselves into a discussion about whether or not they have a bribery-based relationship with Putin. In sum, whether the controversy is defined as *either* the issue that likely gave rise to CIR 112 [Russian electoral interference] *or* as the issue that CIR 112's content addresses [Plaintiffs' purported bribery of Putin], in *neither* formulation of the controversy is it appropriate to deem Plaintiffs as public figures – especially pre-discovery.

## Even If It Were Appropriate To Saddle Plaintiffs With The Burden To Plead Actual Malice, They Have Done So

Even assuming the Court were to conclude that Plaintiffs are limited public figures, the Court would nevertheless have to deny the 12(b)(6) motion. As explained in Plaintiffs' opposition papers, and contrary to Defendants' claims at oral argument, Plaintiffs have plausibly pled actual malice. *See* Compl. ¶¶ 26-27 (Doc. 17). Even where defamation plaintiffs are required to plead facts supporting a defendant's actual malice, *e.g.*, when the plaintiff admits public figure status, courts have been willing to "infer actual malice from objective facts." *Biro*, 807 F.3d at 545. For example, such an inference is permitted where a "defendant provides no source for the allegedly defamatory statements," *ibid.*, a fact that Plaintiffs pled here, *see* Compl. ¶ 4 (averring that CIR 112 was not verified and that its content was provided by unidentified sources). Similarly, actual malice may be inferred where the defamatory report was "published despite 'obvious [specified] reasons to doubt the veracity of the informant or the accuracy of his reports' or despite the 'inherently improbable' nature of the statements themselves." *Biro*, 807 F.3d at 545 (alteration in original) (citation omitted). Here, there are at least two sets of facts that constitute reasons to doubt the veracity of

the defamatory statements in CIR 112.  First, with regard to the allegation that Plaintiffs used an Alfa employee, Govorun, as a "bag man" to deliver cash bribes, the Complaint pleads that Govorun was not an Alfa employee at the time of the alleged act of bribery.  Compl. ¶ 25.  Second, while the headline of CIR 112 suggests that Plaintiffs cooperated with the Kremlin in connection with the 2016 presidential election, the absence of *any* information in the body of CIR 112 to support that defamatory headline is a fact supporting "the inherently improbable nature of the statement[]" in the headline.  Further permitting an inference of actual malice, the Complaint pleads that Defendants worked closely with Steele, who admitted that "he did not interview his sources . . . gathered his information through 'intermediaries' and 'subsources,'" and that "as much as 30% of the Dossier's content may not be 'accurate.'"  Compl. ¶ 13.  Moreover, Plaintiffs alleged that "Defendants could easily have removed CIR 112 from the Dossier before they started peddling it to the media and journalists in September and October 2016" but "chose not to do so."  Compl. ¶ 4.

Defendants' subsequent statements underscore the likelihood that at least some of the defamatory statements were published with actual malice.  For example, Defendants acknowledge that they had no factual support for the implication in the headline of CIR 112.  Defs.' Mot. to Dism. at 17 ("The body of [CIR 112] makes clear that its author did not assert any involvement or cooperation by the Alfa Group in the U.S. presidential election.").  In sum, even if the Court were to conclude that Plaintiffs bore a burden to plead facts supporting an inference of actual malice, Plaintiffs have done so.

## THE ANTI-SLAPP MOTION SHOULD BE DENIED

At oral argument, Defendants candidly conceded that they were "swimming uphill on the application of the Anti-SLAPP Act" in this case.  Tr. at 22.  Indeed, there are three distinct reasons why Defendants' Anti-SLAPP motion must be denied: (a) Defendants filed their motion after the expiration of the statutory deadline; (b) the Act cannot be applied because its procedures conflict with the Federal Rules, as held by the D.C. Circuit and by three D.C. District Court judges; and (3)

Defendants' invocation of the Act requires them to show that the defamatory statements were made in connection with "communicating views to members of the public," but Defendants, by their own admission, were not communicating any views by their publication of the statements that defame Plaintiffs.

