# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MIKHAIL FRIDMAN, PETR AVEN, and
GERMAN KHAN,

         Plaintiffs,

   v.

BEAN LLC a/k/a FUSION GPS, and GLENN
SIMPSON,

         Defendants.

Civil Case No. 1:17-cv-2041-RJL

## DEFENDANTS' MOTION TO AMEND ORDER
## DENYING DEFENDANTS' MOTIONS TO DISMISS

Pursuant to Federal Rules of Civil Procedure 52(b), 54(b) and 59(e), and 28 U.S.C. § 1292(b), Defendants hereby move to alter and amend the Court's order denying Defendants' motions to dismiss, ECF No. 49 (filed Jan. 15, 2019) (the "Order"), to state that the following two questions presented by that Order are "controlling question[s] of law as to which there is substantial ground for difference of opinion," and that an "immediate appeal . . . may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b):

> Question 1: Can and should a district court determine at the pleadings stage whether a plaintiff is a limited-purpose public figure such that the plaintiff must have plausibly pled actual malice to survive a motion to dismiss?

> Question 2: After *Competitive Enterprise Institute v. Mann*, 150 A.3d 1213 (D.C. 2016), is *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015), no longer controlling on the question whether the District of Columbia's Anti-SLAPP Act, D.C. Code § 16-5501, *et seq.*, is applicable in federal court?

In support, Defendants state as follows:

1.      "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The deadline for filing a motion to "alter or amend a judgment," and/or to "amend . . . findings" or "make additional findings," is 28 days after the entry of the judgment. Fed. R. Civ. P. 52(b) & 59(e). "Judgment" as used in these rules includes any "decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a).[1]

2.      Under 28 U.S.C. § 1292(b), where a particular order "involves a controlling question of law as to which there is substantial ground for difference of opinion," and an "immediate appeal . . . may materially advance the ultimate termination of the litigation," the district court "shall so state in writing in such order," to give the Court of Appeals an opportunity to decide whether to grant interlocutory review.

3.      For the reasons stated in the accompanying Memorandum, the two questions stated above are "controlling question[s] of law as to which there is substantial ground for difference of opinion," and an "immediate appeal" on those questions of law "may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b).

WHEREFORE, the Court should "revise" its "order" (Rule 54(b)), "alter or amend" its "judgment" (Rule 52), and/or "amend" its "findings" or "make additional findings" (Rule 59(e)), as appropriate, to state in the Order that the two questions stated above are "controlling question[s] of law as to which there is substantial ground for difference of opinion," and that an

---

[1] According to the electronic docket, the Order was "filed" on January 15, 2019, and "entered" on January 16, 2019. Out of an abundance of caution, Defendants are filing this motion within 28 days of the "filed" date, January 15

"immediate appeal . . . may materially advance the ultimate termination of the litigation," 28

U.S.C. § 1292(b).

Dated:   February 12, 2019                    ZUCKERMAN SPAEDER LLP

                                              By:      */s/ Steven M. Salky*
                                              Steven M. Salky (D.C. Bar No. 360175)
                                              William W. Taylor, III (D.C. Bar No. 84194)
                                              Rachel F. Cotton (D.C. Bar No. 997132)
                                              Adam B. Abelson (D.C. Bar No. 1011291)
                                              **ZUCKERMAN SPAEDER LLP**
                                              1800 M Street, N.W., Suite 1000
                                              Washington, D.C. 20036
                                              Tel: (202) 778-1800
                                              Fax: (202) 822-8106
                                              wtaylor@zuckerman.com
                                              ssalky@zuckerman.com
                                              rcotton@zuckerman.com
                                              aabelson@zuckerman.com

                                              *Counsel for Defendants*

## LOCAL RULE 7(M) STATEMENT

Pursuant to Local Rule 7(m), I have conferred with counsel for Plaintiffs. I am authorized

to state that Plaintiffs oppose the relief sought in this motion.


/s/ Steven M. Salky
Steven M. Salky


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 12, 2019, the foregoing Defendants' Motion To

Amend Order Denying Defendants' Motions To Dismiss was filed with the Court's CM/ECF

Service, and thereby provided to the following counsel of record:


Alan S. Lewis, Esquire
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel: (212) 238-8647
Lewis@clm.com

Kim Hoyt Sperduto, Esquire
SPERDUTO THOMPSON PLC
1133 Twentieth Street, NW
Second Floor
Washington, D.C. 20036
Tel: (202) 408-8900
ksperduto@sperdutothompson.com


/s/ Adam B. Abelson
Adam B. Abelson

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MIKHAIL FRIDMAN, PETR AVEN, and
GERMAN KHAN,

              Plaintiffs,

    v.

BEAN LLC a/k/a FUSION GPS, and GLENN
SIMPSON,

              Defendants.

Civil Case No. 1:17-cv-2041-RJL

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO AMEND ORDER DENYING DEFENDANTS'
MOTIONS TO DISMISS**

Dated:   February 12, 2019

Steven M. Salky (D.C. Bar No. 360175)
William W. Taylor, III (D.C. Bar No. 84194)
Rachel F. Cotton (D.C. Bar No. 997132)
Adam B. Abelson (D.C. Bar No. 1011291)
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
wtaylor@zuckerman.com
ssalky@zuckerman.com
rcotton@zuckerman.com
aabelson@zuckerman.com

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

Table of Contents ....................................................................................................................... ii

Table of Authorities .................................................................................................................. iii

Introduction ............................................................................................................................... 1

Background ................................................................................................................................ 1

Argument ................................................................................................................................... 3

I.   The Court's Order Denying Defendants' Motions to Dismiss Presents Two
Controlling Questions of Law as to Which There Is Substantial Ground for
Difference of Opinion. .................................................................................................... 3

    A.   There is a Substantial Question Whether Courts Can and Should Resolve
at the Pleadings Stage Whether a Defamation Plaintiff Is a Public Figure
Who Must Plausibly Plead Actual Malice. ............................................................ 4

    B.   There Is A Substantial Question Whether *Abbas* Remains Controlling
After *Mann* on the Applicability of the D.C. Anti-SLAPP Act in this Court. ......... 10

