# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN,<br><br>      Plaintiffs,<br><br>    v.<br><br>BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,<br><br>      Defendants. | Civil Case No. 1:17-cv-2041-RJL |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO AMEND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

The question before the Court on Defendants' 28 U.S.C. § 1292(b) motion is this: Should the D.C. Circuit have the chance to *consider* whether to grant interlocutory review on the two questions set forth in the Motion? Both questions – whether defamation plaintiffs' public figure status can and should be resolved at the pleadings stage, and whether *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015) remains good law on the applicability of the D.C. Anti-SLAPP Act in federal court – are controlling questions of law as to which there is substantial ground for difference of opinion, and resolution of them would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The D.C. Circuit should at least have the opportunity to make the determination whether to review these questions for itself. After all, as Defendants pointed out and Plaintiffs do not dispute, this is the only case in this District (and thus in this Circuit) where defamation defendants invoked the protections of the Anti-SLAPP Act and moved to dismiss for failure to state a claim and the plaintiffs were permitted to proceed to discovery; in every other such case, the complaint was dismissed under

the Act or for failure to state a claim. *See* Mem. in Supp. of Defs.' Mot. to Amend, ECF No. 52-1 ("Defs.' Mem.") at 3 n.1.

As to the Section 1292(b) standard itself, most of Plaintiffs' arguments are adequately addressed in Defendants' opening memorandum. Defendants herein address a few points raised by Plaintiffs' opposition, ECF No. 57 ("Opp."). It should be emphasized, however, that Section 1292(b) is not meant to provide formulaic "jurisdictional requisites" but rather discretionary "guiding criteria." Charles Alan Wright, *et al.*, 16 *Federal Practice & Procedure* § 3930 (2012), at 488. "Section 1292(b) is best used to inject an element of flexibility into the technical rules of appellate jurisdiction established for final-judgment appeals under § 1291 and for interlocutory appeals under § 1292(a)." *Id.* "The three factors should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal." *Id.*

## I. QUESTION 1: WHETHER PUBLIC FIGURE STATUS CAN AND SHOULD BE RESOLVED AT THE PLEADINGS STAGE.

### A. Question 1 Is a Controlling Question of Law.

The District Court considered itself precluded as a matter of law from considering at the pleadings stage whether Plaintiffs are public figures. ECF No. 48 ("Op.") at 10 (concluding that it "cannot resolve" that question). But as set forth in Defendants' Memorandum and previously, there is no such bar. *See* Defs.' Mem. at 5-7. *See also* Mem. in Supp. of Defs.' Motion to Dismiss, ECF No. 20-1 (Jan. 29, 2018) ("MTD Mem.") at 25; Reply Mem. In Supp. of Defs.' Motion to Dismiss, EF No. 27 (April 16, 2018) ("MTD Reply") at 5-7. That is the question presented: whether, as a matter of law, Plaintiffs' public figure status (1) can and should be resolved at the pleadings stage or (2) is an affirmative defense that *cannot* be resolved on the

pleadings. Plaintiffs' two arguments for why that question is not "controlling" within the meaning of Section 1292(b) are wrong.

**First**, Plaintiffs mischaracterize the question presented. They *assume* that the Court of Appeals would hold that public figure status is an "affirmative defense[]" and then, based on that assumption, mischaracterize the question presented as whether this Court "'should' be engaged in factual determinations on affirmative defenses at the motion to dismiss stage." Opp. at 4. But framing the issue that way puts the cart before the horse. The "question of law" that is actually presented for a Section 1292(b) appeal is whether there is a legal *prohibition* on deciding public figure status at the pleadings stage – even if public figure status is not "concede[d]" or "apparent from the face of the complaint," *cf.* Opp. at 4. As Defendants explained, public figure status is *not* an "affirmative defense," but rather is a predicate for knowing what *elements* a defamation plaintiff must plead. *See* Defs.' Mem. at 4-7. Thus, the question presented concerns the proper inquiry on the elements a defamation plaintiff must plead to survive a motion to dismiss.

**Second**, Plaintiffs argue that even if there is a purely legal question on whether public figure status can and should be resolved at the pleadings stage, that question is not "controlling" because *if* the Court had not considered itself barred from making such a determination, it *might* have still concluded that the judicially noticeable materials were not "sufficient" to render Plaintiffs public figures under *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980). Opp. at 5. But that is sheer speculation – and highly questionable speculation at that, as the only courts to have considered whether Plaintiffs are public figures have concluded that they are. *OAO Alfa Bank v. Center for Public Integrity*, 387 F. Supp. 2d 20 (D.D.C. 2005); *Khan v. Orbis Business Intel. Ltd.*, Case No. 2018 C 002667 B (D.C. Super. Ct. Aug 20, 2018) (filed in

this Court as ECF No. 34-1). The critical point here is the Court engaged in no *Waldbaum* inquiry whatsoever.

