**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN, <br><br>        Plaintiffs, <br><br>   v. <br><br> BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON, <br><br>        Defendants. | No. 1:17-cv-2041-RJL |

## DEFENDANTS BEAN LLC'S AND GLENN SIMPSON'S MOTION TO COMPEL PLAINTIFFS' PRODUCTION OF THEIR DOCUMENTS

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Defendants Bean LLC a/k/a Fusion GPS and Glenn Simpson (collectively "Defendants") respectfully file this Motion to Compel Plaintiffs Mikhail Fridman, Petr Aven, and German Khan (collectively, "Plaintiffs"), to collect, review, and produce all documents and information from their Alfa files,[1] including their emails, other electronic documents, personal devices, communications sent on behalf of Plaintiffs, and hard copy documents, responsive to Defendants' Requests for Production. As stated more fully in the accompanying Memorandum of Law, Plaintiffs' documents at Alfa are within Plaintiffs' "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Accordingly, Defendants respectfully request that the Court order Plaintiffs to collect, review and produce all responsive documents and materials forthwith.

Pursuant to Local Civil Rule 7(m), Defendants met and conferred with Plaintiffs on this issue in a good faith effort to determine whether there is any opposition to the relief sought and, if

---

[1] "Alfa" is defined in the accompanying Memorandum of Points and Authorities.

there is, to narrow the areas of disagreement.[2] The Parties, however, were unable to resolve their disagreement. Plaintiffs oppose this motion.

Dated:    June 12, 2020                           _____/s/ Joshua A. Levy_____

Joshua A. Levy (D.C. Bar No. 475108)
Rachel M. Clattenburg (D.C. Bar No. 1018164)
Zachary Blau (D.C. Bar No. 1600714)
**LEVY FIRESTONE MUSE LLP**
1401 K St. NW, Suite 600
Washington, DC 20005
Tel: (202) 845-3215
Fax: (202) 595-8253
jal@levyfirestone.com
rmc@levyfirestone.com
zblau@levyfirestone.com

*Counsel for Defendants*

---

[2] The Parties met and conferred on June 11, 2020 about this Motion. The Parties have engaged in extensive discussions about this issue, including on March 31, 2020; April 7, 2020; April 9, 2020; and April 13, 2020. The Parties also exchanged letters discussing this issue in an effort to narrow or resolve it. Plaintiffs' correspondence on the issue is dated: March 12, 2020; April 2, 2020; April 24, 2020; May 15, 2020; and June 2, 2020. Defendants' correspondence on the issue is dated February 19, 2020; April 16, 2020; April 29, 2020; May 8, 2020; May 22, 2020; and June 10, 2020.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN,<br><br>       Plaintiffs,<br><br>   v.<br><br>BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,<br><br>       Defendants. | No. 1:17-cv-2041-RJL |

**DEFENDANTS BEAN LLC'S AND GLENN SIMPSON'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL
<u>PLAINTIFFS' PRODUCTION OF THEIR DOCUMENTS</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................3

    I.       Plaintiffs Allege that Defendants Defamed Plaintiffs *and Alfa* ....................3

    II.     The Instant Dispute ......................................................5

    III.    Alfa ........................................................................8

ARGUMENT .....................................................................................................11

    I.       LEGAL STANDARDS .................................................11

    II.     PLAINTIFFS MAY NOT EVADE THEIR RULE 34 DISCOVERY
            OBLIGATIONS BY REQUIRING DEFENDANTS TO RESORT
            TO THIRD-PARTY DISCOVERY FOR DOCUMENTS THAT
            PLAINTIFFS CONTROL .............................................13

          A.  Plaintiffs Must Fulfill Their Discovery Obligations......................13

          B.  Requiring Defendants to Obtain Plaintiffs' Documents from Alfa
              Prejudices Defendants....................................................16

    III.    PLAINTIFFS CONTROL ALFA AND SHOULD COLLECT AND
            PRODUCE THEIR ALFA DOCUMENTS. ......................................18

          A.  Plaintiffs' Leadership Positions at Alfa and Their Substantial
              Ownership Interests in Alfa Establish That They Have the Legal
              Right, Authority, or Ability to Obtain Alfa Documents. ...............19

              1.  *Plaintiffs Have Control over Their Alfa Documents Because*
                   *They are Officers, Directors, and Founders of Alfa* ...............19

              2.  *Plaintiffs' Substantial Ownership Interests in Alfa Consortium's*
                   *Holding Companies Give Them Control over Their Documents*
                   *Because They can Direct and Influence Alfa's Decisions.* ......22

          B.  Plaintiffs' Influence over Other Corporate Officers and Board
              Members Show That Plaintiffs Have the Ability to Obtain Their
              Alfa Documents. ..........................................................26

          C.  Alfa Has a Significant Stake in the Litigation and Is Closely
              Connected to the Litigation...............................................29

          D.  Outside of Discovery, Plaintiffs Hold Themselves out as Controlling
              Alfa and Should Not Be Permitted to Offer a Contrary Position for
              Purposes of Shielding Documents. ......................................31

          E.  Close Coordination between Alfa and Plaintiffs Demonstrates
              Plaintiffs' Control over Alfa Documents....................................34

          F.  Plaintiffs Use Their Alfa Email and Access Their Phones and Other
              Documents in the Usual Course of Performing Their Jobs. ...........36

G.  Plaintiffs Have Not Made a Good Faith Effort to Use Their Influence
to Obtain Their Documents.............................................................................39

**CONCLUSION** ....................................................................................................................41

# TABLE OF AUTHORITIES

*Afros S.P.A. v. Krauss-Maffei Corp.*,
  113 F.R.D. 127 (D. Del. 1986) .......................................................................30

*\*Appleton Papers Inc. v. George A. Whiting Paper Co.*,
  No. 08-C-16, 2009 WL 2408898 (E.D. Wis. July 31, 2009) ...........................31, 35

*\*Annunziato v. Collecto, Inc.*,
  304 F.R.D. 360 (E.D.N.Y. 2015) .................................................................26, 37

*Benisek v. Lamone*,
  320 F.R.D. 32 (D. Md. 2017) ....................................................................11, 31

*Bush v. Ruth's Chris Steak House, Inc.*,
  286 F.R.D. 1. (D.D.C. 2012) .....................................................................12, 18

*Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*,
  138 F.R.D. 438 (D.N.J. 1991) ...................................................................11, 36

*Chevron Corp. v. Donziger*,
  296 F.R.D. 168 (S.D.N.Y. 2013) .....................................................................32

*Chevron Corp. v. Salazar*,
  275 F.R.D. 437 (S.D.N.Y. 2011) .................................................................18, 37

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*,
  105 F.R.D. 16 (S.D.N.Y. 1984) ..................................................................14, 30

*Cooper Indus., Inc. v. British Aerospace, Inc.*,
  102 F.R.D. 918 (S.D.N.Y. 1984) .....................................................................37

*Costa v. Kerzner Int'l Resorts, Inc.*,
  277 F.R.D. 468 (S.D. Fla. 2011) .....................................................................31

*Flagg v. City of Detroit*,
  252 F.R.D. 346 (E.D. Mich. 2008) ..................................................................25

*Gen. Envtl. Sci. Corp. v. Horsfall*,
  136 F.R.D. 130 (N.D. Ohio 1991) ...................................................................20

*Gross v. Lunduski*,
  304 F.R.D. 136 (W.D.N.Y. 2014) ....................................................................19

*Haseotes v. Abacab Int'l Computers, Inc.*,
  120 F.R.D. 12 (D. Mass. 1988) .......................................................................21

*\*Huang v. iTV Media, Inc.*, No. 13CV3439JFBSIL,

2017 WL 706194 (E.D.N.Y. Feb. 22, 2017)....................................................................19, 20

*In re Application of Bloomfield Inv. Res. Corp.*,
    315 F.R.D. 165 (S.D.N.Y. 2016) .............................................................................22, 36

*In re Barnwell Enters. Ltd.*,
    265 F. Supp. 3d 1 (D.D.C. 2017) ...................................................................................18

*\*In re Flag Telecom Holdings, Ltd. Sec. Litg.*,
    236 F.R.D. 177 (S.D.N.Y. 2006) ...................................................................20, 32, 36

*In re Kidd*, No. 3:20-MC-00016-TOF,
    2020 WL 2404928 (D. Conn. May 12, 2020).................................................................20

*\*In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal Group, PLLC*,
    333 F.R.D. 291 (D.D.C. 2019)........................................................................................12

*In re Teligent, Inc.*,
    358 B.R. 45 (Bankr. S.D.N.Y. 2006) .............................................................................32

*Jacoby v. Hartford Life & Acc. Ins. Co.*,
    254 F.R.D. 477 (S.D.N.Y. 2009) ...................................................................................39

*Kifle v. Parks & History Ass'n*, No. CIV.A. 98-00048 (CKK),
    1998 WL 1109117 (D.D.C. Oct. 15, 1998) ...................................................................13

*Linder v. Calero-Portocarrero*,
    251 F.3d 178 (D.C. Cir. 2001) .......................................................................................17

*\*McKesson Corp. v. Islamic Republic of Iran*,
    185 F.R.D. 70 (D.D.C. 1999)..........................................................................11, 34, 40

*Montgomery v. Risen*,
    875 F.3d 709 (D.C. Cir. 2017) .........................................................................................7

*New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*,
    233 F.R.D. 259 (N.D.N.Y. 2006).....................................................................................31

*N. Carolina Right to Life, Inc. v. Leake*,
    231 F.R.D. 49 (D.D.C. 2005)...........................................................................................16

*OAO Alfa Bank v. Ctr. for Pub. Integrity*,
    387 F. Supp. 2d 20 (D.D.C. 2005) ...................................................................................5

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    314 F.R.D. 341 (S.D.N.Y. 2016) ...................................................................................14

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
    490 F.3d 130 (2d Cir. 2007)....................................................................................18, 24

*Shcherbakovskiy v. Seitz,
    No. 03 CV 1220 RPP, 2010 WL 3155169 (S.D.N.Y. July 30, 2010),
    *aff'd*, 450 F. App'x 87 (2d Cir. 2011)..............................................................*passim*

Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.,
    237 F.R.D. 561 (D. Md. 2006)......................................................................23

Super Film of Am., Inc. v. UCB Films, Inc.,
    219 F.R.D. 649 (D. Kan. 2004)....................................................................13

*Tavoulareas v. Piro,
    93 F.R.D. 11 (D.D.C. 1981)..........................................................................39

Tomlinson v. El Paso Corp.,
    245 F.R.D. 474 (D. Colo. 2007) ..................................................................26

Uniden Am. Corp. v. Ericsson Inc.,
    181 F.R.D. 302 (M.D.N.C. 1998) .......................................................12, 18, 19

United States v. All Assets Held at Bank Julius Baer & Co., Ltd.,
    No. CV 04-798 (PLF/GMH), 2018 WL 8867711 (D.D.C. Jan. 19, 2018) .....................12

United States v. Stein,
    488 F. Supp. 2d 350 (S.D.N.Y. 2007) ...........................................................12

United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.,
    No. MC 20-5 (CKK), 2020 WL 2496986 (D.D.C. May 14, 2020) ................................17

*U.S. Int'l Trade Comm'n v. ASAT, Inc.,
    411 F.3d 245 (D.C. Cir. 2005).............................................................11, 18, 19

U.S. Philips Corp. v. Synergy Dynamics Int'l, L.L.C.,
    2007 WL 9734384 (D. Nev. July 9, 2007) ....................................................20

Watts v. SEC,
    482 F.3d 501 (D.C. Cir. 2007) ....................................................................16

*Weaver v. Gross,
    107 F.R.D. 715 (D.D.C. 1985)...........................................................19, 23, 35

*Wiwa v. Royal Dutch Petroleum Co.,
    No. 01CIV1909 (KMW) (HBP), 2009 WL 529224 (S.D.N.Y. Feb. 17, 2009)..............19, 20

Wyoming v. U.S. Dep't of Agric.,
    208 F.R.D. 449 (D.D.C. 2002).......................................................................16

\* Per LCvR 7(a), the asterisks denote cases on which counsel chiefly relies.

