**EXHIBIT 8**

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

# CARTER LEDYARD & MILBURN LLP
*Counselors at Law*

**Alan S. Lewis**
**Partner**
•
*Direct Dial: 212-238-8647*
*Email: lewis@clm.com*

*2 Wall Street*
*New York, NY 10005-2072*
•
*Tel (212) 732-3200*
*Fax (212) 732-3232*

*570 Lexington Avenue*
*New York, NY 10022-6856*
*(212) 371-2720*

April 24, 2020

**VIA EMAIL**

Joshua A. Levy, Esq.
Levy Firestone Muse LLP
1401 K St. NW, Suite 600
Washington, DC 20005

Re:   *Fridman v. Bean LLC a/k/a Fusion GPS, et al.*, 17-cv-2041 (D.D.C. 2017)

Dear Josh:

This letter responds to yours of April 16, 2020, which summarizes the parties' positions as expressed during the meet-and-confer process. We also exchanged letters as part of this process, dated January 31, February 19, and March 12, 2020. Our responses are organized so as to correspond to the categories denominated in your letter.

We agree that agreements reached during the meet-and-confer process are without prejudice to either party's right to challenge or question what has been produced or withheld, the ability to seek a supplemental production, or the ability to seek court intervention. We also agree that any motion practice would require an additional meet-and-confer before any filing.

**1) Documents to Be Searched**

We are in general agreement with your description in this section, subject to specific clarifications about your agreement to provide Plaintiffs with your search terms, which as of the date of your letter you have not done (Section (8), *infra*), and Plaintiffs' position with respect to the documents that are in the possession and control of non-parties Alfa Bank and LetterOne (Section II(B), *infra*).[1]

---

[1] Your letter attributes to us the statement that there were approximately 10,000 emails we were searching. We recall instead that we stated that the number of emails for us to search would be *up to* 10,000 emails.

Joshua A. Levy, Esq.
April 24, 2020
Page 2

### 2) Document Production Date

We agree that the document production date for the documents within the date range agreed to by the parties is May 4, 2020, without prejudice to the ability of either party to seek additional documents (as to which no agreement was reached) at a later date.

### 3) Privilege Logs and Revised Responses to Discovery

We agree that the parties' privilege logs, along with any revised responses to interrogatories and document requests, as well as Defendants' response to the Interrogatory served April 15, 2020, are due on May 18, 2020.

### 4) Requests for Admission

Your letter accurately reflects the parties' agreement with respect to the timing of the exchange of Requests for Admission.

### 5) Publicly Available Documents

Your letter accurately reflects the parties' agreement with respect to publicly available documents.

### 6) Scope of CIR 112 and the Alleged Defamatory Statements

While the parties differ with respect to what is alleged to be defamatory (and therefore relevant to discovery in this action), we disagree with your characterization of Plaintiffs' position.

As relevant to this particular discovery issue, and as set forth in Plaintiffs' response to Interrogatory No. 2, the following are the defamatory allegations that are the basis of Plaintiffs' claims with respect to the alleged exchange of favors:

- The heading of CIR 112, "RUSSIA/US PRESIDENTIAL ELECTION: KREMLIN-ALPHA GROUP COOPERATION," coupled with Plaintiffs and Alfa being the subject of CIR 112, falsely suggests that Plaintiffs and Alfa cooperated with a Kremlin-orchestrated illegal campaign to interfere with the 2016 U.S. presidential election.

- CIR 112 also suggests that "significant favours continue to be done in both directions" (*e.g.*, "continue" means contemporaneously with CIR 112 being compiled or drafted in 2016) which falsely suggests that, as part of this relationship, Plaintiffs, as Alfa executives and among its largest beneficial owners, have a corrupt, bribery-based relationship with Putin and the Kremlin.

- Finally, CIR 112 also makes false allegations about the role of Oleg Govorun being a key intermediary in the 1990s (by acting as a "driver" and "bag

9492036.4

Case 1:17-cv-02041-RJL   Document 78-11   Filed 06/12/20   Page 4 of 9

Joshua A. Levy, Esq.
April 24, 2020
Page 3

carrier") in facilitating bribes to Vladimir Putin, and that Putin was pressuring the Plaintiffs to do his political bidding and aid him in illegal acts (such as interference with the 2016 election).

