**EXHIBIT 15**

# Levy | Firestone | Muse

Joshua A. Levy
Levy Firestone Muse LLP
1401 K Street, NW, Ste 600
Washington, DC  20005
T (202) 845-3215
F (202) 595-8253
levyfirestone.com

June 10, 2020

<u>via Electronic Mail</u>

Alan S. Lewis
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005
lewis@clm.com

    Re:    *Fridman v. Bean LLC*, 17-cv-2041 (D.D.C. 2017)

Dear Alan:

    This letter responds to your May 28, 2020 and June 2, 2020 letters and addresses matters in the order they appear in your two letters.

<u>Letter of May 28, 2020</u>

1. <u>Privilege Log</u>

    *Descriptions.* Defendants' privilege log contains sufficient descriptions of the communications set forth therein and D.C. courts do not require the type of information you seek.  Although a privilege log must generally "state the subject matter, number of pages, author, date created, and identities of all persons to whom the original or any copies of the documents were shown or provided," *Loftin v. Bande*, 258 F.R.D 31, 33 (D.D.C. 2009); *accord Hornbeck Offshore Transp., LLC v. United States Coast Guard*, 2006 U.S. Dist. LEXIS 14389, *44, 2006 WL 696053 (D.D.C. 2006), there is no requirement that a log identify each individual e-mail subject line or file name.  On the contrary, "generic titles in the subject line of an email often do not convey information

Letter to Alan Lewis
June 10, 2020
Page 2 of 11

concerning the specific matter being discussed," and D.C. courts therefore typically do not deem such information necessary to assess the basis for a party's privilege invocation. *In re Apollo Grp., Inc. Sec. Litig.*, 251 F.R.D. 12, 31, *vacated on other grounds* (D.D.C. 2008); *Elliott v. Fed. Bureau of Prisons*, 521 F. Supp. 2d 41, 57 (D.D.C. 2007) (sustaining privilege assertion where party did "not identify the subject matter of the e-mail" at issue). Similarly, a describing party need not detail the specific nature of each e-mail attachment or loose document. *See Feld v. Fireman's Fund Ins. Co.,* 991 F. Supp. 2d 242, 248 (D.D.C. 2013) (finding that a privilege log was sufficient when it identified the type of document in question as "email, attachment, or standalone computer file"). Moreover, a party is entitled to "withhold the title of documents withheld on grounds of privilege if the document title, without reference to the document's contents, reveals privileged information." *United States v. Philip Morris USA, Inc.,* 449 F. Supp. 2d 1, 943, *vacated in part on other grounds* (D.D.C. 2006); *see also Loftin,* 258 F.R.D. at 33 (noting that a party need only describe a document in sufficient detail to enable the claim to be assessed "without revealing information itself privileged or protected").

Nevertheless, in the spirit of cooperation, and without conceding any obligation on the part of Defendants to modify the privilege log in response to your demands, Defendants will provide a supplementary privilege log containing additional non-privileged information regarding the documents listed therein.

*Dates.* The dates are in month/day/year format. You have misread the dates. Therefore, your complaint that "Defendants identify emails and attachments in early January 2016 … as relating to 'research prepared at the direction of Perkins Coie'" has no merit. Ltr. from A. Lewis to J. Levy (May 28, 2020) at 2.

*Orbis and Christopher Steele.* The parties agreed that "Defendants will produce documents that generally relate to the 'Dossier,' or generally relate to Christopher Steele's reports or investigations, to the extent those documents are applicable to CIR 112 and relevant to issues in this Action." Ltr. from J. Levy to A. Lewis (Apr. 16, 2020) at 5. As you also maintained in your March 12, 2020, letter, "documents relating solely to CIRs other than CIR 112 need not be produced," but "to the extent that documents generally relating to the 'Dossier', or generally relating to Steele's reports or investigations, are applicable to CIR 112 and are relevant to issues in this Action," they are responsive. Defendants have logged in their privilege log those communications with Orbis or Christopher Steele that are responsive to Plaintiffs' document requests. Your

Letter to Alan Lewis
June 10, 2020
Page 3 of 11

May 28, 2020 letter incorrectly assumes that any communication with Orbis or Steele is responsive.

