IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MIKHAIL FRIDMAN, PETR AVEN, AND
GERMAN KHAN,

            Plaintiffs,

v.

BEAN LLC a/k/a FUSION GPS, and GLENN
SIMPSON,

            Defendants.

Civil Action No. 17-2041-RJL

## DECLARATION OF PHILIPPE HOSS

### I. INTRODUCTION

1.1. I am Philippe Hoss, *maître en droit*, and hold a post graduate (master) degree (DEA) in business law from the University of Panthéon-Sorbonne, Paris. I am a member of the Luxembourg Bar since 1987.

1.2. I am a partner at Elvinger Hoss Prussen, *société anonyme* ("Elvinger Hoss Prussen"), a Luxembourg law firm which is also a member of the Luxembourg Bar. Before joining Elvinger Hoss & Prussen, a partnership which is the predecessor of Elvinger Hoss Prussen, *société anonyme*, in 1988, I worked as an assistant with Slaughter and May (London) in 1987-1988. I became a partner at Elvinger Hoss & Prussen in 1990.

1.3. My principal fields of activity are capital markets, mergers and acquisitions, corporate law, securitisations, banking and finance.

1.4. I lecture on Luxembourg company law since 2010 in the yearly course organised by the Minister of Justice for admittance to the Luxembourg Bar. As part of the LLM on European

finance and business law at Luxembourg University, I currently lecture on fiduciary agreements and trusts, and on take-over law. I have in the past lectured on collective investment funds and on listed companies in the graduate year of business law (*Maîtrise en droit financier*) at the University of Luxembourg. I have been a visiting lecturer on take-over law at Ohio State University Moritz College of Law, Columbus, Ohio, USA.

1.5. I am the author of the first English translation of Luxembourg company law which I regularly update. I also authored the first English translation of the Luxembourg UCITS legislation.

1.6. In connection with discovery matters in the above-captioned proceedings, Elvinger Hoss Prussen represents LetterOne Investment Holdings S.A. ("LOIH").

1.7. We have been asked to draw up this declaration on the question of whether Plaintiffs have the legal right under the laws of Luxembourg to obtain documents from a Luxembourg legal person (namely LOIH and LetterOne Holdings S.A. ("LetterOne" and, together with LOIH, the "Companies")) in which they hold stakes as ultimate beneficial owners and/or in which they hold the positions of board members.

1.8. Otherwise than in relation with the above-captioned proceedings, this declaration is not to be transmitted (in whole or in part) to anyone else or relied upon by anyone else or for any other purpose, or quoted or referred to in any document or filed with anyone without my express written consent. Elvinger Hoss Prussen does not accept any responsibility or legal liability to any other person in relation to the contents of the declaration even if this declaration has been disclosed with its consent.

1.9. This declaration relates only to the laws of the Grand Duchy of Luxembourg as the same are in force and are construed at the date hereof.

## II. DISCLAIMERS AND ASSUMPTIONS

2.1. This declaration covers the rights of shareholders and members of the board of directors in a non-listed public limited liability company (*société anonyme*) governed by the laws of the Grand Duchy of Luxembourg.

2.2. I have been advised and therefore have assumed that there is no shareholders' agreement or similar instrument existing at the level of the Companies or any of their affiliates, which could affect the conclusions set out herein.

2.3. I have assumed that the Plaintiffs, who are each a director of each of the Companies, have no separate employment contract with the Companies which may contain inter alia additional restrictions on the disclosure of information.

2.4. I have reviewed a scanned emailed copy of the consolidated articles of association of LOIH dated 12 October 2016 and LetterOne respectively (together the "Articles") for the purpose of the present declaration. I have assumed that the Articles are up-to-date, accurate, complete, have not been amended or rescinded and are in full force and effect.

## III. LEGAL ANALYSIS

### 3.1. Property rights of legal persons over documents and information

3.1.1. The legal personality of companies is recognized as such under Article 100-2, paragraph 2 of the Law of 10 August 1915 relating to commercial companies (the "1915 Law").[1]

3.1.2. Each of the Companies is incorporated under the laws of Luxembourg and organized in the form of a public limited liability company (*société anonyme*) with registered office at 1-3 boulevard de la Foire, L-1528 Luxembourg, Grand Duchy of Luxembourg and

---

[1] WINANDY, Jean-Pierre, Manuel de Droit des Sociétés, *Legitech, p. 220 et s.*

registered with the Luxembourg trade and companies register under number B181082 and number B176010 respectively.

