**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN,<br><br>       Plaintiffs,<br><br>  v.<br><br>BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,<br><br>       Defendants. | Civil Case No. 1:17-cv-2041-RJL |

---

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO ALFA'S MOTION TO INTERVENE**

Defendants Bean LLC a/k/a Fusion GPS and Glenn Simpson submit this opposition to Alfa's Motion for Leave to Intervene for the Limited Purpose of Litigating Defendants' Motion to Compel Plaintiffs' Production of Their Documents ("Alfa's Motion"). The Court should deny Alfa's Motion.

Alfa files its motion in the shadow of the 2006 ruling that Alfa, by filing a lawsuit, had "opened the door to the full extent of discovery authorized by the Federal Rules of Civil Procedure and the orders of this Court." *OAO Alfa Bank v. Ctr. for Pub. Integrity*, No. CIV. A. 00-2208(JDB), 2006 WL 1313309, at *4 (D.D.C. May 12, 2006). This time around, in an effort to avoid the obligations of party discovery, Alfa did not join Plaintiffs in filing the instant lawsuit, even though Plaintiffs' defamation claims rest on allegations that certain statements about *Alfa* defamed Plaintiffs. Now, even though Alfa decided to immunize itself from party discovery by not joining the lawsuit as a plaintiff, Alfa seeks to control and limit *Plaintiffs'* discovery obligations. Whether trying to coax Defendants into negotiating Plaintiffs' discovery obligations with Alfa or

prematurely moving to intervene solely to press Plaintiffs' arguments opposing Defendants' Motion to Compel Production of Plaintiffs' Alfa Documents, ECF No. 78 ("Defendants' Motion to Compel"), Alfa has sought to prosecute this lawsuit, without bearing the responsibility of full party discovery and while shielding Plaintiffs' documents from discovery. Accordingly, Alfa now comes to the Court asking to intervene to make Plaintiffs' arguments for Plaintiffs, seeking to prevent party discovery on Plaintiffs, all the while reiterating that Alfa is "not subjecting themselves to the general jurisdiction of the Court." Alfa Mot. for Leave to Intervene, ECF No. 80, at 1; Alfa Mem. of Pts. & Auth. in Supp. of Mot. for Leave to Intervene ("Alfa Mem."), ECF No. 80, at 18.[1]

Alfa lacks standing and should not be permitted to intervene for the purpose of filing a redundant brief. Intervention for this limited purpose would require Defendants to respond to Alfa's redundant brief, thereby prejudicing Defendants by delaying a ruling on Defendants' motion to compel. In the alternative, should Alfa be permitted to intervene even for this limited purpose, Defendants should be permitted to seek discovery directly from Alfa under Rule 34.

## INTRODUCTION

Defendants' Motion to Compel asks the Court to determine that Plaintiffs have possession, custody, or control of their documents and thus must produce them pursuant to Rule 34.[2] Alfa has filed this motion for leave to intervene to argue, the same as Plaintiffs, that Plaintiffs do not have possession, custody, or control of the documents at issue, and to delay adjudication of Defendants' Motion to Compel. Alfa's ultimate objective is thus identical to Plaintiffs', and intervention is not

---

[1] Alfa's Motion to Intervene and its Memorandum in support thereof are in the same PDF file at ECF No. 80.

[2] Plaintiffs Mikhail Fridman, Petr Aven, and German Khan together own a combined majority of the Alfa Banking Group's shares—over 66%. *See* Defs.' Mot. to Compel, ECF No. 78, at 10.

warranted. By pursuing the issue of control on Plaintiffs' behalf, Alfa is not protecting its asserted general interest in the privilege and confidentiality of documents. Alfa should not be permitted to use a purported interest in protecting privilege and confidentiality as cover to litigate on Plaintiffs' behalf the merits of whether Plaintiffs control their documents, which is precisely what Alfa seeks to do. The Court can answer the question of control without prejudice to Alfa's ability to move *thereafter* for a protective order that could safeguard any privileged, confidential, or sensitive commercial information.

   **1.  Alfa Decided Not to Join This Lawsuit as a Plaintiff.**

   Alfa did not join this lawsuit as a plaintiff, despite Plaintiffs' allegations that statements naming Alfa,[3] but not Plaintiffs, were defamatory.[4]

   The decision to omit Alfa as a plaintiff meant Alfa could avoid the party discovery requirements of Rule 34 to which it was subjected as a plaintiff in 2006. *See OAO Alfa Bank*, 2006 WL 1313309, at *4. Plaintiffs and Alfa have since worked together to manipulate the discovery process, so that Plaintiffs, too, would not be subject to the party discovery requirements of the Federal Rules of Civil Procedure *in their own lawsuit.* Alfa now wants to litigate a key dispute in

---

[3] Defendants use the term "Alfa" to encompass the conglomerate of entities including AO Alfa-Bank, ABH Holdings S.A., LetterOne Holdings S.A., and Letter One Investment Holdings S.A.

[4] For example:

- Plaintiffs claim that the line, "RUSSIA/US PRESIDENTIAL ELECTION: KREMLIN-ALPHA GROUP COOPERATION," is false and defamed them. Pls.' Suppl. Resp. to Interrog. No. 2, ECF No. 78-6.
- Plaintiffs claim that this sentence in CIR 112 is false and defamatory: "Significant favours continued to be done in both directions, primarily political ones for PUTIN and business/legal ones for Alpha." *Id.*

this case on Plaintiffs' behalf, essentially as a party, but without having to bear a party's discovery obligations.

**2. Alfa Has Not Offered to Produce All Responsive and Relevant Documents.**

Alfa portrays itself as a generous third party, overstating what it has represented to Defendants, and ignoring the significant additional burden that would be imposed on Defendants if they had to seek *Plaintiffs'* documents from Alfa.

First, as set forth at length in Defendants' Motion to Compel, ECF No. 78, these are Plaintiffs' documents. Forcing Defendants to pursue these documents against a third party puts Defendants at a severe disadvantage, which is likely why Alfa and Plaintiffs have concocted this strategy whereby the non-party, Alfa, controlled by Plaintiffs, shields the documents and limits any *party* production of those documents, all the while still trying to insert itself into the litigation as a "non-party" where convenient.

