**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN,<br><br>              Plaintiffs,<br><br>v.<br><br>BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,<br><br>              Defendants. | Civil Action No. 17-2041-RJL |

**REPLY IN SUPPORT OF MOTION BY AO ALFA-BANK, ABH HOLDINGS S.A., LETTERONE HOLDINGS S.A., AND LETTERONE INVESTMENT HOLDINGS S.A. FOR LEAVE TO INTERVENE FOR THE LIMITED PURPOSE OF LITIGATING DEFENDANTS' MOTION TO COMPEL PLAINTIFFS' PRODUCTION OF THE COMPANIES' DOCUMENTS**

The Companies, by and through undersigned counsel, respectfully submit this Reply Memorandum of Law in Support of their Motion for Leave to Intervene (ECF No. 80).[1]

**INTRODUCTION**

Under the facts of this case, the Companies are entitled to intervene as of right pursuant to Rule 24(a)(2) for the limited purpose of litigating Defendants' Motion to Compel, and in the alternative, should be permitted to intervene under Rule 24(b). As explained in their Motion, the Companies have legally protected interests in safeguarding what the Companies contend are documents within their exclusive possession, custody, or control and relatedly, in protecting their privileged, confidential, and sensitive documents. A Court order compelling the individual

---

[1] References to the Companies' Motion for Leave to Intervene (the "Companies' Motion") (ECF No. 80) are set forth as "Companies' Br."; references to Defendants' Opposition to the Companies' Motion (ECF No. 87) are set forth as "Defs.' Opp." Defined terms have the same meanings ascribed to them in the Companies' Motion. Unless otherwise noted, internal quotation marks and citations are omitted, and emphases are added.

plaintiffs to produce Company documents, as Defendants' Motion seeks, will impair those interests by disregarding that the Companies have exclusive possession, custody, and control over their documents. If the Companies are not permitted to intervene at this stage, they will be deprived of a chance to protect their own interests. Plaintiffs, who face the pressure of the Motion to Compel and have an ultimate interest in litigating their defamation claim, may not adequately represent the Companies' interests, which are narrowly focused on preserving the ownership and inappropriate disclosure of their documents and not aligned in every respect with those of the Plaintiffs. Moreover, given their unique knowledge of facts that bear upon the legal questions presented in Defendants' Motion to Compel, considering the Companies' position will advance the purposes of Rule 24 intervention by enabling the Court to reach an efficient, just, and comprehensive resolution.

In response, Defendants insist upon an unduly formalistic and restrictive interpretation of Rule 24, ignoring entirely that the rules governing intervention have been construed liberally and are guided by pragmatic considerations. Defendants' insistence that the Court deny the Companies' Motion at this stage, merely to rehear a subsequent motion to intervene from the Company later on in the litigation, would waste judicial resources by requiring that the issue be decided twice by this Court. Defendants' interpretation of Rule 24 also ignores that compelling Plaintiffs to produce the requested documents will impair the Companies' legally protected interests—which only the Companies are in a position to protect. And Defendants' remarkable request that the Court subject the Companies to full party discovery, particularly when Defendants refused to engage with the Companies concerning their offer to make a reasonable production, flies in the face of the purpose of granting limited intervention, namely, to resolve

the issue before the Court efficiently and fairly. Respectfully, the Court should reject Defendants' arguments.[2]

## ARGUMENT

As the Companies explained in their Motion, under the circumstances presented therein, they are entitled to intervene under Rule 24(a)(2) for the limited purpose of participating in the Motion to Compel briefing, and in the alternative, the Court should permit the Companies to intervene under Rule 24(b).

