# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MIKHAIL FRIDMAN, PETR AVEN, AND GERMAN KHAN,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,**<br><br>**Defendants.** | **Civil Action No. 17-2041-RJL** |

**INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFFS' PRODUCTION OF THEIR DOCUMENTS**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ......................................................................................................................2

I.      The Companies' Corporate Structures.....................................................................2

        A.      LetterOne ..........................................................................................................2

        B.      Alfa ...................................................................................................................2

II.     The Companies' Proactive Outreach to Defendants ...............................................2

        A.      The Companies' Denial of Plaintiffs' Requests for Documents............................3

        B.      The Companies' Repeated Offers to Produce Responsive Documents to
                Defendants ........................................................................................................5

ARGUMENT ..........................................................................................................................7

I.      The Court Should Deny Defendants' Motion to Compel as Premature. ..............................7

II.     The Plaintiffs Lack the Legal Right or Authority to Obtain the Companies'
        Documents .................................................................................................................14

        A.      Plaintiffs Lack the Legal Right or Authority to Obtain Alfa Bank's
                Documents ......................................................................................................15

        B.      Plaintiffs Lack the Legal Right or Authority to Obtain LetterOne's
                Documents ......................................................................................................17

III.    Plaintiffs Do Not Have The Practical Ability To Obtain The Companies'
        Documents ..................................................................................................................19

        A.      Plaintiffs' Leadership Positions and Ownership Interests Do Not Give
                Them Control of the Documents.......................................................................21

                1.      Plaintiffs Do Not Have Control Over the Companies' Documents
                        Simply Because They Are Officers, Directors, and Founders..................21

                2.      Plaintiffs' Interests in the Companies Do Not Give Plaintiffs
                        Access to Company Documents ..............................................................24

        B.      Plaintiffs Do Not Have Influence Over Other Corporate Officers and
                Board Members................................................................................................27

C.     Defendants Mischaracterize the Companies' "Stake" in This Litigation ..............30

D.     Plaintiffs Are Not Holding Themselves Out as Controlling the Companies
       and Shielding Documents ........................................................................................31

E.     Defendants Fail to Establish Close Coordination Between the Companies
       and Plaintiffs ..........................................................................................................33

F.     Plaintiffs' Use of Email Does Not Give Them the Practical Ability to
       Obtain All Documents from the Companies............................................................34

G.     Plaintiffs Have Made a Good Faith Effort to Obtain Documents.........................36

CONCLUSION ....................................................................................................................37

# TABLE OF AUTHORITIES

## CASES

*Afros S.P.A. v. Krauss-Maffei Corp.*,
    113 F.R.D. 127 (D. Del. 1986) ......................................................................31

*Annunziato v. Collecto, Inc.*,
    304 F.R.D. 360 (E.D.N.Y. 2015) .............................................................28, 35

*Appleton Papers, Inc. v. George A. Whiting Paper Co.*,
    No. 08-C-16, 2009 WL 2408898 (E.D. Wis. July 31, 2009) ......................32, 33

*In re Application of Bloomfield Investment Resources Corp.*,
    315 F.R.D. 165 (S.D.N.Y. 2016) ..............................................................24, 34

*Bush v. Ruth's Chris Steak House, Inc.*,
    286 F.R.D. 1 (D.D.C. 2012)..........................................................................20

*Chevron Corp. v. Donziger*,
    296 F.R.D. 168 (S.D.N.Y. 2013) ..................................................................32

*Chevron Corp. v. Salazar*,
    275 F.R.D. 437 (S.D.N.Y. 2011) ..................................................................35

*City of Harper Woods Employees' Retirement System v. Olver*,
    589 F.3d 1292 (D.C. Cir. 2009) ...................................................................14

*Cohen v. Horowitz*,
    No. 07 Civ. 5834 (PKC), 2008 WL 2332338 (S.D.N.Y. June 4, 2008) ....................10, 20

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Philips Petroleum Co.*,
    105 F.R.D. 16 (S.D.N.Y. 1984) ....................................................................31

*Cooper Industries, Inc. v. British Aerospace, Inc.*,
    102 F.R.D. 918 (S.D.N.Y. 1984) ..................................................................35

*Edgar v. MITE Corp.*,
    457 U.S. 624 (1982)....................................................................................14

*In re Flag Holdings, Ltd. Securities Litigation*,
    236 F.R.D. 177 (S.D.N.Y. 2006) .............................................................34, 35

*Gross v. Lunduski*,
    304 F.R.D. 136 (W.D.N.Y. 2014)...................................................................30

*In re Kidd*,
    No. 3:20-MC-00016-TOF, 2020 WL 2404928 (D. Conn. May 12, 2020)........................23

*Kifle v. Parks & History Ass'n*,
No. Civ. A., 98-00048 (CKK), 1998 WL 1109117 (D.D.C. Oct. 15, 1998) ...................11

*McKesson v. Islamic Republic of Iran*,
185 F.R.D. 70 (D.D.C. 1999) ...........................................................................................33

*Mindspirit, LLC v. Evalueserve Ltd.*,
346 F. Supp. 3d 552 (S.D.N.Y. 2018) ..............................................................................14

*New York ex rel. Boardman v. National Railroad Passenger Corp.*,
233 F.R.D. 259 (N.D.N.Y. 2006) .....................................................................................32

*Norex Petroleum Ltd. v. Chubb Insurance Co. of Can.*,
384 F. Supp. 2d 45 (D.D.C. 2005) .......................................................................19, 22, 24

*Royal Park Investment SA/NV v. Deutsche Bank National Trust Co.*,
314 F.R.D. 341 (S.D.N.Y. 2016) .....................................................................................11

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
490 F.3d 130 (2d Cir. 2007) ..................................................................................14, 21, 25

*Shcherbakovskiy v. Seitz*,
No. 03 CV 1220 RPP, 2010 WL 3155169 (S.D.N.Y. July 30, 2010), *aff'd*, 450 F.
App'x 87 (2d Cir. 2011) .......................................................................................25, 28, 29

*Tavoulareas v. Piro*,
93 F.R.D. 11 (D.D.C. 1981) .............................................................................................36

*Tomlinson v. El Paso Corp.*,
245 F.R.D. 474 (D. Colo. 2007) ......................................................................................28

*U.S. International Trade Commission v. ASAT, Inc.*,
411 F.3d 245 (D.C. Cir. 2005) ..............................................................................20, 25, 30

*U.S. Philips Corp. v. Synergy Dynamics International, LLC*,
No. 2:05-cv-00577-PWP-GWF, 2007 WL 9734384 (D. Nev. July 9, 2007) ...................23

*United States v. Funds Held in the Name or for the Benefit of Wetterer*,
210 F.3d 96 (2d Cir. 2000) ...............................................................................................14

*In re Vivendi Universal, S.A. Securities Litigation*,
No. 02 Civ. 5571 (RJH) (HBP), 2009 WL 8588405 (S.D.N.Y. July 10, 2009) .........14, 15

*Weaver v. Gross*,
107 F.R.D. 715 (D.D.C. 1985) .........................................................................................22

## RULES

Federal Rule of Civil Procedure 34 ...........................................................................14, 19, 21

iv

## OTHER AUTHORITIES

7 Moore's Federal Practice § 34.14(2)(b) (2004) ........................................................................19

U.S. Department of State—Bureau of Consular Affairs, Russian Federation,
    https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-
    Information/RussianFederation.html ................................................................................7

Wright & Miller, Fed. Prac. & Proc. § 2210...........................................................................19

## PRELIMINARY STATEMENT

Forsaking good-faith cooperation for adversarial litigation, Defendants seek to burden this Court with unnecessary motions practice.  Taken at face value, the crux of Defendants' motion to compel is that they are unable to obtain potentially relevant documents from AO Alfa-Bank ("Alfa Bank") and LetterOne (collectively, the "Companies"), and that this Court's intervention is necessary to ensure that Defendants are not prejudiced going forward.  But the record belies Defendants' tale and defeats the cornerstone of their motion.  The Companies, in fact, proactively reached out to Defendants on multiple occasions to negotiate the production of potentially relevant documents.  As a concrete and significant sign of good faith, the Companies even offered to produce relevant documents in the absence of formal process and without forcing Defendants to invoke the unwieldy procedures for obtaining foreign documents in the normal course.  Defendants stonewalled these overtures and substantial accommodations, refusing to engage even in preliminary discussions with the Companies to determine whether a mutually agreeable resolution was possible.

Defendants' stubborn refusal to engage with the Companies dooms their motion.  Had Defendants participated in a good-faith dialogue with the Companies, this motion might well have been mooted.  At the very least, such discussions likely would have narrowed the issues in dispute and reduced the litigation burdens on the parties and this Court.  Because Defendants blocked all efforts at cooperation, their claims of prejudice are insufficient and speculative and should be rejected.  And no amount of mudslinging and conjecture from Defendants about the Companies' purported hidden motives can distract from the blatant prematurity of this motion.  Accordingly, the Court should deny the motion as premature and order Defendants to negotiate in good faith with the Companies in an effort to resolve all outstanding issues without resort to burdensome motions practice.

