## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MIKHAIL FRIDMAN, PETR AVEN, and
GERMAN KHAN,

               Plaintiffs,

      v.

BEAN LLC a/k/a FUSION GPS, and GLENN
SIMPSON,

               Defendants.

Civil Case No. 1:17-cv-2041-RJL

## DEFENDANTS' REPLY TO INTERVENOR AO ALFA-BANK'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFFS' PRODUCTION OF THEIR DOCUMENTS

AO Alfa-Bank (hereinafter "Alfa") has intervened to defend Plaintiffs' ongoing failure to produce the vast majority of their responsive documents in the instant action *they* filed. Alfa – a company owned and controlled by Plaintiffs for over 30 years – does not deny Plaintiffs' possession or custody of their documents at Alfa, or Plaintiffs' practical ability to obtain these documents. Nor does Alfa contest Plaintiffs' *collective* majority ownership of their companies or their *collective* ability to obtain their documents from Alfa. Lastly, Alfa does not intervene to argue that Plaintiffs have met their party discovery requirements under Federal Rule of Civil Procedure 34.

Instead, Alfa offers inapposite excuses why Plaintiffs need not comply with Rule 34. First, Alfa – a Russian company – tries to persuade a federal judge that Russian (and Luxembourg) law should excuse Russian plaintiffs from complying with Federal Rule of Civil Procedure 34. But

foreign law has no primacy over Rule 34 in federal court.[1] Plaintiffs, having filed a case in federal court, should be bound by Congress' rules governing procedure therein.

Second, Alfa tries to excuse Plaintiffs from their Rule 34 obligations because of Alfa's communications with Defendants about the mere *possibility* of Alfa waiving service and the mere *possibility* of Alfa producing documents, when Alfa has made no commitments to waive service or produce documents.

## ARGUMENT

**I.    Rule 34 of the Federal Rules of Civil Procedure – Not Foreign Law – Governs Whether Plaintiffs Control Their Documents.**

This Court should reject the argument by a Russian company that Russian and Luxembourg law relieves Russian plaintiffs of their party discovery obligations under the Federal Rules of Civil Procedure. Alfa's argument that "Plaintiffs do not have the legal right or authority to obtain the Companies' documents under the laws of either Russia or Luxembourg," Intervenors' Mem. of Pts. & Auths. in Opp. to Defs.' Mot. to Compel, ECF No. 100 ("Alfa Opp."), at 15, distorts the legal analysis of control by suggesting that *foreign law* governs this analysis. Alfa is incorrect. Plaintiffs chose to pursue this litigation in the United States, and Federal Rule of Civil Procedure 34 governs control of their documents. *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers* ("*Rogers*"), 357 U.S. 197, 204 (1958) (finding that even where Swiss Law subjected a party to criminal penalties if documents were produced, the

---

[1] Alfa claimed in its Motion to Intervene that it was intervening to protect its interest "in maintaining [its] privilege and preventing disclosure of any confidential or sensitive commercial information." Alfa Mot. for Leave to Intervene, ECF No. 80, at 11. However, as Alfa's Opposition shows, Alfa has intervened not for that purpose, but instead to argue that Plaintiffs do not have possession, custody, or control of their Alfa documents – the same argument advanced by Plaintiffs. Plaintiffs' and Alfa's arguments are redundant. Accordingly, Defendants incorporate herein their arguments in their Reply in Supp. of Defs' Mtn to Compel, ECF No. 89.

law did not preclude a US court from finding that the party had control of the documents under Rule 34 and ordering that party to produce the documents).

Ignoring the clear and voluminous precedent concerning this Court's power to compel production despite foreign law, Alfa repeatedly seeks to confuse the issue before this Court – *i.e.,* whether a party has possession, custody, or control of its documents pursuant to Rule 34 – with an issue that is *not* before this Court – *i.e.*, whether foreign law may, in limited circumstances, prevent a court from sanctioning a party who fails to produce despite a finding of control. *See* Alfa Opp. at 14-15 (citing inapposite cases). If the Court finds that Plaintiffs have possession, custody or control of the documents at issue, Plaintiffs can be ordered to produce regardless of any limitations they may face in Luxembourg and Russia. In *Rogers*, the Court asked explicitly, "Do the interdictions of [foreign] law bar a conclusion that [Plaintiffs] ha[ve] 'control' of the[ir] documents within the meaning of Rule 34?" *Rogers*, 357 U.S. at 204. The answer: no. *Id.* at 205. "[A]s the part[ies] who 'rel[y] on foreign law,'" Alfa and Plaintiffs "'assume[] the burden of showing that such law prevents compliance with the court's order" to produce their documents.[2] *In re Grand Jury Subpoena*, 912 F.3d 623, 633 (D.C. Cir. 2019) (citation omitted).

### A. Alfa's Invocation of Foreign Law Is Premature, and Foreign Law Does Not Preclude This Court from Granting Defendants' Motion.

Alfa and Plaintiffs have not met their burden of showing that the laws of Russia and Luxembourg prevent Plaintiffs from complying with discovery obligations in US federal court

---

[2] Alfa and Plantiffs also fail to meet the requirement of Rule 44.1 that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." Fed. R. Civ. P. 44.1. The Court need not consider foreign law where the party invoking it fails to provide such notice. *See Burke v. Air Serv Int'l, Inc.*, 775 F. Supp. 2d 13, 17 n.4 (D.D.C. 2011) ("[T]he Court does not consider Afghan law because neither party desires that it apply here, and no party has given notice of intent to raise an issue of foreign law."), *aff'd*, 685 F.3d 1102 (D.C. Cir. 2012); *Gilson v. Republic of Ireland*, 606 F. Supp. 38, 42 (D.D.C. 1984) ("[T]his Court is not obligated to apply the law of Ireland since none of the parties to this action gave written notice of an intent to raise the issue of Ireland's trade secret law."), *aff'd*, 787 F.2d 655 (D.C. Cir. 1986).

litigation and producing their documents in accordance with Rule 34. More than half a century of binding case law, which Alfa fails to distinguish or even acknowledge, makes clear that foreign laws do not prevent this Court from ordering production of Plaintiffs' documents. Foreign "statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. Of Iowa* ("*Aerospatiale*"), 482 U.S. 522, 544 n.29 (1987) (citing *Rogers*, 357 U.S. at 204–06); *see also In re Sealed Case*, 825 F.2d 494, 497–98 (D.C. Cir. 1987) ("[A] court's ability to order a person to produce documents in contravention of foreign law, [] is thought to be acceptable.").

