UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN, )<br><br>*Plaintiffs,* )<br><br>v. )<br><br>BEAN LLC (a/k/a FUSION GPS) and GLENN SIMPSON, )<br>*Defendants.* ) | Case No. 1:17-cv-02041 (RJL) |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS
WITHHELD AS PRIVILEGED BY DEFENDANTS**

CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
(917) 533-2524

SPERDUTO THOMPSON & GASSLER PLC
1747 Pennsylvania Ave., NW, Suite 1250
Washington, DC 20006
(202) 408-8900

*Attorneys for Plaintiffs*

*Of Counsel:*

Alan S. Lewis
Kim Sperduto

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ................................................................................................... 4

POINT I
NEITHER DEFENDANTS' PRIVILEGE LOGS NOR THEIR COUNSEL'S
DECLARATION DEMONSTRATE THE  PRIVILEGED CHARACTER OF
THE WITHHELD DOCUMENTS ..................................................................... 4

POINT II
THE DOCUMENTS APPEAR NOT TO BE PROTECTED BY THE ATTORNEY-
CLIENT PRIVILEGE ....................................................................................... 8

POINT III
DEFENDANTS' CLAIMS OF WORK-PRODUCT PROTECTION LACK MERIT ........... 13

   A.  The Documents Were Not Prepared or Obtained Because of Anticipated
      Litigation ................................................................................................ 13

   B.  The Documents Were Not Prepared at a Lawyers' Direction ....................... 18

   C.  Defendants Were Gathering Opposition Research ...................................... 19

CONCLUSION ................................................................................................ 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Corp. v. Microsoft Corp.*,
  2003 U.S. Dist. LEXIS 8710 (N.D. Cal. Apr. 18, 2003) ........................................................11

*Banneker Ventures, LLC v. Graham*,
  253 F. Supp. 3d 64 (D.D.C. 2017) .........................................................................................12

*\*Campbell v. United States Dep't of Justice*,
  133 F. Supp. 3d 58 (D.D.C. 2015)...........................................................................4, 5, 14, 18

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ...............................................................................................16

*\*EEOC v. Lutheran Social Servs.*,
  186 F.3d 959 (D.C. Cir. 1999) ...................................................................................14, 15, 16

*FTC v. Boehringer Ingelheim Pharms., Inc.*,
  180 F. Supp. 3d 1 (D.D.C. 2016) ......................................................................................10, 12

*FTC v. Boehringer Ingelheim Pharms., Inc.*,
  778 F.3d 142 (D.C. Cir. 2015) ...........................................................................................13, 14

*In re G-I Holdings Inc.*,
  218 F.R.D. 428 (D.N.J. 2003)....................................................................................................9

*In re Grand Jury Subpoenas Dated Mar. 24, 2003*,
  265 F. Supp. 2d 321 (S.D.N.Y. 2003)......................................................................................10

*Judicial Watch, Inc. v. Comm'n on U.S.-Pac. Trade & Inv. Pol.*,
  1999 U.S. Dist. LEXIS 23417 (D.D.C. Sept. 30, 1999) ...........................................................7

*\*In re Kellogg Brown & Root, Inc.*,
  756 F.3d 754 (D.C. Cir. 2014) ..................................................................................................9

*Mannina v. Dist. Of Columbia*,
  2019 U.S. Dist. LEXIS 76260 (D.D.C. May 6, 2019).........................................................4, 5

*Nat'l Ass'n of Crim. Def. Lawyers v. Exec. Office for U.S. Attorneys*,
  844 F.3d 246 (D.C. Cir. 2016) ................................................................................................18

*NLRB v. Jackson Hosp. Corp.*,
  257 F.R.D. 302 (D.D.C. 2009)..................................................................................................8

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
 268 F.R.D. 114 (D.D.C. 2010)..................................................................................16, 17

*Shapiro v. U.S. Dep't of Justice*,
 969 F. Supp. 2d 18 (D.D.C. 2013) ........................................................................19

*In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*,
 439 F.3d 740 (D.C. Cir. 2006) ..........................................................................7, 19

*\*Tax Analysts v. IRS*,
 117 F.3d 607 (D.C. Cir. 1997) ..............................................................................12

*United States v. Adlman*,
 134 F.3d 1194 (2d Cir. 1998) ................................................................................17

*United States v. Deloitte* LLP,
 610 F.3d 129 (D.C. Cir. 2010) ..............................................................................14

*United States v. Kovel*,
 296 F.2d 918 (2d Cir. 1961)...................................................................................9

*United States v. Nobles*,
 422 U.S. 225 (1975)...............................................................................................18

*United States v. Singhal*,
 800 F. Supp. 2d 1 (D.D.C. 2011) .....................................................................12, 13

*Willingham v. Ashcroft*,
 228 F.R.D. 1 (D.D.C. 2005)...................................................................................17

**Other Authorities**

Fed. R. Civ. P. 26(b)(3)(A) ...............................................................................................14

## PRELIMINARY STATEMENT

Respectfully, Defendants should be required to produce the documents they have withheld as purportedly privileged.  As explained below, Defendants' opposing arguments do not alter that conclusion.  Rather than taking on the deficiencies of their privilege logs and adequately defending their assertions of attorney-client privilege and work-product protection, Defendants mostly obfuscate.  For example, Defendants devote nearly an entire page to arguments concerning Plaintiffs' supposed "failure to comply with even their most basic discovery obligations."  Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel, filed Sept. 11, 2020 (Dkt. 104) ("Opp.") at 2-3.  Those arguments, the subject matter of a different motion before the Court, have nothing to do with the parties' dispute concerning Defendants' dubious privilege assertions.

