**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MIKHAIL FRIDMAN, PETR AVEN, AND GERMAN KHAN,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 17-2041-RJL** |
| **BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,** | |
| **Defendants.** | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF PLAINTIFFS' FINANCIAL RECORDS AND OTHER EVIDENCE RELEVANT TO DAMAGES AND SUBSTANTIAL TRUTH AND TO REVISE PLAINTIFFS' ANSWER TO <u>INTERROGATORY NO. 20 AND RULE 26(a)(1)(A)(iii) DISCLOSURE</u>**

CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
(917) 533-2524
lewis@clm.com

SPERDUTO THOMPSON & GASSLER PLC
1747 Pennsylvania Avenue, NW, Suite 1250
Washington, DC 20006
(202) 408-8900
ksperduto@stglawdc.com

*Attorneys for Plaintiffs*

*Of Counsel:*
    Alan S. Lewis
    Kim Sperduto

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ...................................................................................... ii

STATEMENT OF FACTS ......................................................................................... 1

    A.    The Lawsuit .................................................................................................. 1

    B.    Plaintiffs' Disclosures ................................................................................. 2

    C.    Defendants' Demands .................................................................................. 4

ARGUMENT .............................................................................................................. 5

    A.    Plaintiffs' Response to Defendants' Interrogatory No. 20 and Their Rule
          26(a)(1)(A)(iii) Disclosure Are Complete, and Defendants Have Not Met
          Their Burden To Show Otherwise ................................................................ 6

    B.    Plaintiffs' Counsel Has Not Violated Rule 26(g) Because  Plaintiffs'
          Response to Defendants' Interrogatory No. 20  And Rule 26(a)(1)(A)(iii)
          Disclosure Are Complete ........................................................................... 11

    C.    The Documents Sought Are Not Relevant.................................................. 12

          i.    Plaintiffs' Financial Records Are Irrelevant To Their Claims
              for Damages for Emotional and Reputational Harm ...................... 13

          ii.    Plaintiffs' Financial Records Are Not Relevant to the Truth or
              Falsity of the Defamatory Statements ........................................... 15

CONCLUSION.......................................................................................................... 19

CERTIFICATE OF SERVICE ................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Afro-American Publ'g Co. v. Jaffe*,
366 F.2d 649 (D.C. Cir. 1966) .............................................................................13

*American Property Construction Co. v. Sprenger Lang Foundation*,
274 F.R.D. 1 (D.D.C. 2011) ................................................................................10

*Bourne v. Arruda*,
2012 U.S. Dist. LEXIS 45938 (D.N.H. Apr. 2, 2012) ............................................13

*Buie v. Dist. of Columbia*,
327 F.R.D. 1 (D.D.C. 2018) ...........................................................................15, 16

*Cramton v. Grabbagreen Franchising LLC*,
2020 U.S. Dist. LEXIS 183519 (D. Ariz. Oct. 2, 2020) ..........................................9

*Dickerson v. D.C.*,
2019 U.S. Dist. LEXIS 219196 (D.D.C. Dec. 19, 2019) ......................................9, 14

*EEOC v. GMC*,
2009 U.S. Dist. LEXIS 35176 (D. Miss. Apr. 1, 2009) ........................................9, 10

*Everett v. USAir Group, Inc.*,
165 F.R.D. 1 (D.D.C. 1995) ..................................................................................7

*Food Lion v. United Food & Comm. Workers Union*,
103 F.3d 1007 (D.C. Cir. 1997) ..........................................................................5-6

*Graham v. Mohegan Sun at Pocono Downs*,
2017 U.S. Dist. LEXIS 227664 (M.D. Pa. July 25, 2017) ....................................9, 10

*Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*,
2006 U.S. Dist. LEXIS 71858 (D.D.C. Sep. 29, 2006) ..........................................13

*Johnson v. BAE Sys., Inc.*,
4 F. Supp. 3d 62 (D.D.C. 2013) ...........................................................................11

*Johnson v. J. Walter Thompson U.S.A., LLC*,
2017 U.S. Dist. LEXIS 176815 (S.D.N.Y. Oct. 25, 2017) ......................................8

*King v. E.F. Hutton & Co.*,
117 F.R.D. 2 (D.D.C. 1987) .................................................................................14

9767891.11

**Page(s)**

**Cases**

*National Community Reinvestment Coalition v. Novastar Financial, Inc.*,
2009 U.S. Dist. LEXIS 143171 (Jul. 13, 2009) ........................................................................10

*Nord v. Walsh County*,
2015 U.S. Dist. LEXIS 24101 (D.N.D. Feb. 27, 2015) ............................................................10

*Rosenberg v. DVI Receivables, XIV, LLC*,
2012 U.S. Dist. LEXIS 151001 (S.D. Fla. Oct. 19, 2012) .......................................................11

*Scheel v. Harris*,
2012 U.S. Dist. LEXIS 126448 (E.D. Ky. Sept. 6, 2012) ...................................................9, 11

*Tavouleras v. Piro*,
93 F.R.D. 11 (D.D.C. 1981) ...............................................................................................14, 17

*U.S. v. Kellogg Brown & Root Servs.*,
284 F.R.D. 22 (D.D.C. 2012) ....................................................................................................5

9767891.11

Plaintiffs respectfully make this submission to oppose Defendants' motion to compel Plaintiffs' production of documents, filed Oct. 27, 2020 ("Def. Memo") (Dkt. 111).[1] Specifically, Defendants seek to compel Plaintiffs to further respond to an interrogatory and to supplement their Rule 26(a)(1)(A)(iii) disclosure. But as demonstrated below, Plaintiffs' interrogatory response and disclosure are complete and the documents whose production Defendants seek to compel are not relevant to Plaintiffs' claims or damages, or to Defendants' defenses.

The documents sought by Defendants are also confidential and sensitive, such as tax returns. Such documents are not relevant because the damages Plaintiffs claim are not financial, but instead, as previously explained to Defendants, reputational and emotional, and the evidence for those damages will be in the form of testimony.  Notably, Defendants already have begun taking Plaintiffs' depositions, and therefore have already begun to obtain the relevant damages evidence without waiting for the outcome of this motion (or their two other motions to compel).

## STATEMENT OF FACTS

### A.     The Lawsuit

Plaintiffs commenced this defamation lawsuit on October 3, 2017 and filed their Amended Complaint on December 12, 2017.  (Dkt. 17) ("Am. Compl.").[2]  The defamatory statements accuse Plaintiffs of bribery and other misconduct involving Vladimir Putin.  *See generally id.* ¶¶ 19-28.  The defamatory statements are in a two-page document which bears the label "Company Intelligence Report 2016/112" ("CIR 112").  *Id.* ¶¶ 2, 19-28.  As Plaintiffs have previously articulated, there are three statements in CIR 112 that this lawsuit challenges as defamatory: (1) the allegation that Plaintiffs made illicit cash payments to Vladimir Putin in the

---

[1] This is Defendants' third motion to compel – the other two such motions remain pending.
[2] The description of the case history is abbreviated, so as not to be unnecessarily repetitive of Plaintiffs' submission in the other pending motions.

1990s when Putin was Deputy Mayor of St. Petersburg (through Oleg Govorun as the purported "bag carrier"); (2) the allegation that at the time of the initial publication of CIR 112 in 2016 Plaintiffs were corruptly exchanging political favors for Putin in exchange for economic ones from Putin; and (3) the allegation, implied by CIR 112's headline, that Plaintiffs were involved in aiding Russian state efforts to interfere in the 2016 U.S. presidential election.  *See* Dkt. 78-6 (Pls.' Supp. Responses and Objections to Defs.' First Set of Interr. at Interr. No. 2).

After Defendants' subcontractors, Christopher Steele and Orbis Business Intelligence Ltd. ("Orbis"), prepared CIR 112 at Defendants' behest, Defendants published it, with its defamatory statements, to members of the media and others.  Am. Compl. ¶¶ 4, 16, 18.  CIR 112 was published with several other reports or memoranda which had been prepared by Orbis for Defendants and became known singularly as the so-called "Dossier" after they were published on the Internet by BuzzFeed, Inc. early in 2017.  Most of the reports—*but not CIR 112*—were about then-candidate Donald Trump and his purported ties to Russia.  Am. Compl. ¶¶ 1, 15-16. Due to the allegations about President Trump contained in the other Steele memoranda, they gained widespread attention around the world.  Plaintiffs seek damages for harm to their reputations and for emotional harm.  *See* Levy Decl., Ex. 2, Pls. Second Supp. Resp. and Objections to Defs.' First Set of Interr. at Interr. No. 20.

B.    **Plaintiffs' Disclosures**

In response to Defendants' interrogatory focused on damages, Plaintiffs stated that although their damages had "not been computed at this time," they had "suffered damage to their personal, professional, and institutional reputations."  Levy Decl., Ex. 1, Pls. Resp. and Objections to Defs.' First Set of Interr. at Interr. No. 20.  Plaintiffs further explained that the

false allegations published by Defendants "affected how people viewed, regarded, and treated Plaintiffs, and has affected Plaintiffs in their personal and business relationships." *Id.*

In their amended interrogatory responses, Plaintiffs further clarified that they were seeking only "presumed damages and general damages for harm to their reputations and for emotional harm," because the defamatory allegations "affected how people viewed, regarded, and treated Plaintiffs." Levy Decl., Ex. 2, Pls. Second Supp. Resp. and Objections to Defs.' First Set of Interr. at Interr. No. 20. Plaintiffs explained that they would present testimony showing "the wide dissemination of the defamatory statements, and how the defamatory statements damaged Plaintiffs' reputations, affected Plaintiffs in their personal relationships, and caused Plaintiffs emotional stress." *Id.* Notably, Plaintiffs' amended interrogatory response excluded harm to Plaintiffs' business reputations arising from the defamatory allegations. Plaintiffs also amended their Rule 26 initial disclosures consistent with their interrogatory response. *See* Levy Decl., Ex. 4, Pls.' Revised Initial Disclosures at 11-12. These disclosures also identified which witnesses had relevant information (and would therefore be likely to testify) about these topics. *Id.*; *see also* Levy Decl., Ex. 2, Pls. Second Supp. Resp. and Objections to Defs.' First Set of Interrog. at 10-11, 12 n.1.

