# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN,**

                **Plaintiffs,**

**v.**

**BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,**

                **Defendants.**

Civil Action No. 1:17-2041-RJL

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT <u>ON THE ISSUE OF PLAINTIFFS AS PUBLIC FIGURES</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ..................................................................................................... 1

RELEVANT BACKGROUND ................................................................................. 4

     A.     Plaintiffs Bring This Lawsuit and Defendants Move to Dismiss It Under the D.C. Anti-SLAPP Act and Rule 12(b)(6). ............................................ 4

     B.     In a Separate Case, the D.C. Superior Court Dismisses Under the D.C. Anti-SLAPP Act Plaintiffs' Separate Claims Against Steele and Orbis. ........................ 5

     C.     This Court, After Fully Considering the D.C. Superior Court's Decision, Denies Defendants' Motions to Dismiss and Holds That Whether Plaintiffs Are Private or Public Figures "Cannot [Be] Resolve[d]" on a "Limited Record." ........ 6

     D.     Consistent with the Court's Explanation That the Public Figure Issue Can Only Be Addressed on a Full Factual Record, Defendants Conduct and Obtain Extensive Discovery Related to the Public Figure Issue. ........................................ 9

     E.     After Having Served and Received Substantial Discovery from Plaintiffs (and Blocked Plaintiffs from Obtaining Discovery), Defendants Now Move for Summary Judgment on the Public Figure Issue Based on Issue Preclusion—in an Effort to Short-Circuit Proper Consideration of the Issue. ............................. 12

DEFENDANTS OMIT KEY PORTIONS OF THE APPLICABLE LEGAL STANDARDS ..... 12

ARGUMENT ........................................................................................................... 13

I.     Defendants' Motion Must Be Denied at the Outset Because Defendants Failed to Plead Issue Preclusion as an Affirmative Defense in Their Answer as Required by Federal Rule of Civil Procedure 8(c). .......................................... 14

II.     Defendants' Motion—Which Seeks Summary Judgment on an Incomplete Factual Record—Conflicts with and Is Foreclosed by the Court's Opinion Denying Defendants' Motion to Dismiss. ........................................................ 16

     A.     Defendants' Motion Conflicts with the Court's Prior Opinion—and Runs Afoul of Settled D.C. Circuit Law—by Requesting Summary Judgment on an Incomplete Record. ................................................................. 17

     B.     Defendants Impermissibly Seek to Preclude Plaintiffs from Obtaining Evidence Related to the Public Figure Issue. ........................................ 19

     C.     Defendants Attempt to Circumvent the Court's Prior Ruling that the D.C. Anti-SLAPP Act Does Not Apply. ................................................. 21

III.  Defendants' Motion Must Be Denied Because Defendants Fail to Establish That All of the Conditions Required for Its Application Have Been Satisfied. ...............................22

    A.  The Public-Figure Issue Was Not Actually Litigated in the Superior Court. ........23

    B.  The Public-Figure Issue Was Not Determined by a Valid, Final Judgment *on the Merits*. ......................................................26

    C.  Plaintiffs Were Not Afforded a Full and Fair Opportunity to Litigate the Public Figure Issue in the D.C. Superior Court Case. .......................................................28

        1.  Contrary to Defendants' Assertion, Evaluation of the "Full and Fair Opportunity" Standard Is Not Coterminous with a Due Process Analysis. ...............................29

        2.  Plaintiffs Faced a Heavier Burden Under the D.C. Anti-SLAPP Act in the Superior Court Proceedings Than They Do Under Federal Rule of Civil Procedure 56. ...............................31

        3.  Plaintiffs Were Required to Overcome Procedural Roadblocks Under the D.C. Anti-SLAPP Act in the Superior Court Proceedings That They Do Not Face Under the Federal Rules of Civil Procedure. ........................33

        4.  The D.C. Anti-SLAPP Act Prevented Plaintiffs From Having an Opportunity to Conduct Discovery in the D.C. Superior Court Case. ........34

CONCLUSION ...............................................................................................................35

CERTIFICATE OF SERVICE ......................................................................................37

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*3M Co. v. Boulter*,
   842 F. Supp. 2d 85 (D.D.C. 2012) ............................................................. 25, 32

*Abbas v. Foreign Pol. Grp., LLC*,
   783 F.3d 1328 (D.C. Cir. 2015) .................................................... 21, 22, 24, 25

*Abbott Labs. v. Andex Pharms., Inc.*,
   473 F.3d 1196 (Fed. Cir. 2007) ............................................................... 27

*Adams v. Trimble*,
   No. 11-cv-1360, 2012 WL 260160 (E.D. Cal. Jan. 27, 2012) ......................... 30

*Amore ex rel. Estates of Amore v. Accor, S.A.*,
   484 F. Supp. 2d 124 (D.D.C. 2007) ......................................................... 30

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................. 33

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
   575 U.S. 138 (2015) ................................................................. 3, 23, 26, 30

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
   402 U.S. 313 (1971) .............................................................................. 14

*Bryson v. Gere*,
   268 F. Supp. 2d 46 (D.D.C. 2003) ............................................................. 28

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................. 13

*Chen v. FBI*,
   435 F. Supp. 3d 189 (D.D.C. 2020) .................................................. 4, 29, 34

*Cmty. Nutrition Inst. v. Block*,
   749 F.2d 50 (D.C. Cir. 1984) .................................................................. 27

*Competitive Enter. Inst. v. Mann*,
   150 A.3d 1213 (D.C. 2016) ..................................................... 24, 25, 31, 34

*Convertino v. U.S. Dep't of Justice*,
   684 F.3d 93 (D.C. Cir. 2012) ........................................................... 12, 18

*Donovan v. U.S. Postal Service*,
    530 F. Supp. 894 (D.D.C. 1981) ........................................................................ 28

*Fairbanks v. Roller*,
    314 F. Supp. 3d 85 (D.D.C. 2018) ..................................................................... 32

*Foretich v. Capital Cities/ABC, Inc.*,
    37 F.3d 1541 (4th Cir. 1994) ............................................................................. 32

*Fridman v. Orbis Bus. Intel. Ltd.*,
    229 A.3d 494 (D.C. 2020) ............................................................ 6, 24, 26, 33

*Fridman v. Orbis Bus.*,
    No. 20-693, 2021 WL 78212 (U.S. Jan. 11, 2021) ........................................... 6

*Haase v. Sessions*,
    835 F.2d 902 (D.C. Cir. 1987) .......................................................................... 28

*Harris v. Sec'y of U.S. Dep't of Veterans Affairs*,
    126 F.3d 339 (D.C. Cir. 1997) ............................................................... 2, 14, 15

*Haynes v. Hanson*,
    No. 11-cv-050201, 2013 WL 1390397 (N.D. Cal. Apr. 4, 2013) ..................... 28

*Herbert v. Architect of Capitol*,
    839 F. Supp. 2d 284 (D.D.C. 2012) .................................................................. 15

*Hutchinson v. Proxmire*,
    443 U.S. 111 (1979) .......................................................................................... 20

*Indus. Bank of Wash. v. Tobriner*,
    405 F.2d 1321 (D.C. Cir. 1968) ........................................................................ 27

*Khan v. Orbis Bus. Intel. Ltd.*,
    No. 2018 CA 002667 B (D.C. Super. Ct.) ..................................................... 5, 6

*Khan v. Orbis Bus. Intel. Ltd.*,
    No. 2018 CA 002667 B, 2018 WL 11232420
    (D.C. Super. Ct. Aug. 28, 2018) ............................................ 5, 23, 28, 29, 32

*Lamont v. Proskauer Rose, LLP*,
    881 F. Supp. 2d 105 (D.D.C. 2012) .................................................................. 28

*Mandel v. Bos. Phoenix, Inc.*,
    456 F.3d 198 (1st Cir. 2006) ....................................................................... 13, 18

*McWay v. LaHood*,
    269 F.R.D. 35 (D.D.C. 2010) ........................................................................... 13

*Montana v. United States*,
 440 U.S. 147 (1979)................................................................................................. 33

*Munaf v. Green*,
 553 U.S. 674, 690 (2008)......................................................................................... 27

*Parker v. District of Columbia*,
 No. 14-cv-2127, 2015 WL 7760162 (D.D.C. Dec. 1, 2015) ................................... 27

*Parklane Hosiery Co. v. Shore*,
 439 U.S. 322 (1979)................................................................................. 4, 29, 34, 35

*Peavey v. United States*,
 128 F. Supp. 3d 85 (D.C. Cir. 2015)........................................................................ 28

*Penobscot Indian Nation v. Key Bank of Maine*,
 112 F.3d 538 (1st Cir. 1997).............................................................................. 13, 18

*Porter v. Shah*,
 606 F.3d 809 (D.C. Cir. 2010).................................................................................. 30

*Reed v. Dep't of Navy*,
 899 F. Supp. 2d 25 (D.D.C. 2012)...................................................................... 22, 26

*Reporters Comm. for Freedom of the Press v. FBI*,
 No. 15-cv-1392, 2020 WL 1324397 (D.D.C. Mar. 20, 2020) ................................. 13

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
 558 U.S. 393 (2010)..................................................................................................... 8

*Smith v. Bayer Corp.*,
 564 U.S. 299 (2011)............................................................................................. 23, 24

*Stevens v. Stover*,
 702 F. Supp. 302 (D.D.C. 1988)............................................................................... 15

*Stocks v. Cordish Cos.*,
 118 F. Supp. 3d 81 (D.D.C. 2015)............................................................................ 12

*Tinsley v. Equifax Credit Info. Servs., Inc.*,
 No. 99-7031, 1999 WL 506720 (D.C. Cir. June 2, 1999) ....................................... 15

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
 190 F.3d 963, 970-73 (9th Cir. 1999) ...................................................................... 28

*United States v. All Assets Held at Bank Julius*,
 251 F. Supp. 3d 82 (D.D.C. 2017) ...................................................................... 12, 18

*Univ. of Texas v. Camenisch,*
    451 U.S. 390 (1981) ......................................................................................... 27

