**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,**<br><br>    **Defendants.** | **Civil Action No. 1:17-2041-RJL** |

**PLAINTIFFS' OMNIBUS RESPONSE**
***IN SUPPORT OF* PLAINTIFFS MOTION TO MODIFY THE SCHEDULING ORDER
AND**
***IN OPPOSITION TO* DEFENDANTS' MOTION TO STAY ALL DISCOVERY
PENDING RESOLUTION OF THEIR NON-DISPOSITIVE**
<u>**MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ............................................................................................... 1

RELEVANT BACKGROUND ............................................................................... 3

      A.      Plaintiffs Have Diligently Pursued *Party* Discovery—But Defendants Have Thwarted Plaintiffs' Efforts by Raising Frivolous Objections and Taking Positions Unsupported by Law. ....................................................................... 3

      B.      Plaintiffs Have Diligently Pursued *Third-Party* Discovery—But Various Third Parties Have Required Plaintiffs to Seek Judicial Intervention, and the Global COVID-19 Pandemic Has Frustrated Trans-Atlantic Discovery Efforts. .............. 6

      C.      Plaintiffs Request Only a Modest Extension of the Discovery Period. .................. 9

DEFENDANTS MISSTATE THE RELEVANT LEGAL STANDARDS ................................. 10

      A.      Plaintiffs' Motion to Modify the Scheduling Order. ............................................. 10

      B.      Defendants' Motion to Stay All Discovery. ......................................................... 10

ARGUMENT .................................................................................................. 11

I.      Plaintiffs' Motion to Modify the Scheduling Order Should Be Granted Because a Modest Extension of Discovery Is Necessary Due to Circumstances Beyond Plaintiffs' Control, Despite Plaintiffs' Diligent Pursuit of Discovery. ................................................ 11

II.     The Court Should Deny Defendants' Motion to Stay All Discovery Pending Resolution of Their *Non-Dispositive* Motion for *Partial* Summary Judgment That Has *No* Impact on the Scope of Discovery. ....................................................... 14

      A.      Defendants' Primary Argument for a Discovery Stay Is Incorrect: Resolution of Defendants' Non-Dispositive Motion for Partial Summary Judgment Will *Not* Affect the Scope of Discovery or "Reduce the Burden of Discovery." ........................................................................................ 15

      B.      Defendants' Other Cursory Arguments Do Not Support, Much Less Justify, Their Requested Stay of Discovery. ................................................................... 19

CONCLUSION ............................................................................................... 22

CERTIFICATE OF SERVICE .............................................................................. 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beecham v. Socialist People's Libyan Arab Jamahiriya*,
  245 F.R.D. 1 (D.D.C. 2007) .................................................... 3, 10, 14, 17, 20, 22

*Celle v. Filipino Reporter Enters. Inc.*,
  209 F.3d 163 (2d Cir. 2000) ........................................................ 2, 16, 17

*Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*,
  201 F.R.D. 1 (D.D.C. 2001) .......................................................... 3, 11, 15

*Ctr. for Biological Diversity v. Ross*,
  419 F. Supp. 3d 16 (D.D.C. 2019) ................................................... 3, 10, 14

*Dalbec v. Gentleman's Companion, Inc.*,
  828 F.2d 921 (2d Cir. 1987) .............................................................. 17

*Davis v. Billington*,
  775 F. Supp. 2d 23, 31 (D.D.C. 2011),
  *vacated on other grounds*, 681 F.3d 377 (D.C. Cir. 2012) ......................................... 3, 11, 15

*Dist. Title v. Warren*,
  No. 14-cv-1808, 2015 WL 12964658 (D.D.C. June 15, 2015) ...................... 3, 10, 14, 19, 22

*Eramo v. Rolling Stone, LLC*,
  209 F. Supp. 3d 862 (W.D. Va. 2016) .................................................. 17

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) .................................................................... 18

*Goldwater v. Ginzburg*,
  414 F.2d 324 (2d Cir. 1969) ............................................................. 17

*Guttenberg v. Emery*,
  26 F. Supp. 3d 88 (D.D.C. 2014) .................................................. 10, 11

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989) .................................................................. 16, 17

*Herbert v. Lando*,
  441 U.S. 153 (1979) .................................................................. 16, 20

*Hunt v. Liberty Lobby*,
  720 F.2d 631 (11th Cir. 1983) ........................................................ 17

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936).................................................................. 3, 10, 14, 19, 22

*Moldea v. N.Y. Times Co.*,
    137 F.R.D. 1 (D.D.C. 1990) ................................................................. 19

*Moss v. Stockard*,
    580 A.2d 1011 (D.C. 1990) ................................................................. 16

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964).............................................................................. 16

*People With Aids Health Grp. v. Burroughs Wellcome Co.*,
    No. 91-cv-574, 1991 WL 221179 (D.D.C. Oct. 11, 1991) ........................ 3, 10, 14, 17, 20, 22

*Royer v. Fed. Bureau of Prisons*,
    292 F.R.D. 60 (D.D.C. 2013) ................................................................. 3, 11, 15

*Schiavone Constr. Co. v. Time, Inc.*,
    847 F.2d 1069 (3d Cir. 1988) ............................................................... 17

*Solano v. Playgirl, Inc.*,
    292 F.3d 1078 (9th Cir. 2002) ............................................................. 17

*St. Amant v. Thompson*,
    390 U.S. 727 (1968).............................................................................. 17

*St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*,
    No. 05-cv-2115, 2007 WL 1589495 (D.D.C. June 1, 2007),
    *aff'd sub nom. Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*,
    630 F.3d 217 (D.C. Cir. 2011).............................................................. 10, 11

*Tarazi v. Oshry*,
    No. 10-cv-793, 2011 WL 14370523 (S.D. Ohio Apr. 12, 2011) ............ 20

*Tavoulareas v. Piro*,
    763 F.2d 1472 (D.C. Cir. 1985) ........................................................... 17

*United States v. Curtin*,
    489 F.3d 935 (9th Cir. 2007) ............................................................... 20

*United States v. Stewart*,
    686 F.3d 156 (2d Cir. 2012) ................................................................ 20

*Vandenburg v. Newsweek, Inc.*,
    441 F.2d 378 (5th Cir. 1971) ............................................................... 17

# INTRODUCTION

Defendants' Motion to Stay Discovery and Opposition to Plaintiffs' Motion for a modest extension of the discovery schedule—which Plaintiffs filed because of issues completely outside of their control, including the understandable pendency of numerous critical discovery motions and the impact of an unprecedented global pandemic on discovery—is loaded with inflammatory rhetoric but completely devoid of caselaw to support Defendants' demands or evidence to support their factual assertions.

