# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, AND GERMAN KHAN,<br><br>            Plaintiffs,<br><br>       v.<br><br>BEAN LLC (A/K/A FUSION GPS) AND GLENN SIMPSON,<br><br>            Defendants. | Case No.: 1:17-cv-02041 (RJL) |

**AMENDED ANSWER OF DEFENDANTS BEAN LLC AND GLENN SIMPSON TO AMENDED COMPLAINT**

Defendants Bean LLC ("Fusion") and Glenn Simpson, by their undersigned attorneys, answer the Amended Complaint ("Complaint") of Plaintiffs Mikhail Fridman, Petr Aven, and German Khan (collectively, "Plaintiffs") as follows, using the same headings and paragraph numbering as the Complaint.

**INTRODUCTION**

1. Except to admit that Glenn Simpson is a former investigative journalist and a principal of the Washington D.C. based firm Bean LLC, doing business as Fusion GPS ("Fusion"), and that the Plaintiffs have brought this defamation action claiming damages to their reputations and to the reputation of Alfa, the Defendants deny each and every allegation in paragraph 1 of the Complaint.

2. Except to admit that Company Intelligence Report 112 ("CIR 112") is one of seventeen written Company Intelligence Reports ("CIRs") that were published on or about January 10, 2017, by BuzzFeed, Inc. ("Buzzfeed"), which as published together have come to be referred

to as the "Trump Dossier" or the "Dossier," and that CIR 112 makes statements about the Plaintiffs and Alfa and is the only CIR in the Dossier which names the Plaintiffs and Alfa, Defendants deny each and every allegation in paragraph 2 of the Complaint. Defendants refer to CIR 112 in its entirety for its true content and meaning and refer to the remaining CIRs published by BuzzFeed for their true content and meaning.

3.      Except to admit that Fusion engaged Orbis Business Intelligence Limited ("Orbis"), which is based in London, and one of its principals, Christopher Steele ("Steele"), who is a former senior British intelligence professional, to perform research in 2016, and that Orbis and/or Steele compiled various CIRs that were delivered to the Defendants over the course of several months in 2016, Defendants deny each and every allegation in paragraph 3 of the Complaint. Defendants refer to CIR 112 in its entirety for its true content and meaning and refer to the remaining CIRs published by BuzzFeed for their true content and meaning.

4.      Except to admit that Defendants did not attempt to communicate with the Plaintiffs about CIR 112 before BuzzFeed published the Dossier, Defendants deny each and every allegation in paragraph 4 of the Complaint.

5.      Defendants deny the allegations of paragraph 5 of the Complaint.

6.      Except to admit that counsel for Orbis/Steele filed a Response referred to in footnote 1 and that *Yahoo News* published the article referred to in footnote 2 and that *Mother Jones* published the article referred to in footnote 3, Defendants deny each and every allegation in paragraph 6 of the Complaint.  Defendants refer to each of the items described in footnotes 1, 2, and 3 for their true content and meaning.

7. Except to admit that counsel for Orbis/Steele filed a Response referred to in footnote 4, Defendants deny each and every allegation in paragraph 7 of the Complaint. Defendants refer to the item described in footnote 4 for its true content and meaning.

8. Except to admit that BuzzFeed published seventeen CIRs on or about January 10, 2017, one of which was CIR 112, along with an article referred to in footnotes 5 and 6, Defendants deny each and every allegation in paragraph 8 of the Complaint. Defendants refer to the item described in footnotes 5 and 6 and to the CIRs published by BuzzFeed for their true content and meaning.

9. Defendants deny the allegations contained in paragraph 9 of the Complaint.

10. Paragraph 10 calls for a legal conclusion for which no response is required, but, to the extent any such response is required, Defendants deny each and every allegation in paragraph 10 of the Complaint.

## THE PARTIES

11. Defendants admit that Plaintiffs are ultimate beneficial owners of Alfa and that they are citizens of Russia. Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations concerning Fridman's and Kahn's citizenship in the State of Israel, and on that basis deny that allegation. Defendants deny the remaining allegations in paragraph 11 of the Complaint.