*The Motion Was Filed Late*: The Act requires, without exception, that a motion be filed "within 45 days after service of the claim." D.C. Code § 16-5502(a). Here, Defendants' motion was not filed within 45 days of service of the amended complaint. Because Fed. R. Civ. P. 6(b) does not permit district courts to extend time limits prescribed by statute, Defendants' motion, filed outside of the time limit, was untimely. Pls.' Opp'n to Special Mot. at 3-4.[13]

*Enforcing The Statutory Deadline Does Not Violate Erie:* Nor is there any merit to the argument that Defendants made in their Reply that, under *Erie* and its progeny, the D.C. Anti-SLAPP statute's 45-day limit is a procedural requirement that is somehow inconsistent with "the Court's inherent power to manage its docket." Defs.' Reply to Special Mot. at 3[14] (Doc. 28). To the contrary, the federal courts' power to manage the docket has never been held to permit district courts, sitting in diversity, to extend or disregard strict filing deadlines mandated by state or local statutes. Moreover, the source of federal courts' power to extend filing deadlines – Rule 6(b) – does *not* permit the extension of deadlines prescribed by statute. *Sherrod v. Breitbart*, 720 F.3d 932, 937-38 (D.C. Cir. 2013); *Argentine Republic v. Nat'l Grid PLC*, 637 F.3d 365, 368 (D.C. Cir. 2011).

*The Anti-SLAPP Procedures May Not Be Applied in Federal Court*: Even *if* Defendants had filed their motion within the statutory deadline, this Court would be unable to consider it because the Act's procedures for dismissal of a complaint are inconsistent with the federal rules. *Abbas*, 783 F.3d at 1332; *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 93-94 (D.D.C. 2018); *Cockrum v. Donald J. Trump*

---

[13] "Pls.' Opp'n to Special Mot." refers to Plaintiffs' opposition to Defendants' motion to dismiss under the Act. *See* Doc. 24.

[14] "Defs.' Reply to Special Mot." refers to Defendants' reply in support of their motion to dismiss under the Act. *See* Doc. 28.

*for President, Inc.*, 319 F. Supp. 3d 158, 166 n. 2 (D.D.C. 2018); *Deripaska v. Associated Press*, No. 17-0091-(ESH) (D.D.C. October 17, 2017) (Doc. 16).

 *The Anti-SLAPP Statute Does Not Otherwise Apply To This Lawsuit*: Finally, even *if* the Court were able to reach the merits of the Anti-SLAPP motion, it would be required to deny it. The Act, by its own terms, is limited to the protection of the expression of "views" in the public interest. Defendants, by their own admission, were not expressing any views. They invariably describe CIR 112 as "report[ing] statements by Russian government officials" and insist that "[n]either Steele nor Defendants endorse or provide editorial gloss on the reports." *See* Defs.' Mot. to Dism. at 38-39. To be sure, in *Steele*, Judge Epstein permitted Defendants to invoke the Act anyway, reasoning that: (1) the Act purportedly protects *all* speech subject to the First Amendment's protection [including factual statements]; and (2) that the Act therefore also protects the publication of factual allegations, in addition to the expression of "views." *Steele* at 14. But Judge Epstein cited no authority for the notion that the Act encompasses all speech protected by the First Amendment. To the contrary, the ambit of the Act is not "at least as broad as" (*Steele* at 14) the First Amendment – the Act covers only a *subset* of speech protected by the First Amendment (e.g., expression of views) and only applies enhanced procedural protections to the expression of that *subset* of constitutionally protected speech. If Judge Epstein were correct that the Act covers *all* speech within the ambit of the First Amendment, it would cover commercial speech, which it clearly does not. In short, because Defendants *admit* that their conduct did not involve any expression of views – a requirement for invoking the Act – their special motion must be denied.

Dated:  November 7, 2018

Respectfully submitted,

_____*Alan S. Lewis*_____

Alan S. Lewis (#NY0252)
John J. Walsh
Karen E. Meara
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.:    212-238-8647
Fax:    212-732-3232
Email:  lewis@clm.com

*Attorneys for Plaintiffs*
  *Mikhail Fridman, et al.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of November 2018, I electronically filed and served the foregoing using the CM/ECF system.

       /s/ *Alan S. Lewis*

       Alan S. Lewis