        1.   *Mann* Fundamentally Changed the Analysis of Whether the D.C.
Anti-SLAPP Act Is Substantive Under Erie. ................................................... 10

        2.   *Mann* Also Fundamentally Changed the Analysis of Whether There
Is "Direct Collision" between the Anti-SLAPP Act and the Federal
Rules. ............................................................................................................. 12

II.   An Immediate Appeal of these Controlling Questions Would Materially
Advance the Ultimate Termination of This Case. ........................................................... 15

Conclusion ................................................................................................................................ 17

# TABLE OF AUTHORITIES

## CASES

*Abbas v. Foreign Policy Group, LLC,*
  783 F.3d 1328 (D.C. Cir. 2015) ....................................................................... *passim*

*APPC Servs., Inc. v. Spring Commc'ns Co.,*
  297 F. Supp. 2d 90 (D.D.C. 2003) .............................................................................. 5

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.,*
  435 F.3d 396 (3d Cir. 2006) ....................................................................................... 8

*Biro v. Conde Nast,*
  963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd,* 807 F.3d 541 (2d Cir. 2015) .............. 7

*Boley v. Atl. Monthly Group,*
  950 F. Supp. 2d 249 (D.D.C. 2013) ..................................................................... 3, 15

*Burke v. Air Serv. Int'l, Inc.,*
  685 F.3d 1102 (D.C. Cir. 2012) ............................................................................... 14

*Carbone v. CNN, Inc.,*
  910 F.3d 1345 (11th Cir. 2018) ............................................................................... 15

*Cockrum v. Donald J. Trump for President, Inc.,*
  319 F. Supp. 3d 158 (D.D.C. 2018) ........................................................................... 3

*\*Competitive Enterprise Institute v. Mann,*
  150 A.3d 1213 (D.C. 2016) ............................................................................. *passim*

*\*Deripaska v. Associated Press,*
  282 F. Supp. 3d 133 (D.D.C. 2017) .............................................................. 3, 5, 6, 16

*Earley v. Gatehouse Media Penn. Holdings, Inc.,*
  Civil Action No. 3:12-1886, 2013 WL 5466149 (W.D. Pa. Sept. 30, 2013) ............. 8

*Erie R. Co. v. Tompkins,*
  304 U.S. 64 (1938) .......................................................................................... *passim*

*Fairbanks v. Roller,*
  314 F. Supp. 3d 85 (D.D.C. 2018) ......................................................................... 3, 4

*Farah v. Esquire Magazine,*
  736 F.3d 528 (D.C. Cir. 2013) ................................................................... 7, 8, 16, 17

*Farah v. Esquire Magazine, Inc.,*
  863 F. Supp. 2d 29 (D.D.C. 2012) ........................................................................... 15

*Forras v. Rauf,*
  39 F. Supp. 3d 45, (D.D.C. 2014), *aff'd on other grounds,*
  812 F.3d 1102 (D.C. Cir. 2016) ...................................................................... 3, 15

*Godin v. Schencks,*
  629 F.3d 79 (1st Cir. 2010) ........................................................................ 13, 15

*Henry v. Lake Charles Am. Press, LLC,*
  556 F.3d 164 (5th Cir. 2009) ...................................................................... 15, 17

*Hourani v. Psybersolutions LLC,*
  164 F. Supp. 3d 128 (D.D.C. 2016) ..................................................................... 6

*Jankovic v. Int'l Crisis Grp.,*
  822 F.3d 576 (D.C. Cir. 2016) ........................................................................... 16

*Khan v. Orbis Business Intel. Ltd.,*
  Case No. 2018 C 002667 B (D.C. Super. Ct. Aug 20, 2018) ..................... 2, 9, 14, 17

*Liberty Synergistics Inc. v. Microflo Ltd.,*
  718 F.3d 138 (2d Cir. 2013) ............................................................................. 15

*Libre By Nexus v. Buzzfeed, Inc.,*
  311 F. Supp. 3d 149 (D.D.C. 2018) ..................................................................... 3

*Los Lobos Renewable Power, LLC v. Americulture, Inc.,*
  885 F.3d 659 (10th Cir. 2018) ........................................................................... 15

*Makaeff v. Trump Univ., LLC,*
  736 F.3d 1180 (9th Cir. 2013) ........................................................................... 13

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,*
  674 F.3d 369 (4th Cir. 2012) .............................................................................. 7

*McKee v. Cosby,*
  874 F.3d 54 (1st Cir. 2017) ................................................................................. 7

*MiMedx Grp., Inc. v. DBWPartners, LLC,*
  Civil Action No. 17-1925 (JDB), 2018 WL 4681005 (D.D.C. Sept. 28, 2018) ......... 6

*Molock v. Whole Foods Market Group, Inc.,*
  317 F. Supp. 3d 1 (D.D.C. 2018) ......................................................................... 5

*New York Times Co. v. Sullivan,*
  376 U.S. 254 (1964) ........................................................................................... 4

*OAO Alfa Bank v. Center for Public Integrity,*
  387 F. Supp. 2d 20 (D.D.C. 2005) ..................................................................... 2, 9

iv

*Parisi v. Sinclair*,
   845 F. Supp. 2d 215 (D.D.C. 2012) ........................................................................... 6

*Pippen v. NBCUniversal Media, LLC*,
   734 F.3d 610 (7th Cir. 2013) .................................................................................... 7

*Salve Regina College v. Russell*,
   499 U.S. 225 (1991) ................................................................................................. 10

*\*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ..................................................................................... 11, 12, 13

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987) ............................................................................. 4, 16

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) ............................................................................. 13, 15

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) ..................................................................................... 8

*Waldbaum v. Fairchild Pubs., Inc.*,
   627 F.2d 1287 (D.C. Cir. 1980) ............................................................................. 4, 7

*Zimmerman v. Al Jazeera Am., LLC*,
   246 F. Supp. 3d 257 (D.D.C. 2017) .......................................................................... 6

## STATUTES

28 U.S.C. § 1292(b) ............................................................................................. 1, 17

28 U.S.C. § 2072 ......................................................................................................... 12