There is yet another reason there is a "controlling" question on the public figure status inquiry. As Defendants explained, even if the Court declines to certify Question 1 as phrased, there is an additional, alternative question for interlocutory appeal: in determining at the pleadings stage whether a plaintiff is a limited-purpose public figure, can and should a district court take judicial notice of news articles, not for their truth, but for the existence of publicity about a plaintiff's participation in a given public controversy? *See* Defs.' Mem. at 8-9 & n.4. As to this alternative formulation, Plaintiffs offer no response.

### B.     There is Substantial Ground for Difference of Opinion on Question 1.

The second Section 1292(b) element is whether "there is substantial ground for difference of opinion" on the question presented. Plaintiffs' arguments on this element are beside the point as well.

**First**, Plaintiffs point to what they characterize as "unimpeachable authority" that a plaintiff need not "plead sufficient facts in a complaint to overcome an affirmative defense." Opp. 8. But again, that *assumes* that public figure status is an "affirmative defense." Plaintiffs cannot get around the elements of Section 1292(b) by reformulating the question presented.

**Second**, Plaintiffs concede that "courts have come out differently on the issue of judicial notice on different facts." Opp. 9. But they argue that Defendants have not "establish[ed]" an "abuse of discretion" under Rule 201, the judicial notice rule. *Id.* Defendants, however, are not arguing that the Court abused its discretion under Rule 201. The point is the Court did not exercise that discretion at all, because it considered itself legally barred from doing so.

**Third**, in the face of the undisputable fact that the judges of this District Court and other courts disagree on whether to decide public figure status at the pleadings stage, *see* Defs.' Mem.

at 5-7, Plaintiffs argue that that divergence is explained by different "application[s]" of the legal standard, rather than different views on the legal standard itself. Opp. 9 (citing *Footbridge Ltd. Trust v. Zhang*, 2005 WL 6959181, at *7, 2005 U.S. Dist. LEXIS 48639, at *20 (D.D.C. May 2, 2005), and *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 239 (D.D.C. 2003)). Not so. The *Deripaska* case, for example, presented precisely the same legal question here: where the parties dispute a defamation plaintiff's public figure status, can and should the court decide at the pleadings stage whether the plaintiff is a public figure who must plead actual malice? *Deripaska v. Assoc. Press*, 282 F. Supp. 3d 133, 141-42 (D.D.C. 2017). While the Court here held that it "cannot resolve" that same question, Op. at 10, Judge Huvelle resolved it: in response to the *Deripaska* plaintiff's argument that "it is unnecessary to plead actual malice at the motion-to-dismiss stage," Judge Huvelle conducted a detailed analysis at the pleadings stage and concluded that Deripaska "is a limited-purpose public figure" and had "failed to adequately allege the requisite intent." *Deripaska*, 282 F. Supp. 3d at 141-44. So have other courts, such as in the First Circuit's Bill Cosby case. *McKee v. Cosby*, 874 F.3d 54, 62 (1st Cir. 2017).

### C.  Resolution of Question 1 Would Materially Advance the Litigation.

"To satisfy this element" – whether an interlocutory appeal "*may* materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b) (emphasis added) – "'a movant need not show that a reversal on appeal would actually end the litigation.'" *Nat'l Veterans Legal Services Prog. v. United States*, 321 F. Supp. 3d 150, 155 (D.D.C. 2018) (quoting *Molock v. Whole Foods Mkt. Grp.*, 317 F. Supp. 3d 1, 6 (D.D.C. 2018)). "Instead, the relevant inquiry is whether reversal would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense." *Id.* (quoting *Molock*, 317 F. Supp. 3d at 6).