## **Other Authorities**

Federal Rule of Civil Procedure 11 ......................................................................8

Federal Rule of Civil Procedure 26 ...............................................................*passim*

Federal Rule of Civil Procedure 34 ...............................................................*passim*

Federal Rule of Civil Procedure 37 ...................................................................13

Wright & Miller, Fed. Prac. & Proc. § 2210.......................................................18

## INTRODUCTION

Plaintiffs Mikhail Fridman, German Khan, and Petr Aven are internationally known businessmen and three of the wealthiest Russian oligarchs,[1] who lead and control Alfa, a privately owned financial-investment conglomerate. The success of Alfa, and Plaintiffs' personal wealth and status, grew out of their decades' long relationship with Vladimir Putin and the kleptocratic state he leads. Plaintiffs have also been discussing these relationships and their business operations in the news media for more than 20 years.

Both at the *Wall Street Journal* and later in business, Defendants Bean LLC d/b/a Fusion GPS and Glenn Simpson have researched, investigated, and reported on Plaintiffs, Alfa, Russian oligarchs, and the Kremlin for over 15 years. In September 2016, one of Defendants' subcontractors wrote a memorandum called CIR 112, summarizing how Plaintiffs, Alfa, and Putin have worked together to their mutual benefit over the last 20 to 30 years. Notably, CIR 112 does not mention the Trump Campaign or then-candidate Donald Trump in any way. The findings in CIR 112 lined up with Defendants' knowledge of Plaintiffs, Alfa, and their relationship with Putin, as well as the extensive public record. In 2017, Plaintiffs nevertheless sued Defendants and alleged that various statements in CIR 112 concerning Plaintiffs and Alfa defamed *both*; however, Alfa is not a plaintiff.

Discovery is well under way. But Plaintiffs' document production is deficient. Despite being Alfa's founders, ultimate beneficial owners and controlling shareholders, Plaintiffs have

---

[1] Fridman's net worth is estimated at $15 billion, *#86 Mikhail Fridman*, Forbes, https://www.forbes.com/profile/mikhail-fridman/#760142fc266e (last visited June 9, 2020); Aven's net worth is estimated at $5.1 billion, *#375 Petr Aven*, Forbes, https://www.forbes.com/profile/pyotr-aven/#7e6106885ac8 (last visited June 9, 2020); Khan's net worth is estimated at $9.7 billion, *#160 German Khan*, Forbes, https://www.forbes.com/profile/german-khan/#72909dcb6dbd (last visited June 9, 2020).

barely produced any documents at all because they have refused to review or produce *any* of their documents—including their emails—at Alfa. Plaintiffs even contend that they don't control the phones in their pockets or the personal assistants they hired and direct every day. Consequently, Plaintiffs Fridman and Aven have only reviewed their personal email accounts, which they rarely use, and produced a mere 59 emails total. Plaintiff Khan says he has no personal email account and has not produced *any* emails. All three Plaintiffs claim they have no control over either their personal devices such as phones or the communications of their personal assistants.

Plaintiffs' contention that they do not control their own Alfa documents is meritless. Plaintiffs have the legal right, authority, or practical ability to obtain their Alfa documents and thus are required to do so under Rule 34 of the Federal Rules of Civil Procedure. Plaintiffs founded Alfa, are its ultimate beneficial owners, its corporate officers and board members, and control voting blocs within the shareholders and board. Plaintiffs have the ability to influence Alfa, close connections to Alfa, and a long history of litigating alongside Alfa. Plaintiffs publicly identify themselves as Alfa and regularly use their Alfa email accounts to conduct their own government relations and public relations work. Accordingly, Plaintiffs' claims that they cannot review or produce *their* Alfa documents—including their emails, their personal devices and the communications sent on their behalf by their personal assistants—are untenable. Plaintiffs have not even used their considerable influence and control of Alfa to send Alfa's other officers and directors a letter requesting access to their documents for their lawsuit.

Additionally, Plaintiffs have placed Alfa at the heart of the matter, which underscores their obligation under Rule 34 to review and produce their Alfa documents. Alfa is the subject of the statements Plaintiffs allege are defamatory. Indeed, two of the three allegedly defamatory statements discuss Alfa and do not mention Plaintiffs at all. Plaintiffs claim that these statements

have harmed them both directly and through Alfa. Despite Alfa's substantial stake in this litigation, it is not a party to this lawsuit.

Rather than produce their Alfa documents, Plaintiffs have insisted that Defendants resort to obtaining Plaintiffs' documents from Alfa, a third party headquartered in Moscow, despite their control of the consortium. Plaintiffs' insistence that Defendants seek Plaintiffs' documents from Alfa prejudices Defendants by denying them the benefit of crucial Plaintiff documents and requiring Defendants to engage in needless negotiations and, potentially, litigation with a third party, located in Russia, to obtain discovery that Defendants are entitled to obtain directly from Plaintiffs. Having filed this case in Washington, DC, these foreign plaintiffs should not be permitted to proceed with their lawsuit when they are hiding their documents with a foreign third party under the pretense that they do not control their own documents.

Defendants respectfully move the Court to overrule Plaintiffs' objections to the production of discovery on the basis that they do not have possession, custody, or control over Alfa documents and compel responsive discovery.

## BACKGROUND

### I.   Plaintiffs Allege that Defendants Defamed Plaintiffs *and Alfa*.

Plaintiffs Mikhail Fridman, Petr Aven, and German Khan ("Plaintiffs") filed this action against Defendants Bean LLC d/b/a Fusion GPS and Glenn Simpson ("Defendants") on October 3, 2017. Plaintiffs are suing Defendants for money damages based on a report titled Company Intelligence Report 2016/112 ("CIR 112") that Defendants commissioned from a well-regarded former British intelligence officer, Christopher Steele, and his highly reputable business intelligence company, Orbis. CIR 112 is one of 17 such reports that Orbis sent to Defendants. The popular media has labeled the collection of these 17 reports "the Dossier."

Plaintiffs claim that three statements in CIR 112 are false and "defamed the Plaintiffs *and Alfa*," Am. Compl. ¶ 33, Dkt. No. 17 (emphasis added), and allege that "Defendants are liable for the defamation of Plaintiffs *and Alfa*." *Id.* ¶ 35 (emphasis added). In particular, Plaintiffs claim that the following statements in CIR 112 are false and defamed Alfa and them:

- Plaintiffs claim that the line, "RUSSIA/US PRESIDENTIAL ELECTION: KREMLIN-ALPHA GROUP COOPERATION," is false and defamed them. Ex. 3, Pls.' Suppl. Resp. to Interrog. No. 2.[2]

- Plaintiffs claim that this sentence in CIR 112 is false and defamatory: "Significant favours continued to be done in both directions, primarily political ones for PUTIN and business/legal ones for Alpha." *Id.*

- Plaintiffs claim that the following content of CIR 112 is false and defamatory: "during the 1990s GOVORUN had been Head of Government Relations at Alpha Group and in reality, the 'driver' and 'bag carrier' used by FRIDMAN and AVEN to deliver large amounts of illicit cash to the Russian president, at that time deputy Mayor of St Petersburg. Given that and the continuing sensitivity of the PUTIN-Alpha relationship, and need for plausible deniability, much of the contact between them was now indirect and entrusted to the relatively low profile GOVORUN." *Id.*

As is evident from these allegations, Plaintiffs are claiming they should be allowed to recover damages for statements they claim *defamed Alfa*, as only one of the statements mentions Plaintiffs Fridman and Aven, and none mentions Plaintiff Khan. Plaintiffs have put Alfa at the heart of their defamation claims, and their claims reveal that Plaintiffs consider themselves so closely identified with Alfa that statements concerning Alfa defame them.

---

[2] CIR 112 spells Alfa as "Alpha" throughout.

Plaintiffs and Alfa, however, chose to file the lawsuit without joining Alfa as a plaintiff. Two decades ago, in this same court, Plaintiffs Fridman and Khan brought a defamation case in which Alfa was the lead plaintiff. *See OAO-Alfa Bank et al. v. Center for Public Integrity*, Case No. 1:00-cv-2208 (JDB) (filed Sept. 14, 2000). Alfa engaged in approximately two years of party discovery. *Id.* at Dkt. Nos. 10 & 56 (scheduling orders). Ultimately, the court ruled against Plaintiffs Fridman and Aven, as well as Alfa, on summary judgment. *See OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 57 (D.D.C. 2005).

In the instant case, Plaintiffs have again placed Alfa at the heart of the matter. This time, however, Alfa's three primary founders and owners are the only plaintiffs.

## II.    The Instant Dispute

Despite putting Alfa at the center of their own case and despite owning a majority of the beneficial interests in Alfa, Plaintiffs have taken the incredible position that they do not have "possession, custody, or control" of any of their Alfa emails or other Alfa documents. As such, Plaintiffs claim they cannot review or produce these materials.

Since discovery opened in this case, the Parties have exchanged document requests and responses and produced documents. *See* Ex. 1, Defs.' Reqs. for Prod. of Docs.; Ex. 2, Pls.' Resps. to Doc. Reqs. & Pls.' Supp. Resps. to Doc. Reqs. The Parties have engaged in months of discussions concerning discovery disputes and have reached agreement on most issues. *See* Exs. 4–15, Meet and Confer Correspondence. Despite many discussions and lengthy correspondence, however, the Parties have not been able to narrow or resolve the issue of Plaintiffs' control over Alfa documents and their refusal to produce them. In their responses to document requests, Plaintiffs objected to the production of any of their documents at Alfa by stating: "Plaintiffs are responding on their behalf only and producing documents only within Plaintiffs' possession,

custody, or control. For the avoidance of doubt, Plaintiffs are not responding on behalf of the Alfa conglomerate of entities . . . ." Ex. 2, Pls.' Resps. to Doc. Reqs. at 3–4. Throughout the meet and confer discussions and correspondence, Plaintiffs' counsel has insisted that Plaintiffs lack "possession, custody, or control" over their Alfa emails or documents or electronic messaging apps, and that Plaintiffs would not be collecting, reviewing, or producing any of these documents in response to Defendants' document requests. Exs. 5, 6, 8, 10, 14 (Plaintiffs' correspondence dated March 12, 2020; April 2, 2020; April 24, 2020; May 15, 2020; and June 2, 2020).