Plaintiffs' position is that, other than the Govorun statement, the defamatory allegations relate to the circumstances as they existed in 2016 during the period leading up to and around the U.S. presidential election.

### 7) Date Range for Document Searches

Your letter accurately reflects the parties' agreement on date ranges.

For the avoidance of doubt—as discussed during our meet-and-confer process—Plaintiffs continue to maintain that pre-2016 documents cannot, by definition, be relevant to any issues in this litigation, aside from the truth or falsity of the Govorun-related defamatory statement. For instance, pre-2016 documents are not relevant to the question of whether Plaintiffs are "limited public figures." That is because the controversy that gave rise to Defendants' involvement in the creation and dissemination of CIR 112 is the same controversy that gave rise to the dissemination of the other reports written for Defendants by Christopher Steele—whether Russia attempted to influence the 2016 U.S. presidential election. Thus, except as to the Govorun-related defamatory statement, pre-2016 documents are not relevant to the truth or falsity of the defamatory statements. Our agreement to produce available pre-2016 documents, if any, related to communications with the media and the truth/falsity of the defamatory statements is an accommodation, made in a good-faith effort to resolve issues outside of court. It is not a concession that such documents are in any way relevant (or exist) and is without prejudice or waiver of our objection to their relevance.

### 8) Search Terms

As represented during our April 7 meet-and-confer, you agreed to disclose the search terms used to search Defendants' ESI for responsiveness to Plaintiffs' discovery requests, and you indicated that you would provide such information by the end of that week which ended on April 13. You did not provide this information by April 13, and still have yet to provide such information. We sent you suggested search terms on March 23, 2020, and you have only generally stated that you "adopted most of them" but that "some are overbroad and unduly burdensome." As conveyed during our calls, we have a right to know how Defendants' searched for responsive ESI and how your searches narrowed the universe of documents to be reviewed and produced (i.e., the search results). Plaintiffs have reserved the right to ask for additional search terms to be used once you disclose the search terms used and the results.

It is also not correct that Plaintiffs have no documents for Mr. Khan. Plaintiffs stated that he does not have personal email, and as a result there was no ESI to review. However, as we conveyed, Mr. Khan previously gave a deposition under oath in 2002, and we agreed to produce relevant portions of that transcript.

Joshua A. Levy, Esq.
April 24, 2020
Page 4

### I. Plaintiffs' Requests and Interrogatories

    **A.    Documents Withheld by Defendants**

Your letter accurately reflects the parties' agreement.

    **B.    Common Objections**

Your letter accurately reflects the parties' agreement.

    **C.    Specific Objections**

Your letter accurately reflects the parties' agreement.

    **D.    Interrogatories**

Your letter accurately reflects the parties' agreement, and that Plaintiffs served a supplementary interrogatory. Plaintiffs' supplementary interrogatory relates to their concern that Defendants returned or destroyed relevant documents, and Plaintiffs reserve all rights on the issue of spoliation.

    **E.    Additional Issues**

*Perkins Coie Documents*. Plaintiffs have requested relevant communications with Perkins Coie, including documents relating to the engagement of Fusion by Perkins Coie, and have stated their position (verbally and in letters dated January 31 and March 12) that such documents are not protected by the attorney-client privilege or work-product doctrine. Defendants represented that they would either produce such relevant communications and documents or include on a privilege log any documents withheld on privilege grounds. Plaintiffs reserve all rights to challenge any privilege designations.

*Interrogatory 18*. Plaintiffs indicated that the following documents listed in Defendants' Response to Interrogatory 18 were not available through publicly available sources: 1-13, 25-26, and 42 (numbered as they appear in the response). Defendants agreed to produce copies of such documents or otherwise include them on a privilege log, as appropriate. Plaintiffs reserve all rights to challenge any privilege designations.