*Identification of litigation.* You requested that Defendants identify the litigation underlying the attorney work product claims set forth in the privilege log. But D.C. courts have explicitly rejected this "novel interpretation of the work product doctrine," and do not require "the party invoking the doctrine to provide further information as to exactly what litigation was contemplated." *Founding Church of Scientology of Washington, D.C., Inc. v. Director, FBI*, 104 F.R.D. 459, 464 (D.D.C. 1985). So too, D.C. courts are clear that work product protection applies to documents prepared in anticipation of potential litigation, even if no specific claim or lawsuit is then contemplated. *Judicial Watch, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 20 F. Supp. 3d 247, 256 (D.D.C. 2014) (citing *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992), *abrogated on other grounds by Milner v. Dep't of Navy*, 562 U.S. 562 (2011)).

Although we have no obligation to provide the information you demand regarding the anticipated litigation, we nonetheless, in a further spirit of cooperation, respond as follows in the event you do not already possess the requested information. For attorneys representing political entities, research firms such as Defendant can assist lawyers in assessing their own political clients' vulnerabilities or those of their clients' political opponents. Lawyers need these services, along with many other resources, such as research libraries reflecting statements and activities by political candidates or past political advertisements, to properly serve their clients — including in the context of current or anticipated legal proceedings. For example, attorneys in this space often rely on research findings from sub-vendors when performing legal review of public communications to confirm that there is an adequate factual basis for any claims or allegations, so the client does not run the risk of civil litigation — including, for example, libel, defamation, or other claims implicating the accuracy of information.

Here, Perkins Coie anticipated the potential for such litigation in connection with its representation of its clients. Defendants' engagement agreement with Perkins is set forth on the Defendants' privilege log at PRIV0000497.

*The attorney-client privilege applies to the work of third parties.* A long line of cases, beginning with *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961), has recognized the applicability of the attorney-client privilege to the work of third parties, made at the request of the attorney or the client under circumstances such as those present here.

Letter to Alan Lewis
June 10, 2020
Page 4 of 11

This is also true in the D.C. Circuit, where materials produced by an attorney's agent can be protected by the attorney-client privilege. *FTC v. TRW, Inc.*, 628 F.2d 207, 207 (D.C. Cir. 1980). "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining [or providing] legal advice." *See id.* at 212 (citing *Kovel*, 292 F.2d at 922). The communications and records you are seeking were made in confidence for the purpose of assisting Perkins Coie in providing legal advice to its clients. These communications and records were also prepared in anticipation of litigation, as we explain above. As a result, the Defendants' privilege log properly includes and logs documents that are protected by both the attorney-client privilege and the attorney work product doctrine.

2. <u>Defendants' Production</u>

Defendants have complied with their discovery obligations. Defendants produced documents responsive to Plaintiffs' document requests and a privilege log, and Defendants identified where they have withheld responsive documents. Withholding responsive documents on the grounds of privilege is not a "tactic," Ltr. to J. Levy from A. Lewis (May 28, 2020) at 2, but a legal right and, in the case of documents for which Defendants are not authorized to waive privilege, a legal obligation. Through this letter, *supra* at 1-3, we have addressed your questions about the privilege log that Defendants timely produced.

Contrary to the suggestion in your letter that Defendants produced "exact duplicates," *see* Ltr. to J. Levy from A. Lewis (May 28, 2020) at 3, Defendants' e-discovery vendor de-duplicated the documents prior to review; thus, Defendants did not produce exact duplicates.

You stated that you cannot locate documents responsive to certain requests. Ltr. to J. Levy from A. Lewis (May 28, 2020). Defendants confirm they have produced documents responsive to requests 1, 14, 15, 23, 25, 35, 46, 47, 48: for example, DEFS0000016-29, DEFS0001273-1276, DEFS0007765, DEFS0001977-DEFS0001992, DEFS0000475, DEFS0010096-DEFS0010183; DEFS0011285-DEFS0011453, DEFS0005471-5473; DEFS0010203-10205; DEFS0005580-5644; DEFS0000541-543; DEFS0006759; DEFS0002733-DEFS002736, DEFS0010278-DEFS0010291.