3.1.3. Each of them benefits from legal personality.

3.1.4. Luxembourg civil law recognizes the ability for legal persons, including companies[2], to claim and exercise ownership rights on private assets including documentation and data.

3.1.5. Luxembourg legislation in fact expressly recognizes the ability for a company to exercise property rights on non-fungible intangible assets such as electronic data.[3] The intention of the legislator was specifically to target data.[4]

3.1.6. Luxembourg's Supreme Court (*Cour de cassation*) (the highest court in civil, commercial and criminal matters) has ruled that electronic data constitute assets that are capable of being misappropriated or simply taken in a way that deprives the owner of the data and can therefore be the subject of and sanctioned as theft within the meaning of the Luxembourg Criminal Code.[5] Similarly, Luxembourg's Supreme Court ruled that electronic data saved on a company's server and which is its exclusive property from a legal standpoint constitute intangible assets which are capable of being apprehended by way of downloading.[6]

3.1.7. Article 509-1 of the Luxembourg Criminal Code prohibits the fraudulent access in an automated data processing system. This confirms that data are capable of being owned by, and protected as being the property of, a legal person. In this regard, the above-mentioned decision of

---

[2] MALAURIE Philippe, AYANÈS Laurent, Droit des biens, LGDJ p. 31.

[3] Article 567 of the Luxembourg Commerce Code.

[4] Loi 9 juillet 2013 portant modification de l'article 567 du Code de Commerce, Exposé des motifs.

[5] CSJ, 29 janvier 2008, n°57/08, Recueil de Jurisprudence Pénale, 2012, p. 341, Jean-Luc PUTZ.

[6] Cass, 03 avril 2014, N° 17 / 2014.

the Supreme Court also stated that the fact of rightfully accessing a server or a network does not imply that remaining in the system is necessary rightful and the fact of remaining in the network to perform unauthorized actions renders the continuing access fraudulent.

3.1.8. Company data and documents comprise documents and data stored on the servers of the Companies including those accessible via remote or mobile devices and those sent to or from the Plaintiffs' Companies email address.

3.1.9. It results from the above that documents and data in whatever form, including emails, other electronic documents and hard copy documents of a company constitute tangible or intangible assets forming part of the assets of the relevant Company, irrespective of whether the document is accessible from a distance via a mobile device. The use of such data and its sharing with others outside the Companies must therefore be in, and compatible with, the relevant Company's interest.

**3.2. Shareholders and board members rights/power to obtain and share Company records or data**

3.2.1. *Rights of shareholders*

3.2.1.1. The rights of shareholders in public limited liability companies (*sociétés anonymes*) are provided for in the 1915 Law. In addition, the articles of association of a company may provide for certain additional shareholder rights.

3.2.1.2. As a general rule, shareholders exercise their rights in the context of general meetings. The rights of the general meeting of shareholders are provided for in the 1915 Law. These rights include inter alia the power to appoint and remove the members of the management body of a company, to amend the articles of association of a company, to approve the annual

accounts of a company and to decide on a possible merger/demerger as well as the dissolution and liquidation of a company.

        3.2.1.3.      In the context of exercising these rights, shareholders have certain specifically identified information rights. The 1915 Law does not contain an overarching disposition setting out a general right to information of shareholders. Instead, the right to information results from specific provisions of the 1915 Law applicable to some forms of commercial companies as well as general principles of Luxembourg law. The information rights of shareholders generally cover specific scenarios. For example, each shareholder is entitled to examine the shareholders' register at the registered office of the company.[7]

        3.2.1.4.      The balance sheet and profit and loss statements as well as certain reports of the directors and of the auditors and certain ancillary information, and in case of amendments to the articles of association, the text of the proposed amendments and the draft consolidated articles constitute the company information that must be made available to shareholders.[8]

        3.2.1.5.      In addition, shareholders have the right to ask questions during any general meeting of shareholders. However, this right is limited. First, the right of shareholders to ask questions is limited to questions with respect to items on the agenda of the meeting. Second, it is for the directors to determine, under their own responsibility, whether there exist legitimate grounds for refusing to answer a question put to them by a shareholder. Legitimate grounds for refusing to answer include the protection of the corporate interest (*intérêt social*) of the company or because the questions whilst falling within the ambit of the agenda, are clearly and undeniably unnecessary in order to allow an informed participation in the discussions and the vote.