Second, Alfa claims that it "offered to produce documents without a subpoena and without requiring Defendants to proceed under the Hague Evidence Convention or letters rogatory process." Alfa Mem. at 7. What Alfa actually told Defendants was that Alfa would be willing "*to consider* producing documents without requiring compliance with the Hague Evidence Convention and letters rogatory procedures *provided that we are able to come to a mutual agreement as to the scope of any request*." Email from M. Krawiec to J. Levy (May 1, 2020) ("May 1 Email"), ECF No. 78-32, at 1 (emphasis added). Alfa has also stated that it is willing "to negotiate" to produce documents "*provided that we are able to settle on a mutually agreeable scope of production,*" and to produce emails only for whatever Alfa decides is a "reasonable time period." Email from M. Krawiec to J. Levy (May 8, 2020), ECF No. 78-33, at 1 (emphasis added). In other words, should Defendants not agree with Alfa's position on the "scope of any request,"

the "reasonable time period," or the "scope of production," which is very likely, Defendants would either have to cave to Alfa's position and accept a limited production on Alfa's terms, or pursue what Alfa's counsel describes as an "at best cumbersome" process of the Hague Convention or letters rogatory. *Id.* That is not an "accommodative proposal," as Alfa claims. Intervenors' Proposed Mem. of Pts. and Auths. in Opp'n to Defs.' Mot. to Compel ("Proposed Opp'n Br."), ECF 80-3, at 5. These are Plaintiffs' documents, and Rule 34 requires Plaintiffs to produce them. Sending Defendants to request the documents from the companies Plaintiffs control, under terms dictated by the companies, is no substitute for party discovery and greatly prejudices Defendants' ability to defend themselves in this litigation.

Third, even if Alfa were willing to accept service of a subpoena, Defendants would be prejudiced by having to seek documents from a non-party, because courts afford greater discovery protections to non-parties in discovery disputes than to parties. *See Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (noting that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in Rule 45 inquiry" (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)) (internal quotations and citations omitted); *Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012) (stating that courts "have the discretion to limit discovery to prevent undue expense to third parties, even if the discovery sought is within the permissible scope of Rule 45 and Rule 26" (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

## ARGUMENT

## I.   ALFA IS NOT ENTITLED TO INTERVENTION AS OF RIGHT.

Pursuant to Rule 24(a), an applicant may intervene as of right when the applicant satisfies four requirements: "(1) the application to intervene must be timely; (2) the applicant must

5

demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998)). A non-party "must satisfy all four elements of the Rule in order to intervene as of right." *Jones v. Prince George's Cty., Maryland*, 348 F.3d 1014, 1019 (D.C. Cir. 2003) (citing *Bldg. & Constr. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994)).

In addition, the movant seeking to intervene as of right must have Article III standing. *Deutsche Bank Nat. Tr. Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013). "To establish standing under Article III, a prospective intervenor—like any party—must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732–33 (D.C. Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Because the standing analysis is intertwined with the "legally protected interest" factor, Alfa's lack of Article III standing is addressed in Argument § 2, *infra* at 11. *See United States v. Philip Morris USA Inc.* ("*Philip Morris II*"), 566 F.3d 1095, 1146 (D.C. Cir. 2009) ("[B]y demonstrating Article III standing, the intervenors adduce a sufficient interest." (citing *Fund for Animals*, 322 F.3d at 735)).

Alfa's Motion does not meet the requirements of Rule 24 and should be denied.

*First*, the motion is untimely. If the purpose of Alfa's motion is, as it says, to protect "privileged, confidential, and sensitive commercial information of the Companies," Alfa Mot. at 2, it is not ripe. The Court has not decided the issue of whether Plaintiffs have possession, custody, or control of the documents.

*Second*, Alfa purports to protect one interest in its Motion for Leave to Intervene but tries to advance another in the Opposition Brief it would file in this litigation should the Court grant its

Motion. *Compare* Alfa's Mem., *with* Proposed Opp'n Br. Although for purposes of the instant Motion to Intervene Alfa asserts a legal interest in the privilege and confidentiality of documents, it does not seek leave to intervene to request a protective order for specific documents it claims contain "privileged, confidential, and sensitive commercial information of the Companies." Instead, as shown by its Proposed Opposition Brief, Alfa seeks to intervene to argue that Plaintiffs do not have possession, custody, or control of their Alfa documents—the exact position taken by Plaintiffs in this dispute. All this gambit does is expose Alfa's true interest—limiting Plaintiffs' discovery obligations and litigating by proxy.

*Third*, denying Alfa's intervention would not impair its interests; it would simply prevent the filing of Alfa's proposed opposition brief, which is redundant in light of Plaintiffs' Opposition to the Motion to Compel. Moreover, were the Court to grant Defendants' Motion to Compel, Alfa would have time to file a motion for a protective order regarding any privileged, confidential, or sensitive information.

*Fourth*, Alfa's interests are identical to Plaintiffs' and more than adequately represented by Plaintiffs in opposition to Defendants' Motion to Compel, as both Alfa and Plaintiff take the same position that Alfa has exclusive control over Plaintiffs' documents.

*Finally*, permissive intervention is not warranted because Alfa lacks standing and its participation would be a redundancy serving only to delay the proceedings and prejudice Defendants.

### 1. Alfa's Motion is Not Timely.

Alfa's motion fails to satisfy Rule 24(a)'s timeliness threshold. The motion is premature, calculated to disrupt the litigation, and will prejudice Defendants by further delaying a resolution of Plaintiffs' failure to comply with their discovery obligations.

Timeliness "is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Karsner*, 532 F.3d at 886 (quoting *United States v. British Am. Tobacco Austl. Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006)). The timeliness requirement under Rule 24(a) "is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Amador Cty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 905 (D.C. Cir. 2014) (quoting *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014)). If the motion is untimely, Rule 24's explicit language commands that "intervention must be denied." *Id.* at 903 (quoting *NAACP v. New York*, 413 U.S. 345, 365 (1973)).

First, Alfa's Motion is premature because the interests Alfa seeks to protect are not threatened by Defendants' Motion to Compel. Any questions of privilege or confidentiality concerning documents are contingent upon this Court first determining that Plaintiffs control said documents and must produce them pursuant to Rule 34. Until the Court makes such a finding, Alfa is seeking a remedy for harm that is "purely speculative" and unfit for review. *See* Argument § 2, *infra* at 11–15. If the Court determines that Plaintiffs are in control of the documents at issue, Alfa will have ample opportunity to move to intervene to modify the protective order. At present, however, the motion to intervene is wholly unnecessary "as a means of preserving the applicant's rights," *Karsner*, 532 F.3d at 886 (quoting *British Am. Tobacco*, 437 F.3d at 1238), none of which has been implicated or imperiled by Defendants' motion.