## I.     The Companies are Entitled to Intervene as a Matter of Right

### A.     The Companies' Motion Satisfies the Requirements of Fed. R. Civ. P. 24(a)(2)

The Companies satisfy all four requirements of Rule 24(a)(2), thus entitling them to intervene as of right for the limited purpose of participating in briefing on Defendants' Motion to Compel. (Companies' Br. at 8–15.) In response, Defendants argue that the Companies lack standing, and seek to evade Rule 24(a)(2)'s practical—and in this case, straightforward—analysis. The crux of Defendants' argument is that the Court should adopt a nonsensical and overly restrictive interpretation of Rule 24(a)(2) that, among other things, would forbid proposed intervenors from intervening until *after* their interests are impaired. This interpretation falls flat in light of the plain language of the rule, the pragmatic nature of the intervention inquiry, and the fact that intervention is intended to provide interested parties an opportunity to air their views so that a court may reach a just resolution *before* making an adverse decision.

---

[2]  Defendants already are unnecessarily taxing this Court's resources with their unfounded conspiracy allegations in particular, and with their Motion to Compel more generally, which could have been avoided had Defendants agreed to negotiate with the Companies regarding the Companies' documents rather than running to the Court to file a premature motion.

3

> *1.    The Companies Need Not Establish Standing, But Even if They Did, They Easily Satisfy Article III's Standing Requirements*

As the Supreme Court recently recognized in *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, Nos. 19-431, 19-454, 2020 WL 3808424 (U.S. July 8, 2020), intervenors as of right need not demonstrate independent Article III standing when they seek the same relief as a party with standing.  *See id.* at *8 n.6 ("An intervenor of right must independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction . . . . [T]he Federal Government clearly had standing . . . and both the Federal Government and the Little Sisters asked the court to dissolve the injunction against the religious exemption. The Third Circuit accordingly erred by inquiring into the Little Sisters' independent Article III standing.").  While their interests are not identical, both the Companies and Plaintiffs seek a denial of Defendants' Motion to Compel, and the Companies do not seek any relief broader than what Plaintiffs seek.  Defendants also do not challenge Plaintiffs' standing.  Accordingly, under binding precedent, the Companies need not demonstrate independent Article III standing.

But even if the Companies were required to establish Article III standing, as the Companies explained in their Motion (at 8 n.4), "generally speaking, when a putative intervenor has a legally protected interest under Rule 24(a), it will also meet the constitutional standing requirements."  (quoting *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 6 (D.D.C. 2018)).  Defendants argue that the Companies lack standing because (i) the Companies' injury is speculative given that they may assert a privilege later on in the litigation once specific documents have been identified (*see* Defs.' Opp. at 12–14); (ii) the Companies will not be injured by a holding that Plaintiffs control their documents (*id.* at 14–15); and (iii) the "Court's

4

determination as to Plaintiffs' control of their documents will not address [the Companies'] privilege and confidentiality concerns" (*id.* at 15).  These arguments miss the mark.

As explained in the Companies' Motion (at 8 n.4, 11–13), and as set forth further below, the Companies have established an injury-in-fact because they face an "imminent" harm to their interest in the exclusive possession, custody, and control of their documents, and their interest in protecting privileged, confidential, and sensitive documents.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The Court has been presented with a Motion to Compel, which if granted would cause the Companies harm in the form of a ruling that someone other than the Companies, e.g., Plaintiffs, have possession, custody, or control of the Companies' documents.  The harm to the Companies from such a ruling is neither "speculative" nor "conjectural" as Defendants assert (at 12).  Finally, the relief the Companies seek, i.e. a denial of the Motion to Compel, would prevent these imminent harms because the exclusive possession, custody, or control of the Companies' documents no longer would be at risk.  *See* 504 U.S. at 561 ("[I]t must be likely . . . that the injury will be redressed by a favorable decision.").  Accordingly, even assuming the Companies must establish Article III standing, they easily meet the requirements to do so.[3]

    2.    *The Companies' Motion is Timely*

The Companies' Motion is timely in light of the circumstances of the case.  (Companies' Br. at 9–10.)  The Companies' limited intervention to participate in the Motion to Compel briefing will neither disrupt the litigation nor disadvantage the parties, and the Companies filed

---

[3] Defendants' assertion that the Documents must be identified for the Companies to establish standing (*see* Defs.' Opp. at 13) should be rejected.  Indeed, Defendants themselves have prevented any particular documents from being identified because they have refused to confer with the Companies concerning their offer to search for and produce documents.

their Motion soon after their interests diverged from Plaintiffs'.  (*Id.*)  Defendants' arguments to the contrary should be rejected.