Even if the Court proceeds to consider the merits of Defendants' motion, it should rule that the Companies' documents are not within the possession, custody, or control of Plaintiffs. Plaintiffs lack the legal authority to obtain the documents that Defendants seek under the relevant foreign law.  As foreign local counsel from Russia and Luxembourg explain, neither Plaintiffs' interests relating to Alfa Bank and LetterOne nor their positions of authority within Alfa Bank and LetterOne grant them any legal rights to obtain the requested documents.  Further, it is Defendants' burden to establish that Plaintiffs have the practical ability to obtain the documents from the Companies, and Defendants fail to satisfy that burden, particularly in light of the obstacles to production detailed in the reports of foreign local counsel and Defendants' refusal to engage with the Companies.

## BACKGROUND

### I. THE COMPANIES' CORPORATE STRUCTURES

#### A. LetterOne

LetterOne is comprised of LetterOne Investment Holdings S.A. and LetterOne Holdings S.A. The LetterOne entities are formed under Luxembourgian law, with headquarters in Luxembourg and offices in England and Gibraltar.

#### B. Alfa

AO Alfa-Bank ("Alfa Bank") is a joint stock company formed under Russian law with its headquarters in Russia.  Alfa Bank is part of a larger group of entities informally referred to as the Alfa Group ("Alfa").  ABH Holdings S.A. ("ABHH"), a Luxembourg company formed under Luxembourg law, serves as Alfa Bank's indirect parent company.

### II. THE COMPANIES' PROACTIVE OUTREACH TO DEFENDANTS

The record makes two points perfectly clear.  *First*, the Companies expressly rejected Plaintiffs' requests for Company documents, and Plaintiffs and the Companies repeatedly have

communicated this to Defendants. ***Second***, the Companies have reached out to Defendants on multiple occasions to negotiate the production of documents in good faith—offering to disclose responsive documents in the absence of a subpoena and without requiring Defendants to invoke the Hague Evidence Convention or letters rogatory process and proposing a reasonable date range to produce documents relevant to the truth or falsity of the defamatory statements at issue—and Defendants have stonewalled at every turn, preferring to burden this Court with unnecessary and premature motions practice.

### A.    The Companies' Denial of Plaintiffs' Requests for Documents

As counsel for both Plaintiffs and the Companies have explained to counsel for Defendants on a number of occasions, the Companies expressly rejected Plaintiffs' request for access to and use of company documents for purposes of this litigation. In December 2019, as the parties began considering issues related to party document production, Plaintiffs' counsel, on behalf of Plaintiffs, spoke to the Companies' counsel and requested that Plaintiffs be given access to company documents (including their emails for purposes of reviewing and producing responsive documents to Defendants). That same month, counsel for the Companies, on behalf of the Companies, denied Plaintiffs' request on the basis that Plaintiffs' emails generated using work email addresses and other documents generated on work-based platforms or databases are within the exclusive possession, custody, or control of the Companies.

In March 2020, as the parties began to engage in the substantive meet-and-confer process regarding their production obligations, Plaintiffs, through their counsel, once more requested access to and use of the Companies' documents for this litigation. Counsel for the Companies informed LetterOne Investment Holdings S.A. and LetterOne Holdings S.A. (which compose the LetterOne Group) of Plaintiffs' request and it was confirmed that Plaintiffs lack unfettered access to company documents and that LetterOne refused to grant them access to and use of company

documents for review and production in this litigation.  Counsel for the Companies also informed ABHH of the Plaintiffs' request and the request was discussed by Alfa.  Counsel for the Companies received confirmation from both ABHH and Alfa Bank that Plaintiffs' request had been considered and rejected and that those entities refused to grant Plaintiffs access to and use of company documents for review and production in this litigation.

Both Plaintiffs and the Companies have been transparent about the Companies' position throughout this litigation.  As far back as November 2019, when serving their objections to Defendants' first requests for production of documents, Plaintiffs made clear that they were "not responding on behalf of" the Companies. Dkt. 78-5, at 4–5.  Throughout the duration of the meet-and-confer process, moreover, Plaintiffs reaffirmed and emphasized that they had requested potentially relevant documents from the Companies, and that the Companies had refused on the ground that such documents belong to, and are within the exclusive possession, custody, or control of, the Companies. *See, e.g.*, Dkt. 78-9, at 2 (Apr. 2, 2020 email); Dkt. 78-11, at 6 (Apr. 24, 2020 letter); Dkt. 78-13, at 3 (May 15, 2020 letter); Dkt. 78-17, at 4 (June 2, 2020 letter).  Were that not enough, the Companies themselves proactively reached out to Defendants to make clear that the Companies had refused Plaintiffs' requests for access to and use of documents for purposes of this litigation. Dkt. 78-32, at 2 (May 1, 2020 email) ("On behalf of the plaintiffs, CLM asked whether Alfa and LetterOne would give them access to such documents for use in the Bean litigation.  On behalf of Alfa and LetterOne, we denied that request on the basis that such documents are within the possession, custody, or control of Alfa or LetterOne."); Dkt. 78-33, at 2 (May 8, 2020 email) ("Alfa and LetterOne rejected the plaintiffs' request for access to and the use of company documents for purposes of this litigation.").

B.     **The Companies' Repeated Offers to Produce Responsive Documents to Defendants**

In a good-faith effort to provide Defendants with documents related to this case and to resolve production issues without burdening the Court with unnecessary motions practice, counsel for the Companies proactively reached out to counsel for Defendants on two separate occasions. Dkt. 78-32, at 2 (May 1, 2020 email); Dkt. 78-33 (May 8, 2020 email).

In a May 1, 2020 email to counsel for Defendants, counsel for the Companies explained that the Companies "are willing to work with you to produce documents related to the matters at issue in the Bean litigation." Dkt. 78-32, at 2.  Specifically, counsel explained that the Companies "are willing to negotiate with you in good faith—*in the absence of a subpoena*—and to consider producing documents *without requiring compliance with the Hague Evidence Convention and letters rogatory procedures* provided that we are able to come to a mutual agreement as to the scope of any request."  *Id.* (emphasis added).  Counsel expressed the "hope . . . that we can reach a mutually agreeable resolution that avoids the need to litigate these issues" before this Court and asked counsel for Defendants for a call to discuss the requests and production.  *Id.*

After counsel for Defendants largely ignored the Companies' accommodative proposal, counsel for the Companies repeated this good-faith offer to negotiate and produce responsive documents in a May 8, 2020 email.  Counsel noted that, because responsive documents are located in foreign countries, Defendants "in the normal course would be required to invoke the Hague Evidence Convention or the letters rogatory process to obtain responsive documents."  Dkt. 78-33, at 2.  "In recognition of the[] difficulties" in obtaining documents through these "cumbersome" processes and "out of a desire to avoid unnecessary litigation," counsel for the Companies repeated their "offer[] to negotiate with . . . [D]efendants in good faith and to produce responsive documents, provided that we are able to settle on a mutually agreeable scope of production."  *Id.*  Not only

that, counsel for the Companies noted that they were "prepared to search for and produce documents from . . . [P]laintiffs' Alfa and LetterOne email accounts that relate to the truth or falsity of the allegedly defamatory allegations in CIR 112 and are dated within a reasonable time period." *Id.* Counsel closed by proposing once more to discuss the issues with counsel for Defendants on a phone call. *Id.* Once more, counsel for Defendants refused to discuss non-adversarial options for working through document production.[1]

Having rebuffed the Companies' genuine efforts to accommodate their litigation needs and evidently preferring to leapfrog the standard meet-and-confer process, Defendants headed straight to motions practice by filing a motion to compel.

---

[1]   In addition to direct outreach by the Companies, counsel for Plaintiffs consistently informed Defendants that the Companies stood willing and ready to negotiate the production of documents in good faith. *See, e.g.*, Dkt. 78-8, at 6 (Mar. 12, 2020 letter) (providing the name and law firm of counsel for the Companies); Dkt. 78-9, at 2 (Apr. 2, 2020 email) (explaining that counsel for the Companies "would handle directly any specific discovery requests made by Defendants for Alfa or LetterOne ESI or documents"); Dkt. 78-11, at 6 (Apr. 24, 2020 letter) (noting that counsel for Plaintiffs "have conveyed to [counsel for Defendants] verbally that you should contact [counsel for the Companies] and that we understand that such counsel intended to act in good faith with respect to discovery from the entities," and "urg[ing]" Defendants to contact the Companies' counsel, "who have expressed their willingness to work cooperatively with you to resolve any issues short of litigation"); Dkt. 78-13, at 4 (May 15, 2020 letter) ("We understand that counsel for Alfa and LetterOne is willing to discuss Defendants' requests for documents, perhaps without requiring that Defendants serve a subpoena or follow foreign service formalities, thus your claim of prejudice is, at best, premature."); Dkt. 78-17, at 4 (noting that counsel for the Companies has not "taken the position that Defendants must obtain the entity documents via the Hague Convention or other foreign service formalities" and "again encourag[ing] you to take the opportunity to communicate with counsel for Alfa and LetterOne to obtain discovery from the entities you believe necessary for your clients' defense").