Alfa confuses the matter by relying on cases that address sanctions for failure to produce documents, *see* Alfa Opp. at 14-15, as opposed to cases where the Court analyzes the issue before this Court – *i.e.*, whether a party possesses, has custody of, or controls documents under Rule 34. That distinction is critical. Courts have long distinguished between the two. *See In re Sealed Case*, 825 F.3d at 498 (contrasting an order to produce documents, notwithstanding foreign law, with "sanctions for disobedience to that order"). Once a court has ordered the production of documents, *then and only then* may a court consider the application of foreign law to the sanctions stage. We are not at the sanctions stage here. Pending before the Court is the simple question of whether Plaintiffs should be compelled to produce their documents. Foreign law has no place in that analysis.

A review of the cases relied upon by Alfa makes this point clear. *See* Alfa Opp. at 14-15. For example, in *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, relied on by Alfa, *see* Alfa Opp. at 14, the Second Circuit reversed the imposition of sanctions for non-production, holding that "the inquiry into Russian law and appellant's control of IPT will inform a finding as to appellant's

willfulness, or lack thereof, in refusing to produce the documents." 490 F.3d 130, 139 (2d Cir. 2007). In other words, the court found that Russian law was relevant *not* to the initial finding of control, but to the imposition of sanctions; the sanctions order could be mitigated on remand if the lower court found that foreign law precluded the appellant from complying with the production order. *See also N. Mariana Islands v. Millard*, 287 F.R.D. 204, 214 n.75 (S.D.N.Y. 2012) ("[T]he modern trend holds that the mere existence of foreign blocking statutes does not prevent a U.S. court from ordering discovery[,] although it may be more important to the question of sanctions in the event that a discovery order is disobeyed by reason of a blocking statute." (quoting *In re Auction Houses Antitrust Litig.*, 196 F.R.D. 444, 446 (S.D.N.Y. 2000))). *See also, e.g.*, *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 201, 221 (S.D.N.Y. 2013) (holding that "The Alleged Illegality of Production Under Ecuadorian Law Did Not Preclude the Court's Order to Produce" and striking non-producers' defense as sanction for violation of that order), *aff'd in relevant part*, 833 F.3d 74, 145 (2d Cir. 2016) (affirming imposition of sanction).

In *In re Vivendi*, also relied on by Alfa, *see* Alfa Opp. at 14-15, the Court first analyzed whether the entity had control over the documents within the meaning of the Federal Rules of Civil Procedure by virtue of having the practical ability to obtain them. *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 CIV. 5571 RJH HBP, 2009 WL 8588405, at *3 (S.D.N.Y. July 10, 2009). In conducting that analysis, the Court did not examine foreign law. As explained by the court, foreign law was only relevant to "the question of whether [the documents'] production is prohibited by Luxembourg law," a question the court did not reach because it first concluded that the entity did not have control of the documents under the Federal Rules. *Id.* at *5 n.4.[3]

---

[3] Even when deciding whether to impose sanctions, *after* control under Rule 34 has been decided, the mere existence of a conflict of laws—which Alfa has not established—does not preclude a court from imposing sanctions. "[C]ourts recognize comity as an important objective, [but] there

**B.  Alfa's Declarations Are Not Reliable and Do Not Show That Russian or Luxembourg Law Prevents Production of Plaintiffs' Documents.**

This Court "need not uncritically accept" Alfa's declarations "and may 'engage in its own research or reexamine and amplify material that has been presented by counsel in partisan fashion,'" *Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 228 (D.D.C. 2011) (cleaned up) (quoting Fed. R. Civ. P. 44.1 advisory committee's note). Furthermore, "[i]n the absence of sufficient information about the foreign law, 'the forum will usually decide the case in accordance with its own local law except when to do so would not meet the needs of the case or would not be in the interests of justice.'" *Id.* (quoting Restatement (Second) of Conflict of Laws § 136 cmt. h (1971)).[4] For several reasons, the Court should not rely on Alfa's declarations.

First, expert testimony on foreign law cannot be used to explain how that foreign law is applied to the facts of the case. "The purpose of expert testimony . . . is to aid the court in determining the content of the applicable foreign law—not to apply it to the facts of the case." *Minebea Co. v. Papst*, 444 F. Supp. 2d 68, 182 (D.D.C. 2006) (citing Fed. R. Civ. P. 44.1). Any

---

is little doubt that a United States Court has the power to order any party within its jurisdiction to testify or produce documents regardless of a foreign sovereign's views to the contrary." *In re Sealed Case*, 832 F.2d 1268, 1283–84 (D.C. Cir. 1987) (cleaned up), *abrogated on other grounds by Braswell v. United States*, 487 U.S. 99 (1988); *see In re Grand Jury Subpoena No. 7409*, No. 18-41 (BAH), 2018 WL 8334867, at *9 n.13 (D.D.C. Sept. 19, 2018) ("*Braswell* did not purport to abrogate the aspect of *In re Sealed Case* recognizing district courts' power to enforce grand jury subpoenas compelling disclosure prohibited by foreign law, however, and *In re Sealed Case* remains good law in this respect.").

[4] Alfa cites to *City of Harper Woods Employees' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009) to suggest that the law of the place of incorporation governs questions concerning the internal affairs of corporate entities, Alfa Opp. at 14 n.6, but that case involved a shareholder derivative suit, not a discovery dispute. Likewise, *United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 107 (2d Cir. 2000) was forfeiture action, not a discovery dispute.

portion of the declarations making legal conclusions about the facts should be excluded. *See Luxexpress 2016 Corp. v. Gov't of Ukraine*, No. 18-CV-812 (TSC), 2020 WL 1308357, at *8 n.8 (D.D.C. Mar. 19, 2020) ("[T]he court relies on the parties' declarations for their assessment of the content of the law, not for any of their legal conclusions.").

Both of Alfa's declarants attempt to offer such legal conclusions, Berezin Decl. ¶ 3 ("I was requested by counsel to Alfa . . . to provide an opinion under Russian law . . . [as to] whether [Plaintiffs] . . . have the legal right to obtain Alfa's documents."); Hoss Decl. ¶ 1.7 (addressing "whether Plaintiffs have the legal right under the laws of Luxembourg to obtain documents" from the company they control), which are not properly before this Court and should be excluded.