Revealingly, Defendants argue that most of the documents they have withheld are purportedly protected from disclosure by *both* the attorney-client privilege and the work-product doctrine.  Defendants seemingly frame their Opposition in this way to avoid grappling with the essential point of Plaintiffs' motion—because of the inadequacies of Defendants' log, Plaintiffs lack the basic information necessary to meaningfully assess Defendants' privilege and work-product assertions.  Nevertheless, on the basis of what Plaintiffs have thus far been able to discern from the limited information they have, it appears that the overwhelming majority of documents listed on the log are not, and could not possibly be, protected from disclosure on the basis of privilege or as work-product.

Defendants contend that the mere fact of Plaintiffs' challenge to Defendants' assertions somehow proves that Defendants have provided enough information to enable Plaintiffs to assess their claims.  *See* Opp. at 21, 23-25.  This misses the entire point of Plaintiffs' motion, which is

that given the inadequacy of the information Defendants have provided, Plaintiffs are unable to test Defendants' specific assertions as to any particular document. Indeed, the rote, generic descriptions and claims of both attorney-client privilege and work-product protection with respect to virtually every document listed on Defendants' logs—particularly when coupled with the fundamental inadequacies of those descriptions and claims—are woefully inadequate to satisfy Defendants' burden to establish a valid privilege and leave Plaintiffs with essentially no meaningful way to distinguish the purportedly privileged character of one document from another. And although Defendants' failure, *after two attempts,* to meet their obligation to provide a proper privilege log itself undermines Defendants' sweeping assertions of privilege and work-product protection, the conclusion that Defendants are withholding non-privileged documents is underscored by the content of the very limited information Defendants have thus far provided. For example, Defendants previously asserted privilege as to documents that turned out to be nothing more than invoices and cover emails—initially mislabeled by Defendants as confidential communications in their privilege log.

The legal authorities cited by Defendants also undermine their claims of privilege and work-product protection. As noted in Plaintiffs' opening memorandum (Dkt. 95-1), the vast majority of the documents listed on Defendants' privilege log over which Defendants claim attorney-client privilege do not identify an attorney or client as a recipient or author. Defendants, moreover, do not even attempt to claim that they ever actually received any confidential information from the client. Defendants also effectively concede in their Opposition that they were—at best—retained by Perkins Coie for the *mixed* purpose of conducting political opposition research and assisting Perkins Coie to provide legal advice to its client. Yet Defendants have not produced even a single document relating to the former. Defendants appear

to be taking the position that *some* of their work was for the purpose of providing legal advice, and on that ground attempt to take the position that *all of it* is privileged, whether related to legal advice or the political opposition work.  That is not the law.

Defendants' attempts to justify their work-product claims fare no better.  Those claims are premised on the assertion that they were supposedly retained by Perkins Coie as part of Perkins Coie's representation of HFACC and the DNC "to ensure that [Perkins'] clients had an 'adequate factual basis for any claims or allegations' made during the campaign,"[1] and "public allegations raised during the intensely contested presidential campaign could—and ultimately did—lead to litigation."  Opp. at 8.  In other words, Defendants effectively concede that they were not retained in anticipation of any *actual* litigation, yet assert that their work should nevertheless be protected by the work-product doctrine simply because (a) if they got it wrong, HFACC or the DNC could in theory be sued for defamation, and (b) Defendants were eventually sued.  Defendants' analysis is unavailing for several reasons.  First, to sustain their burden, Defendants are required to show that the documents were prepared at Perkins Coie's direction because of the prospect of litigation.  They have not done so.  Moreover, many of the documents withheld appear to be nothing more than internal communications or communications with a third-party vendor that plainly were not prepared by anyone acting at a lawyer's direction, which almost by definition simply cannot be covered by the work-product doctrine.

In any event, Defendants' description of their role vis-à-vis Perkins Coie, HFACC and the DNC is specious.  Defendants plainly were not "assisting" Perkins Coie to evaluate litigation risk from statements made or research undertaken by someone else; rather it was Defendants

---

[1] Opp. at 7-8 (citing Declaration of Joshua A. Levy, dated July 28, 2020 (attached as Ex. 16 to Declaration of Alan S. Lewis, dated Aug. 13, 2020 (Dkt. 95-2)) ("Levy Decl.") ¶ 6).

themselves that compiled the statements and opposition research.  There was only a theoretical

litigation risk *if Defendants' own research* was incorrect.

In sum, far from discharging their burden to justify their privilege log and the assertions

of privilege and work-product with respect to the listed documents, Defendants' Opposition

serves only to raise even more questions regarding their adequacy and legitimacy.