In response to Defendants' request for further information, Plaintiffs informed Defendants that such testimony would reveal that "Plaintiffs (a) suffered harm to their reputations, (b) experienced significant humiliation, embarrassment, and emotional distress, and (c) experienced the loss of or negative impact on relationships with people." Levy Decl., Ex. 15, Oct. 20, 2020 email from A. Lewis to J. Levy. Additionally, Plaintiffs explained that they were contacted by others who asked them about the allegations, "questioned Plaintiffs' integrity and reputations, and/or expressed concern about how their own reputations would suffer based on

association with Plaintiffs," and others "no longer communicated or met with Plaintiffs after seeing or hearing about the defamatory statements." *Id.* Notwithstanding Plaintiffs' amendments and supplements to their interrogatory responses and initial disclosures, and their provision of additional clarifying information in response to Defendants' request, Defendants insist that Plaintiffs' disclosure is insufficient.

## C.  **Defendants' Demands**

At issue here are Defendants' requests for "all tax returns" filed by Plaintiffs and companies with which they are affiliated[3] for the years 2013 to the present, as well as "[a]ll documents relating to [Plaintiffs'] earned income" for 2013 to the present, and "any and all financial records, indicating in any way that [Plaintiffs] lost money, revenue, business, financing, or customers." *See* Levy Decl., Ex. 5, Pls.' Responses and Objections to Defs.' First Requests for Production of Docs. at Requests 58-60; Pls.' Supplemental Responses and Objections to Defs.' First Requests for Production of Docs. ("Supp. Doc. Response") at Request 57. Plaintiffs objected to these requests on a variety of grounds including that they were irrelevant.[4] In their supplemental objections and responses, Plaintiffs first objected that Requests 57 and 59 were "not relevant to the issues in this Action, including but not limited to the truth or falsity of the defamatory statements asserted in CIR 112," before acknowledging the parties' agreement that any documents used to support Plaintiffs' damages claims would be produced prior to the Plaintiffs' depositions. *See* Levy Decl., Ex. 5, Supp. Doc. Response at Response to Request Nos.

---

[3] Illustrating the breadth and overreach of Defendants' request, the number of entities that potentially fall within Defendants' request for "all tax returns" is considerable—numbering in the dozens—and those entities have no connection to this lawsuit. To the extent Defendants now contend that they seek only Alfa or LetterOne documents, Plaintiffs are unable to produce those documents for the reasons explained in their opposition to Defendants' original motion to compel.

[4] Defendants failed to include Request 57 and part of Plaintiffs' initial objection and response to this request, and only included Plaintiffs' supplemental response and objection to this request. *See* Dkt. 111-7. Plaintiffs' complete initial objection to this request is attached as Exhibit A to the Declaration of Alan S. Lewis, dated November 24, 2020 ("Lewis Decl.").

-4-

57, 59.  In the initial round of meet-and-confer sessions between the parties' counsel, Defendants appeared to accept Plaintiffs' objections, indicating they had "no further issues with these requests at this time."  Dkt. 78-10 (Apr. 16, 2020 letter from J. Levy to A. Lewis) at 14.  Months later—in September 2020—Defendants reversed course and demanded production of financial documents.

Plaintiffs have consistently maintained that Requests 57-60 seek irrelevant documents, especially in light of the limited categories of damages sought by Plaintiffs.  *See*, *e.g.*, Levy Decl., Ex. 9 (Sept. 29, 2020 email from A. Lewis to J. Levy) (stating that although agreement made documents responsive to Requests due 14 days before depositions, Plaintiffs "stand on our objections to these requests, as set forth in Plaintiffs' November 2019 Responses and Objections and further articulated in our March 12, 2020 letter").

<u>**ARGUMENT**</u>

Defendants bear the burden of demonstrating that Plaintiffs' supplemental response to Interrogatory No. 20 and their Rule 26(a)(1)(A)(iii) disclosure are incomplete.  *See U.S. v. Kellogg Brown & Root Servs.*, 284 F.R.D. 22, 27 (D.D.C. 2012) ("When the opposing party has answered the movant's interrogatories, the party moving to compel discovery has the burden of showing that the opposing party's responses are incomplete.").  As discussed below, there is no merit to Defendants' contention that Plaintiffs' disclosures are "vague" and "conclusory," as they clearly inform Defendants how Plaintiffs intend to prove their damages and who Defendants should examine.  Plaintiffs have complied with both the letter and the spirit of Rule 26 and have fully responded to Defendants' Interrogatory No. 20.

Rule 26(b)(1) authorizes discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party," however, "the relevance standard of Rule 26 is not without

-5-

bite." *Food Lion v. United Food & Comm. Workers Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). Thus, "[w]hile the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Id*. at 1012-13 (quoting *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975) (alteration in original, additional quotation omitted). Put another way, "relevancy does not encompass discovery of information with no conceivable bearing on the case." *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 86 (D.D.C. 2005) (internal quotation omitted). *See Burke v. Air Serv Int'l, Inc.*, 2009 U.S. Dist. LEXIS 140406, *6 (D.D.C. Aug. 11, 2009) (a party may not demand "information that is neither relevant to a claim or defense nor likely to lead to information that is"). The documents Defendants seek are not relevant to any claim or defense, or to damages.

A. **Plaintiffs' Response to Defendants' Interrogatory No. 20 and Their Rule 26(a)(1)(A)(iii) Disclosure Are Complete, and Defendants Have Not Met Their Burden To Show Otherwise**

The crux of Defendants' complaint with respect to Plaintiffs' response to Interrogatory No. 20 and Rule 26(a)(1)(A)(iii) initial disclosures is the level of granularity in Plaintiffs' description of their damages. However, Defendants acknowledge that Plaintiffs have identified the categories of damages they will seek and acknowledge that Plaintiffs have explained that they will prove those damages through their own testimony and that of nonparties whom they have identified. *See, e.g.*, Levy Decl., Ex. 2 at 11-12; Ex. 11 at 1. Plaintiffs have met their disclosure obligations under Rule 26, which requires a computation of each category of damages claimed, unless otherwise ordered by the Court. Fed. R. Civ. P. 26(a)(1)(A)(iii). That rule is designed "to accelerate the exchange of *basic* information about the case and to eliminate the paper work involved in requesting such information" and should be applied in a manner to

-6-

achieve that objective.  FED. R. CIV. P. 26 advisory committee notes (1993) (emphasis added).

Plaintiffs' Rule 26 disclosures achieve the objective of the Rule.

Plaintiffs have also already identified the witnesses who are likely to have the

information Defendants seek, and Defendants have already noticed depositions of, or

subpoenaed, those witnesses.  *See* Lewis Decl., Ex. B.  In response to follow up questions from

Defendants, Plaintiffs went further, explaining generally what such testimony would indicate.

However, Defendants now demand that Plaintiffs go further still, and amend their Interrogatory

response to essentially provide each fact to which each witness would testify.  In demanding that

Plaintiffs "answer *now* specifically how the [defamatory] statements caused them harm," Def.

Memo at 17 (emphasis in original), Defendants ask the Court to compel Plaintiffs to prematurely

answer a contention interrogatory rather than try to elicit the information through testimony.

"Contention interrogatories generally 'ask a party: to state what it contends, . . . [or] to state all

the facts upon which it bases a contention.'"  *Everett v. USAir Group, Inc.*, 165 F.R.D. 1, 3

(D.D.C. 1995) (alterations in original).  A party's obligation to respond to a contention

interrogatory "is often postponed until near the end of the discovery period unless the proponent

carries its burden of demonstrating why they are necessary earlier on."  *Id*. (denying motion to

compel responses to interrogatories "[i]nsofar as [they] call[ed] for defendants to separately

articulate the underlying facts upon which they base their defenses").[5, 6]

Aside from going beyond what the rule requires, it is not possible for Plaintiffs to provide

what Defendants demand.  Plaintiffs cannot predict the precise testimony that will be offered by

non-party witnesses like Ed Rogers and Ambassador Richard Burt.  However, Plaintiffs have

---

[5] In their initial and amended response to Interrogatory No. 20, Plaintiffs objected to the Interrogatory on the bases that it was "overly broad, unduly burdensome, and premature."  Levy Decl., Ex. 1 at 26 and Ex. 2 at 11.
[6] Should the Court order that Plaintiffs provide an amended response to Defendants' contention interrogatory, Plaintiffs submit that the appropriate time for them to do so is following Plaintiffs' depositions.

conveyed the essence of their good faith belief as to what that testimony would show in their

supplemental response to Interrogatory No. 20.  That response states that the defamatory

statements damaged Plaintiffs' reputations because "persons who read or saw the contents of

CIR 112 were led to understand, incorrectly, that Plaintiffs had an inappropriate relationship with

Putin, engaged in inappropriate and criminal activities such as bribery and extortion, and, based

on the headline of CIR 112, were involved in some unspecified way in a Kremlin orchestrated

campaign to interfere in the 2016 U.S. presidential election."  Levy Decl., Ex. 2 at 11.  That

incorrect understanding, in turn, "affected how people viewed, regarded, and treated Plaintiffs,"

thereby "damag[ing] Plaintiffs' reputations, affect[ing] Plaintiffs in their personal relationships,

and caus[ing] Plaintiffs emotional stress."  Levy Decl., Ex. 2 at 11-12.  Defendants may further

explore the specific bases for Plaintiffs' damages claims during Plaintiffs' depositions.  In fact,

they did so at Mr. Fridman's deposition on November 17, 2020.  Lewis Decl., ¶3.  Defendants

have not carried their burden of demonstrating why they need, prior to conducting depositions,

details of Plaintiffs' damages claims not articulated in Plaintiffs' supplemental response to

Interrogatory No. 20 or their Rule 26 initial disclosures.

Plaintiffs have stated that they will not be seeking special damages.  *See* Levy Decl., Ex.