*Whelan v. Abell,*
    953 F.2d 663 (D.C. Cir. 1992) ......................................................................... 31

*Wilson v. Hart,*
    829 A.2d 511 (D.C. 2003) ............................................................................... 28

*Youngin's Auto Body v. District of Columbia,*
    775 F. Supp. 2d 1 (D.D.C. 2011) .................................................................... 30

**Statutes**

Cal. Code Civ. Proc. § 425.16 ................................................................................ 28

D.C. Code § 16-5502 ....................................................................... 4, 5, 6, 24, 26

**Rules**

Fed. R. Civ. P. 8 ........................................................................................ 1, 14, 15

Fed. R. Civ. P. 12 ...................................................................... 4, 8, 15, 24, 28

Fed. R. Civ. P. 41 ................................................................................................ 28

Fed. R. Civ. P. 56 ................................................................... 8, 12, 21, 24, 31

**Other Authorities**

18 Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* § 4417 (2d ed.) .................................... 3, 23, 24

18 Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* § 4422 (3d ed.) ...................................... 32, 35

Restatement (Second) of Judgments § 28 ............................................................. 31

Restatement (Second) of Judgments § 29 ......................................................... 33, 34

## <u>INTRODUCTION</u>

In their latest gambit to obstruct discovery and deprive Plaintiffs of their day in court, Defendants prematurely move for partial summary judgment before the close of discovery, arguing that a 2018 ***"prima facie"*** ruling from the D.C. Superior Court—issued under D.C. Anti-SLAPP Act procedures disallowed in federal court and under a defendant-friendly legal standard that conflicts with the Federal Rules of Civil Procedure and cannot apply in federal court—precludes Plaintiffs from contesting whether they ***actually are*** private or limited-purpose public figures. Specifically, Defendants contend—just as they unsuccessfully argued at the motion-to-dismiss stage—that the D.C. Superior Court's holding in a separate case that separate defendants "made a ***prima facie case*** that ... Plaintiffs are limited-purpose public figures," precludes Plaintiffs from litigating in this case the "case-specific" question whether they ***actually are*** limited-purpose public figures or private figures.[1]  This Court correctly rejected Defendants' exact same argument when they made it in support of their motion to dismiss, and as explained below, the Court must reject it now for multiple reasons.

***First***, Defendants' Motion fails at the outset for the simple reason that it is based entirely on the assertion of an issue preclusion defense, but Defendants chose not to plead that defense in their Answer as required by Federal Rule of Civil Procedure 8 (c)—and Defendants' strategically-two-years-late motion to belatedly add that defense entirely lacks merit, as explained in Plaintiffs' opposition to that motion (filed contemporaneously herewith).  D.C. Circuit law is clear: Rule 8(c) requires that a party "must affirmatively state any ... affirmative defense," including "estoppel" (*i.e.*, issue preclusion) and "res judicata" in a responsive pleading, Fed. R. Civ. P. 8(c)(1), and "Rule 8(c) means what it says:  a party must first raise its affirmative defenses in a responsive

---

[1] All emphases added unless otherwise noted.

pleading before it can raise them in a dispositive motion." *Harris v. Sec'y of U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 345 (D.C. Cir. 1997).  As explained below, Defendants' failure to plead issue preclusion in their Answer is fatal to their issue-preclusion-based Motion for Partial Summary Judgment.

*Second*, even if Defendants could raise the affirmative defense of issue preclusion on summary judgment without having timely pleaded it in their Answer (they cannot), their Motion is foreclosed by this Court's opinion denying Defendants' Motions to Dismiss.  At the motion-to-dismiss stage, Defendants repeatedly argued that the D.C. Superior Court had "already adjudicated" the question whether Plaintiffs are limited-purpose public figures in a case with "the same plaintiffs and the same facts and the same law" and found "that these plaintiffs are public figures in a public controversy."  (As explained below, Defendants mischaracterized the Superior Court's decision, which held only that, under the D.C. Anti-SLAPP Act's "likely to succeed on the merits" standard, the defendants in that case had "made a *prima facie case* that ... Plaintiffs are limited-purpose public figures.")  In its Order denying Defendants' motions to dismiss, this Court squarely rejected Defendants' preclusion-in-everything-but-name argument.  The Court correctly explained that the fact-specific question whether Plaintiffs are limited-purpose public figures for purposes of Defendants' defamatory claims cannot be resolved on a "limited record" but instead can only be decided after Plaintiffs have a full "chance to develop a record" because Plaintiffs "may be able to produce a factual basis for a finding that [they] should be considered [] private figure[s] with regard to the allegedly defamatory statements."[2]  Defendants' Motion must be rejected as nothing more than an over-two-years-later attempt to make an end-run around the

---

[2] Mem. Op. Denying Defs.' Special Mot. to Dismiss & Mot. to Dismiss at 10-11 & n.1 (Jan 15, 2019) ("MTD Opinion") [Dkt. 48] (quotation marks omitted).

Court's well-reasoned prior opinion and to apply the inapplicable D.C. Anti-SLAPP statute through the back-door.

**Third**, even if Defendants could raise the affirmative defense of issue preclusion on summary judgment without having timely pleaded it in their Answer (they cannot), and even if the Court's motion-to-dismiss opinion did not foreclose Defendants' Motion (it does), Defendants' Motion still must be denied because Defendants fail to prove all of the elements necessary for issue preclusion to apply. The question of Plaintiffs' *actual* public/private-figure status was not "actually litigated" in the D.C. Superior Court case because the Superior Court applied a fundamentally different legal standard (under the D.C. Anti-SLAPP Act) than that which governs in federal court for purposes of summary judgment (Rule 56), and "'[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015) (quoting 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4417 (2d ed.)). In addition, the question whether Plaintiffs are private or public figures was not "determined by a valid, final judgment *on the merits*" in the D.C. Superior Court case because the Superior Court held only that the defendants in that case had "made a **prima facie case** that ... Plaintiffs are limited-purpose public figures," **not** that Plaintiffs **actually were** public figures, and the question before this Court is whether Plaintiffs **actually are** limited-purpose public figures or private figures for purposes of Defendants' defamatory statements in this case. And finally, Plaintiffs were not afforded "a full and fair opportunity to litigate" the public/private-figure question in the D.C. Superior Court case because in the Superior Court case under the D.C. Anti-SLAPP Act Plaintiffs faced a heavier burden, were required to overcome additional procedural roadblocks, and were denied discovery, and the U.S. Supreme Court and this District have held

that "applying issue preclusion" is "unfair to a litigant 'where the second action affords the [the litigant] procedural opportunities unavailable in the first action that could readily cause a different result.'" *Chen v. FBI*, 435 F. Supp. 3d 189, 195 (D.D.C. 2020) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 & n.15 (1979)).

For all these reasons, and as further explained below, the Court must deny Defendants' Motion.

## RELEVANT BACKGROUND

Because a clear understanding of what the D.C. Superior Court held (and the D.C. Court of Appeals affirmed) and did not hold (and thus could not affirm) in the Steele/Orbis case—and this Court's prior consideration of that case—are necessary to appreciate the complete lack of merit in Defendants' Motion for Partial Summary Judgment, Plaintiffs lay out the relevant background in some detail.

### A.     Plaintiffs Bring This Lawsuit and Defendants Move to Dismiss It Under the D.C. Anti-SLAPP Act and Rule 12(b)(6).

On October 3, 2017, Plaintiffs filed this lawsuit against Defendants based on defamatory statements in an "intelligence" memorandum, Company Intelligence Report 2016/112 ("CIR 112"), that Defendants commissioned from Christopher Steele and his firm, Orbis Business Intelligence Ltd. ("Orbis").[3]  On January 29, 2018, after Plaintiffs had amended their complaint,[4] Defendants filed a "Special Motion to Dismiss" Plaintiffs' amended complaint under the D.C. Anti-SLAPP Act, D.C. Code § 16-5502,[5] and additionally moved to dismiss the amended complaint under Rule 12b)(6).[6]

---

[3] *See generally* Compl. (Oct. 3, 2017) [Dkt. 1].
[4] *See generally* Am. Compl. (Dec. 12, 2017) [Dkt. 17].
[5] Defs.' Special Mot. to Dismiss the Am. Compl. Pursuant to the D.C. Anti-SLAPP Act (Jan. 29, 2018) [Dkt. 19].
[6] Defs.' Mot. to Dismiss the Am. Compl. for Failure to State a Claim (Jan. 29, 2018) [Dkt. 20].

**B.      In a Separate Case, the D.C. Superior Court Dismisses Under the D.C. Anti-SLAPP Act Plaintiffs' Separate Claims Against Steele and Orbis.**

On April 16, 2018, as this case moved forward, Plaintiffs filed a separate suit in D.C. Superior Court against Steele and Orbis, the authors of the defamatory statements in CIR 112.[7] Before the start of discovery in that case, Steele and Orbis responded by filing a Special Motion to Dismiss under the D.C. Anti-SLAPP statute, arguing that Plaintiffs' claim was not "***likely*** to succeed on the merits," D.C. Code. § 16-5502(b), and also moving to dismiss for failure to state a claim.[8]  Steele's and Orbis's filing of their anti-SLAPP motion automatically triggered a stay of discovery pending resolution of the motion.  *See* D.C. Code § 16-5502(c).

On August 20, 2018, the D.C. Superior Court granted Steele's and Orbis' Special Motions to Dismiss under D.C.'s Anti-SLAPP Act (and denied their motions to dismiss for failure to state a claim as moot).[9]  In so doing, the Superior Court held only that Defendants "made a ***prima facie case*** that the [Anti-SLAPP] Act applie[d]" to Plaintiffs' claims, and—as critically important for purposes of Defendants' Motion for Partial Summary Judgment here—that "Defendants have made a ***prima facie case*** that ... Plaintiffs are limited-purpose public figures," and, without the benefit of discovery, evidence of actual malice was lacking.[10]  Because, under the D.C. Anti-SLAPP Act, the Superior Court was asked only whether Plaintiffs (without the benefit of discovery) "demonstrate[d] that the[ir] claim [was] ***likely to succeed*** on the merits," D.C. Code

---

[7] *See Khan v. Orbis Bus. Intel. Ltd.*, No. 2018 CA 002667 B (D.C. Super. Ct.).  A separate action against Mr. Steele (a U.K. subject) and Orbis (a U.K. firm) was necessary due to lack of diversity jurisdiction.