In an effort to avoid the simplicity and merit of Plaintiffs' Motion to extend the current discovery schedule and the lack of merit in Defendants' request for a complete stay of discovery, Defendants resort to incredible hyperbole.  Defendants charge that Plaintiffs "filed this case to harass Defendants"[1]—ignoring the fact that Plaintiffs' claims survived Defendants' motions to dismiss.  Defendants then repeatedly attack Plaintiffs as seeking a "drastic" and "extreme" modification to the Scheduling Order" to obtain "indefinite" and "unbounded" discovery so Plaintiffs can "interminably litigate this case" as part of a "campaign ... of harassing Defendants."[2]

But in reality, Plaintiffs' Motion is simple:  Plaintiffs request a modest extension of the discovery period because (1) many critical discovery motions are pending decision and the decisions on those motions will substantially and materially impact discovery, including by affecting the scope of deposition testimony and likely requiring the production and review of critical documents that Plaintiffs (and Defendants) will use in depositions; and (2) the impacts of the COVID-19 pandemic have prevented *both* parties from deposing various witnesses and obtaining discovery from them, including from key witnesses in the United Kingdom.  And

---

[1] Defs.' Opp'n to Pls.' Mot. to Modify the Scheduling Order & Cross.-Mot. for a Stay of All Disc. Pending Resolution of Defs.' Mot. for Partial Summ. J. on the Issue of Public Figure ("Defs.' Mot.") at 6 (Mar. 1, 2021) [Dkt. 129].

[2] *Id.* at 1, 2, 6, 7, 8, 10.

Plaintiffs' requested extension is modest:  An extension of discovery until 120 days after the Court resolves pending and already-fully-briefed discovery motions—just enough time for the parties to produce any documents that the Court orders produced, to review those documents, and to depose witnesses in light of them.[3]  As explained below, Plaintiffs' Motion is meritorious and should be granted.  (*See infra* Argument Part I.)  And notably, while Plaintiffs will not return Defendants' rhetorical fire, as also explained below, it is ***Defendants' counsel***, not Plaintiffs' counsel, who has impeded orderly discovery in this case—even refusing to allow Plaintiffs to depose Defendants despite numerous requests.  Plaintiffs have been entirely diligent.

Defendants' Motion to stay all discovery pending resolution of their non-dispositive motion for partial summary judgment—which, ironically, they filed while lambasting Plaintiffs for supposedly "drag[ging] out discovery as long as possible"[4]—is likewise simple, and its lack of merit is readily apparent.  (*See infra* Argument Part II.)  Defendants ask this Court to stay all discovery in this case pending resolution of their non-dispositive motion for partial summary judgment even though, as explained below, resolution of that motion will not affect the scope of discovery.  Defendants' partial summary judgment motion will only determine whether Plaintiffs are private or public figures and, accordingly, whether they need to prove that Defendants published their defamatory statements negligently or with actual malice (knowledge of falsity or reckless disregard for truth or falsity).  The exact same evidence that is discoverable and relevant to prove negligence (a lesser-included standard of fault as compared to actual malice) is discoverable and relevant to prove actual malice.[5]

---

[3] Pls.' Mot. to Modify the Scheduling Order (Feb, 15, 2021) [Dkt. 128].

[4] Defs.' Mot. at 6.

[5] *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) ("'There is no doubt that evidence of negligence ... may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity.'").

As explained below, Defendants fail to acknowledge, and cannot satisfy, their substantial burden of establishing the need for a stay of discovery by "'mak[ing] out a clear case of hardship or inequity'" besides merely "being required to defend [this] suit," because their "[b]are assertions" that "discovery will be unduly burdensome" or that "resources will be conserved by granting the stay" are "insufficient to justify the entry of an order staying discovery."[6] And that is not surprising, as this District has repeatedly admonished that where, as here, a "'pending motion will not dispose of the entire case,'" a "'stay of discovery ... is rarely appropriate.'"[7]

## RELEVANT BACKGROUND

Because an understanding of the facts underlying Plaintiffs' and Defendants' Motions—with record citations, not inflammatory rhetoric—makes clear the merit of Plaintiffs' Motion for a modest extension of discovery and the lack of merit of Defendants' Motion to stay discovery, Plaintiffs lay out the relevant facts (with record citations) in some detail.

A.   **Plaintiffs Have Diligently Pursued *Party* Discovery—But Defendants Have Thwarted Plaintiffs' Efforts by Raising Frivolous Objections and Taking Positions Unsupported by Law.**

The record shows that, contrary to Defendants' accusations, Plaintiffs have diligently pursued party discovery in this case—but Defendants have stymied Plaintiffs' efforts by raising frivolous objections and taking unsupported legal positions.

Plaintiffs have diligently sought **document discovery from Defendants**, having served nearly fifty Requests for Production on Defendants, *but* Defendants have largely failed to produce

---

[6] *Dist. Title v. Warren*, No. 14-cv-1808, 2015 WL 12964658, at *3 (D.D.C. June 15, 2015) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)); *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 21 (D.D.C. 2019); *Beecham v. Socialist People's Libyan Arab Jamahiriya*, 245 F.R.D. 1, 3 (D.D.C. 2007); *People With Aids Health Grp. v. Burroughs Wellcome Co.*, No. 91-cv-574, 1991 WL 221179, at *1 (D.D.C. Oct. 11, 1991).