12. Defendants admit the allegations in paragraph 12 of the Complaint.

13. Except to admit that Simpson is a principal of Fusion, that he conducts his business for Fusion primarily from an office in Washington D.C., that he uses his prior experience as an investigative journalist in connection with his work for Fusion, that Christopher Steele uses his prior experience as a former senior British intelligence professional in his work for Orbis, that *The*

*Washington Post* published an article referred to in footnote 7, and that *The Guardian* published an article referred to in footnote 8, Defendants deny each and every allegation in paragraph 13 of the Complaint. Defendants refer to the items described in footnotes 7 and 8 for their true content and meaning.

## JURISDICTION AND VENUE

14.     Paragraph 14 calls for a legal conclusion for which no response is required, but, to the extent that any such response is required, Defendants deny that jurisdiction is proper in the Court, that venue is proper in this District, and that the matter in controversy in the cause of action asserted exceeds $75,000.

## FACTUAL ALLEGATIONS

15.     Except to admit that Defendants were engaged by the *Washington Free Beacon* in 2015, that they were engaged in 2016 by Perkins Coie, a law firm representing the DNC and HFACC, Inc., which engagement ended before the 2016 Presidential election, that *The Hill* published the article referred to in footnote 9, and that *The Washington Post* published the article referred to in footnote 10, Defendants deny each and every allegation in paragraph 15 of the Complaint. Defendants refer to the items described in footnotes 9 and 10 for their true content and meaning.

16.     Except to admit that Orbis and/or Steele compiled at least seventeen written CIRs, in connection with their engagement by Fusion, and that counsel for Orbis/Steele filed a Response referred to in footnote 11, Defendants deny each and every allegation in paragraph 16 of the Complaint. Defendants refer to the CIRs published by BuzzFeed for their true content and meaning and to the item described in footnote 11 for its true content and meaning.

17. Defendants lack sufficient information about which media reports paragraph 17 is referring to, and, on that basis, lack information sufficient to form a belief as to the truth or falsity of the allegations, and deny each and every allegation contained in paragraph 17 of the Complaint.

18. Defendants deny the allegations in paragraph 18 of the Complaint.

19. Except to admit that the titles of fifteen CIRs published by BuzzFeed are accurately reprinted in paragraph 19, Defendants deny each and every allegation contained in paragraph 19 of the Complaint. Defendants refer to the CIRs published by BuzzFeed for their true content and meaning.

20. Defendants refer to CIR 112 in its entirety as published by BuzzFeed for its true content and meaning, and except as so referred, Defendants deny each and every allegation in Paragraph 20 of the Complaint.

21. Defendants refer to CIR 112 in its entirety as published by BuzzFeed for its true content and meaning, and except as so referred, Defendants deny each and every allegation in Paragraph 21 of the Complaint.

22. Defendants refer to CIR 112 in its entirety as published by Buzzfeed for its true content and meaning, and except as so referred, Defendants deny each and every allegation in Paragraph 22 of the Complaint.

23. Defendants deny the allegations in paragraph 23 of the Complaint.

24. Defendants refer to CIR 112 in its entirety as published by Buzzfeed for its true content and meaning, and except as so referred, Defendants deny each and every allegation in Paragraph 24 of the Complaint.

25. Defendants deny the allegations in paragraph 25 of the Complaint.

26. Defendants deny the allegations in paragraph 26 of the Complaint.

27. Defendants refer to CIR 112 in its entirety as published by BuzzFeed for its true content and meaning, and except as so referred, Defendants deny each and every allegation in Paragraph 27 of the Complaint.

28. Defendants deny the allegations in paragraph 28 of the Complaint.

29. Defendants deny the allegations in paragraph 29 of the Complaint.

## CAUSE OF ACTION

30. Defendants repeat and reallege each of their responses and denials to paragraphs 1-29 of the Complaint as if made in response to paragraph 30.

31. Defendants deny each and every allegation of paragraph 31 and all of its subparts of the Complaint. For the sake of clarity, Defendants specifically deny that any of the statements made in CIR 112 are capable of the defamatory meaning attributed to them by the Plaintiffs in this paragraph.

32. Defendants deny each and every allegation in paragraph 32 of the Complaint.

33. Defendants deny each and every allegation in paragraph 33 of the Complaint.

34. Defendants deny each and every allegation in paragraph 34 of the Complaint. For the sake of clarity, Defendants specifically deny that any publication or republication by Defendants was made negligently or with reckless disregard of whether the statements in CIR 112 were true or false.

35. Defendants deny each and every allegation in paragraph 35 of the Complaint.

## JURY TRIAL DEMANDED

Defendants hereby demand a trial by jury on all issues so triable.