D.C. Code § 16-5501 *et seq.* ............................................................................. *passim*

## OTHER AUTHORITIES

*Deripaska v. Associated Press*, Case No. 1:17-cv-913-ESH, Mem. in Supp. Mot. to Dismiss,
   ECF No. 10 (Aug. 16, 2017) ..................................................................................... 5

## RULES

Fed. R. Civ. P. 11 ....................................................................................................... 13

Fed. R. Civ. P. 12(b)(6) ..................................................................................... *passim*

Fed. R. Civ. P. 41(b) .................................................................................................. 13

Fed. R. Civ. P. 56 ................................................................................................. 13, 14

## INTRODUCTION

Where a particular order "involves a controlling question of law as to which there is substantial ground for difference of opinion," and an "immediate appeal . . . may materially advance the ultimate termination of the litigation," the district court "shall so state in writing in such order," to give the Court of Appeals an opportunity to decide whether to grant interlocutory review. 28 U.S.C. § 1292(b). This Court's January 15, 2019, order denying Defendants' motions to dismiss, ECF No. 49 ("Order") and accompanying Memorandum Opinion, ECF No. 48 ("Mem. Op."), present two such questions:

> Question 1: Can and should a district court determine at the pleadings stage whether a plaintiff is a limited-purpose public figure such that the plaintiff must have plausibly pled actual malice to survive a motion to dismiss?
>
> Question 2: After *Competitive Enterprise Institute v. Mann*, 150 A.3d 1213 (D.C. 2016) ("*Mann*"), is *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015), no longer controlling on the question whether the District of Columbia's Anti-SLAPP Act, D.C. Code § 16-5501 *et seq.* ("Anti-SLAPP Act" or the "Act"), is applicable in federal court?

For the reasons set forth below, Defendants request that the Court amend its Order to state that those are two controlling questions of law the immediate appeal of which may materially advance the ultimate termination of this litigation.

## BACKGROUND

Plaintiffs German Khan, Mikhail Fridman and Petr Aven have filed two virtually identical lawsuits alleging that they were defamed by the publication of statements contained in a Company Investigative Report, CIR 112. They filed one in D.C. Superior Court, against Christopher Steele and his company, Orbis Business Intelligence Limited, who allegedly compiled CIR 112. And they filed this case, in federal court, against Fusion GPS and one of its founders, Glenn Simpson, who allegedly contracted with Steele and Orbis to compile CIR 112.

1

In August 2018, the Superior Court granted Orbis's and Mr. Steele's special motion to dismiss under the D.C. Anti-SLAPP Act. *Khan v. Orbis Business Intel. Ltd.*, Case No. 2018 C 002667 B (D.C. Super. Ct. Aug 20, 2018) (filed in this Court as ECF No. 34-1) ("*Khan*"). The *Khan* court, following the D.C. Court of Appeals' *Mann* decision, held that the defendants there had made a prima facie showing that Plaintiffs' claims arose from an "act in furtherance of the right of advocacy on issues of public interest." *Id.* at 18. The *Khan* court also held, following Judge Bates's holding in a prior defamation case these same Plaintiffs brought against the Center for Public Integrity, *OAO Alfa Bank v. Center for Public Integrity*, 387 F. Supp. 2d 20 (D.D.C. 2005), that Plaintiffs were "public figures for at least a limited purpose related to the information in CIR 112," namely "for the broad controversy relating to Russian oligarchs' involvement with the Russian government and its activities and relations around the world, including the United States." *Id.* at 16-18. Finally, the court held that Plaintiffs could not show a likelihood of success on the merits because they had neither plausibly alleged nor presented evidence of actual malice. *Id.* at 18-19.

Just as Mr. Steele and Orbis had done in *Khan*, Defendants in this case moved to dismiss under Rule 12(b)(6) and filed a special motion to dismiss under the D.C. Anti-SLAPP Act. The Rule 12(b)(6) motion argued, *inter alia*, that Plaintiffs were limited purpose public figures who had failed to plausibly plead actual malice. The D.C. Anti-SLAPP motion argued that Plaintiffs' claim arose from an act in furtherance of the right of advocacy on issues of public interest and should be dismissed because Plaintiffs failed to plausibly allege actual malice and could not offer any evidence of actual malice. The Court held oral argument and the parties submitted supplemental briefs.

On January 15, 2019, the Court denied both of Defendants' motions to dismiss. As to

Defendants' Rule 12(b)(6) motion, the Court concluded that it "cannot resolve" the question of

whether Plaintiffs are public figures at the pleadings stage, holding that it was bound to treat

Plaintiffs' "public figure status" as "an affirmative defense" and that it would not take judicial

notice of the extensive news articles submitted by Defendants on Plaintiffs' public figure status.

Mem. Op. at 10-11. Thus, the Court concluded that it did not need to decide until summary

judgment or trial whether Plaintiffs were required to plausibly plead "actual malice." Mem. Op.

at 10-11. As to Defendants' anti-SLAPP motion, the Court considered the D.C. Circuit's *Abbas*

decision to conclusively bar application of the D.C. Anti-SLAPP Act in federal court, holding

that the intervening *Mann* decision does not "control here." *Id.* at 5.[1]

## **ARGUMENT**

**I.** **THE COURT'S ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PRESENTS TWO CONTROLLING QUESTIONS OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION.**

This Court's dismissal order presents two "question[s] of law" as to which there is

"substantial ground for difference of opinion," which both warrant prompt appellate resolution.

---

[1] This is the only case in this District of which Defendants are aware where defendants invoked the protections of the D.C. Anti-SLAPP Act but plaintiffs were permitted to proceed to discovery. In every other such case, the district courts either (1) applied the Anti-SLAPP Act and granted a special motion to strike, *Boley v. Atl. Monthly Group*, 950 F. Supp. 2d 249, 254 (D.D.C. 2013); *Forras v. Rauf*, 39 F. Supp. 3d 45, 57-58 (D.D.C. 2014), *aff'd on other grounds*, 812 F.3d 1102 (D.C. Cir. 2016); or (2) granted a Rule 12(b)(6) motion to dismiss, either because the plaintiffs were public figures who had not plausibly alleged actual malice, *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 144 (D.D.C. 2017); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 93 (D.D.C. 2018); the court lacked jurisdiction, *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 191 (D.D.C. 2018); or because the plaintiffs had not plausibly alleged falsity, *Libre By Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 158 (D.D.C. 2018).