5

As Defendants explained before, a ruling on whether the Court can and should resolve at the pleadings stage whether Plaintiffs are public figures would materially advance the ultimate termination of this litigation because, if Plaintiffs must plead actual malice, the case is almost certainly over.[1] Plaintiffs speculate that their complaint would still survive a motion to dismiss, arguing that they did allege actual malice. But the sole allegation they point to – that the headline of CIR 112 refers to "Russia/US Presidential Election," *see* Opp. 5 (citing ECF No. 25 at 26-27) – is plainly not sufficient, because the allegation contains no facts whatsoever about Defendants' state of mind about the title to CIR 112, a title the complaint itself alleges was not prepared by the Defendants. *See* Defs.' Mem. 15-16; MTD Mem. at 30-32; MTD Reply at 12-13. And in any event, if the D.C. Circuit rules that Plaintiffs' public figure status can and should be resolved at the pleadings stage, "the nature of what would follow would differ significantly." *Nat'l Veterans Legal Services Prog.*, 321 F. Supp. 3d at 154. For example, even if Plaintiffs' allegations were deemed to plausibly allege that Defendants acted with actual malice, Plaintiffs would know that they must not only *prove* actual malice, but must do so with clear and convincing evidence. *See, e.g.*, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) ("Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures . . . may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth."); *New York Times Co. v. Sullivan*, 376 U.S. 254, 285-86

---

[1] Defendants, of course, need not show that the case *will* be over for interlocutory appeal to "materially advance" termination of the litigation. *See, e.g.*, *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (explaining that the term "controlling" should not be read "literally"; "[i]t could not be, because it is never one hundred percent certain in advance that the resolution of a particular question will determine the outcome or even the future course of the litigation").

(1964) ("[W]e consider that the proof presented to show actual malice lacks the *convincing clarity* which the constitutional standard demands.") (emphasis added).

Finally, insofar as Plaintiffs suggest that appeal would not materially advance the litigation because the Court must "assume" that Defendants acted with malice, *see* Opp. 15 (citing *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013), they are wrong. Rather, the *Farah* opinion (and the overwhelming body of federal law) states merely that a complaint's *factual* allegations must be accepted as true for Rule 12(b)(6) purposes. That does not mean that a complaint's legal conclusions, such as those in this case that a defendant acted with "malice," must be "assumed" on a motion to dismiss. Especially in the defamation context, where the First Amendment "imposes stringent limitations upon the permissible scope of [defamation] liability" – as the *Farah* opinion itself makes clear, 736 F.3d at 534 – the Plaintiffs must plead *facts* that adequately and plausibly allege malice, which they have not done.

## II. QUESTION 2: WHETHER *ABBAS* REMAINS GOOD LAW AFTER *MANN*.

As set forth in Defendants' Memorandum, there is also a substantial question whether, after *Competitive Enterprise Institute v. Mann*, 150 A.3d 1213 (D.C. 2016), the D.C. Circuit's opinion in *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015), remains good law. Plaintiffs' response, as explained further below, ignores Question 2 as posed and instead suggests that the "question" for certification is a different one: whether there is a D.C. Circuit case that has decided whether the Anti-SLAPP Act is applicable in federal court. *See, e.g.*, Opp. at 6 ("*Abbas* . . . is still binding and . . . there are no reasonable grounds for a difference of opinion on that point."). Of course there is such an opinion – the *Abbas* decision. But that is not the question presented for Section 1292(b) certification. The question on which Defendants have actually sought interlocutory appeal is <u>whether</u> *Abbas* remains good law. *That* question is eminently appropriate for Section 1292(b) certification, because in *Mann*, the D.C. Court of

7

Appeals instructed – contrary to the *Abbas* court's prediction – that (1) the D.C. Anti-SLAPP Act confers substantive rights based on covered speech and petitioning activities, and (2) the Anti-SLAPP Act and Federal Rules 12 and 56 are not in "direct conflict" for *Erie* purposes. The arguments Plaintiffs offer to oppose Section 1292(b) certification are easily dispatched.

**Controlling question of law**. Plaintiffs argue that Question 2 is not "controlling" under Section 1292(b) because there is a "controlling" decision on point: *Abbas*. Opp. at 6-7. That argument is doubly flawed.

First, Plaintiffs conflate two different meanings of the word "controlling." Plaintiffs argue that *Abbas* is "controlling" in the precedential sense of the term: it is a D.C. Circuit opinion on the applicability of the Anti-SLAPP Act in federal court. But that is different from whether Question 2 is "controlling" within the meaning of Section 1292(b). A question is "controlling" within the latter meaning "even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants." Charles Alan Wright, *et al.*, 16 *Federal Practice & Procedure* § 3930 (2012), at 499. "[Q]uestions found to be controlling commonly involve the possibility of avoiding trial proceedings, or at least curtailing and simplifying pretrial or trial." *Id.* at 505. Here, reversal of *Abbas* in light of *Mann* would be highly likely to change the outcome of the case, as discussed below. *See* p. 10, *infra*.