Despite their ownership and control of Alfa, Plaintiffs have refused to make more than a token effort to obtain their Alfa documents. Defendants' counsel asked that Plaintiffs make a direct request, in writing, to Alfa for access to their documents. Ex. 7, Ltr. from J. Levy to A. Lewis 8 (Apr. 16, 2020). Plaintiffs have refused to do so. Ex. 14, Ltr. from A. Lewis to J. Levy 3 (June 2, 2020) (stating that Plaintiffs' request for documents "was made through counsel, *orally*" (emphasis in original)). Instead, Plaintiffs' counsel represented that Plaintiffs' counsel made the following oral request:

> On behalf of the Plaintiffs we asked counsel for the Alfa group of entities ("Alfa") and for Letterone Holdings S.A. and Letterone Investment Holdings S.A. or any of their affiliated entities ("LetterOne") – Margaret Krawiec and Ryan Junck of Skadden, Arps, Slate, Meagher & Flom LLP – to make available to Plaintiffs the Alfa and LetterOne ESI or documents, including email, necessary for Plaintiffs to review in connection with providing discovery to the Defendants in this action. The response was that ESI and other documents in the possession, custody, or control of Alfa and LetterOne would not be made available to Plaintiffs for production by Plaintiffs in this action.

Ex. 6, Email from A. Lewis to J. Levy et al. (Apr. 2, 2020). Defendants requested that Plaintiffs' counsel indicate the date on which such request was made. Plaintiffs' counsel declined to do so. *See* Ex. 7, Ltr. from J. Levy to A. Lewis 8 (Apr. 16, 2020). Plaintiffs have also refused to provide copies of written correspondence, if any exists, between Plaintiffs' counsel and Alfa's counsel

concerning Plaintiffs' access to their email and other documents. All the while, at least one of Alfa's attorneys is also Plaintiff Aven's criminal defense attorney in the United States who represented Plaintiff Aven personally in the Special Counsel's investigation.[3]

As a result of Plaintiffs' improper objections, Plaintiffs' May 4, 2020 document production was wholly deficient, and it appears that the vast majority of potentially responsive documents are at Alfa. First, Plaintiffs have virtually no personal emails. Plaintiffs Mikhail Fridman and Petr Aven only have personal email from January 2010 onward, and Plaintiff German Khan has *no* personal email at all. Ex. 7, Ltr. from J. Levy to A. Lewis (Apr. 16, 2020). Plaintiffs Fridman and Aven, for a ten-year period, have between the two of them fewer than 10,000 emails total. Ex. 8, Ltr. from A. Lewis to J. Levy (April 24, 2020). Plaintiffs produced less than 1% of those emails. Second, Plaintiffs' counsel represented that any and all of Plaintiffs' hard copy documents, emails using an Alfa or LetterOne email address, text messages or other communications on messaging apps, electronic documents, calendars, and communications written on their behalf by their personal assistants are in the possession, custody, or control of Alfa, and that Plaintiffs, despite their significant ownership, influence, and involvement with those entities, cannot access those documents. *See* Ex. 7, Ltr. from J. Levy to A. Lewis (Apr. 16, 2020).

Plaintiffs' claim to have virtually no documents in their control also suggests that, as of this this date, Plaintiffs and their counsel have made no effort to review evidence that is obviously relevant to their burden of proving falsity in this defamation action. *See Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017) (explaining that where a plaintiff "claims to have been defamed by

---

[3] *See* Ex. 6, Email from A. Lewis to J. Levy (Apr. 2, 2020) (stating that counsel for Alfa is Margaret Krawiec and Ryan Junck of Skadden, Arps, Slate, Meagher & Flom LLP); *see also* Ex. 16, Notes of Special Counsel's Office Interview of Petr Aven 1 (Aug. 2, 2018) (noting that Mr. Aven was represented by Ryan Junck).

statements about matters of public concern," the plaintiff "must make a showing of falsity as an element of his affirmative case"). First, in their production, Plaintiffs did not produce any documents proving the falsity of the allegedly defamatory statements. Second, Plaintiffs have represented that they are not withholding any documents on the grounds of privilege. *See* Ex. 11, Email from T. McDonough to J. Levy et al. (May 18, 2020). Third, according to Plaintiffs, the vast majority of their documents are within Alfa's control, and neither they nor their counsel have possession or custody of such documents. Defendants are therefore left to presume that Plaintiffs and their counsel have never reviewed the vast majority of relevant documentary evidence in this case prior to filing this defamation suit. Inasmuch as this is the case, it is questionable how Plaintiffs' counsel met their obligation to ensure the complaint's claims are, to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," based on factual contentions that "have evidentiary support," Fed. R. Civ. P. 11, including but not limited to their claim that the alleged defamatory statements in CIR 112 are false. In the event Plantiffs did not meet those obligations, they should not be permitted to proceed with their case.

## III.   Alfa

"Alfa," as Plaintiffs have defined the term in this lawsuit, refers to "the conglomerate of entities including ABH Holdings S.A., Alfa Capital, AlfaStrakhovanie Group, Alfa Asset Management (Europe) S.A., A1, X5 Retail Group, Rosvodokanal Group, and IDS Borjomi International Group." Ex. 17, Pls.' First Set of Doc. Reqs. to Defs., Definitions; *see also* Am. Compl. ¶ 1 (describing Alfa as "a consortium"). Accordingly, Alfa, as used by Plaintiffs, also includes LetterOne, the international investment business co-founded by Plaintiffs in 2013. *See* Ex. 18, Pls.' Proposed Search Terms for Pls.' Doc. Reqs. To Defs., Mar. 23, 2020 (requesting that Defendants search for "Alfa or Alpha or LetterOne or L1," and thus that "Alfa" as referred to in

CIR 112 includes "LetterOne"). Plaintiffs Fridman, Aven, and Khan "are ultimate beneficial owners of Alfa." Am. Compl. ¶ 11; *see also id.* ¶ 28 (Fridman and Aven are "two of [Alfa's] largest beneficial owners").

There is no single "Alfa" entity. Plaintiff Fridman established the Alfa Group Consortium in 1989 and established its flagship business, Alfa Bank, in December 1990. *See* Ex. 19, Witness Statement of M. Fridman, *Aven v. Orbis*, QB-2018-06349, ¶¶ 4–5 (Feb. 10, 2020). As described by Alfa, "Alfa Consortium is comprised of at least nine major holding companies with interests in financial services, oil and gas production, technology, telecommunications and retail trade." Ex. 20, Mem. Supp. Alfa Group Consortium's Mot. to Dismiss, Dkt. No. 86, *Norex Petroleum Ltd. v. Blavatnik*, Index No. 650591/2011 (N.Y. Sup. Ct., Cnty. of N.Y., filed Sept. 16, 2011). Although Alfa consists of numerous entities and holding companies, Plaintiffs concede that they "are ultimate beneficial owners of Alfa." Am. Compl. ¶ 11.

Alfa Group's most recent annual report, available on its website, lists Mikhail Fridman as Chairman of the Supervisory Board of Alfa Group Consortium. *See* Ex. 21, Alfa Group 2018 Annual Report 4–5. Plaintiffs Khan and Aven are also members of the Supervisory Board. *See id.* That the three Plaintiffs in this case hold both the chairmanship and three board seats at this entity (which has no stockholders), yet are somehow unable to persuade Alfa Group Consortium to cooperate with a major court case *they* filed for the express purpose of protecting or repairing the reputation of that very organization, strains credulity.

Plaintiffs also own a clear majority of the Alfa Group Consortium's most important component, the "Alfa Banking Group," which also controls the internet domain (alfabank.ru) that they use to send many of their business, personal, and political emails. It is "owned by 7 beneficial shareholders," including Plaintiffs. Plaintiff Fridman owns 32.8632%; Plaintiff Khan owns

20.9659%; and Plaintiff Aven owns 12.4018%. Ex. 22, Ownership Structure, alfabank.com,
https://alfabank.com/corporate-profile/about-us/ownership-structure. Together, Plaintiffs control
66.23% of the shares in Alfa Banking Group, a majority and almost a supermajority. The
ownership structure of Alfa Banking Group is illustrated on the Alfa Bank website as follows:



About Us – Ownership Structure, Alfa Bank, https://alfabank.com/corporate-profile/about-us/
ownership-structure (last visited June 5, 2020).

All shareholder interests in Alfa Banking Group are currently held through a Luxembourg
holding company called ABH Holdings S.A. ("ABH Holdings"). The current Chairman of the
Board of Directors of ABH Holdings is Plaintiff Petr Aven, while Plaintiff Fridman is a non-
executive Director. Ex. 23, Directors, ABH Holdings, S.A., https://www.abhh.lu/about-us/
directors. Plaintiffs, collectively, are the majority owners of ABH Holdings, which in turn is
described as the ultimate owner of Alfa Banking Group.[4]

---

[4] Specifically, ABH Financial Limited is a wholly owned subsidiary of ABH Holdings S.A., owned
by Plaintiffs and four other individuals and entities. In turn, Alfa-Bank is a wholly owned
subsidiary of ABH Financial Limited. *See* ABH Financial Limited, Notes to the Condensed
Consolidated Interim Financial Information (June 30, 2018), https://alfabank.com/app/uploads/
2018/08/abhf-FS-30-06-2018_issued.pdf.

Plaintiffs unquestionably control ABH Holdings. According to its financial statements, "[a]ll shares of the Company are paid, have nominal value of USD 0.01 each, *rank equally and each share carries one vote*." Ex. 24, ABH Holdings S.A., Int'l Fin. Reporting Standards, Consolidated Financial Statements & Audit Report 2, Dec. 31, 2018 (emphasis added). *See also* Ex. 25, ABH Holdings S.A., Notes to the Annual Accounts for the year ended 31 Dec. 2018, at 3 ("ABH Holdings S.A. . . . is a Luxembourg registered company incorporated as a 'société anonyme,' owned by seven shareholders: Mr. Fridman, Mr. Khan, Mr. Kuzmichev, Mr. Aven, Mr. Kosogov, Unicredit S.p.A. and a non-profit organisation Mark Foundation for Cancer Research"); Ex. 26, Regal Petroleum, Banking Arrangements with a Related Party (June 7, 2017) (stating that "ABH Holdings SA . . . owns Alfa-Bank" and its "majority beneficial shareholders" include "Mr. Mikhail Fridman, Mr. German Khan and Mr. Alexey Kuzmichev"); Ex. 27, 2016 Alfa Bank Bond Prospectus 99–100 (July 22, 2016) ("The ultimate parent company of Alfa Banking Group is ABH Holdings" which is "directly owned by six shareholders," listing in a chart: Mikhail Fridman (36.47%); German Khan (23.27%), and Petr Aven (13.76%)); Ex. 28, 2011 Alfa Bank Bond Prospectus 67 (April 21, 2011) ("[T]he ultimate parent company of the Alfa Banking Group is ABH Holdings S.A.").

## ARGUMENT

### I.    LEGAL STANDARDS

Rule 34(a) of the Federal Rules of Civil Procedure requires Plaintiffs to produce all responsive documents that are within their "possession, custody, *or* control." (Emphasis added). Rule 34 is "stated disjunctively so that only one of the enumerated requirements need be met" to support a finding of control. *Benisek v. Lamone*, 320 F.R.D. 32, 34 (D. Md. 2017) (cleaned up).

"[F]ederal courts broadly construe the term control for Rule 34 purposes." *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999). "'Control' is defined as the legal right, authority or ability to obtain documents upon demand." *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 254 (D.C. Cir. 2005) (quoting *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991)). "Control does not require that the party have legal ownership or actual physical possession of the documents at issue, but rather 'the right, authority or practical ability to obtain the documents from a non-party to the action.'" *Bush v. Ruth's Chris Steak House, Inc.*, 286 F.R.D. 1, 5 (D.D.C. 2012) (quoting *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007)); *see also In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal Group, PLLC*, 333 F.R.D. 291, 295 (D.D.C. 2019) (finding that subpoenaed law firm had "practical ability" to obtain the documents on the email system and thus had "control," and ordering it to produce the emails demanded).