*Fritsch Deposition Transcript*. Plaintiffs' Document Request No. 17 requests, among other things, copies of deposition transcripts from *Gubarev v. BuzzFeed* in the Southern District of Florida. In response to Interrogatory No. 17, Defendants identified a deposition of Peter Fritsch in the *Gubarev* action. During our meet-and-confer calls, you indicated that Defendants would decline to produce that transcript on the ground that portions of it were filed under seal. Respectfully, the transcript should be produced, regardless, as there is a mechanism for its production (after any required notice of the request) under the Protective Order entered in *Gubarev*. Specifically, those pages filed under seal may be designated confidential, as appropriate, pursuant to the Protective Order in this case.

9492036.4

Joshua A. Levy, Esq.
April 24, 2020
Page 5

## II. Plaintiffs' Responses to Document Requests and Answers to Interrogatories

### A. Plaintiffs' Use of General Objections

Your letter accurately reflects the parties' agreement, and Plaintiffs will supplement their discovery responses (if necessary) once the production is complete.

### B. Plaintiffs' Ability to Obtain Documents from Alfa and Other Entities

Plaintiffs have advised that they are unable to produce documents that belong to Alfa and LetterOne in this litigation (including email) because they lack control over those documents. As stated in our email dated April 2, we, on behalf of Plaintiffs, made a request of counsel for Alfa and LetterOne, and we were advised that "documents in the possession, custody, or control of Alfa and LetterOne would not be made available to Plaintiffs for production by Plaintiffs in this action, and that Skadden, as counsel for Alfa and LetterOne, would handle directly any specific discovery requests made by Defendants for Alfa or LetterOne ESI or documents" (which would include email of the Plaintiffs).[2]

In addition, we provided you (in our March 12 letter and April 2 email) the names of the Skadden lawyers representing Alfa and LetterOne in connection with this litigation, and have conveyed to you verbally that you should contact them as counsel for the entities and that we understand that such counsel intended to act in good faith with respect to discovery from the entities. It is not correct that Plaintiffs are "shielding" Alfa and LetterOne documents and/or that you are being prejudiced or forced to litigate as a result.

With regard to the subject of whether counsel for Alfa and LetterOne will accept service of a subpoena issued to those entities, we again reiterate that such counsel are amenable to speaking with you about that subject.

We urge you to contact the Skadden lawyers representing Alfa and LetterOne in connection with this litigation, who have expressed their willingness to work cooperatively with you to resolve any issues short of litigation.

### C. Plaintiffs' Response to Defendants' Document Request No. 2

Your letter accurately reflects our understanding.

### D. Plaintiffs' Response to Defendants' Document Request No. 12

Your letter accurately reflects what was discussed.

---

[2] While we conferred in good faith about the types of potentially responsive documents and ESI in the possession, custody, and control of the entities, we made no representation as to the relevance or responsiveness of such documents. With respect to calendars maintained by or for the Plaintiffs, text messages, or hard copy documents, we merely indicated that, to the extent they exist, they would be within the possession, custody, and control of the entities.

9492036.4

Joshua A. Levy, Esq.
April 24, 2020
Page 6

### E. Plaintiffs' Response to Defendants' Document Request Nos. 16, 17, 18

Plaintiffs' initial suggestions regarding the production or withholding of documents from the post-Complaint period (after October 3, 2017) were made in an attempt to reach a global resolution on post-Complaint documents that would be produced by both parties. Once it became clear that this would not be possible, Plaintiffs made their position clear (as reflected in Section 7, *supra)* and the parties agreed on an end date of October 3, 2017 for the date range applicable to the May 4 production (without prejudice).

Plaintiffs are willing to log documents from the agreed-upon date range that are protected by the attorney-client privilege and work-product doctrine in accordance with the Federal Rules of Civil Procedure. While Plaintiffs do not expect to withhold any documents from the agreed-upon date range on the basis of Fed. R. Crim. P. 6(e), any documents within such date range that are withheld on that basis are not required to be logged. Grand jury secrecy protects against disclosure of these materials, and it will be the government's decision what it will ultimately make public.