Defendants confirm that they have not produced documents responsive to Request No. 45. Documents responsive to Request 45 are privileged and are listed in the privilege log. With regard to your request for two documents related to Defendants'

Letter to Alan Lewis
June 10, 2020
Page 5 of 11

response to Plaintiffs' Interrogatory No. 18, they are privileged and thus are included in the privilege log.

3. <u>Defendants' Search Terms</u>

Although you did not propose search terms until document review had already been underway for over four months, Defendants accommodated your request by adopting most of the searches you proposed and adding several other search terms. Defendants applied the search terms to over 1 million documents (compared to the fewer than 10,000 documents Plaintiffs reviewed).

Defendants are in the best position to determine how to craft searches to locate responsive documents in their possession. You have developed search terms that ignore the realities of a research business, where a term such as "verif!" or "source!" or "Trump and oppo!" is likely to figure in many documents that have nothing to do with this case and therefore becomes overbroad and unduly burdensome. Similarly, you suggested the term "memo!" which pulls in terms such as "memorialize" and "memory."

Defendants ran each of your proposed searches, and some were vastly overbroad and produced a huge number of false hits. Therefore, acting in good faith, Defendants modified the searches to use terms that were more likely to lead to documents relevant to this case.

You now take issue with Defendants not having implemented every one of your proposed searches. However, Defendants conducted reasonable searches for documents responsive to your document requests and implemented the overwhelming majority of your proposed searches. In some instances, Defendants reasonably tailored the searches. Below are the search terms you dispute in your letter (in bold font) followed by Defendants' response.

1) Bangor

    Defendants searched for: Bangor AND Russia. Your suggestion of "Bangor" produced many false hits, such as for the city, Bangor, ME. Narrowing it to Russia was a reasonable modification for locating documents.

2) Kompromat


Letter to Alan Lewis
June 10, 2020
Page 6 of 11

Defendants searched for: Kompromat AND ("Dossier" or "CIR" or "intelligence report!"). Defendants agree to search for "Kompromat" without any limiters. That search has identified four additional responsive documents that we will produce.

3) **LetterOne**

   Defendants searched for LetterOne.

4) **Alfa**

   Defendants searched for Alfa.

5) **L1 or Alpha**

   Defendants searched for "Alpha AND Kremlin" as well as "Alpha AND Putin" because "Alpha" alone has too many false hits. Adding the terms "AND Kremlin" and "AND Putin" to the search for "Alpha" is reasonable because of the text of CIR 112. "Alpha" has over 3,484 hits. "Alpha," without these limiters, pulls in hits such as SeekingAlpha.com, Alpha Travel Consultants GMBH, Alphanex Alliance LTD, and Alpha and Omega Semiconductor Limited.

   L1 is vastly overbroad, yielding 6,624 hits, and the vast majority appear to be false hits, as a sampling of which include "L1" as part of html code, unrelated email addresses and document metadata. Having searched for LetterOne, another search for L1 was overly burdensome and costly and unlikely to yield any responsive documents.

6) **Kramer and ("Dossier" or "CIR" or "intelligence report!")**

   Defendants searched for: Kramer and ("Dossier" or "CIR" or "intelligence report!"). We inadvertently left that search off of the April 29, 2020 list of searches submitted to you.

7) **Putin and ("Alfa" or "Alpha" or "cash" or "bag carrier" or "driver" or "TNK" or "bid!" or "corrupt!" or "Petersburg!" or "Leningrad!" or "lever!" or "favor!" or "favour!" or "advi!" or "pressure" or "bribe!")**

   This has 8,673 hits. Moreover, it is duplicative of Defendants' searches for "Alfa" (which would necessarily include "Putin and Alfa"), and "Putin and Alpha."

8) **Kremlin and ("Alfa" or "Alpha" or "cash" or "bag carrier" or "driver" or "TNK" or "bid!" or "corrupt!" or "Petersburg!" or "Leningrad!" or "lever!" or "favor!" or "favour!" or "advi!" or "pressure" or "bribe!")**

   This search yields 4,542 hits. Moreover, it is duplicative of Defendants' searches for "Alfa," and "Kremlin and Alpha."