---

[7] Article 430-3 of the 1915 Law.

[8] Article 461-6 of the 1915 Law.

3.2.1.6. Other than these shareholder rights, the 1915 Law contains no individual right of information or right of a shareholder in a *société anonyme* to require documents or data from the company.

3.2.1.7. Put differently, shareholders do not have an individual right of investigation[9] which could allow them to obtain company documents.

3.2.1.8. For the sake of completeness, the Articles of none of the Companies contain provisions extending the right of shareholders to request any documents from the relevant Company other than those provided for by law.

3.2.1.9. Finally, the limited information rights mentioned above belong to persons who directly hold shares in a company. However, we understand none of the Plaintiffs is a direct shareholder of any of the Companies. They therefore have as such none of the limited rights mentioned above.

3.2.1.10. Plaintiffs, because they are not direct shareholders of the Companies, have no legal right to obtain documents and data from the Companies.

3.2.2. *Rights of members of the board of directors*

3.2.2.1. The Companies are public limited liability companies (*sociétés anonyme*) having a board of directors. Under Luxembourg law (and except for single shareholder *sociétés anonymes*), management of a public limited liability company (*société anonyme*) is by a collegial body. Indeed, article 444-3 of the 1915 Law states that the directors form collegiate bodies while article 441-5 of the 1915 Law allocates management to the board of directors and not to directors individually. A director has in principle no individual management powers which could give him unfettered access to company information.

---

[9] Jean-Pierre Winandy, Manuel de droit des sociétés, 2019, p. 192.

7

3.2.2.2. Each of the Plaintiffs is a director in each of the Companies' ten-member Boards of Directors. In that capacity, each Plaintiff is required to act in accordance with the duties and obligations of a director. We have been advised none of the Plaintiffs holds any other positions within the Companies.

3.2.2.3. Luxembourg company law requires every director to act in an informed manner. The corollary of such duty is the right of a director to be informed about the company's affairs. The information rights of a director, however, are limited.

3.2.2.4. First, the director's right to be informed covers information only to the extent it is needed for exercising his duties as a director. Indeed, article 444-3, paragraph 4, of the 1915 Law provides that "each member of the board of directors [...] shall be entitled to examine all information submitted to the relevant board". This provision is looking to allow every director to be adequately informed while exercising his or her mandate by providing him or her the supporting materials prior to a board meeting.

3.2.2.5. Second, the information right of a director is exercised by the board of directors itself, acting as a collegiate body.[10] Subject to the next paragraph, a director has no individual power to directly request information from management. Such requests are expressly or implicitly made by the board of directors.

3.2.2.6. Directors do however have an individual investigation right which allows them to seek, on their own initiative, information deemed useful or necessary for the exercise of their mandate.[11] However, this individual investigation right is limited. Indeed, a director wishing

---

[10] Alain Steichen, Précis de droit des sociétés, Editions Saint-Paul 2018, p. 663.

[11] Simont, L'administrateur d'une S.A. agissant isolément a-t-il un droit d'investigation individuel ? RPS 1963, p. 189.

to exercise its individual investigation right should avoid disrupting the normal functioning of the company and must keep all information so collected confidential.[12] Most importantly, however, the investigation right of a director is limited to investigations which are necessary for the exercise of his or her mandate.[13]

    3.2.2.7.    Again, the purpose of this individual investigation right is to allow directors to be adequately informed when exercising their mandate. Stated differently, it may not be used by the director for personal purposes. Indeed, Luxembourg courts have decided that information obtained by or available to a director must only be used by the director for the exercise of his mandate as director and that any disclosure or indiscretion with respect to this information constitutes misconduct on the part of the director.[14]

    3.2.2.8.    A director may as a result not request or use company data or documents for personal purposes.

    3.2.2.9.    Plaintiffs have therefore no right to obtain any documents of the Companies or use any documents of the Companies to which they have access (e.g. though their mailbox) for their personal purposes.

    3.2.2.10.    It is not only established that directors have no right to obtain company documents and data for personal purposes but also that a director may not use for personal purposes the information to which he or she has access in the course of his or her duties.[15]

---

[12] As ruled by Lux. 21 janvier 1988, n° 37 823.

[13] Cour d'appel 10 juillet 1991, n° 10 974.

[14] Lux. 21 janvier 1988, n° 37 823.

[15] Didier Willermain, Les devoirs des dirigeants sociaux, spécialement des administrateurs de sociétés anonymes, Bruylant 2012, p. 75.