Second, Alfa's Motion cannot be timely, as Alfa claims, on the grounds that "it was filed soon after [Alfa's] interests diverged from Plaintiffs," Alfa Mem. at 10, because Alfa's interests have never diverged from Plaintiffs' interests. That underscores why Alfa's motion is wholly

8

meritless: both Plaintiffs and Alfa have always contended and continue to contend that Plaintiffs do not have possession, custody, or control of their documents. *See* Defs.' Mot. to Compel at 5–8. Tellingly, Alfa does not identify what this "divergence" of interests is, because there is none. Alfa's abstruse explanation is: "Defendants' Motion [to Compel] raised the possibility that Plaintiffs could be compelled by this Court to produce the Documents." Alfa Mem. at 10. Thus, Alfa's distinctive interest in the confidentiality of its documents only becomes ripe in the event of the Court granting the Motion to Compel. Until such time, Alfa and Plaintiff share identical interests.[5]

All of the cases on which Alfa relies are inapposite because they involve both a ruling adverse to the third party and a party that stopped defending the third party's interests, reflecting a clear divergence of interests between the party and the third party. *See* Alfa Mem. at 9–10 (citing *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (finding that a third party's interests had diverged from a party to the litigation and permitting intervention, *only after* a judgment had been rendered in the underlying dispute, and it became clear that the party that had been representing the third-party's interests would not pursue an appeal on its behalf); *United States. v. Philip Morris USA Inc.* ("*Philip Morris I*"), No. Civ. A. 99-2496 (GK), 2003 WL 25572283, at *2 (D.D.C. Dec. 5, 2003) (granting a third-party corporation's motion to intervene *only after* finding the third party's documents to be simultaneously controlled by a party, denied that same party's motion for

---

[5] The sole basis for Alfa's intervention is that "Plaintiffs face a motion to compel and the possibility of repercussions if they continue to assert that the Documents can only be produced by the Companies," and Alfa's attendant concern that its interests would therefore diverge from Plaintiffs'. Alfa Mem. at 14. However, as Plaintiffs' Opposition to Defendants' Motion to Compel, ECF No. 84, makes clear, Plaintiffs do, in fact, "continue to assert that" their documents can only be produced by Alfa. Plaintiffs' and Alfa's interests therefore remain identical. To the extent Alfa's concern is that Plaintiffs' interests may someday diverge from Alfa's in the face of sanctions for noncompliance with a production order, that concern is premature. The Court has not yet ruled on the issue of control, and no motion for sanctions has been filed. Consequently, Alfa's stated basis for intervention remains speculative.

a protective order, and compelled production under penalty of daily sanctions); and *United States v. Am. Tel. & Tel. Co.* ("*AT&T*"), 642 F.2d 1285, 1295 (D.C. Cir. 1980) (granting third party's motion to intervene *after* the district court issued a discovery order and *after* the party controlling documents opted not to appeal or limit its disclosure of third party's allegedly privileged documents)). Here, there is no adverse ruling and Plaintiffs continue to defend Alfa's interests.

Third, while Alfa contends that its intervention is timely because its participation will not alter this Court's schedule for briefing on summary judgment and is limited to the "specific issue" of whether Plaintiffs have possession, custody, or control of their documents, Alfa Mem at 10, that "specific issue" is of crucial importance to the case and will be ripe for a "resolution of the merits," *Amador Cty.*, 772 F.3d at 904, when Defendants file their reply on July 24, 2020. Fact discovery in this case closes on January 12, 2021, less than six months away. Consent Order Modifying Scheduling Order, ECF No. 74. Plaintiffs have still failed to produce the bulk of their responsive documents.[6] Contrary to its purported purpose, Alfa's Motion is yet another pretext under which Plaintiffs and related parties can delay or prevent party discovery in this case. Alfa's presence will

---

[6] The parties' document production in this case was due May 4, 2020. While the exact scope of the discoverable universe of documents has yet to be defined—another factor which casts doubt on Alfa's sweeping claims of imminent harm concerning disclosures—Plaintiffs' production to date has been woefully insufficient. In a defamation action contesting the substantial truth of statements concerning a Plaintiffs' conduct over the course of at least a decade, Plaintiff Aven has produced 36 emails (all of which appear to be auto-generated, and possibly spam), Plaintiff Fridman has produced 22 emails, and Plaintiff Khan has produced none. Explaining the paucity of responsive documents produced, Plaintiffs' counsel has represented that the majority of Plaintiffs' emails using an Alfa or LetterOne email address, hard copy documents, text messages or other communications on messaging apps, electronic documents, calendars, and communications written on their behalf by their personal assistants are in the possession, custody, or control of Alfa, and that Plaintiffs, despite their significant ownership, influence, and involvement with those entities, cannot access those documents. *See* Letter from J. Levy to A. Lewis (Apr. 16, 2020), ECF No. 78-10, at 2. Accordingly, Defendants moved to compel production of the aforementioned documents in light of the crucial importance of the documents at issue and the continued prejudice imposed by Plaintiffs' failure to comply with their discovery obligations.

burden both the Court and Defendants with redundant briefing, a protracted schedule to hear arguments from the parties to this dispute, and a delayed decision determining the Plaintiffs' discovery obligations, further prejudicing Defendants. Accordingly, Alfa's Motion is not timely and should be denied.

### 2. Alfa Does Not Have a Legally Protected Interest.

Alfa has failed to demonstrate a legally protected interest. First, because this Court has not yet ruled on Defendants' Motion to Compel, Alfa lacks Article III standing and cannot demonstrate a legally protected interest sufficient to support intervention at this time. Second, even assuming, *arguendo*, that Alfa has standing, Alfa may not use a purported interest in protecting privilege and confidentiality as cover to litigate on Plaintiffs' behalf the merits of whether Plaintiffs control their documents, which is precisely what Alfa seeks to do.