Defendants assert primarily that the Companies must wait until *after* the Court rules on the Motion to Compel before the Companies can intervene to litigate the issue whether the documents are in Plaintiffs possession, custody, or control.  (Defs.' Opp. at 8–9.)  This is exactly backward.  If the Court grants the Motion to Compel, at that point, the Companies will have been deprived of the opportunity to argue the threshold question whether the documents at issue are in ***the Companies' exclusive*** possession, custody, or control.  Defendants' Motion to Compel implicates this very issue by asserting the Documents are in ***the Plaintiffs'*** possession, custody, or control.  "It would indeed be a questionable rule that would require prospective intervenors to wait on the sidelines until after a court has already decided enough issues contrary to their interests," when "[t]he very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions."  *Brumfield v. Dodd*, 749 F.3d 339, 344–45 (5th Cir. 2014).  Defendants' proposed rule not only is void of logic, but ignores that "the inquiry required under Rule 24(a)(2) is a flexible one,"  6 James W. Moore et al, Moore's Federal Practice [hereinafter "Moore's Federal Practice"] § 24.03(1)(b), and that timeliness is "to be judged in consideration of all the circumstances," *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014).  Accordingly, Defendants' overly formalistic interpretation of the intervention standard should be rejected.

Defendants also argue that the Companies did not file their Motion soon after the Companies' and Plaintiffs' interests diverged because their interests are identical.  However, as explained further, *infra* Section I.A.5, and in the Companies' Motion (*e.g.*, at 10), the Companies' and Plaintiffs' interests diverged when Defendants filed their Motion to Compel

6

because the Companies' interests include protecting the ownership, privilege, confidentiality, and sensitivity of their documents, while Plaintiffs, who may be ordered to produce documents that the Companies maintain are in their exclusive possession, custody, or control, have an interest that lies more broadly in pursuing their defamation action.  Moreover, the Companies were only compelled to file their Motion once Defendants filed their premature Motion to Compel after rebuffing the Companies' repeated offers, through counsel, to work constructively with Defendants to collect and produce responsive documents.  (*See, e.g.*, Companies' Br. at 7–8.)  At that point, the Companies recognized their interests might diverge and could be impaired.[4]

In a last ditch effort to argue that the Companies' Motion is untimely, Defendants recycle their unfounded and speculative assertion that the Companies and Plaintiffs are conspiring to delay the litigation and prevent party discovery.  (Defs.' Opp. at 10–11.)  As an initial matter, it is troubling that Defendants are willing to submit such pejorative and unfounded allegations of "conspiracy" to the Court, especially when based purely upon conjecture.  Defendants appear willing to engage in such mudslinging in a desperate effort to distract the Court from the task at hand—analyzing the Companies' Motion in a liberal, pragmatic manner so as to ensure that the Court resolves the issues efficiently and fairly.  Defendants' suggestion that there is something nefarious about the Companies not being plaintiffs to the defamation action—and that they should be faulted for the same—is also based on pure speculation and should be cast aside.  The Companies, as non-parties, are not subject to party discovery and legitimately may invoke the protections afforded to non-parties to a litigation.  Defendants also fail to explain how the

---

[4] For all the above reasons, Defendants' attempt to distinguish *Smoke v. Norton*, 252 F.3d 468 (D.C. Cir. 2001), *United States v. Philip Morris USA Inc.*, No. Civ.A.99-2496(GK), 2003 WL 25572283 (D.D.C. Dec. 5, 2003), and *United States v. AT&T*, 642 F.2d 1285 (D.C. Cir. 1980), on the ground that "they involve both a ruling adverse to the third party and a party that stopped defending the third party's interests" (Defs.' Opp. at 9) falls flat.