## <u>ARGUMENT</u>

I.    **THE COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL AS PREMATURE**

As a threshold matter, the Court need not—and should not—wade through the thicket of legal and factual issues presented by Defendants' motion to compel.  In light of the demonstrated record of the Companies' good-faith offers to negotiate, there is every reason to believe that Defendants' document requests can be accommodated through negotiation, sparing the Court the burden of analyzing the fact-laden question whether Plaintiffs have possession, custody, or control of the Companies' documents.  Accordingly, the Court should deny Defendants' motion as premature and order Defendants to engage in a good-faith meet-and-confer process with the Companies.

As detailed above, the Companies have made concerted and substantial efforts to accommodate Defendants' document requests and clear any impediments that might stand in the way of a meaningful production.  The Companies expressed their willingness to permit Defendants to bypass the Hague Evidence Convention and the letters rogatory process.  In the ordinary course, Defendants could obtain Company documents only through the formal procedures spelled out in the Hague Evidence Convention or other diplomatic processes, which can be cumbersome at best and limit the amount of information that a party can obtain.  And, as a practical matter, Defendants would have been blocked from obtaining any documents located in Russia, which is not a signatory to the Hague Evidence Convention and refuses to cooperate with requests for evidence submitted via letters rogatory.[2]  In recognition of the burdens imposed on Defendants by forcing them to

---

[2]    *See* U.S. Department of State—Bureau of Consular Affairs, Russian Federation, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/RussianFederation.html.

navigate these channels, the Companies offered to produce documents outside the bounds of formal diplomatic frameworks in the interest of proactively seeking to protect the Companies' interests in their documents.

Likewise, the Companies agreed to negotiate and produce documents in the absence of a subpoena.  Without this concession by the Companies, Defendants would have been required to invoke diplomatic processes to serve subpoenas on the Companies—a tedious endeavor whenever seeking documents abroad and nearly impossible in Russia.  The Companies' good faith thus spared Defendants' the time and expense of serving a subpoena in a foreign county for LetterOne's documents and made it possible for them to obtain documents from Alfa Bank in Russia.[3]

As a further accommodation and sign of good faith, the Companies proactively set out the universe of documents that they proposed disclosing.  The Companies agreed to produce documents related to the truth or falsity of the allegations in CIR 112 dated within a "reasonable time period."  Dkt. 78-33, at 2.  And, in the event that Defendants had concerns about the production proposal or the substance of disclosure, the Companies urged counsel for the Defendants to begin a dialogue with the Companies to resolve all outstanding issues.

Unfortunately and disappointingly, Defendants greeted the Companies' significant concessions and good-faith efforts with stonewalling.  Defendants' only substantive response prior to filing the motion to compel was the following:  "We have your email.  It is Defendants' position that these documents are in Plaintiffs' control, and that Plaintiffs cannot proceed with their case without reviewing and producing them.  Thank you."  *Id.* at 2.  Defendants offered no justification

---

[3]   The Companies will of course continue to negotiate in good faith from the position that it is not necessary for Defendants to serve a subpoena on the Companies or invoke diplomatic processes in the event that Defendants' withdraw their motion to compel or this Court denies the Defendants' motion to compel.

for their steadfast refusal to engage with the Companies.  Had they identified the perceived problems, if any, with the Companies' proposal, Defendants and the Companies might well have worked through their issues in a cooperative manner and reached a mutually agreeable resolution.

Instead, Defendants broke off all communication with the Companies and filed this motion. In doing so, Defendants call on this Court to undertake what they frankly concede is a "highly fact-specific" inquiry.  Defs.' Br. at 18.  Indeed, Defendants' brief underscores the burden on this Court, devoting over a page simply to listing the "number of factors" that courts must analyze when determining whether a party has possession, custody, or control of specified documents.  *Id.* at 18–19 (listing "a variety of non-exclusive factors," including "whether the litigating party's involvement in the non-party corporation is sufficient to give him control of the board; the extent of the litigating party's ownership interest in the non-party corporation; the degree to which the litigating party can influence the leadership of the non-party corporation; whether the litigating party is 'an officer, director or shareholder' of the non-party corporation; whether the litigating party 'founded, ran, and housed' the non-party corporation; . . . whether the litigating party and the non-party have 'a common interest in this litigation'"; "whether the litigating party has 'access to documents when the need arises in the ordinary course of business'; whether the litigating party is an agent of the non-party corporation; and 'any benefit or involvement by the non-party corporation in the transaction' at issue").  Rather than expend considerable resources to evaluate these nine "non-exclusive factors," the Court should require Defendants first to negotiate with the Companies in an effort to resolve this dispute outside of court.

What Defendants want, at bottom, is to have their cake and eat it too.  To justify their efforts to obtain Company documents, Defendants earnestly seek to treat the Companies as parties to the litigation, artificially and erroneously synonymizing them with Plaintiffs.  At the same time,

however, Defendants refuse to carry out the obligations that underlie party discovery, altogether bypassing the meet-and-confer process.  The Court should not reward Defendants' intransigence by classifying the Companies as virtual parties to this litigation, thereby opening their files to Defendants by way of Plaintiffs, while at the same time relieving Defendants of their obligation to negotiate in good faith before rushing to seek judicial intervention.  Rather, the Court should enforce the normal order of operations by denying this motion as premature and requiring Defendants to resolve the dispute through negotiation.  *See Cohen v. Horowitz*, No. 07 Civ. 5834 (PKC), 2008 WL 2332338, at *2 (S.D.N.Y. June 4, 2008) ("[E]ven where there is no legal or practical impediment [to a party's ability to obtain the requested documents], a Court may properly require the party seeking the documents to endeavor to obtain them from the non-party in the first instance.").

Although largely ignoring the inconvenient issue of the prematurity of their motion, Defendants seek to justify their brush-off of the Companies in two primary ways.  Neither is persuasive.

*First*, Defendants claim that seeking documents from the Companies will prejudice them.  As an initial matter, however, Defendants do not argue that simply participating in the meet-and-confer process with the Companies to try to find common ground will harm them.  Nor can they.  At a minimum, then, the Court should direct Defendants to engage in such conversations before launching motions practice.

In any event, Defendants' prejudice objections are facially deficient, predicated on misstatements of the record or otherwise premature.  For example, Defendants complain about being forced to undertake "the far more taxing route of . . . draft[ing] a subpoena for Alfa" and "serv[ing] the subpoena."  Defs.' Br. at 18.  But the Companies in fact expressly stated to counsel

for Defendants that they would *voluntarily* produce documents in the absence of a subpoena should the parties reach a mutually agreeable resolution.[4]  The Companies also note that Defendants have not found it particularly burdensome to draft and serve subpoenas on a wide range of third parties in this matter and question the suggestion that drafting and serving subpoenas on the Companies to obtain "crucial" documents, Defs.' Br. at 3, is somehow too burdensome of an undertaking for Defendants' counsel.  Nevertheless, the Companies are not even imposing such a burden on the Defendants.  Defendants' other allusions to prejudice are speculative, only highlighting the prematurity of their motion.  *See id.* at 16 (asserting that the Companies' status as nonparties "*very well could* curtail the scope of discovery") (emphasis added); *id.* at 17 (claiming that the Companies' status as nonparties "*could* result in obtaining fewer relevant documents from Alfa than [Defendants] would be able to obtain from Plaintiffs") (emphasis added); *id.* ("[D]iscovery from a non-party *can be* much more costly to Defendants.") (emphasis added).  And the fault for any inconvenience caused by a purported "redundant process" that would result if Defendants were required to negotiate with the Companies "given the months-long meet-and-confer process undertaken between the parties on the same exact requests" lies squarely with Defendants, who have refused for several months to negotiate these issues with the Companies—despite being on

---

[4]    Given the Companies' multiple and significant accommodations to Defendants, this case is far different from one in which the court relieved a party of the need "to pursue 'an effort *guaranteed* to be expensive, time-consuming, and cumbersome, with no corresponding guarantee of success.'" Defs.' Br. at 14 (quoting *Royal Park Inv. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 314 F.R.D. 341, 347 (S.D.N.Y. 2016)).  Defendants' failure to make even a single request for documents from the Companies likewise distinguishes this case from one in which plaintiffs "essentially [sought] to skirt Rule 26(e)'s supplementation requirement by imposing on [defendant] an unrecognized duty to direct repeated requests for information to various healthcare providers." *Kifle v. Parks & History Ass'n*, No. Civ. A. 98-00048 (CKK), 1998 WL 1109117, at *2 (D.D.C. Oct. 15, 1998).

11

notice as far back as November 2019 that the documents are within the exclusive possession, custody, or control of the Companies.

*Second*, Defendants throw everything but the kitchen sink at Plaintiffs and the Companies in an effort to distract from their obstinate and unreasonable refusal to engage with the Companies. Defendants first strain to characterize the Companies' proactive outreach as suspicious. *See, e.g.*, Defs.' Br. at 13 n.5 (citing exhibit as "describing the *bizarre eagerness* with which Plaintiffs and counsel for Alfa have sought to have Defendants pursue documents from Alfa") (emphasis added); *id.* at 14 (referring to "Plaintiffs' and Alfa's *dogged entreaties* for Defendants to seek Plaintiffs' documents from Alfa") (emphasis added); *id.* at 15 (referring to "Plaintiffs'—*and most bizarrely*, Alfa's—repeated insistence that Defendants go to Alfa's counsel to request documents") (emphasis added).  But Defendants' argument-by-pejorative cannot hide the cold truth of the record, which establishes that the Companies reached out to and accommodated Defendants in an effort to avoid embroiling this Court in a dispute that could have been resolved through garden-variety negotiations.