Second, the Court should be skeptical of the Alfa declarations because of the declarants' partiality. Courts can interpret and certainly apply foreign law without an expert, and the "Court is not obliged to credit the parties' partisan application of the governing law," *Minebea Co,*, 444 F. Supp. 2d at 182 (citing Fed. R. Civ. P. 44.1); *see also, e.g.*, *Leader Glob. Sols. LLC v. Yankelewitz*, 762 F. App'x 629, 632 n.1 (11th Cir. 2019) (per curiam) (citations omitted) ("[W]e are not bound by the parties' experts' opinions about the foreign law."). The Court, in fact, may "reject even uncontradicted expert testimony," *Botvin*, 772 F. Supp. 2d at 228 (citation omitted)).

The D.C. Circuit has noted "the Supreme Court's additional instruction . . . to scrutinize" factors including "'the statement's clarity, thoroughness, and support; its context and purpose; and the role and authority of the'" declarant "when evaluating a *foreign state's position* regarding the contents of its own law." *In re Grand Jury Subpoena*, 912 F.3d at 634 (cleaned up) (emphasis added) (quoting *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co.*, 138 S. Ct. 1865, 1873 (2018)). No case law entitles a *private litigant*'s view of foreign law to "the spirit of 'international comity,'" nor to the same "careful[] consider[ation]" of its views, accorded a foreign

state. *See Animal Science Products*, 138 S. Ct. at 1873 (quoting *Aerospatiale*, 482 U.S. at 543 & n.27).

The D.C. Circuit also emphasized its skepticism of statements of foreign law that were "from the retained counsel of a party with a direct stake in this litigation," and that "were plainly prepared with this particular proceeding in mind." *In re Grand Jury Subpoena*, 912 F.3d at 634. That is precisely the case here. One declarant is a partner in a law firm that represents one of Plaintiffs' companies *in this case*. Hoss Decl. ¶ 1.2 ("I am a partner at Elvinger Hoss Prussen."); *id.* ¶ 1.6 ("In connection with discovery matters in the [instant case] Elvinger Hoss Prussen represents LetterOne Investment Holdings S.A."). The other formerly worked for the law firm Akin Gump Strauss Hauer & Feld LLP, Berezin Decl. ¶ 1, which has previously represented Alfa in this District, *see OAO Alfa Bank v. Ctr. For Pub. Integrity*, 387 F. Supp. 2d 20, 22 (D.D.C. 2005), as well as Plaintiff Fridman, *see RSM Production Corp. v. Fridman*, Case No. 1:06-cv-11512-EJW (S.D.N.Y., filed Nov. 1, 2006); *RSM Production Corp v. Fridman*, Case No. 09-1202 (2d Cir., filed Mar. 23, 2009), and Vimpelcom, an Alfa entity.[5] Plaintiffs have provided no evidence, or even assertion, of the declarants' disinterestedness.

Third, the utter lack of documentation supporting Alfa's declarations also renders them unreliable and unhelpful. A review of expert testimony on foreign law that was relied on by another judge of this Court underscores just how slapdash and insufficient Alfa's declarations are. In *Chin-*

---

[5] *See Akin Gump Advises VimpelCom on $1 Billion Credit Facility*, Akin Gump, https://www.akingump.com/en/news-insights/akin-gump-advises-vimpelcom-on-1-billion-credit-facility.html (last visited July 24, 2020) (regarding 2014 representation); *Akin Gump Advises VimpelCom Subsidiary Global Telecom Holding in Sale of Zimbabwe Operations*, Akin Gump, https://www.akingump.com/en/news-insights/akin-gump-advises-vimpelcom-subsidiary-global-telecom-holding-in-1.html (last visited July 24, 2020) (regarding 2016 representation); *Assignment, Assumption and Second Amendment Agreement to Registration Rights Agreement*, https://www.sec.gov/Archives/edgar/data/1468091/000110465916146551/a16-18042_7ex4d1.htm (last visited July 24, 2020) (Akin Gump's representation of Vimpelcom in a 2016 SEC filing).

*Teh Hsu v. New Mighty U.S. Tr.*, No. CV 10-1743 (JEB), 2020 WL 588322, at *4 (D.D.C. Feb. 6, 2020), where several claims were brought under Taiwanese law, both parties' experts were law professors in Taiwan, one of whom was a former Grand Justice of Taiwan's high court. In briefing the motion to dismiss, the defendants' expert submitted a 50-page declaration, which included as exhibits various pertinent statutes and case law. *See* Decl. of Yeong-Chin-Su, No. CV 10-1743, ECF No. 62-3; *id.*, Exs. A–G, ECF No. 62-4. The plaintiffs' expert provided a 79-page declaration, which included as an exhibit nearly 60 pages of relevant sections of Taiwanese law. *See* Decl. of Tsung-fu Chen, No. CV 10-1743, ECF No. 66-25; *id.*, Ex. B, ECF No. 66-27. In contrast, Alfa has not filed on the docket any of the documents relied on or referenced by the declarants. *See* Berezin Decl. ¶¶ 4-5; Hoss Decl. ¶¶ 2.4, 3.1.4 – 3.1.7; 4.6 & n.18. Because Alfa has not provided "sufficient information about the foreign law," and because Plaintiffs chose to file this case in Washington, D.C., this Court should apply D.C. law. *See Botvin*, 772 F. Supp. 2d at 228.

Fourth, and most significantly, the Alfa declarants' statements are unhelpful because they do not address Plaintiffs' *collective* control of their documents. It is misleading to assess Plaintiffs' control of Alfa, looking only at each of them individually and not as what they are for purposes of this lawsuit – a collective troika. *See* Defs.' Mem. of Law in Supp. of Their Mot. to Compel ("Defs.' Br."), ECF No. 78, at 8-11, 20, 23-26**.** All three Plaintiffs jointly filed this action, are represented by the same lawyers, seek recovery on the same grounds, and have not represented any divergence of interest among them. The declarations are also unhelpful because they operate with false assumption that this lawsuit only concerns Plaintiffs' use of documents for a "personal purpose," Alfa Opp. at 24, as opposed to Plaintiffs' business or corporate purposes as the companies' ultimate beneficiary owners, co-founders and directors. Alfa's majority owners have

brought this case to pursue claims that statements made about Alfa are defamatory, *see* Defs.' Br. at 4–5, and they seek damages for harm to "institutional" reputations, Am. Compl. ¶ 33.