## ARGUMENT

### POINT I

### NEITHER DEFENDANTS' PRIVILEGE LOGS NOR THEIR COUNSEL'S DECLARATION DEMONSTRATE THE PRIVILEGED CHARACTER OF THE WITHHELD DOCUMENTS

Defendants effectively admit that their supplemental privilege log, standing alone, fails to

provide enough information to assess their claims, by explaining that "[c]oupled *with the*

*declaration*, the supplemental log *adds* the information necessary to understand how each

withheld document fits into the claimed protections."  *See* Opp. at 23 (emphasis supplied).  In

any event, the cases cited by Defendants illustrate the deficiencies of Defendants' logs.  In

*Campbell v. United States Dep't of Justice*, 133 F. Supp. 3d 58 (D.D.C. 2015), the index of

withheld documents described for each "the nature and contents of the document[,] the

document's author and origin, and the circumstances of its creation" as well as "a detailed

justification for the withholding of each document including describing the anticipated litigation.

Moreover . . . each document was prepared by a lawyer, or a person acting at a lawyer's

direction."  *Id*. at 68.  Similarly, in *Mannina v. Dist. Of Columbia*, 2019 U.S. Dist. LEXIS 76260

(D.D.C. May 6, 2019), the court specifically stated that the privilege log at issue:

> clearly identifies the documents, the senders and recipients where
> applicable, and includes a descriptive narrative describing the
> reasons for redacting or withholding each document.  The
> unredacted portions of documents provide additional context and
> information to evaluate the privilege identified on the Privilege Log.

4

*Id.* at *18.

By contrast here, the information included on Defendants' privilege logs does not come close to meeting the standards approved by the courts in *Campbell* or *Mannina*.  Although Defendants identify (in some cases) the senders and recipients of most (but not all) of the documents, Defendants have failed to provide any information whatsoever regarding the subject matter or contents for the overwhelming majority of the withheld documents beyond the this repeated, generic description: "Confidential communication regarding research prepared at the direction of Perkins Coie and in anticipation of litigation, and for the purpose of providing legal advice."  *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Compel Production of Documents Withheld as Privileged by Defendants, filed Aug. 14, 2020 (Dkt. 95-1) ("Mem.") at 12-13.  Defendants most certainly have not provided Plaintiffs with a "detailed justification for the withholding of each document including describing the anticipated litigation" for the documents withheld on the basis of the work-product doctrine.  *Campbell*, 133 F. Supp. 3d at 68.  Instead, Defendants repeat *327 times* on their supplemental log that the document or communication was withheld "in anticipation of litigation"—but have failed to provide (because they apparently cannot) any description of the allegedly anticipated litigation.  *See* Mem. at 13.

Similarly, Defendants' reliance on multiple cases for their argument that using a "common narrative" to describe more than 300 entries, while failing to provide the subject lines of communications, dates or author information, and identifying documents only as "email" or "attachment" amounts to mere "technical deficiencies" is unavailing.  *See* Opp. at 23-24.  For example, the opponent of the privilege log in *Texas v. Holder* alleged that the log was insufficient "because in some cases the documents' source or recipient(s) is not listed" and not because the log contained duplicative descriptions.  2012 U.S. Dist. LEXIS 206462, at *23

(D.D.C. June 5, 2012).  Moreover, rather than "approving of duplicative descriptions", which is
the proposition for which Defendants cite to *Texas*, the court found that the log entries for
documents "authored by" two specific individuals and described as "[c]onfidential
communication[s] among Secretary of State and Office of the Attorney General of Texas made
for the purpose of giving or seeking legal advice" provided the log opponents with enough
information to assess the claim of attorney-client privilege.  *Id.*

      Similarly, while the court in *Feld v. Fireman's Fund Ins. Co.*, approved of a log listing
documents as "email, attachment or standalone computer file", the log *also* included, for each
document for which work-product protection was claimed, "date, title (typically, the subject line
of an email) . . . document identification number, from, to, and carbon copy recipients, the
privilege type (that is, attorney-client privilege, attorney work product, or both), any additional
notes, and the 'privilege basis.'"  991 F. Supp. 2d 242, 248 (D.D.C. 2013).  Notably, the
"privilege basis" column in *Feld* also included "detailed descriptions of each individual
document," such as "[e]mail between [Plaintiff's] attorneys attaching draft letter to C. Kirk,
dated 10/27/09, addressing [Defendant's] questions re: potential conflicts of interest and splitting
defense costs, and seeking attorney impressions and conclusions re: same. WP in anticipation of
potential litigation with [Defendants]." *Id.*  In stark contrast to the log in *Feld*, Defendants'
supplemental log omits the subject line of the listed email communications and lacks a detailed
description of the basis of Defendants' assertions of the attorney-client privilege and work-
product doctrine.  *See* Mem. at 12-13.