11 at 1.  The types of damages at issue here—reputational harm and emotional distress—are

inherently difficult to quantify, and courts have recognized that they are not susceptible to

precise calculation as envisioned by the Rule.  *See, e.g., Johnson v. J. Walter Thompson U.S.A.,*

*LLC*, 2017 U.S. Dist. LEXIS 176815, *1-2 (S.D.N.Y. Oct. 25, 2017) ("Plaintiff shall produce a

damages calculation for emotional distress and reputational injury *only insofar as she seeks*

*'special' damages* . . . . To the extent she seeks garden variety emotional distress damages or

compensation for general reputational injury, no 'calculation' would be meaningful.  Since

-8-

plaintiff has disclaimed any intention of suggesting a specific dollar amount or range for non-economic damages to the jury no estimate of such damages is required.") (emphasis added); *see also Dickerson v. D.C.*, 2019 U.S. Dist. LEXIS 219196, *9 (D.D.C. Dec. 19, 2019) (Plaintiff's claim of "intangible damages" including "emotional harm" and "harm to his reputation" "[did] not require a specific amount or calculation."); Local Rules of the District of Columbia, Rule 16.5(b)(8) ("No monetary amount need be set forth for elements of intangible damage (e.g., pain and suffering, mental anguish, or loss of consortium)"); *Scheel v. Harris*, 2012 U.S. Dist. LEXIS 126448, at *23 (E.D. Ky. Sept. 6, 2012) ("Courts have generally recognized that because emotional suffering is personal and difficult to quantify and because compensatory damages are typically considered a fact issue for the jury, emotional distress damages are not subject to the kind of calculation required for initial disclosure purposes.") (quotation omitted); *accord Graham v. Mohegan Sun at Pocono Downs*, 2017 U.S. Dist. LEXIS 227664, at *4-5 (M.D. Pa. July 25, 2017) ("Courts have routinely found that computations for damages such as emotional distress may not be subject to the same level of calculation disclosure as required for 'special damages.'") (citing cases); *EEOC v. GMC*, 2009 U.S. Dist. LEXIS 35176, at *6 (D. Miss. Apr. 1, 2009) ("[I]f the plaintiff intends to suggest a specific amount of emotional distress-related compensatory damages to the jury, he or she must produce the disclosures required by Rule 26. If, however, the plaintiff intends to leave the determination of emotional distress-related compensatory damages solely to the jury, a Rule 26 disclosure is not required."); *cf. Cramton v. Grabbagreen Franchising LLC*, 2020 U.S. Dist. LEXIS 183519, at *17 (D. Ariz. Oct. 2, 2020) (although plaintiff failed to add emotional distress damages to local mandatory disclosures "many courts in the Ninth Circuit have held that the failure to include emotional distress damages in a damage computation is not grounds for exclusion").

-9-

The cases on which Defendants rely are inapposite. *National Community Reinvestment Coalition v. Novastar Financial, Inc.*, 2009 U.S. Dist. LEXIS 143171 (Jul. 13, 2009), for example, concerned the plaintiff's failure to provide information in support of its calculation that defendants had caused it $445,000 in damages. Plaintiffs herein have made no such "calculation" and have verified that they will claim presumed and general damages. *See* Levy Decl., Ex. 2 at 11; *see also Graham,* 2017 U.S. Dist. LEXIS 227664, at *4-5, and *EEOC*, 2009 U.S. Dist. LEXIS 35176, at *6 (D. Miss. Apr. 1, 2009). Nor is this case like *American Property Construction Co. v. Sprenger Lang Foundation*, 274 F.R.D. 1, 9-10 (D.D.C. 2011), where the court found that defendants/counter-plaintiff's inadequate interrogatory responses were an attempt to "shift the burden to [plaintiff] to weed through a stack of invoices without explanation or clarification to determine what exactly [d]efendant[s] are claiming in [the] matter." Here, Plaintiffs have verified that they are claiming damages for "harm to their reputations and for emotional harm" (and are not claiming damages to their business reputations) and that they will rely on their own testimony and the testimony of others, whose identities Plaintiffs have disclosed, to demonstrate that harm. Levy Decl., Ex. 2 at 11-12.

Plaintiffs in good faith have provided Defendants with sufficient information in their supplemental response to Defendants' Interrogatory No. 20 and in their amended Rule 26 disclosures as to the types of damages they seek, how those damages were incurred, and the type of evidence on which they will rely to prove their damages. Defendants may continue to pursue those topics in discovery, such as by deposing Plaintiffs. *See Nord v. Walsh County*, 2015 U.S. Dist. LEXIS 24101 at *5-6 (D.N.D. Feb. 27, 2015) ("The record is clear that defense counsel explored the bases of Nord's claim for emotional distress at his deposition as well as the deposition of Nord's wife. Thus, the defendants are aware of the evidence Nord intends to rely

on at trial to support his claim."); *Rosenberg v. DVI Receivables, XIV, LLC*, 2012 U.S. Dist. LEXIS 151001, at *14 (S.D. Fla. Oct. 19, 2012) (interrogatory responses "put Defendants on notice that Plaintiff was claiming reputation damages and, thus, Defendants could have pursued the issue in discovery").  Because Plaintiffs' interrogatory response and Rule 26(a)(1)(A)(iii) disclosures are complete, the Court should deny Defendants' motion to compel Plaintiff to serve further amended or supplemental responses.

**B.      Plaintiffs' Counsel Has Not Violated Rule 26(g) Because Plaintiffs' Response to Defendants' Interrogatory No. 20 And Rule 26(a)(1)(A)(iii) Disclosure Are Complete**

As discussed above, Plaintiffs' discovery responses were not incomplete.  Accordingly, Plaintiffs' counsel has not violated Rule 26(g) in certifying them.

Defendants do not cite a single case finding that similar disclosures are incomplete or that sanctions might be merited.  The one case Defendants cite in support of their argument for sanctions, *Johnson v. BAE Sys., Inc.*, 4 F. Supp. 3d 62 (D.D.C. 2013), does not support Defendants' position.  In *Johnson*, the plaintiff's attorney did not even review the documents which were produced and then, after being alerted by plaintiff that the documents might have been falsified, simply sent a new copy of the documents without determining whether the original documents were falsified or alerting defendants as to why a second set of documents was being produced.  *See Johnson,* 4 F. Supp. 3d at 70-74.

Here, although Defendants complain that Plaintiffs' disclosures were not specific enough, Defendants do *not* suggest that Plaintiffs seek undisclosed kinds of damages or that Plaintiffs are attempting to rely on unidentified witnesses.  Accordingly, the disclosures were substantially justified, and no violation of Rule 26(g) has occurred.  *See Scheel*, 2012 U.S. Dist. LEXIS 126448, at *23 (Because non-economic damages are "generally not amenable to the type of

-11-

disclosures contemplated by Rule 26(a)(1)(A)(iii) [a] failure to disclose a number or calculation for such damages was substantially justified.") (quotation omitted).

Unable to point to legal reasons for the notion that Plaintiffs' disclosures are insufficient, Defendants resort to contrasting the even greater level of disclosure that Plaintiffs' counsel provided in an email, describing testimony Plaintiffs expect to offer to support damages. Defendants' implication is that Plaintiffs had to match the level of disclosure provided in the email, in the formal, written disclosures.  As explained above, Plaintiffs' disclosures were proper in the first instance and Plaintiffs' more robust explanation in communications with Defendants' counsel did not trigger a requirement to match its level of detail in the written discovery responses.[7]  Defendants' attempt to punish Plaintiffs for their good faith attempt to resolve the discovery dispute should not be given credence by the Court.

## C.     <u>The Documents Sought Are Not Relevant</u>

Defendants seek the production of "all tax returns" filed by Plaintiffs and companies with which they are affiliated for the years 2013 to the present, as well as "[a]ll documents relating to [Plaintiffs'] earned income" for 2013 to the present, and "any and all financial records, indicating in any way that [Plaintiffs'] lost money, revenue, business, financing, or customers[.]"  *See* Levy Decl., Ex. 5, Pls.' Responses and Objections to Defs.' First Requests for Production of Docs. at Requests 58-60; Levy Decl., Ex. 5, Supp. Doc. Response at Requests 57, 59, 60.  These highly sensitive financial documents are irrelevant to any claims in this action, or to the types of damages Plaintiffs seek in this case (harm to their personal reputations and emotional harm resulting from the defamatory statements).

---

[7] Additionally, as explained above, *see* p. 7-8, *supra*, the additional information contained in the email is more appropriate for deposition testimony than interrogatory responses.

i.      **Plaintiffs' Financial Records Are Irrelevant To Their Claims**
       **for Damages for Emotional and Reputational Harm**

"A successful libel plaintiff can recover three types of damages--nominal, compensatory

or punitive. Compensatory damages may be further subdivided into general and special damages.

General damages compensate a plaintiff for harm to his reputation or emotional well-being;

special damages… are awarded for losses of an economic or pecuniary nature." *Houlahan v.*

*World Wide Ass'n of Specialty Programs & Sch.*, 2006 U.S. Dist. LEXIS 71858, *28 (D.D.C.

Sep. 29, 2006) (quoting *Robertson v. McCloskey*, 680 F. Supp. 414, 415 (D.D.C. 1988)); *see also*

*Afro-American Publ'g Co. v. Jaffe*, 366 F.2d 649, 659 (D.C. Cir. 1966) ("[P]laintiff need not

show any pecuniary damage in order to establish the libel and recover nominal damages, or

compensation for nonpecuniary damage.").

Plaintiffs are seeking general and presumed damages for harm to their reputations and for

emotional harm, not special damages.  Nonetheless, Defendants proclaim a need for access to

Plaintiffs' sensitive, non-public financial records, including Plaintiffs' (and Alfa Bank's) tax

returns and "all documents relating to [Plaintiffs'] earned income, including wages and

investments" for the period from 2013 through the present (*see* Levy Decl., Ex. 5, Pls.'