[8] *See* Defs.' Special Mot. to Dismiss Under the D.C. Anti-SLAPP Act, *Khan v. Orbis Bus. Intel. Ltd.*, No. 2018 CA 002667 B (D.C. Super. Ct. May 30, 2018); Decl. of Joshua A. Levy in Supp. of Defs.' Mot. for Partial Summ. J. on the Issue of Pls. as [Supposed] Public Figure (Feb. 5, 2021) ("Levy Decl.") Exs. 5, 10 [Dkts. 125-8, 125-13].

[9] *Khan v. Orbis Bus. Intel. Ltd.*, No. 2018 CA 002667 B, 2018 WL 11232420 (D.C. Super. Ct. Aug. 28, 2018); *see also* Levy Decl. Ex. 1 [Dkt. 125-4].

[10] *Khan*, 2018 WL 11232420, at *1, *9; *see also* Ex. 1 to Levy Decl. at 1, 18 [Dkt. 125-4].

§ 16-5502(b), *the Superior Court did not have occasion to decide—and did not decide—the ultimate merits of Plaintiffs' claims.*

On June 18, 2020, the D.C. Court of Appeals affirmed the Superior Court's decision in the Steele/Orbis case, affirming its ruling that Defendants made a *prima facie case* that Plaintiffs are limited-purpose public figures and its denial of even targeted discovery.[11]  On January 11, 2021, the U.S. Supreme Court denied Plaintiffs' petition for a writ of certiorari in that case.[12]

### C.   This Court, After Fully Considering the D.C. Superior Court's Decision, Denies Defendants' Motions to Dismiss and Holds That Whether Plaintiffs Are Private or Public Figures "Cannot [Be] Resolve[d]" on a "Limited Record."

Because the D.C. Superior Court issued its decision before oral argument on Defendants' Motions to Dismiss in this case, Defendants took every opportunity to trumpet that decision in supplemental filings and at oral argument.

To begin, before the Superior Court even issued its decision, Defendants filed a "Notice of Relevant Pleadings" that attached copies of the completed briefing to the Superior Court.[13]  Then, the day after the Superior Court issued its decision, Defendants filed a Notice of Supplemental Authority that attached the Superior Court's decision and asserted that Superior Court had "concluded" that "Plaintiffs ... 'are limited purpose public figures for the broad controversy related to Russian oligarchs' involvement with the Russian government and its activities and relations around the world, including the United States.'"[14]  (Defendants' assertion was incorrect; in truth, the Superior Court held only that "Defendants have made a *prima facie case* that ... Plaintiffs are limited-purpose public figures."[15])

---

[11] *See Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 513 (D.C. 2020); *see also* Levy Decl. Ex. 2 at 11-13 [Dkt. 125-5].

[12] *See Fridman v. Orbis Bus.*, No. 20-693, 2021 WL 78212 (U.S. Jan. 11, 2021).

[13] Defs.' Notice of Relevant Pleadings (July 30, 2018) [Dkt. 33].

[14] Defs.' Notice of Suppl. Auth. at 2 (Aug. 21, 2018) [Dkt. 34].

[15] *Khan*, 2018 WL 11232420, at *9; *see also* Levy Decl. Ex. 1 at 18 [Dkt. 125-4].

Next, during oral argument on their motions to dismiss, Defendants' counsel claimed to the Court that that the Superior Court had "already adjudicated" the question whether Plaintiffs are limited-purpose public figures.[16]  Defendants' counsel further claimed that the Superior Court "faced the same plaintiffs and the same facts and the same law" and found "that these plaintiffs are public figures in a public controversy."[17]  (Again, the Superior Court made no such finding, just that Defendants had made a ***prima facie*** showing.)  Defendants' counsel then urged the Court to review the "opinion in the Superior Court, which is based on the exact same facts and circumstances in this case," and to "study [it] carefully."[18]  The Court dutifully responded that it would "take a close look at [the Superior Court's opinion]."[19]  Further highlighting the centrality of the Superior Court's decision to their dismissal argument, Defendants, following oral argument, filed a Supplemental Brief arguing that the Superior Court's ruling should control this case.[20]

On January 15, 2019, the Court rejected Defendants' invitation to apply the Superior Court's decision to this case and denied Defendants' motions to dismiss.[21]  The Court first denied Defendants' Special Motion to Dismiss under the D.C. Anti-SLAPP Act because, as the D.C. Circuit and numerous cases in this District have held, the D.C. Anti-SLAPP Act conflicts with the Federal Rules of Civil Procedure and cannot apply in federal court.[22]  As the Court recognized, the D.C. Anti-SLAPP Act "imposes a heightened pleading standard" under which a defamation-

---

[16] Tr. of Hr'g on Defs.' Mot. to Dismiss & Special Mot. to Dismiss at 6:1-7 (Sept. 28, 2018) ("MTD Hr'g Tr.") [Dkt. 41].

[17] *Id.* at 7:12-16; *see also id.* at 20:13-19.

[18] *Id.* at 20:12-19.

[19] *Id.* at 20:18-21.

[20] Defs.' Supp. Br. Following Oral Argument (Nov 7, 2018) [Dkt. 44].

[21] Mem. Op. Denying Defs.' Special Mot. to Dismiss & Mot. to Dismiss (Jan 15, 2019) ("MTD Opinion") [Dkt. 48].

[22] *Id.* at 4-5 (citing *Abbas v. Foreign Pol. Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) (Kavanaugh, J.), and collecting cases).

plaintiff "can survive dismissal only by 'demonstrat[ing] that the claim is likely to succeed on the merits.'"[23]  By contrast, "a federal court sitting in diversity must apply Federal Rules of Civil Procedure 12 and 56 rather than D.C.'s Anti-SLAPP law, as the former are valid and 'answer the same question' differently than the latter."[24]

The Court then denied Defendants' motion to dismiss for failure to state a claim.[25]  As relevant here, the Court specifically rejected Defendants' argument that the Superior Court's decision compelled a holding that Plaintiffs are public figures and refused to hold that Plaintiffs are public figures who must prove actual malice to prevail.[26]  The Court began by noting that determining whether a defamation-plaintiff is a limited-purpose public figure "is a case-specific inquiry" and that it "'must exercise care' in determining whether each of the [relevant] factors is met on these facts."[27]  The Court then held that, contrary to Defendants' insistence, it could not "resolve the public figure issue at this stage on the limited record before [it]."[28]  The Court explained that the parties must "have ... a chance to develop a record," because Plaintiffs "may be able to produce a factual basis for a finding that [they] should be considered [] private figure[s] with regard to the allegedly defamatory statements."[29]  The Court then ultimately concluded that the public-figure issue is only "properly addressed at summary judgment or trial"—on a full, completely developed factual record.[30]

---

[23] *Id.* at 4.
[24] *Id.* (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 558 U.S. 393, 398-99 (2010)).
[25] *Id.* at 12.
[26] *Id.* at 10-11 & n.1.
[27] *Id.* at 10.
[28] *Id.*
[29] *Id.* at 11 (quotation marks omitted).
[30] *Id.*

**D.      Consistent with the Court's Explanation That the Public Figure Issue Can Only Be Addressed on a Full Factual Record, Defendants Conduct and Obtain Extensive Discovery Related to the Public Figure Issue.**

Following the Court's denial of their Motions to Dismiss, Defendants filed their Answer[31] and launched an aggressive discovery campaign looking for evidence to support their public figure argument.

To that end, Defendants served numerous broad, intrusive, and onerous **Requests for Production** on Plaintiffs targeting the public figure issue.  For example, Defendants demanded that Plaintiffs produce, among other things:

- "[A]ll documents relating to any occasion on which you have been mentioned, quoted or otherwise appeared in a newspaper, magazine, book, website, or other print or electronic production";[32]
- "[A]ll documents relating to communications between you and any reporter, journalist, news organization, television or radio broadcaster or producer, or podcast host or producer;"[33] and
- "[A]ll documents and things relating to any speeches, public statements, interview or other public appearance you have made, including but not limited to copies of your speeches or notes, programs or agenda, articles from newspapers or other media reporting on the event, and photographs of the event."[34]

Defendants likewise served broad, intrusive, and onerous **Interrogatories** on Plaintiffs targeting the public figure issue.  For example, Defendants demanded that Plaintiffs, among other things:

- Identify "each and every instance in which you have been mentioned, identified, interviewed, referred to, or quoted in, or credited as an author of, any book, magazine, newspaper, press conference, speech, public statement, podcast, blog, television or radio program, or on the Internet";[35]

---

[31] Answer of Defs. Bean LLC & Glenn Simpson to Am. Compl. (Jan. 29, 2019) [Dkt. 50].

[32] Decl. of Thomas A. Clare, P.C. in Supp. of Pls.' Mem. in Opp'n to Defs.' Mot. for Partial Summ. J. on the Issue of Pls. as Public Figures (Mar. 5, 2021) ("Clare Decl.") Ex. 1 at Request No. 46.

[33] *Id.* at Request No. 48.

[34] *Id.* at Request No. 52.

[35] Clare Decl. Ex. 2 at Interrogatory No. 14.