[7] *Royer v. Fed. Bureau of Prisons*, 292 F.R.D. 60, 62 (D.D.C. 2013) (quoting *Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 3 (D.D.C. 2001)); *accord Davis v. Billington*, 775 F. Supp. 2d 23, 31 (D.D.C. 2011), *vacated on other grounds*, 681 F.3d 377 (D.C. Cir. 2012).

documents, raising numerous frivolous objections.  For example, Defendants have refused to produce a single document referring to CIR 112—Defendants' defamatory publication at issue in this case—claiming that all 700 such documents that they possess are protected by the attorney-client privilege and work-product doctrine.  Defendants have asserted those privileges even though: nearly 75% of those documents are communications not involving an attorney; 132 of those documents were shared with third parties; many of those documents are from a time period in which Defendants were not working with Perkins Coie (the law firm Defendants cite in support of their privilege claims); Defendants admit that they were performing political opposition research, which is not research for anticipated litigation or the provision of legal advice; and Defendants admit that they were routinely destroying documents during the time they are claiming work-product protection, which would be inconsistent with Defendants' duty to preserve documents if litigation were anticipated.[8]

Plaintiffs have likewise diligently sought to take **Defendants' depositions**, **_but_** Defendants' counsel has improperly refused to schedule them.  For example:

- **Defendant Glenn Simpson:**  Plaintiffs noticed Defendant Simpson's deposition and have repeatedly asked Defendants' counsel to provide a date for his deposition.[9]  **_But_** Defendants' counsel has repeatedly refused, taking the position—for which he has offered no caselaw support, because there is none—that he will not allow Defendant Simpson to be deposed until after all Plaintiffs are deposed.[10]

---

[8] *See* Pls.' Mot. to Compel Prod. of Docs. Withheld as Privileged by Defs. (Aug. 14, 2020) [Dkt. 95]; *see also* Defs.' Revised Answers to Pls.' First Set of Interrogs. & Answers to Pls.' Second Set of Interrogs. at 2 (Aug. 14, 2020) [Dkt. 95-2] ("Defs.' Interrog. Resps.").

[9] *See, e.g.*, Decl. of Thomas A. Clare, P.C. in Supp. of Pls.' Omnibus Resp. in Supp. of Pls.' Mot. to Modify the Scheduling Order & in Opp'n to Defs.' Mot. to Stay All Disc. Pending Resolution of Their Non-Dispositive Mot. for Partial Summ. J. (Mar. 29, 2021) ("Clare Decl.") ¶¶ 3-4 & Exs. 1-2 (correspondence between Plaintiffs' counsel and Defendants' counsel).

[10] *See, e.g.*, *id.*  Although Defendants *claim* that Plaintiffs agreed to this scheduling sequence, the very communications they cite in support of their claim show that Plaintiffs expressly objected to it.  In addition, two of the three Plaintiffs have already been deposed; the third Plaintiff lives in the United Kingdom and is currently subject to U.K. Government-imposed COVID-19 restrictions that are not applicable to Defendants.

- **Defendant Bean LLC:** Plaintiffs have repeatedly inquired with Defendants' counsel about Defendant Bean's Rule 30(b)(6) deposition.[11] ***But*** Defendants' counsel has repeatedly refused to allow it to go forward, taking the position—for which he has offered no caselaw support, because there is none—that he will not allow Defendant Bean to be deposed until after all Plaintiffs are deposed.[12]

Plaintiffs have also diligently sought to take **the depositions of Defendants' key employees and personnel**, ***but*** Defendants' counsel has improperly refused to schedule them.

For example:

- **Peter Fritsch:** Plaintiffs subpoenaed Peter Fritsch (a principal of Defendant Bean who oversaw the research underlying Defendants' defamatory publications) on June 23, 2020 and initially set his deposition for November 12, 2020.[13] Defendants' counsel accepted service on behalf of Mr. Fritsch and informed Plaintiffs that Mr. Fritsch would also be Bean's Rule 30(b)(6) representative.[14] ***But*** Defendants' counsel has repeatedly refused to allow Mr. Fritsch's deposition to proceed, taking the position—for which he has offered no caselaw support, because there is none—that he will not allow Mr. Fritsch or (Defendant Bean) to be deposed until after all Plaintiffs are deposed.[15]

- **Jacob Berkowitz:** Plaintiffs subpoenaed Jacob Berkowitz (Defendants' leader of the research underlying Defendants' defamatory publication who Defendants admit has "full knowledge of the dispute" in this case)[16] on August 11, 2020, initially setting his deposition for October 29, 2020.[17] Defendants' counsel accepted service on behalf of Mr. Berkowitz.[18] Plaintiffs' counsel has repeatedly requested dates for Mr. Berkowitz's deposition,[19] ***but*** Defendants' counsel has repeatedly refused to allow Mr. Berkowitz's deposition to proceed, taking the position—for which he has offered no caselaw support, because there is none—that he will not allow Mr. Berkowitz to be deposed until *after*

---

[11] *See, e.g.*, *id.*

[12] *See, e.g.*, *id.*

[13] Clare Decl. ¶ 5 & Ex. 3 (Subpoena to Testify at a Deposition in a Civil Action, issued to Peter Fritsch).

[14] Clare Decl. ¶¶ 6, 7 & Exs. 4-5 (correspondence between Plaintiffs' counsel and Defendants' counsel).

[15] *See, e.g.*, Clare Decl. ¶ 4 & Ex. 2.

[16] Defs.' Interrog. Resps. at 2 [Dkt. 95-2].

[17] Clare Decl. ¶ 8 & Ex. 6 (Subpoena to Testify at a Deposition in a Civil Action, issued to Jacob Berkowitz).

[18] Clare Decl. ¶ 9 & Ex. 7 (correspondence between Plaintiffs' counsel and Defendants' counsel).

[19] *See, e.g.*, Clare Decl. ¶¶ 4, 10 & Exs. 2, 8 (correspondence between Plaintiffs' counsel and Defendants' counsel).

Defendants are deposed, which depositions he will not allow to proceed until *after* all of Plaintiffs have been deposed.[20]

- **Jason Felch:**  Plaintiffs subpoenaed Jason Felch (an executive of Defendant Bean who Defendants admit has "full knowledge of the dispute" in this case)[21] on August 11, 2020, initially setting his deposition for December 3, 2020.[22]  Defendants' counsel accepted service on behalf of Mr. Felch.[23]  Plaintiffs' counsel has repeatedly requested dates for Mr. Felch's deposition,[24] ***but*** Defendants' counsel has repeatedly refused to allow Mr. Felch's deposition to proceed, taking the position—for which he has offered no caselaw support, because there is none—that he will not allow Mr. Felch to be deposed until *after* Defendants are deposed, which depositions he will not allow to proceed until *after* all of Plaintiffs have been deposed.[25]

    **B.**    **Plaintiffs Have Diligently Pursued *Third-Party* Discovery—But Various Third Parties Have Required Plaintiffs to Seek Judicial Intervention, and the Global COVID-19 Pandemic Has Frustrated Trans-Atlantic Discovery Efforts.**

Plaintiffs have pursued third-party discovery with similar diligence, but their efforts have been substantially hampered by the third parties from whom Plaintiffs have sought discovery and by the effects of global COVID-19 pandemic.