To the extent a response to the WHEREFORE clause is required, Defendants deny each and every allegation contained therein.

**AFFIRMATIVE DEFENSES**

1. To the extent that the Plaintiffs seek to hold Defendants liable for publication of CIR 112 to either Senator John McCain and his agent David Kramer, or to the FBI and its agents, any such publication(s) made by Defendants were made without express or actual malice to members of the federal legislative or federal executive branch of government who were officially empowered to investigate the subject matter of any such publication(s) made by the Defendants and thereby constitute privileged publication(s).

2. To the extent that the Plaintiffs seek to hold Defendants liable for publication of CIR 112 to their client Perkins Coie, or to Perkins Coie's clients, any such publication(s) made by Defendants were made without express or actual malice both (i) for the purpose of assisting Perkins Coie in providing legal advice to its clients and (ii) pursuant to a duty to report their research findings (and those of their subcontractor), thereby constituting privileged publication(s).

3. To the extent that the Plaintiffs seek to hold Defendants liable for publication of CIR 112 to news media or journalists, any such publication(s) made by Defendants were made disinterestedly without express or actual malice to responsible, prominent news organizations about serious claims concerning public figures, reported to Defendants by a credible source with a proven record of providing reliable, sensitive and important information regarding Russian affairs and thereby are protected by the neutral report privilege pursuant to the common law and the First Amendment to the Constitution of the United States.

4. To the extent that Plaintiffs seek to hold Defendants liable for publication of CIR 112 or any other CIRs by BuzzFeed, such publication is protected by the fair report privilege pursuant to New York Civil Rights Law 74 and/or Article I, Section 8 of the New York Constitution.

5.      To the extent that Plaintiffs seek to hold Defendants liable for publication of CIR 112 or any other CIRs by BuzzFeed, such publication is protected by the fair report privilege pursuant to New York Civil Rights Law § 74 as held by the New York Supreme Court in a valid, final judgment on the merits in *Fridman v. BuzzFeed*, Index No. 154895/2017 (N.Y. Sup. Ct., Mar. 18, 2021), and the doctrine of issue preclusion bars Plaintiffs from claiming that BuzzFeed's publication of CIR 112 or any other CIRs is not protected by the fair report privilege pursuant to New York Civil Rights Law § 74.

6.      To the extent that Plaintiffs seek to hold Defendants liable for publication of CIR 112 or any other CIRs by BuzzFeed, Defendants cannot be held liable by virtue of the fact that they had nothing to do with BuzzFeed's decision to publish CIR 112 or any other CIRs, had no control over BuzzFeed's publication, and were unaware that BuzzFeed intended to publish any CIRs, including CIR 112.

7.      Any and all publications of the allegedly defamatory statements by the Defendants are protected by the First Amendment to the Constitution of the United States.

8.      None of the allegedly defamatory statements in CIR 112 are materially false and all statements in CIR 112 are substantially true.

9.      Neither Plaintiffs nor Alfa suffered any damages from any publication of the allegedly defamatory statements by Defendants.

10.     To the extent that Plaintiffs or Alfa suffered any damages from any publication of the allegedly defamatory statements by Defendants, the amount of such damages was nominal, and in total does not exceed $75,000, resulting in the absence of jurisdiction and venue in this Court over Plaintiffs' claim.

11.     Plaintiffs have failed to mitigate their alleged damages.

12. Exemplary or punitive damages are not recoverable because Defendants did not act with either common law malice, or constitutional and/or actual malice.

13. Any claim for exemplary or punitive damages is barred by the First Amendment to the Constitution of the United States.

14. Defendants have asserted in a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) that Plaintiffs' Complaint fails to state a claim upon which relief can be granted because the Plaintiffs are limited purpose public figures for the statements made in CIR 112, and that their Complaint makes no factual allegations that support a plausible inference that Defendants acted with actual malice. Although Defendants do not believe it is necessary to plead the above assertion as an Affirmative Defense, because the District Court made an erroneous decision that Plaintiffs' status as public figures and their resulting obligation to plausibly allege that Defendants acted with actual malice cannot be adjudicated on a Rule 12(b)(6) motion to dismiss, but instead can only be adjudicated as an affirmative defense at summary judgment or trial, Defendants, in an abundance of caution, and without conceding that the District Court ruling was correct, hereby plead that Plaintiffs are public figures who cannot meet their burden to prove actual malice by clear and convincing evidence. The reasons that Plaintiffs are public figures, include but are not limited, to the following:

    a. A public controversy exists concerning the entanglement of Russian oligarchs' political and business interests and those of the Russian state and/or President Putin, including the questionable, unethical and illegal conduct by actors on both sides.