**A.      There is a Substantial Question Whether Courts Can and Should Resolve at the Pleadings Stage Whether a Defamation Plaintiff Is a Public Figure Who Must Plausibly Plead Actual Malice.**

The First Amendment bars public figures from suing for defamation unless the defendant acted with "actual malice" within the meaning of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Thus, for a public figure, "actual malice" is an element of the tort. *See, e.g.*, *Fairbanks*, 314 F. Supp. 3d at 90, 92. "Whether the plaintiff is a public figure is a question of law for the court to resolve." *Waldbaum v. Fairchild Pubs., Inc.*, 627 F.2d 1287, 1294 n.12 (D.C. Cir. 1980). The "touchstone" of the analysis is whether the plaintiff "has assumed a role of especial prominence in the affairs of society that invites attention and comment." *Tavoulareas v. Piro*, 817 F.2d 762, 773 (D.C. Cir. 1987) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)) (alterations omitted).

In support of their Rule 12(b)(6) motion, Defendants presented extensive, judicially-noticeable news articles that these three plaintiffs have achieved "special prominence" in the "public controversy" over the entanglement of Russian oligarchs' political and business interests and those of the Russian state, including the questionable, unethical and illegal conduct by actors on both sides. *See* ECF No. 20-1 at 5-13 (describing the overwhelming publicity concerning Plaintiffs' prominent careers and business entanglements with the Russian state, and public attention to those matters) and 26-29 (explaining why publicity cited crosses far over the threshold establishing Plaintiffs as public figures); ECF No. 27 at 7-12 (further explaining why Plaintiffs are clearly public figures for purposes of the relevant controversy). The same conclusion applies even if the relevant controversy is Russian interference in the 2016 election. *See* ECF No. 20-1 at 29-30; ECF No. 27 at 8-12.

In denying Defendants' Rule 12(b)(6) motion, the Court reasoned that Plaintiffs' "public figure status" is "an affirmative defense," which the Court "cannot resolve" at the pleadings

4

stage. Mem. Op. at 10. The Court thus did not decide whether Plaintiffs must plausibly plead

actual malice. This presents a substantial, purely legal question: Can and should a district court

determine at the pleadings stage whether a plaintiff is a limited-purpose public figure such that

the plaintiff must have plausibly pled actual malice to survive a motion to dismiss? There are at

least three reasons why there is substantial ground for difference of opinion on this controlling

question. *See Molock v. Whole Foods Market Group, Inc.*, 317 F. Supp. 3d 1, 4 (D.D.C. 2018)

(explaining that "[a] controlling question of law" is one "'that could materially affect the course

of litigation with resulting savings of the court's or the parties' resources'") (quoting *Judicial*

*Watch, Inc. v. Nat'l Energy Policy Dev. Grop.*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002)). *See also*

*APPC Servs., Inc. v. Spring Commc'ns Co.*, 297 F. Supp. 2d 90, 96 (D.D.C. 2003) ("The

resolution of an issue need not necessarily terminate an action in order to be controlling, but

instead may involve a procedural determination that may significantly impact the action.").

  **First**, the weight of authority in this and other jurisdictions is that judges can and should

resolve at the pleadings stage whether a plaintiff is a public figure who must plausibly plead

actual malice. In *Deripaska*, for example, the plaintiff alleged that the Associated Press had

defamed him in accusing him of "involvement in criminal activities and other improprieties."

282 F. Supp. 3d at 138. Judge Huvelle decided at the pleadings stage that he was a limited-

purpose public figure, even though he had argued strenuously that he was a purely "private"

figure for purposes of that claim.[2] Judge Huvelle was able to resolve those disputes at the

pleadings stage because (1) Deripaska did not dispute "the factual background as it relates to

---

[2] *See* Mem. in Opp. To the Associated Press's Mot. to Dismiss, *Deripaska v. Associated Press*, Case No. 1:17-cv-913-ESH, ECF No. 10 (Aug. 16, 2017) ("*Deripaska Mem.*"), at 27-30.

[his] biography and his role in advancing Russian interests internationally," and (2) there were "many news articles cited that reference Deripaska on this topic." *Id.* at 142.[3]

Other judges in this district have not hesitated to decide at the pleadings stage whether plaintiffs are limited-purpose public figures such that the First Amendment requires them to plead and prove actual malice. *See, e.g.*, *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 143 (D.D.C. 2016) (finding that the plaintiff was a public figure because he "controlled an enormous fortune" in Kazakhstan, was a "well-known businessman whose dealings were reported in the press," and had "close familial and business relationships" with Rakhat Aliyev, a "high-level public official"); *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218-19 (D.D.C. 2012) (dismissing defamation claim because the plaintiff, "a public figure," must allege "fault" that is "more than mere negligence"); *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 280 (D.D.C. 2017) (requiring that plaintiffs "adequately allege[] facts that support an inference" of "actual malice"). And the fact that Judge Bates recently recognized that public-figure status *can* be established at the pleading stage, where (as here) the relevant facts are subject to "judicial notice," *MiMedx Grp., Inc. v. DBWPartners, LLC*, Civil Action No. 17-1925 (JDB), 2018 WL 4681005, at *6 (D.D.C. Sept. 28, 2018), further confirms the need for prompt appellate resolution of this question of law.

---

[3] The circumstances are materially identical here. In opposing Defendants' Rule 12(b)(6) motion, Fridman, Khan and Aven did not (and could not) dispute any of the factual background related to their biographies, including their prominent business roles in Russia and the relationships between their businesses and the Russian state. And they also did not (and could not) dispute the existence of numerous news articles referencing them on those matters. Instead, their argument was essentially that (a) the "controversy" relevant here should be narrowly construed as "Russian efforts to influence the outcome of the U.S. election," ECF No. 25 at 22, and (b) Plaintiffs should be able to pursue discovery, ECF No. 45-1 at 1-6. But Judge Huvelle rejected substantively identical arguments in *Deripaska*, holding that courts can readily resolve from the pleadings what the relevant "controversy" is, and then can take judicial notice of whether there has been substantial publicity over the plaintiff's participation in that controversy. *Compare Deripaska Mem.* at 28-30, *with Deripaska*, 282 F. Supp. 3d at 142.