Second, Plaintiffs' argument recasts Question 2 into Plaintiffs' own formulation: on whether there is a D.C. Circuit decision on point. But the question actually presented is **whether** *Abbas* is no longer good law. Plaintiffs' opposition is entirely question-begging. Their arguments that *Abbas* **is** good law are arguments for them to present to the D.C. Circuit upon certification. The D.C. Circuit will then decide whether *Abbas* remains good law after *Mann*. The question

now is whether *that* question is itself a "controlling question of law" under Section 1292(b). Plaintiffs offer no rebuttal to Defendants' showing that it is. And as a practical matter, it simply cannot be the case that Section 1292(b) is never available when there is a prior circuit court decision on point. That would mean that a circuit court could never, on interlocutory appeal, clarify its own law before courts and litigants spend time and resources litigating under a decision that the circuit court is likely to not follow. Section 1292(b) exists precisely to avoid such wastes of resources. *See, e.g.*, Charles Alan Wright, *et al.*, 16 *Federal Practice & Procedure* § 3930 (2012), at 495 (explaining that even if there is "established circuit precedent," Section 1292(b) certification is appropriate for determination of whether "that precedent is wrong," especially where, as here, there are new circumstances that were "not previously considered by the court of appeals").

The Question 2 that Defendants have actually presented is a "controlling question of law" under Section 1292(b).

**Substantial Ground**. Plaintiffs fall victim to similar analytical errors on the "substantial ground" prong as well. They argue that there is not "substantial ground for difference of opinion" because *Abbas* is "the controlling authority." Opp. 11. But the question presented is whether *Abbas* is still good law. Plaintiffs cannot simply assume that it is. And although the judges in this District to have considered the issue have concluded that they, as district judges, cannot disregard *Abbas*, *see* Opp. 12 (citing cases), there is no question that the circuit court can reconsider whether *Abbas* remains good law. *See, e.g.*, *Nat'l Veterans Legal Services Prog.*, 321 F. Supp. 3d at 155 (certifying for interlocutory appeal the question of the lawfulness of charging PACER fees, because although Judge Huvelle "found the arguments" the parties had presented to be "unpersuasive," they were "not without merit"). Because there is a "substantial question"

over whether *Mann* undermined both critical aspects of the *Abbas* court's *Erie* analysis, the D.C. Circuit should have the chance, now, to resolve that pure and disputed question of law. This Court need only determine that there is a substantial ground for the D.C. Circuit to consider the issue.

**Materially advance**. Finally, although interlocutory appeal may "materially advance" the ultimate termination of the litigation even if reversal would not "end the litigation," *Nat'l Veterans Legal Services Prog.*, 321 F. Supp. 3d at 155 (quoting *Molock*, 317 F. Supp. 3d at 6), there can be little question that, if the Anti-SLAPP Act applies in federal court, the case will likely be over – and Plaintiffs barely try to argue otherwise. After all, when the Superior Court applied the Act to these very same Plaintiffs' claims, it dismissed them. ECF No. 34-1 at 23-24. Plaintiffs' sole argument is that "*Abbas* expressly rejected the argument" that the Act is substantive under *Erie* and must be applied in federal court. No matter how many times one puts a cart before a horse, it is not going to push.

## **CONCLUSION**

For these reasons and those previously stated, the Court should amend its order denying Defendants' motions (ECF No. 49) to state that Question 1 (and/or its alternative formulation) and Question 2 are both controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation.

Dated: April 19, 2019  ZUCKERMAN SPAEDER LLP

By: */s/ Steven M. Salky*
Steven M. Salky (D.C. Bar No. 360175)
William W. Taylor, III (D.C. Bar No. 84194)
Rachel F. Cotton (D.C. Bar No. 997132)
Adam B. Abelson (D.C. Bar No. 1011291)
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
wtaylor@zuckerman.com
ssalky@zuckerman.com
rcotton@zuckerman.com
aabelson@zuckerman.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 19, 2019, the foregoing Reply Memorandum in Support of Defendants' Motion to Amend Order Denying Defendants' Motions To Dismiss was filed with the Court's CM/ECF Service, and thereby provided to the following counsel of record:

Alan S. Lewis, Esquire
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel: (212) 238-8647
Lewis@clm.com

Kim Hoyt Sperduto, Esquire
SPERDUTO THOMPSON PLC
1133 Twentieth Street, NW
Second Floor
Washington, D.C. 20036
Tel: (202) 408-8900
ksperduto@sperdutothompson.com

　　　　　　　　　　　　　　　　　　　　*/s/ Adam B. Abelson*
　　　　　　　　　　　　　　　　　　　　Adam B. Abelson