"The definition of control under Rule 34 includes situations well beyond those which would permit a finding of *in personam* jurisdiction or liability based on an alter ego situation." *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 306 (M.D.N.C. 1998). "[W]hen a party has a right to obtain a copy of a document, it controls that document and must produce it when requested to do so under Rule 34." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, No. CV 04-798 (PLF/GMH), 2018 WL 8867711, at *9 (D.D.C. Jan. 19, 2018) (quoting, in parenthetical, *Engel v. Town of Roseland*, No. 06-CIV-430, 2007 WL 2903196, at *4 (N.D. Ind. Oct. 1, 2007)).

Courts have applied this legal standard of "control" to a range of corporate structures. "Parent corporations have been compelled to produce documents in the hands of subsidiaries, subsidiaries documents in the hands of their parent entities, corporations documents in the hands of employees, clients documents in the hands of attorneys, corporate officers and directors

12

documents in the hands of their corporations, and patients documents in the hands of health care providers." *United States v. Stein*, 488 F. Supp. 2d 350, 361 (S.D.N.Y. 2007) (collecting cases). "Absent such expanded scope of production, a third party with a substantial interest in the litigation may be allowed to frustrate the rules of discovery to the disadvantage of the party seeking production and, ultimately, of the court." *Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 654 (D. Kan. 2004) (holding that litigating corporation had control over affiliated non-party corporation's documents because the two entities shared a "commonality of interest").

Pursuant to Federal Rule of Civil Procedure 37, "A party seeking discovery may move for an order compelling . . . production . . . if . . . a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).

## II. PLAINTIFFS MAY NOT EVADE THEIR RULE 34 DISCOVERY OBLIGATIONS BY REQUIRING DEFENDANTS TO RESORT TO THIRD-PARTY DISCOVERY FOR DOCUMENTS THAT PLAINTIFFS CONTROL

Plaintiffs' failure to produce documents within their control violates their obligations under the Federal Rules of Civil Procedure and prejudices Defendants.

### A. Plaintiffs Must Fulfill Their Discovery Obligations.

Plaintiffs should not be allowed to evade their discovery obligations by requiring Defendants to seek production of Plaintiffs' documents from the third-party companies they control—companies that Plaintiffs have placed at the heart of this litigation. Both Plaintiffs and Alfa have beseeched Defendants to obtain Plaintiffs' discovery from Alfa.[5] However, a party that

---

[5] *See* Ex. 29, Email from Skadden to J. Levy (May 1, 2020); Ex. 30, Email from Skadden to J. Levy (May 8, 2020) (seeking to add the issue of Alfa documents to the agenda for a call about subpoenas served on two other third parties, who are also represented by Skadden in connection with this matter); Ex. 8, Ltr. from A. Lewis to J. Levy (Apr. 24, 2020) ("We urge you to contact the Skadden lawyers representing Alfa and LetterOne in connection with this litigation."); Ex. 10, Ltr. from A. Lewis to J. Levy (May 15, 2020) (again urging Plaintiffs to request the documents from Alfa); Ex. 12, Ltr. from J. Levy to A. Lewis (May 22, 2020) (describing the bizarre eagerness

has control over its records may not shirk its discovery obligations "by simply claiming that they do not possess the records sought" and by "imposing on" the opposing party "an unrecognized duty to direct repeated requests for information to various" third parties. *Kifle v. Parks & History Ass'n*, No. CIV.A. 98-00048(CKK), 1998 WL 1109117, at *2 (D.D.C. Oct. 15, 1998). The Rules may not be manipulated to burden an opposing party. *See Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 33–34 (S.D.N.Y. 1984) (citing *Natta v. Hogan*, 392 F.2d 686, 691 (10th Cir. 1968), for the proposition that "a third party with a substantial interest in the litigation cannot be allowed to frustrate the rules of discovery to the disadvantage of a party"). In addition, "Rule 34, like all of the Federal Rules of Civil Procedure, is subject to the injunction of Rule 1 that it be construed to secure the just, speedy, and inexpensive determination of every action." *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 314 F.R.D. 341, 346–47 (S.D.N.Y. 2016) (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)) (holding that "[r]egardless of the precise extent or degree of [party's] access to the materials held by [non-party] BNP Paribas (contractual, practical, or otherwise), [party] is surely in a better position than its adversary to identify and obtain those materials for use in this litigation"). Rather than require the adversary to pursue "an effort guaranteed to be expensive, time-consuming, and cumbersome, with no corresponding guarantee of success," the *Royal Park Investments SA/NV* court directed the party to produce the documents "held by" a non-party pursuant to Rule 34. *Id.*

Here, Plaintiffs control their records and possess many of them. Plaintiffs' and Alfa's dogged entreaties for Defendants to seek Plaintiffs' documents from Alfa are an attempt to goad Defendants into legitimating a legally indefensible position, and not—as Plaintiffs have tried to

---

with which Plaintiffs and counsel for Alfa have sought to have Defendants pursue documents from Alfa).

portray in communications—an accommodation or a courtesy to Defendants. Moreover, Plaintiffs' and Alfa's campaign to circumvent party discovery suggests that Plaintiffs have coordinated with Alfa—whose corporate counsel, Skadden Arps, has direct ties to at least two of the Plaintiffs—to shield Plaintiffs' documents and prejudice Defendants. Plaintiffs'—and most bizarrely, Alfa's—repeated insistence that Defendants go to Alfa's counsel to request documents does not alter Plaintiffs' discovery obligations under Rule 34. Neither does Plaintiffs' counsel's representation that Alfa's counsel is "willing to discuss Defendants' requests for documents, perhaps without requiring that Defendants serve a subpoena or follow foreign service formalities." Ex. 10, Ltr. from A. Lewis to J. Levy (May 15, 2020).[6]

Whether Plaintiffs and Alfa planned to conceal Plaintiffs' documents from the start when they filed this lawsuit (departing from their prior practice and filing this lawsuit without including Alfa as one of the named plaintiffs) is not known, as counsel for Plaintiffs and Alfa have refused to produce their written communications on this matter. Notably, Alfa's counsel, Skadden, lacks an arm's length relationship with Plaintiffs, as Skadden has represented Plaintiff Aven personally in the Special Counsel investigation,[7] served as long-time counsel to Alfa and LetterOne,[8] and

---

[6] Plaintiffs' counsel informed Defendants' counsel that "Skadden, as counsel for Alfa and LetterOne, would handle directly any specific discovery requests made by Defendants for Alfa or LetterOne ESI or documents," that Skadden "conveyed" to Plaintiffs' counsel that "they would act in good faith regarding the production of Alfa and LetterOne documents," and "that counsel for Alfa and LetterOne is willing to discuss Defendants' requests for documents, perhaps without requiring that Defendants serve a subpoena or follow foreign service formalities." Ex. 10, Ltr. from A. Lewis to J. Levy (May 15, 2020).

[7] Ex. 16, Notes of Special Counsel's Office Interview of Petr Aven 1 (Aug. 2, 2018) (noting that Plaintiff Aven was represented by Ryan Junck).

[8] *See, e.g.*, Ex. 31, International Litigation and Arbitration, Skadden.com, https://www.skadden.com/capabilities/practices/litigationcontroversy/cc/international-litigation-and-arbitration (represented Alfa-Access-Renova in dispute with BP; the decision was rendered in 2011); Ex. 32, Private Equity, Skadden.com, https://www.skadden.com/capabilities/practices/private-equity (represented LetterOne Holdings S.A. in its sale of DEA UK Holdings and in its acquisition of E.ON E&P Norge AS); *see also* Ex. 33, Kadhim Shubber et al., *Skadden's*

employed Plaintiff Khan's son-in-law.[9] This leads to the possible scenario where Plaintiff Aven's personal criminal defense lawyer at Skadden is requesting access to Plaintiff Aven's documents from himself as counsel for Alfa. Such close ties between counsel for Alfa and Plaintiffs make their lack of transparency about Plaintiffs' supposed efforts to access their documents from Alfa doubly concerning, particularly given Alfa's substantial stake in this litigation.

This maneuvering by Plaintiffs and the consortium they control is significant evidence of a potentially willful effort to avoid compliance with Plaintiffs' Rule 34 discovery obligations to prejudice Defendants.

### B. Requiring Defendants to Obtain Plaintiffs' Documents from Alfa Prejudices Defendants.

Although the Rules use similar language to describe the discovery obligations on parties and non-parties, courts have imposed different discovery obligations on a party and a non-party. Thus, Plaintiffs' insistence that Defendants seek what should be party discovery from Alfa prejudices Defendants because it very well could curtail the scope of discovery.

Courts afford non-parties more protection than parties in discovery disputes. "Non-party status is one of the factors the court uses in weighing the burden of imposing discovery." *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 452 (D.D.C. 2002) (quashing subpoenas on non-parties).

---

*Oligarch Work Comes into Focus After Mueller Charges*, Fin. Times (Feb. 23, 2018), https://www.ft.com/content/741975b0-18ae-11e8-9376-4a6390addb44 ("The firm also forged a relationship with Mikhail Fridman, acting for the AAR consortium that included Mr Fridman and German Khan, a Russian-Ukrainian billionaire, in its battle with BP in 2011. Skadden later represented Mr Fridman when the UK government forced his L1 investment vehicle to sell gasfields in the North Sea.").

[9] Ex. 34, Kadhim Shubber, *Lawyer in Mueller Probe Sentenced to 30 Days Jail*, Fin. Times (Apr. 3, 2018), https://www.ft.com/content/dfa46e3a-3757-11e8-8b98-2f31af407cc8 (describing sentencing of Alex van der Zwaan, Plaintiff Khan's son-in-law).

"The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007). *See also N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) (stating that "non-party status is also relevant" to the undue burden analysis under Rule 45). Requiring Defendants to obtain party discovery from Alfa, a non-party, not only subjects Defendants to a redundant process, but also could result in obtaining fewer relevant documents from Alfa than it would be able to obtain from Plaintiffs, simply by virtue of Alfa's status as a non-party.

Moreover, discovery from a non-party can be much more costly to Defendants. Under Rule 45(c)(2)(B)(ii), any court order to compel compliance with a subpoena "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) (holding that under Rule 45, the questions are "whether the subpoena imposes expenses on the non-party, and whether those expenses are 'significant.' If they are, the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant,'" and ordering requesting party to pay half the cost of subpoena compliance); *see also United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*, No. MC 20-5 (CKK), 2020 WL 2496986, at *5 (D.D.C. May 14, 2020) (requiring defendants to pay 60% of the costs of the search, processing, and production of information pursuant to their subpoena).

Plaintiffs cannot justifiably contend that requesting documents from Alfa is "more convenient, less burdensome, or less expensive," Fed. R. Civ. P. 26(b)(2)(C)(i), than simply producing relevant documents already in their control. For instance, it is difficult to imagine that it is inconvenient, burdensome, or costly for Plaintiffs to access their own corporate email accounts or their phones, which they regularly use. Nor is it burdensome to require Plaintiffs to use their

vast control and influence over Alfa to obtain their documents. All Plaintiffs have done so far is ask *orally*, through counsel, at some unspecified time, for their documents. Plaintiffs, as majority owners, officers and directors, and founders of Alfa, could make their request far more forceful were it reduced to writing, directed to the other officers and directors, and accompanied by an in-person meeting with the shareholders and/or the board. None of that has happened. Instead, Plaintiffs have burdened Defendants with the far more taxing route of forcing them to, *inter alia*, draft a subpoena for Alfa, serve the subpoena, and negotiate with Alfa the scope of the document requests and any other burdens—a redundant process given the months-long meet-and-confer process undertaken between the parties on the same exact requests.