### F. Plaintiffs' Response to Defendants' Document Request Nos. 20, 21

As you indicate, we have previously explained Plaintiffs' position that the 2019 Spanish proceedings are irrelevant to the defamatory statements regarding bribery in the 1990s, and an exchange of "favors" in 2016, in CIR 112. The Spanish proceedings revolve around an investigation into the bankruptcy of a Spanish technology company and bear no connection to the defamatory statements in CIR 112. Plaintiffs stand on their objections.

### G. Plaintiffs' Response to Defendants' Document Request Nos. 24, 25

Your letter accurately reflects the parties' agreement.

### H. Plaintiffs' Response to Defendants' Document Request Nos. 26, 28, 37

Your letter accurately reflects our understanding.

### I. Plaintiffs' Response to Defendants' Document Request Nos. 28, 29, 34, 35

Your letter accurately reflects our understanding.

### J. Plaintiffs' Response to Defendants' Document Request Nos. 31, 32, 37

Your letter accurately reflects our understanding.

### K. Plaintiffs' Response to Defendants' Document Request No. 36

Your letter accurately reflects our understanding.

9492036.4

Joshua A. Levy, Esq.
April 24, 2020
Page 7

    **L.**    **Plaintiffs' Response to Defendants' Document Request No. 38**

Your letter accurately reflects our understanding.

    **M.**    **Plaintiffs' Response to Defendants' Document Request Nos. 39, 40, 41**

We have indicated that we are reviewing all documents (including email) within Plaintiffs' possession, custody, and control. In addition, we will apply Defendants' search terms forwarded on March 27 out of an abundance of caution and will review such documents captured by those searches and produce responsive documents within the agreed upon date range. Plaintiff will produce documents forwarded by third parties subject to any obligations imposed by applicable data protection laws.

    **N.**    **Plaintiffs' Response to Defendants' Document Request Nos. 44, 45, 46, 51, 52**

Your letter accurately reflects the parties' agreement.

    **O.**    **Plaintiffs' Response to Defendants' Document Request No. 56**

Your letter accurately reflects our understanding.

    **P.**    **Plaintiffs' Response to Defendants' Document Request Nos. 57, 58, 59, 60**

Your letter accurately reflects the parties' agreement. Furthermore, evidence of damages may be proved through testimony from the Plaintiffs or other third parties and may not include documentary evidence.

    **Q.**    **Plaintiffs' Response to Defendants' Interrogatory No. 10**

Other than as stated in Plaintiffs' Response to Interrogatory No. 10, Plaintiffs are not aware of (or do not recall) any responsive communications relating to CIR 112 or the contents thereof, but, if this response needs to be supplemented to indicate that information is being withheld, Plaintiffs will do so.

    **R.**    **Plaintiffs' Response to Defendants' Interrogatory No. 11**

Your letter accurately reflects what was discussed.

    **S.**    **Plaintiffs' Response to Defendants' Interrogatory No. 13**

Your letter accurately reflects what was discussed.

    **T.**    **Plaintiffs' Response to Defendants' Interrogatory Nos. 14, 15**

Your letter accurately reflects what was discussed and agreed.

9492036.4

Joshua A. Levy, Esq.
April 24, 2020
Page 8

### U. Plaintiffs' Response to Defendants' Interrogatory No. 17

Your letter accurately reflects what was discussed and agreed.

### V. Plaintiffs' Response to Defendants' Interrogatory No. 18

Your letter accurately reflects what was discussed and agreed.

### W. Revised Verifications

Your letter accurately reflects that Plaintiffs' provide revised verifications.

### X. Third-Party Subpoenas

Your letter accurately reflects the parties' agreement. Plaintiffs also request that Defendants produce any documents received from third parties informally rather than in response to a subpoena.

\*   \*   \*

This letter is without waiver of or prejudice to Plaintiffs' rights or remedies, all of which are expressly reserved.

Sincerely,

*Alan Lewis*

Alan S. Lewis

ASL:bp

9492036.4