Letter to Alan Lewis
June 10, 2020
Page 7 of 11

9) ("Trump" or "GOP" or "Republican!" or "Democrat!" or "Hillary" or "Clinton") and ("dirt" or "oppo!" or "research")

   This search yields 35,702 hits. It is vastly overbroad.

10) ("Verif!" or "reliab!" or "rumor!" or "rumour!" or "gossip") and ("Dossier" or "CIR" or "intelligence report!" or "memo!" or "source!")

    This search yields 21,723 hits and is vastly overbroad. Moreover, to the extent this search is an attempt to locate documents responsive to Requests 1 (efforts to verify) and 11 (policies to verify), that is information with which Defendants would be particularly familiar. This extremely broad search is overly burdensome and costly and not designed to locate responsive documents.

11) Source! and ("Dossier" or "CIR" or "intelligence report!" or "memo!")

    This search yields 19,013 hits. In addition, Defendants have already responded that they have no responsive documents to Document Requests 26 & 27.

12) (Steele or Chris!) and ("Dossier" or "CIR" or "intelligence report!" or "memo!" or "source!")

    This search yields 11,965 hits. In addition, Defendants searched all emails with the domain @orbisbi.com. Accordingly, this search is not reasonable.

13) Ohr and ("Dossier" or "CIR" or "intelligence report!")

    This search did not draw in any additional documents not already drawn in by Defendants' other searches.

14) Sergei or Millian

    This search had 5,859 hits. Also of note, Sergei Millian does not appear in your document requests.

Letter of June 2, 2020

   A. Search terms

   The Bensinger email address was applied to the entire default date range of Jan. 1, 2016 – Oct. 3, 2017.

Letter to Alan Lewis
June 10, 2020
Page 8 of 11

    B. **Plaintiffs' Production**

        1) Plaintiffs' response remains insufficient. In your June 2, 2020 letter, you state:

> As indicated in General Statements F and D in Plaintiffs' Supplemental Responses and Objections to Defendants' First Requests for Production of Documents and First Set of Interrogatories (the "Supplemental Responses"), respectively, "if there is no supplemental response … being provided at this time, such specific Requests are not reflected." Thus, subject to the General Statements and Objections, Plaintiffs are not withholding documents responsive to the Requests and Interrogatories other than as indicated in the original Responses and Supplemental Responses.

    This response still does not clarify whether you are withholding documents responsive to individual document requests, on the grounds of any of your "General Statements and Objections." It also does not clarify whether you have produced documents responsive to individual requests. For example, your initial responses to requests 2–11, 14, 16, 18, 19, 22, 23, 26, 27, 30, 31, 32, 33, 37, 48, 53, 55, 80, 81, 83, 84 indicate that you would "make a good faith effort to locate and produce" responsive documents. Your failure to supplement those responses means that Defendants cannot know whether you have produced responsive documents for any of these requests, whether you have no responsive documents for any or all of these requests, or whether you are withholding documents responsive to specific document requests.

    Again, for each of Defendants' document requests, please state whether you have produced documents, have no responsive documents, or are withholding documents on the grounds of any objection, and state the ground for withholding.

    2) Addressed in (1) above. Please do the same for your answers to interrogatories.

    3) While the parties continue to disagree about what is relevant to the question of whether Plaintiffs are limited purpose public figures, and what is relevant to the falsity or substantial truth of the alleged defamatory statements, we thank you for clarifying that you are not withholding any pre-2016 communications with the media or any pre-2016 documents that are relevant to the "truth/falsity" of the allegedly defamatory statements, based on Plaintiffs' position on what is relevant to the "truth/falsity" of the

Letter to Alan Lewis
June 10, 2020
Page 9 of 11

allegedly defamatory statements. Ltr. from A. Lewis to J. Levy at 2 (June 2, 2020). Please also state whether the production includes all responsive pre-2016 documents relevant to the question of either the truth or falsity of the alleged defamatory statements or the substantial truth of the alleged defamatory statements, based on Defendants' position that CIR 112 concerns pre-2016 events.