3.2.2.11. In fact, the counterpart of the director's information and investigation right is illustrated by the duty of confidentiality which binds every member of the board of directors.[16] The duty of confidentiality is explicitly provided for by article 444-6 of the 1915 Law which states that "the directors [...] shall be under a duty, even after they have ceased to hold office, not to divulge any information which they have concerning the *société anonyme*, the disclosure of which might be prejudicial to the company's interests, except where such disclosure is required or permitted by a legal or regulatory provision applicable to *sociétés anonymes* or is in the public interest".

3.2.2.12. As a result of the director's duty of confidentiality, a director may not disclose or use information or any document received in the exercise of his or her duties. This covers any information and document which is in possession of the directors as well as any information and document which a director could obtain when exercising his information and investigation rights.

3.2.2.13. Applied to the case at hand, Plaintiffs, in their capacity as directors of the Companies, have no right to request, communicate or use Company documents and data (including those available in their email accounts) for personal uses.

## IV. PERSONAL DATA PROTECTION MATTERS

4.1. Documents belonging to any commercial company, emails in particular, will very often (if not always in relation to emails) comprise personal data, also known outside of the European Union as personally identifiable information.

---

[16] Père, L'obligation de discrétion des membres du conseil d'administration, D. 2004, p. 1786 ; Tilleman, L'obligation au secret et à la discrétion des administrateurs de sociétés, J.T. 1993, p. 549 ; Tilleux et Salteur, Administrateur de société, une fonction aux devoirs multiples, RPS 2016, p. 333.

4.2. In the European Union, the protection of natural persons with regard to the processing of personal data is governed by the EU General Data Protection Regulation (the "GDPR")[17], which is directly applicable in all EU member States including Luxembourg.

4.3. Personal data transfers, referred to under the GDPR as transfers to third countries i.e. outside of the European Economic Area (the "EEA") or international organisations, must be based on one of the legal basis exhaustively listed in the GDPR, namely (a) the existence of an adequacy decision adopted by the EU Commission and covering either the country of destination or the data importer itself or, failing that, (b) the implementation of appropriate safeguards or binding corporate rules or, failing that, (c) the reliance on a valid derogation.

4.4. The United States of America (the "U.S.") are covered by an adequacy decision benfitting only to the entities who adhered to the EU-US Privacy Shield Framework. For transfers to be possible on this basis in the context at hand, the District Court for the District of Columbia and the defendants would be required to be listed on the relevant website of the U.S. Department of Commerce (i.e. https://www.privacyshield.gov/list).

4.5. In the absence of an adequacy decision, personal data transfers to third countries are allowed provided that appropriate safeguards are in place, such as standard data protection clauses adopted by the EU Commission to be entered into between the data exporter and the data importer or binding corporate rules concluded within a group of undertakings or enterprises engaged in a joint economic activity.

4.6. In the absence of an adequacy decision or of appropriate safeguards, Article 49 of the GDPR lists derogations for specific situations under which transfers to third countries may be

---

[17] Regulation (EU) 2016/679 of the European Parliament and of The Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation).

permitted. According to guidance from the European Data Protection Board, the conference of the data protection authorities of all EU member States (the "EDPB"), "derogations under Article 49 are exemptions from the general principle that personal data may only be transferred to third countries if an adequate level of protection is provided for in the third country or if appropriate safeguards have been adduced and the data subjects enjoy enforceable and effective rights in order to continue to benefit from their fundamental rights and safeguards. Due to this fact and in accordance with the principles inherent in European law, the derogations must be interpreted restrictively so that the exception does not become the rule. This is also supported by the wording of the title of Article 49 which states that derogations are to be used for specific situations ('Derogations for specific situations')."[18]

4.7. Specifically as regards discovery procedures, the EDPB notes as follows in relation to the derogation under Article 49(1)(e) of the GDPR which allows data transfers which are necessary for the establishment, exercise or defense of legal claims: "Recital 111 [of the GDPR] states that a transfer can be made where it is 'occasional and necessary in relation to a contract or a legal claim, regardless of whether in a judicial procedure or whether in an administrative or any out-of-court procedure, including procedures before regulatory bodies'. This covers a range of activities for example, in the context of a criminal or administrative investigation in a third country (e.g. anti-trust law, corruption, insider trading or similar situations), where the derogation may apply to a transfer of data for the purpose of defending oneself or for obtaining a reduction or waiver of a fine legally foreseen e.g. in anti-trust investigations. As well, data transfers for the purpose of **formal pre-trial discovery procedures in civil litigation may fall under this**

---

[18] EDPB Guidelines 2/2018 on derogations of Article 49 under Regulation 2016/679 adopted on 25 May 2018. This document seeks to provide guidance as to the application of Article 49 of the GDPR on derogations in the context of transfers of personal data to third countries.