#### a. *Alfa Lacks Standing.*

In this Circuit, a "party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution." *Fund for Animals*, 322 F.3d at 731–32 (citation omitted). "To establish standing under Article III, a prospective intervenor—like any party—must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Id.* at 732–33 (citing *Lujan*, 504 U.S. at 560–61); *see also New York Stock Exch. LLC v. SEC*, --- F.3d ----, 2020 WL 3248902, at *7 (D.C. Cir. June 16, 2020) ("In order to establish Article III standing, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016))).[7] Importantly, "standing is not dispensed in gross," and so a plaintiff, or

---

[7] Alfa contends, incorrectly, that because it "ha[s] a 'protected interest' under the requirements of Rule 24(a)," it "therefore also ha[s] standing." Alfa Mem. at 8 n.4. In particular, Alfa quotes *Roedar v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003), as holding that "any person

intervenor, "must demonstrate standing *for each claim* he seeks to press and for each form of relief

that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017)

(emphasis added) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). Thus, even for intervention

limited to a single claim, Alfa must demonstrate standing to pursue its interest "in maintaining [its]

privilege and preventing disclosure of any confidential or sensitive commercial information." Alfa

Mem. at 11.

    i)  No Injury-In-Fact

   Alfa does not identify an adequate injury-in-fact. "The injury must be concrete and

particularized, and actual or imminent, as opposed to merely conjectural or hypothetical." *Ineos*

*USA LLC v. FERC*, 940 F.3d 1326, 1329 (D.C. Cir. 2019) (citing *Lujan*, 504 U.S. at 560).

Conversely, "'allegations that are really predictions' may be rejected as overly speculative." *Id.*

(citing *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015)). Such predictions are precisely what

Alfa presents to the Court.

   Alfa concedes as much by arguing that a grant of Defendants' motion to compel "put[s]

[Alfa] at risk of having [its] claims of privilege 'erased or impaired' by the Court's adjudication."

Alfa Mem. at 11. This Circuit, however, has "repeatedly expressed skepticism of increased-risk-

of-harm injuries because any future injury—no matter how speculative—can be recast as a present

risk of future harm, thus purportedly meeting the imminence requirement of Article III." *Jeffries*

---

who satisfies Rule 24(a) will also meet Article III's standing requirement," Alfa Mem. at 8 n.4.
That selective quotation elides the D.C. Circuit's observation in that case that "decisions of this
court hold an intervenor *must also* establish its standing under Article III of the Constitution,"
*Roeder*, 333 F.3d at 233 (emphasis added) (citation omitted), and ignores more recent case law
from this Circuit referring to "our settled precedent that all intervenors must demonstrate Article
III standing," *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1233 n.2 (D.C. Cir. 2018)
(distinguishing the Supreme Court's more limited holding in *Town of Chester v. Laroe Estates,*
*Inc.*, 137 S. Ct. 1645, 1651 (2017), that an intervenor as of right who seeks distinctive relief must
demonstrate its own Article III standing).

*v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1067 (D.C. Cir. 2019) (citing *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005); *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1294 (D.C. Cir. 2007)). In *Ineos*, the Circuit specifically rejected such an argument for standing. There, the petitioner's "claim of competitive injury from denial of access . . . [wa]s too speculative to support standing" because the access at issue "ha[d] not yet [been] accepted or denied." *Ineos*, 940 F.3d at 1329; *see also Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 69 (D.D.C. 2004) (recognizing "the theoretical possibility" of EPA adopting a rule that harms the third party, but calling it "pure speculation" and denying intervention where third party "ask[ed] the court to make many of inferential leaps, tie them together with inferential string, and come up with injury or impairment").

The cases Alfa cites likewise illustrate this point. Each of those cases permitting intervention as of right for the purpose of protecting privilege or confidentiality only permitted intervention when the documents at issue were already known. *See AT&T*, 642 F.2d at 1289 (describing defendant's document request at issue as "seeking discovery of the database documents furnished by [intervenor]"); *Gov't Accountability Project v. FDA*, 181 F. Supp. 3d 94, 94 (D.D.C. 2015) (allowing intervention in a Freedom of Information Act case where the parties "ha[d] narrowed the scope of their dispute to a single redacted document"); *100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 274, 277 (D.D.C. 2014) (allowing intervention in a FOIA case where plaintiff sought Department records "relating to [intervenor's] plea agreement and monitorship," and observing that "this Court routinely has recognized that the submitter of

documents to a government agency has a cognizable interest in maintaining the confidentiality of those documents that is sufficient under Rule 24(a)").[8]

*Philip Morris I*, on which Alfa also relies, is particularly instructive. In that case, the Court ruled that Defendant BATco controlled the documents in question, which were in the possession of BATco's affiliate, BATAS. *After* the court decided the control issue, BATAS moved to intervene "for the limited purpose of asserting and, if necessary, litigating privileges it holds in documents in its possession and that are the subject of the Court's Order." *Philip Morris I*, 2003 WL 25572283, at *1. Alfa, however, has not waited to proceed until *after* the Court has decided the control issue to assert privileges in specific documents. Instead, it moves to intervene for that limited purpose before the Court has ruled on the Motion to Compel. Thus, at this stage, Alfa is unable to establish injury-in-fact.

ii)    No Causation

Alfa's alleged injury would not be traceable to this Court granting Defendants' Motion to Compel. To demonstrate traceability or causation, Alfa "must show that [its] claimed injury is 'fairly traceable to the challenged conduct.'" *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 54 (D.C. Cir. 2019) (quoting *Spokeo*, 136 S. Ct. at 1547). But Alfa cannot "show that 'it is substantially probable that the challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff.'" *Ctr. for Biological Diversity v.*

---

[8] Of these three cases, two—*Gov't Accountability Project v. FDA*, and *100Reporters v. Dep't of Justice*—are FOIA cases, in which protective orders are not an option, *see Stonehill v. IRS*, 558 F.3d 534, 539 (D.C. Cir. 2009) ("Documents released in a FOIA action must be made available to the public as a whole, and, unlike in civil discovery, there is no opportunity to obtain a protective order." (citations omitted)), and so do not present comparable fact patterns. Here, Alfa can seek to modify the protective order or intervene to assert privilege in *specific* documents by requesting that it be able to review for privilege prior to a compelled production. But that is not what Alfa is doing—it is instead seeking to protect the Plaintiffs from their party discovery obligations.