Companies' intervention would cause any delay, particularly when the Companies already have submitted a proposed Opposition Brief (ECF No. 80-3), and have not sought to extend the briefing schedule, much less sought "a protracted schedule to hear arguments," (Defs.' Opp. at 11). Moreover, to the extent Defendants have adjudged the Companies' and Plaintiffs' arguments to be "redundant," (*id.*), Defendants fail to explain how this would prejudice them, as they need only respond to so-called "redundant" arguments once.

### 3. *The Companies Have a Legally Protected Interest*

The Companies have a legally protected interest in weighing in on a determination about who has possession, custody, or control over—and therefore the authority to produce in discovery—documents the Companies contend ***exclusively*** are in ***their*** possession, custody, or control. Indeed, the D.C. Circuit has long recognized the fundamental proposition that an intervenor who asserts ownership over, or a claim to, property at issue in a case sufficiently demonstrates an interest under Rule 24(a). *See, e.g.*, *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit."); *see also Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell*, 260 F.R.D. 1, 4 (D.D.C. 2009) (granting motion to intervene because the intervenor "allege[d] ownership to the trademark at issue in this case, and so it claim[ed] an interest relating to the property which is the subject of this action"). As explained in the Companies' Motion, their interest in exclusive possession, custody, or control of the Documents also enables the Companies to safeguard their interest in their privileged, confidential, or other sensitive documents. (*See, e.g.*, Companies' Br. at 3 ("Defendants are seeking to compel Plaintiffs to produce documents that are the property of the Companies. These documents contain privileged, confidential, and sensitive commercial information that the Companies have a right to protect."); *id.* at 6 ("The Companies have a strong interest in maintaining their control

over the Documents, including any possible production of privileged, confidential, or sensitive commercial information."); *see also id.* at 11–12.)

Defendants do not contest that protecting privileged, confidential, and sensitive material constitutes a protectable interest, nor do they seriously dispute that a company's interest in the possession, custody, and control over its documents is legally protectable. Instead, they rehash their baseless, impractical, and over-formulaic contentions that the Motion is premature and that the Companies are conspiring with Plaintiffs. (Defs.' Opp. at 11–19.) These arguments are not only meritless, but fail to overcome the conclusion that the Companies seek to safeguard legally protectable interests through their Motion to Intervene. Given that "the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967), the Court should recognize the Companies' legally protected interest in documents over which they assert exclusive ownership.[5]

### 4. *Defendants' Motion Threatens to Impair the Companies' Interests*

To compel Plaintiffs to produce Company documents would directly impair the Companies' interests by preventing the Companies from maintaining control over documents in their *exclusive* control and would risk the disclosure of privileged, confidential, and sensitive company documents. (Companies' Br. at 12–13.) Defendants concede the point by stating that

---

[5] Defendants also contend that the Companies must provide evidence supporting their privilege and work product claims. (Defs.' Opp. at 17–19.) However, the Companies need not produce such evidence at the motion to intervene stage. *See AT&T*, 642 F.2d at 1292 ("In the present case . . . MCI has asserted a claim of privilege which is plausible on its face and must be accepted by us for purposes of determining the intervention issue."). Nor could the Companies provide such information about specific documents, or "clearly define[ ]" (Defs.' Opp. at 19) a set of privileged documents at issue at this juncture in light of Defendants' repeated refusal to engage in the Companies' good faith offer to negotiate and search for and produce documents (*see* Companies' Br. at 3, 7, 14).

granting their Motion to Compel would "extinguish . . . the exclusivity of" the Companies' interest in the Documents.  (Defs.' Opp. at 20 n.10.)