Defendants then double down on their unsupported—and unsupportable—allegations of underhanded motives on the part of the Companies.  Defendants—without any evidence—accuse the Companies of "manipulat[ing]" the Federal Rules "to burden an opposing party," *id.* at 14; "shirk[ing] [their] discovery obligations," *id.* at 13–14; and "attempt[ing] to goad Defendants into legitimating a legally indefensible position," *id.* at 14.  Here again, Defendants offer not a scintilla of support for their charged claims that the Companies are acting in anything but good faith.[5]  Nor can they, given the Companies' demonstrated efforts—backed up by significant and concrete

---

[5]   The Companies would also point out that offering to produce the sought-after documents, as the Companies have done here, would be an odd strategy for "manipulat[ing]" the federal rules or "shirk[ing] discovery obligations."

concessions and accommodations—to reach a mutually agreeable solution to document production outside of court.

Were that not enough, Defendants move to impugning counsel for the Companies, trying in vain to link the Companies' proactive outreach to some kind of nefarious plot stemming from the investigation of the Special Counsel's Office. *See, e.g.*, Defs.' Br. at 14–15 (claiming, without support, that "Plaintiffs have coordinated with Alfa—whose corporate counsel, Skadden Arps, has direct ties to at least two of the Plaintiffs—to shield Plaintiffs' documents and prejudice Defendants"); *id.* at 39 (similar); *id.* at 15 (suggesting that "Plaintiffs and Alfa planned to conceal Plaintiffs' documents from the start when they filed this lawsuit"); *id.* at 15–16 (claiming, without support, that "Alfa's counsel, Skadden, lacks an arm's length relationship with Plaintiffs, as Skadden has represented Plaintiff Aven personally in the Special Counsel's investigation, served as long-time counsel to Alfa and LetterOne, and employed Plaintiff Khan's son-in-law").  These reckless and unsupported allegations smack of nothing more than desperation.  The Special Counsel's investigation has been concluded for months and has no bearing on this matter.  To somehow link this litigation to that matter is disingenuous and an unwarranted distraction at best. There also is nothing unusual about a company turning to its "long-time counsel" to represent an executive in an investigation.  That Defendants have no response beyond name calling to the Companies' good-faith efforts to meet and confer with Defendants is itself telling.

***Finally***, apparently blind to the irony of the argument, Defendants maintain that granting their motion is necessary to further the "injunction of Rule 1" that the Federal Rules "be construed to secure the just, speedy, and inexpensive determination of every action."  *Id.* at 14.  A steadfast refusal to resolve disputes out of court, of course, is diametrically opposed to the aims of speed, efficiency, and cost effectiveness.  Had counsel for Defendants simply picked up the phone and

13

called counsel for the Companies, or engaged when counsel for Defendants attempted to discuss these issues on a conference call, this dispute might well have been avoided, with the effect of saving both parties substantial time and money and sparing the Court the unnecessary burden of refereeing this dispute.  This Court can preserve some of these efficiencies by denying Defendants' motion as premature and ordering them to meet and confer in good faith with Defendants.  At worst, negotiations will narrow the issues that need to be briefed, argued, and considered by this Court.  At best, the process will yield a mutually agreeable resolution that obviates the need for any motions practice.

## II.     THE PLAINTIFFS LACK THE LEGAL RIGHT OR AUTHORITY TO OBTAIN THE COMPANIES' DOCUMENTS

In assessing whether a litigant has the legal right or authority to obtain documents in the possession of a foreign company, a court should consider the effect that foreign law has on the litigant's ability to obtain the documents.  *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 139 (2d Cir. 2007) (reversing the district court's order granting sanctions against plaintiff, a chairman and shareholder of a Russian company, for failing to produce documents in the possession of the Russian company, and concluding that "remand is … necessary to explore Russian law").[6]  The legal and practical inability of a litigant to obtain documents from a non-party, by reason of foreign law, may place the documents beyond the control of the litigant who has been served with a request under Federal Rule of Civil Procedure 34 ("Rule 34").  *In re Vivendi*

---

[6]     Questions relating to the internal affairs of corporate entities should be decided in accordance with the law of the place of incorporation.  *See City of Harper Woods Employees' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009); *United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000).  A company's internal affairs include matters peculiar to the relationships among or between the corporate entity and its directors and shareholders.  *See Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 580 (S.D.N.Y. 2018); *see also Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).

*Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH) (HBP), 2009 WL 8588405, at *2 (S.D.N.Y. July 10, 2009).

In *In re Vivendi*, plaintiffs sought documents from a non-party that were in the possession of the non-party's wholly owned subsidiary in Luxembourg. 2009 WL 8588405, at *1. The non-party objected on a number of grounds including the obstacles imposed by Luxembourg law. *Id.* In support of its position, the non-party submitted a declaration by its General Counsel explaining, in part, that the non-party "does not have the legal right or authority" to obtain the documents sought by the plaintiffs. *See id.* Based in part on the General Counsel's declaration, the court denied plaintiffs' motion to compel the non-party to produce the requested documents. *Id.* at *5.

That is *precisely* the case here. Contrary to Defendants' assertions, under the relevant foreign law, simply because Plaintiffs have indirect interests in Alfa Bank and LetterOne does <u>not</u> provide them with the legal right or authority to obtain the Companies' documents. As foreign counsel explain, Plaintiffs do not have the legal right or authority to obtain the Companies' documents under the laws of either Russia or Luxembourg. The documents are "beyond the control" of the Plaintiffs in light of Plaintiffs' legal inability to obtain the Companies' documents under foreign law.

### A.      Plaintiffs Lack the Legal Right or Authority to Obtain Alfa Bank's Documents

As the declaration of Russian local counsel makes clear, Plaintiffs do not possess the legal right to obtain the sought-after documents from Alfa Bank under Russian law. Decl. of Aleksandr V. Berezin (July 2, 2020) ("Berezin Decl."). Defendants devote nearly seven full pages to argue that Plaintiffs have the legal right to obtain Alfa Bank's documents based on Plaintiffs' alleged "ownership interests" and positions of authority with respect to Alfa Bank. Defs.' Br. at 20–26.

However, that is simply not supported by Russian law, which Defendants noticeably fail to reference.

*First*, under Russian law, Alfa Bank is the *prima facie* owner of <u>any</u> information which is contained or stored on any media, in any form, and was created or lawfully obtained by Alfa Bank, including information located on Alfa Bank's corporate domain, *alfabank.ru*.  Berezin Decl. at 6(B).  This includes information placed by employees or directors in email messages sent via accounts on Alfa Bank's corporate domain.  *Id.*  As the owner of this information, Alfa Bank, *in its sole discretion*, regulates the terms of access to the information, the manner of handling the information, and the election of any privileges applicable to the information under Russian law. *Id.* at 6(C).  Accordingly, Alfa Bank is "the only proper respondent or defendant in any proceedings or procedural actions, the subject-matter of which is enforcement of the disclosure of such information." *Id.*

*Second*, Plaintiffs' positions as Alfa Bank's directors do not provide them with the legal authority to obtain Alfa Bank's documents.  Russian law and Alfa Bank's internal policies regulate access to, and disclosure of, Alfa Bank's documents and information.  *Id.* at 5(A)–6(A).  As previously mentioned, Alfa Bank regulates the access, handling, and disclosure of its documents and information.  *See id.* at 6(C).

*Third*, Plaintiffs do not have the legal right to obtain the sought-after documents from Alfa Bank based on their alleged "ownership interests."   Under Russian law, any rights that shareholders have to obtain certain documents and information from a Russian corporate entity are limited to the *direct* shareholders of that entity.  *See id.* at 5(G)(iv).  Even if Plaintiffs were direct shareholders in Alfa Bank, <u>which they are not</u>, nothing in Russian law would grant them the legal authority to obtain the type of documents Defendants seek—namely emails on Alfa Bank's

domain.  *See id.* at 5(G)(iii).  Moreover, even direct shareholders are subject to confidentiality and privilege obligations and any disclosures made to such shareholders may not be used in pursuit of purposes beyond the management of Alfa Bank or the shareholders' investment decision-making.  *Id.* at 6(D)–(E).

**Finally**, Plaintiffs lack the legal right, under Luxembourg law, to obtain Alfa Bank's documents through their interests in ABHH, a Luxembourg entity.  Decl. of Philippe Hoss, (July 2, 2020) ("Hoss Decl.") at 6.2.  ABHH is the indirect parent company of Alfa Bank.  *See* Berezin Decl. at 4(A); Hoss Decl. at 6.1.  Plaintiffs have ownership interests in ABHH.  Berezin Decl. at 4(A).  Under the principles of Luxembourg law, described further below, Plaintiffs' status as ABHH shareholders does not provide them with any legal right to obtain, through ABHH, documents or data belonging to Alfa Bank.  *See* Hoss Decl. at 6.1.