Finally, Alfa's declarants do not show that foreign law would prevent compliance with a production order. For example, Declarant Alexsandr V. Berezin appears to have copied and pasted the translations of three Russian laws concerning proprietary information, but he never addresses the application of those laws to foreign litigation, as a general matter. Berezin Decl. ¶¶ 5A-5D. Declarant Phillippe E. Hoss addresses data rights afforded to Luxembourg's holding companies under Luxembourg civil law and avers that "the use of such data … must therefore be in, and compatible with, the Company's interest." Hoss Decl. ¶ 3.9. Tellingly, again, there is limited discussion of how any of this language might be applied in litigation outside of Luxembourg, and no indication that Luxembourg law would prevent Plaintiffs from producing any documents. *See* Hoss Decl. ¶ 4.8.

For these reasons, the declarants do not appear to be experts as commonly understood under the Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 702 because their statements are not reliable or helpful. *See* Fed. R. Evid. 702 advisory committee's note (2000) ("Consistently with *Kumho* [*Tire Co. v. Carmichael*, 526 U.S. 137 (1999)], the Rule as amended provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful.").

## II. Plaintiffs *Collectively* Have Possession, Custody, or Control of Their Alfa Documents.

### A. Alfa Does Not Contest That Plaintiffs *Collectively* Have the Right, Authority, or Practical Ability to Obtain Their Alfa Documents.

The Alfa declarations do not address the source of Plaintiffs' control of their documents: their *collective* power over Alfa.[6] Alfa and Plaintiffs do not contest Plaintiffs' collective control; they deliberately focus only on Plaintiffs acting individually. However, as Defendants have shown, Plaintiffs *collectively* have majority ownership interests in Alfa, and thus collective control of their documents. *See* Defs.' Br. at 10, 23–24. Plaintiffs filed this lawsuit *together*, and together, the three of them own a combined majority of the Alfa Banking Group's shares—over 66%—establishing Plaintiffs' right, authority, or ability to obtain their Alfa documents. *See* Defs.' Br. at 9–10. Alfa has not contested that Plaintiffs collectively own this supermajority of Alfa Banking Group's shares, or that Plaintiffs, collectively, are the majority owners of ABH Holdings, the ultimate owner of Alfa Banking Group. Defs.' Br. at 10. Plaintiffs' collective majority ownership interests give them control of these entities the ability to obtain their documents. *See* Defs.' Br. at 11. Alfa's silence on Plaintiffs' collective ownership interests amounts to a tacit acknowledgement that, acting together, Plaintiffs have the right, authority, or practical ability to obtain their Alfa documents. (In their opposition brief, Plaintiffs also remain silent on their collective ownership and control of Alfa.)

Alfa's arguments that Plaintiffs' interests in Alfa entities "do not give them control over the entities such that they have control over the documents or the ability to influence the

---

[6] Defendants have not conflated Alfa and LetterOne, as Alfa complains. Alfa Opp. at 17. Defendants separately addressed LetterOne and Alfa throughout their brief. *See e.g.,* Defs' Br. at 24-25; 27-28. Moreover, it is Plaintiffs who have treated Alfa as encompassing LetterOne (and all of Plaintiffs' related entities). The only entity named in CIR 112 is Alfa. Yet Plaintiffs treat LetterOne as part of Alfa for purposes of discovery related to CIR 112, and therefore consider "Alfa" as it is used in CIR 112 as referring to "LetterOne." *See* Ex. 18, Pls.' Proposed Search Terms for Pls.' Doc. Reqs. To Defs., Mar. 23, 2020, ECF No. 78-21. Plaintiffs do not contest that this is how they have used the term "Alfa" in this litigation. *See* Pls.' Opp., ECF No. 84. Plaintiffs should not be permitted to treat "Alfa" as encompassing LetterOne and other entities when it comes to Plaintiffs' defamation claims, but then treat them as separate entities when it comes to Plaintiffs' obligations under discovery rules.

Companies' decisions," Alfa Opp. at 24, fail for the same reason: these arguments are premised solely on Plaintiffs' *individual* interests in the Alfa entities, not on their *collective* ownership interests. *Id.* at 25 (asserting that "[n]one of the Plaintiffs, however, are the majority shareholder," but failing to address the Plaintiffs' *collective* majority ownership interest).

Alfa's own financial disclosures demonstrate Plaintiffs' power to direct and influence Alfa Banking Group's decisions and actions through Plaintiffs' combined majority ownership stake. *See* Defs.' Br. at 24-25. The Prospectuses cited disclose that the "principal shareholders" – which include Plaintiffs Fridman and Khan – "have exercised and will continue to be able to exercise influence over the Alfa Banking Group's activities." *Id.* (quoting Ex. 44, ECF No. 78-47, Base Prospectus (2019)).[7]

Rather than contest that Plaintiffs control a majority of the ownership interests in Alfa Banking Group and continue to exercise influence over its activities, Alfa tries to obfuscate the Rule 34 implications of that fact by qualifying Defendants' description of the document and contending that Defendants "misunderstand[ ] … how debt instruments work." Alfa Opp. at 26. To be clear, Alfa does not dispute that the change in control provision shows that it was material information that a small number of shareholders – Fridman, Khan and Kuzmichev – own more than half of the shares and have the ability to act in concert, which could affect control of the Bank. *See* Defs.' Br. at 25. Likewise, because Fridman, Khan, and Aven also own more than 50%, the same collective control extends to them.