      Defendants, citing *Judicial Watch, Inc. v. Comm'n on U.S.-Pac. Trade & Inv. Pol.*, 1999
U.S. Dist. LEXIS 23417 (D.D.C. Sept. 30, 1999), argue that the repetition of the legal basis for
their assertions of privilege throughout their log is "not dispositive."  Opp. at 24.  But the

repetition of the basis for asserting the attorney-client privilege in *Judicial Watch* was "not dispositive" because each entry also contained "all the necessary elements", including "the recipients, page length," and an "albeit briefl[]" description of "the subject matter of the communication."  1999 U.S. Dist. LEXIS at *23-24.  In contrast, Defendants' supplemental log in this case lacks any description of the subject matter of the listed documents.

More importantly, however, Defendants point to no case in which *all* of the deficiencies present in their logs have been held to be proper when *taken together*.  It is their repeated, generic description of documents and communications listed on the supplemental log, their failure to identify the documents in any more specific way than "email," "attachment," or "loose document," and their assertion of both the attorney-client privilege and work-product protection for all but a handful of items on the log that together constitute more than mere "technical deficiencies."  Moreover, in several cases, Defendants' inadequate entries contain far more than "technical deficiencies," and in fact go to the very heart of their ability to claim privilege at all.  Indeed, Defendants actually admit that for the documents identified on their logs as "loose documents," they cannot even identify "with reasonable certainty" the title, date or authorship of the documents.  *See* Opp. at 24-25.  If Defendants cannot identify this information, then they cannot sustain their burden and these documents must be produced.  *See, e.g.*, *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750 (D.C. Cir. 2006).

Finally, pointing to their counsel's declaration, Defendants assert that the proponent of a privilege log "can bolster its claim through declarations or affidavits elaborating on the basis for seeking protection."  *See* Opp. at 22.  Even if true, in this case Defendants' counsel's declaration suffers from the same deficiencies as the supplemental log itself.  Instead of providing any of the

descriptive information missing from their deficient privilege log, the declaration describes the

withheld documents using the exact same phrase used for the majority of items on the logs, e.g.,

"Confidential communication regarding research prepared at the direction of Perkins Coie and in

anticipation of litigation, and for the purpose of providing legal advice" and alleges that the

repeated description is sufficient "to facilitate Plaintiffs' assessment of the privileges claimed."

Levy Decl. ¶ 10.

Defendants' two privilege logs and the declaration of its counsel do not provide Plaintiffs

with enough information about the logged items to assess whether they have been properly

withheld. Defendants should not be given a fourth opportunity. If anything, the positions taken

by Defendants and the arguments in their Opposition strongly suggest that another log will only

result in additional disputes and further motion practice—which, respectfully, should be avoided

by way of an order either requiring Defendants to produce the withheld documents or, at a

minimum, to provide all of the documents on their supplemental log to the Court for *in camera*

review.[2]

## POINT II

### THE DOCUMENTS APPEAR NOT TO BE PROTECTED BY
### THE ATTORNEY-CLIENT PRIVILEGE

As noted in Plaintiffs' opening memorandum, it appears that the deficiencies in

Defendants' log are being used to shield key documents over which Defendants have no valid

basis to assert privilege. And, far from supporting their privilege claims, the cases upon which

Defendants rely actually undermine them. Defendants have offered no legal justification for why

---

[2] Defendants cite *NLRB v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307 (D.D.C. 2009), for the proposition that *in camera* review of documents should "never be any greater than absolutely necessary." However, in that case the court ordered the NLRB to produce more than 100 items from its privilege log for *in camera* review.

the vast majority of documents listed on their log, internal communications of a non-attorney

investigator and an investigator's communications with its subcontractors, could be privileged.

For example, Defendants cite to *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758

(D.C. Cir. 2014) for the proposition that communications with non-attorneys serving as agents of

attorneys are "routinely protected" by the attorney-client privilege.  *See* Opp. at 15.  However,

that case concerned an internal investigation where non-attorneys assisted in-house counsel

conducting an internal investigation by interviewing the company's employees.  *See Kellogg*

*Brown & Root*, 756 F.3d at 757-58.  In finding that the information at issue was privileged, the

court highlighted that "employees knew that the company's legal department was conducting an

investigation of a sensitive nature and that the information they disclosed would be protected."

*Id.* at 758.  Thus, although *Kellogg Brown & Root* applied the attorney-client privilege to

communications with non-attorneys acting at the attorney's behest, it did so when those

communications *were confidential communications with the client*.  *Cf. In re G-I Holdings Inc.*,

218 F.R.D. 428, 436 (D.N.J. 2003) (consultants or tax advisors hired to assist with complicated

transactions "who do not interact with clients … are not protected by an attorney-client

privilege").  Here, in contrast, there is no allegation that Defendants ever communicated with the

DNC or HFACC.

Defendants also rely on *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) to support

their argument that the attorney client privilege can apply to communications with a non-attorney

third-party.  *See*, *e.g.*, Opp. at 15.  However, *Kovel* merely held that where a non-attorney is

engaged to assist in the effective communication between the lawyer and the client by

"interpret[ing] [information from the client] so that the lawyer may better give legal advice," the

communications with the non-attorney are privileged.  296 F.2d at 922.  *Kovel* does not stand for

9

the proposition that when a lawyer tasks a non-attorney to independently gather information, *from sources other than the client*, that those communications are protected by the attorney-client privilege.