Responses and Objections to Defs.' First Requests for Production of Docs. at Request No. 59), in

order to rebut Plaintiffs' claims for emotional and reputational harm.[8]  Defendants' arguments

are unavailing because Plaintiffs have specifically disclaimed any economic damages.  *See*

*Bourne v. Arruda*, 2012 U.S. Dist. LEXIS 45938, *9 (D.N.H. Apr. 2, 2012) (motion to compel

production of tax returns granted where plaintiff "specifically asserted that he suffered damages

---

[8] Further, seeking to compel Plaintiffs to produce sensitive, non-public financial records from third party companies
serves as an end-run around Defendants' original motion to compel Plaintiffs to produce Alfa Bank and LetterOne
documents.  Not only are financial documents from the companies not relevant, but the Court should decline to
indulge the Defendants' attempt to gain a second bite at the apple by re-briefing their alleged need for the Plaintiffs
to produce these documents, rather than seeking them from the companies themselves.

including 'probable loss of work'" and "refused to waive any claim he may have for such economic losses in this case.").

Unlike the plaintiff in *Bourne*, Plaintiffs have explicitly disclaimed economic harm. Moreover, Plaintiffs' tax returns, income records and other financial documents are wholly irrelevant to their claims for emotional harm, including humiliation, embarrassment, emotional stress and negative impacts on their personal relationships.  Embarrassment and emotional stress do not show up on tax returns.  Nor are Plaintiffs' financial documents a logical place to look for evidence of the harm inflicted on Plaintiffs' reputations, such as their reputations in certain philanthropic communities.  Damages resulting from reputational harm in a personal or philanthropic context are not ascertainable in tax returns and financial documents.

Defendants' reliance on *Dickerson v. D.C.*, No. CV 09-2213 (PLF), 2019 U.S. Dist. LEXIS 219196 (D.D.C. Dec. 19, 2019) and *King v. E.F. Hutton & Co.*, 117 F.R.D. 2 (D.D.C. 1987) is misplaced.  Def. Memo at 21.  In both cases the defendants' motions to compel sought responses to interrogatories, not production of documents.  *Dickerson*, 2019 U.S. Dist. LEXIS at *3; *King*, 117 F.R.D. at 4.  As explained above, Plaintiffs' responses to Defendants' interrogatories are complete.  Moreover, the losses "placed… squarely at issue" by the *King* plaintiffs, who sued an investment company and its employee stockbrokers alleging securities law violations, were unquestionably economic losses—not damages resulting from reputational harm or emotional stress, as is the case here.  *King*, 117 F.R.D. at 6.  Similarly unavailing is Defendants' citation to *Tavouleras v. Piro*, 93 F.R.D. 11 (D.D.C. 1981).  Def. Memo at 23-24. In *Tavouleras*, documents related to the plaintiffs' salary and income were found to be relevant because the plaintiffs sought, *inter alia*, damages to their business reputations.  93 F.R.D. at 22. Here, in contrast, Plaintiffs are *not* seeking damages relating to their business reputations.

-14-

Rather, they are seeking damages relating to their personal and philanthropic reputations, and documents relating to their income are not relevant to such claims.

That Defendants continue to demand production of Plaintiffs' financial documents after Plaintiffs clarified that they are only seeking damages for reputational harm and emotional stress, not economic damages, reveals Defendants' motion as the fishing expedition that it is.  *See Buie v. District of Columbia*, 327 F.R.D. 1, 10 (D.D.C. 2018) ("Courts need not tolerate fishing expeditions.").  Indeed, Defendants are engaged in the business of conducting political and business research for hire and have previously detailed in Defendant Simpson's book, *Crime in Progress*, their excitement at the prospect of using their position as defendants in a defamation lawsuit to obtain "court-ordered access" to the defamation plaintiff, including to "his records, his friends and associates" in discovery.[9]  Lewis Decl., Ex. C (GLENN SIMPSON AND PETER FRITSCH, CRIME IN PROGRESS: INSIDE THE STEELE DOSSIER AND THE FUSION GPS INVESTIGATION OF DONALD TRUMP 233 (2019) ("*Crime in Progress*").[10]  While the documents Defendants seek from Plaintiffs are irrelevant to Plaintiffs' claims for damages and Defendants' defenses, that the documents may interest Defendants in connection with their commercial endeavors is of course not a valid basis for discovery.

### ii.    Plaintiffs' Financial Records Are Not Relevant to the Truth or Falsity of the Defamatory Statements

The records sought by Defendants are irrelevant to the truth or falsity of the defamatory statements.  There are three statements in CIR 112 that Plaintiffs challenge as defamatory: (1) the

---

[9] Defendants' habit of emphasizing Plaintiffs' wealth in nearly every one of Defendants' filings suggests that Defendants' true goal in seeking these documents is to embarrass or harass Plaintiffs, and not for any legitimate purpose.
[10] Defendants went on to describe becoming "more taken by the idea of using [the plaintiff's] defamation suit to pry some information out of the secrecy-obsessed Trump World . . . Both Simpson and Fritsch began to relish the thought of answering [the plaintiff's] lawsuit with a motion to proceed immediately to discovery."  *Crime in Progress* at 239 (Lewis Decl., Ex. C).

allegation that Plaintiffs made illicit cash payments to Vladimir Putin in the 1990s when Putin

was Deputy Mayor of St. Petersburg (through Oleg Govorun as the purported "bag carrier"); (2)

the allegation that at the time of the initial publication of CIR 112 in 2016 Plaintiffs were

corruptly exchanging political favors for Putin in exchange for economic ones from Putin; and

(3) the allegation, implied by CIR 112's headline, that Plaintiffs were involved in aiding Russian

state efforts to interfere in the 2016 U.S. presidential election.  *See* Pls.' Supp. Responses and

Objections to Defs.' First Set of Interr. at No. 2 (Dkt. 78-6).  Plaintiffs' financial records, for the

period of 2013 to present, are entirely irrelevant to the truth or falsity of those defamatory

statements.

Rule 26(b)(1) only permits discovery "regarding any nonprivileged matter that is relevant

to any party's claim or defense and proportional to the needs of the case." Accordingly, "[c]ourts

need not tolerate fishing expeditions, discovery abuse, and an inordinate expense involved in

overbroad and far-ranging discovery requests."  *Buie*, 327 F.R.D. at 10 (internal citations and

quotations omitted).  Having failed to demonstrate that Plaintiffs' tax returns and financial

records are relevant to rebut their claims for emotional and reputational harm, Defendants fall

back on the argument that Plaintiffs' financial documents are relevant to the truth or falsity of the

defamatory statements.[11]

Defendants' argument must fail.  Defendants' requests for "all tax returns" filed by

Plaintiffs and companies with which they are affiliated" and "[a]ll documents relating to

[Plaintiffs'] earned income" for 2013 to the present, as well as "any and all financial records,

---

[11] Not only are the financial records of the entities with which Plaintiffs are associated not relevant to the truth or falsity of the defamatory statements in CIR 112, compelling Plaintiffs to produce seven years' worth of financial records for dozens of entities would be unduly burdensome to Plaintiffs.  As explained above (*see* fn. 8, *supra*) and in Plaintiffs' Memorandum of Law in Opposition to Defendants Motion To Compel Production by Plaintiffs of Non-Party Documents (Dkt. 84), Defendants should seek these documents from the entities themselves.

-16-

indicating in any way that [Plaintiffs'] lost money, revenue, business, financing, or customers"
(*see* Levy Decl., Ex. 5, Pls.' Responses and Objections to Defs.' First Requests for Production of
Docs. Requests 58-60; Levy Decl., Ex. 5, Supp. Doc. Response Requests 57, 59, 60) are not at
all relevant to the truth or falsity of the defamatory statement that Plaintiffs caused Alfa Bank to
make illicit cash payments to Vladimir Putin in the 1990s.  Nor are the documents sought
conceivably relevant to whether Plaintiffs corruptly provided political favors to Putin in
exchange for economic favors from Putin.  The corruption alleged in CIR 112 is the implication
of a relationship between the two alleged kinds of favors, a relationship it would be absurd to
expect to be recorded on tax returns and financial business records.  Defendants' argument that
the requested financial records are relevant to the truth or falsity of these defamatory statements
is erroneous.

Defendants' reliance on *Tavouleras* to support their argument that financial records are
relevant to truth or falsity, *see* Def. Memo at 25, must fail.  In *Tavouleras*, the defamatory
statements at issue involved "fairly complex business dealings," and claims that corporate assets
were "diverted to personal uses."  93 F.R.D. at 20, 22.  Here, in contrast, the defamatory
allegations consist of accusations of favors being exchanged between three individuals and
government officials.  There are no allegations concerning specific business dealings or assets.
Accordingly, the requested documents are not relevant.

Defendants fare no better with their assertion that financial records showing
"connections" between Plaintiffs and the Kremlin or Russian government officials are relevant to
the truth or falsity of the defamatory allegation that Plaintiffs were involved in aiding Russian
state efforts to interfere in the 2016 U.S. presidential election.  Def. Memo at 25.  By seeking to
uncover the identities of persons with whom Plaintiffs do business, Defendants seek to engage in

a fishing expedition that would go well beyond the bounds of this lawsuit.  The defamatory statement in the headline of CIR 112 does not allege that Plaintiffs' cooperation with the Kremlin in allegedly interfering in the 2016 election was financial in nature.  Furthermore, Plaintiffs are Russian citizens and successful international businessmen with vast business interests.  As such, it would be impossible that their paths and the paths of their thousands of employees would never cross with persons ever associated in some way with the Russian government.  The possibility that Plaintiffs may have done business with an individual or entity who once worked for or associated with the Russian government does not render Plaintiffs' financial records relevant to the truth or falsity of the defamatory allegation that they somehow cooperated with the Kremlin in interfering in the 2016 U.S. presidential election.  In sum, Plaintiffs' financial records are not relevant to the truth or falsity of the defamatory statements and they should not be compelled to produce them.

## **CONCLUSION**

Defendants' motion to compel should be denied.