- Identify "all awards, accolades, or other recognitions you have received from any civic, political, charitable, religious, business, cultural, military, police, social, educational, governmental, non-profit, or professional organization";[36]

- Identify "all individuals and/or entities whom you, Alfa or the Other Entities have contracted or otherwise tasked to conduct government or public relations in any country and/or to respond on your behalf to press inquiries, public appearance requests, requests for your attendance at meetings, or other public relations matters, and state whether it was you, Alfa or one of the Other Entities that tasked or contracted the identified individual or entity";[37] and

- Identify "all public controversies for which you have engaged Kroll Associates or any other investigations firm, including but not limited to the Vimpelcom bribery investigations, the IPOC case, the Telenor disputes, and the dispute with Vladimir Yakunin."[38]

In a similar vein, Defendants abusively served *hundreds* of **Requests for Admission** on Plaintiffs, many of which specifically target the public figure issue.  For example, Defendants demanded that Plaintiffs admit (or deny), among other things, that:

- "[Y]ou are one of the most influential businessmen in Russia";[39]

- "[Y]ou have access to the media";[40]

- "[Y]ou have been the subject of widespread news coverage";[41]

- "[Y]ou have the ability to issue press releases to defend yourself";[42] and

- "[Y]our charitable contributions have invited attention and comment.[43]

Defendants' counsel likewise insisted on taking **Plaintiffs' depositions** early in discovery—before they would allow Plaintiffs to depose Defendants (which Defendants' counsel have still blocked Plaintiffs from doing)—and focused a substantial portion of their depositions on asking questions that could only possibly be relevant to the issue of whether Plaintiffs are public or private figures.  For example, Defendants questioned Plaintiffs about whether:

---

[36] *Id.* at Interrogatory No. 17.
[37] *Id.* at Interrogatory No. 19.
[38] *Id.* at Interrogatory No. 23.
[39] Clare Decl. Exs. 3-5 at Request No. 11.
[40] *Id.* at Request No. 13.
[41] *Id.* at Request No. 15.
[42] *Id.* at Request No. 18.
[43] *Id.* at Request No. 23.

- Aven and Fridman had means to tell the public that CIR 112 was false;[44]

- Aven, Fridman, Alfa, or LetterOne has public relations vendors, including those which help with the Western media's perception of the Plaintiffs;[45]

- The Western press portrays Aven as a billionaire and whether he has "allowed" the press to write stories about his wealth, art collections, and mansions;[46]

- Fridman talks to the media from time to time;[47] and

- Aven has one of the largest private art collections in the world.[48]

And, by Defendants' own admission, "Defendants have **subpoenaed** numerous third parties for testimony and documents to support Defendants' arguments that Plaintiffs are public figures."[49]

Notably, at the same time Defendants served and received this voluminous discovery related to the public-figure issue, Defendants steadfastly thwarted Plaintiffs' efforts to obtain similar discovery.  As just one example, Defendants have blocked discovery of relevant documents through frivolous privilege assertions that are the subject of a pending motion to compel.[50]  And as another example, Defendants have refused to provide dates for their rescheduled depositions and have asserted that other third parties they represent cannot be deposed prior to Defendants' depositions.[51]

---

[44] Clare Decl. Ex. 6 at 26:2-3 (Aven); Clare Decl. Ex. 7 at 56:13-14 (Fridman).

[45] Clare Decl. Ex. 6 at 26:17-18 (Aven). Clare Decl. Ex. 7 at 57:19-20 (Fridman).

[46] Clare Decl. Ex. 6 at 65:6-13 (Aven)

[47] Clare Decl. Ex. 7 at 58:7-9 (Fridman).

[48] Clare Decl. Ex. 6 at 65:21-22 (Aven).

[49] Defs.' Opp'n to Pl.'s Mot. to Modify the Scheduling Order & Cross-Mot. to Stay All Discovery at 12 (Mar. 1, 2021) [Dkt. 130] (setting forth a list of subpoena recipients "including, but not limited to" nine persons and entities).

[50] *See, e.g.*, Mot. to Compel Prod. of Docs. Withheld as Privileged (Aug. 14, 2020) [Dkt. 95].

[51] Clare Decl. Ex. 8 (Feb. 19, 2021 email from J. Levy to A. Lewis).

**E.   After Having Served and Received Substantial Discovery from Plaintiffs (and Blocked Plaintiffs from Obtaining Discovery), Defendants Now Move for Summary Judgment on the Public Figure Issue Based on Issue Preclusion—in an Effort to Short-Circuit Proper Consideration of the Issue.**

Now, having obtained their discovery from Plaintiffs on the public-figure issue and, through improper and dilatory tactics blocked Plaintiffs' ability to obtain such discovery from Defendants and others, Defendants move for summary judgment that Plaintiffs are limited-purpose public figures.   Defendants base their Motion entirely on the ground of issue preclusion, raising the exact arguments that this Court previously rejected: that the D.C. Superior Court "already adjudicated" the question and supposedly found "that these plaintiffs are public figures in a public controversy."[52]   (The Superior Court did no such thing.)

As explained below, the Court properly rejected Defendants' argument the first time they made it,[53] and the Court should reject it again now and deny Defendants' Motion for Partial Summary Judgment.

## DEFENDANTS OMIT KEY PORTIONS OF THE APPLICABLE LEGAL STANDARDS

*First*, although Defendants correctly recognize that summary judgment can only be appropriate here if Defendants "show[] that there is no genuine dispute as to any material fact and [they] are entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c), Defendants fail to acknowledge that "summary judgment is premature unless all the parties have 'had a full opportunity to conduct discovery.'" *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012); *United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 87 (D.D.C. 2017) (same); *accord Stocks v. Cordish Cos.*, 118 F. Supp. 3d 81, 86 (D.D.C. 2015) ("[S]ummary judgment is ordinarily inappropriate before discovery is complete."); *McWay v. LaHood*, 269

---

[52] *Compare* MTD Hr'g Tr. 6:1-7 [Dkt. 41], *with* Defs.' Mot. for Partial Summ. J. [Dkt. 125].
[53] *See* MTD Opinion at 10-11 & n.1 [Dkt. 48].

F.R.D. 35, 36 (D.D.C. 2010) (same); *see also*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

(1986) (explaining that summary judgment is warranted only "after adequate time for discovery").

    ***Second***, contrary to Defendants' portrayal of the private/public figure question as a simple,

pure question of law, Defendants fail to acknowledge that although that question is "ostensibly a

question of law," the question is "inescapably fact-specific" and "necessitates" a "particularized"

and "detailed fact-sensitive determination." *Mandel v. Bos. Phoenix, Inc.*, 456 F.3d 198, 204 (1st

Cir. 2006); *Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 561 (1st Cir. 1997).

    ***Third***, although Defendants properly recite the elements of issue preclusion, Defendants

fail to acknowledge that they, as "[t]he party invoking issue preclusion[,] bear[] the burden of

establishing that the conditions for its application have been satisfied." *Reporters Comm. for

Freedom of the Press v. FBI*, No. 15-cv-1392, 2020 WL 1324397, at *5 (D.D.C. Mar. 20, 2020)

(Leon, J.) (quotation marks omitted).

## ARGUMENT

    As explained below, Defendants' Motion for Partial Summary Judgment must be denied

for three separate and independent reasons. ***First***, Defendants' Motion fails because it is based

entirely on the assertion of an issue preclusion defense, but Defendants chose not to plead that

defense in their Answer as required by Federal Rule Civil Procedure 8(c) and their two-and-a-half-

years-late motion to add that defense entirely lacks merit, as explained in Plaintiffs' opposition to

that motion (filed contemporaneously herewith). ***Second***, Defendants' Motion fails because this

Court has already recognized that the fact-specific question whether Plaintiffs are limited-purpose

public figures for purposes of Defendants' defamatory claims cannot be resolved on a "limited

record" but instead can only be decided after Plaintiffs have a full "chance to develop a record"

because Plaintiffs "may be able to produce a factual basis for a finding that [they] should be

considered [] private figure[s] with regard to the allegedly defamatory statements."[54]  Defendants'

Motion is nothing more than a two-and-a-half-year late meritless attempt to make an end-run

around the Court's reasoned ruling.  ***Third***, Defendants' Motion fails because Defendants utterly

fail to prove that all conditions necessary for the application of their requested issue preclusion

defense apply: the public figure issue that Defendants seek to preclude Plaintiffs from litigating

was not actually litigated in the D.C. Superior Court "*prima facie*" decision to which Defendants

ask this Court to give preclusive effect, that decision was not a final decision *on the merits*, and

Plaintiffs did not have a full and fair opportunity to litigate the public figure question in that case.

**I.   Defendants' Motion Must Be Denied at the Outset Because Defendants Chose Not to Plead Issue Preclusion as an Affirmative Defense in Their Answer as Required by Federal Rule of Civil Procedure 8(c).**

Defendants' Motion for Partial Summary Judgment—which is based on a purported

defense of issue preclusion—must be denied at the outset for the simple reason that Defendant'

chose not to plead issue preclusion as an affirmative defense in their Answer as required by Federal

Rule of Civil Procedure 8(c).  Rule 8(c) requires that a party "must affirmatively state any ...

affirmative defense," including "estoppel" (*i.e.*, issue preclusion) and "res judicata" in a responsive

pleading.  Fed. R. Civ. P. 8(c)(1); *accord*, *e.g.*, *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,

402 U.S. 313, 350 (1971) ("Res judicata and collateral estoppel [*i.e.*, issue preclusion] are

affirmative defenses that must be pleaded.").  And the D.C. Circuit has admonished that "Rule 8(c)

means what it says:  a party must first raise its affirmative defenses in a responsive pleading before

it can raise them in a dispositive motion."  *Harris v. Sec'y of U.S. Dep't of Veterans Affairs*, 126

F.3d 339, 345 (D.C. Cir. 1997) . "[C]ourts are generally precluded from considering affirmative

defenses that are not identified in a responsive pleading."  *Herbert v. Architect of Capitol*, 839 F.

---

[54] MTD Opinion at 11 [Dkt. 48] (quotation marks omitted).

Supp. 2d 284, 299 n.9 (D.D.C. 2012); *Harris*, 126 F.3d at 343 ("[I]t is well-settled that '[a] party's failure to plead an affirmative defense ... generally results in the waiver of that defense and its *exclusion from the case*.'" (emphasis in original)).

Notably, Defendants entirely fail to acknowledge **Rule 8(c)** and its requirements, and instead, in a footnote, assert that they have not waived their issue preclusion affirmative defense under **Rule 12(h)**. (Mot. at 2 n.1.) In so doing, Defendants misstate the relevant issue. Rule 12(h) speaks only to the defenses enumerated in Rule 12(b) and the circumstances under which they are waived; it does not speak to the requirements of Rule 8.