Plaintiffs have diligently sought **document discovery from third parties**.  Specifically, Plaintiffs have issued subpoenas to twenty-two third parties and have obtained documents from many of them, but numerous others have refused to cooperate, thus necessitating some of the discovery motions currently awaiting decision.  Following substantial efforts, Plaintiffs have obtained document productions from Perkins Coie, the Democratic National Committee, Daniel Jones, and The Democracy Integrity Project (all of whom funded some of Defendants' political

---

[20] *See, e.g.*, Clare Decl. ¶¶ 4, 11 & Exs. 2, 9 (correspondence between Plaintiffs' counsel and Defendants' counsel).

[21] Defs.' Interrog. Resps. at 2 [Dkt. 95-2].

[22] Clare Decl. ¶ 12 & Ex. 10 (Subpoena to Testify at a Deposition in a Civil Action, issued to Jason Felch).

[23] *See* Clare Decl. ¶ 9 & Ex. 7 (correspondence between Plaintiffs' counsel and Defendants' counsel).

[24] *See, e.g.*, Clare Decl. ¶¶ 4, 10 & Exs. 2, 8 (correspondence between Plaintiffs' counsel and Defendants' counsel).

[25] *See, e.g.*, Clare Decl. ¶¶ 4, 11 & Exs. 2, 9 (correspondence between Plaintiffs' counsel and Defendants' counsel).

opposition research, much of which supposedly undergirded Defendants' defamatory publication), Tracy Schmaler (who performed work for Defendants in connection with their defamatory publication), and Jonathan Winer (who communicated with Defendants about their defamatory publication).[26]  And Plaintiffs have likewise determined that other third parties, including Marc Elias and Michael Sussmann (who work for Perkins Coie, which funded some of Defendants' political opposition research supposedly undergirding Defendants' defamatory publication), David Kramer (who communicated with Defendants about their defamatory publication and to whom Defendants gave a copy of their defamatory publication for distribution to others), and Robby Mook (Hillary Clinton's 2016 campaign manager who likely has knowledge about Defendants' political opposition research relating to their defamatory publication) claim not to possess any non-privileged, discoverable documents.  However, Plaintiffs require Court intervention to obtain compliance from many other key third parties.  For example, Plaintiffs have subpoenaed or attempted to subpoena:

- **Orbis Business Intelligence, Christopher Steele, and Christopher Burrows** (the firm hired by Defendants to perform work that led to Defendants' defamatory publication, and its principals; attempted subpoenas), ***but*** their U.S. counsel refused to accept service of Plaintiffs' subpoenas, thus necessitating Plaintiffs' currently-pending Motion for International Judicial Assistance (which was filed August 4, 2020);[27]

- **Edward Baumgartner and Sir Andrew Wood** (who worked with Fusion in connection with and/or communicated regarding Defendants' defamatory publication; attempted subpoenas), ***but*** Messrs. Baumgartner and Wood, who live in the United Kingdom, have not accepted service of Plaintiffs' subpoenas, thus necessitating Plaintiffs' currently-pending Motion for International Judicial Assistance;[28]

- **Igor Danchenko** (a primary "sub-source" for Defendants' defamatory publication; subpoena personally served), ***but*** Mr. Danchenko refused to produce documents (or appear

---

[26] Mr. Winer produced documents between June and August 2020.  Perkins Coie produced 77 total documents between August and September 2020.  The Democratic National Committee produced documents on September 30, 2020.  Ms. Schmaler produced documents on October 5, 2020. Mr. Jones and The Democracy Integrity Project produced documents on March 1, 2021.

[27] Pls.' Mot. for Issuance of Letter of Req. for Int'l Judicial Assistance (Aug. 8, 2020) [Dkt. 90].

[28] *Id.*

for his scheduled deposition), thus requiring one of Plaintiffs' currently-pending motions to compel;[29]

- **David Corn, Michael Isikoff, Eric Lichtblau** (journalists who communicated with Defendants about their defamatory publication; subpoenas served), ***but*** they have refused to produce documents based on assertions of a "journalist's privilege," thus requiring Plaintiffs to exhaust other means of obtaining their communications with Defendants before they can be compelled to produce them.[30]

Plaintiffs have likewise diligently sought to take **the depositions of key third parties**, and have taken two such depositions, but the remaining third parties—including those identified above—have refused to sit for depositions, thus necessitating Plaintiffs' currently-pending Motions for International Judicial Assistance and to Compel.[31]

The effects of the unprecedented global COVID-19 pandemic have raised a further obstacle to Plaintiffs'—and Defendants'—efforts to complete discovery. For example, many key witnesses in this case reside in the United Kingdom, and COVID-19 infection rate surges in the United Kingdom (fueled by the novel U.K. coronavirus variant) have prevented even domestic U.K. travel and made it impossible to conduct depositions there.[32]  Indeed, COVID-19-related restrictions have likewise hampered *Defendants'* discovery efforts, as Plaintiff Khan (who Defendants seek to

---

[29] Pls.' Mot. to Compel (Oct. 23, 2020) [Dkt. 109]; Pls.' Notice of Non-Party Igor Danchenko's Unexcused Failure to File Timely Opp'n to Pls.' Mot. to Compel (Dec. 8, 2020) [Dkt. 119].

[30] Clare Decl. ¶¶ 13-15 & Exs. 11-13 (correspondence from counsel for David Corn, Michael Isikoff and Eric Lichtblau to Plaintiffs' counsel and Objections to Plaintiffs' subpoenas to Messrs. Corn, Isikoff, and Lichtblau).

[31] Pls.' Mot. for Issuance of Letter of Req. for Int'l Judicial Assistance (Aug, 8, 2020) [Dkt. 90]; Pls.' Mot. to Compel (Oct 23, 2020) [Dkt. 109]; Pls.' Notice of Non-Party Igor Danchenko's Unexcused Failure to File Timely Opp'n to Pls.' Mot. to Compel (Dec. 8, 2020) [Dkt. 119].  Third parties Democratic National Committee, Marc Elias, and Michael Sussmann are also awaiting decision on Plaintiffs' motion to compel relating to privilege issues before sitting for their depositions, and third party Nellie Ohr (who performed work for Defendants relating to their defamatory publication) has refused to update or correct her privilege log until that motion is decided.

[32] *See* U.K. Cabinet Office, *Guidance: COVID-19 Response – Spring 2021* (Feb. 22, 2021), https://www.gov.uk/government/publications/covid-19-response-spring-2021/covid-19-response-spring-2021#roadmap.

depose) resides in the United Kingdom and is subject to U.K. government-imposed COVID-19 restrictions.