    b. A public controversy exists concerning the attempt to interfere in the 2016 U. S. Presidential election by the Russian government and/or President Putin, including the alleged participation of Russian oligarchs.

    c.    Plaintiffs are three of the most prominent and richest Russian oligarchs. Accordingly, they frequently feature in the public controversy concerning the conduct of Russian oligarchs, including on behalf of or in cooperation with the Russian government and/or President Putin.

    d.    The United States District Court for the District of Columbia previously determined that Plaintiffs Fridman and Aven were public figures, for purposes of a prior defamation case they brought against a digital media organization. *OAO Alpha Bank v. Center for Public Integrity*, 387 F. Supp. 2d 20 (D.D.C. 2005). The Court found that "Fridman and Aven are recognized as two of the most powerful Russian oligarchs. They have maintained a close relationship to the highest reaches of the Russian government, and forged a series of friendships and alliances with Russian luminaries and politicians." *Id*. at 26. The same facts apply to Plaintiff Khan as well. The Court further noted that "Aven and Fridman have assumed an unforeseen (sic) level of prominence and influence in the economic and political affairs of their nation." *Id*. at 27. So has Plaintiff Khan. The Court also noted that Aven and Fridman have been dogged by allegations of corruption and illegal conduct for decades, and have repeatedly engaged with the media to seek to defend their economic and political activities. *Id*. So has Plaintiff Khan.

    e.    In 2018, the Superior Court of the District of Columbia specifically determined that Plaintiffs were prima facie public figures for the information in CIR 112. *See* Order, *Khan v. Orbis Bus. Intelligence Ltd.*, No. 2018 CA 002667 B (D.C. Super. Ct. Aug. 20, 2018); *see also* ECF 34-01. That Court found that the findings "in *OAO Alfa Bank* are valid today" and that "[t]he U.S. public today continues to have a strong interest in Russia's relations with the United States and in the political and commercial

relationships between Russian oligarchs and the Russian government. [citations omitted]. Plaintiffs have assumed special prominence in these controversies. . . ." *Id*. at 17-18.

      f.      The Plaintiffs' international business and political conduct, including their relationship to President Putin, has continually attracted intense public scrutiny.

      g.      For example, in 2015, Plaintiffs Fridman and Khan engaged in a controversial sale of their oil assets to Russia's state-owned oil company, which *Forbes* called "another move by Vladimir Putin to centralize power?" The sale was covered by hundreds of reports in major international and U.S. media, and was described by Reuters as "one of the biggest energy takeovers in history."

      h.      In 2015, the government of the United Kingdom ordered Fridman and Khan to sell all of their oil assets in that country, out of concern that their connections to the Russian government could invite sanctions. The controversy was covered by all major international and U.S. media.

      i.      In a widely-publicized 2010 lecture entitled, "How I Became an Oligarch," Plaintiff Fridman boasted that he is one of a small number of Russian businessmen who formed a group that is "the most influential public organization in the business sphere today." According to Fridman, "We really do try, as far as it is possible in our socio-political conditions, to influence the economic policy of government and the legislative policy of the State Duma, deputies and ministers." He boasted of the group's regular meetings with President Putin. Plaintiff Khan also participates in similar meetings with President Putin. As President of Alfa Bank, Plaintiff Aven also participates in meetings with Putin, such as a 2013 publicized meeting in which Putin pressured bankers to lower interest rates to help the Russian economy.

j.      The United States government has repeatedly scrutinized the Plaintiffs and Alfa's business activities.  In 2016, a company in which Fridman and Aven were the largest investors paid fines and forfeitures totaling $835 million to the United States Department of Justice to settle charges relating to bribery under the Foreign Corrupt Practices Act and money laundering.  The FBI and the SEC, as well as Spanish authorities, are publicly reported to have investigated the telecommunications company ZED+ for paying bribes to Russian government officials, and the Spanish investigators have been reported to point to Mr. Fridman as a person involved.