Federal courts in other Circuits also readily resolve at the pleadings stage whether plaintiffs are public figures. In *McKee v. Cosby*, 874 F.3d 54 (1st Cir. 2017), for example, the district court and the First Circuit decided, at the pleadings stage, the heavily contested question of whether one of Bill Cosby's victims was a public figure for purposes of her rape allegations; they held she was, and thus had to allege actual malice. *Id.* at 62. *See also Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (finding at the pleadings stage that the retired basketball player plaintiff was a public figure for purposes of defamation claim alleging that he was falsely reported to have filed for bankruptcy); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (affirming "the district court's finding" that plaintiff, a NASCAR driver, was a limited-purpose public figure); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 269-76 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) (conducting a detailed, fact-intensive analysis at the pleadings stage to determine whether the plaintiff, an art authenticator, was a limited-purpose public figure).

**Second**, the question whether Plaintiffs must have pled actual malice is squarely presented here, because the public material Defendants brought to the Court's attention is subject to judicial notice. As the Court recognized, courts may take judicial notice of "the existence or nature of [news] articles" Mem. Op. at 11 n.1. After all, the D.C. Circuit has expressly held that, in adjudicating a motion to dismiss a defamation claim, "the court may consider" not only "the facts alleged in the complaint" and "documents attached thereto or incorporated therein," but also "matters of which it may take judicial notice." *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013). Each of the three *Waldbaum* "public figure" prongs can readily be decided on the existing, judicially noticeable record. The Court need not evaluate the "truth" of the news articles to confirm that Plaintiffs have risen to a level of "prominence" in the coverage of a

public controversy, however defined; it need merely to take notice of how the articles describe the Plaintiffs.

To the extent the Court has doubts over its ability to take judicial notice of news articles at the motion to dismiss stage, then that is an independent controlling issue of law the Circuit should resolve. As noted above, many courts, including the D.C. Circuit, have taken judicial notice of the content of news articles, in and outside of the defamation context, when the *purpose* for considering such articles is not to prove the truth of their substantive content, but rather for the existence of publicity on a given subject. *See, e.g.*, *Farah*, 736 F.3d at 534 ("Judicial notice is properly taken of publicly available historical articles such as were attached to *Esquire*'s motions to dismiss.") (citations omitted); *Earley v. Gatehouse Media Penn. Holdings, Inc.*, Civil Action No. 3:12-1886, 2013 WL 5466149, at *5 (W.D. Pa. Sept. 30, 2013) (relying on news articles to find that there was "continued interest in the plaintiff's performance of his duties as a Code Enforcement Officer" such that he was a public figure who was required to allege actual malice to survive a motion to dismiss); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (explaining that while courts may not take judicial notice of "whether the contents of [news] articles were in fact true," they "may take judicial notice of publications introduced to 'indicate what was in the public realm at the time'"); *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 & 401 n.15 (3d Cir. 2006) (taking judicial notice of newspaper articles to determine whether a reasonable plaintiff would have been on "inquiry notice" of securities fraud, because the question was not

whether the articles were true, but whether "storm warnings" would have led a "reasonable investor of ordinary intelligence" to investigate a potential claim).[4]

**Third**, two other courts have already ruled that *these Plaintiffs* are limited-purpose public figures, further demonstrating why the question is a substantial one that needs to be addressed now. In *OAO Alfa Bank*, Judge Bates had little difficulty concluding that Fridman and Aven were public figures for purposes of the "public controversy" over the "rise of the oligarchs and the decline of the Russian economy into what one observer described as a 'criminal-syndicalist state.'" *Id.* at 43.[5] In the *Khan* case, Judge Epstein held that "[t]hese findings in *OAO Alfa Bank* are valid today." ECF No. 34-1 at 17. After all, "Plaintiffs do not contend that they have become recluses in the last decade" and "[n]othing suggests in the intervening decade a significant decrease in the fortunes of Alfa Group or the role of Russian oligarchs." *Id.* at 17-18. To the contrary, Plaintiffs – including Plaintiff Khan, who was not a party in *OAO Alfa Bank* – "have assumed special prominence in these controversies, and the statements in CIR 112 are germane to these controversies." *Id.* at 18 (citing *OAO Alfa Bank*, 387 F. Supp. 2d at 43-44).

In sum, there is a substantial, controlling question over whether courts can and should resolve at the pleadings stage whether any defamation plaintiffs, but particularly each of these Plaintiffs, are public figures who must plausibly plead actual malice to survive a motion to dismiss.

---

[4] This additional, alternative question for interlocutory appeal could be posed as follows: In determining at the pleadings stage whether a plaintiff is a limited-purpose public figure, can and should a district court take judicial notice of news articles, not for their truth, but for the existence of publicity about a plaintiff's participation in a given public controversy?

[5] Judge Bates also expressly rejected two of the exact same arguments that Plaintiffs make here: that the applicable public controversy was "too generalized" and that finding them to be public figures proved too much. 387 F. Supp. 2d at 46. As Judge Bates explained, the relevant controversy was "no more general than controversies that have been found sufficient in a host of other cases," and "Plaintiffs' suggestion that treating them as public figures would convert any participant in the Russian economy into a public figure is practically a non-sequitur." *Id.*

**B.      There Is A Substantial Question Whether *Abbas* Remains Controlling After *Mann* on the Applicability of the D.C. Anti-SLAPP Act in this Court.**

Plaintiffs brought parallel lawsuits alleging that publication of CIR 112 was defamatory, one in state court and one in federal court. As discussed above, the former was dismissed under the D.C. Anti-SLAPP Act because Plaintiffs' claims arose out of acts in furtherance of the right of advocacy on issues of public interest, and the Superior Court determined that Plaintiffs' claims were without merit. After all, in *Mann*, the D.C. Court of Appeals held that the Act "protect[s] targets of such meritless lawsuits by creating 'substantive rights with regard to a defendant's ability to fend off' a SLAPP." *Mann*, 150 A.3d at 1226 (citing Report on Bill 18-893, at 1).[6]

Here, this Court considered *Abbas*, as a matter of controlling precedent, to legally bar application of the Anti-SLAPP Act, because the *Abbas* court, before *Mann* was decided, predicted that the D.C. courts would treat the Act as a mere "'procedural mechanism' for dismissing certain cases before trial," 783 F.3d at 1335. But in two fundamental and alternative ways, *Mann* upended the foundations of the *Erie* analysis in *Abbas*, presenting a substantial question whether *Abbas*, on which this Court's denial of Defendants' special motion to dismiss rested, remains controlling.