### III. PLAINTIFFS CONTROL ALFA AND SHOULD COLLECT AND PRODUCE THEIR ALFA DOCUMENTS.

Plaintiffs have the "legal right, authority or ability to obtain documents upon demand." *U.S. Int'l Trade Comm'n*, 411 F.3d at 254 (cleaned up) (evaluating subsidiary's control of documents in the possession of its parent corporation).

The application of this concept of "control" is "highly fact-specific." Wright & Miller, Fed. Prac. & Proc. § 2210. Courts look to a number of factors, which focus on the litigating party's "actual control or inferred control, including any 'complicity' in storing or withholding documents." *Uniden Am. Corp.*, 181 F.R.D. at 306. Where the litigating party is an individual alleged to have control over a third-party corporation's documents, courts look to a variety of non-exclusive factors, and find control based on one or more of these factors, which include: whether the litigating party's investment in the non-party corporation is sufficient to give him control of the board, *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 139 (2d Cir. 2007);[10] the

---

[10] Cases from within the Second Circuit are instructive because that Circuit and the D.C. Circuit apply the same test for control, *i.e.*, that control means "the right, authority or practical ability to

extent of the litigating party's ownership interest in the non-party corporation, *Shcherbakovskiy v. Seitz*, No. 03 CV 1220 RPP, 2010 WL 3155169, at *13 (S.D.N.Y. July 30, 2010), *aff'd,* 450 F. App'x 87 (2d Cir. 2011); *Weaver v. Gross*, 107 F.R.D. 715, 718 (D.D.C. 1985) (weighing the party's role as a "significant shareholder" in the non-party corporation in determining that the party had control over the corporation's documents); the degree to which the litigating party can influence the leadership of the non-party corporation, *Shcherbakovskiy*, No. 03 CV 1220 RPP, 2010 WL 3155169, at *10; whether the litigating party is "an officer, director or shareholder" of the non-party corporation, *Huang v. iTV Media, Inc.*, No. 13CV3439JFBSIL, 2017 WL 706194, at *9 (E.D.N.Y. Feb. 22, 2017); whether the litigating party "founded, ran, and housed" the non-party corporation, *Wiwa v. Royal Dutch Petroleum Co.*, No. 01CIV1909 (KMW) (HBP), 2009 WL 529224, at *2 (S.D.N.Y. Feb. 17, 2009); and whether the litigating party and the non-party have "a common interest in this litigation," *Gross v. Lunduski*, 304 F.R.D. 136, 143 (W.D.N.Y. 2014). In addition, courts look to factors such as whether the litigating party has "access to documents when the need arises in the ordinary course of business," *U.S. Int'l Trade Comm'n*, 411 F.3d at 254 (evaluating party-subsidiary's control of non-party parent company's documents); whether the litigating party is an agent of the non-party corporation, *id.*; and "any benefit or involvement by the non-party corporation in the transaction" at issue, *Uniden Am. Corp.*, 181 F.R.D. at 306 (evaluating litigating corporation's control of non-party sister-corporation's documents).

---

obtain the documents from a non-party to the action." *Bush v. Ruth's Chris Steak House, Inc.*, 286 F.R.D. 1, 5 (D.D.C. 2012) (quoting *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007)). *See U.S. Int'l Trade Comm'n*, 411 F.3d at 253 (citing *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000); *In re Barnwell Enters. Ltd.*, 265 F. Supp. 3d 1, 16 (D.D.C. 2017) (quoting *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007) and *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 447–49 (S.D.N.Y. 2011)); *see also In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal Group, PLLC*, 333 F.R.D. 291 (D.D.C. 2019) (adopting the *Barnwell* construction of "control").

**A.  Plaintiffs' Leadership Positions at Alfa and Their Substantial Ownership Interests in Alfa Establish That They Have the Legal Right, Authority, or Ability to Obtain Alfa Documents.**

1.  *Plaintiffs Have Control over Their Alfa Documents Because They Are Officers, Directors, and Founders of Alfa.*

In addition to collectively controlling nearly two-thirds of the voting shares in ABH Holdings S.A., the holding company that owns Alfa Banking Group, Plaintiffs are also founders, Supervisory Board chairman, and directors of Alfa Group Consortium, which establishes their control over Alfa documents for purposes of Rule 34(a).

"A party's control over third-party documents extends to the records of a corporation for which the party serves as an officer." *Wiwa*, No. 01CIV1909 (KMW) (HBP), 2009 WL 529224, at *2–3 (plaintiffs "founded, ran, and housed" the third-party entity and thus had control over its records for purposes of Rule 34, even if they "ceased to hold leadership positions" at the company). It is "well-established that an individual party to a lawsuit can be compelled to produce relevant information and documents relating to a non-party corporation of which it is an officer, director or shareholder." *Huang*, 2017 WL 706194, at *9 (cleaned up) (holding that defendant Chief Executive Officer of non-party corporation had sufficient control over that corporation to compel the individual defendant to produce documents in the custody of the non-party corporation). *See also In re Kidd*, No. 3:20-MC-00016-TOF, 2020 WL 2404928, at *12 (D. Conn. May 12, 2020) (explaining that "a party *can* ordinarily tell the officer of a company to produce otherwise-discoverable documents that the officer has the practical ability to obtain," and denying the motion to quash a subpoena on the corporate officers, because they did not "specifically set forth facts that established their lack of control over the documents" (emphasis in original)); *U.S. Philips Corp. v. Synergy Dynamics Int'l, L.L.C.*, 2007 WL 9734384, at *9 (D. Nev. July 9, 2007) ("The Court concludes . . . that a defendant officer of a corporation can be compelled to produce relevant

20

corporate documents in his possession, custody and control as an officer . . . In such circumstances, it is not necessary to require the party seeking such discovery to subpoena the records directly from the corporation."); *In re Flag Telecom Holdings, Ltd. Sec. Litg.*, 236 F.R.D. 177, 181 (S.D.N.Y. 2006) (senior officer of company had control over company's records); *Gen. Envtl. Sci. Corp. v. Horsfall*, 136 F.R.D. 130, 133 (N.D. Ohio 1991) (stating that "[a]n individual party to a lawsuit can be compelled to produce relevant information and documents relating to a non-party corporation of which it is an officer, director or shareholder," and holding that individual defendants had control over non-party corporation's documents because they collectively owned a majority of the equity of the corporation and one of the defendants was the corporation's managing director); *Haseotes v. Abacab Int'l Computers, Inc.*, 120 F.R.D. 12, 14 (D. Mass. 1988) (holding that "the individual defendants, as officers, directors, and shareholders of Abacab Ltd. and Abacab Inc., can be required to produce documents that are in the possession of the corporations").

Plaintiff Aven is the Chairman of ABH Holdings S.A. Ex. 35, *Supervisory Board: Petr Aven*, Alfa Group, http://alfagroup.org/about-us/supervisory-board/member/petr-aven. Plaintiff Fridman is a co-founder of ABH Holdings S.A., Ex. 36, *Mikhail Fridman*, LetterOne, https://www.letterone.com/about-us/our-people/our-people/mikhail-fridman, and a member of its Board of Directors, Ex. 37, *Supervisory Board: Mikhal Fridman*, Alfa Group, http://alfagroup.org/about-us/supervisory-board/member/mikhail-fridman. He is also "one of the original founders of Alfa Group Consortium, . . . Chairman of the Supervisory Board of Alfa Group Consortium, . . . a member of the Board of Directors of Alfa-Bank (Russia), a member of the Supervisory Board of X5 Retail Group[,] and a member of the Supervisory Board of A1 Investment Holding S.A." *Id.* A financial filing from an Alfa entity states that: "Since 1989, Mr. Fridman has

taken *an active role in managing* the Alfa Group." Ex. 38, VimpelCom Ltd., SEC Am. No. 4 to Form F-4 Registration Statement (filed Mar. 25, 2010) (emphasis added). Plaintiff Khan "is one of the original founders of Alfa Group Consortium" and Chairman of the Supervisory Board of A1 Investment Holding. Ex. 39, *Supervisory Board: German Khan*, Alfa Group, http://alfagroup.org/about-us/supervisory-board/member/german-khan. He is also a member of the Supervisory Board of Alfa Group Consortium. Ex. 40, *German Khan*, LetterOne, https://www.letterone.com/about-us/our-governance/board-members/german-khan. He was also the President of Alfa-Eco, helping "lead the development of the export business, focusing on oil." Ex. 41, Witness Statement of German Khan, *Aven v. Orbis* at 2 ¶ 8 (Feb. 11, 2020).

As founders, officers, directors, and "significant shareholders" of Alfa, Plaintiffs have the "authority and power to produce records and documents in the possession and custody" of Alfa. *Weaver*, 107 F.R.D. at 718 (holding that defendant's role as president, chief executive officer, and significant shareholder of the non-party corporation gave him control over the corporation's documents, and that the "artificial distinction between the defendant in his activities as Chief Executive Officer and the corporation as a separate legal entity is totally unwarranted"). Through their positions as directors, executives, and officers at Alfa, Plaintiffs clearly have the right and ability to obtain their emails and documents in Alfa's custody, and they have provided no information suggesting otherwise.

2. *Plaintiffs' Substantial Ownership Interests in Alfa Consortium's Holding Companies Give Them Control over Their Documents Because They Can Direct and Influence Alfa's Decisions.*

While Alfa Group Consortium ("Consortium") no longer discloses the value of its constituent parts or the precise ownership of each, Plaintiffs are consistently listed as the major shareholders of Consortium assets. The Alfa Banking Group is both the oldest and biggest

Consortium unit with total assets of over $55 billion and shareholder equity of $7.85 billion. Ex. 24, ABH Holdings S.A., Consolidated Financial Statements & Audit Report 2, Dec. 31, 2018. Plaintiffs own a combined majority of the Alfa Banking Group's shares—over 66%—establishing Plaintiffs' right, authority, or ability to obtain their Alfa documents. *See In re Application of Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165, 168 (S.D.N.Y. 2016) (party had control over non-party corporation's documents because he owned a majority share in the holding company of the non-party corporation; he held an internal email address for the non-party corporation; and he was referred to as the "ultimate controlling party" in the non-party corporation's audited annual report); *Shcherbakovskiy*, 2010 WL 3155169, at *13 (plaintiff's role as 45% owner of non-party corporation supported a finding that plaintiff had control over non-party corporation's documents); *Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006) (ownership of the non-party is a "critical factor[]" in analyzing control); *Weaver*, 107 F.R.D. at 718 (party's role as a "significant shareholder" in non-party corporation was a factor in determining that the party had control over the non-party corporation's documents).

As noted above, *see supra* at 8–11, Plaintiffs Fridman, Aven and Khan collectively control a majority of the voting shares in ABH Holdings, the owner of Alfa Banking Group. Under Luxembourg law, a majority of the voting shares generally controls the governance of an S.A. *See* Ex. 42, Laurence Jacques et al., *Establishing a Business in Luxembourg*, Practical Law, https://uk.practicallaw.thomsonreuters.com/9-555-2765 ("Ordinary shareholders' general meetings of SAs, SASs and SCAs: there are no quorum requirements and decisions are adopted by a majority of the votes of shareholders present or represented at the meeting."); Ex. 43, *Guide to Going Global Corporate – Luxembourg*, DLA Piper, https://www.dlapiperintelligence.com/goingglobal/corporate/index.html?t=32-quorum-requirements&c=LU (explaining that decisions

may be adopted by shareholders representing more than half of the share capital of the company).