If you have not done so already, please review Plaintiffs' pre-2016 documents for relevance based on Defendants' position on what is relevant to either the question of the truth or falsity of the alleged defamatory statements or substantial truth of the alleged defamatory statements (*i.e.*, that the alleged defamatory statements concern events prior to 2016). Please also confirm that you have done so and produce any responsive documents on that basis, without waiving your objection to Defendants' position on what is relevant to the truth or falsity of the alleged defamatory statements. If you are unwilling to review Plaintiffs' pre-2016 documents for relevance based on Defendants' position on what is relevant to the truth, falsity, or substantial truth of the allegedly defamatory statements, please so advise.

4) We disagree with your position that Plaintiffs' email addresses are "highly confidential." Nevertheless, as a compromise, please redact Plaintiffs' email addresses, where they appear, and produce the documents anew without marking the document "highly confidential."

5) You have declined to produce the documents in the UK proceeding claiming that they are "publicly available." You defined publicly available first as documents "to which Defendants have equal access," Pls.' Resps. to Reqs. for Production ¶ L, and subsequently as "documents that are freely available online or are available through a service such as Lexis or Westlaw." Ltr. from A. Lewis to J. Levy at 10 (March 12, 2020). The latter definition is how the parties agreed to construe the term. *See* Ltr. from J. Levy to A. Lewis at 2-3 (Apr. 16, 2020).

The documents in the UK proceeding are not "freely available online or available through a service such as Lexis or Westlaw." You provided the link for this "application," https://assets.publishing.service.gov.uk/government/uploads/system/uploads/attachment_data/file/732360/N244_web_0818.pdf, which is not a method for accessing documents, but rather is an application for an order from the court, and the guidance for such application states that "[m]ost applications will require a hearing and

Letter to Alan Lewis
June 10, 2020
Page 10 of 11

you will be expected to attend."[1] You also said to send a request to: qbenquiries@justice.gov.uk. That is merely the general contact e-mail address for the Queen's Bench Division, not a link to the documents. Unlike the US, UK courts do not maintain publicly accessible databases of documents submitted by parties to civil litigation. These documents are readily accessible to Plaintiffs, and neither party contests their relevance to the lawsuit. Based on the information you have presented to us, Plaintiffs are obligated to produce them because they are not publicly available, and they are relevant, responsive documents that are in Plaintiffs' possession, custody, or control.

Moreover, on your request, Defendants have either provided you with *direct links* to the documents listed in Answer to Interrogatory No. 18 that you were unable to locate online or produced them to you.

Please promptly produce these UK proceeding documents. If you decline, please explain why you are withholding these documents, as they are clearly not "publicly available" as the parties have defined the term.

C. Plaintiffs' Documents

As a matter of law, Plaintiffs control their documents at Alfa, because, among other reasons, they are corporate officers, leaders, and significant owners of Alfa, and have extensive control and influence over Alfa, as well as practical, regular access to their personal devices and personal assistants. We have stated and reiterated that position multiple times.

It is therefore Plaintiffs' responsibility to produce those documents. Your attempts to direct Defendants to Alfa for discovery are a diversion from the real issue here: Plaintiffs have possession, custody, or control of their Alfa documents and are *obligated to collect, review, and produce them* under the Federal Rules of Civil Procedure.

Nor have Plaintiffs made any serious attempt to obtain their records from the companies they own and control. Per your letter of June 2, 2020, Plaintiffs have never requested access to their documents in writing, and you have not specified when any

---

[1] https://assets.publishing.service.gov.uk/government/uploads/system/uploads/attachment_data/file/772448/n244-notes-eng.pdf

Letter to Alan Lewis
June 10, 2020
Page 11 of 11

oral request from Plaintiffs' counsel was made to counsel for Alfa. Nor have you provided communications between Alfa's counsel and you on the matter.

Accordingly, our position remains the same. Plaintiffs have failed to comply with their discovery obligations. (There is of course also the question of how this lawsuit could have been filed without a review of this obviously relevant factual record by Plaintiffs and counsel.) In light of Plaintiffs' unwavering position, we intend to file a motion to compel. In advance of doing so, we will schedule a Rule 7(m) conference to discuss the anticipated motion with you in a good faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement.

***

Defendants expressly reserve all of their rights and remedies. This letter is without waiver of, or prejudice to, Defendants' rights, remedies, or objections to discovery requests.

Sincerely,

*[signature: Joshua A. Levy]*

Joshua A. Levy