**derogation** (emphasis added). (...) As a transfer needs to be made in a procedure, a close link is necessary between a data transfer and a specific procedure regarding the situation in question. The abstract applicability of a certain type of procedure would not be sufficient. Data controllers and data processors need to be aware that national law may also contain so-called 'blocking statutes', prohibiting them from or restricting them in transferring personal data to foreign courts or possibly other foreign official bodies."[19]

  4.8. In relation to the overarching principle of necessity of the data transfer, the EDPD adds: "A data transfer in question may only take place when it is necessary for the establishment, exercise or defense of the legal claim in question. This 'necessity test' requires a close and substantial connection between the data in question and the specific establishment, exercise or defense of the legal position. The mere interest of third country authorities or possible 'good will' to be obtained from the third country authority as such would not be sufficient. Whilst there may be a temptation for a data exporter to transfer all possibly relevant personal data in response to a request or for instituting legal procedures, this would not be in line with this derogation or with the GDPR more generally as this (in the principle of data minimization) emphasizes the need for personal data to be adequate, relevant and limited to what is necessary in relation to the purposes for which they are processed. In relation to litigation proceedings the WP29 [i.e. the Article 29 Working Party], predecessor of the EDPB, has already set out a **layered approach to the question of whether the personal data should be transferred, including the application of this principle. As a first step, there should be a careful assessment of whether anonymized data would be sufficient in the particular case. If this is not the case, then transfer of pseudonymized data could be considered. If it is necessary to send personal data to a third**

---

[19] Id., p 11.

**country, its relevance to the particular matter should be assessed before the transfer – so only a set of personal data that is actually necessary is transferred and disclosed**"(emphasis added)[20].

4.9. The above obligations will apply to the Companies as data controllers (within the meaning of the GDPR).

## V. CONCLUSION

5.1. Direct shareholders only have limited information rights which do not include the power to obtain from the Companies data and documents other than those specifically provided by the law. Persons not directly holding shares in a *société anonyme* do not have any information rights.

5.2. The members of the board of directors of a *société anonyme* do not have the power to obtain documents belonging to the company for their own needs, as individuals not acting within the framework of their position or mandate in the context of a dispute which does not concern that company.

5.3. I understand the Plaintiffs are acting personally in the relevant litigation and not in their capacity as shareholders or members of the board of directors of the Companies. They do not have the power to obtain, give access to or otherwise disclose documents belonging to the Companies.

5.4. This applies to any of the documents and data available to the Plaintiffs, e.g. through their personal devices or any remote connection made available to them by the Companies in their capacity as directors and also to the documents stored on the servers of the Companies to which they do not have direct access.

---

[20] Id., p 12.

5.5. The above conclusion indistinctly applies whether the documents exist in paper or in electronic format and whether or not they have been created by or distributed to Plaintiffs.

**VI.   ABH HOLDINGS S.A.**

6.1. The developments and conclusion set out above equally apply to ABH Holdings S.A. ("ABH"). We understand that, ABH, incorporated under the laws of Luxembourg and organized in the form of a public limited liability company (*société anonyme*) with registered office at 3 boulevard du Prince Henri, L-1724 Luxembourg, Grand Duchy of Luxembourg and registered with the Luxembourg trade and companies register under number B151018, is an indirect parent company of Russian Joint Stock Company Alfa-Bank ("Alfa Bank").

6.2. In addition, as a matter of Luxembourg law, the Plaintiffs as shareholders of ABH do not have the right to obtain, through ABH, documents or data of Alfa Bank.

I, on behalf of Elvinger Hoss Prussen, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 2, 2020 at 2, place Winston Churchill, L-1340 Luxembourg.

By: _____
Philippe Hoss
Elvinger Hoss Prussen, *société anonyme*
2, place Winston Churchill
L-1340 Luxembourg
Grand-Duchy Luxembourg
RCS Luxembourg: B209469
+352 446644 5311
philippehoss@elvingerhoss.lu

15