*U.S. Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009) (cleaned up) (quoting *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996)). Alfa's alleged injury would stem from the production of privileged or confidential documents absent an adequate protective order, not from a holding by this Court that Plaintiffs control their documents.

       iii)    No Redressability

Alfa's alleged injury would also not be redressable by Defendants being required to negotiate with Alfa directly over Plaintiffs' documents. Here, on the flip side of the "causation coin" from traceability, *Exhaustless Inc. v. Fed. Aviation Admin.*, 931 F.3d 1209, 1212 (D.C. Cir. 2019) (quoting *Dynalantic Corp. v. Dep't of Def.*, 115 F.3d 1012, 1017 (D.C. Cir. 1997)), Alfa must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision," *id.* (quoting *Lujan*, 504 U.S. at 560–61). But this Court's determination as to Plaintiffs' control of their documents will not address Alfa's privilege and confidentiality concerns. Even if the Court rules in Alfa's favor, and Defendants seek relevant documents directly from Alfa, Alfa would still presumably seek to modify what it calls the "general[ly] inadequa[te]" protective order entered by the Court. *See* Alfa Mem. at 12.[9]

    b.  *Alfa's Alleged Legally Protected Interest Does Not Entitle It to Litigate the Instant Motion to Compel.*

Simply put, Alfa's Motion is a bait-and-switch. It identifies a legally protected interest "in maintaining [its] privilege and preventing disclosure of any confidential or sensitive commercial

---

[9] In a case where a Swiss defendant objected to the protective order's adequacy in light of Swiss law, the Court "allow[ed] the Swiss defendants to file a privacy log detailing exactly what requested information is covered by the Swiss privacy laws. The parties w[ould] then have the opportunity to litigate issues concerning this log if necessary." *In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 2001 WL 1049433, at *9–10 (D.D.C. June 20, 2001). Nothing in Defendants' Motion to Compel or proposed order would bar Alfa from filing a motion to modify this Court's protective order in the same manner.

information," Alfa Mem. at 11, and then seeks to litigate an entirely different question. Even if Alfa's limited intervention at this time is appropriate—which it is not—intervention solely to protect privileged or confidential documents does not give Alfa *carte blanche* to litigate Defendants' Motion to Compel. *See Town of Chester*, 137 S. Ct. at 1650 ("[S]tanding is not dispensed in gross." (quoting *Davis*, 554 U.S. at 734)). Yet that is exactly what Alfa is trying to do.

Aside from declaring its generalized interest in protecting privileged and confidential documents, Alfa's Motion and its Proposed Opposition to Defendants' Motion to Compel make it perfectly clear that Alfa's participation in this case is aimed solely at litigating Defendants' Motion to Compel. Alfa contends that it should be allowed to intervene because it is "the Proper Source of Several Key Arguments," namely that "Defendants' Motion is Premature," that "Plaintiffs Lack the Legal Right or Authority to Obtain [Alfa's] Documents," and that "Plaintiffs Do Not Have the Practical Ability to Obtain the Companies' Documents." Alfa Mem. at 15–17. None of those claims has anything at all to do with Alfa's interest in protecting privileged, confidential, or sensitive documents. In fact, Alfa's "substantive brief" contains just two mentions of privilege, one mention of confidentiality, and no mentions of "sensitive" or "work product," Proposed Opp'n Br. at 16–17 & *passim*, and is wholly devoted to arguing that Plaintiffs do not control Alfa documents, *see id.* at i (listing, in the Table of Contents, its arguments as "The Court Should Deny Defendants' Motion to Compel as Premature," "The Plaintiffs Lack the Legal Right or Authority to Obtain the Companies' Documents," and "Plaintiffs Do Not Have The Practical Ability To Obtain The Companies' Documents").

If Alfa were in fact seeking to intervene solely to protect privileged or confidential documents, its Proposed Opposition Brief would presumably focus on that issue, perhaps by

seeking to modify the protective order or assert privilege over specific documents. Instead, Alfa's proposed intervention is entirely "to litigate the specific issue of whether the Documents are in the possession, custody, or control of Plaintiffs," Alfa Mem. at 10, all while making sure that it is "immune from all forms of party discovery, service of process, claims of liability, and all other obligations of a party," Alfa Mot. at 2. Clearly, Alfa's true interest in this matter is to prevent Plaintiffs from being subjected to party discovery in Plaintiffs' own lawsuit, and to force Defendants to litigate relevance with a third party.

Alfa's proposed intervention at this stage is undercut as well by its stated willingness to produce documents to Defendants (albeit on Alfa's terms as to scope and relevance). *See* Alfa Mem. at 15–16 (claiming that Alfa "also proposed a universe of documents it was willing to produce, offering to produce documents related to the truth or falsity of the allegations in CIR 112 dated within a 'reasonable time period.'"). If Alfa is, at it portrays itself to the Court, so willing to produce documents, then either Alfa possesses documents that are not privileged and not subject to confidentiality issues, or its intention all along was to produce little more than a privilege log. Alfa's asserted interest in confidentiality and privilege must apply only to a limited set of documents, and so litigating the issue of Plaintiffs' control over *all* of their documents at Alfa is inefficient and unnecessary, and does not address Alfa's interest in privilege and confidentiality.

    *c.   Alfa Provides No Support for Its Privilege and Confidentiality Claims.*

Alfa does not set forth a plausible claim of privilege. It makes vague and general assertions, not supported by any affidavits. *See, e.g.*, Alfa Mem. at 3 ("These documents contain privileged, confidential, and sensitive commercial information."); *id.* at 6–7 ("The Documents contain attorney-client communications and other documents protected by the work product doctrine . . . The Documents also contain confidential business information . . . . The Documents also contain

data protected under foreign data protection laws."). Moreover, it claims in its Motion that it has a "universe" of documents it is willing to produce, *id.* at 15, and thus clearly has a set of documents that do not implicate privileges or confidentiality issues. It has not provided any evidence that its privileges and confidentiality concerns are actually implicated here.

Alfa's assertion that "[t]he Documents contain attorney-client communications and other documents protected by the *work product doctrine related to this litigation*," Alfa Mem. at 6–7 (emphasis added), is unclear and unsupported. Alfa represented that Plaintiffs' counsel first approached Alfa's counsel in December 2019 to "request[] that Plaintiffs be given access to company documents," Proposed Opp'n Br. at 3, but Alfa has not identified any period of time prior to December 2019 when it engaged in any privileged communications about "*this litigation*," which commenced on October 3, 2017. Alfa is aware that the parties have "agreed that the default date range for reviewing documents . . . is January 1, 2016 through October 3, 2017," Letter from J. Levy to A. Lewis (Apr. 16, 2020), ECF No. 78-10, at 3, and yet Alfa has not identified any period of time within that date-range when it engaged in privileged communications about "*this litigation.*" In the absence of Alfa, through a declaration, specifying that it created attorney work product or engaged in privileged communications between January 1, 2016, and October 3, 2017, *none* of Alfa's documents responsive to these Requests can be protected as work product for this litigation, because, according to Alfa and the rest of the known record, Plaintiffs did not contact Alfa about this case until December 2019. While it certainly appears as though Plaintiffs and Alfa, through counsel, may have coordinated on Plaintiffs' litigation strategy before they filed this lawsuit, Alfa has not submitted a declaration to that effect.