Yet Defendants also parrot their earlier claim that the Companies must wait until after the Motion to Compel is decided to assert any interests in privileged or confidential material.  (*E.g.*, *id.* at 20.)  As explained above, *supra* Section I.A.2, Defendants misunderstand that "the practical impairment test is flexible, and its application depends on a pragmatic analysis of the circumstances of a given case."  Moore's Federal Practice § 24.03(3)(a); *see* Fed. R. Civ. P. 24(a)(2) (asking whether the intervenor "is so situated that disposing of the action *may as a practical matter* impair or impede the movant's ability to protect its interest").  If the Court were to deny the Companies' Motion and grant Defendants' Motion to Compel, the "practical consequence[ ]" would be that the Companies' interest in the exclusive possession, custody, or control of their documents, and the attendant interest in protecting the privilege, confidentiality, and sensitivity of those documents, would be impaired.  *100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 278 (D.D.C. 2014); *see* Companies' Br. at 6–7, 12–13; *see also Brumfield*, 749 F.3d at 344–45 (Intervenors "do not need to establish that their interests *will* be impaired.  Rather, they must demonstrate only that the disposition of the action may impair or impede their ability to protect their interests . . . . It would indeed be a questionable rule that would require prospective intervenors to wait on the sidelines until after a court has already decided enough issues contrary to their interests." (footnote omitted)).  The loss of exclusive control over their documents, and the "public release" and disclosure of any privileged, confidential, or sensitive material, would be "irreversible."  *100Reporters LLC*, 307 F.R.D. at 279.  (*See* Companies' Br. at 4 n.1, 12 n.5.)

### 5. *No Party Adequately Represents the Companies' Interests*

As explained in their Brief (at 13–15), the Companies need only show "that representation of [their] interest[s] *may be* inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10. The Companies readily meet this standard. As international corporate entities and non-parties seeking limited intervention only to participate in briefing on the Motion to Compel, the Companies plainly have interests that are not identical to those of Plaintiffs, who are individuals facing a Motion to Compel and whose ultimate objective is litigating their defamation claim.[6]

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014), illustrates these points. In *Brumfield*, the court noted that although a party to the litigation and the proposed intervenors "both . . . vigorously oppose[d] dismantling the voucher program" at issue, "their interests may not align precisely," in part because the party had broader interests than the proposed intervenors. *Id.* at 345–46. Likewise, here, while Plaintiffs and the Companies both oppose Defendants' Motion to Compel, Plaintiffs have a broader interest in pursuing their defamation claim more generally, whereas the Companies seek only to protect their company documents. One may not be able to "say for sure that [Plaintiffs'] more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires." *Id.* at 346; *see also 100Reporters LLC*, 307 F.R.C. at 281 (concluding, in FOIA case, that intervenor Siemens was "in a unique position to articulate the need to withhold *its own* confidential materials").

The Court in *Brumfield* also observed that in a previous case, the Court "rejected th[e] claim" that a party "adequately represented [the intervenors'] interest" on the ground that "the

---

[6] Because the Companies and Plaintiffs do not have the same ultimate objective (*see* Defs.' Opp. at 21–22), any supposed presumption that Plaintiffs adequately represent the Companies' interests does not apply. *See Brumfield*, 749 F.3d at 346.

11

interests were essentially identical," because the party faced compliance with an injunction, and "in complying with the injunction . . . would be acting contrary to the interests of the [intervenors]." *Id.* at 345. Similarly, here, any order requiring Plaintiffs to produce the Documents at issue in the Motion to Compel would force Plaintiffs to act contrary to the Companies' interests. Accordingly, the Companies have shown that Plaintiffs may not represent the Companies' interests adequately.[7]

### B. Intervention is Appropriate Because the Companies are the Proper Source of Several Key Arguments

Defendants do not seriously dispute that the Companies are better positioned to make arguments concerning the control of their documents, or to explain their own corporate structures. (*See* Companies' Br. at 15.) And even assuming arguendo that Plaintiffs could "obtain guidance or a declaration from [the Companies]," (Defs.' Opp. at 24), by incorporating