### B.   Plaintiffs Lack the Legal Right or Authority to Obtain LetterOne's Documents

Plaintiffs do not have the legal right to obtain the sought-after documents from LetterOne under Luxembourg law.  *See* Hoss Decl. at 5.1–5.5.  As an initial matter, Defendants incorrectly conflate LetterOne and Alfa Bank as being one and the same.   Defs.' Br. at 8–9.  LetterOne and Alfa Bank are legally, functionally and operationally completely separate and independent of each other with independent Boards of Directors, officers and executives.  Because of this inaccurate description of the relationship between Alfa Bank and LetterOne, Defendants' arguments regarding Plaintiffs' legal rights to obtain documents from LetterOne are identical to their arguments with respect to Alfa Bank—namely that Plaintiffs' alleged "ownership interests" and

17

positions of authority with respect to LetterOne give them the legal right to obtain LetterOne's documents. Defs.' Br. at 20–26. This, too, is unsupported by the relevant law.[7]

*First*, under Luxembourg law, LetterOne can claim and exercise ownership rights on its private assets, including documentation and data. Hoss Decl. at 3.1.4. LetterOne has the right to exercise ownership rights over documents and data in whatever form, including email, other electronic documents and hard copy documents, even where such documents are accessible remotely. *Id.* at 3.1.9 The use of such documents and data, and any sharing of such materials, must be in, and compatible with, LetterOne's interests. *See id.*

*Second*, Plaintiffs' positions as directors of LetterOne do not provide them with the legal right to obtain the types of documents Defendants seek. Plaintiffs do not individually possess the legal authority to exercise unfettered access to LetterOne's information. *See id.* at 3.2.2.1. And, what limited informational rights directors do have, must be exercised in ways that are necessary to carry out their mandate as directors, not for personal uses. *See id.* at 3.2.2.7–3.2.2.13, 5.2. Plaintiffs do not have the legal right to obtain, give access to, or otherwise disclose documents belonging to LetterOne. *Id.* at 5.3. This applies to LetterOne documents and data that are accessible remotely and documents and data stored on LetterOne's servers. *Id.* at 5.4. In short, Plaintiffs have no right, as directors, to request, communicate or use LetterOne's documents and data (including those available in Plaintiffs' email accounts) for personal uses. *Id.* at 5.2–5.5.

*Finally*, Plaintiffs' interests in LetterOne do not provide them with the legal authority to obtain LetterOne documents. As Mr. Hoss explains, *direct* shareholders only have limited rights

---

[7] While Defendants at least acknowledge the applicability of Luxembourg law, *see* Defs.' Br. at 23–24, they miss the mark by citing law concerning the voting strength of *direct* shareholders—something that Plaintiffs are <u>not</u>—rather than the more salient law concerning whether persons who are <u>not</u> direct shareholders have any legal right to obtain the requested documents.

to obtain information from a company.  *Id.* at 5.1.  But Plaintiffs are <u>not</u> direct shareholders of LetterOne.  And under Luxembourg law, persons who do not directly hold shares in LetterOne have no legal right to obtain information from the company.  *Id.* at 5.1.

## III.   PLAINTIFFS DO NOT HAVE THE PRACTICAL ABILITY TO OBTAIN THE COMPANIES' DOCUMENTS

Defendants' claim that the Plaintiffs control the documents because they have the practical ability to obtain the documents is misguided and unavailing.  It is Defendants' burden as movant to establish that Plaintiffs have control of the documents.  *Norex Petroleum Ltd. v. Chubb Ins. Co. of Can.*, 384 F. Supp. 2d 45, 56 (D.D.C. 2005) ("The burden of establishing control over the documents sought is on the party seeking production.") (quoting 7 Moore's Federal Practice § 34.14(2)(b) (2004)).  Defendants fail to meet this burden repeatedly through their arguments.

Defendants are correct that a determination of control under Rule 34 is "highly fact-specific."  Defs.' Br. at 18 (quoting Wright & Miller, Fed. Prac. & Proc. § 2210).  However, Defendants' arguments that Plaintiffs have control of the Documents due to the "practical ability" to obtain the Documents is riddled with factual errors, wild speculation, and inapposite law.

*First*, Defendants make a number of factual errors about the Plaintiffs and the Companies, the most egregious of which is to suggest that Alfa and LetterOne are the same entity.  Defs.' Br. at 8–9.  As explained above, Alfa and LetterOne are separate entities with separate control structures and Plaintiffs have never suggested otherwise.[8]  This mischaracterization of the Companies serves to confuse Defendants' muddled arguments further as a fact that applies to Alfa

---

[8]   Defendants' argument that they are the same appears to be predicated on the fact that Plaintiffs included a search term request that listed both "Alfa" and "LetterOne."  The leap in logic from including two terms in the same search request to suggesting that Plaintiffs therefore view them as the same entity is difficult to comprehend.  Regardless, as explained above, LetterOne and Alfa are completely separate entities.

*(cont'd)*

cannot be said to apply to LetterOne (and vice versa), yet Defendants continually improperly conflate the two.[9]

*Second*, Defendants engage in speculation about Plaintiffs, their interests in the Companies, and their abilities to influence the directors and officers of the Companies.  Such speculation cannot be the basis of a determination of control.  *See U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 255–56 (D.C. Cir. 2005) (rejecting arguments of control based on "pure speculation without support in the record").

*Third*, Defendants also employ inapposite law throughout their arguments, including a misguided attempt to establish principles of foreign law without consulting foreign counsel.

*Fourth*, while Defendants lead this Court through a lengthy recitation of factors they consider relevant (and which are rebutted below), they fail to address the most salient factor when it comes to the current motion: that there are significant obstacles presented by the Companies' internal policies and foreign law that require a complicated analysis that could be avoided if Defendants would engage with the Companies instead of stonewalling on this issue.  In the interest of judicial economy, courts suggest that parties do so rather than burden the court.  *See Bush v. Ruth's Chris Steak House, Inc.*, 286 F.R.D. 1, 6, 6 n.2 (D.D.C. 2012) (ordering parties to split a retrieval fee for documents from vendor rather than requiring "a large investment of the court's time to determine whether Defendants control this third party vendor" and suggesting that the parties should resolve disputes themselves in the future rather than require the court to engage in such analysis); *see also Cohen*, 2008 WL 2332338, at *2 ("Legal and practical inability to obtain the requested documents from the non-party, including by reason of foreign law, may place the

---

[9]   Even if Defendants were able to establish that Plaintiffs had control over Alfa Bank documents, which they do not, it would not mean that Plaintiffs also had control over LetterOne documents.

documents beyond the control of the party who has been served with the Rule 34 request. But, even where there is no legal or practical impediment, a Court may properly require the party seeking the documents to endeavor to obtain them from the non-party in the first instance.") (citations omitted).

**Finally**, Plaintiffs, through foreign counsel, have detailed the impediments Plaintiffs face in attempting to obtain the documents. Plaintiffs are prevented from control of the documents by both the Companies' internal policies as well as foreign law. As mentioned above, issues of foreign law should be considered when determining control of a non-party's documents. *See Shcherbakovskiy*, 490 F.3d at 139 (reversing the district court's order granting sanctions against plaintiff, a chairman and shareholder of a Russian company, for failing to produce documents in the possession of the Russian company, and concluding that "remand is … necessary to explore Russian law").

Because Defendants have failed to establish their burden and because Plaintiffs have established that they are prevented from producing the documents due to the internal policies of the Companies and issues related to foreign law, Defendants' motion should be denied, particularly where the Companies have attempted to engage directly with the Defendants and proactively offered to work with Defendants in the absence of a subpoena and without requiring compliance with the Hague Evidence Convention.

### A.   Plaintiffs' Leadership Positions and Ownership Interests Do Not Give Them Control of the Documents

#### 1.   *Plaintiffs Do Not Have Control Over the Companies' Documents Simply Because They Are Officers, Directors, and Founders*

Defendants claim that simply by nature of being officers, directors, and founders of the Companies, that Plaintiffs are entitled to control over all documents at the Companies. To support this argument, Defendants cite numerous cases that stand for the unsurprising proposition that

being an officer, director, or founder can be *a* factor in the "fact-intensive" inquiry into whether a party has possession, custody, or control of non-party documents.  What Defendants fail to do, however, is offer any support for their argument that the mere fact that Plaintiffs may be one of several directors creates *de facto* control of the documents at the Companies.  Further, as is made clear in the declarations from foreign counsel, Plaintiffs' positions as directors at the Companies do not provide them the legal right or ability to produce the Companies' documents.  *See* Hoss Decl. at 5.2–5.5; Berezin Decl. at 6(C) and (F).  Plaintiffs' failed attempts to seek the documents from the Companies further bolster their argument that their positions do not afford them control over the documents.  It is Defendants' burden as movant to establish that Plaintiffs have control of the documents.  *Norex Petroleum Ltd.,* 384 F. Supp. 2d at 56 ("The burden of establishing control over the documents sought is on the party seeking production.").  Merely stating that Plaintiffs hold certain titles, without establishing that this grants them control over the documents does not meet this burden, especially in light of the clear, thorough analysis from foreign counsel detailing why Plaintiffs' relationships with the Companies do not allow for control over the documents.