It is Alfa, not Defendants, who have misconstrued the offering in question, a bond

---

[7] The third principal shareholder disclosed in the Prospectus is Alexei Kuzmichev. But the same powers apply to the three Plaintiffs, who together also own a "substantial percentage of the Alfa Banking Group's outstanding shares." ECF No. 78-47 at 24-25. Plaintiff Aven has a 12.41% ownership interest in ABH Holdings, thus that interest combined with Plaintiff Fridman's interest (32.86%) and Plaintiff Khan's interest (20.97%) total over 66%.

prospectus issued in Ireland. Like a stock prospectus, a bond prospectus is a sales document drafted by the seller of debt, not by its prospective creditors. In Ireland, just as in virtually all other countries, the law requires the contents of a debt prospectus to be the responsibility of the issuer, not the prospective creditor. According to the Central Bank of Ireland, "at very least, the issuer, offeror and the person seeking admission to trading will be responsible for the whole of the prospectus." Central Bank of Ireland, *Responsibility for Information within a Prospectus for Debt Securities*, CFD 11/01, at 6 (2011), https://www.centralbank.ie/docs/default-source/Regulation/industry-market-sectors/securities-markets/prospectus-regulation/regulatory-requirements-guidance/2-gns-4-4-17-1-3-prospectus-for-debt-sec.pdf?sfvrsn=2. The ultimate seller of the debt in this instance was Alfa Bank, which borrowed funds raised on the Irish Stock Exchange by a special purpose entity called Alfa Bond Issuance PLC. The change of control provision was inserted by Alfa (or bankers working a Alfa's direction) to reassure prospective buyers they can liquidate their position without taking a loss in the event that Messrs Fridman, Aven et al decide to sell their stakes in Alfa. The creditors have no power to draft such provisions into an indenture. Their only influence over the terms of a debt offering is the indirect power that is held by every customer in every potential transaction: to walk away if the terms are not to their liking. The fact that Alfa feared that potential creditors might refuse to buy or hold Alfa's bonds in the event that the founding shareholders ceased to own a controlling majority of Alfa's voting stock is especially compelling evidence that Plaintiffs regularly act in concert and their collective influence over decisions and activities is considered elemental to Alfa's corporate identity.

Plaintiffs brought this lawsuit together and should be compelled to use their collective power to obtain their documents. Because the declarations fail to rebut Defendants' showing that

Plaintiffs, collectively, control their documents, the Court should hold that Plaintiffs, acting collectively, have the ability to obtain their documents.

### B. Alfa Has Not Sworn That Plaintiffs Lack Possession, Custody, or the Practical Ability to Obtain Their Alfa Documents.

Alfa has not sworn that Plaintiffs lack possession, custody, or the practical ability to obtain their Alfa documents. Alfa's declarants address only the "legal right" aspect of the control test. *See* Hoss Decl. ¶ 1.7 (stating that he was asked to address "whether Plaintiffs have the legal right under the laws of Luxembourg to obtain documents"); Berezen Decl. ¶ 3 (stating that he was asked to address whether Plaintiffs "have the legal right to obtain Alfa's documents under Russian law."). Likewise, Plaintiffs have not declared under penalty of perjury that they lack possession, custody, or control of the documents at issue. *See* Defs' Reply Br., ECF No. 89, at 2. This omission offers yet another reminder that, practically speaking, Plaintiffs have the ability to produce these documents; under Rule 34, "[c]ontrol does not require that the party have legal ownership or actual physical possession of the documents at issue, but rather 'the right, authority or *practical ability* to obtain the documents from a non-party to the action.'" *Bush v. Ruth's Chris Steak House, Inc.*, 286 F.R.D. 1, 5 (D.D.C. 2012) (emphasis added) (quoting *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007)).

Alfa and Plaintiffs have not even attempted to rebut the facts showing that Plaintiffs have possession, custody, or the practical ability to obtain their documents. *See* Defs' Br. at 18-40. They offer only unsupported conclusory statements and inapposite allusions to foreign law. *See, e.g.,* Alfa Opp. at 29 ("Further, as is made clear in the declarations from foreign counsel, Plaintiffs' positions as directors at the Companies do not provide them the legal right or ability to produce the Companies' documents.") Accordingly, the Court should hold that Defendants have met their burden and order Plaintiffs to produce their Alfa documents. *Cooper Indus., Inc. v. British*

*Aerospace, Inc.*, 102 F.R.D. 918, 919–20 (S.D.N.Y. 1984) (ordering defendant to produce documents at its foreign affiliate—a third party to the lawsuit—where defendant "submitted nothing more than conclusory statements to show that these documents are not in its custody or control.").

### C.  Plaintiffs Have Made No Serious Effort to Obtain Their Documents.

Alfa, like Plaintiffs, offers no evidence that Plaintiffs made any serious effort to obtain Plaintiffs' documents from Alfa. *See* Alfa Opp. at 36. Instead, without citation, Alfa suggests that Defendants must provide "evidence contradicting Plaintiffs' assertions that they were not able to coerce the Companies to release the requested documents." Alfa Opp. at 24.

To be clear, Plaintiffs have never made such assertions in the first place. Despite repeated requests by Defendants, neither Plaintiffs nor Alfa have provided any evidence of *Plaintiffs* trying to obtain their Alfa documents. Instead, according to Alfa, the full extent of Plaintiffs' efforts to comply with their discovery obligations were two oral requests from Plaintiffs' US counsel to Alfa's US counsel for documents. *See* Alfa Opp. at 2*; see also* Email from A. Lewis to J. Levy et al. (Apr. 2, 2020), ECF No. 78-9 ("On behalf of the Plaintiffs we [Plaintiffs' counsel] asked counsel for the Alfa group of entities . . . ."). Plaintiffs have not made any direct request – written or oral – to Alfa; two oral requests by Plaintiffs' counsel is where the matter began and ended. Plaintiffs, personally, have not made any efforts to use "whatever control or influence" they have "to acquire documents for purposes of responding to this discovery request." *Tavoulareas v. Piro*, 93 F.R.D. 11, 21 (D.D.C. 1981) (ordering the plaintiff to obtain the requested documents from the non-party or "*to show in detail* that he has made a good faith effort to do so and that that effort has been unavailing" (emphasis added)).