Similarly, Defendants cite multiple cases for the proposition that the attorney-client privilege is frequently extended to third-party investigators. *See*, *e.g.*, Opp. at 16.  However, these cases simply speak to whether confidential communications conveyed directly *by the client* or indirectly by the lawyer *from the client* are privileged.  *See*, *e.g.*, *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 72 (S.D.N.Y. 2010) ("The privilege extends to an agent proceeding autonomously, including 'gathering information from the client without involving the attorney every step of the way.'") (citations omitted); *In re Grand Jury Subpoenas Dated Mar. 24, 2003*, 265 F. Supp. 2d 321, 330-31 (S.D.N.Y. 2003) (lawyers must be able to "inform the consultants of at least some non-public facts, as well as the lawyers' defense strategies and tactics, free of the fear that the consultants could be forced to disclose those discussions.").  None of these cases concern whether the attorney-client privilege covers internal communications by employees of a non-attorney investigator or between a non-attorney investigator and its non-attorney subcontractors.  Yet it is exactly these types of communications and documents that Defendants are apparently withholding.

Further, in an effort to extend the reach of their privilege claims beyond themselves and to their subcontractors, Defendants cite two cases for their position that internal communications among employees of a third-party investigator are privileged.  *See* Opp. at 19.  However, both cases simply discuss to what extent communications among *corporate employees* assisting attorneys representing the corporation are privileged.  *See FTC v. Boehringer Ingelheim Pharms., Inc.*, 180 F. Supp. 3d 1, 34 (D.D.C. 2016) ("The same protections afforded to

communications between counsel and client extend to communications between *corporate* employees who are working together to compile facts for *in-house* counsel to use in rendering legal advice *to the company*.") (emphasis added); *AT&T Corp. v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 8710, at *8 (N.D. Cal. Apr. 18, 2003) ("Communications containing information compiled by *corporate employees* for the purpose of seeking legal advice and later *communicated to counsel* are protected.") (emphasis added).  Here, the independent contractors are several degrees removed from the client, having been engaged by a non-attorney third-party investigator.  Defendants do not, and cannot, point to any case holding that internal communications among these individuals are covered by the attorney-client privilege.[3]

Defendants also claim that their multiple briefings to reporters do not constitute a waiver of any applicable privilege because the disclosures were by them, as opposed to the DNC or HFACC.  *See* Opp. at 20-21.  However, there is no indication that the DNC or HFACC objected to these disclosures, and as discussed *infra* at 21, the logical inference is that the DNC or HFACC encouraged these public briefings as part of their campaign against then-presidential candidate Donald Trump.  Additionally, Plaintiffs need not show that the disclosures concerned the "particular communications" listed on the privilege log as Defendants claim, *see* Opp. at 20,

---

[3] Defendants cite *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.,* 2002 U.S. Dist LEXIS 22215 (S.D.N.Y. Nov. 15, 2002) for the proposition that the attorney-client privilege should extend to the subcontractors they engaged because the use of independent contractors is so prevalent.  *See* Opp. at 19-20, n.11.  However, in that case, the question was whether the independent contractors should be considered employees *of the client* for the purposes of the attorney-client privilege analysis.  *See Twentieth Century Fox Film Corp.*, 2002 U.S. Dist LEXIS 22215 at *7 ("Since the employees in issue were the functional equivalent of employees, disclosure of otherwise privileged documents to them does not operate as a waiver of the attorney-client privilege.").  Additionally, although the court in that case afforded the party an additional chance to show why the requested documents were privileged, it found that some of the documents were most likely not privileged because they "contain[ed] neither a confidential communication to an attorney seeking legal advice nor legal advice from an attorney that reflects a client confidence."  *Id.* at *7.

because "waiver of the attorney-client privilege for a document is not confined to that document alone, but extends to all other documents involving the same subject matter as well." *Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 74 (D.D.C. 2017) (internal quotations and citation omitted). Accordingly, to the extent that any documents were privileged, which Plaintiffs dispute, the privilege has been waived.

Ultimately, Defendants' claims of privilege must fail for a far simpler reason than the attenuated relationship (if any) between the individuals listed on the privilege log and the client - Defendants have not shown (or even claimed) that Perkins Coie conveyed any client confidences to them. Instead, Defendants claim that they were requested to assist with research to support public statements being made during the 2016 presidential campaign. This justification fails for two reasons. First, "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Boehringer Ingelheim Pharms.*, 180 F. Supp. 3d at 16 (internal quotations and citation omitted). Thus, any communications or documents containing the results of Defendants' research would not be privileged. Second, and more importantly, confidential information from the client is the bedrock upon which the attorney-client privilege rests. *See*, *e.g.*, *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997). Without any claim that Defendants were ever privy to confidential information (or a confidential communication) from the DNC or HFACC, the documents cannot possibly be covered by the attorney-client privilege.