Dated: November 24, 2020       Respectfully submitted,

/s/ Alan S. Lewis

_____

Alan S. Lewis (Bar No. NY0252)
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.: (917) 533-2524
Fax: (212) 732-3232
Email: lewis@clm.com

-and-

Kim Sperduto (DC Bar No. 416127)
SPERDUTO THOMPSON & GASSLER PLC
1747 Pennsylvania Avenue, NW, Suite 1250
Washington, DC 20006
Tel: (202) 408-8900
Fax: (202) 408-8910
ksperduto@stglawdc.com

*Attorneys for Plaintiffs*

## __CERTIFICATE OF SERVICE__

I hereby certify that on this 24th day of November 2020, I electronically filed and served the foregoing using the CM/ECF system.


                */s/ Alan S. Lewis*
                Alan S. Lewis

9767891.11

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**MIKHAIL FRIDMAN, PETR AVEN, AND GERMAN KHAN,**

**Plaintiffs,**

**v.**

**BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,**

**Defendants.**

**Civil Action No. 17-2041-RJL**

---

**DECLARATION OF ALAN S. LEWIS**
**IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**
**PRODUCTION OF PLAINTIFFS' FINANCIAL RECORDS AND**
**OTHER EVIDENCE RELEVANT TO DAMAGES AND SUBSTANTIAL TRUTH**
**AND TO REVISE PLAINTIFFS' ANSWER TO INTERROGATORY NO. 20**
**AND RULE 26(a)(1)(A)(iii) DISCLOSURE**

I, Alan S. Lewis, declare under penalty of perjury as follows:

1.       I am an attorney duly licensed to practice law in this Court.  I am a partner at the law firm of Carter Ledyard & Milburn LLP, and represent Plaintiffs Mikhail Fridman, Petr Aven, and German Kahn, in the above-captioned case.

2.       This Declaration is submitted in support of Plaintiffs' opposition to Defendants' Motion to Compel (Dkt. 111).  I am fully familiar with the facts and circumstances of this case.

3.       On November 17, 2020, Defendants conducted the deposition of Plaintiff Fridman.  I defended Mr. Fridman at the deposition.  The questions posed to Mr. Fridman by Defendants' counsel included questions directed to the damages suffered by Mr. Fridman as a result of Defendants' publication of the defamatory statements at issue in this litigation.

4.       Attached hereto as Exhibit A is a true and correct copy of Plaintiffs' response and objections to Defendants' Request for Production No. 57.

5.      Attached hereto as Exhibit B are true and correct copies of a subpoena to testify to

Ed Rogers, and a subpoena to testify to Ambassador Richard Burt, both served by Defendants.

6.      Attached hereto as Exhibit C is a true and correct copy of excerpts from the book

CRIME IN PROGRESS: INSIDE THE STEELE DOSSIER AND THE FUSION GPS INVESTIGATION OF

DONALD TRUMP, by Glenn Simpson and Peter Fritsch.

Executed on November 24, 2020                    _/s/__Alan S. Lewis_____

                                                 Alan S. Lewis

# EXHIBIT A

objections and Plaintiffs' General Objections and Responses set forth above, Plaintiffs will make a good faith effort to locate and produce any available Plaintiffs' communications regarding U.S. policy or U.S.-Russian relations that relate to CIR 112 or the contents therein, or that are otherwise relevant to the issues in the Action.

**REQUEST NO. 56:**  All documents reflecting any communications between you and any charity, foundation, museum, art gallery, auction house, or non-profit located in whole or in part within the United States of America related to any public appearance or to a contribution of anything of value from you or Alfa or Other Entities.

**RESPONSE:**  Plaintiffs object to this Request as overly broad and unduly burdensome insofar as it seeks from Plaintiffs "all" responsive documents, and as seeking information that is not relevant to the issues in the Action.  Documents reflecting communications between any Plaintiff and any charity, foundation, museum, art gallery, auction house, or non-profit located in whole or in part within the United States of America related to any public appearance or to a contribution of anything of value from any Plaintiff are not relevant to the issues in the Action. Plaintiffs object to this request as seeking documents not within Plaintiffs' possession, custody, or control, and as seeking documents of non-parties over whom Plaintiffs have no control, such as Alfa and the Other Entities.  Plaintiffs object to the Request as creating unreasonable annoyance and prejudice to the Plaintiffs.  Details regarding Plaintiffs' charitable contributions are not relevant to the issues in the Action and constitute non-public and confidential information, and any inquiry into such matters is an unreasonable invasion of privacy.  Plaintiffs have identified charities that they support in response to Interrogatory 18 but will not seek to locate "all" communications relating to each charitable donation or appearance.

**REQUEST NO. 57:**  All tax returns filed by you or on your behalf for the years 2013 to present.

**RESPONSE:**  Plaintiffs object to this request as seeking documents that are not relevant to the issues in the Action.  Plaintiffs object to this request as creating unreasonable annoyance

37

and prejudice to the Plaintiffs.  Plaintiffs' tax returns or filings are not relevant to the issues in

the Action and constitute non-public and confidential information, and any inquiry into such tax

and personal financial matters is an unreasonable invasion of privacy.

**REQUEST NO. 58:**  All tax returns filed by Alfa, the Other Entities, or a third party on their
behalf for the years 2013 to present.

**RESPONSE:**  Plaintiffs object to this request as vague, ambiguous, and seeking

documents that are not relevant to the issues in the Action.  Plaintiffs object to this request as

seeking documents not within Plaintiffs' possession, custody, or control, and as seeking

documents of non-parties over whom Plaintiffs have no control, such as Alfa and Other Entities.

Alfa's and the Other Entities' tax returns or filings are not relevant to the issues in the Action.

**REQUEST NO. 59:**  All documents relating to your earned income, including wages and
investments, for the years 2013 to present.

**RESPONSE:**  Plaintiffs object to this request as overly broad and unduly burdensome

insofar as it seeks from Plaintiffs "all" responsive documents, and documents that are not

relevant to the issues in the Action.  Plaintiffs object to this request as creating unreasonable

annoyance and prejudice to the Plaintiffs.  Documents reflecting Plaintiffs' income constitutes

non-public and confidential information, and any inquiry into such personal financial matters is

an unreasonable invasion of privacy.

**REQUEST NO. 60:**  All documents, including but not limited to any and all financial records,
indicating in any way that you lost money, revenue, business, financing, or customers as a result
of the publication of the statements quoted in the Complaint that Plaintiffs claim are false and
defamatory.

**RESPONSE:**  Plaintiffs object to this request as overly broad and unduly burdensome

insofar as it seeks from Plaintiffs "all" responsive documents.  Plaintiffs object to this request as

creating unreasonable annoyance and prejudice to the Plaintiffs.  Documents reflecting Plaintiffs'

# EXHIBIT B

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | |
|---|---|
| Mikhail Fridman et al. | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   1:17-cv-02041 |
| Bean LLC et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                              Ed Rogers
_____
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
Subject matter of requests in Exhibit A

| Place:  Cunningham Levy Muse<br>1401 K Street NW, Suite 600<br>Washington, D.C. 20005 | Date and Time:<br><br>01/22/2020 9:00 am |
|---|---|

The deposition will be recorded by this method:   video
_____

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  11/6/19

| | |
|---|---|
| *CLERK OF COURT* | OR |
| _____<br>*Signature of Clerk or Deputy Clerk* | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Defendants
Bean LLC and Glenn Simpson _____ , who issues or requests this subpoena, are:
Joshua Levy, 1401 K Street NW, Suite 600, Washington, D.C. 20005, jal@cunninghamlevy.com, 202-261-6564

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  1:17-cv-02041

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  Ed Rogers _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____   on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

Pursuant to Federal Rules of Civil Procedure 34 and 45, Defendants Bean LLC d/b/a Fusion

GPS and Glenn Simpson request that, no later than December 6, 2019, You produce the documents

specified below for inspection and copying at the address designated on the attached subpoena.

## INSTRUCTIONS

These Instructions are to be read in conjunction with the Definitions included below:

1.      If, in reviewing this subpoena and accompanying exhibit, You or your lawyer(s)

have any questions or would like to request any clarifications, please call Joshua Levy at (202)

261-6564. We may be able to resolve any concerns over the phone.

2.      Unless otherwise specified, the relevant time period covered by these requests is

January 1, 1990 through the present.

3.      The basis for any objection to all or part of a Request shall be stated in detail. If an

objection pertains only to a portion of a Request, then You are to state the objection and respond

to the remainder of the Request.

4.      All produced Documents shall be organized either to correspond to the categories

in these Requests, or as they are kept in the ordinary course of business. All Documents shall be

produced: (a) as is, in their entirety; (b) with all associated file labels, file headings, and file folders

together with the responsive Documents from each file, and each file shall be identified as to its

owner or custodian; (c) with all metadata intact, including the file name, path, and directory

information for each, and if the storage location was a file share or work group folder, that is to be

specified; (d) with all pages stapled or fastened together as they were maintained, including all

attachments currently or previously appended to each Document; (e) with all attachments currently

or previously appended to an electronic file intact; and (f) Documents that cannot be legibly copied shall be produced in original form.

5.     All electronic production shall be produced in accordance with Fed. R. Civ. P. 34(b)(2)(E).

6.     If any document is withheld on the basis of a claim of privilege, identify the nature of the privilege asserted, including the specific facts upon which You rely to establish the asserted privilege, and specify: (a) the type of document; (b) the general subject matter of the document; (c) the date of the document; (d) the author(s) of the document including their name and title or position; (e) the addressee(s) and recipient(s) of the document, including their name and title or position; and (f) the specific Request(s) to which the Document is responsive.