Indeed, the very caselaw on which Defendants rely not only does nothing to overcome Defendants' failure to plead issue preclusion in their Answer, but it in fact confirms that that failure prevents Defendants from raising issue preclusion now in their Motion for Partial Summary Judgment. For example, Defendants cite a line from *Stevens v. Stover*, 702 F. Supp. 302 (D.D.C. 1988), regarding Rule 12(h)—which is not at issue here—while ignoring the pertinent portion of that decision that emphasized that Rule 8(c) "states that a party 'shall set forth' affirmative defenses, including estoppel and *res judicata*, in its answer," *id.* at 305. Similarly, although Defendants rely on an unpublished per curiam opinion in *Tinsley v. Equifax Credit Information Services, Inc.*, No. 99-7031, 1999 WL 506720 (D.C. Cir. June 2, 1999), that decision addressed only a "pre-answer dispositive motion" (where, of course, preclusion could not yet have been raised in a responsive pleading) or situation in which a court "raise[s] [the] defense of res judicata sua sponte when it has all relevant data and legal records and demand of comity, continuity in law, and essential justice demand it," *id.* at *1. Neither situation applies here.

Finally, in a clear indication that Defendants have recognized their Rule 8(c) problem, Defendants have, in last-gasp effort to invoke issue preclusion, filed a separate motion seeking

leave to amend their Answer to add that affirmative defense[55]—two-and-a-half years after the Superior Court issued the ruling that Defendants' claim has preclusive effect, and despite arguing that that decision controlled the issues before the Court in a Notice of Supplemental Authority for their Motion to Dismiss filed the day after the decision was issued, during oral argument on their Motion to Dismiss, and in a Supplemental Brief in support of their Motion to Dismiss.[56]  But as explained in Plaintiffs' contemporaneously-filed Opposition to Defendants' Motion for Leave to Amend Their Answer to Add Affirmative Defense, Defendants' Motion lacks merit for multiple reasons and the Court should deny it.

In sum, because Defendants chose not to include issue preclusion as an affirmative defense in their Answer, they may not raise that defense in their Motion for Partial Summary Judgment, and that Motion must therefore be denied at the outset.

## II. Defendants' Motion—Which Seeks Summary Judgment on an Incomplete Factual Record—Conflicts with and Is Foreclosed by the Court's Opinion Denying Defendants' Motion to Dismiss.

Even if Defendants could raise the affirmative defense of issue preclusion on summary judgment without having timely pleaded it in their Answer (they cannot), Defendants' Motion still must be denied because this Court has previously held—in an opinion of which Defendants did not seek reconsideration—that the fact-specific question whether Plaintiffs are limited-purpose public figures for purposes of Defendants' defamatory claims cannot be resolved on a "limited record" but instead can only be decided after Plaintiffs have a full "chance to develop a record" because Plaintiffs "may be able to produce a factual basis for a finding that [they] should be considered [] private figure[s] with regard to the allegedly defamatory statements."[57]  The Court

---

[55] Defs.' Mot. for Leave to Am. Their Answer to Add Aff. Def. (Feb. 5, 2021) [Dkt. 126].

[56] Defs.' Notice of Supp. Auth. (Aug. 21, 2018) [Dkt. 34]; MTD Hr'g Tr. at 20:12-19 [Dkt. 41]; Defs.' Supp. Br. Following Oral Argument (Nov 7, 2018) [Dkt. 44].

[57] MTD Opinion at 11 [Dkt. 48] (quotation marks omitted).

should reject Defendants' over-two-years-later attempt to make an end-run around the Court's well-reasoned opinion.

### A. Defendants' Motion Conflicts with the Court's Prior Opinion—and Runs Afoul of Settled D.C. Circuit Law—by Requesting Summary Judgment on an Incomplete Record.

Fatally to Defendants' Motion, the Court, in its opinion denying Defendants' motions to dismiss, set out the procedure that must be followed in deciding whether Plaintiffs are limited-purpose public figures in this case—and Defendants' Motion attempts to short circuit that process.

In previously considering the question whether Plaintiffs are private figures or limited-purpose public figures for purposes of Defendants' defamatory statements in this case—and in refusing to hold Plaintiffs to be public figures despite Defendants' invitations to err by contending that the Superior Court's *prima facie* holding to the contrary controlled the issue—the Court explained how this question must be resolved in this case.  After correctly explaining that the fact-specific public figure question requires "a case-specific inquiry" and that the court "'must exercise care' in determining whether each of the [relevant] factors is met on these facts,"[58] the Court unambiguously held that the question could not be resolved on a "limited record."[59]  Rather, given the fact-specific nature of the inquiry, the Court explained that the parties must "have ... a chance to develop a record," and the Court specifically recognized that, through discovery, Plaintiffs "may be able to produce a factual basis for a finding that [they] should be considered [] private figure[s] with regard to the allegedly defamatory statements."[60]

The Court thus prescribed a multi-step process for addressing the public-figure issue:  the parties would conduct discovery to develop a complete record on the issue, the parties would

---

[58] *Id.* at 10.
[59] *Id.*
[60] *Id.* at 11 (quotation marks omitted).

litigate the issue at summary judgment on a complete, fully-developed factual record (*i.e.*, after the close of discovery), and the Court would then either adjudicate the issue based on that complete factual record or defer resolution until trial, where the complete record could be presented to the jury). And the process prescribed by the Court is necessary to comply with settled law. After all, the D.C. Circuit has expressly held that "summary judgment is premature unless all the parties have 'had a full opportunity to conduct discovery.'" *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012); *United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 87 (D.D.C. 2017) (same). And as courts have recognized, although the question whether a defamation-plaintiff is a public or private figure is "ostensibly a question of law," the question is "inescapably fact-specific" and "heavily dependent on the underlying factual record" such that it "necessitates" a "particularized" and "detailed fact-sensitive determination." *Mandel v. Bos. Phoenix, Inc.*, 456 F.3d 198, 204 (1st Cir. 2006); *Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 561 (1st Cir. 1997). In fact, the inquiry is so fact-specific that there are many cases "in which it may not be possible to resolve the [public figure] issue until trial." *Mandel*, 456 F.3d at 204 (quotation marks omitted).

But Defendants attempt to circumvent the process set forth by the Court and compelled by law by asking the Court to hold that Plaintiffs are public figures as a matter of law on a still-"limited" and incomplete factual record like that which the Court found previously found inadequate.[61] Indeed, Defendants' Motion is all the more misguided because it asks the Court to circumvent proper discovery and summary judgment procedures based solely on a two-and-a-half-year-old D.C. Superior Court *prima facie* decision in another case that this Court previously considered and rejected as controlling. This Court was well aware of the Superior Court's analysis

---

[61] *See* MTD Opinion at 10-11 & n.1 [Dkt. 48].

and Defendants' arguments that it compelled the conclusion in this case that Plaintiffs are public figures. And the Court properly rejected those arguments. Defendants' attempt to circumvent that ruling now, two years later, invites error.

**B.      Defendants Impermissibly Seek to Preclude Plaintiffs from Obtaining Evidence Related to the Public Figure Issue.**

Notably, and reflecting the bad faith in which Defendants' bring their Motion for Partial Summary Judgment (and contemporaneously-filed Motion to Amend Their Answer), Defendants bring their Motions only after they have taken substantial public-figure discovery but at the same time have succeeded in obstructing Plaintiffs' ability to take similar discovery. Defendants do not think the same discovery rules should apply to Plaintiffs that apply to Defendants. But Defendants are wrong.

As explained above, the Court has recognized that Plaintiffs must have a full and fair opportunity for discovery before the public figure issue can be decided because Plaintiffs "may be able to produce a factual basis for a finding that [they] should be considered [] private figure[s] with regard to the allegedly defamatory statements."[62]  Indeed, the need for discovery is particularly acute in this case because the parties sharply dispute the scope of the public controversy that will dictate the public-figure analysis and the first prong of the public-figure determination requires the Court to "isolate the alleged public controversy, determine whether it genuinely exists, and define its contours."[63]  As such, the precise public controversy at issue cannot be defined—and any role that Plaintiffs played in that controversy cannot be determined—until Plaintiffs obtain responsive documents through discovery and depose Defendants. Moreover, Plaintiffs need—and are entitled to—discovery to determine to what extent Defendants may have

---

[62] MTD Opinion at 11 [Dkt. 48] (quotation marks omitted).
[63] *Id.* at 10 (quotation marks omitted).

been involved in manufacturing or perpetuating the public controversy in which they claim Plaintiffs played a role, because it is axiomatic that "those charged with defamation cannot, by their own conduct" gin up a controversy and thereby "create their own defense by making the claimant a public figure." *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979).

Evidence obtained in discovery will inform all of these issues, but Defendants' continual obstruction throughout the discovery process has so far prevented Plaintiffs from obtaining the discovery to which they are entitled that would enable them to obtain that critically important evidence. As just one example, Defendants have blocked discovery of relevant documents through frivolous privilege assertions that are the subject of a pending motion to compel.[64] As another example, Defendants' counsel has refused to schedule Defendants' depositions, insisting that those depositions can take place only after Plaintiffs have been deposed.[65] Indeed, it is now painfully clear that Defendants have taken those ridiculous positions so they could try to shield themselves from discovery and depositions by prematurely filing a motion for partial summary judgment—despite the Court's prior instruction that the public figure issue cannot be addressed until all discovery has been completed. Defendants' allusions to "streamlining" and "efficiency" ring hollow in light of the inconvenient-for-them truth that Defendants are the ones responsible for bogging down the discovery process.