**C.     Plaintiffs Request Only a Modest Extension of the Discovery Period.**

In light of the obstacles described above—many of which were created by Defendants—Plaintiffs have moved this Court for a modest extension of the discovery period.  Contrary to Defendants' inflammatory claims, Plaintiffs' request is neither "drastic" nor "extreme," and Plaintiffs do not seek (and do not want) "unbounded" discovery or to "interminably litigate this case."  (*See* Defs.' Mot. at 1-2, 6-8, 10.)   Rather, as set forth in Plaintiffs' Motion and accompanying Proposed Order [Dkts. 128, 128-2], Plaintiffs request only that the current Scheduling Order be amended to briefly extend fact discovery and key all subsequent deadlines off the closing date of fact discovery as follows:

(a) Fact discovery shall close 120 days after resolution of certain currently-pending discovery motions;

(b) The parties shall exchange expert reports within 45 days after the close of fact discovery;

(c) The parties shall complete expert depositions within 75 days after the exchange of expert reports;

(d) Motions for summary judgment due 50 days after the completion of expert depositions;

(e) Oppositions to motions for summary judgment due 35 days after the deadline for motions for summary judgment; and

(f) Replies on motions for summary judgment due 17 days after the deadline for oppositions to motions for summary judgment.

Although Defendants agree that an extension of the discovery period is necessary (Defs.' Mot. at 4, 6), they have nevertheless opposed Plaintiffs' Motion.

## DEFENDANTS MISSTATE THE RELEVANT LEGAL STANDARDS

### A.   Plaintiffs' Motion to Modify the Scheduling Order.

Although Defendants correctly recognize that this Court may modify its Scheduling Order for "good cause," they neglect to acknowledge that the Court has "broad discretion" to do so, *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014), or that modification of the pretrial schedule is especially appropriate where "'it cannot reasonably be met despite the diligence of the party seeking the extension.'" *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, No. 05-cv-2115, 2007 WL 1589495, at *6 (D.D.C. June 1, 2007), *aff'd sub nom. Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217 (D.C. Cir. 2011) (collecting authorities).

### B.   Defendants' Motion to Stay All Discovery.

Although Defendants concede that they, as the "proponent[s] of a stay, bear[] the burden of establishing its need" (Defs.' Mot. at 5), ***Defendants fail to acknowledge that their burden is substantial***—in multiple regards.

***First***, to meet their burden, Defendants "'must make out a clear case of hardship or inequity in being required to go forward.'" *Dist. Title v. Warren*, No. 14-cv1808, 2015 WL 12964658, at *3 (D.D.C. June 15, 2015) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 21 (D.D.C. 2019). As explained below, Defendants do not even attempt to identify a "clear case of hardship or inequity"—and they may not do so for the first time on reply.

***Second***, under settled precedent, "[b]are assertions that discovery will be unduly burdensome ... are insufficient to justify the entry of an order staying discovery." *Beecham v. Socialist People's Libyan Arab Jamahiriya*, 245 F.R.D. 1, 3 (D.D.C. 2007) (denying discovery stay); *People With Aids Health Grp. v. Burroughs Wellcome Co.*, No. 91-cv-574, 1991 WL

221179, at *1 (D.D.C. Oct. 11, 1991) (rejecting as insufficient "mere allegations that resources will be conserved by granting the stay").  As explained below, Defendants offer nothing more than "bare allegations" of (non-existent, legally insufficient) "harm" in support of their Motion.

*Finally*, although Defendants fail to acknowledge it, this District has repeatedly admonished that where, as here, a "'pending motion will not dispose of the entire case,'" a "stay of discovery ... is rarely appropriate.'"  *Royer v. Fed. Bureau of Prisons*, 292 F.R.D. 60, 62 (D.D.C. 2013) (quoting *Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 3 (D.D.C. 2001)); *accord Davis v. Billington*, 775 F. Supp. 2d 23, 31 (D.D.C. 2011), *vacated on other grounds*, 681 F.3d 377 (D.C. Cir. 2012).  Here, Defendants admit that, even if their motion for partial summary judgment is granted, it will not dispose of this case.  Even more fundamentally, as explained below, resolution of Defendants' motion for partial summary judgment will not affect the scope of discovery in this case in any material regard.

## ARGUMENT

As explained below, Plaintiffs' Motion for a modest extension of the discovery period should be granted, and Defendants' Motion to stay all discovery pending resolution of its non-dispositive motion for partial summary judgment should be denied.

**I.     Plaintiffs' Motion to Modify the Scheduling Order Should Be Granted Because a Modest Extension of Discovery Is Necessary Due to Circumstances Beyond Plaintiffs' Control, Despite Plaintiffs' Diligent Pursuit of Discovery.**

As explained in Plaintiffs' Motion to Modify the Scheduling Order, it is axiomatic that this Court has "broad discretion" to modify its Scheduling Order for good cause.  *Guttenberg*, 26 F. Supp. 3d at 98.  And it is equally axiomatic that modification of the pretrial schedule is especially appropriate where "'it cannot reasonably be met despite the diligence of the party seeking the extension.'"  *St. Paul Mercury Ins. Co.*, 2007 WL 1589495, at *6 (collecting authorities).

Here, as demonstrated by the facts detailed above, there is unquestionably more than good cause to modify the Court's current Scheduling Order to modestly extend fact discovery until 120 days after the Court resolves the currently-pending discovery motions that will enable Plaintiffs (and Defendants) to complete discovery.  As described above, Plaintiffs have been more than diligent in their efforts to complete discovery.  Plaintiffs have vigorously pursued discovery of documents from Defendants, *but* Defendants have repeatedly asserted objections, requiring Plaintiffs to move to compel.  (*See supra* Relevant Background Part A.)  Plaintiffs have attempted to schedule depositions of Defendants and their key employees and personnel, *but* Defendants' counsel has refused to provide dates for depositions based on his unsupported position that Defendants and their employees may only be deposed after all Plaintiffs have been deposed. (*See id.*)   And Plaintiffs have sought document discovery and testimony from numerous third parties, *but* many of those third parties have refused to cooperate, requiring Plaintiffs to seek further judicial intervention.  (*See supra* Relevant Background Part B.)