k.      Plaintiffs have widespread access to the international media and other channels of communications within the United States and around the world.  The Plaintiffs are able to respond publicly whenever a public controversy involving their interests erupts.  For example, in late 2016, news broke in various United States' publications regarding a connection between servers owned by Alfa Bank and servers linked to the Trump Organization during the 2016 Presidential campaign, a controversy that continues to draw public scrutiny in the United States to this day.  Immediately thereafter, a statement was issued on behalf of Fridman and Aven denying any secret involvement in the Trump campaign and their longtime Washington, D.C. spokesperson, Jeffrey Birnbaum of BRG Public Relations, continues to speak to the media about the controversy.

l.      Furthermore, Plaintiffs comment on many matters that could affect them, their business interests, or the Russian government.  For example, in September 2016, Aven spoke to *Politico* to claim that rumors that Alfa Bank had paid for Carter Page, a reputed Trump advisor, to come to speak in Moscow, were not true.  In December 2016, Fridman praised the choice of Rex Tillerson as Secretary State to *Bloomberg News*, which reported

that he said Tillerson would make a good choice from the Russian perspective because he has close ties to Putin and Igor Sechin. In addition to their numerous press interviews, Plaintiffs have spoken to numerous influential organizations in the United States, such as the Keenan Institute and the Carnegie Endowment for International Peace. In October 2017, Fridman spoke in a public forum moderated by *Russian Forbes* about "Alfa Groups strange relationship to the Russian authorities."

    m.    Both Fridman and Aven met several times with officials at the Obama White House. A senior official in the Obama administration was recently quoted as saying they got meetings at the White House and elsewhere because "they were understood to be operating with the consent and guidance of Vladimir Putin."

    n.    Accordingly, the Plaintiffs are either general purpose public figures in the United States as a result of their actions and statements subjecting themselves to widespread news coverage around the world and in the United States, or are limited purpose public figures in the United States for the purpose of any public controversy addressed in CIR 112, including Russian oligarchs' political or business relationships with the Russian state and/or President Putin, and/or attempts to interfere in the 2016 U.S. Presidential election by the Russian government and/or President Putin.

    15.    Plaintiffs are public figures for purposes of CIR 112 and are barred from relitigating their public figure status by the doctrine of issue preclusion, based on the judgments in *Khan v. Orbis Business Intelligence Ltd.*, No. 2018 CA 002667 B, 2018 WL 11232420 (D.C. Sup. Ct. Aug. 20, 2018) and *Fridman v. Orbis Bus. Intelligence Ltd.*, 229 A.3d 494 (D.C. 2020).

## COUNTERCLAIM

Bean LLC, doing business as Fusion GPS ("Fusion"), by its attorneys Zuckerman Spaeder LLP, hereby allege as follows:

13

**Parties and Background**

1.      Mikhail Fridman ("Fridman"), Petr Aven ("Aven") and German Khan ("Kahn") (together, "the Plaintiffs"), are Russian oligarchs who are the beneficial owners of Alfa Bank and the Alfa Group ("Alfa"), which is based in Russia.  The Plaintiffs are citizens of Russia.

2.      The Plaintiffs are among the richest and most prominent Russian oligarchs and, through Alfa and separate from Alfa, are involved in Russian government activities and the activities of President Vladimir Putin ("Putin") around the world.

3.      The Plaintiffs are either general purpose public figures in the United States as a result of their actions and statements subjecting themselves to widespread news coverage around the world and in the United States, or are limited purpose public figures in the United States for the purpose of any public controversy addressed in CIR 112, including Russian oligarchs political or business relationships with the Russian state and/or President Putin, and/or attempts to interfere in the 2016 U.S. Presidential election by the Russian government and/or President Putin, including their alleged participation in either controversy.

4.      Bean LLC is a Delaware limited liability corporation doing business as Fusion GPS ("Fusion"), with its principal place of business in Washington, D.C.

**Factual Allegations**

5.      In 2016, Fusion hired Orbis Business Intelligence, Limited ("Orbis"), which firm included a former senior British intelligence professional who specialized in Russian affairs, Christopher Steele, to conduct research.

6. In the course of its work, Orbis compiled a one and a half page intelligence report numbered 112 (" CIR 112"), which concerned the Plaintiffs' and Alfa's past and ongoing relationship with President Putin of Russia as reported by a Russian government official.

7. On January 10, 2017, BuzzFeed, Inc. ("BuzzFeed") published a series of Company Intelligence Reports compiled by Orbis, which came to be known as the Dossier, including CIR 112, along with an article, which publication for the first time exposed CIR 112 to members of the public in United States and worldwide.