1.      *Mann* Fundamentally Changed the Analysis of Whether the D.C. Anti-SLAPP Act Is Substantive Under *Erie*.

Under the *Erie* analysis, a critical threshold question is whether the state law being invoked is "substantive." That is because "*Erie* mandates that a federal court sitting in diversity apply the substantive law of the forum State, absent a federal statutory or constitutional directive to the contrary." *Salve Regina College v. Russell*, 499 U.S. 225, 226 (1991) (citing *Erie R. Co. v.*

---

[6] *Mann* was originally decided on December 22, 2016. The decision was amended on December 13, 2018, for reasons not relevant here.

*Tompkins*, 304 U.S. 64, 78 (1938)). The question whether a state law is "substantive" turns not on labels, but rather whether the law "function[s] as a part of the State's definition of substantive rights and remedies." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (Stevens, J., concurring) (portion of opinion as to which Justice Stevens and the four dissenting Justice agreed). And it is for state legislatures and state courts – not the federal courts – to "define[]" states' "own rights or remedies." *Id.* at 418.

In *Abbas*, without any guidance from the D.C. Court of Appeals on the "definition of [D.C.'s] own rights or remedies," *id.*, the D.C. Circuit predicted that the D.C. Court of Appeals would interpret the Anti-SLAPP Act as a mere "'procedural mechanism' for dismissing certain cases before trial." 783 F.3d at 1335. Thus, the D.C. Circuit rejected the argument that the Act "embodies a substantive D.C. right," even expressly stating that the protections conferred by the Act were *not* "a form of qualified immunity shielding participants in public debate from tort liability." *Id.*

In *Mann*, however, the D.C. Court of Appeals proved the *Abbas* court's prediction was incorrect. In the "first [such] case presented," *Mann* squarely held that the Act confers substantive state-law rights. It concluded that the Act was aimed at deterring, and providing substantive relief from, actions that are "filed by one side of a political or public policy debate aimed to punish or prevent the expression of opposing points of view." 150 A.3d at 1226-27. The *Mann* court ruled that, as reflected in the Act's legislative history, the purpose of the Act was to "protect targets of such meritless lawsuits" by "creating 'substantive rights with regard to a defendant's ability to fend off' a SLAPP." *Id.* (citing Report on Bill 18-893, at 1). The right to file a "special motion to dismiss a complaint" is itself a substantive right, because that is how a party "show[s] entitlement to the protections of the Act." *Id.* at 1227. Thus, after *Mann*, the

*Abbas* court's interpretation of the Act as purely "procedural" is simply no longer valid, and the

D.C. Circuit should have an opportunity, in advance of the further litigation that the anti-SLAPP

law is designed to protect against, to say so.

2.    <u>*Mann* Also Fundamentally Changed the Analysis of Whether There Is<br>"Direct Collision" between the Anti-SLAPP Act and the Federal Rules.</u>

*Mann* also requires reevaluation of another critical step in the *Erie* analysis used by

*Abbas*: whether there is a federal rule that "answers the question in dispute." *Shady Grove*, 559

U.S. at 421 (Stevens, J., concurring). That analysis requires (1) accurately characterizing what

"question" is put in "dispute" when a party invokes rights under a particular state law – a

question that also is entirely the province of state courts, *id.* – and (2) "fairly constru[ing]" the

federal rules with "sensitivity to important state interests and regulatory policies," and "against

the background of Congress' command [in the Rules Enabling Act, 28 U.S.C. § 2072] that such

rules not alter substantive rights." *Id.* at 418-19 (quotation marks and citations omitted). Only by

accurately characterizing the applicable state law and "fairly constru[ing]" the federal rules to

avoid unnecessarily displacing substantive state laws can a federal court decide whether there is

a "direct collision" between state and federal law on the "question in dispute." *Id.*

Just as *Mann* upended the *Abbas* panel's substance/procedure analysis, it also upended

both prongs of the *Abbas* court's "collision" analysis. First, *Mann* showed that *Abbas* had not

accurately characterized the Anti-SLAPP Act. The Act, the *Mann* court explained, "raises a

question that is significantly different from the questions underlying plaintiff's claim on the

merits," namely "whether the defendant is entitled to immunity from trial, a question of law that

involves the evaluation of the complained-of conduct against established legal standards." 150

A.3d at 1229-30. *See also id.* at 1238 (explaining that the Act "is not redundant relative to the

rules of civil procedure"). After all, Rule 12(b)(6), for example, does not confer on plaintiffs a

substantive entitlement to proceed to discovery; a complaint can be dismissed for any number of

other reasons *despite* plausibly alleging the elements of a cause of action, such as sanctions (Rule

11) or failure to prosecute (Rule 41(b)). *See Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182

(9th Cir. 2013) (Wardlaw and Callahan, JJ., concurring in the denial of rehearing en banc)

("Rules 12 and 56 do not provide that a plaintiff is entitled to maintain his suit if their

requirements are met; instead, they provide various theories upon which a suit may be disposed

of before trial."). Second, *Mann* showed that the *Abbas* court's construction of Rules 12 and 56

had been sufficiently "sensitiv[e] to [the] important state interests and regulatory policies"

reflected in the D.C. Act and elucidated in *Mann. See Shady Grove*, 559 U.S. at 418 (Stevens, J.,

concurring). That was not a failure of the *Abbas* panel, but a function of time: it did not have the

benefit of *Mann*'s determination of what "state interests and regulatory policies" the Act serves

to protect.