ABH has disclosed in its own financial statements that ABH shares "rank equally and each share

carries one vote." Ex. 24, ABH Holdings Consolidated Financial Statements & Audit Report 2,

Dec. 31, 2018. Such control leaves little question that Plaintiffs have the legal authority to form a

voting bloc with the power to direct ABH Holdings to, among other things, grant Plaintiffs access

to their documents. *See Shcherbakovskiy*, 490 F.3d at 139 (whether the individual plaintiff's

"investment in [non-party corporation] is sufficient to give him undisputed control of the board"

of the non-party corporation is a relevant factor for control).

Alfa's required disclosures to its investors also demonstrate Plaintiffs' power to direct and

influence Alfa Banking Group's decisions and actions because of their combined majority

ownership stake. As described in a 2017 Base Prospectus for Alfa's Bond Issuance Program:

> Messrs. Mikhail Fridman, German Khan and Alexei Kuzmichev are the Alfa
> Banking Group's principal shareholders, directly holding 32.86 per cent., 20.97 per
> cent. and 16.32 per cent., respectively, of ABH Holdings S.A.'s ("ABH Holdings")
> outstanding share capital as at the date of this Base Prospectus. The principal
> shareholders *have exercised and will continue to be able to exercise influence over
> the Alfa Banking Group's activities.... As a result of their indirect ownership of a
> substantial percentage of the Alfa Banking Group's outstanding shares and their
> ability to influence the appointment of ABH Financial's Board of Directors, the
> Alfa Banking Group's shareholders may prevent the Alfa Banking Group from
> making certain decisions or taking certain actions that would benefit it.*

Ex. 44, Base Prospectus for Alfa's Bond Issuance Program 24–25 (Sept. 17, 2019) (emphasis

added). *See also* Base Prospectus for Alfa's Bond Issuance Program at 23-24 (April 15, 2020),

https://www.ise.ie/debt_documents/Base%20Prospectus_0870d5b5-4a2a-41b4-9cf0-

b13afa0163eb.PDF (same). When combined with Plaintiff Fridman's 32.86% ownership and

Plaintiff Khan's 20.97% ownership, Plaintiff Aven's 12.41% of ABH Holdings means that,

collectively, all three Plaintiffs (holding 32.86%, 20.97%, and 12.41%) can "exercise influence

over the Alfa Banking Group's activities," "influence the appointment" of members of the board

of directors; and can "prevent the Alfa Banking Group from making certain decisions or taking certain actions that would benefit it." *Id.* Simply put, Alfa is alerting investors that Plaintiffs exert sufficient control over Alfa Banking Group such that they can block decisions and actions at Alfa. It follows that Plaintiffs can direct Alfa to consent to their request or directive to obtain their own emails and other documents. *See Flagg v. City of Detroit*, 252 F.R.D. 346, 355 (E.D. Mich. 2008) (finding that City had control of text messages held by third-party service provider because City admitted it could block disclosure of the text messages by withholding from third-party its consent, and therefore it necessarily followed that it could permit disclosure by granting its consent).

Plaintiffs' authority to direct Alfa's decisions and actions, and thus their authority to gain access to their documents, is further exhibited by the fact that Plaintiffs and their associates have established formal voting blocs to control their portfolio companies. The use of such blocs to exercise control without any individual shareholder having more than 50% ownership is memorialized in various securities filings. In a 2009 debt offering by Alfa Bank on the Irish Stock Exchange and also filed with the US Securities and Exchange Commission, the arrangement is described explicitly as a control mechanism:

> Upon the occurrence of certain change of control events relating to the Bank, the Issuer will be required to offer to repurchase all of the outstanding Notes. In general terms, a Put Event will occur if Mikhail Fridman, German Khan or Alexei Kuzmichev cease to own in excess of 50 per cent. plus one share of the voting stock of the Bank…

Ex. 45, Alfa Bank Exchange Offer 34–35 (June 30, 2009). In other words, the shareholdings of Fridman, Khan, and Kuzmichev amounted to greater than 50% of the stock, and the three were generally considered to be acting in concert to the extent that the loss of control by their bloc was explicitly defined to be a material event that could affect control. Similarly, when LetterOne took control of German company DEA, it issued bonds that defined a change of control at DEA as

occurring when any shareholder other than the "Original Investors" obtained more than 50% of the voting stock. Ex. 46, DEA Finance, Offering Memorandum at 233, 244 (Oct. 17 2016), https://www.bourse.lu/security/XS1498935391/242972. The "original investors" were listed as Fridman, Khan, Aven, and three of their oldest junior partners from Alfa. *Id.*

These control structures show that Plaintiffs are not mere passive shareholders in Alfa and LetterOne. They hold decisive sway over corporate decisions through their ownership stakes and their proxies, and they actively broadcast that influence to prospective investors. For example, in the DEA debt offering's section on ownership, LetterOne is decribed as "a privately owned Luxembourg-based international investment business founded in 2013 by Mikhail Fridman, German Khan, Alexey Kuzmichev and Petr Aven, among others." *Id.* at 244. LetterOne's own website and annual reports go even further, referring to Mikhail Fridman alone as "the principal shareholder." Ex. 47, *Our Governance*, LetterOne, https://www.letterone.com/about-us/our-governance (last visited June 9, 2020); LetterOne Annual Review 36 (2016).

### B. Plaintiffs' Influence over Other Corporate Officers and Board Members Show That Plaintiffs Have the Ability to Obtain Their Alfa Documents.

In addition to their dominant equity positions in the components of the Alfa Consortium and their dominant roles in the corporate governance of the Alfa Consortium and its subordinate units, Plaintiffs' influence over other officers at Alfa entities is sufficient to give Plaintiffs the practical ability to access their documents.

"Rule 34(a) of the Federal Rules of Civil Procedure . . . enables a party seeking discovery 'to require production of documents beyond the actual possession of the opposing party if such party has retained any *right* or *ability to influence* the person in whose possession the documents lie.'" *Annunziato v. Collecto, Inc.*, 304 F.R.D. 360, 363 (E.D.N.Y. 2015) (emphasis in original) (quoting *Commonwealth of the N. Mariana Islands v. Millard*, 287 F.R.D. 204, 209 (S.D.N.Y.

2012)) (holding that the party debt collector had the ability to obtain documents from the non-party company that hired it to collect the debt); *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 476–77 (D. Colo. 2007) ("Rule 34(a) enables a party seeking discovery to require production of documents beyond the actual possession of the opposing party if such party has retained any right or ability to influence the person in whose possession the documents lie."). For instance, the court in *Shcherbakovskiy v. Seitz* held that the plaintiff, a 45% owner and non-executive director of the third-party company, IPT, had control of IPT's documents in part because it was the plaintiff who had placed the other two directors in charge of IPT and transferred to them ownership interests in IPT, "which raise[d] the strong suggestion that the other two IPT board members were beholden to Plaintiff." 2010 WL 3155169, at *10.

As the founders and long-time leaders of Alfa, Plaintiffs can influence officers and directors at Alfa entities. Even where the voting blocs discussed, *supra* at 25, include individuals other than Plaintiffs, Plaintiffs can still exert control over the blocs because the other members of LetterOne's Board and the other beneficial owners of Alfa Banking Group (through ABH Holdings, S.A.) have such close and longstanding ties to Plaintiffs that they are beholden to them.

For example, Richard Burt, on the Board of LetterOne, is a long-time lobbyist for Alfa who, at the direction of Plaintiff Aven, undertook a secret effort called "Project A" in late 2016 to facilitate communications between the Russian government and aides to President-elect Donald Trump. Ex. 48, Notes of Special Counsel's Office Interview of Richard Burt 2–4 (Feb. 9, 2018); Ex. 49, 1 Report on the Investigation into Russian Interference in the 2016 Presidential Election 163 (2019) ("Aven instructed Richard Burt to make contact with the incoming Trump Administration. Burt was on the board of directors for LetterOne (L1), another company headed by Plaintiff Aven, and had done work for Alfa-Bank"). Both Plaintiff Aven and Burt have

27

described Burt's services to Plaintiff Aven and other work for Alfa in statements to the FBI. *Id.*; Ex. 16, Notes of Special Counsel's Office Interview of Petr Aven 6 (Aug. 2, 2018). Richard Burt has also communicated on behalf of Plaintiffs Aven and Fridman for public relations matters, such as arranging a book talk for Plaintiff Aven, *see* Ex. 50, Email exchange between A. Aslund, P. Aven, and R. Burt (Sept. 1, 2015) (Plaintiff Aven asking: "please coordinate the time of the lunch on November 4th with Rick Burt who is fully aware of my schedule"); Ex. 51, Email from R. Burt to A. Aslund (Sept. 9, 2015) (stating "I would like to talk to you about the Petr Aven event in November"), as well as a lunch for Plaintiffs Fridman and Aven at a think tank in Washington, D.C., *see* Ex. 52, Email from R. Burt to A. Aslund (Oct. 13, 2017). Accordingly, Plaintiffs Aven and Fridman have the ability to influence Richard Burt.

Andrei Kosogov, a member of the Boards of Directors of the Alfa Group and LetterOne, has worked for Alfa for close to 30 years. Ex. 28, Alfa Bank Prospectus 133 (Apr. 21, 2011). He has been described as "Fridman's shadow" and his $1.2 billion fortune "arose in the shadow of Fridman's." Ex. 53, Ruben J. Lapetra, *The Prosecutor Places Fridman and Letterone's 'Alfa' Russians at the Scene of the Zed Crime*, La Informacíon (Aug. 6, 2019) https://www.lainformacion.com/mercados-y-bolsas/todos-los-hombres-alfa-anticorrupcion-ilumina-a-fridman-y-sus-socios-por-zed/6508930. Kosogov is a 3.6716% beneficial owner of Alfa Banking Group, Ex. 22, *Ownership Structure*, Alfa Bank, and co-founded LetterOne with Plaintiffs and Alexey Kuzmichev, Ex. 54, *Andrei Kosogov*, LetterOne, https://www.letterone.com/about-us/our-governance/board-members/andrei-kosogov.

Alexey Kuzmichev is a co-founder of LetterOne, a member of the Board of Directors of LetterOne, and a 16.3239% beneficial owner of Alfa Banking Group. Ex. 22, *Ownership Structure*, Alfa Bank. He and Plaintiffs Khan and Fridman are "college buddies." Ex. 55, *Profile: Mikhail*

*Fridman*, Forbes (June 1, 2020), https://www.forbes.com/profile/mikhail-fridman/ #4c075e3266e9. "The trio have been partners since 1989 when the former college classmates started commodities trader Alfa-Eco." Ex. 56, *Profile: Alexei Kuzmichev*, Forbes (June 1, 2020), https://www.forbes.com/profile/alexei-kuzmichev/#7ba884d4634d.

Additionally, Plaintiff Fridman is Chairman of LetterOne's Nomination and Remuneration Committee, which, among other tasks, "approves the employment of senior executives." Ex. 47, *Our Governance*, LetterOne, https://www.letterone.com/about-us/our-governance. That Fridman plays a role in appointing senior executives "raises the strong suggestion that" such senior executives are "beholden" to him, and supports a finding that he controls LetterOne. *See Shcherbakovskiy*, 2010 WL 3155169, at *13 (rejecting plaintiff's argument that, as a non-executive director, he did not control the board of the non-party corporation, because the other two board members were likely beholden to plaintiff).