Again, the cases Alfa relies on underscore the insufficiency of its Motion. In *AT&T*, for example, the documents over which the intervenor claimed privilege were delineated, and it sought

to intervene only after the issue of work product protection had been litigated between the parties. *AT&T*, 642 F.2d at 1287, 1289. As the Circuit explained, "[t]o be protected by means of intervention, the interest must be 'a legal interest as distinguished from interests of a general and indefinite character.'" *Id.* at 1292 (quoting *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 145 (1967) (Stewart, J., dissenting)). The set of documents at issue were clearly defined—and already the subject of privilege review by Special Masters, *id.* at 1289—and intervenor "claim[ed] that the database documents at issue . . . were prepared by or for [intervenor's] attorneys specifically in anticipation of litigation," *id.* at 1298. Such particularity is absent from Alfa's Motion.

### 3.   Denying Alfa's Motion to Intervene Would Not Impair Alfa's Asserted Interest.

Denying Alfa's motion to intervene would not "threaten to impair," *Karsner*, 532 F.3d at 885, Alfa's asserted interest in the confidentiality and privilege of an unknown set of documents, because denying Alfa's Motion to Intervene merely prevents Alfa from filing a redundant brief.

"In determining whether an applicant's interests will be impaired, courts in this Circuit look to the 'practical consequences' that the applicant may suffer if intervention is denied." *Cayuga Nation v. Zinke*, 324 F.R.D. 277, 282 (D.D.C. 2018) (quoting *NRDC v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)). As Alfa explains, the only "practical consequence[]" of denying its motion to intervene is that Alfa "would not be able to oppose Defendants' Motion, which, if successful, would lead to a court order compelling Plaintiffs to produce the Documents, which contain the Companies' privileged, confidential, and sensitive commercial information." Alfa Mem. at 12–13. But, as described *supra* at 2–3, because Plaintiffs and Alfa have the same ultimate objective—a determination that Plaintiffs do not have possession, custody, or control of their Alfa documents—Plaintiffs adequately represent Alfa's interests in the dispute and denying Alfa's

request to file a superfluous brief in this motion does not impair Alfa's alleged interests in its documents. Moreover, a decision adverse to Plaintiffs does not prevent Alfa from seeking to modify the protective order to protect any interest in the confidentiality of documents, nor does it decide any issues of privilege with respect to the underlying documents.

Significantly, Alfa never explains why a determination that Plaintiffs have possession, custody, or control of their Alfa documents forecloses Alfa from protecting confidentiality or asserting possible privileges.[10] As noted above, Alfa's citations to FOIA cases, *see* Alfa Mem. at 13, do not support Alfa's position, because in FOIA matters, when the court holds that documents are not exempt under FOIA, the government is obligated to release the documents to the public at large and a protective order is not an option. *See supra* note 8. In contrast, a decision that Plaintiffs have possession, custody, or control of their Alfa documents would not foreclose Alfa from asserting privileges or confidentiality. For instance, in the only non-FOIA case relied on by Alfa to support its impairment argument, *Philip Morris I*, 2003 WL 25572283, the court's decision on the issue of control did not foreclose the ability of the non-party to claim privilege as to the underlying documents, *see id.*, at *3 (granting, *after* holding that the party controlled the documents of its non-party affiliate and ordered the party to produce *or* log the documents, the non-party affiliate's motion to intervene to assert privilege). The same is true here.

It bears reiterating that Alfa has not sought to intervene to file a motion to modify the protective order to protect its documents or to assert privilege as to specific documents that are the subject of Defendants' Requests for Documents. Alfa has not done so because protection of confidentiality and privilege is not the real reason Alfa seeks to intervene. Instead, Alfa asks to

---

[10] Defendants do not contend that Plaintiffs have exclusive possession, custody, or control of their documents at Alfa, and so granting of Defendants' Motion to Compel would not extinguish Alfa's interest in the documents, merely the exclusivity of that interest.

intervene to make arguments on Plaintiffs' behalf, arguments that are duplicative of those that Plaintiffs have been making. None of the arguments Alfa identifies in its Motion to Intervene as arguments for which Alfa considers itself "the proper source," are arguments that Plaintiffs are somehow precluded from making. In point of fact, Plaintiffs' Opposition to Defendants' Motion to Compel ("Plaintiffs' Opposition"), ECF No. 84, demonstrates that Plaintiffs and Alfa make redundant arguments. Plaintiffs even attempt to circumvent Rule 24 intervention by impermissibly trying to incorporate Alfa's Proposed Opposition Brief and supporting declarations, ECF Nos. 80-1, 80-2 & 80-3, none of which this Court has allowed Alfa to file, *see* Pls.' Opp'n at 4 n.5. Alfa is trying to step into Plaintiffs' shoes for purposes of litigating party discovery disputes while trying to inoculate itself (and Plaintiffs) from the requirements of party discovery under the Federal Rules of Civil Procedure. The Court should reject Alfa's blatant attempt to litigate on behalf of Plaintiffs under the pretense of protecting an interest in potentially confidential or privileged documents.

### 4. Plaintiffs Adequately Represent Alfa's Interests.

Alfa also fails the fourth factor of the Rule 24(a) analysis. "Intervention of right is appropriate only if the current parties to the case are inadequate to represent the interests of the intervenors." *In re Brewer*, 863 F.3d 861, 873 (D.C. Cir. 2017). Thus, "[a]dequacy of representation must be assessed in relation to the specific purpose that intervention will serve." *AT&T*, 642 F.2d at 1293. This Circuit "has squarely held that Rule 24(a) is designed to allow intervention on the ground that the intervening party seeks to make a legal argument not pursued by a named party," *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 109 (D.C. Cir. 2016) (citing *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986)), and that a motion to intervene is properly denied where the proposed intervenor "offer[s] no argument not also pressed by" a party, *Reich*, 40 F.3d at 1282. A "presumption of adequate representation exists

if both the intervenor and existing party have the same ultimate objective." *Cobell v. Jewell*, No. CV 96-01285 (TFH), 2016 WL 10703793, at *2 & n.2 (D.D.C. Mar. 30, 2016) (collecting cases). "An intervenor may rebut this presumption by demonstrating special circumstances that make the representation inadequate, such as 'adversity of interest, collusion, or nonfeasance.'" *Id.* at *2 (quoting *Moosehead Sanitary Dist. v. S. G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979)).