---

[7] Defendants assert that Plaintiffs adequately represent the Companies' interests because the Companies press the same legal arguments as Plaintiffs. (Defs.' Opp. at 21–22.) However, the Companies offer information and arguments unique to their own interests. (*E.g.*, Companies' Br. at 15–17.) And the cases upon which Defendants rely (at 21) are inapposite. In those cases, purely legal questions were presented. *See Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 103, 108-09 (D.C. Cir. 2016) (issues involved whether regulation violated the Indian Reorganization Act, U.S. Constitution, and Administrative Procedure Act, and party and proposed intervenor both offered different statutory interpretations); *Dimond v. District of Columbia*, 792 F.2d 179, 181, 193 (D.C. Cir. 1986) (involving constitutional challenges to D.C. code provisions and explaining that proposed intervenors' concerns involved questions of statutory interpretation); *Bldg. & Construction Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1279 (D.C. Cir. 1994) (addressing questions of statutory and regulatory interpretation). In comparison, here, facts related to the Companies' structures and internal policies, as analyzed in the declarations of Luxembourg and Russian counsel, bear upon the question whether the Documents are in Plaintiffs' possession, custody, or control. And the Companies advance not only legal arguments unique to the Companies' interests, but offer information that the Companies, rather than Plaintiffs, are properly positioned to present to the Court. (*See* Companies' Br. at 15–17.) Moreover, the court's statement in *Akiachak* that "Rule 24(a) is designed to allow intervention on the ground that the intervening party seeks to make a legal argument not pursued by a named party," 827 F.3d at 109, is dicta given the court already had held that it lacked jurisdiction to review the appeal, *id.* at 102.

*(cont'd)*

various materials from the Companies' proposed Opposition filings into their own Opposition, Plaintiffs appropriately deferred to the Companies' expertise and prerogative to represent their own interests. Furthermore, the Companies' Motion is not premised on a "quibble[ ] over litigation tactics" as Defendants argue. (*Id.*) Instead, as explained above, *supra* Section I.A.3, the Companies seek to represent their interests in control and ownership over their documents and in protecting their privileged, confidential, and sensitive materials.[8]

### C.   Limited Intervention is Appropriate

As Defendants' recognize, the Companies seek to intervene only for the limited purpose of litigating Defendants' Motion to Compel. (*See* Defs.' Opp. at 14.) In a final, desperate attempt to undermine the pragmatic purposes served by limited intervention, Defendants ask that the Court condition the Companies' intervention on (i) subjecting the Companies to a panoply of discovery rules applicable to parties (Defs.' Opp. at 27–28 (requesting that the Court permit Defendants to "seek discovery on Alfa as a party" by subjecting the Companies to discovery "under Rules 26, 30, 33, 34 and 36")); (ii) "restrict[ing the Companies'] presentation to this Court to arguments not advanced by Plaintiffs" (*id.* at 27); and (iii) "bar[ring the Companies] from injecting new claims or collateral issues into the litigation" (*id.*).

First, Defendants cite no authority supporting the notion that the Court should subject a proposed intervenor to party discovery when the intervenor seeks only to participate in a limited aspect of the litigation, such as a motion to compel in this case. Instead, they selectively quote

---

[8]   *Jones v. Prince George's County, Md.*, 348 F.3d 1014 (D.C. Cir. 2003) is inapposite. (*See* Defs.' Opp. at 24.) In that case, the plaintiff "act[ed] as [the proposed intervenor]'s surrogate in [a] pending wrongful death action," and the proposed intervenor claimed that the plaintiff "ha[d] made a series of strategic blunders that demonstrate[d] her inadequate representation." 348 F.3d at 1019. Here, Plaintiffs plainly are not acting as the Companies' surrogates in this lawsuit. Nor do the Companies lodge any grievances with Plaintiffs' litigation strategy. Instead, the Companies seek to intervene to safeguard their own legally protected interests.