While Defendants are correct that being an officer or director can be *one* of the criteria in determining whether a party has control over documents, position alone does not create control. The moving party has to establish not only that a party is an officer or director of a non-party entity, but that there are factors that establish that the party's role as a director or officer provides them the ability to obtain documents from that entity.  *See Weaver v. Gross*, 107 F.R.D. 715, 718 (D.D.C. 1985) (determining that President and Chief Executive Officer ("CEO") of an entity had the ability to obtain documents only after noting that the distinction between the President and CEO at the entity was unwarranted in the context of an employment discrimination claim and that it was factually established that defendant had a "personal involvement in the operations and

activities" of the corporation and a "pervasive influence in corporate activities").  Here, Defendants have not established that Plaintiffs' positions in the Companies would lead to the practical ability to obtain documents, and the declarations from foreign counsel establish that their positions would *not* afford them control over the Companies' documents.

Defendants similarly cite other cases that merely suggest that a corporate officer can be compelled to produce a non-party's documents, when, in addition to being an officer, it is established that he or she has the practical ability to do so and there are no facts to suggest that the officer cannot produce the non-party documents.  *See, e.g.*, *In re Kidd*, No. 3:20-MC-00016-TOF, 2020 WL 2404928, at *12 (D. Conn. May 12, 2020) (stating that "a party *can* ordinarily tell the officer of a company to produce otherwise-discoverable documents *that the officer has the practical ability to obtain*"  and noting that the party had not alleged or attempted to establish he had no practical ability to obtain the documents) (second emphasis added); *U.S. Philips Corp. v. Synergy Dynamics Int'l, LLC*, No. 2:05-cv-00577-PWP-GWF, 2007 WL 9734384, at *9 (D. Nev. July 9, 2007) (noting that a party can be compelled to produce documents of a non-party corporation of which he is an officer "and which he has the practical ability to produce," and stating that there was no information that the party would not be able to produce the documents if ordered to do so).  Here, Plaintiffs have consistently affirmed that they do not have control over the requested documents, which is supported by the analyses of foreign counsel.

Defendants' factual support is also lacking as they attempt to establish that Plaintiffs have control of the documents by merely listing their roles as directors of different Alfa entities.[10]  Defendants' burden, however, is to establish that Plaintiffs' positions as directors afford them

---

[10]   Notably, this would have no effect on their ability to obtain LetterOne documents because LetterOne and Alfa are completely separate entities.

control over the Companies' documents.  *See Norex Petroleum Ltd.*, 384 F. Supp. 2d at 56 (burden

is on the moving party to establish control).  As Plaintiffs have noted, despite their positions, the

Companies rebuffed their requests for the documents, which evidences their inability to obtain the

documents despite their positions at the Companies.  The analyses by foreign counsel further

support that the Plaintiffs do not have the ability to use Company data for personal use.  *See, e.g.*,

Hoss Decl. at 3.3.3.10 ("It is not only established that directors have no right to obtain company

documents and data for personal purposes but also that a director may not use for personal purposes

the information to which he or has access in the course of his or her duties").  Absent some

evidence contradicting Plaintiffs' assertions that they were not able to coerce the Companies to

release the requested documents or some analysis contradicting foreign counsels' declarations,

Defendants have failed to meet their burden.

> 2.   *Plaintiffs' Interests in the Companies Do Not Give Plaintiffs Access to Company Documents*

Plaintiffs' interests in the Companies do not give them control over the entities such that

they have control over the documents or the ability to influence the Companies' decisions.  As

explained above, even if Plaintiffs were direct shareholders, which they are not, Plaintiffs would

not have the power to obtain the Companies' documents.  *See* Hoss Decl. at 5.1; Berezin Decl. at

5(G)(iii)–(iv), 6(D)–(E).  Defendants offer little more than wholly inaccurate facts and inapposite

law in support of their claim and thus fail to meet their burden.

Defendants cite a number of cases that suggest that a party owning a majority interest in a

non-party corporation is a factor in determining whether a party has the practical ability to obtain

documents from a non-party corporation.  *See, e.g., In re Application of Bloomfield Inv. Res. Corp.*,

315 F.R.D. 165, 168 (S.D.N.Y. 2016) (determining that the majority shareholder who was listed

as the "ultimate controlling party" of an entity had the practical ability to obtain documents from

non-party corporation).  None of the Plaintiffs, however, are the majority shareholder, or even a direct shareholder, of the Companies.[11]  Further, as explained by foreign counsel and in the analysis above, Plaintiffs' interests in the Companies do not provide them the ability to compel production of the Companies' documents.  *See* Hoss Decl. at 5.1, 6.1–6.2; Berezin Decl. at 5(G)(iii)–(iv), 6(D)–(E).

Defendants also fail to establish that Plaintiffs wield "undisputed control of the board" of either Alfa Bank or LetterOne.  *See Shcherbakovskiy*, 490 F.3d at 139 (stating that an order to produce a non-party entity's documents would be appropriate if the district court found the non-party corporation to be a minority shareholder's "alter ego" or that his investment was "sufficient to give him undisputed control of the board").  Even if Plaintiffs were direct shareholders, which they are not, the analyses of foreign counsel explain why their interest would not allow Plaintiffs to coerce the Companies to produce the Documents.  *See* Hoss Decl. at 5.1, 6.1–6.2; Berezin Decl. at 5(G)(iii)–(iv), 6(D)–(E).  Defendants' speculation about Plaintiffs' ability to "influence and direct" the Companies is completely unsupported by law or facts and should not be relied on by this Court.  *See U.S. Int'l Trade Comm'n*, 411 F.3d at 255–56 (rejecting arguments of control based on "pure speculation without support in the record").

Defendants also attempt to opine on foreign law (conceding the relevance of foreign law to this analysis) to support their argument, Defs.' Br. at 23–24, but the result is overgeneralized,

---

[11]   Defendants cite *Shcherbakovskiy v. Seitz*, No. 03 CV 1220 RPP, 2010 WL 3155169 (S.D.N.Y. July 30, 2010), *aff'd*, 450 F. App'x 87 (2d Cir. 2011), to suggest that a minority shareholder would have control over an entities' documents.  However, in *Shcherbakovskiy*, the Second Circuit reversed the earlier determination that the minority shareholder had control of the documents until the opposing party was able to supplement the factual record.  *See Shcherbakovskiy*, 490 F.3d at 139.  The minority shareholder was only determined to have control over the documents once it was established that he used to own 100% of the entity and that the other two board members were "beholden" to him because he had transferred a portion of his ownership stake to each.  2010 WL 3155169, at *10.

irrelevant, and incomplete.  Defendants' "analysis" is cursory with respect to foreign laws and does not address the specific structure or governance of the Companies.  Also, to the Companies' knowledge, Defendants are not qualified to opine on Luxembourg law nor do they appear to have consulted anyone who is.  As the analysis from counsel actually qualified to practice law in Luxembourg attests, Plaintiffs cannot force the Companies to allow production of the Documents based on their interests.  *See Hoss Decl.* at 5.1, 6.1–6.2.

Further, Defendants' factual support mischaracterizes the documents cited and undercuts their own argument.  For example, Defendants' use of change in control provisions in bond indentures, Defs.' Br. at 25, shows a misunderstanding of how debt instruments work.  A change in control provision is imposed by creditors and is not offered voluntarily by the bond issuer or its shareholders; the fact that *creditors* sought to protect themselves in the event that the founding shareholders cease to be involved with Alfa Bank is not evidence that Plaintiffs "have established formal voting blocs" as Defendants suggest.  *Id.*  The base prospectus highlights another flaw that Defendants attempt to elide; the documents suggest that there are significant voices with control over the Companies in addition to the Plaintiffs.  *See, e.g.*, Dkt. 78-47, at 6–7 (Base Prospectus for Alfa Bank Bond Issuance Program (Sept. 17, 2019)) (listing Alexei Kuzmichev as a "principal shareholder"); Dkt. 78-49, at 6 (DEA Finance Offering Memorandum (Oct. 17, 2016)) (listing other individuals who founded LetterOne along with the Plaintiffs and listing three individuals other than Plaintiffs as "Original Investor[s]").  Other than speculation, Defendants have not offered any support for the assertion that Plaintiffs somehow control these other individuals such that Plaintiffs have "undisputed control of the board."

In addition, Defendants admit a lack of knowledge about the Companies but make broad assertions about control based on their assumptions.  For example, Defendants suggest that

Plaintiffs' alleged interests in the Alfa Banking Group provides them control over all Alfa documents. *See* Defs.' Br. at 23 ("Plaintiffs own a combined majority of the Alfa Banking Group's shares – over 66% - establishing Plaintiffs' right, authority, or ability to obtain their Alfa documents."). However, even if Defendants established that Plaintiffs had control over Alfa Banking Group[12] it would not follow that Plaintiffs had control over all Alfa documents as Alfa is not a formal entity, and ownership over one constituent part would not extend to the larger group. Defendants continually conflate various entities without acknowledgment of that fact and make assertions of control founded on critical factual errors.