Rather than answer for Plaintiffs' failure to make anything but a superficial effort to obtain cooperation from the companies they own, Alfa seeks to confuse the issue by downplaying (yet never denying outright) Plaintiffs' considerable influence at the companies and distorting the standard under which influence is analyzed in Rule 34 disputes. *See* Alfa Opp. at 27-29. While Defendants cite several cases to show that a party's ability to influence the leadership of a non-party is a factor that animates a court's control analysis, Alfa argues that two such cases are "completely inapposite" because Defendants have not shown any contractual relationship or statutory requirement codifying Plaintiffs' influence at Alfa, erroneously implying that a party's ability to influence a non-party must be derived by legal instrument. *Id.* at 27-28, citing *Annunziato v. Collecto, Inc.*, 304 F.R.D. 360 (E.D.N.Y. 2015) and *Tomlinson v. El Paso Corp.,* 245 F.R.D. 474, 477 (D. Colo. 2007). Conversely, where Defendants cite to case law in which no such formalities are required and a party's longstanding ties to non-party board members support a finding of influence and control, as in *Shcherbakovskiy v. Seitz*, No. 03 CV 1220 RPP, 2010 WL 3155169 (S.D.N.Y. July 30, 2010), Alfa deems it "absurd speculation" to suggest that the facts in that case – wherein a Russian executive was ordered to produce documents previously withheld by non-party board members he appointed – might be analogous to the facts here. Alfa Opp. at 28.

Notably, nowhere in this flurry of rhetoric does Alfa contest that Plaintiffs have decades-long ties to several of the individuals with whom they currently share ownership and control at Alfa, LetterOne and related entities. *See* Defs. Br. at 20-29. Instead, Alfa again relies on conclusory statements and misleading constructions of the law, all of which obscures the practical reality that underlies this entire dispute: Plaintiffs have made no serious effort to produce their documents, and this Court is now burdened with additional litigation as a result.

### D.  Alfa's Declarations Do Not Contest Plaintiffs' Practical Ability to Obtain Their Documents.

16

Alfa's declarants make no mention of Plaintiffs' "practical ability" to obtain their Alfa documents, focusing the entirety of their analysis on Plaintiffs' legal rights as corporate officers in Russia and Luxembourg. In the United States, the law is "well-established that an individual party to a lawsuit can be compelled to produce relevant information and documents relating to a non-party corporation of which it is an officer, director or shareholder." *Huang v. iTV Media, Inc.*, No. 13CV3439JFBSIL, 2017 WL 706194, at *9 (E.D.N.Y. Feb. 22, 2017) (cleaned up). *See also* Defs.' Br. at 20-21. Alfa ignores this case law. Alfa never disputes that Plaintiffs hold leadership positions at Alfa and LetterOne. *See* Defs.' Br. at 21–22; Hoss Decl. at ¶2.3, ECF No. 80-2; Berezin Decl. ¶4, ECF No. 80-1.

Instead, Alfa creates a test for "practical ability" that is not grounded in the law of this Court and should be rejected. Alfa falsely claims that in order to compel a corporate officer to produce documents owned by a non-party, "the moving party has to establish not only that a party is an officer or director of a non-party entity, but that there are factors that establish that the party's role as a director or officer provides them the ability to obtain documents from that entity." Alfa Opp. at 22, citing *Weaver v. Gross*, 107 F.R.D. 715, 718 (D.D.C. 1985). This is brazen misreading of *Weaver*, which found that the "role of the defendant as President and Chief Executive Officer, as well as a significant shareholder in [the third-party corporation], suggests sufficient personal involvement in the operations and activities of the [third-party corporation] to require" production of documents in the possession and custody of that corporation. *Id.*[8]

---

[8] In addition to misconstruing the Court's holding, Plaintiffs ignore the portion of *Weaver* that would be far more germane to the facts at hand. Namely, that "the artificial distinction between the defendant in his activities as Chief Executive Officer and the corporation as a separate legal entity is totally unwarranted," in contexts where, as in this case, the individual's alleged activities in his corporate capacity are "inextricably intertwined" with the dispute giving rise to litigation. *Weaver*, 107 F.R.D. at 718.

Similarly, Alfa's attempts to distinguish more recent holdings ordering production of documents by officers in a non-party corporation – *In re Kidd* and *U.S. Philips Corp. v. Synergy Dynamics Int'l, LLC*– fail. In those cases, the courts found that neither party ordered to produce corporate documents in those cases "alleged or attempted to establish he had no practical ability to obtain the documents." Alfa Opp. at 23. To be clear, *neither has Alfa*. Its declarations address only the "legal right" aspect of control, not the "practical ability" of Plaintiffs to obtain their documents. Nor does Alfa challenge that Plaintiffs have possession or custody of the documents. Alfa misleadingly claims that the declarations state that "Plaintiffs' positions as directors at the Companies do not provide them the legal right or ability to produce the Companies' documents," citing to Hoss Decl. at 5.2-5.5 and Berezin Decl. at 6(C) and (F), but the declarations say nothing about plaintiffs' actual possession or practical ability to access their documents. Instead of discussing whether Plaintiffs have the *practical ability* to obtain the documents, Alfa's declarants discuss the assessment of privilege – a process that Plaintiffs can seamlessly coordinate with Alfa, once Plaintiffs begin to review their documents.[9]

Courts have found that a party has the practical ability to produce documents under Rule 34 when the party has access to the documents in the ordinary course of business. Plaintiffs and

---

[9] Berezin Decl. ¶ 6(C) states that "only the Bank may waive any privilege in respect of such information or remove any restrictions in respect of access to it, its disclosure or distribution" and ¶ 6(F) states: "the Chairman of the Executive Board of the Bank, in consultations with the appropriate departments of the Bank, but not the Board of Directors of the Bank or any member thereof, has the sole right to determine if the information (i) is subject to any other person's proprietary rights, (ii) constitutes the Information Restricted for Disclosure, (iii) is subject to any privilege or restrictions (and if so, to which), as well if such privilege or restrictions is waivable and may be waived." These paragraphs say nothing about Plaintiffs' practical ability to obtain their documents. Likewise, Hoss Decl. ¶ 5.2-5.5 do not address practical ability, but rather that Plaintiffs "acting personally" "do not have the power to obtain, give access to or otherwise disclose documents belonging to the Companies." This does not address whether Plaintiffs have the *practical ability*—as opposed to the legal right—to obtain these documents.

Alfa have never denied Plaintiffs' practical ability to access the documents in the ordinary course of business and certainly have not filed declarations including such denials. Their practical ability to obtain their documents therefore remains uncontested.

Plaintiffs' continued use of corporate email is further indication they have the practical ability to produce those documents, which are currently in their possession, for the purposes of this lawsuit. Access to documents in the ordinary course of business has been held sufficient to support a finding of practical ability. *See In re Flag Telecom*, 236 F.R.D. 177, 181 (S.D.N.Y. 2006) ("[Non-party corporation] employees are permitted to utilize the documents in the course of employment, as they must in order to perform their jobs, and therefore [defendant], as a senior officer of the corporation in charge of strategic development, has the practical ability to obtain them."). *See also* Defs' Br. at 36-38. Plaintiffs' use of corporate email for their personal use shows that they can access and use their corporate email accounts when it suits them.