Implicitly conceding that they were not privy to any confidential information originating with the DNC or HFACC, Defendants claim that the attorney-client privilege is somehow applicable because the documents would reveal *requests* for legal advice. *See* Opp. at 18-19. However, the case Defendants cite in support of this novel claim, *United States v. Singhal*, 800 F. Supp. 2d 1, (D.D.C. 2011) is inapposite. There, the court stated that an email stating "as

12

requested" could be a "*candidate* for attorney-client privilege," but only "if it is based on an underlying confidential communication from [the client] to [the attorney]." *Singhal*, 800 F. Supp. 2d at 8 (emphasis in original).  Here, Defendants have failed to provide any evidence of the necessary first step—that any communications or documents listed on their privilege log are "based on an underlying confidential communication" from the DNC or HFACC, and accordingly the documents cannot be privileged.

Finally, even accepting Defendants' arguments that they were assisting Perkins Coie in providing legal advice, they were, undoubtedly, engaged in general political opposition research at the same time.  Thus, since they were, at best, assisting with *both* legal and non-legal advice, they "have to make a *clear* showing that the communication [they] seek[] to cloak in the shelter of the privilege sought primarily legal advice." *Singhal*, 800 F. Supp. 2d at 8, n.2.  Defendants make no effort to show that any of the documents concerned primarily legal advice and instead assert a blanket attorney-client privilege over all their documents.

**POINT III**

**<u>DEFENDANTS' CLAIMS OF WORK-PRODUCT PROTECTION LACK MERIT</u>**[4]

**A.     The Documents Were Not Prepared or Obtained Because of Anticipated Litigation**

Defendants' work-product claims are premised upon their assertion that they were, allegedly, retained by Perkins Coie as part of Perkins Coie's representation of HFACC and the DNC "to ensure that [Perkins'] clients had an 'adequate factual basis for any claims or

---

[4] Plaintiffs previously reserved their right to demonstrate that their substantial need for the withheld documents merits disclosure if the Court provides Defendants another opportunity to meet their burden and Defendants are somehow able to do so.  *See* Mem. at 21, n. 18.  Although Plaintiffs continue to reserve this right, any materials would undoubtedly consist only of "fact work product" as opposed to "opinion work product" and thus would be available upon a showing of "'adequate reasons' why the work product should be subject to discovery." *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 153 (D.C. Cir. 2015) (citation omitted).

allegations made during the campaign."  Opp. at 7-8 (citing Levy Decl. ¶ 6).  According to Defendants, this qualifies for work-product protection because "public allegations raised during the intensely contested presidential campaign could—and ultimately did—lead to litigation." Opp. at 8.

To begin with, it is axiomatic that documents only qualify for work-product protection if they were "prepared in anticipation of litigation or for trial."  *See* Fed. R. Civ. P. 26(b)(3)(A). Defendants cite *Campbell*, 133 F. Supp. 3d at 67, for the proposition that a party need only have "possessed a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable."  *See* Opp. at 9 (quotations omitted).  However, Defendants ignore that courts in the District of Columbia Circuit "employ[] a 'because of' test, inquiring 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Boehringer Ingelheim Pharms.*, 778 F.3d at 149 (quoting *United States v. Deloitte* LLP, 610 F.3d 129, 137 (D.C. Cir. 2010)); *accord Campbell*, 133 F. Supp. 3d at 67 (in assessing whether the work-product doctrine applies "courts must consider whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation") *(*quotation omitted).  Plainly, Defendants were not retained "because of the prospect of litigation"—they were retained to conduct political opposition research.

Defendants nevertheless cite to *EEOC v. Lutheran Social Servs.*, 186 F.3d 959 (D.C. Cir. 1999) to argue that even if Plaintiffs' characterization of Defendants' work as political opposition research is accurate, it still qualifies for work-product protection because Defendants have offered "ample evidence" that they "genuinely feared litigation."  *See* Opp. at 13.

14

However, instead of supporting Defendants' claims of work-product protection, *Lutheran Social Servs.* highlights why Defendants' speculative fear of litigation is simply not enough to invoke the work-product doctrine.  In *Lutheran*, the defendant conducted an investigation *after* it learned that complaints had been made against its president.  *See* 186 F.3d at 960.  Thus, *in response* to these complaints, the defendant hired a law firm to conduct an investigation and assess its litigation risk.  *See id.*  Accordingly, the court found that the evidence presented by the defendant "suggest[ed] that litigation lay just over the horizon.  Lutheran had documents in which its own employees (perhaps future plaintiffs) *directly accused* the president of creating a hostile work environment.  That those documents were anonymous and the charges nonspecific does nothing to undermine the objective reasonableness of Lutheran's fear of litigation."  *Id.* at 969 (emphasis added).  Here, in contrast, there is no claim that Defendants were responding to any complaint or allegation that statements by the DNC or HFACC were inaccurate.  Rather, the only reason Defendants proffer for why they anticipated litigation was that they believed that if public statements by the DNC or HFACC were inaccurate, they could be subject to litigation due to the general litigiousness of modern-day politics.  *See* Opp. at 9-10.