## DEFINITIONS

1.     "Alfa" is an umbrella term used to describe a number of entities owned or controlled by Mikhail Fridman, German Khan, and/or Petr Aven, or in which Mikhail Fridman, German Khan, and/or Petr Aven hold significant beneficial interests, directly or indirectly, individually or collectively, and any agents, attorneys, representatives, employees, or other persons or entities acting for or on behalf of such entities, or in concert with them. These entities include but are not limited to: Alfa Group, Alfa Bank, Alfa Echo, Alfa Eko, Alfa Eco, Alfa Finance, ABH Holdings S.A., ABC Holdings, Alfa Capital, Alfa Capital Markets, Alfa Asset Management, Alfa Development, Alfa Telecom International Mobile, AlfaStrakhovanie Group, Altimo, Altimo Holdings & Investments, Altimo Foundation, Amsterdam Trade Bank, ATB Holdings, A1, Crown Finance Foundation, Crown Resources, Crown Trade & Finance, CTF Holdings, IDS Borjomi International Group, Rosvodokanal Group, Vimpel Communications, Vimpelcom, Veon

2

Holdings, Veon Limited, LetterOne Holdings, LetterOne Holdings SA, L1 Energy, L1 Technology, L1 Health, L1 Investment Holdings, and X5 Retail Group, and any of their subsidiaries. For purposes of this definition, "controlled" does not require the investor to be a majority shareholder, as an investor need not own a majority of shares in a company to be considered a controlling shareholder.

As used in this subpoena, the term "Alfa" also includes any and all other entities in which You know Mikhail Fridman, German Khan, and/or Petr Aven hold an economic interest of at least 5 percent, directly or indirectly, individually or collectively, and any agents, attorneys, representatives, employees, or other persons or entities acting for or on behalf of such entities, or in concert with them.

2.      The term "document" means:

(a)     all writings of any kind and in electronic or paper form (including the original and non-identical copies, whether different from the originals by reason of any notations made on such copies or otherwise), including, without limitation, communications, correspondence, work and personal e-mail, WhatsApp messages, Slack messages, Signal messages, or other instant or text messages, social media communications, notes, invoices, statements, checks, check stubs, forms, applications, records, returns, summaries, books, diaries, intraoffice communications, telegrams, studies, analyses, reports, results of investigations, contracts, ledgers, books of account, settlement sheets, working papers, cost-sheets, estimates, telephone records, stenographer's notebooks, desk calendars, appointment books, time sheets or logs, maps, computer data, job or transaction files, daily job reports, field reports, meeting notes, papers similar to any of the foregoing, notations constituting or reflecting oral, written and electronic communications and all drafts, alterations, modifications, changes and/or amendments of any of the foregoing;

(b)      all graphic or oral records or representations of any kind including, without limitation, photographs, charts, plans, drawings, microfiche, microfilm, videotape, recordings and motion pictures; and

(c)      all electronic, mechanical or electrical records or representation, whether transcribed or not, including, without limitation, emails and any and all other forms of electronic messages, tapes, cassettes, discs, compact discs, computer diskettes and tape recordings.

3.      The term "all documents" means every document, as above defined in Paragraph 2 of these Definitions, which can be located or discovered by reasonably diligent efforts.  If more than one version or copy of a document exists and any such version or copy bears markings or notations which are not on other versions or copies of the document, each such version or copy is included within the meaning of the term "document."

4.      The term "communications" means any verbal or written transmittal of information (in the form of facts, ideas, inquiries, or otherwise) between two or more persons including, without limitation, correspondence, email communication, messages, social media messaging and chats, social media postings, encrypted app communications (*e.g.*, WhatsApp, Signal), telephone conversations, other conversations, discussions, meetings, conferences and other such activities or occurrences whereby thoughts, opinions, or data are transmitted between two or more persons.

5.      The term "concern" or "concerning" means comprising, indicating, concerning, describing, evidencing, discussing, constituting, involving, reflecting, referring to, relating to or otherwise having anything to do with the subject material of the request in any way whatsoever.

6.      The term "affiliated with" means owned by, leased by, registered to, associated with, relating to or otherwise having anything to do with the subject material of the request in any way whatsoever.

4

7.      The term "CIR 112" means Company Intelligence Report 2016/112, dated September 14, 2016, prepared by Christopher Steele.  A copy of CIR 112 is attached hereto as Exhibit B.

8.      The term "Kremlin" means Vladimir Putin, the government of Russia, or any person or entity known or suspected by You to be acting on behalf of or in concert with them, including Russian or Ukrainian businessmen, oligarchs, agents, attorneys, employees, contractors and representatives.

9.      The term "the Litigation" means *Fridman v. Bean LLC*, Civil Case No. 1:17-cv-02041 (RJL) (D.D.C.).

10.     The term "the New Yorker story" means the article cited as Dexter Filkins, "Was There a Connection between a Russian Bank and the Trump Campaign?," The New Yorker (Oct. 15, 2018 (print edition)), *available at* https://www.newyorker.com/magazine/2018/10/15/was-there-a-connection-between-a-russian-bank-and-the-trump-campaign.

11.     The term "possession, custody, or control" includes documents You have the legal right to obtain on demand, regardless of whether the document is presently in your possession or custody.

12.     The term "person" means any natural person or any corporation, association or other legal or governmental entity.

13.     The term "the Slate story" means the article cited as Franklin Foer, *Was a Trump Server Communicating with Russia?*, Slate (Oct. 31, 2016), *available at* http://www.slate.com/articles/news_and_politics/cover_story/2016/10/was_a_server_registered_t o_the_trump_organization_communicating_with_russia.html.

14.     The term "Special Counsel's Office" means Special Counsel Robert S. Mueller III and employees assisting him in the investigation of the Russian government's efforts to interfere in the 2016 presidential election and any links and/or coordination between the Russian government and individuals associated with the campaign of Donald J. Trump.

15.     The term "2016 Trump Campaign" means Donald J. Trump's 2016 presidential campaign and anyone or any entity known or suspected by you to be acting for or on behalf of it, or in concert with it, including any of their agents, attorneys, employees, contractors and representatives.

16.     The term "Trump Organization" means the group of business entities for which Donald J. Trump is the sole, principal or majority owner.

17.     The term "Trump Transition Team" means Donald J. Trump's presidential transition team for 2016 through January 20, 2017, and anyone or any entity known or suspected by You to be acting for or on behalf of it, or in concert with it, including any of their agents, attorneys, employees, contractors and representatives.

18.     "You" or "Your" refers to the Person named on the attached subpoena and all persons acting or purporting to act on behalf of that Person.

19.     Use of the singular includes the plural. The use of the plural includes the singular.

20.     As used herein, the term "and" shall mean "and" as well as "or."

21.     As used herein, the term "or" shall mean "or" as well as "and."

## DOCUMENTS TO BE PRODUCED

You are required to produce the following documents within your possession, custody or control:

1. All contracts between You and (a) Mikhail Fridman, (b) Petr Aven, (c) German Khan, and/or (d) Alfa.

2. All subcontracts in support of any contracts produced in response to Request No. 1.

3. All invoices, bills, or records concerning any payments and/or obligations pursuant to the contracts or subcontracts produced in response to Request Nos. 1 or 2.

4. All communications between You and (a) Mikhail Fridman; (b) Petr Aven; (c) German Khan; and/or (d) Alfa, or anyone acting on their behalf or suspected by You of acting on their behalf, concerning U.S. government policy or communications with U.S. government officials or their representatives.

5. All communications between You and (a) Mikhail Fridman; (b) Petr Aven; (c) German Khan; and/or (d) Alfa, or anyone acting on their behalf or suspected by You of acting on their behalf, concerning the U.S. Foreign Corrupt Practices Act, the UK Bribery Act 2010, and/or any other anti-bribery law or anti-money laundering law of any jurisdiction.

6. All documents concerning the Slate story and/or the New Yorker story or their subject matter, including but not limited to all documents concerning the alleged communications or attempted communications between a server or servers affiliated with Alfa and a server or servers affiliated with the Trump Organization.

7. All documents concerning the investigations by Mandiant and/or Stroz Friedberg that are referenced in the New Yorker story concerning alleged communications and/or attempted communications between a server affiliated with Alfa and a server affiliated with the Trump Organization.

8. All documents concerning the domain mail1.trump-email.com, including but not limited to documents concerning shutting down or impairing the functionality of the domain mail1.trump-email.com and investigating D.N.S. lookups of the domain mail1.trump-email.com by a server or servers affiliated with Alfa.

9. All communications between You and Cendyn.

10. All communications between You and (a) the Trump Organization, (b) the 2016 Trump Campaign, or (c) the Trump Transition Team, or anyone acting on their behalf or believed by You to be acting on their behalf, concerning Alfa, Mikhail Fridman, Petr Aven, German Khan, and/or the Kremlin.

7

11. All documents containing or comprising videos, photographs, or images featuring (a) Mikhail Fridman; (b) Petr Aven; and/or (c) German Khan.

12. All communications between You and the governments of Russia or the Ukraine concerning Alfa, Mikhail Fridman, Petr Aven, and/or German Khan.

13. All communications between You and Oleg Govorun.

14. All documents concerning Oleg Govorun.

15. All communications between You and Richard Burt concerning a) Mikhail Fridman, (b) Petr Aven, (c) German Khan, and/or (d) Alfa.

16. All documents concerning Bean LLC, Fusion GPS, Glenn Simpson, Peter Fritsch, Christopher Steele, and/or Orbis, from January 1, 2016 through the present.

17. All documents concerning the Litigation.

18. All documents concerning CIR 112 and/or its contents.

19. All documents concerning TNK-BP.

20. All communications with the Special Counsel's Office or any of its agents, attorneys or representatives concerning its investigation into Russia's interference in the 2016 US presidential election.

Exhibit B

COMPANY INTELLIGENCE REPORT 2016/112

## RUSSIA/US PRESIDENTIAL ELECTION: KREMLIN-ALPHA GROUP CO-OPERATION

Summary

- Top level Russian official confirms current closeness of Alpha Group-PUTIN relationship. Significant favours continue to be done in both directions and FRIDMAN and AVEN still giving informal advice to PUTIN, especially on the US

- Key intermediary in PUTIN-Alpha relationship identified as Oleg GOVORUN, currently Head of a Presidential Administration department but throughout the 1990s, the Alpha executive who delivered illicit cash directly to PUTIN

- PUTIN personally unbothered about Alpha's current lack of investment in Russia but under pressure from colleagues over this and able to exploit it as lever over Alpha interlocutors

Detail

1. Speaking to a trusted compatriot in mid-September 2016, a top level Russian government official commented on the history and current state of relations between President PUTIN and the Alpha Group of businesses led by oligarchs Mikhail FRIDMAN, Petr AVEN and German KHAN. The Russian government figure reported that although they had had their ups and downs, the leading figures in Alpha currently were on very good terms with PUTIN. Significant favours continued to be done in both directions, primarily political ones for PUTIN and business/legal ones for Alpha. Also, FRIDMAN and AVEN continued to give informal advice to PUTIN on foreign policy, and especially about the US where he distrusted advice being given to him by officials.