More than that, Defendants' insistence that a factual record on the public figure issue need not be developed because of the Superior Court's 2018 *prima facie* ruling controls the ultimate merits of the public figure question here runs counter to Defendants' own actions in this case. As explained above, Defendants have taken advantage of the Court's deferral of the public-figure

---

[64] *See, e.g.*, Mot. to Compel Prod. of Docs. Withheld as Privileged (Aug. 14, 2020) [Dkt. 95].
[65] *See* Clare Decl. Ex. 8 (Feb. 19, 2021 email from J. Levy to A. Lewis).

question by barreling forward with aggressive discovery requests and deposition questions to Plaintiffs that implicate the public figure issue and nothing else.[66]   Likewise, Defendants acknowledge that they have "subpoenaed numerous third parties for testimony and documents to support Defendants' arguments that Plaintiffs are public figures."[67]   In Defendants' eyes, what's good for the goose is *not* good for the gander:  Defendants claim the right to conduct exhaustive discovery into the public figure issue while depriving Plaintiffs of the same opportunity.  The Court should reject Defendants' blatant gamesmanship.[68]

### C.   Defendants Attempt to Circumvent the Court's Prior Ruling that the D.C. Anti-SLAPP Act Does Not Apply.

Ultimately, what Defendants are really seeking through their Motion for Partial Summary Judgment is a backdoor way to apply the D.C. Anti-SLAPP Act in this federal action, despite the Court's clear holding that, consistent with D.C. Circuit precedent, the Anti-SLAPP Act—with its "heightened pleading standard" requiring a defamation plaintiff to "demonstrat[e] that the claim is likely to succeed on the merits" (without discovery) to survive early dismissal—cannot apply in federal court.[69]   Undeterred, Defendants endeavor to smuggle the substance of the Anti-SLAPP Act into this case under the guise of "issue preclusion."

But this Court cannot allow through the back-door what it did not—and cannot—allow through the front-door.  Defendants cannot deprive Plaintiffs of the federal procedural rights to

---

[66] *See supra* Relevant Background § D.

[67] Defs.' Opp'n to Pls.' Mot. to Modify the Scheduling Order & Cross-Mot. to Stay All Discovery at 12 (Mar. 1, 2021) [Dkt. 130] (setting forth a list of subpoena recipients "including, but not limited to" nine persons and entities).

[68] Although Plaintiffs do not think it necessary given that (and in reliance on the fact that) Defendants' Motion disclaims the need to consider any evidence related to the public figure determination, Plaintiffs respectfully request the opportunity to file an affidavit under Federal Rule of Civil Procedure 56(d) if the Court is inclined to consider facts and evidence bearing on the public figure question.

[69] MTD Opinion at 4-5 [Dkt. 48] (citing *Abbas v. Foreign Pol. Grp., LLC*, 783 F.3d 1328, 1334-37 (D.C. Cir. 2015) (Kavanaugh, J.), and collecting cases).

which the Court correctly recognized they are entitled.  As explained more fully below, Plaintiffs

cannot be held to be limited-purpose public figures through the blind application of an threshold

anti-SLAPP motion ruling (that Defendants made a *prima facie* showing) predicated on a more

demanding legal standard (requiring them to show that they are "likely to succeed on the merits"

of their claim, rather than simply identifying a genuine issue of material fact), a shifted burden of

proof (placed on the non-moving party instead of the moving party), and a woefully incomplete

factual record undeveloped by discovery.

Defendants, in short, cannot obtain the benefits of an Anti-SLAPP Act that cannot apply

in this case.[70]  The Court should reject Defendants' brazen attempt to circumvent this Court's prior

ruling and secure a ruling under the D.C. Anti-SLAPP Act in all but name.

## III.   Defendants' Motion Must Be Denied Because Defendants Fail to Establish That All of the Conditions Required for Its Application Have Been Satisfied.

Even if Defendants could raise the affirmative defense of issue preclusion on summary

judgment without having timely pleaded it in their Answer (they cannot), and even if the Court's

motion-to-dismiss opinion did not foreclose Defendants' Motion (it does), Defendants' Motion

still must be denied because Defendants fail to prove all of the elements necessary for issue

preclusion to apply.

In the D.C. Circuit and under D.C. law, a party invoking issue preclusion must establish

that "(1) the issue [was] actually litigated and (2) determined by a valid, final judgment on the

merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under

circumstances where the determination was essential to the judgment, and not merely dictum."

*Reed v. Dep't of Navy*, 899 F. Supp. 2d 25, 36 (D.D.C. 2012).  Here, Defendants fail to demonstrate

---

[70] *Id.* (citing *Abbas*, 783 F.3d at 1334-37, and collecting cases).

that the first, second, and third elements are met and, as such, their Motion must be denied for those separate and independent reasons.

### A.      The Public-Figure Issue Was Not Actually Litigated in the Superior Court.

As an initial matter, Defendants cannot demonstrate that the D.C. Superior Court's ruling that "Defendants have made a ***prima facie*** case that ... Plaintiffs are limited-purpose public figures"[71] precludes Plaintiffs from litigating whether they ***actually are*** limited-purpose public figures for purposes of Defendants' defamatory statements in this case because the issue of whether Plaintiffs ***actually are*** such limited-purpose public figures was not actually litigated in the D.C. Superior Court case.  Notably, Defendants assertion that the issues are identical simply because they both involve an interpretation of the same legal term of art ignores the settled law that "preclusion is 'inappropriate' when 'different legal standards ... masquerad[e] behind similar legal labels.'"  *Smith v. Bayer Corp.*, 564 U.S. 299, 310 (2011) (quoting 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4417 (2d ed.)  (hereinafter "Wright & Miller (2d ed.)").  This is exactly the case here.

The issue whether Plaintiffs ***actually are*** limited-purpose public figures for purposes of Defendants' defamatory statements in this case was not actually litigated in the D.C. Superior Court action the because Superior Court applied a fundamentally different legal standard than that which governs in federal court and for purposes of federal summary judgment.  *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015) ("'[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same.'" (quoting 18 Wright & Miller § 4417 (2d ed.))).  Notably, finding differences in legal standards is "apt to be particularly easy when different legal systems are

---

[71] *Khan*, 2018 WL 11232420, at *9; *see also* Levy Decl. Ex. 1 at 18 [Dkt. 125-4].

involved," and federal courts often determine that "questions presented by federal law are different from questions decided under ... state law." 18 Wright & Miller § 4417 (2d ed.). Courts must look behind the terms used to determine whether federal and state courts are interpreting the same text differently. *E.g.*, *Smith*, 564 U.S. at 309-10 ("If a State's procedural provision tracks the language of a Federal Rule, but a state court interprets that provision in a manner federal courts have not, then the state court is using a different standard and thus deciding a different issue.").

As relevant here, the D.C. Anti-SLAPP Act, which formed the basis of the Superior Court's decision, involves a legal standard fundamentally different from that applied at summary judgment (or at the dismissal stage) in federal court: A court applying the D.C. Anti-SLAPP Act "evaluates the likely success of the claim," *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1232 (D.C. 2016); D.C. Code § 16-5502(b), whereas a federal court at summary judgment determines whether "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"—that is, a final definitive judgment on the merits of an issue, Fed. R. Civ. P. 56(a).[72] As the D.C. Circuit and this Court have explained, "Federal Rules of Civil Procedure 12 and 56 'answer the same question' about the circumstances under which a court must dismiss a case before trial" differently from the D.C. Anti-SLAPP Act because "[t]hey do not require a plaintiff to show a likelihood of success on the merits." *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333-34 (D.C. Cir. 2015); *accord* MTD Opinion at 11 [Dkt. 48]; *Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 506 (D.C. 2020); Levy Decl. Ex. 2 at 7 [Dkt. 125-5] (explaining that the "standards for adjudicating a special motion to dismiss and a Rule 12(b)(6) motion are materially distinct").

---

[72] And, of course, a federal court adjudicating a motion to dismiss asks whether the complaint "fail[s] to state a claim upon which relief can be granted" based on the four corners of the complaint. Fed. R. Civ. P. 12(b)(6).

Indeed, the D.C. Anti-SLAPP Act, by design, stacks the deck against defamation-plaintiffs in a manner not permitted in federal courts by, in the words of the D.C. Court of Appeals "provid[ing] substantial advantages to the defendant over and above those usually available in civil litigation," and "impose[ing] procedural and financial burdens on the plaintiff," *Mann*, 150 A.3d at 1238, and by, in the words of the D.C. Circuit "mak[ing] it easier [for Defendants] to dismiss defamation suits at an early stage of the litigation." *Abbas*, 783 F.3d at 1332; *see also 3M Co. v. Boulter*, 842 F. Supp. 2d 85, 102 (D.D.C. 2012) (noting the favorable treatment of defendants under the D.C. Anti-SLAPP Act as compared to the Federal Rules). "Put simply, the D.C. Anti-SLAPP Act's likelihood of success standard is different from and more difficult for plaintiffs to meet than the standards imposed by Federal Rules 12 and 56." *Abbas*, 783 F.3d at 1335. The Act starkly departs from the rule in federal court that "a plaintiff is generally entitled to trial if he or she meets the Rules 12 and 56 standards to overcome a motion to dismiss or for summary judgment," thereby "setting up an additional hurdle a plaintiff must jump over to get to trial." *Id.* at 1334.[73]

Because the D.C. Superior Court and D.C. Court of Appeals applied the "D.C. Anti-SLAPP Act's likelihood of success standard" to the question whether Plaintiffs are public figures—a standard that is "different from and more difficult for plaintiffs to meet than the standards imposed by Federal Rules 12 and 56," *Abbas*, 783 F.3d at 1335—the issue whether Plaintiffs ***actually are*** limited-purpose public figures for purposes of Defendants' defamatory statements in this case

---

[73] Although the D.C. Court of Appeals suggested in *Mann* that the legal standard under the Anti-SLAPP Act is the same as that applied at federal summary judgment, 150 A.3d at 1238 n.32, this Court previously declined to adopt that reasoning and instead adhered to the D.C. Circuit's contrary decision in *Abbas*. (MTD Decision at 5 [Dkt. 48] (collecting cases).)

was **not** actually litigated in the D.C. Superior Court action and Defendants' issue preclusion argument fails.  *See B&B Hardware, Inc.*, 575 U.S. at 154.

## B. The Public-Figure Issue Was Not Determined by a Valid, Final Judgment on the Merits.

Defendants cannot invoke issue preclusion here for the separate and independent reason that the Superior Court's Anti-SLAPP ruling is not a "valid, final judgment on the merits."  *See Reed*, 899 F. Supp. 2d at 36.