Plaintiffs have likewise timely moved to compel and sought judicial intervention as those needs have arisen, but Plaintiffs' motions remain awaiting decision.  (*See supra* Relevant Background Parts A-B.)  Plaintiffs understand why their motions remain pending and know that they will be decided in due time, but because Defendants have resisted discovery in this case, Plaintiffs need their discovery motions to be decided in order to obtain critically relevant discovery.  And the effects of the unprecedented COVID-19 pandemic have further complicated and posed additional obstacles to the trans-Atlantic discovery in this case.  Indeed, Defendants themselves agree that an extension of discovery is necessary.  (Defs.' Mot. at 4, 6.)

Accordingly, Plaintiffs have requested an eminently reasonable extension of fact discovery until 120 days after the Court resolves the pending and already-fully-briefed discovery motions.

That extension will provide just enough time for the parties to produce any documents that the Court orders produced, to review those documents, and to depose witnesses in light of that discovery.  Plaintiffs' request is the definition of reasonable.

Defendants have no response to the simplicity and reasonableness of Plaintiffs' Motion, so they resort to inflammatory rhetoric to try to distract from it.  But they cannot.  Defendants' assertion that "Plaintiffs do not specify what 'many issues relating to the completion of discovery remain outside Plaintiffs' control'" (Defs.' Mot. at 8) rings completely hollow.  The examples detailed above make that clear.  What issues?  Defendants' refusal to produce documents. Defendants' refusal to allow their depositions to proceed until after all Plaintiffs are deposed. Defendants' counsel's refusal to allow Defendants' employees and personnel to be deposed until after the named Defendants are deposed (which they will only allow after all Plaintiffs have been deposed).  Third-parties' refusal to appear for their depositions or participate in discovery absent judicial intervention.  Complications with trans-Atlantic discovery wrought by the COVID-19 global pandemic, the lethal U.K. coronavirus variant, and U.K. Government-imposed COVID-19 restrictions.  Those issues, to name a few, are beyond Plaintiffs' control.

Defendants' only other retort is to make the *ipse dixit* assertions that "Plaintiffs have had plenty of time to obtain the discovery they need" but were not diligent and that they (Defendants) will be prejudiced by an extension of fact discovery.  (Defs.' Mot. at 9.)  But again, the facts (with record citations) lay bare the falsity of Defendants' assertions.  As explained in great detail above, Plaintiffs have worked with great diligence to obtain discovery from Defendants, but Defendants have repeatedly thwarted Plaintiffs' efforts by raising frivolous objections and maintaining untenable legal positions that have required Plaintiffs to file motions to compel.  And Plaintiffs have likewise worked with great diligence to obtain discovery from third parties, but many third-

party subpoena recipients (including those represented by Defendants' counsel) have refused to cooperate (or informed Plaintiffs that they will not respond to Plaintiffs' discovery requests until the Court rules on certain pending discovery motions that they believe are tied to their legal obligations as third parties), thus requiring Plaintiffs to seek judicial intervention.  And while it is completely understandable that many discovery motions remain pending decision, Plaintiffs simply cannot complete discovery before those motions are decided and documents are ordered produced that can then be reviewed and used in critical depositions.  Simply put, Defendants cannot claim prejudice; if anything, it is *Plaintiffs* who have been substantially prejudiced by Defendants' refusal to properly participate in discovery, as Defendants have repeatedly endeavored to deny Plaintiffs their day in court.

Plaintiffs' Motion for a modest extension of the discovery period must be granted.

## II.    The Court Should Deny Defendants' Motion to Stay All Discovery Pending Resolution of Their *Non-Dispositive* Motion for *Partial* Summary Judgment That Has *No* Impact on the Scope of Discovery.

When Defendants' inflammatory rhetoric is stripped away from their Motion, it is clear that Defendants entirely fail to satisfy their substantial burden of establishing the need for a stay of discovery.  Notably, to make their required showing, Defendants "'must make out a clear case of hardship or inequity'" besides merely "being required to defend [this] suit."  *Dist. Title*, 2015 WL 12964658, at *3 (quoting *Landis*, 299 U.S. at 255); *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21.  "Bare assertions" that "discovery will be unduly burdensome" or that "resources will be conserved by granting the stay" are "insufficient to justify the entry of an order staying discovery." *Beecham*, 245 F.R.D. at 3; *People With Aids Health Grp.*, 1991 WL 221179, at *1.  As explained below, Defendants do not offer a single valid reason to stay discovery pending the resolution of their non-dispositive motion for partial summary judgment.  And that is not surprising, as this District has repeatedly admonished that where, as here, a "'pending motion will not dispose of the

entire case,'" a "'stay of discovery ... is rarely appropriate.'"  *Royer*, 292 F.R.D. at 62 (quoting

*Chavous*, 201 F.R.D. at 3)); *accord Davis*, 775 F. Supp. 2d at 31.  Defendants' requested stay is

***not*** appropriate, and their Motion must be denied.

### A.    Defendants' Primary Argument for a Discovery Stay Is Incorrect:  Resolution of Defendants' Non-Dispositive Motion for Partial Summary Judgment Will *Not* Affect the Scope of Discovery or "Reduce the Burden of Discovery."

Defendants' primary argument in favor of their requested total stay of discovery pending

resolution of their non-dispositive motion for partial summary judgment is that "[r]esolution of

[that motion] in favor of Defendants will simplify discovery by significantly narrowing the issues

in dispute." (Defs.' Mot. at 12.)  In support of that argument, Defendants simply assert that because

"the public figure issue remains unresolved" and the parties do not know whether Plaintiffs must

prove that Defendants published their defamatory statements with negligence or actual malice to

prove liability, "discovery in this case is much broader than it would be if the public figure/actual

malice issues had been resolved."  (Defs.' Mot. at 11.)

But Defendants' argument about the scope and burden of discovery is, to put it bluntly,

completely illogical.  Although Defendants baldly claim in their Motion that discovery is "much

broader" now than it will be if their motion for partial summary judgment is granted and Plaintiffs

are held to be public figures, they cannot explain how or why that is the case—because the

***resolution of Defendants' motion for partial summary judgment (grant or deny) will have***

***no impact on the scope of discovery***.  As Defendants acknowledge, the only effect of the Court's

resolution of their motion for partial summary judgment will be to decide whether Plaintiffs are

private figures or public figures such that they, in order to prevail on the issue of liability, will

have to prove that Defendants published their defamatory statements with ***negligence*** (if Plaintiffs

are held to be private figures) or with ***actual malice*** (if Plaintiffs are held to be public figures).  In

the context of a defamation case, negligence is defined as "a failure to observe an ordinary degree

of care in ascertaining the truth of an assertion before publishing it to others," *Moss v. Stockard*, 580 A.2d 1011, 1025 (D.C. 1990), whereas actual malice means publishing a defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not," *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).