8. On or about December 12, 2017, the Plaintiffs sued Fusion and one of its principals, Glenn Simpson, (together "the Defendants") in the United States District Court for the District of Columbia for defamation with regards to Defendants' alleged "publication" of CIR 112 not only to select third parties, but to a "worldwide public." Plaintiffs' lawsuit alleges in paragraph 31, in pertinent part:

> By their direct and intentional publication to third parties such as clients, news media, journalists, and others, and by the foreseeable republication of the Dossier and CIR 112 by someone in that group, the Defendants published to a worldwide public false and defamatory statements concerning Plaintiffs and Alfa, including that:
>
> (a) they are implicated in the scandalous allegations involving Russia and President Trump referred to in CIR 112 and the other CIRs in the Dossier;
>
> (b) they and other officials and employees of Alfa "cooperated" with an alleged Kremlin campaign to interfere in the U.S. presidential election;
>
> (c) they are parties to a highly inappropriate, and even criminal, relationship with Vladimir Putin;

      (d)    they engaged in acts of criminal bribery of Vladimir Putin, then the Deputy Mayor of St. Petersburg, in the 1990s to secure favorable business treatment; and

      (e)    they continue to use their knowledge of past bribery of Putin as a means of criminally extorting continuing favorable treatment for their business interests from the Putin government.

Plaintiffs' lawsuit further alleges, in pertinent part in paragraph 35:

> Defendants are liable for the defamation of Plaintiffs and Alfa, and the resulting harm caused by the news media coverage of the Dossier, including the republication by BuzzFeed and countless other media.

9.     Plaintiffs' lawsuit against the Defendants does not allege that the Defendants acted with actual or constitutional malice in any respect and Plaintiffs have no basis to make any such allegation.

10.     Subsequent to suing the Defendants, the Plaintiffs sued Orbis and one of its principals, Christopher Steele, in the Superior Court of the District of Columbia for defamation, alleging virtually identical facts as those alleged in their lawsuit against the Defendants. The companion lawsuit filed against Orbis and Steele constituted a strategic lawsuit against public participation, as defined by D.C. Code §§16-5501, *et. seq.* In an Order dated August 20, 2018, the Superior Court of the District of Columbia dismissed the Plaintiffs lawsuit against Orbis and Steele under the District of Columbia Anti-SLAPP Act.

11.     At the time Plaintiffs filed their lawsuit against the Defendants, they and their attorneys knew that BuzzFeed had not obtained any of the Company Intelligence Reports compiled by Orbis, including CIR 112, from the Defendants.

## Cause of Action

12. Fusion repeats and realleges paragraphs 1-11 above.

13. Plaintiffs' defamation lawsuit against the Defendants arises from an act in furtherance of the right of advocacy on issues of public interest, as defined by the District of Columbia Anti-SLAPP Act.

14. The District of Columbia Anti-SLAPP Act "extend[s] substantive rights to defendants in a SLAPP" lawsuit. *Competitive Enterprise Institute v. Mann*, 150 A.3d 1213, 1226 (D.C. 2016).

15. Plaintiffs cannot demonstrate, and in their lawsuit against the Defendants, Plaintiffs have not sought to demonstrate or purported to be able to demonstrate, that their defamation lawsuit is likely to succeed on the merits. Plaintiffs have no evidence that would permit a jury, properly instructed on the legal and constitutional standards applicable to their defamation claim, to find that the Defendants are liable to the Plaintiffs.

WHEREFORE, Fusion respectfully requests that:

1. Judgment be entered in its favor, and the Complaint against them be dismissed with prejudice;

2. Fusion be awarded their costs of litigation, including reasonable attorney's fees pursuant to D.C. Code §16-5504; and

3. The Court grant Fusion such further and other relief as is just and proper.

Dated: May 19, 2021              By: /s/ Joshua A. Levy

                                 Joshua A. Levy (D.C. Bar No. 475108)
Rachel M. Clattenburg (D.C. Bar No. 1018164)
LEVY FIRESTONE MUSE LLP
1701 K St. NW, Suite 350
Washington, DC 20005
Tel: (202) 845-3215
Fax: (202) 595-8253
jal@levyfirestone.com
rmc@levyfirestone.com

*Counsel for Defendants*