Once the D.C. Circuit confirms that *Abbas* is no longer controlling in light of *Mann*, a

district court (or the D.C. Circuit, if it chooses to reach the question in the first instance), can

then decide how the D.C. Anti-SLAPP Act applies in this case or similar cases. As several other

Circuits have explained, anti-SLAPP acts can readily "operate alongside" Federal Rules 12 and

56. *See, e.g.*, *Godin v. Schencks*, 629 F.3d 79, 88 (1st Cir. 2010) (explaining that Rules 12 and 56

"are not so broad as to cover the issues within the scope of [Maine's anti-SLAPP act]," because

the latter "is only addressed to special procedures for state claims based on a defendant's

petitioning activity"); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190

F.3d 963, 972-73 (9th Cir. 1999)  ("[T]here is no indication that Rules 8, 12, and 56 were

intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless

claims. . . . The Anti-SLAPP statute, moreover, is crafted to serve an interest not directly

addressed by the Federal Rules: the protection of 'the constitutional rights of freedom of speech and petition for redress of grievances.'") (quoting Cal. Civ. P.Code § 425.16(a)).[7]

In short, because there is no "direct collision" between the Anti-SLAPP Act, on one hand, and Federal Rules 12 and 56 on the other, *Erie* does not only permit application of the applicable state law; its twin aims – discouragement of forum-shopping and avoidance of inequitable administration of the laws – require it. *See Burke v. Air Serv. Int'l, Inc.*, 685 F.3d 1102, 1105, 1108-09 (D.C. Cir. 2012) (holding that it was "clear" that the federal courts "must apply" the D.C. law requirement of expert testimony to establish the standard of care where doing so "is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson," because "failing to do so would undermine the twin aims of *Erie*"). Indeed, those aims could not possibly be more disserved by making a plaintiff's choice of forum control whether the protections of the Act are available. The D.C. Superior Court in *Khan*, applying the D.C. Act, granted a special motion to strike these same claims, by these same plaintiffs, represented by the same counsel, based on the same publication of the same statements contained in the same Company Investigative Report. ECF No. 34-1. Thus, there is no better case than this one for the D.C. Circuit to decide the question presented.

*         *         *

Because *Mann* undermined both of these core pillars of *Abbas*, there is a substantial question whether *Abbas* remains controlling on whether the protections conferred by the Anti-

---

[7] *See also* Benjamin Ernst, *Fighting SLAPPS in Federal Court: Erie, the Rules Enabling Act, and the Application of State anti-SLAPP Laws in Federal Diversity Actions*, 56 B.C. L. Rev. 1181, 1207-08 (2015) ("When a court is faced with determining whether a state's anti-SLAPP statute's special motion to strike provision is applicable in a diversity case, the court should frame the issue before it as whether the case should be dismissed for bringing a claim involving protected speech activity that the plaintiff has not shown a likelihood of prevailing upon. Neither Rule 12(b)(6) nor Rule 56(a) . . . is so broad as to leave no room for the operation of the state law in this area. . . . Indeed, the two laws can operate side by side.").

SLAPP Act are applicable in federal diversity cases. There is an especially acute need for

appellate review on whether *Abbas* remains controlling after *Mann* because district judges, such

as this Court, cannot make this decision in the first instance, but need guidance from the Circuit

Court. Before *Abbas*, several judges in this district held that the protections of the Act applied

equally in federal and state court. *See Boley*, 950 F. Supp. 2d at 254; *Forras*, 39 F. Supp. at 49-

52. *See also Farah v. Esquire Magazine, Inc.*, 863 F. Supp. 2d 29, 38 (D.D.C. 2012) (granting

special motion to dismiss under D.C. Anti-SLAPP Act). After *Abbas*, this Court and several

others ruled the opposite. If *Mann* undermined *Abbas* to the degree we have demonstrated, only a

decision by the D.C. Circuit can clarify how the district courts should proceed.[8]

## II.    AN IMMEDIATE APPEAL OF THESE CONTROLLING QUESTIONS WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS CASE.

As to Question 1, a decision that a plaintiff's public figure status can and should be

determined at the pleadings stage would require Plaintiffs to allege facts sufficient under the

*Twombly*/*Iqbal* plausibility standard to establish that Defendants acted with actual malice.

Plaintiffs' current allegations of actual malice are threadbare and conclusory, and plainly do not

constitute plausible allegations that Defendants "in fact harbored subjective doubt" about the

truth of the statements in CIR 112 or believed it was "highly probable that [CIR 112] was (1)

---

[8] The D.C. Circuit is especially likely to re-evaluate the *Erie* component of its *Abbas* opinion because that component of its decision was an alternative holding that was unnecessary for disposing of that appeal. The court affirmed the district court's Rule 12(b)(6) dismissal, holding that the statements at issue were simply not defamatory. 783 F.3d at 1339. Moreover, there is an acknowledged circuit split on whether defendants sued in federal court can invoke anti-SLAPP protections. The First, Second, Fifth and Ninth Circuits have squarely held that anti-SLAPP statutes are applicable in federal court. *Godin*, 629 F.3d at 89; *United States ex rel. Newsham*, 190 F.3d at 973; *Henry v. Lake Charles Am. Press, LLC*, 556 F.3d 164, 181-82 (5th Cir. 2009); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 147-48 (2d Cir. 2013). The Georgia and New Mexico anti-SLAPP statutes were recently interpreted as inapplicable in federal court. *Carbone v. CNN, Inc.*, 910 F.3d 1345, 1356 (11th Cir. 2018); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 673 (10th Cir. 2018).

fabricated; (2) so inherently improbable that only a reckless person would have put [it] in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that [Defendants] had obvious reason to doubt." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589-90 (D.C. Cir. 2016) (internal quotation marks and alterations omitted). Reaching that question would almost certainly lead to dismissal. *See, e.g.*, *Deripaska*, 282 F. Supp. 3d at 144 (dismissing for failure to plausibly allege actual malice); *Fairbanks*, 314 F. Supp. 3d at 93 (same). Thus, an immediate appeal of the question whether limited purpose public figure status should be determined at the motion to dismiss stage will materially advance the ultimate termination of the case.