### C. Alfa Has a Significant Stake in the Litigation and Is Closely Connected to the Litigation.

Alfa has a clear connection to this litigation and a significant stake in its outcome, both of which support a finding that Plaintiffs have the right, authority, or ability to obtain their documents from Alfa.

"[T]he extent to which the non-party has a[] stake in the outcome of the litigation" is an "important factor" to consider in deciding whether a party has the practical ability to access documents in the possession of a non-party. *Gross v. Lunduski*, 304 F.R.D. 136, 142–43 (W.D.N.Y. 2014) (cleaned up) (finding that defendant corrections officer, sued in his individual capacity, had control over documents held by the non-party Department of Corrections in part because the interests of both defendant and the Department were aligned). Indeed, "[i]t is not unusual for documents in the possession of a third party, closely connected to the litigation, to be

subject to a Rule 34 request" and a broad construction of "control" is "premised on the rationale that a third party with a substantial interest in the litigation cannot be allowed to frustrate the rules of discovery to the disadvantage of a party." *Compagnie Française d'Assurance Pour le Commerce Exterieur*, 105 F.R.D. at 33–34 (finding constructive possession of requested third party documents where party to the litigation conducted business on behalf of the third party and "any recovery in this litigation will inure to the benefit" of the third party).

Alfa's actions are central to Plaintiffs' claims and, according to Plaintiffs themselves, Alfa stands to benefit from a judgment in Plaintiffs' favor. Am. Compl. ¶ 33. Alfa—not Plaintiffs—is named in two out of the three statements Plaintiffs claim are defamatory. Ex. 3, Pls.' Suppl. Resp. to Interrogatory No. 2. Plaintiffs claim that in CIR 112, "Plaintiffs Fridman, Aven, and Khan, *along with Alfa*, are alleged to maintain a highly inappropriate, and even criminal, relationship with Putin, based on criminal interaction dating back to the 1990s." Am. Compl. ¶ 23 (emphasis added). As to damages, Plaintiffs claim that "[t]he false statements by the Defendants referred to above defamed the Plaintiffs *and Alfa*, and have caused and will continue to cause serious injury to their personal, *professional, and institutional reputations*." *Id.* ¶ 33 (emphasis added).

Plaintiffs are asserting harm to their professional reputations—which are their reputations as Alfa shareholders and executives—as well as institutional reputational harm, presumably to Alfa. According to Plaintiffs, then, Alfa itself is a defamed entity, and a judgment in favor of Plaintiffs will remedy Plaintiffs' reputations as leaders at Alfa and Alfa's own institutional reputation. "If the nonparty is to receive a benefit from the litigation, that fact along with others must be weighed in determining control for purposes of Rule 34," and "it is unjust" for Plaintiffs to use their control over a non-party to "frustrate the discovery process and the complete resolution of the issues by refusing to furnish documents in its possession." *See Afros S.P.A. v. Krauss-Maffei*

*Corp.*, 113 F.R.D. 127, 131–32 (D. Del. 1986) (holding that defendant subsidiary corporation had control over its non-party parent corporation's documents for purposes of Rule 34, in part because the patent infringement issue raised in the lawsuit would "necessarily reference acts" the parent company performed and the parent company "would receive a direct benefit from a favorable judgment," in the form of increased sales or income through the party-subsidiary company).

Alfa's significant interest in this litigation weighs heavily toward finding that Plaintiffs have control over Alfa's documents. *See Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 473 (S.D. Fla. 2011) (finding control where non-party parent corporation of defendant had a direct financial interest in the outcome of class action suit brought against its subsidiary); *Benisek*, 320 F.R.D. at 35 (finding defendant chair of Maryland State Board of Elections had control of documents held by non-party state agencies that had participated in the drafting and enactment of a 2011 redistricting map and thus had a stake in the outcome of the litigation seeking to dismantle that map).

### D.  Outside of Discovery, Plaintiffs Hold Themselves out As Controlling Alfa and Should Not Be Permitted to Offer a Contrary Position for Purposes of Shielding Documents.

Outside of this discovery dispute, Plaintiffs hold themselves out as the leaders and owners of Alfa. Indeed, Plaintiffs identify themselves as so closely associated with Alfa that their purported lack of control over Alfa's documents is simply not credible. Plaintiffs "cannot evade production of documents by conveniently claiming a lack of access when the documents are sought for discovery purposes," *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 267 n.9 (N.D.N.Y. 2006), but, when it comes to their roles in the business world, project themselves as controlling Alfa. Where the litigating party "boast[s] to the world" about its "close corporate relationship" with the non-party entity, the litigating party cannot then "distance itself [from the non-party] when it is convenient." *Appleton Papers Inc. v. George A. Whiting Paper*

*Co.*, No. 08-C-16, 2009 WL 2408898, at *3 (E.D. Wis. July 31, 2009) (where party had "boasted" on its website that it was a subsidiary of the non-party corporation, "[t]he only conclusion one could draw from this is that not only are the two entities related in a corporate ownership sense, they are united in a shared business purpose," party must produce documents of the non-party).

Publicly-available documents show that Plaintiffs have communicated their control of Alfa to government entities and the press, who, in turn, routinely describe Plaintiffs as directing, controlling, and owning Alfa, a description Plaintiffs have not corrected. Plaintiffs are viewed and treated as the "boss[es]" of Alfa, reflecting their practical ability to obtain the documents. *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 210–11 (S.D.N.Y. 2013) (holding that whether attorneys working with defendant were defendant's "agents in a strict legal sense is a red herring," because defendant clearly had "practical control over them, regardless of the precise legal structure," based on evidence that attorneys treated defendant as the "boss" of the team); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. at 181 (holding that a former senior executive of a company must produce documents in possession of that company); *In re Teligent, Inc.*, 358 B.R. 45, 60 (Bankr. S.D.N.Y. 2006) (ruling that a high ranking officer and director must produce documents of corporation).

For instance, the Kennedy Center, which is owned by the U.S. government, stated in May 2019: "The project is made possible by a $1.25 million gift from LetterOne, an international investment firm led by businessman and philanthropist Mikhail Fridman." Ex. 57, Press Release, The Kennedy Center, The Kennedy Center's Israeli Lounge to Undergo Transformation in 2020 (May 8, 2019). The European Union stated, in 2016 antitrust ruling, "LetterOne is part of the Alfa Group Consortium, owned by a group of Russian investors led by Mr. Mikhail Fridman who is part of the Supervisory Board of VimpelCom." Ex. 58, European Commission, Case M.7758-

Hutchison 3G Italy/Wind/JV, at 148 n.713, Sept. 1, 2016. Spanish prosecutors stated in a court filing: "As can be proven, FRIDMAN, among many others, holds direct control over the three companies mentioned above (ALFA GROUP, LETTERONE and VIMPLECOM [sic])." Ex. 59, Investigation Status Report 9 (May 10, 2017) (translated). Altimo, another Alfa entity, described Plaintiff Fridman in an SEC filing as "Alfa Group owner Mikhail Fridman." Ex. 60, Form 425 filed by Altimo Holdings & Investments Ltd., https://www.sec.gov/Archives/edgar/data/1023977/000134100409002474/altimo_425.htm. In another SEC filing, Mr. Fridman is described as having "taken an active role in managing the Alfa Group" since 1989. Ex. 61, Vimpelcom Prospectus 126 (2010),                    https://www.sec.gov/Archives/edgar/data/1468091/000119312510068778/d424b3.htm#rom81092_24. In a recent judgment by the High Court of Justice, British Virgin Islands, the judge described Plaintiffs Fridman and Aven as "major owner[s] of Alfa-Bank." Ex. 62, *Joint Stock Co. Alfa-Bank v. Emmerson Int'l Corp.*, Claim No. BVIHC (COM) 2019/0127, Judgment 2–3 (Mar. 17, 18 and Apr. 6, 2020). Mr. Fridman has never disavowed these descriptions, and it is too late for him to do so now.

Likewise, the news media routinely describes Plaintiffs as "controlling" and owning Alfa. For example:

- "Fridman and his partners control Alfa Group, which includes top Russian private bank Alfa Bank, its biggest food retailer X5 Retail Group and other assets," Ex. 63, Maria Kiselyova and Olga Sichkar, *Fridman Says Not Sure How US Oligarchs List Will Impact Business*, Reuters (Feb. 1, 2018), https://www.reuters.com/article/usa-russia-sanctions-list-fridman/update-1-fridman-says-not-sure-how-u-s-oligarchs-list-will-impact-business-idUSL8N1PR2VA;

- "Together with college buddies and fellow billionaires German Khan and Alexei Kuzmichev, Mikhal Fridman controls Alfa Group and LetterOne," Ex. 55, *Profile: Mikhail Fridman*, Forbes (June 1, 2020), https://www.forbes.com/profile/mikhail-fridman/#4c075e3266e9;

- "The billionaire [Fridman] is known for fierce corporate battles, both in Russia and the west, *as his Alfa Group* has acquired extensive interests in banking, oil, retail and telecoms—sometimes through labyrinthine ownership structures," Ex. 64, Daniel Dombey, *Mikhail Fridman Faces Quizzing On Spanish Corporate 'Raid'*, Fin. Times (Oct. 7, 2019), https://www.ft.com/content/f9959dac-e370-11e9-9743-db5a370481bc (emphasis added);

- "Billionaire Mikhail Fridman's Alfa Group will invest $20 billion or more in global oil and gas projects," Ex. 65, Douglas Busvine, *Fridman's Alfa Group sets up energy fund, to invest $20 bln*, Reuters (June 17, 2013), https://www.reuters.com/article/alfa-energy/fridmans-alfa-group-sets-up-energy-fund-to-invest-20-bln-idUSL5N0ET16Y20130617.

All of the sources cited above are major media organizations that routinely publish corrections when so requested, particularly by prominent and wealthy individuals such as Plaintiffs. There is no indication that Plaintiffs have ever sought or obtained any published corrections to the media descriptions of their relationship to the Alfa entities.

**E. Close Coordination between Alfa and Plaintiffs Demonstrates Plaintiffs' Control over Alfa Documents.**

Plaintiffs' "close coordination" and association with Alfa show Plaintiffs' practical ability to obtain Alfa documents. *See McKesson Corp.*, 185 F.R.D. at 78 (control "does not require the party to have actual managerial power" of the non-party, "but rather that there be a close coordination between them"). When a party and non-party enjoy "sufficient intermingling of resources and efforts . . . such that one could reasonably expect" that the party "has the ability to

34

obtain documents" from the non-party, then the party has control of the non-party's documents. *Appleton Papers*, 2009 WL 2408898, at \*3 (finding that subpoenaed paper company was a member of a "labyrinthine group of corporations" united with a non-subpoenaed corporation by shared ownership, resources and efforts, and common business purposes, such that the paper company must produce documents from the affiliated, non-subpoenaed corporation).

This close association between Plaintiffs and Alfa is evident not only in Plaintiffs' use of Alfa emails to communicate on behalf of the company, but also in their Amended Complaint, which claims that the alleged defamatory statements harm Plaintiffs because of what the statements say about *Alfa.* For example, Plaintiffs allege that the challenged statements "defamed the Plaintiffs *and Alfa*," Am. Compl. ¶ 33 (emphasis added), and that "Defendants are liable for the defamation of Plaintiffs *and Alfa*," *id.* ¶ 35 (emphasis added). Moreover, two of the three statements that Plaintiffs claim are allegedly defamatory *do not name Plaintiffs at all*, only Alfa. And Plaintiff Khan is not mentioned in any of the three statements Plaintiffs claim are allegedly defamatory. *See* Background § I, *supra* at 3.