Alfa and Plaintiffs share the exact same objective: Plaintiffs have "maintained . . . that the Documents were in the possession, custody, or control of" Alfa, Alfa Mem. at 14, and Alfa seeks to intervene solely to press that argument, *id.* at 10 (requesting to intervene only "to litigate the specific issue of whether the Documents are in the possession, custody, or control of Plaintiffs"). Alfa's sole argument that its interest may now diverge from Plaintiffs' interest is that "Plaintiffs face a motion to compel and the possibility of repercussions if they continue to assert that the Documents can only be produced by [Alfa]." *Id.* at 14. This speculation, in a brief filed one week *before* Plaintiffs' Opposition to Defendants' Motion to Compel was due, that Plaintiffs will abandon their position and concede Defendants' Motion, does not meet Alfa's burden. *See Aref v. Holder*, 774 F. Supp. 2d 147, 172 (D.D.C. 2011) (explaining that a proposed intervenor "must produce something more than speculation as to the purported inadequacy" (quoting *Moosehead Sanitary*, 610 F.2d at 54)). It has also proven unfounded. *See* Pls.' Opp'n to Defs.' Mot. to Compel, ECF No. 84. As Plaintiffs and Alfa continue to share the same ultimate objective, there is a "presumption" that Plaintiffs adequately represent Alfa. *See Cobell*, 2016 WL 10703793, at *2 & n.2. Alfa has not offered any evidence to rebut that presumption.

Moreover, as Alfa acknowledges, even before Plaintiffs filed their Opposition to the Motion to Compel, the record in this case is that Plaintiffs have pressed at every turn the argument that Plaintiffs do not have possession, custody, or control of their Alfa documents, demonstrating

that Plaintiffs already represent the same interest that Alfa seeks leave to protect. *See, e.g.*, Alfa Mem. at 6 ("Plaintiffs have maintained that the Documents are within the possession, custody, or control of the Companies and that Plaintiffs therefore have no legal right to produce them."). The correspondence between the parties attached to Defendants' Motion to Compel also demonstrates that Plaintiffs have in fact advanced the same positions that Alfa would argue if permitted to intervene: (1) that "Defendants' Motion is Premature," Alfa Mem. at 15; *see* Letter from A. Lewis to J. Levy (June 2, 2020) ("June 2 Letter"), ECF No. 78-17, at 3 ("We again encourage you to take the opportunity to communicate with counsel for Alfa and LetterOne to obtain discovery from the entities you believe necessary for your clients' defense."); (2) that "Plaintiffs Lack the Legal Right or Authority to Obtain the Companies' Documents," Alfa Mem. at 16; *see* June 2 Letter at 3 n.2 ("We explained *months ago* that Plaintiffs do not have possession, custody, or control of Alfa and LetterOne documents (including their corporate email accounts), which are owned and controlled by Alfa and LetterOne, therefore Plaintiffs do not have the authority to produce those documents to another party in litigation without consent of the entities."); and (3) that "Plaintiffs Do Not Have the Practical Ability to Obtain [Alfa's] Documents," Alfa Mem. at 17; *see* Letter from J. Levy to A. Lewis (Apr. 16, 2020), ECF No. 78-10 at 2 ("Plaintiffs' counsel represented that the bulk of Plaintiffs' electronic documents, any and all of their hard copy documents, any and all of their text messages or other communications on messaging apps, and any and all communications written on their behalf by their personal assistants are in the possession, custody, or control of Alfa/LetterOne, and that Plaintiffs, despite significant ownership and involvement with those entities, cannot access those documents."). Plaintiffs' opposition brief to the Motion to Compel repeats those points and, as noted *supra* at 21, impermissibly tries to incorporate Alfa's brief by reference, Pls.' Opp'n at 4 n.5. Plaintiffs have argued the exact same points that Alfa would argue

as an intervenor, *see Reich*, 40 F.3d at 1282 (affirming denial of motion to intervene where applicant "offered no argument not also pressed by the defendant"), and Alfa has therefore failed to demonstrate that it "seeks to make a legal argument not pursued by a named party," *Akiachak*, 827 F.3d at 109 (citing *Dimond*, 792 F.2d at 193).

Finally, Alfa's assertion that it is "better suited" than Plaintiffs to litigate whether Plaintiffs control their documents, Alfa Mem. at 15, is not persuasive and, even if supported, irrelevant. "Although an existing party who is ineffectual, incompetent, or unwilling to raise claims or arguments that would benefit the putative intervenor may qualify as an inadequate representative in some cases, this is not such a case." *Jones*, 348 F.3d at 1019–20. As in *Jones*, "[t]he alleged inadequacies here amount to little more than quibbles over litigation tactics," *id.* at 1020, if that, and are speculative to boot. Alfa cannot meet its adequacy burden by worrying that a party might not litigate the way the intervenor would prefer: a concern that "existing parties' representation may use bad or poor judgment in conducting or settling the cause of action" is "insufficient to demonstrate inadequate representation for the purposes of intervention." *Aref*, 774 F. Supp. 2d at 172 (cleaned up) (citing *id.* at 1019–20). Further, Plaintiffs and Alfa have already shown themselves to have coordinated well during the course of this litigation,[11] with each recapitulating to Defendants' counsel what the other has said, and it strains credulity that Plaintiffs could not obtain guidance or a declaration from Alfa, if necessary, on foreign law, privilege or other concerns about specific documents.

## II.    ALFA IS NOT ENTITLED TO PERMISSIVE INTERVENTION.

Alfa makes a half-hearted attempt to argue for permissive intervention, Alfa Mem. at 18, but its argument fails to address one of the requirements: an independent ground for subject matter

---

[11] Among other things, Alfa's counsel represents several third parties subpoenaed by Defendants.

jurisdiction. Under Federal Rule of Civil Procedure 24(b)(1)(B), on timely motion, the Court "may permit" to intervene anyone who "has a claim or defense that shares with the main action a common question of law or fact." The movant must meet three requirements: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).[12] The court must also determine whether the proposed intervention "will unduly delay or prejudice the adjudication of the rights of the original parties." *Envtl. Def.*, 329 F. Supp. 2d at 66 (quoting Fed. R. Civ. P. 24(b)).