*United States v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009) for the proposition that intervenors "participate[ ] on equal footing with the original parties to a suit." (Defs.' Opp. at 27.) What the court in that case stated in full was that "[i]n this circuit, *because* an intervenor participates on equal footing with the original parties to a suit, *a prospective intervenor must satisfy Article III standing requirements*.'" *Philip Morris*, 566 F.3d at 1146. Here, the Companies are not seeking to participate in this case on equal footing as parties, but merely in connection with a limited issue. As explained above, *supra* Section I.A.1, even if the Companies were required independently to demonstrate Article III standing, they satisfy each of the standing requirements.[9]

Second, the cases Defendants cite in support of their request that the Court limit the Companies' arguments are inapposite, because they involve numerous parties and potential intervenors. *See Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 6, 10-11 (D.D.C. 2009) (noting four plaintiffs brought suit against "numerous other governmental entities and officials," with two movants seeking leave to intervene, and two others seeking leave to participate as *amicus curiae*); *Earthworks v. U.S. Dep't of Interior*, No. 09-01972 (HHK), 2010 WL 3063143, at *2 (D.D.C. Aug. 3, 2010) (adding six intervenors to the existing five plaintiffs and four federal defendants). Here, however, the number of parties is limited, the Companies are the only proposed intervenors, and the Companies have submitted one joint Opposition to the Motion to Compel. The briefing on the Motion to Compel can be completed in a streamlined fashion, given that the Companies already have filed their proposed brief. And as described *supra*

---

[9] Furthermore, Defendants seem impermissibly to pick and choose when to treat the Companies as non-parties to this litigation. Defendants seek to treat the Companies as parties for purposes of arguing that Defendants should have unfettered access to company documents, but make an about face when asserting that because of the Companies' non-party status, Defendants need not meet and confer with the Companies concerning document production. (*See* Companies' Br. at 14.) The Court should not sanction this manipulation of the discovery process.

Sections at I.A.2 and I.A.3, the Companies' participation in the Motion to Compel briefing would expedite a just and efficient resolution due to their foreign law expertise and possession of information regarding their own documents and corporate structure. (*See also* Companies' Br. at 15–17.)  Therefore, the restrictions proposed by Defendants are not only unnecessary, but would limit the beneficial views the Companies are able to offer in this discovery dispute, thereby subverting the purpose of limited intervention.[10]

Finally, while Defendants ask the Court to bar the Companies from asserting claims or other collateral issues, the Companies consistently have maintained they seek only to intervene for the limited purpose of litigating the Motion to Compel.  (*See generally* Companies' Br.)[11]

## II. In the Alternative, the Court Should Permit the Companies to Intervene Under Rule 24(b)

Defendants do not contest that the Companies present "a question of law or fact in common with the main action." (*See* Defs.' Opp. at 24–26.)  Instead, Defendants contend that the Court should not permit the Companies to intervene in the alternative because (i) the Companies lack standing; (ii) there is no subject matter jurisdiction; and (iii) permitting the Companies to intervene will cause undue delay and prejudice.  (*Id.*)  These arguments lack merit for a number of reasons.

---

[10] Remarkably, on the one hand Defendants complain that the Companies' limited intervention will cause undue delay and prejudice (*see, e.g.*, Defs.' Opp. at 3, 13–15), while on the other hand they request permission to engage in expansive discovery against the non-party Companies.  Inappropriately dragging the Companies into the litigation as parties and further expanding the scope of discovery and any associated disputes would almost undoubtedly prolong the litigation and the discovery process.

[11] It is also striking that Defendants claim that the Companies' Motion is premature, and in the same breath ask the Court to limit the potential claims and collateral issues the Companies may assert, even though the Companies have expressed no intention of doing so.

15

First, as acknowledged in several of the cases Defendants themselves rely upon, it is an open question "whether standing is necessary for permissive intervention." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 92 n.1 (D.D.C. 2007); *see Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 66 (D.D.C. 2004); *see also United States v. Facebook, Inc.*, No. 19-2184 (TJK), 2020 WL 1978802, at *1 n.2 (D.D.C. Apr. 23, 2020) ("The D.C. Circuit has not determined whether a nonparty seeking to permissively intervene must possess an independent basis for standing."). And in any event, as explained above, *supra* Section I.A.1, were Article III standing required, the Companies meet the applicable standard. [12]

Second, Defendants' reliance on *EEOC v. National Children's Center, Inc.*, 146 F.3d 1042 (D.C. Cir. 1998), is misplaced. (*See* Defs.' Opp. at 24–26.) Like the non-party intervenor in that case, the Companies do not seek a ruling on the merits of a substantive cause of action. *See id.* at 1046–47. Therefore, like the non-party intervenor in *EEOC*, the Companies need not establish independent grounds for subject matter jurisdiction in order to intervene for the limited purpose of litigating the Motion to Compel.