Defendants cannot be said to have met their burden based on their incomplete analysis of foreign law, mischaracterization of documents, and confused analysis of corporate structures, especially in light of the compelling analyses by foreign counsel explaining why Plaintiffs would not be able to force the Companies to concede to production of the documents.

## B. Plaintiffs Do Not Have Influence Over Other Corporate Officers and Board Members

Defendants' arguments that Plaintiffs have sufficient control over Alfa Bank and LetterOne's board members to force the release of documents are similarly unavailing. Defendants cite to inapposite case law and merely speculate about Plaintiffs' influence. Defendants again fail to establish control over the documents and therefore fail to meet their burden.

***First***, the case law that Defendants cite to suggest that Plaintiffs can influence the remainder of the board of directors at the Companies is completely inapposite and merely suggests that influence stemming from contractual relationships or statutory requirements can lead to a determination of control. For example, in *Annunziato v. Collecto, Inc.*, 304 F.R.D. 360 (E.D.N.Y.

---

[12]   The Companies reject any assertion that Plaintiffs have control over Alfa Banking Group.

2015), the "influence" came from the fact that the debt collection action had a contractual provision stating that the non-party entity would provide the requested documentation upon request. *Id.* at 363; *see also Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 477 (D. Colo. 2007) (finding that party had ability to obtain documents when it was required by statute to retain certain records). Here, Defendants can point to neither a contractual nor statutory basis for claiming that Plaintiffs can influence the Companies to provide documents. Nor do Defendants point to any other non-speculative basis for asserting such influence exists.

*Second*, Defendants also suggest that specific members of the Board of Directors are "beholden" to Plaintiffs. However, Defendants offer nothing more than (absurd) speculation that Plaintiffs can bend these individuals to their will. In *Shcherbakovskiy v. Seitz*, No. 03 CV 1220 RPP, 2010 WL 3155169 (S.D.N.Y. July 30, 2010), *aff'd*, 450 F. App'x 87 (2d Cir. 2011), which Defendants cite to support their proposition, a court found that two board members of an entity were beholden to the founder and third board member of the entity after the founder transferred a portion of his 100% interest in the entity to both members, who were his employees at the time. *Id.* at *10. Here, however, Defendants have offered no reason to suggest that the named individuals are "beholden" to Plaintiffs. Nor is it likely that these individuals would feel "beholden" to anyone. Richard Burt is the former Ambassador to Germany and a successful diplomat and consultant. Defendants suggest that Ambassador Burt is a Board member of LetterOne and has worked with Plaintiffs in the past but offer no evidence of why he would feel beholden to Plaintiffs.[13]

---

[13] Defendants' reasons for including Ambassador Burt appear likely to be the opportunity to unnecessarily invoke the Special Counsel's Investigation for the purpose of mudslinging. Ambassador Burt, a non-executive director, is the only individual listed who has no ownership stake in LetterOne or Alfa Bank. Plaintiffs offer no evidence for how Plaintiffs would "influence" Ambassador Burt, and his inclusion seems aimed at attempting to embarrass Plaintiffs, rather than any legitimate legal argument.

Defendants also suggest that Andrei Kosogov and Alexey Kuzmichev, both high net worth co-founders of LetterOne, are also able to be influenced by Plaintiffs.  As both Kosogov and Kuzmichev have interests in, and are co-founders of, LetterOne, it is not clear what influence Plaintiffs would have over them.  Defendants also fail to consider that the Companies have other strong, independent voices leading the Companies outside of those listed by the Defendants.  For example, Lord (Mervyn) Davies of Abersoch, the Non-Executive Chairman of LetterOne, is, among other accomplishments, Chairman of Corsair Capital; Chairman of the UK Lawn Tennis Association; former Chairman of the Royal Academy of Arts Trustees; a former Minister for Trade, Investment, Small Business and Infrastructure in the UK Government; and former Chairman and CEO of Standard Chartered PLC.  Defendants fail to offer any evidence to support their assertions that Plaintiffs could influence these individuals, or any other individual who could grant Plaintiffs access to the Companies' documents.  Defendants further suggest that senior executives would be beholden to Plaintiff Fridman because he "approves the employment of senior executives." Defs.' Br. at 29.  Defendants offer no legal support suggesting that approval of senior executives' employment would indicate that Plaintiff Fridman has control of LetterOne, and Defendants point to no senior executives who are "beholden" to Plaintiff Fridman.[14]  Defendants' "pure speculation" about Plaintiffs' influence should be disregarded by this Court and cannot form the basis of a determination of control.  *See ASAT, Inc.*, 411 F.3d at 255–56 (rejecting arguments of control based on "pure speculation without support in the record").

---

[14]  Defendants' attempt to use *Shcherbakovskiy* is completely inapposite.  In that case, two board members were given an interest in the entity by the founder and 100% owner.  2010 WL 3155169, at *10.  Here, Plaintiff Fridman's role on the Nomination and Remuneration Committee arises solely by virtue of his being a director of LetterOne, not some attempt to establish control over the executives.  Plaintiff Fridman merely approves, along with two other directors, neither of which are Plaintiffs, the employment of certain executives.

Defendants have offered nothing beyond mere speculation and conjecture that Plaintiffs may be able to influence some individuals and no concrete suggestion that any influence would lead to effective control over the documents.  Defendants, again, have failed to meet their burden.

### C.   Defendants Mischaracterize the Companies' "Stake" in This Litigation

Defendants claim that the Companies' "stake" and "clear connection" to this litigation provides Plaintiffs control over the documents in discovery.  Defendants are incorrect about the Companies' involvement in this matter and mischaracterize the law.  Defendants have once again failed to meet their burden.

Plaintiffs filed this suit in their individual capacities and the Companies do not wish to be involved outside of litigating the specific issue of possession, custody, or control of the Companies' documents.[15]

Further, Defendants mischaracterize the case law of when a "stake" in litigation is relevant. The case law Defendants cite suggests that a "stake" may be considered as a relevant factor when the non-party would be harmed by the litigation and has shared documents during similar litigation in the past or where the non-party would benefit financially from the litigation and has frustrated the discovery process.  *See Gross v. Lunduski*, 304 F.R.D. 136, 143–44 (W.D.N.Y. 2014) (determining that corrections officer had ability to obtain documents when Department of Corrections would indemnify the officer and had a "history of cooperation demonstrating [the Department of Corrections'] willingness to produce documents required in the defense of a

---

[15]   As addressed in the Companies' motion to intervene, the Companies seek only limited intervention to litigate the specific matter of Defendants' Motion to Compel and therefore do not subject themselves to the general jurisdiction of the Court.  As further stated therein, the Companies filed the motion to intervene on the condition that the Companies shall be deemed and treated as non-parties to this action, and the Companies shall be immune from all forms of party discovery, service of process, claims of liability, and all other obligations of a party.

corrections officer"); *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Philips Petroleum Co.*, 105 F.R.D. 16, 35 (S.D.N.Y. 1984) (stating that because the French government was the ultimate beneficiary of any award, "it is unacceptable to allow that government to refuse to produce documents for full and fair litigation of this action"); *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 131 (D. Del. 1986) ("If a non-party will directly receive the benefit of an award, then it is unjust that it can frustrate the discovery process and the complete resolution of the issues by refusing to furnish documents in its possession."). Here, Plaintiffs will not be harmed by the litigation nor will they receive any financial benefit. Regardless, it certainly is inaccurate to suggest that the Plaintiffs have in any way "frustrated" the discovery process. As detailed above, the Companies have repeatedly tried to engage in good faith negotiations to produce documents to Defendants. Instead, Defendants have frustrated the process by unnecessarily running to this Court and dragging the discovery process out further.

Further, any "stake" in this litigation would not negate the obstacles posed by the Companies' internal policies and foreign law detailed by the declarations of foreign counsel that prevent Plaintiffs from controlling the Companies' documents.

Defendants' weak and unsubstantiated argument that Plaintiffs have control of the Companies' documents due to some vague "stake" in this litigation is not persuasive as a matter of law or fact, particularly when Defendants have been the party to frustrate the discovery process. Therefore, Defendants have failed again to meet their burden.

### D.    Plaintiffs Are Not Holding Themselves Out as Controlling the Companies and Shielding Documents

Defendants' argument that Plaintiffs "hold themselves out" as controlling the Companies and thus have the ability to obtain documents is also unavailing. Similar to Defendants' other arguments, it is propped up by inapposite law and non-relevant facts.

31

***First***, Defendants once again cite to inapposite law in their attempt to suggest that Plaintiffs hold themselves out as controlling the Companies and therefore can obtain the documents.  *See, e.g.*, *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 267 n.9 (N.D.N.Y. 2006) (exploring issue of control between state and state agency and denying motion to compel); *Appleton Papers, Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2009 WL 2408898, at *3 (E.D. Wis. July 31, 2009) (exploring the closeness of a corporate relationship between a subsidiary and parent); *Chevron Corp. v. Donziger*, 296 F.R.D. 168 (S.D.N.Y. 2013) (exploring relationship between defendant attorney and foreign legal team working on the same matter).  None of these cases represent a useful analogy to Plaintiffs' position in regard to the Companies or feature an individual "boasting" about control over an entity, as Defendants allege.