Alfa, attempting to distance itself from the compelling holding in *In re Flag Telecom*, inaccurately claims that the finding of practical ability in that case was based on the defendants' efforts to "thwart plaintiff's discovery" and the non-party's insistence on the use of the Hague Convention. The case says no such thing. The court in that case held that because the employees of the non-party company were permitted to access the documents in performing their jobs, then the senior officer of the non-party company had the practical ability to obtain the documents from that company. *In re Flag Telecom*, 236 F.R.D. at 181. The court said that the fact that the defendants had tried to thwart the discovery lent "credence to plaintiffs' 'shell game' allegation" – not that that fact was dispositive of the control question. *Id.* And the court's discussion of the Hague Convention had no bearing on the finding that the senior officer had control of the documents. *Id.* at 182.

Moreover, the plain language of Rule 34 requires Plaintiffs to produce responsive documents that are within their "possession" or "custody" or "control." Ownership is not the test for Rule 34 "possession, custody or control;" "if a party possesses or has custody of a document or thing belonging to another person, the party must produce it." *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999) (citation omitted). Therefore Alfa's assertion that the emails "constitute tangible or intangible assets forming part of the assets of the relevant Company"– *i.e.*, that Alfa has an ownership interest in the emails—is *not* the test under Rule 34. Alfa Opp. at 35. It is sufficient for purposes of Rule 34 that Plaintiffs have the ability to access the emails, or possession or custody of the emails. Plaintiffs' use of their corporate email account shows that they have such access to and possession or custody of their emails and thus must produce them.

### E.  Outside of this Litigation, Plaintiffs Are Widely Perceived as Controlling Alfa and Thus Have the Ability to Obtain Their Documents.

Outside of this lawsuit, Alfa and Plaintiffs have been clear that Plaintiffs are in control of Alfa and thus their documents. Plaintiffs should not be allowed to hold themselves out as controlling owners of Alfa in media and financial disclosures only to feign impotence when it is time to produce documents in a lawsuit they elected to prosecute.[10] Even *Alfa itself* has made this representation in various financial filings. *See* Defs.' Br. at 33 & Ex. 61, Vimpelcom Prospectus (2010), ECF No. 78-64. Alfa complains that these statements are not "from the Plaintiffs." Alfa Opp. at 32. But Defendants have pointed to numerous statements from government entities, financial filings, and the press that have remained uncorrected over the years; Alfa does not point

---

[10] Plaintiffs claim that cases cited on this issue in Defendants' Brief "are distinguishable on their facts." Pls.' Opp'n at 17. That is unpersuasive given the reality that a court's analysis of control under Rule 34 is a "highly fact-specific" inquiry. Wright & Miller, Fed. Prac. & Proc. § 2210.

to a single instance outside this litigation in which Plaintiffs or Alfa have disputed that Plaintiffs are the leaders of Alfa and LetterOne. *See* Defs.' Br. at 32-34. Moreover, practical control is shown by the fact that Plaintiffs are "treated" as the "boss" by others, regardless of the "precise legal structure" of the relationship between Plaintiffs and the non-party entities and regardless of whether Plaintiffs make the statements themselves. *See Chevron Corp.*, 296 F.R.D. at 210–11 (holding that the defendant had the practical ability to obtain documents from non-party attorneys working with the defendant because the evidence showed that the non-party attorneys treated the defendant as the "boss" of the team and therefore the defendant clearly had "practical control over [the non-party attorneys], regardless of the precise legal structure.") Plaintiffs are, for practical purposes, and regardless of the precise legal structure, treated as the leaders of Alfa and LetterOne. Accordingly, any *serious* effort by Plaintiffs to obtain and produce their documents could have obviated the need for this motion.

### F. Alfa's Uncontested Substantial Stake in the Litigation Supports a Determination That Plaintiffs' Control Their Alfa Documents

Plaintiffs have consistently asserted Alfa's interests in this litigation. Alfa laughably insists this point is "unsubstantiated," Alfa Opp. at 31, when it is Alfa—not Plaintiffs—that is named in two of the three statements Plaintiffs claim are defamatory, Pls.' Suppl. Resp. to Interrogatory No. 2, ECF No. 78-6.[11] Alfa has considerable incentive to aid Plaintiffs in withholding production of their documents, furthering their mutual interest in the outcome of this litigation, exhibiting exactly

---

[11] Plaintiffs claim that in CIR 112, "Plaintiffs Fridman, Aven, and Khan, *along with Alfa*, are alleged to maintain a highly inappropriate, and even criminal, relationship with Putin, based on criminal interaction dating back to the 1990s." Am. Compl. ¶ 23 (emphasis added). As to damages, Plaintiffs claim that "[t]he false statements by the Defendants referred to above defamed the Plaintiffs *and Alfa*, and have caused and will continue to cause serious injury to their personal, professional, and *institutional reputations*." Id. ¶ 33 (emphasis added).

the sort of "complicity in storing or withholding documents" that courts seek to proscribe. *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 306 (M.D.N.C. 1998).

Alfa does not deny that it stands to benefit from a judgment in Plaintiffs' favor. *See* Alfa Opp. at 30-31. Instead, Alfa tries to diminish the importance of its substantial interest in this action by misconstruing the case law. Alfa argues that the case law "suggests" that a non-party's interest in the litigation is narrowly applied to control analyses and only a "relevant factor when the non-party would be harmed by the litigation and has shared documents during similar litigation in the past or where the non-party would benefit financially from the litigation and has frustrated the discovery process." Alfa Opp. at 31. Not so. In *Gross v. Lunduski*, 304 F.R.D. 136, 143 (W.D.N.Y. 2014), what mattered to the analysis of practical ability was that the non-party had "a substantial interest in the case," and that its interests and the Defendant's interests were "sufficiently aligned and closely interrelated in this case to support a finding that . . . the Defendant has the 'practical ability' to obtain documents held by [the non-party]." Similarly, Alfa has a substantial interest in this case, because it is Alfa, not Plaintiffs, that is named in two out of three of the allegedly defamatory statements. In addition, Alfa's and Plaintiffs' interests are completely aligned, as demonstrated by Plaintiffs seeking damages for harm to "institutional reputations," *see* Am. Compl. ¶ 33, and further demonstrated by the redundant and overlapping arguments Plaintiffs' and Alfa raise in opposition to Defendants' Motion to Compel at issue here. Moreover, even assuming *arguendo* that Alfa's interpretation of the case law is correct, Alfa *would* "benefit financially from the litigation" and *has* "frustrated the discovery process." Alfa Opp. at 31. Because Plaintiffs seek damages to "institutional reputations," they are clearly alleging some financial harm to Alfa that their lawsuit presumably seeks to remedy. Likewise, Alfa's efforts to direct and control the *parties'* discovery obligations in this case, while Alfa itself tries to remain on the sidelines, has clearly

"frustrated the discovery process" and burdened this court with additional litigation as a result. *See infra* at 23-25.