In truth, accepting Defendants' contention that their internal communications and other documents were prepared in anticipation of some unspecified, yet-to-be-determined litigation would effectively expand the work-product doctrine to almost everything done by a third-party at an attorney's request.  For example, if a public company issues an inaccurate press release it can be subject to litigation.  However, if that company's general counsel confirms statements in the press release, the general counsel cannot seriously be said to be acting in anticipation of litigation.  Yet, that is exactly what Defendants are arguing—even though the DNC and HFACC had received no indication that any litigation was contemplated or imminent, and in fact no one

had even claimed that any statements made by the DNC or HFACC were defamatory, litigation was still reasonably anticipated so as to qualify Defendants work for work-product protection because such claims *could* in theory be made at some indefinite time in the future.  That is not the law.  By Defendants' admission, the prospect of litigation was at best remote and speculative, and the work-product doctrine therefore does not apply.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865 (D.C. Cir. 1980) (litigation not "fairly foreseeable" to allow invocation of work-product privilege where documents not "prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind"); *cf. Lutheran Soc. Servs.*, 186 F.3d at 969 (holding that fear of litigation as not too remote or speculative where entity had received direct accusations of illegal behavior).

Finally, in opposing Plaintiffs' motion, Defendants misstate Plaintiffs' arguments and claim that Plaintiffs' position is that the work-product doctrine does not apply because (1) the DNC and HFACC had not already been sued at the time Defendants were engaged; (2) the documents at issue were not prepared solely in anticipation of litigation; and (3) Defendants have not established a particular date on which they received a demand or claim.  *See* Opp. at 11.

Plaintiffs have never claimed that a specific litigation must be identified in order for the work-product doctrine to apply.  Instead, Plaintiffs argue that in order for the work-product privilege to apply, a party must show that litigation was anticipated and that a potential defendant can do that by establishing "the date when he received a demand or warning of charges or information from an outside source that a claim, demand or charge was in prospect."  *See In re*

*Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117-18 (D.D.C. 2010) (citing guidelines by Special Masters).[5]

Similarly, although anticipated litigation need not be the *sole* reason for a document's creation, in order for the work-product doctrine to apply, a document must have been created "because of" the prospect of litigation. That is, "if documents 'would have been created in essentially similar form irrespective of the litigation, it cannot fairly be said that they were created 'because of' actual or impending litigation.'" *Willingham v. Ashcroft*, 228 F.R.D. 1, 4 (D.D.C. 2005) (quoting *United States v. Adlman*, 134 F.3d 1194, 1202-03 (2d Cir. 1998) (alterations omitted); *accord Gucci Am., Inc.*, 71 F.R.D. at 74 (documents not protected if they were "prepared in the ordinary course of business, or that otherwise would have been prepared absent the prospect of litigation"). Defendants do not dispute that their work also served political purposes, instead arguing that even if it did, they would still qualify for protection. *See*, *e.g.*, Opp. at 13. As discussed *infra* at 19, it is clear that Defendants would have conducted their work for Perkins Coie even without the prospect of litigation.

And although a specific claim need not be identified to successfully invoke the work-product doctrine, that does not mean that the lack of a specific claim is irrelevant. "The contemplation of specific claims can help differentiate situations in which lawyers have litigation adequately in mind from those in which lawyers are not (yet) sufficiently anticipating litigation."

---

[5] Defendants fault Plaintiffs for citing to *Rail Freight* and claim that Plaintiffs "conspicuously neglect[ed]" to mention that the cited language came from special masters' guidelines. *See* Opp. at 12-13. However, Plaintiffs noted that the portion of *Rail Freight* cited to was citing the Special Masters' guidelines. *See* Mem. at 20. Additionally, although the court noted that guidelines from special masters are not "controlling precedent," and articulated a different standard for what is properly classified as "litigation" for purposes of the work-product doctrine, the court did not disagree with the special masters' guidelines for when materials are prepared "in anticipation" of that litigation. *See Rail Freight*, 268 F.R.D. at 118-19.

*Nat'l Ass'n of Crim. Def. Lawyers v. Exec. Office for U.S. Attorneys*, 844 F.3d 246, 253 (D.C.

Cir. 2016).  Here, the lack of a specific claim highlights that at the time Defendants were retained

and tasked with conducting opposition research, Perkins Coie was not anticipating litigation for

purposes of the work-product doctrine.

**B.      The Documents Were Not Prepared at a Lawyers' Direction**

In any event, even if Defendants could show that Perkins Coie reasonably anticipated

litigation so that some documents could qualify for work-product protection (and they have not),

Defendants have not sustained their burden of showing that the protection would apply to all of

the documents listed on their privilege logs.  Although it is true, as Defendants note, that the

protection extends to "material prepared by agents for the attorney," *see* Opp. at 8 (quoting

*United States v. Nobles*, 422 U.S. 225, 238-39 (1975)), Defendants have failed to show that the

documents on their privilege logs meet this test as they have not put forth any basis to reasonably

believe that the internal Fusion documents or Fusion's communications with other third-parties

were prepared by someone acting at Perkins Coie's direction.  *See Campbell*, 133 F. Supp. 3d at