2. Although FRIDMAN recently had met directly with PUTIN in Russia, much of the dialogue and business between them was mediated through a senior Presidential Administration official, Oleg GOVORUN, who currently headed the department therein responsible for Social Co-operation With the CIS. GOVORUN was trusted by PUTIN and recently had accompanied him to Uzbekistan to pay respects at the tomb of former president KARIMOV. However according to the top level Russian government official, during the 1990s GOVORUN had been Head of Government Relations at Alpha Group and in reality, the "driver" and "bag carrier"

25

used by FRIDMAN and AVEN to deliver large amounts of illicit cash to the Russian president, at that time deputy Mayor of St Petersburg. Given that and the continuing sensitivity of the PUTIN-Alpha relationship, and need for plausible deniability, much of the contact between them was now indirect and entrusted to the relatively low profile GOVORUN.

3.  The top level Russian government official described the PUTIN-Alpha relationship as both carrot and stick. Alpha held 'kompromat' on PUTIN and his corrupt business activities from the 1990s whilst although not personally overly bothered by Alpha's failure to reinvest the proceeds of its TNK oil company sale into the Russian economy since, the Russian president was able to use pressure on this count from senior Kremlin colleagues as a lever on FRIDMAN and AVEN to make them do his political bidding.

**14 September 2016**

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| Mikhail Fridman et al. | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:17-cv-02041 |
| Bean LLC et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                          Richard Burt
_____
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
Subject matter of requests in Exhibit A

| Place: | Cunningham Levy Muse<br>1401 K Street NW, Suite 600<br>Washington, D.C. 20005 | Date and Time:<br><br>01/15/2020 9:00 am |
|---|---|---|

The deposition will be recorded by this method:    video

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   11|6|19

|  CLERK OF COURT  |  |
|---|---|
|  |  OR  |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Defendants
Bean LLC and Glenn Simpson                                          , who issues or requests this subpoena, are:
Joshua Levy, 1401 K Street NW, Suite 600, Washington, D.C. 20005, jal@cunninghamlevy.com, 202-261-6564

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   1:17-cv-02041

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  Richard Burt _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____           _____
                                                          *Server's signature*

                                        _____
                                                          *Printed name and title*

                                        _____
                                                          *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

  (A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

Pursuant to Federal Rules of Civil Procedure 34 and 45, Defendants Bean LLC d/b/a Fusion

GPS and Glenn Simpson request that, no later than December 6, 2019, You produce the documents

specified below for inspection and copying at the address designated on the attached subpoena.

## INSTRUCTIONS

These Instructions are to be read in conjunction with the Definitions included below:

1.      If, in reviewing this subpoena and accompanying exhibit, You or your lawyer(s)

have any questions or would like to request any clarifications, please call Joshua Levy at (202)

261-6564. We may be able to resolve any concerns over the phone.

2.      Unless otherwise specified, the relevant time period covered by these requests is

January 1, 1990 through the present.

3.      The basis for any objection to all or part of a Request shall be stated in detail. If an

objection pertains only to a portion of a Request, then You are to state the objection and respond

to the remainder of the Request.

4.      All produced Documents shall be organized either to correspond to the categories

in these Requests, or as they are kept in the ordinary course of business. All Documents shall be

produced: (a) as is, in their entirety; (b) with all associated file labels, file headings, and file folders

together with the responsive Documents from each file, and each file shall be identified as to its

owner or custodian; (c) with all metadata intact, including the file name, path, and directory

information for each, and if the storage location was a file share or work group folder, that is to be

specified; (d) with all pages stapled or fastened together as they were maintained, including all

attachments currently or previously appended to each Document; (e) with all attachments currently

or previously appended to an electronic file intact; and (f) Documents that cannot be legibly copied shall be produced in original form.

5.      All electronic production shall be produced in accordance with Fed. R. Civ. P. 34(b)(2)(E).

6.      If any document is withheld on the basis of a claim of privilege, identify the nature of the privilege asserted, including the specific facts upon which You rely to establish the asserted privilege, and specify: (a) the type of document; (b) the general subject matter of the document; (c) the date of the document; (d) the author(s) of the document including their name and title or position; (e) the addressee(s) and recipient(s) of the document, including their name and title or position; and (f) the specific Request(s) to which the Document is responsive.

## DEFINITIONS

1.      "Alfa" is an umbrella term used to describe a number of entities owned or controlled by Mikhail Fridman, German Khan, and/or Petr Aven, or in which Mikhail Fridman, German Khan, and/or Petr Aven hold significant beneficial interests, directly or indirectly, individually or collectively, and any agents, attorneys, representatives, employees, or other persons or entities acting for or on behalf of such entities, or in concert with them. These entities include but are not limited to: Alfa Group, Alfa Bank, Alfa Echo, Alfa Eko, Alfa Eco, Alfa Finance, ABH Holdings S.A., ABC Holdings, Alfa Capital, Alfa Capital Markets, Alfa Asset Management, Alfa Development, Alfa Telecom International Mobile, AlfaStrakhovanie Group, Altimo, Altimo Holdings & Investments, Altimo Foundation, Amsterdam Trade Bank, ATB Holdings, A1, Crown Finance Foundation, Crown Resources, Crown Trade & Finance, CTF Holdings, IDS Borjomi International Group, Rosvodokanal Group, Vimpel Communications, Vimpelcom, Veon

2

Holdings, Veon Limited, LetterOne Holdings, LetterOne Holdings SA, L1 Energy, L1 Technology, L1 Health, L1 Investment Holdings, and X5 Retail Group, and any of their subsidiaries. For purposes of this definition, "controlled" does not require the investor to be a majority shareholder, as an investor need not own a majority of shares in a company to be considered a controlling shareholder.

As used in this subpoena, the term "Alfa" also includes any and all other entities in which You know Mikhail Fridman, German Khan, and/or Petr Aven hold an economic interest of at least 5 percent, directly or indirectly, individually or collectively, and any agents, attorneys, representatives, employees, or other persons or entities acting for or on behalf of such entities, or in concert with them.

2.      The term "document" means:

(a)      all writings of any kind and in electronic or paper form (including the original and non-identical copies, whether different from the originals by reason of any notations made on such copies or otherwise), including, without limitation, communications, correspondence, e-mail, WhatsApp messages, Slack messages, Signal messages, or other instant or text messages, social media communications, notes, invoices, statements, checks, check stubs, forms, applications, records, returns, summaries, books, diaries, intraoffice communications, telegrams, studies, analyses, reports, results of investigations, contracts, ledgers, books of account, settlement sheets, working papers, cost-sheets, estimates, telephone records, stenographer's notebooks, desk calendars, appointment books, time sheets or logs, maps, computer data, job or transaction files, daily job reports, field reports, meeting notes, papers similar to any of the foregoing, notations constituting or reflecting oral, written and electronic communications and all drafts, alterations, modifications, changes and/or amendments of any of the foregoing;

(b)     all graphic or oral records or representations of any kind including, without limitation, photographs, charts, plans, drawings, microfiche, microfilm, videotape, recordings and motion pictures; and

(c)     all electronic, mechanical or electrical records or representation, whether transcribed or not, including, without limitation, emails and any and all other forms of electronic messages, tapes, cassettes, discs, compact discs, computer diskettes and tape recordings.

3.     The term "all documents" means every document, as above defined in Paragraph 2 of these Definitions, which can be located or discovered by reasonably diligent efforts.  If more than one version or copy of a document exists and any such version or copy bears markings or notations which are not on other versions or copies of the document, each such version or copy is included within the meaning of the term "document."

4.     The term "communications" means any verbal or written transmittal of information (in the form of facts, ideas, inquiries, or otherwise) between two or more persons including, without limitation, correspondence, email communication, messages, social media messaging and chats, social media postings, encrypted app communications (*e.g.*, WhatsApp, Signal), telephone conversations, other conversations, discussions, meetings, conferences and other such activities or occurrences whereby thoughts, opinions, or data are transmitted between two or more persons.

5.     The term "concern" or "concerning" means comprising, indicating, concerning, describing, evidencing, discussing, constituting, involving, reflecting, referring to, relating to or otherwise having anything to do with the subject material of the request in any way whatsoever.

6.     The term "possession, custody, or control" includes documents You have the legal right to obtain on demand, regardless of whether the document is presently in your possession or custody.

7.     The term "person" means any natural person or any corporation, association or other legal or governmental entity.

8.     The term "CIR 112" means Company Intelligence Report 2016/112, dated September 14, 2016, as prepared by Christopher Steele. A copy of CIR 112 is attached hereto as Exhibit B.

9.     The term "Kremlin" means Vladimir Putin, the government of Russia, or any person or entity known or suspected by You to be acting on behalf of or in concert with them, including Russian or Ukrainian businessmen, oligarchs, agents, attorneys, employees, contractors and representatives.

10.     The term "the Litigation" means *Fridman v. Bean LLC*, Civil Case No. 1:17-cv-02041 (RJL) (D.D.C.).

11.     The term "Project A" means the effort to help establish a communications channel between Russia and the Trump Transition Team, mentioned in the report entitled, "Report on the Investigation into Russian Interference in the 2016 Presidential Election," by Special Counsel Robert S. Mueller, III, and comprising two volumes. A copy is located here: https://www.justice.gov/storage/report.pdf.

12.     The term "Special Counsel's Office" means Special Counsel Robert S. Mueller III and employees assisting him in the investigation of the Russian government's efforts to interfere in the 2016 presidential election and any links and/or coordination between the Russian government and individuals associated with the campaign of Donald J. Trump.

13.     The term "2016 Trump Campaign" means Donald J. Trump's 2016 presidential campaign and anyone or any entity known or suspected by You to be acting for or on behalf of it,

or in concert with it, including any of their agents, attorneys, employees, contractors and representatives.