*As Defendants acknowledge, the Superior Court did not conclusively determine that Plaintiffs **are** public figures as a matter of law nor was it even asked to*; instead, the Superior Court held (and the D.C. Court of Appeals affirmed) only that Defendants had made a *"prima facie case"* that Plaintiffs were limited-purpose public figures, and then held that Plaintiffs were not "**likely** to succeed on the merits" of proving that they were not public figures.  (*See* Mot. at 17-18; Levy Decl. Ex. 1  at 18 [Dkt. 125-4].)  This is all that the Superior Court was tasked with deciding under D.C. Code § 16-5502(b), which directs that an Anti-SLAPP motion to dismiss must be granted "unless the responding party demonstrates that the claim is likely to succeed on the merits."  D.C. Code § 16-5502(b).[74]  Although Defendants jump to the conclusion that the Superior Court's decision is entitled to preclusive effect, their Motion entirely fails to grapple with the reality that a decision as to whether a party is or is not "likely" to succeed on the merits is **not** the same thing as a decision that a party actually has (or has not) succeeded on the merits.

Notably, the "likelihood of success" standard in the D.C. Anti-SLAPP Act is a familiar one to the federal courts—the same standard is used to adjudicate an application for a preliminary

---

[74] The D.C. Court of Appeals, for its part, simply affirmed the Superior Court's public-figure determination, viewing the question through the same prism of the Anti-SLAPP Act's "likely to succeed on the merits" standard. *Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 499, 502, 504-09 (D.C. 2020); *see also* Levy Decl. Ex. 2 at 1, 3, 6-9 [Dkt. 125-5].

injunction.  *See Munaf v. Green*, 553 U.S. 674, 690 (2008) (noting that "a party seeking a preliminary injunction must demonstrate, among other things, 'a likelihood of success on the merits'").  And in that context, **the Supreme Court and D.C. Circuit have addressed whether a decision as to the likelihood of success on the merits is a binding, final judgment.  And the answer is <u>no</u>.**  *See, e.g.*, *Univ. of Texas v. Camenisch*, 451 U.S. 390, 394-95 (1981) (holding that a preliminary injunction ruling is "not binding at trial on the merits" because that would "improperly equate[] 'likelihood of success' with 'success'"); *Indus. Bank of Wash. v. Tobriner*, 405 F.2d 1321, 1323-24 (D.C. Cir. 1968) (admonishing that a finding concerning the "probability of success on the merits ... cannot be equated with ... a final disposition on the merits.").  Moreover, **the D.C. Circuit has expressly held that a determination as to the likelihood of success on the merits is <u>not</u> a valid and final decision on the merits for purposes of issue preclusion.**  *See, e.g.*, *Cmty. Nutrition Inst. v. Block*, 749 F.2d 50, 56 (D.C. Cir. 1984) (holding that a preliminary injunction decision made under a likelihood-of-success standard is "not a final determination" and "not even the law of the case, much less res judicata in other litigation"); *see also Parker v. District of Columbia*, No. 14-cv-2127, 2015 WL 7760162, at *1 (D.D.C. Dec. 1, 2015) (holding that entry of a temporary restraining order "cannot ... give rise to collateral estoppel, because it constituted only a finding of the likelihood of success on the merits"); *Abbott Labs. v. Andex Pharms., Inc.*, 473 F.3d 1196, 1206 (Fed. Cir. 2007) ("A determination that there is merely a likelihood of [success] is a determination made solely in terms of probabilities, not certainties and is therefore not full litigation and decision on the merits for purposes of issue preclusion." (quotation marks omitted)).

None of the cases cited by Defendants supports a contrary conclusion.  Several stand for the unremarkable proposition that a federal court will give preclusive effect to a prior ruling

granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Peavey v. United States*, 128 F. Supp. 3d 85, 96 (D.C. Cir. 2015); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *Lamont v. Proskauer Rose, LLP*, 881 F. Supp. 2d 105, 114 (D.D.C. 2012).  Another case addressed the inapposite point that dismissal by stipulation under Federal Rule of Civil Procedure 41(a)(1)(ii) constitutes a valid judgment on the merits.  *See Donovan v. U.S. Postal Service*, 530 F. Supp. 894, 898 (D.D.C. 1981).  And a final case involved a prior ruling that an agency lacked jurisdiction.  *See Wilson v. Hart*, 829 A.2d 511, 513 (D.C. 2003).  None of Defendants' cases remotely suggests that a ruling under the D.C. Anti-SLAPP Act—which, by definition, is predictive, preliminary, and only assesses a probability of ultimate success on the merits—qualifies as a valid, final judgment on the merits for purposes of issue preclusion.[75]

### C.   Plaintiffs Were Not Afforded a Full and Fair Opportunity to Litigate the Public Figure Issue in the D.C. Superior Court Case.

Finally, the Superior Court's ruling that "Defendants have made a ***prima facie*** case that ... Plaintiffs are limited-purpose public figures"[76] does not preclude Plaintiffs from litigating whether they ***actually are*** limited-purpose public figures for purposes of Defendants' defamatory statements in this case because Defendants cannot establish that Plaintiffs were given a "full and fair" opportunity to litigate the public figure issue in the D.C. Superior Court case.  *See Bryson v. Gere*, 268 F. Supp. 2d 46, 56-57 (D.D.C. 2003).  That is so because, among other reasons, Plaintiffs

---

[75] Defendants' reliance on *Haynes v. Hanson*, No. 11-cv-50201, 2013 WL 1390397 (N.D. Cal. Apr. 4, 2013), is misplaced for several reasons.  *First*, the *Haynes* court applied *claim* preclusion, not issue preclusion.  *Id.* at *3.  *Second*, the *Haynes* court addressed the California Anti-SLAPP Act, which differs from the D.C. Anti-SLAPP Act in significant ways.  *See* Cal. Code Civ. Proc. § 425.16.  For example, under the California Act (unlike the D.C. Act), a "plaintiff's cause of action needs to have only minimal merit to survive an anti-SLAPP motion."  *Haynes*, 2013 WL 1390397, at *4.  Finally, unlike in this Circuit, federal courts in the Ninth Circuit apply the California Anti-SLAPP Act.  *See, e.g.*, *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 970-73 (9th Cir. 1999).

[76] *Khan*, 2018 WL 11232420, at *9; *see also* Levy Decl. Ex. 1 at 18 [Dkt. 125-4].

faced a heavier burden, were required to overcome additional procedural roadblocks, and were denied discovery in the Superior Court proceeding.

> **1.     Contrary to Defendants' Assertion, Evaluation of the "Full and Fair Opportunity" Standard Is Not Coterminous with a Due Process Analysis.**

As an initial matter, Defendants fundamentally misapprehend this prong of the preclusion standard when they insist that, so long as the prior proceedings comport with due process, a plaintiff must be deemed to have had a full and fair opportunity to litigate the issue. (Mot. at 19-20.)

According to Defendants, as long as the bare minimum requirements of due process are satisfied, the "full and fair opportunity to litigate" standard is satisfied for any adjudicatory proceeding, no matter how cursory and no matter how little opportunity the opposing party may have had to obtain discovery and develop its case.  But that is not the law.  Rather, as this District has recognized, the U.S. Supreme Court has explained that ***"[a]pplying issue preclusion may well be unfair to a litigant 'where the second action affords the [party against whom preclusion is being invoked] procedural opportunities unavailable in the first action that could readily cause a different result.'"*** *Chen v. FBI*, 435 F. Supp. 3d 189, 195 (D.D.C. 2020) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 & n.15 (1979)).  And that is precisely the situation here: in this federal court case, Plaintiffs, having survived Defendants' motion to dismiss, are entitled to full discovery to prove their case, whereas in the D.C. Superior Court case the court held that "Defendants have made a ***prima facie*** case that ... Plaintiffs are limited-purpose public figures"[77] under an expedited procedure while denying Plaintiffs' any discovery on the issue.  That was not a "full and fair opportunity to litigate" and bars issue preclusion here.

---

[77] *Khan*, 2018 WL 11232420, at *9; *see also* Levy Decl. Ex. 1 at 18 [Dkt. 125-4].

Notably, the case on which Defendants principally rely to contend otherwise, *Youngin's Auto Body v. District of Columbia*, 775 F. Supp. 2d 1 (D.D.C. 2011), is inapposite and does not support their contention.  In *Youngin's*, the court considered whether to apply *claim preclusion*, **not** *issue preclusion*.  *See id.* at 5-6.  And the court made clear that analysis of the "full and fair opportunity" prong is different in the context of claim preclusion than issue preclusion:

> The Court acknowledges that the plaintiff's actual argument is that issue preclusion, or collateral estoppel, does not bar its claims because it did not have a 'full and fair opportunity' [to] litigate its preemption claim before the D.C. Court of Appeals. However, because the resolution of this case turns on claim preclusion rather than issue preclusion, the Court must consider the plaintiff's arguments in the claim preclusion context.

*Id.* at 8 n.5.[78]  The other cases on which Defendants rely are inapposite for similar reasons.  *See B&B Hardware*, 575 U.S. at 158-59 (applying issue preclusion where prior agency proceeding incorporated "almost the whole of Federal Rule of Civil Procedure 26," but cautioning that issue preclusion might not apply in another case in which an agency's procedure could "materially prejudice a party's ability to present its case"); *Porter v. Shah*, 606 F.3d 809, 814 (D.C. Cir. 2010) (applying *claim preclusion* and noting, among other things, that the non-moving party failed to appeal the prior court's ruling and so "forwent the opportunity" to raise the argument at issue); *Amore ex rel. Estates of Amore v. Accor, S.A.*, 484 F. Supp. 2d 124, 130 (D.D.C. 2007) (applying issue preclusion where prior proceeding was brought in federal court, subject to the Federal Rules of Civil Procedure, and in the same procedural posture).

---

[78] Defendants' reliance on *Adams v. Trimble*, No. 11-cv-1360, 2012 WL 260160 (E.D. Cal. Jan. 27, 2012), is misplaced for the same reasons.