Negligence, of course, is an ***easier-to-meet***, lower standard of fault with a lower burden of proof than actual malice. In other words, if this Court were to grant Defendants' motion for partial summary judgment (it should not) and hold Plaintiffs to be public figures (it should not), Plaintiffs would be required to meet a fault standard that is ***more*** difficult, ***more*** time-consuming, ***more*** expensive, and ***more*** burdensome to prove than the lower standard of negligence. It simply defies logic to argue that the application of a lesser, easier-to-prove negligence fault standard would somehow increase the scope and burdens of discovery on the parties.

In fact, because negligence is a lesser-included fault standard as compared to actual malice, there is no practical distinction between evidence that is discoverable and relevant in a negligence case and evidence that is discoverable and relevant in an actual malice case. Evidence tending to show negligence is relevant to the issue of actual malice, just as evidence tending to show actual malice is relevant to demonstrating negligence. As the Supreme Court has long recognized, because defamation-defendants "are prone to assert their good-faith belief in the truth of their publications" such that "plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself," *Herbert v. Lando*, 441 U.S. 153, 170 (1979), "a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence," *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) ("'Malice may be proved inferentially[.]'" (quoting *Dalbec v.*

*Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987))).[33]  And as courts have repeatedly explained, "'[t]here is no doubt that evidence of negligence ... may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity.'"  *Celle*, 209 F.3d at 183 (quoting *Goldwater v. Ginzburg*, 414 F.2d 324, 342 (2d Cir. 1969)).  Such evidence of actual malice—which includes evidence that defendants disregarded evidence of falsity, conducted a grossly inadequate investigation for their defamatory statements,[34] violated accepted professional standards in publishing their defamatory statements,[35] or cited no ultimate source for their defamatory statements[36]—is plainly also discoverable and relevant to showing that a defamation-defendant published without reasonable care (*i.e.*, with negligence).

Notably, Defendants' Motion to Stay Discovery does not even attempt to identify any category or type of evidence that is within the scope of discovery in a negligence case but not subject to discovery in an actual malice case.  It is thus completely nonsensical for Defendants to argue that discovery is more burdensome now than it would be after resolution of their motion for partial summary judgment.  Defendants' *ipse dixit* assertion is precisely the type of "[b]are assertion[]" that this District has repeatedly held "insufficient to justify the entry of an order staying discovery."  *Beecham*, 245 F.R.D. at 3; *People With Aids Health Grp.*, 1991 WL 221179, at *1.

---

[33] *See also, e.g.*, *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 871 (W.D. Va. 2016)); *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1087 (9th Cir. 2002); *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1090 (3d Cir. 1988).

[34] *Hunt v. Liberty Lobby*, 720 F.2d 631, 645 (11th Cir. 1983); *see also, e.g.*, *Tavoulareas v. Piro*, 763 F.2d 1472, 1477 (D.C. Cir. 1985); *Vandenburg v. Newsweek, Inc.*, 441 F.2d 378, 380 (5th Cir. 1971); *Goldwater*, 414 F.2d at 339.

[35] *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (failure to cite ultimate source of defamatory statements can support an inference that defendants fabricated them).

[36] *Connaughton*, 491 U.S. at 693 n.39.

17

Moreover, and in any event, Defendants' counterfactual argument is beside the point, because Plaintiffs are entitled to discovery of evidence of actual malice whether or not Defendants prevail on their motion for partial summary judgment. Plaintiffs are seeking punitive damages against Defendants,[37] and it is black-letter law that defamation-plaintiffs (public and private figures alike) must prove actual malice to recover punitive damages, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974), and that Plaintiffs are allowed to discover evidence relating to their punitive damages claim.

Ultimately, the only discovery that Defendants argue would not be necessary if their motion for partial summary judgment is granted is discovery propounded by Defendants themselves. (Defs.' Mot. at 12-13 (citing *Defendants*' subpoena to Richard Burt and a motion to compel filed by *Defendants*).) But, of course, Defendants have complete control over the content and timing of their own discovery efforts. To the extent that Defendants believe that some of their own discovery efforts may not be necessary if their motion for partial summary judgment is granted, they can simply wait until after their motion is decided to pursue that discovery, if necessary. Defendants do not need a Court-ordered stay of all discovery to manage their own discovery requests—especially because, as described above, there is substantial necessary discovery that can be completed right now while Defendants' motion for partial summary judgment is pending.

---

[37] Contrary to Defendants' assertion in other briefing (*see* Defs.' Mot. to Compel. Prod. of Pls.' Fin. Records at 1, 3-4 (Oct. 27, 2020) [Dkt. 111]), Plaintiffs have ***not*** abandoned their claim for punitive damages. In support of their assertion, Defendants cite only a discovery response addressing the types of ***compensatory*** damages Plaintiffs are seeking (*id.* at 4). But—as Defendants have acknowledged—Plaintiffs' Amended Complaint expressly pleads that "'Plaintiffs seek an award of ... punitive damages'" (*id.* at 4 (quoting Am. Compl. ¶ 10 & page 18 (Dec. 12, 2017) [Dkt. 17])), and Plaintiffs have never renounced or abandoned that pleading.

**B.      Defendants' Other Cursory Arguments Do Not Support, Much Less Justify, Their Requested Stay of Discovery.**

Defendants' only two other cursory arguments in support of their requested discovery stay offer no support whatsoever for that stay, much less "make out [the] clear case of hardship .... required" to warrant a stay of discovery. *Dist. Title*, 2015 WL 12964658, at *3 (quoting *Landis*, 299 U.S. at 255).

*First*, Defendants are simply wrong that some unspecified "First Amendment interests" justify their requested stay of discovery. Contrary to Defendants' suggestion, continuing discovery in an orderly fashion in this case will not (indeed, cannot) "infringe[]" any "First Amendment interests of Defendants" (Defs.' Mot. at 13-14)—for multiple reasons. To begin, Plaintiffs' claims have already been tested by this Court and they survived Defendants' motions to dismiss, thus clearly distinguishing this case from so-called meritless "SLAPP" suits that courts have opined may potentially chill First Amendment freedoms. Moreover, Defendants have entirely failed to identify any First Amendment rights that discovery could infringe in this case. After all, even Defendants' vastly overbroad 700-entry privilege log does not cite any so-called "First Amendment" privilege a single time.[38]

In addition—and tellingly—the only case Defendants cite to argue that some unspecified "First Amendment interests" justify a stay of discovery, *Moldea v. New York Times Co.*, 137 F.R.D. 1 (D.D.C. 1990), expressly held that "First Amendment issues ... standing alone would **_not_** automatically entitle defendant to a stay of discovery," *id.* at 2.[39] And courts have expressly rejected the precise argument Defendants make to stay discovery here. As one court cogently explained when rejecting the same argument at the earlier, motion-to-dismiss stage:

---

[38] *See* Pls.' Mot. to Compel Prod. of Docs. Withheld as Privileged by Defs. (Aug. 14, 2020) [Dkt. 95].