Moreover, because the news articles that establish that Plaintiffs are public figures are subject to judicial notice, *see* pp. 7-9, *supra*; *Farah*, 736 F.3d at 534, there is no need for discovery to decide that Plaintiffs have "assumed a role of especial prominence in the affairs of society that invites attention and comment." *Tavoulareas*, 817 F.2d at 773. As discussed above, if a plaintiff has assumed such a role, he or she is a "public figure" and must allege and prove actual malice. *See* pp. 4-7, *supra*. Because there is sufficient judicially noticeable material here from which to conclude that Plaintiffs have become limited-purpose public figures, there is no going back; Plaintiffs cannot subsequently disprove that status, through discovery or otherwise. But without a determination on that issue now, at the pleadings stage, the parties would have to seek discovery on, and litigate, issues that will be largely irrelevant if the Court decides that Plaintiffs *are* public figures, a burden the First Amendment protects Defendants from having to bear. "Various doctrinal protections" – including the requirement that public figures have plausibly pled actual malice, and the requirement that public figure status be determined as a threshold question of law – preserve 'the breathing space which freedoms of expression require

16

in order to survive.'" *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (quoting

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)). It is not only the "actual imposition of

pecuniary liability" but also the "threat" of liability, and the burdens of long and expensive

litigation, that "may impair the unfettered exercise of First Amendment freedoms." *Id.* (citation

and alteration omitted). Thus, immediate appeal on the question of whether Plaintiffs' public

figure status must be determined at the pleadings stage would materially advance ultimate

termination of the case, even absent dismissal.

As to Question 2, application of the D.C. Anti-SLAPP Act also would likely lead to

dismissal. After all, Plaintiffs' substantively identical claims against Mr. Steele and Orbis *were*

dismissed when analyzed under the Act. *Khan*, ECF No. 34-1, at 23-24. Interlocutory review

would also materially advance termination of the litigation because, unless the D.C. Circuit is

permitted by this Court to address the applicability of the Anti-SLAPP Act on interlocutory

appeal, that question could be essentially unreviewable. *See, e.g.*, *Henry*, 566 F.3d at 177-78

(explaining that anti-SLAPP acts grant "immunity from suit," which are "the embodiment of

unreviewability," because if an anti-SLAPP motion "is erroneously denied and unappealable,

then the case proceeds to trial and this right is effectively destroyed").

## CONCLUSION

The questions of whether district courts can and should decide at the pleadings stage

whether a plaintiff is a limited-purpose public figure who has plausibly pled actual malice, and

whether *Abbas* remains controlling after *Mann*, are precisely the types of questions of law over

which an immediate appeal "may materially advance the ultimate termination of the litigation."

*See* 28 U.S.C. § 1292(b). The Court should grant Defendants' motion to amend its Order denying

Defendants' motions to dismiss and to certify both questions for interlocutory appeal.

Dated:   February 12, 2019                    ZUCKERMAN SPAEDER LLP

By:      */s/ Steven M. Salky*
Steven M. Salky (D.C. Bar No. 360175)
William W. Taylor, III (D.C. Bar No. 84194)
Rachel F. Cotton (D.C. Bar No. 997132)
Adam B. Abelson (D.C. Bar No. 1011291)
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
wtaylor@zuckerman.com
ssalky@zuckerman.com
rcotton@zuckerman.com
aabelson@zuckerman.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 12, 2019, the foregoing Memorandum of Points

and Authorities in Support of Defendants' Motion to Amend Order Denying Defendants'

Motions To Dismiss was filed with the Court's CM/ECF Service, and thereby provided to the

following counsel of record:


Alan S. Lewis, Esquire
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel: (212) 238-8647
Lewis@clm.com

Kim Hoyt Sperduto, Esquire
SPERDUTO THOMPSON PLC
1133 Twentieth Street, NW
Second Floor
Washington, D.C. 20036
Tel: (202) 408-8900
ksperduto@sperdutothompson.com


*/s/ Adam B. Abelson*
Adam B. Abelson

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MIKHAIL FRIDMAN, PETR AVEN, and
GERMAN KHAN,

        Plaintiffs,

   v.

BEAN LLC a/k/a FUSION GPS, and GLENN
SIMPSON,

        Defendants.

Civil Case No. 1:17-cv-2041-RJL

### [PROPOSED]
### ORDER AMENDING ECF NO. 49 AND GRANTING
### CERTFICATION OF APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

Pursuant to Federal Rules of Civil Procedure 52(b), 54(b) and 59(e), and 28 U.S.C. §
1292(b), it is hereby ORDERED as follows:

1.     Defendants' Motion to Amend Order Denying Defendants' Motions to Dismiss is
GRANTED.

2.     The Court's January 15, 2019 Order denying Defendants' motions to dismiss,
ECF No. 49, is hereby AMENDED to "state" that the following two questions are "controlling
question[s] of law as to which there is substantial ground for difference of opinion," and that an
"immediate appeal . . . may materially advance the ultimate termination of the litigation," 28
U.S.C. § 1292(b):

> Question 1: Can and should a district court determine at the
> pleadings stage whether a plaintiff is a limited-purpose public
> figure such that the plaintiff must have plausibly pled actual malice
> to survive a motion to dismiss?
>
> Question 2: After *Competitive Enterprise Institute v. Mann*, 150
> A.3d 1213 (D.C. 2016) ("*Mann*"), is *Abbas v. Foreign Policy
> Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015), no longer controlling

on the question whether the District of Columbia's Anti-SLAPP Act, D.C. Code § 16-5501 *et seq.* ("Anti-SLAPP Act" or the "Act"), is applicable in federal court?

3.    All proceedings, including all discovery, are hereby STAYED until final resolution by the D.C. Circuit of Defendants' 28 U.S.C. § 1292(b) motion and any interlocutory appeal.


Dated: _____               _____
                                   Richard J. Leon
                                   United States District Judge