Plaintiffs cannot maintain both that they are so closely identified with Alfa that statements that only mention Alfa personally concern Plaintiffs, and at the same time maintain that Plaintiffs are so independent of Alfa that they have no possession, custody, right, authority, or ability to access their Alfa documents. Plaintiffs, through their self-proclaimed close association with Alfa, their significant ownership interests in Alfa, and their positions as leaders of Alfa, clearly have a "pervasive influence" in Alfa activities sufficient to obtain Alfa documents. *See Weaver*, 107 F.R.D. at 718 (finding that president and CEO of non-party corporation had a "pervasive influence in corporate activities," sufficient to show he had control over the corporation's documents).

35

Likewise, Plaintiffs' U.K. counsel recently represented that Plaintiffs are "very well-known international businessmen from Russia," and "[t]heir company, Alfa Group, is *closely associated with them personally. They're always named in connection with it.*" Ex. 66, Day One Trial Tr. 10:22–25, *Aven v. Orbis*, Case No: QB-2018-006349, (Mar. 16, 2020) (emphasis added). In that same case, Plaintiff Aven conflated himself with Alfa, stating, with regard to CIR 112, "it is said that significant favours are done by President Putin for Alfa and for President Putin by Alfa. I understand this to be, amongst other things, a suggestion that President Putin *and I* do 'significant favours' for each other." Ex. 67, Witness Statement of P. Aven ¶ 32, *Aven v. Orbis*, Case No: QB-2018-006349 (Feb. 2, 2020) (emphasis added). Plaintiff Khan likewise described himself as one and the same as the Alfa Consortium, stating that "Alfa is now one of the largest privately owned investment consortiums with operations in Russia. *We* have ownership interests in a variety of sectors." Ex. 41, Witness Statement of G. Khan ¶ 10, *Aven v. Orbis*, Case No: QB-2018-006349 (Feb. 11, 2020) (emphasis added).

## F.   Plaintiffs Use Their Alfa Email and Access Their Phones and Other Documents in the Usual Course of Performing Their Jobs.

Plaintiffs' claim that they lack the ability to obtain their email and phones, while they continue to lead Alfa, defies logic. To the contrary, Plaintiffs almost certainly are "apt to request and obtain" their Alfa documents and emails during their "normal course of business." *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 443 (D.N.J. 1991) (finding that wholly owned subsidiary controlled documents of parent corporation in part because it had obtained relevant documents from the parent corporation in the normal course of business).

Access to documents in the ordinary course of business has been held sufficient to support a finding of practical ability. *See In re Flag Telecom*, 236 F.R.D. at 181 ("[Non-party corporation] employees are permitted to utilize the documents in the course of employment, as they must in

order to perform their jobs, and therefore [defendant], as a senior officer of the corporation in charge of strategic development, has the practical ability to obtain them."); *see also In re Application of Bloomfield Inv. Res. Corp.*, 315 F.R.D. at 168 ("If a party has 'access to' and the 'ability to obtain documents,' it has the practical ability to produce those documents regardless of legal ownership."); *Annunziato v. Collecto, Inc.*, 304 F.R.D. at 362–63 (finding practical ability of agent to access records of principal that principal would have provided agent in order for agent to carry out its duties); *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 450 (S.D.N.Y. 2011) ("One of the circumstances which warrants a finding of control is where [one] corporate entity has the ability in the ordinary course of business to obtain documents held by [the other] corporate entity." (cleaned up)); *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919–20 (S.D.N.Y. 1984) (because defendant "works with" the third-party documents "every day," it was "inconceivable that defendant would not have access to these documents and the ability to obtain them").

The emails to or from Plaintiffs that Defendants obtained from third parties show that Plaintiffs use Alfa Bank resources for their business, political and personal use, demonstrating their ability to access Alfa resources when it suits them. In leaked emails that have appeared in the media, Mikhail Fridman apparently used his corporate email account, mfridman@alfabank.ru, to communicate in 2014 with Kremlin advisor (and former Alfa employee) Vladislav Surkov. Ex. 68, Email from MFridman@alfabank.ru to V. Surkov (translated), https://bell-mess.livejournal.com/1898077.html. Plaintiffs Aven and Fridman have coordinated political and public relations meetings in Washington D.C. through Olga Dubova, whose email address is odubova@alfabank.ru. *See* Ex. 69, Email from O. Dubova to F. Kempe (May 20, 2010) (Plaintiff Aven emailing from his personal assistant's email address, declining to host an economic forum);

Ex. 70, Email from O. Dubova to F. Kempe (May 28, 2008); Ex. 71, Email from A. Aslund to A. Perry (July 27, 2015) (email from Anders Aslund of the Atlantic Council to a colleague, instructing her to transmit the email to "Petr Aven personally. You have his personal email. You could copy it to his secretary also: Olga Dubova odubova@alfabank.ru"); Ex. 50, Email from O. Dubova "On Behalf Of Petr O Aven" to A. Aslund (Sept. 8, 2015) (planning an "off-the-record meeting" at a think tank regarding Plaintiff Aven's book). Plaintiff Aven also uses his Alfa Bank email, paven@alfabank.ru, for purposes of scheduling political and public relations meetings. *See* Ex. 72, Email exchange between D. Dickson and A. Aslund (July 27, 2015); Ex. 73, Email exchange between A. Aslund and P. Aven (May 10, 2018) (Regarding a dinner at the Atlantic Council for Plaintiffs Aven and Khan).

Moreover, given Plaintiffs' paucity of personal emails (*e.g.*, Plaintiffs' counsel represented that Plaintiff Khan has **no** personal emails), Ex. 7, Ltr. from J. Levy to A. Lewis (Apr. 16, 2020) Plaintiffs almost certainly use their Alfa email for personal matters, like arranging a book talk. *See* Ex. 50, Email exchange between A. Aslund, P. Aven, and R. Burt (Sept. 1, 2015) (Plaintiff Aven asking: "please coordinate the time of the lunch on November 4th with Rick Burt who is fully aware of my schedule"). Plaintiff Aven also used his administrative assistant at LetterOne to email his personal friend at the Atlantic Council, stating: "I am writing on behalf of Mr. Petr Aven. Mr. Aven would like to send you a small package. Could you please kindly provide the best postal address for yourself?" Ex. 74, Email from N. Zairova to A. Aslund (Sept. 24, 2015).[11] Lastly, Plaintiffs acknowledge that they use the Director of Communications at LetterOne for their own

---

[11] In 2018, Anders Aslund, responding to press inquiries, described Petr Aven and Mikhail Fridman as "old friends." Rafael Saakov, *US Think Tank Takes Heat for Hosting Putin-Linked Oligarchs*, VOA (May 23, 2018), https://www.voanews.com/usa/us-think-tank-takes-heat-hosting-putin-linked-oligarchs.

government public relations matters. *See* Ex. 75, Pls.' Resp. to Interrogatory No. 19 ("Plaintiffs have been assisted in connection with government public relations matters by Stuart Bruseth, Director of Communications at LetterOne, as tasked by LetterOne.").

### G. Plaintiffs Have Not Made a Good Faith Effort to Use Their Influence to Obtain Their Documents.

Given Plaintiffs' leadership positions at Alfa, their ownership interests in Alfa, and their ability to influence Alfa actions, their counsel's oral request to obtain their documents falls short. Plaintiffs concede they never personally made such a request or reduced one to writing. Nor have Plaintiffs mentioned any in-person or official meeting at Alfa, at which Plaintiffs made a formal request for their documents. If there are contemporaneous minutes or a summary of the oral communications between counsel for Plaintiffs and Alfa, Plaintiffs have not produced them. This vague oral request by counsel leaves open either the possibility that no communication was made at all, inasmuch as the same lawyer represents both Alfa and Plaintiff Aven personally, or the possibility that Plaintiffs asked or instructed Alfa not to provide them with access to their documents before Plaintiffs' counsel in this litigation—at Defendants' urging—requested such access. In any event, Plaintiffs have given no indication that they made any use whatsoever of their considerable control or influence over Alfa affairs to obtain their documents. *See Tavoulareas v. Piro*, 93 F.R.D. 11, 20 (D.D.C. 1981) (faulting the plaintiff for not indicating what efforts he "made to use whatever control or influence he has over the affairs of [the non-party corporation of which he was a 50% owner] to acquire documents for purposes of responding to this discovery request," and ordering the plaintiff to produce the requested documents or show in detail that he had made a good faith effort to do so and that the effort was unavailing); *see also Jacoby v. Hartford Life & Acc. Ins. Co.*, 254 F.R.D. 477, 479 (S.D.N.Y. 2009) (holding that "there plainly is a significant relationship between" the third-party entities and the defendant, because the entities derived about

75% of their revenues from the defendant, and that relationship suggested that "a serious effort by [the defendant] to use such influence as it may have would result in production of all or some of the requested material without the need for satellite litigation" against the third-party entities).

### H. Plaintiffs Must Produce All Alfa Documents in Their Possession or Custody.

Even if Plaintiffs do not have "control" of their documents, which they do, Plaintiffs must produce any documents or messages in their possession or custody. Plaintiffs' communications to Defendants are vague as to whether Plaintiffs have possession or custody of any responsive documents, either in their homes or on personal devices. Plaintiffs have represented that responsive documents to which Defendants are entitled cannot be accessed, reviewed and produced because the documents are "owned" by Alfa and Other Entities. Ex. 10 Ltr. from A. Lewis to J. Levy (May 15, 2020), (claiming that "the documents are owned and controlled by Alfa and LetterOne, not Plaintiffs, and Plaintiffs do not have the authority to produce those documents to another party in litigation without consent of the entities"). Given the geographic vastness of their operations and holdings, and the enormous complexity of their business activities, it is highly unlikely that all three of these oligarchs do not have possession or custody of their phones or any emails from their corporate accounts. Under Rule 34, "ownership is not required; if a party possesses or has custody of a document or thing belonging to another person, the party must produce it." *McKesson Corp.*, 185 F.R.D. at 78 (quoting *McBryar v. International Union of United Automobile Aerospace & Agricultural Implement Workers of America*, 160 F.R.D. 691, 695 (S.D. Ind. 1993)). Defendants respectfully request that the Court order Plaintiffs to produce any and all responsive documents in their actual possession.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant their Motion in full, compelling Plaintiffs to collect, review, and produce responsive documents at Alfa, and such other relief as the Court deems appropriate under Federal Rule of Civil Procedure 37. Should the Court decide that the issue of control cannot be determined on the current record, Defendants respectfully request that the Court grant them leave to conduct additional discovery on Plaintiffs, including depositions, limited to the issue of Plaintiffs' possession, custody, and control of Alfa documents.

Dated:   June 12, 2020                               /s/ Joshua A. Levy

Joshua A. Levy (D.C. Bar No. 475108)
Rachel M. Clattenburg (D.C. Bar No. 1018164)
Zachary Blau (D.C. Bar No. 1600714)
**LEVY FIRESTONE MUSE LLP**
1401 K St. NW, Suite 600
Washington, DC 20005
Tel: (202) 845-3215
Fax: (202) 595-8253
jal@levyfirestone.com
rmc@levyfirestone.com
zblau@levyfirestone.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 12, 2020, the foregoing memorandum of law and the accompanying motion, exhibits, and proposed order, were filed using CM/ECF, which serves a copy on all counsel of record.


_/s/_ Joshua A. Levy                                     
Joshua A. Levy