As described above, *supra* at 11–15, Alfa does not have standing—a threshold requirement for subject matter jurisdiction—let alone the requisite amount in controversy to sustain an independent ground for this Court's subject matter jurisdiction. While Alfa claims that injurious consequences could follow a finding that Plaintiffs control their documents, for purposes of Article III standing and subject matter jurisdiction, "[t]he injury must be concrete and particularized, and actual or imminent, as opposed to merely conjectural or hypothetical," *Ineos*, 940 F.3d at 1329 (citing *Lujan*, 504 U.S. at 560), and "'allegations that are really predictions' may be rejected as overly speculative," *id.* (citing *Arpaio*, 797 F.3d at 21). Indeed, Alfa's cursory nod to Rule 24(b)—

---

[12] Alfa seeks to shield documents from disclosure, not gain access to documents, and thus the exception to the requirement of an independent jurisdictional basis for third parties seeking to obtain access to documents protected by a confidentiality order is inapplicable. *See National Children's Center*, 146 F.3d at 1047. Additionally, this Circuit has clarified that "[i]t is . . . circuit law that intervenors must demonstrate Article III standing." *Deutsche Bank*, 717 F.3d at 193 (citing *Fund for Animals*, 322 F.3d at 732–33). Granting permissive intervention to parties without standing could lead to an "intolerable" scenario because those "individual parties have substantial power to direct the flow of litigation and affect settlement negotiation," and the "rule requiring *all* intervenors to demonstrate Article III standing prudently guards against this possibility." *Id.* at 195–96 (Silberman, J., concurring) (emphasis added); *see also Keepseagle v. Vilsack*, 307 F.R.D. 233, 245–46 (D.D.C. 2014) (applying *Deutsche Bank* and holding that "Movants' lack of standing renders them ineligible for permissive intervention").

and its complete failure even to assert independent grounds for subject matter jurisdiction in support of permissive intervention—suggests a recognition that its lack of independent subject matter jurisdiction is fatal to any attempts at permissive intervention under Rule 24(b). *See Cobell*, 2016 WL 10703793, at *2 (denying permissive intervention where movant's asserted interest was too conjectural to satisfy Article III standing); *National Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007) (finding movant's claim that it "could be harmed" by relief requested by a party was "speculative at best," and therefore that movant lacked the subject matter jurisdiction required for intervention under 24(b)).

Furthermore, a key factor in determining whether to grant permissive intervention is "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As explained above, *supra* at 10–11, the addition of another party to this lawsuit to assert duplicative arguments would only compound the burdens on both Defendants and the Court and delay the resolution of a discovery dispute that is central to this case. This, too, weighs against permissive intervention under Rule 24(b). *See Envtl. Def.*, 329 F. Supp. 2d at 66, 69 (noting the text of Rule 24(b) requires a court to determine whether the proposed intervention "will unduly delay or prejudice the adjudication of the rights of the original parties" and denying permissive intervention).

In light of its deficiencies with respect to Article III standing and the absence of subject matter jurisdiction, as well as Alfa's clear intent to provide redundant briefing in an exercise that will unduly delay the adjudication of the discovery dispute at hand, Alfa's motion for permissive intervention under Rule 24(b) should be denied.

III.    IF ALFA'S MOTION IS GRANTED, THE COURT SHOULD PERMIT
        DEFENDANTS TO SEEK PARTY DISCOVERY ON ALFA.

If this Court grants Alfa's motion, Defendants ask the Court to place conditions on Alfa's
participation in this case to preserve judicial resources and avoid an unfair burden on Defendants.

District courts "may impose appropriate conditions or restrictions upon the intervenor's
participation in the action." *Cayuga Nation*, 324 F.R.D. at 283; *see also* Fed. R. Civ. P. 24 Adv.
Comm. Notes (1966 Amendment) ("[I]ntervention of right under the amended rule may be subject
to appropriate conditions or restrictions responsive among other things to the requirements of
efficient conduct of the proceedings."). "[T]he primary limitation on the district court's discretion
is that any conditions imposed should be designed to ensure the fair, efficacious, and prompt
resolution of the litigation." *Cayuga Nation*, 324 F.R.D. at 284.

Specifically, Defendants request that this Court bar Alfa from injecting new claims or
collateral issues into the litigation, *see Brady Campaign to Prevent Gun Violence v. Salazar*, 612
F. Supp. 2d 1, 11 n.8 (D.D.C. 2009) (prohibiting intervenors from raising new claims or collateral
issues); require Alfa to restrict its presentation to this Court to arguments not advanced by
Plaintiffs, s*ee, e.g.*, *Earthworks v. U.S. Dep't of Interior*, No. Civ. A. 09–01972 (HHK), 2010 WL
3063143, at *2 (D.D.C. Aug. 3, 2010) (requiring intervenor to consult with other parties prior to
filing and restricting intervenor's presentation to arguments not advanced by other parties); and
permit Defendants to serve party discovery on Alfa pursuant to the Federal Rules; *see Philip
Morris II*, 566 F.3d at 1146 ("In this circuit . . . an intervenor 'participates on equal footing with
the original parties to a suit.'" (quoting *Reich*, 40 F.3d at 1282)). Specifically as to this last
requirement, given that Alfa seeks to intervene for purposes of litigating a central discovery issue
in this case, and in effect to argue the issue of control on behalf of Plaintiffs, the Court should
require Alfa to submit to the general jurisdiction of this court and permit Defendants to seek

discovery from Alfa under Rules 26, 30, 33, 34 and 36. In that way, Defendants can seek discovery on Alfa as a party, which would eliminate the need for this dispute over Plaintiffs' control of documents.

The Court should impose these restrictions to prevent Alfa from complicating the proceedings and making duplicative presentations.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Alfa's Motion for Leave to Intervene.


Dated:  July 16, 2020

By:      */s/* Joshua A. Levy

Joshua A. Levy (D.C. Bar No. 475108)
Rachel M. Clattenburg (D.C. Bar No. 1018164)
Zachary Blau (D.C. Bar No. 1600714)
LEVY FIRESTONE MUSE LLP
1401 K St. NW, Suite 600
Washington, DC 20005
Tel: (202) 845-3215
Fax: (202) 595-8253
jal@levyfirestone.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 16, 2020, the foregoing Memorandum in Opposition was filed using CM/ECF, which serves a copy on all counsel of record.

<div style="margin-left: 50%;">

_/s/_ Joshua A. Levy                          
Joshua A. Levy

</div>