Finally, Defendants' argument that the Companies' limited participation will create "redundant briefing" and "unduly delay the adjudication of the discovery dispute at hand," (*see* Defs.' Opp. at 26) is disingenuous at best. Defendants repeatedly have refused to engage with the Companies in their offer to meet and confer in an effort to provide Defendants the documents they claim they need. (*See, e.g.*, Companies' Br. at 2–3, 7; Ex. 29 to Defs.' Mot. to Compel, ECF No. 78-32; Ex. 30 to Defs.' Mot. to Compel, ECF No. 78-33.) And if the Court permitted

---

[12] Defendants' reliance on *Deutsche Bank National Trust Co. v. FDIC*, 717 F.3d 189 (D.C. Cir. 2013), and *Fund For Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003), is also misplaced. (*See* Defs.' Opp. at 5 n.12). These cases address the standard for intervention as a matter of right under Rule 24(a), not permissive intervention under Rule 24(b).

16

the Companies to intervene only *after* the Court ruled on the Motion to Compel, as Defendants insist, the Court would be denied the benefit of the Companies' expertise regarding foreign law and its own documents and corporate structure. Again, such a formalistic approach is inconsistent with the spirit of the intervention standard. Moreover, this would only *extend* the discovery dispute by requiring the Court to adjudicate issues piecemeal. Simply put, Defendants' claims of undue delay ring hollow when it is their own actions—rather than the Companies'—that have caused and would continue to cause any delay.[13]

---

[13] Recognizing the court's guidance in the context of permissive intervention that "[t]he proper approach . . . is to allow all interested parties to present their arguments in a single case at the same time," *100Reporters LLC*, 307 F.R.D. at 286, the Companies attached their proposed substantive Opposition to Defendants' Motion to Compel along with their Motion to Intervene precisely to further the interests of judicial economy and avoid an extended briefing schedule (*see* Companies' Br. at 5). Further, in circumstances such as these in which the intervenor does not seek to add new claims that would require additional discovery, this Court has recognized that "the risks of delay and prejudice are minimal." *Butte Cty. v. Hogen*, No. 08-519(HHK)(AK), 2008 WL 2410407, at *3 (D.D.C. June 16, 2008).

*(cont'd)*

## **CONCLUSION**

For the forgoing reasons, and all those set forth in the Companies' Motion, the Court should grant the Companies' Motion for Leave to Intervene.[14]

Dated:  July 23, 2020

Respectfully submitted,

/s/ Margaret E. Krawiec
Margaret E. Krawiec (DC Bar No. 490066)
Michael A. McIntosh (DC Bar No. 1012439)
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
1440 New York Avenue, NW
Washington, DC 20005
T: (202) 371-7303
F: (202) 661-9123
margaret.krawiec@skadden.com
michael.mcintosh@skadden.com

*Attorneys for LetterOne, Alfa Bank, and ABHH*

---

[14] The Companies maintain that under the circumstances, they are entitled to intervention as of right and in the alternative, they should be afforded permissive intervention.  However, if the Court disagrees, it would be appropriate for the Court to consider the Companies' submissions as the views of *amici curiae*.  *See, e.g.*, *Colo. River Cutthroat Trout v. Salazar*, No. 09-2233 (PLF), 2010 WL 11575619, at *3 (D.D.C. May 17, 2010) (permitting proposed intervenor to file as amici curiae); *Nat'. Ass'n of Home Builders*, 519 F. Supp. 2d at 93 (same).

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Motion for Leave to Amend the Complaint was filed electronically with the Clerk of the Court on July 23, 2020, using the CM/EMF system, which will send notification of such filing to all counsel of record.

/s/ Margaret E. Krawiec
Margaret E. Krawiec