***Second***, even if the law supported Defendants' argument, the facts offered would still not establish that Plaintiffs "boast" about their control of the Companies.  The crux of Defendants' argument is that Plaintiffs "hold themselves out as the owners of Alfa."  Defs.' Br. at 31.  However, Defendants point to no statements *from the Plaintiffs*.  Instead, Defendants offer a number of statements from press releases, foreign court documents, and articles from the media.[16]  These statements do not come from the Plaintiffs and certainly do not feature Plaintiffs boasting of control of the Companies.  Despite Defendants' suggestion otherwise, Plaintiffs' decision not to demand a correction from every newspaper or magazine that includes a vague assertion that

---

[16]   Defendants also list two documents filed with the SEC.  One document contains an interview with Plaintiff Fridman from 2009 where the author identified him as "Alfa Group owner Mikhail Fridman" and the other document is from 2010 and describes Plaintiff Fridman as having "taken an active role in managing the Alfa Group."  Dkt. 78-63; Dkt. 78-64.  In addition to being over ten years old, neither of these statements suggest that Plaintiffs are boasting of their control of the Companies.

Plaintiffs are involved in the ownership of the Companies does not establish control over the Companies' documents.

*Finally*, even if Plaintiffs' did "hold themselves out" as the owners of the Companies, which they did not, it would not change the fact that Plaintiffs would not be able to compel the Companies to produce the Documents for the reasons explained by foreign counsel.

Defendants, who carry the burden of establishing control, fail to do so once again here.

### E.     Defendants Fail to Establish Close Coordination Between the Companies and Plaintiffs

Defendants next argue that Plaintiffs' "close coordination" with the Companies shows the Plaintiffs' practical control over the documents.  However, this argument again offers irrelevant speculation and vague assertions of "closeness" that fail to establish Plaintiffs' control over the documents.

Defendants claim that an individual associated with an entity would therefore have control over its documents is not supported by the cases that Defendants cite, which explore a principal-agent relationship and the relationship between two sister companies in the same corporate structure.  *See McKesson v. Islamic Republic of Iran*, 185 F.R.D. 70, 77 (D.D.C. 1999) (finding Iran had a principal-agent relationship with a dairy and granting motion to compel inspection); *Appleton Papers*, 2009 WL 2408898, at *3 (finding that corporate entity in same corporate structure with non-party could be compelled to produce the non-party's documents).  Neither case supports the proposition that an individual associated with a corporation would have the ability to obtain its documents, especially here, where Russian and Luxembourg law, as applied to the issues here, prohibit the same.  Defendants also fail to establish how Plaintiffs' mere association with the Companies grants them the ability to obtain documents in the control of the Companies.  Finally, Defendants provide additional speculative comments, claiming that Plaintiffs have a "pervasive

influence" in Alfa activities such that they have control over the documents with no clear factual basis and without explaining what those activities entail.  Defs.' Br. at 35.

Defendants fail to meet their burden due to their failure to cite applicable law or facts that establish Plaintiffs' control over the Companies' documents.

### F.  Plaintiffs' Use of Email Does Not Give Them the Practical Ability to Obtain All Documents from the Companies

Defendants next argue that Plaintiffs' use of corporate email addresses gives them control over the documents for production.  Defendants' assertion that having a corporate email account can establish control over corporate documents is not supported by law, and the facts cited by Defendants do little more than establish that Plaintiffs Aven and Fridman have corporate email addresses at Alfa Bank and LetterOne, which the Companies have never denied.  Further, the analyses provided by foreign counsel explain that using a corporate email address does not lead to control over company documents.  Defendants cannot meet their burden when they fail to cite applicable law and foreign counsel makes clear that use of a corporate email address does not create control of the Companies' documents.

Defendants again cite inapposite law to support their arguments.  *See, e.g.*, *In re Flag Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 181–82 (S.D.N.Y. 2006) (finding individual defendants had access to documents after noting "attempts to thwart plaintiffs' discovery" and the fact that individual defendant's employment agreement specifically allowed for production of documents if they were required to be disclosed by law); *see also In re Application of Bloomfield Inv. Res. Corp.*, 315 F.R.D. at 168 (finding parties had access to non-party documents when, among other things, they did not provide any basis for argument opposing control).[17]  In *Flag Holdings*, the

---

[17]   Defendants also cite other cases that have little to no bearing on the current matter, many of them re-treads from Defendants' other unsuccessful arguments.  *See Annunziato*, 304 F.R.D.

*(cont'd)*

court granted the motion to compel after the defendants tried to "thwart plaintiff's discovery" and after the foreign non-party corporation refused to produce any documents unless plaintiffs proceeded through the Hague Convention.  236 F.R.D. at 181.  Here, however, the Companies have assured Defendants that they would not be required to go through the Hague Convention or letters rogatory process, or even issue a subpoena to obtain documents.

In addition, foreign counsel has explained that the use of corporate email does not allow Plaintiffs to gain control of documents.  As Mr. Hoss explains of Luxembourgian law, the use of a corporate email account does not allow Plaintiffs to produce the documents:

> *It results from the above that documents and data in whatever form, including emails, other electronic documents and hard copy documents of a company constitute tangible or intangible assets forming part of the assets of the relevant Company, irrespective of whether the document is accessible from a distance via a mobile device. The use of such data and its sharing with others outside the Companies must therefore be in, and compatible with, the relevant Company's interest.*

Hoss Decl. at 3.1.9.  Mr. Berezin similarly explained that use of an email address does not take the documents outside of Company control.  *See* Berezin Decl. at 6(B) ("The fact that the Bank's employees or members of its Board of Directors placed any information in email messages sent via accounts on the Bank's corporate domain is the evidence that such information has been created or used in connection with their employment or directorship duties and as such, is subject to proprietary rights of the Bank.").

---

at 363 (finding control in contractual principal-agent relationship); *Chevron Corp. v. Salazar*, 275 F.R.D. 437 (S.D.N.Y. 2011) (finding control between attorney and group of foreign attorneys working on same matter); *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918 (S.D.N.Y. 1984) (finding control between party and corporate non-party corporate affiliate when party was "[e]ssentially . . . the distributer and servicer in the United States of the British affiliate's planes").  None of these cases address the relationship between directors and corporations or suggests that merely having a corporate email address overcomes a clear assertion from a corporation that the documents are not in a party's control.

Further, Defendants factual support does little more than indicate that Plaintiffs Fridman and Aven have corporate email addresses that each use.  Defendants do not establish that use of a corporate email address creates control of the Companies' documents and, as mentioned above, foreign counsel specifically notes that use of a corporate email address would *not* create control. Based on their failure to cite applicable law and the analysis by foreign counsel, Defendants cannot meet their burden of establishing that possessing a corporate email address from the Companies establishes control of the Companies' documents.

### G.  Plaintiffs Have Made a Good Faith Effort to Obtain Documents

Defendants' assertion that Plaintiffs have not made a good faith effort to obtain documents is belied by the record.  As detailed above, Plaintiffs' counsel has been transparent about Plaintiffs' stance that the documents belong to, and are within the possession, custody, or control of, the Companies.  Plaintiffs' counsel has also made requests of the Companies to produce the documents but such requests were denied.  Further, as detailed by the declarations of foreign counsel, Plaintiffs cannot compel the Companies to allow production of the Companies' documents.  Defendants' suggestion that Plaintiffs have not acted in good faith is not supported by law and is contradicted by the record.

Defendants can point to no case law to support their position that Plaintiffs have not acted in good faith.  In *Tavoulareas v. Piro*, 93 F.R.D. 11 (D.D.C. 1981), which Defendants cite, the Court noted that a party had not indicated *any* attempt to seek documents from an entity of which he owned a controlling share.  *Id.* at 20–21.  Here, Plaintiffs' counsel have explained that Plaintiffs

sought the documents and the requests were denied.  While Defendants' counsel may not be satisfied with the answer, nothing more is required.[18]

Further, as already explained in detail above, the Companies reached out in good faith to Defendants to produce documents.  Rather than engage in conversation with the Companies, the Defendants ran to this Court and burdened it with an unnecessary motion.  Any delay in the production of the sought-after documents stems from the lack of good faith from the Defendants, not Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Compel Plaintiffs' Production of Their Documents.

Dated:  July 2, 2020                                   Respectfully submitted,

                                                                    /s/ Margaret E. Krawiec
                                                                    Margaret E. Krawiec (D.C. Bar No. 490066)
                                                                    Michael A. McIntosh (D.C. Bar No. 1012439)
                                                                    SKADDEN,  ARPS,  SLATE,  MEAGHER  &
                                                                         FLOM LLP
                                                                    1440 New York Ave. NW
                                                                    Washington, DC 20005
                                                                    T: (202) 371-7000
                                                                    F: (202) 661-9123
                                                                    margaret.krawiec@skadden.com
                                                                    michael.mcintosh@skadden.com

---

[18] Defendants also engage in additional unnecessary mudslinging, suggesting, without any basis, that Plaintiffs' counsel was not truthful when he relayed that Plaintiffs had requested the documents from the Companies, and suggesting, again with no basis, that Plaintiffs instructed the Companies not to approve production of the documents. Defs.' Br. at 39.