### III.     Alfa Has Not Offered to Produce All Responsive and Relevant Documents and Requiring Defendants to Seek Plaintiffs' Documents from Alfa Prejudices Defendants.

Alfa's communications with Defendants do not relieve Plaintiffs of their obligations under Rule 34. Alfa has tried to portray itself as a generous third party, overstating what it has represented to Defendants, while failing to mention the significant additional burden that would be imposed on Defendants were they to seek *Plaintiffs'* documents from Alfa.

First, as set forth at length in Defendants' Memorandum of Law in Support of Their Motion to Compel ("Defs.' Br."), ECF No. 78 & Exhibits, Plaintiffs' documents are subject to discovery under Rule 34 because Plaintiffs have possession, custody, or control of them. *See In re Flag Telecom,* 236 F.R.D. at 182 (holding that because the senior officer of the non-party corporation had control over the corporation's documents, those documents were "subject to discovery pursuant to Rule 34 … irrespective of their location."). Forcing Defendants to pursue the vast majority of Plaintiffs' documents from a third party could place Defendants at a serious disadvantage.

This disadvantage is laid bare by a close reading of Alfa's "offer" to "consider" the production of some documents, "provided that we are able to come to a mutual agreement as to the scope of any request." Email from M. Krawiec to J. Levy (May 1, 2020) ("May 1 Email"), ECF No. 78-32, at 1 (emphasis added). While Alfa claims its efforts are a "significant sign of good faith," Alfa Opp. at 1, the Court should be clear on this point: Counsel has merely stated it is willing "to negotiate" with Defendants "on a mutually agreeable scope of production," and to produce emails only for whatever Alfa decides is a "reasonable time period." Email from M.

Krawiec to J. Levy (May 8, 2020), ECF No. 78-33, at 1 (emphasis added). In other words, should Defendants not agree with Alfa's position on the "scope of any request," the "reasonable time period," or the "scope of production," which is very likely, Defendants would either have to accept Alfa's terms, or pursue what Alfa's counsel describes as an "at best cumbersome" process of the Hague Convention or letters rogatory. *Id.* These are not "genuine efforts to accommodate" Defendants. Alfa Opp. at 6. At issue are Plaintiffs' documents, and Rule 34 requires Plaintiffs to produce them. Sending Defendants to request the documents from the companies Plaintiffs own and control, under terms dictated by the companies, is no substitute for party discovery and greatly prejudices Defendants' ability to defend themselves in this litigation.

Indeed, even if Alfa were willing to accept service of a subpoena, courts afford greater discovery protections to non-parties in discovery disputes than to parties. *See Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (noting that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in Rule 45 inquiry" (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)) (internal quotations and citations omitted); *Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012) (stating that courts "have the discretion to limit discovery to prevent undue expense to third parties, even if the discovery sought is within the permissible scope of Rule 45 and Rule 26" (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)). Thus, if Alfa's "efforts to accommodate" Defendants yielded any of the disputes typical of the party discovery process, it is quite likely that any unresolved dispute would land before this Court, only with Alfa arguing Plaintiffs' positions with the benefit of a reduced discovery burden typically afforded third parties. Not surprisingly, Alfa does not contest that, as a third-party, the Court could afford it greater discovery protections. *See* Alfa Opp. at 10-11. Nor does Alfa offer any assurance that it would not

seek to exploit the greater discovery protections offered to a third-party or avoid service altogether. *Id.* Indeed, Alfa never addresses the substance of Defendants' objections to a process that would require Defendants to seek the vast majority of party discovery under Rule 45, *see* Defs.' Br. at 16-18, other than to mischaracterize Defendants' concerns as "speculative" and nakedly assert that Defendants' are "unnecessarily running to court." *See* Alfa Opp. at 1, 31.[12]

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Compel and order Plaintiffs to review and produce their Alfa documents, and that the Court provide any other relief that it finds to be just, proper, and equitable. Should the Court find that Defendants have not met their burden, Defendants respectfully request that the Court give Defendants leave to pursue targeted discovery, including depositions, from Plaintiffs concerning the issue of control.

Dated:  September 4, 2020                    By:     */s/* Joshua A. Levy

Joshua A. Levy (D.C. Bar No. 475108)
Rachel M. Clattenburg (D.C. Bar No. 1018164)
LEVY FIRESTONE MUSE LLP
1401 K St. NW, Suite 600
Washington, DC 20005
Tel: (202) 845-3215

---

[12] Nor does Alfa offer any assurances that Alfa's counsel, Skadden, has an arm's length relationship with Plaintiffs. *See* Alfa Opp. at 13. As Defendants pointed out, Defs.' Br. at 15-16, Skadden lacks an arm's length relationship with Plaintiffs because Skadden represented Plaintiff Aven personally in the Special Counsel's investigation, has served as long-time counsel to Alfa and LetterOne, and employed Plaintiff Khan's son-in-law. Alfa states only that these are "reckless and unsupported allegations" – but does not deny them. Alfa Opp. at 13. Moreover, Defendants provided support for these allegations. *See* Defs.' Br. at 7 & n.3; 15-16 & nn.7-9; & Exs. 16, 31-34 (ECF Nos. 78-19, 78-34 – 78-37).

Fax: (202) 595-8253
jal@levyfirestone.com


*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 4, 2020, the foregoing Memorandum in Opposition was filed using CM/ECF, which serves a copy on all counsel of record.


/s/ Joshua A. Levy
Joshua A. Levy