68 (work-product doctrine applicable where "as defendant's declarant notes, each document was

prepared by a lawyer, or a person acting at a lawyer's direction").  And since it is Defendants'

burden to show that the work-product doctrine applies, the documents are not protected.[6]  *See*,

---

[6]  Highlighting Defendants' failure to meet their burden to show that the work-product doctrine applies, Defendants have not even attempted to explain how the other third parties listed on their privilege logs were "agents for the attorney" when these third parties have no identifiable relationship with Perkins Coie.  As stated by Defendants, Defendants were hired by Perkins Coie and they, "in turn, hired subcontractors to assist" with their work.  *See* Opp. at 4.  Many of Defendants' communications with these alleged subcontractors are listed on their supplemental privilege log.  *See*, *e.g.*, PRIV0000010, PRIV0000117, PRIV0000141.  There is no suggestion that these third parties had an agency relationship with Perkins Coie or received any direction from Perkins Coie.  Thus, at a minimum, none of these documents are protected by the work-product doctrine.  Indeed, although Defendants cite to cases for the suggestion that documents

*e.g.*, *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750 (D.C. Cir. 2006).

## C.      Defendants Were Gathering Opposition Research

Defendants claim that they were hired by Perkins Coie to inform legal advice regarding the risk of defamation lawsuits stemming from public statements by HFACC and the DNC.  *See* Opp. at 9-10.  Yet Defendants never acknowledge or dispute Plaintiffs' point that *Defendants approached* Perkins Coie to continue with the political opposition research they already had begun after then-candidate Trump emerged as the likely Republican nominee.  *See* Mem. at 4; Lewis Decl. Ex. 1.  In other words, Defendants were not hired to conduct an independent fact check of statements that the DNC or HFACC were already planning on publishing; rather, Defendants were compiling their own political opposition research and approached Perkins Coie to see if Perkins Coie was interested in buying it.

Indeed, Defendants do not dispute *their own statements*, cited by Plaintiffs, that they were hired to determine where then-candidate Trump's money came from, how much money he really had, and who was helping him.  *See* Mem. at 17 (citing GLENN SIMPSON AND PETER FRITSCH, CRIME IN PROGRESS, 57 (2019)).  Nor do they dispute the admission in their book that they deliberately channeled their communications through a law firm for the express purpose of trying to claim privilege and prevent future disclosure of such documents.  *See* Mem. at 17, n. 14. These prior statements and admissions doom Defendants' invocation of the work-product doctrine as they have failed to show that the documents at issue were created "because of" the prospect of litigation.  *See Shapiro v. U.S. Dep't of Justice*, 969 F. Supp. 2d 18, 31 (D.D.C.

---

need not be created by an attorney to be protected, they do not cite a single case involving the attorney's agent and that agent's subcontractor, and Plaintiffs are aware of none.

2013) ("The proponent of work-product protection bears the burden of demonstrating that the prospect of litigation was an independent, legitimate and genuine purpose for the document's creation.").

Finally, Defendants claim that their work must have been prepared to analyze the potential for litigation, and not as traditional political opposition research, because Plaintiffs do not cite to any examples of the DNC or HFACC "distributing or referencing Fusion materials in their own public communications." *See* Opp. at 13.  This argument fails for two reasons.  First, the DNC or HFACC need not have distributed or referenced Fusion materials for Defendants' work to have been political opposition research.  Rather, the DNC or HFACC could have received information from Defendants and then incorporated it into materials drafted or distributed by those entities.  Any statements made by the DNC or HFACC concerning the topics investigated by Defendants could have relied on Fusion materials without necessarily "distributing or referencing Fusion materials."  Second, political campaigns operate and disseminate information in a variety of ways, both direct and indirect.  As outlined in Plaintiffs' opening memorandum, Defendants, as part of their engagement with Perkins Coie, arranged for briefings to members of the media about the content of the reports.  *See* Mem. at 4-5; 19.  Although Plaintiffs have not yet received any concrete information from Defendants (because it has been withheld), it is reasonable to believe based on these press briefings that Defendants' engagement consisted of *both* gathering opposition research and *disseminating* that research to the press.  Thus, there would be no need for the DNC or HFACC to distribute or reference Fusion materials.

20

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order requiring Defendants to produce the withheld documents or, in the alternative, to conduct an *in camera* review of the documents withheld so as to assess Defendants' privilege claims.

Dated:  September 25, 2020
       New York, New York

                        CARTER LEDYARD & MILBURN LLP

           By:          */s/ Alan S. Lewis*
                        Alan S. Lewis
                        2 Wall Street
                        New York, NY 10005
                        (917) 533-2524

                        Kim Sperduto
                        SPERDUTO THOMPSON & GASSLER PLC
                        1747 Pennsylvania Ave., NW, Suite 1250
                        Washington, DC 20006
                        (202) 408-8900

                        *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Reply Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Compel Production of Documents Withheld as Privileged by Defendants was filed electronically with the Clerk of the Court on September 25, 2020, using the CM/ECF system.

_____*/s/ Alan S. Lewis*_____
Alan S. Lewis