14.     The term "Trump Organization" means the group of business entities for which Donald J. Trump is the sole, principal or majority owner.

15.     The term "Trump Transition Team" means Donald J. Trump's presidential transition team for 2016 through January 20, 2017, and anyone or any entity known or suspected by You to be acting for or on behalf of it, or in concert with it, including any of their agents, attorneys, employees, contractors and representatives.

16.     "You" or "Your" refers to the Person named on the attached subpoena and all persons acting or purporting to act on behalf of that Person.

17.     Use of the singular includes the plural. The use of the plural includes the singular.

18.     As used herein, the term "and" shall mean "and" as well as "or."

19.     As used herein, the term "or" shall mean "or" as well as "and."

## DOCUMENTS TO BE PRODUCED

You are required to produce the following documents within your possession, custody or control:

1.  All communications between You and (a) Mikhail Fridman; (b) Petr Aven; (c) German Khan; and/or (d) Alfa, or anyone acting on their behalf or suspected by You of acting on their behalf.

2.  To the extent not produced in response to Request No. 1, all documents concerning (a) Mikhail Fridman; (b) Petr Aven; (c) German Khan; and/or (d) Alfa, or anyone acting on their behalf or suspected by You of acting on their behalf.

3.  All communications between You and the Trump Organization concerning (a) Mikhail Fridman, (b) Petr Aven, (c) German Khan, (d) Alfa; (e) the Kremlin; and/or (f) U.S.-Russian relations.

4.  All communications between You and the 2016 Trump Campaign concerning (a) Mikhail Fridman, (b) Petr Aven, (c) German Khan, (d) Alfa; (e) the Kremlin; and/or (f) U.S.-Russian relations.

5.  All communications between You and the Trump Transition Team concerning (a) Mikhail Fridman, (b) Petr Aven, (c) German Khan, (d) Alfa; (e) the Kremlin; and/or (f) U.S.-Russian relations.

6.  All documents concerning "Project A."

7.  All communications between You and the Center for the National Interest or Dimitri Simes, or anyone acting on their behalf or suspected by You of acting on their behalf.

8.  All documents – other than news stories – concerning the alleged communications between a Trump Tower server and an Alfa server.

9.  All documents concerning CIR 112 and its content.

10. All documents concerning the Litigation.

11. All communications between You and the Special Counsel's Office, including but not limited to its attorneys and agents.

7

**Exhibit B**

COMPANY INTELLIGENCE REPORT 2016/112

## RUSSIA/US PRESIDENTIAL ELECTION: KREMLIN-ALPHA GROUP CO-OPERATION

### Summary

- Top level Russian official confirms current closeness of Alpha Group-PUTIN relationship. Significant favours continue to be done in both directions and FRIDMAN and AVEN still giving informal advice to PUTIN, especially on the US

- Key intermediary in PUTIN-Alpha relationship identified as Oleg GOVORUN, currently Head of a Presidential Administration department but throughout the 1990s, the Alpha executive who delivered illicit cash directly to PUTIN

- PUTIN personally unbothered about Alpha's current lack of investment in Russia but under pressure from colleagues over this and able to exploit it as lever over Alpha interlocutors

### Detail

1. Speaking to a trusted compatriot in mid-September 2016, a top level Russian government official commented on the history and current state of relations between President PUTIN and the Alpha Group of businesses led by oligarchs Mikhail FRIDMAN, Petr AVEN and German KHAN. The Russian government figure reported that although they had had their ups and downs, the leading figures in Alpha currently were on very good terms with PUTIN. Significant favours continued to be done in both directions, primarily political ones for PUTIN and business/legal ones for Alpha. Also, FRIDMAN and AVEN continued to give informal advice to PUTIN on foreign policy, and especially about the US where he distrusted advice being given to him by officials.

2. Although FRIDMAN recently had met directly with PUTIN in Russia, much of the dialogue and business between them was mediated through a senior Presidential Administration official, Oleg GOVORUN, who currently headed the department therein responsible for Social Co-operation With the CIS. GOVORUN was trusted by PUTIN and recently had accompanied him to Uzbekistan to pay respects at the tomb of former president KARIMOV. However according to the top level Russian government official, during the 1990s GOVORUN had been Head of Government Relations at Alpha Group and in reality, the "driver" and "bag carrier"

25

used by FRIDMAN and AVEN to deliver large amounts of illicit cash to the Russian president, at that time deputy Mayor of St Petersburg. Given that and the continuing sensitivity of the PUTIN-Alpha relationship, and need for plausible deniability, much of the contact between them was now indirect and entrusted to the relatively low profile GOVORUN.

3. The top level Russian government official described the PUTIN-Alpha relationship as both carrot and stick. Alpha held 'kompromat' on PUTIN and his corrupt business activities from the 1990s whilst although not personally overly bothered by Alpha's failure to reinvest the proceeds of its TNK oil company sale into the Russian economy since, the Russian president was able to use pressure on this count from senior Kremlin colleagues as a lever on FRIDMAN and AVEN to make them do his political bidding.

14 September 2016

26

# EXHIBIT C



# CRIME iN PROGRESS

## INSIDE THE STEELE DOSSIER AND THE FUSION GPS INVESTIGATION OF DONALD TRUMP

### GLENN SIMPSON and PETER FRITSCH

Co-founders of Fusion GPS



# CRIME IN PROGRESS

## INSIDE THE STEELE DOSSIER AND THE FUSION GPS INVESTIGATION OF DONALD TRUMP

# GLENN SIMPSON
## and
# PETER FRITSCH



RANDOM HOUSE
NEW YORK

In the middle of that exercise, a ripple of gasps and chuckles coursed through the office when up popped a news alert: Michael Cohen, the president's pit bull personal lawyer, had filed a defamation lawsuit in U.S. federal court accusing Fusion and Simpson of spreading false allegations, via the dossier, about Cohen's alleged interactions with various Russians. These reports had done "harm to his personal and professional reputation," the suit claimed. Cohen wanted to defend his honor in a trial by jury. His complaint, along with another against *BuzzFeed,* was filed one day shy of a year after the website had published the dossier, barely beating the buzzer on the statute of limitations for defamation.

No one at Fusion relished another depleting wave of legal fees and the distraction of another court battle—the fourth in a year. But there was the potential for getting court-ordered access to Cohen, his records, his friends and associates—even potentially the president himself. "He's going to lose this suit," Fritsch said. "Yeah," Catan replied, "but hopefully not before we get discovery."

Fusion could easily draw up a long list of things they would like to extract from Cohen—his whereabouts during the summer of 2016, when Steele's reporting placed him at a meeting with Russians in Prague; his passport and travel records; his emails; any recordings or notes of conversations with Trump or his campaign team. And that was even before delving into the reputational issues around Cohen's colorful history as a mob lawyer and would-be casino operator.

Fusion, it turned out, knew a lot about Michael Cohen—more by then, probably, than any news or law enforcement organization. It was information they'd accumulated and dug up over many months, ever since Steele spotlighted Cohen as a central player in the Trump-Russia relationship in 2016. All that work established that no incoming president in recent U.S. history had worked so closely with a person of such obvious ill repute. Cohen had been a bright-red warning signal flashing in plain sight. And yet no one paid him much mind until well after Election Day.


Cohen had surfaced early in the Bangor assignment, but only peripherally. At first, he seemed to be merely another brash New Yorker and loyalist working for Trump. He was the guy who would call gossip columnists to slip them some scoop favorable to Trump, or political reporters to scream about a story the boss didn't like. Oddly, he was also the

lasted barely a month. In March, the *Journal* unearthed documents marked HIGHLY CONFIDENTIAL PROCEEDING that tied the payment to Daniels directly to the Trump Organization—credible evidence that Trump's company, working with his personal attorney, had sought to skirt federal election laws. Cohen then switched up his story, conceding that he had made the payments, but insisted it was without Trump's knowledge or involvement, another lie that would not hold up for long.

As Cohen struggled to stay afloat, Fusion became more taken by the idea of using his defamation suit to pry some information out of the secrecy-obsessed Trump World. Cohen's case was a flimsy one to start with, but the avalanche of accusations now swirling around him made it even weaker. Both Simpson and Fritsch began to relish the thought of answering Cohen's lawsuit with a motion to proceed immediately to discovery.

Months and months of depositions and exchanges of records, though, would mean big money in legal fees—certainly well north of a million dollars. So the Fusion partners put out feelers among a few past supporters. Who might be game to back a full discovery campaign against President Trump's now famous personal attorney? A couple of arms shot up, and one made a pledge to cover the entire tab.

Despite the legal setbacks and the continued congressional entanglements, Fusion was riding a wave of goodwill in early 2018 as developments affirmed the company's work on the Russia front.

A report in *The New York Times* had identified a chatty Trump campaign aide, George Papadopoulos, as the initial trigger for the FBI's Russia investigation. The story made clear that Simpson was right in telling the Judiciary Committee that the FBI had an additional source for its Russia allegations. The tide of the overall Mueller investigation had also markedly shifted in Fusion's favor in the wake of some prominent indictments. Mueller brought charges against thirteen Russian nationals and three Russian entities on charges of interfering in the 2016 election. Mueller also filed a raft of new financial charges against Manafort based on evidence provided by his longtime partner, Rick Gates.

Also helpful had been the release of a second transcript of Simpson's congressional testimony, this one from his time before the House Intelligence Committee.

The transcript outlined Fusion's suspicion that the Russians had con-

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MIKHAIL FRIDMAN, PETR AVEN, AND GERMAN KHAN,**<br><br>                    **Plaintiffs,**<br><br>**v.**<br><br>**BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,**<br><br>                    **Defendants.** | **Civil Action No. 17-2041-RJL** |

## <u>PROPOSED ORDER</u>

Upon consideration of the Motion to Compel by Defendants Bean LLC and Glenn

Simpson (Dkt. 111) (the "Motion"), the Court ORDERS that:

The Motion is DENIED.

_____
Richard J. Leon
Senior United States District Judge

9774534.1