2.   **Plaintiffs Faced a Heavier Burden Under the D.C. Anti-SLAPP Act in the Superior Court Proceedings Than They Do Under Federal Rule of Civil Procedure 56.**

Plaintiffs also did not have a full and fair opportunity to litigate the public figure issue in the Superior Court case—and issue preclusion thus cannot apply—because Plaintiffs bore a much more substantial burden in that case (demonstrating that they were likely to succeed on their claims) than they do at summary judgment in this case (demonstrating a genuine dispute of material fact). The D.C. Circuit has expressly held that "preclusive effect should not be given to [a] first determination when the party sought to be [precluded] had a heavier burden (or his adversary had a lighter burden) in the first proceeding than in the second." *Whelan v. Abell*, 953 F.2d 663, 668 (D.C. Cir. 1992); *accord* Restatement (Second) of Judgments § 28 (explaining that "relitigation of an issue is not precluded" when "[t]he party against whom preclusion is sought had a significantly heavier burden with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action").

In contrast to federal summary judgment proceedings, the D.C. Anti-SLAPP Act "places the initial burden on the claimant to present legally sufficient evidence substantiating the merits without placing a corresponding evidentiary demand on the defendant who invokes the Act's protection." *Mann*, 150 A.3d at 1237. "This is a reversal of the allocation of burdens ... for summary judgment under [Rule 56], which requires the moving party to wait until discovery has been completed and then shoulder the initial burden of showing that there are no material facts genuinely in dispute and that the movant is entitled to judgment as a matter of law on the undisputed facts." *Id.*; *accord id.* at 1238 n.32 ("[W]e agree with *Abbas* that the special motion to dismiss is different from summary judgment *in that it imposes the burden on plaintiffs* and requires the court to consider the legal sufficiency of the evidence presented before discovery is

completed.); *see also*, *e.g.*, *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 94-95 (D.D.C. 2018) ("But like a mirror, the anti-SLAPP statute reverses the image that it reflects:  *Mann* agrees with *Abbas* that the statute differs from Rule 56 by requiring the plaintiff to show a likelihood of success on the merits instead of placing the burden on the defendant."); *3M Co.*, 842 F. Supp. 2d at 103 (noting that the D.C. Anti-SLAPP Act imposes a "higher procedural burden on plaintiff than is required to survive a motion for summary judgment under Rule 56.").

This burden shifting between proceedings bars giving preclusive effect to the Superior Court's decision that "Defendants have made a ***prima facie*** case that ... Plaintiffs are limited-purpose public figures."[79]  *See, e.g.*, 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4422 (3d ed.) (hereinafter "Wright & Miller (3d ed.)") ("Failure of one party to carry the burden of persuasion on an issue should not establish the issue in favor of an adversary who otherwise would have the burden of persuasion on that issue in later litigation.").  Whereas Plaintiffs bore the burden in the Superior Court proceedings to establish a likelihood that they were *not* public figures, Defendants must prove that Plaintiffs *are* public figures to prevail on this issue at summary judgment.  *See, e.g.*, *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1553 (4th Cir. 1994) (Courts must "proceed[] upon the initial presumption that the defamation plaintiff is a private individual, subject to the defendant's burden of proving that the plaintiff is a public figure."); MTD Opinion at 10 [Dkt. 48] (noting that Plaintiffs' public figure status is "in issue as an affirmative defense" in this case).  Consequently, Plaintiffs did not have a full and fair opportunity to litigate the public figure issue in the Superior Court and issue preclusion cannot apply.

---

[79] *Khan*, 2018 WL 11232420, at *9; *see also* Levy Decl. Ex. 1 at 18 [Dkt. 125-4].

**3.    Plaintiffs Were Required to Overcome Procedural Roadblocks Under the D.C. Anti-SLAPP Act in the Superior Court Proceedings That They Do Not Face Under the Federal Rules of Civil Procedure.**

Plaintiffs were also deprived of a full and fair opportunity to litigate the public figure issue in the D.C. Superior Court for the additional reason that the D.C. Anti-SLAPP Act imposes procedural roadblocks not encountered or permitted in federal court.  A court deciding whether to apply issue preclusion must consider whether "[t]he forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined."  Restatement (Second) of Judgments § 29(2); *see also Montana v. United States*, 440 U.S. 147, 164 n.11 (1979) ("Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.").

As the D.C. Court of Appeals acknowledged in the Superior Court action, there is a "fundamental difference in procedure" between a special motion to dismiss under the D.C. Anti-SLAPP Act and dispositive motions under the Federal Rules: the former, unlike the latter, "accelerates the consideration of available defenses" and requires a plaintiff to prove a likelihood of success on his claims without the benefit of discovery.[80]  By contrast, in this case (as in similar federal court cases) Plaintiffs, having pled in their complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'"[81] are entitled to discovery to develop a full record through discovery to support an argument at summary judgment that there is at least a genuine issue of material fact as to whether they are limited-purpose public figures.  Because this "forum ... affords [Plaintiffs] procedural opportunities in the presentation and determination of that issue that were not available in the first action and could likely result in the issue being

---

[80] *Fridman*, 229 A.3d at 506; Levy Decl. Ex. 2 at 8 [Dkt. 125-5].
[81] MTD Opinion at 6 [Dkt. 48] (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

differently determined," Plaintiffs did not have a full and fair opportunity to litigate the public figure issue in the Superior Court. *See* Restatement (Second) of Judgments § 29(2).[82]

### 4. The D.C. Anti-SLAPP Act Prevented Plaintiffs From Having an Opportunity to Conduct Discovery in the D.C. Superior Court Case.

Finally, Plaintiffs did not have a full and fair opportunity to litigate the public-figure issue in the D.C. Superior Court case for the additional reason that they were deprived of the ability to obtain evidence through discovery in that case. *See Chen*, 435 F. Supp. 3d at 195 (quoting *Parklane Hosiery*, 439 U.S. at 331 & n.15).

Notably, one of the stated goals of the D.C. Anti-SLAPP Act is to "provide[] ... protection from [] expensive and time consuming discovery ... while [a] special motion to dismiss is pending," and to that end courts evaluating special motions to dismiss under that Act determine at a very early stage of the case whether a plaintiff is likely to succeed on the merits of his claim based on the plaintiff's "proffer [of] evidence, but without a full opportunity to engage in discovery." *Mann*, 150 A.3d at 1235. In the D.C. Superior Court case at issue here, Defendants' filing of a special motion to dismiss six weeks after Plaintiffs filed their complaint triggered the Anti-SLAPP Act's automatic stay of discovery,[83] and the Superior Court denied Plaintiffs' request for even narrow, targeted discovery.[84]

The fact that Plaintiffs were prevented and prohibited from conducting discovery in the Superior Court proceedings before that Court issued its *prima facie* ruling on their private/public-figure status bars giving that decision preclusive effect. *See Chen*, 435 F. Supp. 3d at 195 (quoting

---

[82] In addition to the Superior Court's accelerated consideration whether Plaintiffs met heightened burdens, the prior proceedings involved other procedural differences that prohibit applying issue preclusion here—including the shifting of burdens and the blocking of discovery. *See supra* Argument § C.1.

[83] Levy Decl. Exs. 5 & 9 [Dkt. Nos. 125-8, 125-12].

[84] *See* Levy Decl. Ex. 1 at 22-23 [Dkt. 125-4].

*Parklane Hosiery*, 439 U.S. at 331 & n.15); *see also* 18 Wright & Miller § 4422 (3d ed.) ("[I]ssue preclusion also may be defeated by substantial changes in the admissibility of evidence" and that "a finding reached in proceedings constrained by formal rules of evidence may not preclude relitigation in proceedings that follow substantially more permissive rules").  In stark contrast to the Superior Court's truncated procedures and refusal to permit Plaintiffs to conduct any discovery, this Court recognized that it cannot resolve the fact-specific question whether Plaintiffs are limited-purpose public figures for purposes of Defendants' defamatory claims on a "limited record," but instead can only decide that question after Plaintiffs have a full "chance to develop a record" because Plaintiffs "may be able to produce a factual basis for a finding that [they] should be considered [] private figure[s] with regard to the allegedly defamatory statements."[85]  And, as explained above, Defendants' obstruction has thus far prevented Plaintiffs from obtaining evidence critical to the public-figure analysis—including testimony from Defendants (in depositions that Defendants' counsel are refusing to schedule) and documents (that Defendants are withholding based on fundamentally flawed assertions of privilege).[86]  Such discovery is critical to defining the precise public controversy at issue, determining any role that Plaintiffs played in it, and determining to what extent Defendants may have been involved in manufacturing or perpetuating the public controversy.  For this additional reason, Plaintiffs did not have a full and fair opportunity to litigate the public figure issue in the Superior Court and issue preclusion cannot apply.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Partial Summary Judgment on the Issue of Plaintiffs as Public Figures.

---

[85] MTD Opinion at 11 [Dkt. 48] (quotation marks omitted).
[86] *See supra* Relevant Background § D.

Dated:  March 5, 2021                        Respectfully submitted,

                                         */s/ Thomas A. Clare, P.C.*
                                        Thomas A. Clare, P.C. (DC Bar No. 461964)
                                        Elizabeth M. Locke, P.C. (DC Bar No. 976552)
                                        Joseph R. Oliveri (DC Bar No. 994029)
                                        Andrew C. Phillips (DC Bar No. 998353)
                                        CLARE LOCKE LLP
                                        10 Prince Street
                                        Alexandria, VA 22314
                                        Tel: (202) 628-7400
                                        tom@clarelocke.com
                                        libby@clarelocke.com
                                        joe@clarelocke.com
                                        andy@clarelocke.com

                                        *Counsel for Plaintiffs Mikhail Fridman,*
                                        *Petr Aven, and German Khan*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Memorandum of Points and Authorities in Opposition to Defendants' Motion for Partial Summary Judgment on the Issue of Plaintiffs as Public Figures was filed electronically by the Clerk of Court on March 5, 2021, using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas A. Clare, P.C.*
Thomas A. Clare, P.C.