[39] Emphases added unless otherwise noted.

> In sum, [Defendant's] First Amendment arguments essentially ask this Court to fashion a rule that a stay of discovery is warranted in every defamation [case] involving a motion to dismiss based upon a First Amendment defense. This position is untenable. Defendant cites no authority for such a broad proposition, nor has the Court located any.

*Tarazi v. Oshry*, No. 10-cv-793, 2011 WL 1437052, at *3 (S.D. Ohio Apr. 12, 2011).

This law makes sense. Indeed, the Supreme Court has expressly ***refused to prohibit discovery*** of even the media's editorial processes, explaining that prohibiting such discovery "would constitute a substantial interference with the ability of a defamation plaintiff to establish the ingredients of malice as required by *New York Times*," because it "would also immunize from inquiry the internal communications occurring during the editorial process and thus place beyond reach what the defendant participants learned or knew as the result of" that process. *Herbert*, 441 U.S. at 170-71. Thus, as multiple Circuit Courts have observed, "the Supreme Court has held on many occasions" that even "opinions and other information that otherwise might be entitled to First Amendment protection are ***not immune*** from discovery and use as evidence in court, as long as they are relevant to an issue in a given case." *United States v. Curtin*, 489 F.3d 935, 953-54 (9th Cir. 2007); *United States v. Stewart*, 686 F.3d 156, 167 n.10 (2d Cir. 2012) (same).

Thus, Defendants' bare, *ipse dixit* assertion of unspecified and inapplicable "First Amendment interests" cannot justify their requested discovery stay. *See Beecham*, 245 F.R.D. at 3; *People With Aids Health Grp.*, 1991 WL 221179, at *1.

***Second***, Defendants' argument that "[n]o discovery is needed by Plaintiffs to oppose [Defendants'] Motion for Partial Summary Judgment" (Defs.' Mot. at 14) entirely misses the point. Defendants have moved for a total stay of all discovery until their motion for partial summary judgment is resolved. Regardless whether discovery is necessary regarding the issue preclusion issue raised in Defendants' motion for partial summary judgment, discovery ***is*** necessary regarding myriad critical issues in this case. As explained above, Plaintiffs are actively pursuing substantial

party and third-party document and deposition discovery that will be necessary regardless of the outcome of Defendants' motion for partial summary judgment.  And this discovery can be accomplished now (or, at least, upon resolution of the parties' pending discovery motions).  In fact, **Defendants themselves** are currently pursuing substantial discovery that will be necessary regardless of the outcome of their motion for partial summary judgment, including discovery relating to Plaintiffs' finances (which Defendants (wrongly) assert are relevant to damages) and discovery relating to corporate entities in which Plaintiffs are indirect shareholders.[40]  Indeed, Defendants expressly admit in their Motion that they are currently pursuing discovery "regarding the [supposed] substantial truth of the statements in CIR 112" (Defendants' defamatory publication at issue in this case) (Defs.' Mot. at 12-13)—discovery that also will be necessary regardless of the outcome of Defendants' motion for partial summary judgment.  Defendants' argument for a stay on this ground thus also fails.

*       *       *

In sum, there is absolutely no need—and no justification—for staying all discovery pending resolution of Defendants' *non-dispositive* motion for *partial* summary judgment. Resolution of that motion will not affect the scope of discovery; substantial discovery that will be necessary regardless of the outcome of that motion remains to be taken; and that discovery can be taken now, before the resolution of Defendants' partial summary judgment motion.  Granting Defendants' motion to stay discovery—which, ironically, Defendants request at the same time they (falsely) lambast Plaintiffs for supposedly "drag[ging] out discovery as long as possible" (Defs.' Mot. at 6)—will only serve to needlessly delay this case and further hamper Plaintiffs'

---

[40] *See* Defs.' Mot. to Compel Prod. of Pls.' Fin. Records (Oct. 27, 2020) [Dkt. 111]; Defs.' Mot. to Compel Pls.' Prod. of Docs. (June 12, 2020) [Dkt. 78].

21

ability to have their day in court.  Because Defendants entirely fail to carry their substantial burden of establishing the need for a discovery stay, Defendants' Motion must be denied.  *See Dist. Title*, 2015 WL 12964658, at *3 (quoting *Landis*, 299 U.S. at 255); *Beecham*, 245 F.R.D. at 3; *People With Aids Health Grp.*, 1991 WL 221179, at *1.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court GRANT Plaintiffs' Motion to Modify the Scheduling Order [Dkt. 128], ENTER the Proposed Modified Scheduling Order [Dkt. 128-2] attached to Plaintiffs' Motion, and DENY Defendants' Motion to Stay All Discovery Pending Resolution of Their Motion for Partial Summary Judgment on the Issue of Plaintiffs as Public Figures [Dkt. 129].

Dated:  March 29, 2021

Respectfully submitted,

  */s/ Thomas A. Clare, P.C.*
Thomas A. Clare, P.C. (DC Bar No. 461964)
Elizabeth M. Locke, P.C. (DC Bar No. 976552)
Joseph R. Oliveri (DC Bar No. 994029)
Andrew C. Phillips (DC Bar No. 998353)
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Tel: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com
joe@clarelocke.com
andy@clarelocke.com

*Counsel for Plaintiffs Mikhail Fridman,*
*Petr Aven, and German Khan*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing Plaintiff's Omnibus Response in Support of Plaintiffs' Motion to Modify the Scheduling Order and in Opposition to Defendants Motion to Stay All Discovery Pending Resolution of Their Non-Dispositive Motion for Partial Summary Judgment was filed electronically with the Clerk of Court on March 29, 2021, using the CM/ECF system, which will send notification of such filing to all counsel of record.

  */s/ Thomas A. Clare, P.C.*
Thomas A. Clare, P.C.