# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**MIKHAIL FRIDMAN, PETR AVEN, and
GERMAN KHAN,**

        **Plaintiffs,**

**v.**

**BEAN LLC a/k/a FUSION GPS, and GLENN
SIMPSON,**

        **Defendants.**

**Civil Action No. 1:17-2041-RJL**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ...................................................................................................... 1

RELEVANT BACKGROUND .................................................................................... 3

      A.     Plaintiffs' Defamation Claim Arises from Defendants' Admitted and Self-Described "Political" "Opposition Research"—*Not* Legal Work or Work for Litigation. ......................................................................................................... 3

      B.     Defendants' *First* Privilege Log Provides Only Copied-and-Pasted Hypergeneric, Boilerplate Privilege Descriptions, Omits Necessary Information, and Makes Broad and Unsubstantiated Privilege Claims................. 5

      C.     Defendants' *Second* (Revised) Privilege Log Does Not Correct Any Deficiencies:  Defendants Repeat the Same Hypergeneric, Boilerplate Privilege Descriptions for Virtually All Documents Withheld. ............................ 7

      D.     The Court Grants Plaintiffs' Motion to Compel and Orders Defendants to Produce a Proper Privilege Log with "Additional Detailed Information" Supporting Their Privilege Claims—But Defendants Defy the Court's Order and Produce a Virtually Unchanged *Third* Privilege Log. ...................................... 9

LEGAL STANDARD .............................................................................................. 11

ARGUMENT........................................................................................................... 12

I.     Defendants Disregarded the Court's Order and Chose Not to Produce a Proper Privilege Log—Despite Having Had *Three* Chances to Do So—And Have Thus Failed to Carry Their Burden of Proving Their Privilege Claims. ................................................ 12

II.    Substantial Evidence Confirms That the Documents Defendants Are Withholding as Privileged Are *Not* Attorney-Client Privileged or Work Product. .................................... 17

      A.     Substantial Evidence Makes Clear That the Attorney-Client Privilege Is Inapplicable to the Documents Defendants' Are Withholding as Privileged........ 17

      B.     Substantial Evidence Makes Clear That the Work-Product Doctrine Is Inapplicable to the Documents Defendants' Are Withholding. ............................ 23

III.   Even If Defendants Satisfied Their Burden of Establishing That a Privilege Applied, Defendants Waived That Privilege........................................................................... 27

CONCLUSION ...................................................................................................... 29

APPENDIX A........................................................................................................A-1

APPENDIX B.................................................................................................................B-1

APPENDIX C.................................................................................................................C-1

APPENDIX D.................................................................................................................D-1

APPENDIX E.................................................................................................................E-1

CERTIFICATE OF SERVICE........................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banneker Ventures, LLC v. Graham*,
253 F. Supp. 3d 64 (D.D.C. 2017) ................................................................27, 29

*Bean LLC v. John Doe Bank*,
291 F. Supp. 3d 34 (D.D.C. 2018) ................................................................19

*Bowles v. Nat'l Ass'n of Home Builders*,
224 F.R.D. 246 (D.D.C. 2004) ................................................................29

*Chen-Oster v. Goldman, Sachs & Co.*,
293 F.R.D. 547 (S.D.N.Y. 2013) ................................................................25

*Chevron Corp. v. Weinberg Grp.*,
286 F.R.D. 95 (D.D.C. 2012) ................................................................13

*Citizens for Resp. & Ethics in Wash. v. Gen. Servs. Admin.*,
No. 18-cv-2071, 2021 WL 1177797 (D.D.C. Mar. 29, 2021) ................................18

*Combs v. Cordish Cos.*,
No. 14-cv-227, 2018 WL 1464033 (W.D. Mo. Mar. 23, 2018) ................................19

*EEOC v. Lutheran Social Servs.*,
186 F.3d 959 (D.C. Cir. 1999) ................................................................24

*Elkins v. Dist. of Columbia*,
250 F.R.D. 20 (D.D.C. 2008) ................................................................24, 27, 29

*English v. Wash. Metro. Area Transit Auth.*,
323 F.R.D. 1 (D.D.C. 2017) ................................................................13

*Feld v. Fireman's Fund Ins. Co.*,
991 F. Supp. 2d 242 (D.D.C. 2013) ................................................................14, 15

*FTC v. TRW, Inc.*,
628 F.2d 207 (D.C. Cir. 1980) ................................................................11, 17, 20

*Fudali v. Pivotal Corp.*,
No. 03-cv-1460, 2010 WL 4910263 (D.D.C. Dec. 2, 2010) ................................23

*Gerlich v. Dep't of Justice*,
711 F.3d 161 (D.C. Cir. 2012) ................................................................26

*In re Apollo Grp., Inc. Sec. Litig.*,
   251 F.R.D. 12 (D.D.C. 2008),
   *aff'd*, 329 F. App'x 283 (D.C. Cir. 2009)............................................................................16

*In re Chevron Corp.*,
   No. 10-mc-371, 2013 WL 11241413 (D.D.C. Apr. 22, 2013)...............................2, 12, 13, 16

*In re Grand Jury Proceedings*,
   No. 11-mc-189, 2001 WL 1167497 (S.D.N.Y. Oct. 3, 2001).................................................25

*In re Lindsey*,
   148 F.3d 1100 (D.C. Cir. 1998) ...........................................................................................18

*In re Sealed Case*,
   146 F.3d 881 (D.C. Cir. 1998) .............................................................................................24

*In re Sealed Case*,
   877 F.2d 976 (D.C. Cir. 1989) .............................................................................................27

*In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*,
   439 F.3d 740 (D.C. Cir. 2006) ...........................................................................1, 11, 16, 17

*In re Veiga*,
   746 F. Supp. 2d 27 (D.D.C. 2010) .............................................................................11, 12, 13

*Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
   926 F. Supp. 2d 121 (D.D.C. 2013) .....................................................................................18

*Koch v. Cox*,
   489 F.3d 384 (D.C. Cir. 2007) .............................................................................................22

*Kurtiev v. Shell*,
   No. 15-cv-1839, 2020 WL 2838523 (D.D.C. June 1, 2020)..................................................26

*Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resol. Tr. Corp.*,
   5 F.3d 1508 (D.C. Cir. 1993) ...............................................................................................17

*Permian Corp. v. United States*,
   665 F.2d 1214 (D.C. Cir. 1981) ...........................................................................................12

*Prowess, Inc. v. Raysearch Labs. AB*,
   No. 11-cv-1357, 2013 WL 509021 (D. Md. Feb. 11, 2013) .................................................25

*S.E.C. v. Lavin*,
   111 F.3d 921 (D.C. Cir. 1997) .............................................................................................27

*Singh v. Dist. of Columbia*,
   55 F. Supp. 3d 55 (D.D.C. 2014) .........................................................................................19

*Smith v. Janey*,
  664 F. Supp. 2d 1 (D.D.C. 2009),
  *aff'd sub nom. Smith v. Rhee*,
  No. 09-7100, 2010 WL 1633177 (D.C. Cir. Apr. 6, 2010) ...................................................19

*Tax Analysts v. I.R.S.*,
  117 F.3d 607 (D.C. Cir. 1997) ......................................................................................17, 21

*The Navajo Nation v. Peabody Holding Co.*,
  255 F.R.D. 37 (D.D.C. 2009) ................................................................................................29

*United States v. All Assets Held at Bank Julius Baer & Co.*,
  315 F.R.D. 103 (D.D.C. 2016) ..............................................................................................27

*United States v. Deloitte LLP*,
  610 F.3d 129 (D.C. Cir. 2010) ..............................................................................................24

*United States v. ISS Marine Servs., Inc.*,
  905 F. Supp. 2d 121 (D.D.C. 2012) ......................................................................................11

*United States v. Kovel*,
  296 F.2d 918 (2d Cir. 1961) ..................................................................................................20

*United States v. KPMG LLP*,
  316 F. Supp. 2d 30 (D.D.C. 2004) ........................................................................................13

*United States v. Kupau*,
  781 F.2d 740 (9th Cir. 1986) .................................................................................................19

*United States v. Legal Servs. for N.Y.C.*,
  249 F.3d 1077 (D.C. Cir. 2001) ............................................................................................11

*United States v. Naegele*,
  468 F. Supp. 2d 165 (D.D.C. 2007) ......................................................................................23

*Walker v. Ctr. for Food Safety*,
  667 F. Supp. 2d 133 (D.D.C. 2009) ......................................................................2, 12, 13, 16

*Willingham v. Ashcroft*,
  228 F.R.D. 1 (D.D.C. 2005) ..................................................................................................24

**Rules**

Fed. R. Civ. P. 26................................................................................................................12, 24

Fed. R. Evid. 801 ....................................................................................................................3, 19

Fed. R. Evid. 802 .......................................................................................................................19

## INTRODUCTION

Despite having had ***three*** opportunities to produce a proper privilege log, Defendants have chosen not to do so.  And Defendants have chosen not to do so even though the Court granted Plaintiffs' previous motion to compel and ordered Defendants "to submit to plaintiffs an updated privilege log *with additional detailed information* sufficient to allow determination of defendants' claims of privilege."[1]  Left with no other choice, because Defendants continue to withhold nearly 500 critically important documents based on unsubstantiated privilege claims—despite all evidence demonstrating that those documents are ***not*** privileged—Plaintiffs bring this renewed motion to compel.

This Motion arises from Defendants' withholding of nearly 500 documents as privileged (while producing under 750) without satisfying their "burden of demonstrating facts sufficient to establish [any] privilege's applicability" to those documents.  *See, e.g.*, *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750 (D.C. Cir. 2006). Before the Plaintiffs filed their previous motion to compel, Defendants had already produced two iterations of their privilege log but did not provide information sufficient to enable Plaintiffs (or the Court) to assess their privilege claims.  Rather, on both logs, Defendants simply copied-and-pasted the same boilerplate "privilege descriptions" that just parroted the legal elements of privilege for over 450 of the 497 documents withheld.  When Defendants refused to produce a compliant privilege log, Plaintiffs moved to compel.

On March 30, this Court granted Plaintiffs' motion and ordered Defendants "to submit to plaintiffs an updated privilege log *with additional detailed information* sufficient to allow

---

[1] Order Granting Pls.' Mot. to Compel re Defs.' Privilege Log (Mar. 30, 2021).  Emphasis added unless otherwise noted.

determination of defendants' claims of privilege."[2]  But instead of providing the required detailed information, Defendants produced a *third* privilege log with the *exact same* "privilege descriptions"—the *only* substantive change Defendants made to their third privilege log was to add three columns of information: "Email Subject," "File Name," and "Date Created (for Attachments and Loose Documents)."  And although Defendants' counsel has now taken the position (in a meet-and-confer) that that information satisfies the Court's Order and enables Plaintiffs to assess Defendants' privilege claims, Defendants' counsel previously submitted a Declaration (under penalty of perjury) attesting that "*[n]one* of the e-mail subject lines or file names would reasonably assist Plaintiffs in assessing Defendants' privilege invocations" because they "contain *no* substantive information."[3]

In short, Defendants have had multiple opportunities (and have already been ordered by this Court) to produce a proper privilege log and satisfy their "burden of demonstrating facts sufficient to establish [any] privilege's applicability" to the documents on that log, but they have chosen not to do so.  And all available evidence demonstrates that the documents Defendants are withholding are *not* privileged.  Accordingly, the Court should compel Defendants to produce those documents.  *See, e.g.*, *Walker v. Ctr. for Food Safety*, 667 F. Supp. 2d 133, 138 (D.D.C. 2009) (compelling production of withheld documents when party had multiple opportunities to produce a sufficient privilege log but failed to do so); *In re Chevron Corp.*, No. 10-mc-371, 2013 WL 11241413, at *3 (D.D.C. Apr. 22, 2013) (same).[4]

---

[2] *Id.*

[3] Decl. of Thomas A. Clare, P.C. (May 21, 2021) ("Clare Decl.") ¶ 2 & Ex. A (Decl. of Joshua A. Levy ¶ 11 (July 28, 2020) ("J. Levy Decl.")).

[4] In the alternative, the Court should order Defendants to produce those documents to the Court for *in camera* inspection to confirm that they are not privileged and should then order their production.

2

## RELEVANT BACKGROUND

A.    **Plaintiffs' Defamation Claim Arises from Defendants' Admitted and Self-Described "Political" "Opposition Research"—*Not* Legal Work or Work for Litigation.**

As the Court knows, Plaintiffs' defamation claim arises from Defendants' publication of false statements accusing Plaintiffs of, among other things, bribery, extortion, and interference in the 2016 U.S. Presidential Election, in an "intelligence" memorandum titled "Company Intelligence Report 2016/112" ("CIR 112"), which Defendants commissioned from Christopher Steele and his firm, Orbis Business Intelligence.[5]  (CIR 112, along with similar reports prepared by and for Defendants, have become collectively known as the "Steele Dossier.")[6]

As relevant here, Defendants have repeatedly admitted that the Dossier was the product of "political work"[7]—specifically, "political" "opposition research"[8]—and Defendants have called those reports "the most famous work of opposition research in American politics."[9]

Defendants were initially hired in September 2015 to perform that "political" "opposition research" on then-presidential candidate Donald Trump by the *Washington Free Beacon*, "a conservative online publication backed by... Paul Singer," who was "no fan of Trump."[10]  After Trump became the frontrunner for the Republican presidential nomination, Defendants disengaged with the *Free Beacon* and, because "[i]t seemed obvious that demand for information on Trump would soon shift to the Democrats," Defendants reached out to Marc Elias, a lawyer at Perkins

---

[5] *See, e.g.*, Am. Compl. ¶¶ 1-10, 13, 31 (Dec. 12, 2017) [Dkt. 17].

[6] *See id.* ¶ 1.

[7] *See* Clare Decl. ¶ 3 & Ex. B (Glenn Simpson & Peter Fritsch, *Crime in Progress* 54, 56-57 (2019) (excerpts)).  Because Defendant Simpson (who is a principal of Defendant Bean) wrote *Crime in Progress*, Defendants' numerous admissions in the book constitute non-hearsay party admissions. *See* Fed. R. Evid. 801(d).

[8] Clare Decl. Ex. B (*Crime in Progress*) at 54, 56-57.

[9] *Id.* at 269.

[10] *Id.* at 18, 54.

Coie who represented the Democratic National Committee (DNC) and Hillary for America Campaign Committee (HFACC).[11]  Defendant Simpson first met with Mr. Elias on April 20, 2016, and a few weeks later, Perkins Coie engaged Defendants to perform "deep research on Trump."[12]

Critical for purposes of this Motion, Defendants have repeatedly admitted that their work for Perkins Coie was "political," not legal.  To begin, Defendants were never clients of Perkins Coie; rather, the DNC and HFACC were Perkins Coie's clients.[13]  Moreover, Perkins Coie did ***not*** engage Defendants to perform legal or litigation-focused work; rather, Defendants have admitted (and publicly boasted) that Perkins Coie engaged Defendants in a "political context" to perform "political work."[14]  In fact, Defendants have admitted that they themselves (***not*** Perkins Coie) "were the architects of the[ir] research and we [Defendants] made most of the decisions about what to look for and where to look."[15]  In Defendants' own words, the purpose of their work in political campaigns is "threefold:  to expose an opponent's vulnerabilities, provide source material for the media, and feed attack ads."[16]  Here, Defendants accomplished that purpose by performing "deep research on Trump" and commissioning and publishing CIR 112 and the rest of

---

[11] *Id.* at 54-56.

[12] *Id.* at 54-57, 59.  Defendants admit that as of April 20, 2016 they had not been engaged to perform work for Perkins Coie, writing in their tell-all book that their April 20, 2016 "meeting with Marc Elias [] occurred before [Defendants] were hired" by Perkins Coie.  *Id.* at 284.

[13] *Id.* at 79.

[14] *See, e.g.*, *id.* at 56 (discussing the work Defendants would perform for Perkins Coie and explaining that "***[p]olitical work*** like this can be perilous"); *id.* at 70 (discussing "the ***political context*** of [Defendants'] engagement" by Perkins Coie); *see also id.* at 56 (describing the work that Perkins Coie engaged Defendants to perform, and explaining: "[Elias] had heard of the research Fusion had done on Mitt Romney and Bain Capital during the 2012 campaign and said he needed that kind of deep research on Trump.").

[15] Clare Decl. ¶ 4 & Ex. C (Interview of Glenn Simpson by the House Permanent Select Committee on Intelligence, at 22 (Nov. 14, 2017)).

[16] *Id.* at 31.

the Steele Dossier, which Defendants boast is "perhaps the most famous work of opposition research in American politics."[17]

**B.** **Defendants' _First_ Privilege Log Provides Only Copied-and-Pasted Hypergeneric, Boilerplate Privilege Descriptions, Omits Necessary Information, and Makes Broad and Unsubstantiated Privilege Claims.**

On October 11, 2019, Plaintiffs served requests for production on Defendants seeking documents relating to CIR 112 and issues at the heart of this case.[18]  Defendants responded by broadly claiming privilege in response to virtually every request[19] and withholding nearly 500 documents as privileged, which they listed on their first privilege log.[20]

As Plaintiffs' counsel explained to Defendants' counsel in multiple letters, Defendants' first privilege log did not provide sufficient information to enable Plaintiffs to assess Defendants' privilege claims, much less provide facts sufficient to carry Defendants' burden of demonstrating that the documents they are withholding are privileged.[21]  Defendants, among other things:

- **Repeated the Same Hypergeneric Privilege Descriptions For Nearly All Documents.** Defendants repeated the same two boilerplate "privilege descriptions" that just parroted the legal elements of privilege for over 450 of the 497 documents withheld:

   "Confidential research [or "communication regarding research"] prepared at the direction of Perkins Coie and in anticipation of litigation, and for the purpose of providing legal advice" or

   "Confidential communication in anticipation of litigation and for the purpose of obtaining legal advice."[22]

- **Claimed Privilege Over Non-Attorney Communications.** Defendants claimed privilege over more than 425 communications (the overwhelming majority of their withheld documents) that were solely between non-attorneys—without any factual explanation for

---

[17] *Id.* at 57, 269.
[18] Clare Decl. ¶ 5 & Ex. D (Pls.' First RFPs (Oct. 11, 2019)).
[19] Clare Decl. ¶ 6 & Ex. E (Defs.' Resps. & Objs. to Pls.' First RFPs (Nov. 11, 2019)).
[20] Clare Decl. ¶ 7 & Ex. F (Defs.' [First] Privilege Log (May 18, 2020)).
[21] Clare Decl. ¶¶ 8-10 & Ex. G (Letter from A. Lewis to J. Levy (May 28, 2021)), Ex. H (Letter from A. Lewis to J. Levy (June 25, 2021)), Ex. I (Letter from A. Lewis to J. Levy (July 22, 2021)).
[22] *See, e.g.*, Clare Decl. Ex. F (Defs.' [First] Privilege Log) at PRIV0000014-421, PRIV0000432-474.

how they are privileged and which are facially unprivileged given the political nature of the work they performed.[23]

- **Claimed Privilege Over Communications with Third Parties.**   Defendants claimed privilege over communications with third parties—without any factual explanation for how they are privileged and which are facially unprivileged given the political nature of the work they performed.[24]

- **Did Not Differentiate Privileges Claimed.**   Defendants generically claimed both attorney-client privilege and work-product protection without differentiation for 492 of 497 documents withheld.

- **Claimed Facially Inapplicable Privileges.**   Defendants claimed privilege over documents based on an engagement with Perkins Coie that did not exist when the documents were created.[25]

- **Omitted Various Necessary Information.**   Defendants identified 30 documents as simply "loose document,"[26] claimed work-product protection without identifying even generally what litigation was anticipated, and omitted such basic information as the types of documents withheld (except emails), the number of pages of documents withheld, email subjects, file names, dates for non-emails, and descriptions of the subject-matters of the documents withheld.

In light of these deficiencies, Plaintiffs' counsel demanded that Defendants produce a revised, compliant privilege log with sufficient information to enable Plaintiffs to meaningfully assess Defendants' privilege claims.  After initially refusing, Defendants agreed to provide a "supplementary privilege log containing additional non-privileged information regarding the documents listed," but maintained their broad privilege claims.[27]

---

[23] *See, e.g.*, *id.* at PRIV0000010, PRIV0000014, PRIV0000156, PRIV0000159, PRIV0000203, PRIV0000206-209, PRIV0000295, PRIV0000298, PRIV0000300.

[24] *See, e.g.*, *id.* at PRIV0000110-111.

[25] *See, e.g.*, *id.* at PRIV0000006-19 (dated before Defendants' meeting with Marc Elias on April 20, 2016, which "occurred before [Defendants] were hired" by Perkins Coie," Clare Decl. Ex. B at 284 (*Crime in Progress*)).

[26] *See, e.g.*, *id.* at PRIV0000030-31, PRIV0000044-45.

[27] Clare Decl. ¶ 11 & Ex. J (Letter from J. Levy to A. Lewis (June 10, 2020)).

**C.     Defendants' _Second_ (Revised) Privilege Log Does Not Correct Any Deficiencies: Defendants Repeat the Same Hypergeneric, Boilerplate Privilege Descriptions for Virtually All Documents Withheld.**

On July 28, 2020, Defendants produced a second (revised) privilege log[28]—but chose not to correct any of the clear deficiencies in their first privilege log. ***Defendants made __no substantive__ changes to their privilege log***; Defendants made only a minor formatting change and de-designated (and produced) a few invoices and their cover emails.[29]  Just like with their first privilege log, Defendants:

- Repeated the same ***hypergeneric privilege descriptions*** that just recited the elements of privilege claims for over 450 documents.[30]

- Claimed privilege over ***non-attorney communications***—without any explanation for how they are privileged and which are facially unprivileged, as described above.[31]

- Claimed privilege over ***communications with third parties***—without any explanation for how they are privileged and which are facially unprivileged, as described above.[32]

- ***Did not differentiate privileges claimed***, claiming both attorney-client privilege and work-product protection without differentiation for all but 5 documents withheld.

- ***Claimed facially inapplicable privileges***, including by claiming privilege over documents based on an engagement with Perkins Coie that did not exist when the documents were created.[33]

- ***Continued to omit necessary information***, including claiming work-product protection without identifying even generally what litigation was anticipated and omitting such basic information as the types of documents withheld (except emails), the number of pages in documents withheld, email subjects, file names, dates for non-emails, and descriptions of the subject-matters of the documents withheld.

---

[28] Clare Decl. ¶ 12 & Ex. K (Defs.' [Second] (Revised) Privilege Log (July 28, 2020)).

[29] *See id.* at PRIV0000098, PRIV0000109-112.

[30] *See, e.g., id.* at PRIV0000014-421, PRIV0000432-474.

[31] *See, e.g., id.* at PRIV0000010, PRIV0000014, PRIV0000156, PRIV0000159, PRIV0000203, PRIV0000206, PRIV0000207, PRIV0000208, PRIV0000209, PRIV0000295, PRIV0000298, PRIV0000300.

[32] *See, e.g., id.* at PRIV0000110-111.

[33] *See, e.g., id.* at PRIV0000006-19 (dated before Defendants' meeting with Marc Elias on April 20, 2016, which "occurred before [Defendants] were hired" by Perkins Coie," Clare Decl. Ex. B at 284 (*Crime in Progress*)).

Along with their substantively unchanged second privilege log, Defendants produced a Declaration from Joshua Levy (their trial counsel in this case) that repeated Defendants' broad privilege claims and asserted generally that all work Defendants performed was performed to assist legal work.[34]  But Mr. Levy's Declaration did not specifically address any particular documents on Defendants' privilege log or even attempt to explain how any particular documents that Defendants are withholding as privileged are actually privileged.[35]

In light of the continuing deficiency of Defendants' **second** privilege log, Plaintiffs' counsel again asked Defendants to revise their privilege log and to provide sufficient information—like the subject-matters of the documents withheld—that would enable Plaintiffs (and the Court) to meaningfully assess Defendants' privilege claims, but Defendants refused.[36]  In fact, Defendants even refused to provide such basic—and required—information as email subject lines, file names, and file creation dates because, according to Defendants' counsel:

> ***None of the e-mail subject lines or file names would reasonably assist Plaintiffs in assessing Defendants' privilege invocations.***  Rather, the subject lines and file names are ***generally generic and/or vague***.  ...  And other subject lines and file names ***contain no substantive information*** as to the subject of the underlying communication (e.g., "fyi" or "here").[37]

Left with no other option, Plaintiffs moved to compel Defendants to produce the documents they were withholding because they failed to carry their burden of demonstrating that they were privileged, or to provide a *third* privilege log that provides all necessary (and required) information to meaningfully assess Defendants' privilege claims.[38]  In that Motion, Plaintiffs specifically identified the numerous above-described deficiencies with Defendants' second privilege log.[39]

---

[34] J. Levy Decl. (Ex. A to the Clare Decl.).

[35] *See id.*

[36] Clare Decl. ¶ 14 & Ex. L (Email from A. Lewis to J. Levy (Aug. 10, 2020)).

[37] J. Levy Decl. ¶ 11 (Ex. A to the Clare. Decl.).

[38] Pls.' Mot. to Compel re Defs.' Privilege Log (Aug. 14, 2020) [Dkt. 95].

[39] *See generally id.*

**D.    The Court Grants Plaintiffs' Motion to Compel and Orders Defendants to Produce a Proper Privilege Log with "Additional Detailed Information" Supporting Their Privilege Claims—But Defendants Defy the Court's Order and Produce a Virtually Unchanged _Third_ Privilege Log.**

On March 30, 2021, the Court granted Plaintiffs' Motion to Compel and ordered Defendants to "submit to plaintiffs an updated privilege log *with additional detailed information sufficient to allow determination of defendants' claims of privilege.*"[40] The Court further ordered the parties to meet and confer regarding any remaining disputes following Defendants' production of their updated privilege log and invited Plaintiffs to file a renewed motion to compel if Defendants failed to produce a sufficient privilege log.[41]

Defendants disregarded the Court's Order. Despite having a *third* opportunity to produce a sufficient privilege log, Defendants produced a *third* privilege log that contained nearly all of the same deficiencies as its previous two logs.[42] Despite the Court's Order to provide "additional detailed information" sufficient to enable Plaintiffs (and the Court) to meaningfully assess Defendants' privilege claims, *Defendants did not change the "privilege descriptions"* of the documents they are withholding. Rather, *the only substantive change* Defendants made to their third privilege log was to add three columns of information: "Email Subject," "File Name," and "Date Created (for Attachments and Loose Documents)." Defendants once again repeated the same hypergeneric, boilerplate "privilege descriptions" that just recited the legal elements of privilege claims for nearly every document withheld, and Defendants continued to withhold facially unprivileged documents without providing any information to justify their claims of privilege over them.

---

[40] Order Granting Pls.' Mot. to Compel re Defs.' Privilege Log (Mar. 30, 2021).
[41] *Id.*
[42] Clare Decl. ¶ 14 & Ex. M (Defs.' [Third] Revised Privilege Log (Apr. 29, 2021)).

Thus, Plaintiffs' counsel wrote to Defendants' counsel to again ask Defendants to produce a compliant privilege log.[43]  But Defendants' counsel refused, taking the position that by providing "Email Subject," "File Name," and "Date Created" information—but not revising their privilege descriptions—they complied with the Court's Order and provided sufficient "detailed information" to enable Plaintiffs (and the Court) to assess their privilege claims:[44]



But Defendants' counsel knew his assertion was false, because in his Declaration in support of Defendants' second privilege log, he stated (under penalty of perjury) that merely providing "Email Subject," "File Name," and "Date Created" information would ***not*** enable Plaintiffs to assess Defendants' privilege claims:[45]



---

[43] Clare Decl. ¶ 15 & Ex. N (Letter from T. Clare & J. Oliveri to J. Levy (May 3, 2021)).
[44] Clare Decl. ¶ 16 & Ex. O (Letter from J. Levy to T. Clare & J. Oliveri (May 11, 2021)).
[45] J. Levy Decl. ¶ 11 (Ex. A to the Clare. Decl.).

During (and after) a meet-and-confer on this issue, Defendants' counsel would not (and/or could not) explain *how* providing "Email Subject," "File Name," and "Date Created" information (without any alteration of their "Privilege Descriptions") enabled Plaintiffs to assess Defendants' claims of privilege over specific documents more meaningfully than based on Defendants' previous privilege log that the Court found insufficient—because it does not.[46]  But Defendants' counsel refused to provide any additional information to support Defendants' privilege claims.

Accordingly, Plaintiffs are again left with no choice but to file this Motion to Compel.

## LEGAL STANDARD

"It is well established that," as the proponents of privilege claims, ***Defendants "bear[] the burden of demonstrating facts sufficient to establish [any] privilege's applicability."***  *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n* ("*In re CFTC Subpoena*"), 439 F.3d 740, 750 (D.C. Cir. 2006).  To satisfy that burden, Defendants "must" offer more than just "conclusory statements," "generalized assertions," and "averments of [their] counsel."  *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 127 (D.D.C. 2012).  "Blanket or categorical claims of privilege" are insufficient; "the law 'requires a showing that the privilege applies to ***each communication*** for which it is asserted,'" and Defendants "must establish the claimed privilege ***with 'reasonably certainty.'"*** *In re Veiga*, 746 F. Supp. 2d 27, 33 (D.D.C. 2010) (quoting *United States v. Legal Servs. for N.Y.C.*, 249 F.3d 1077, 1082 (D.C. Cir. 2001), and *In re CFTC Subpoena*, 439 F.3d at 750-51)); *FTC v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980) ("Where, as here, we have not been provided with sufficient facts to state with reasonable certainty that the privilege applies, [the proponent's] burden is not met.").  Finally, "[b]ecause it inhibits the truth-

---

[46] Clare Decl. ¶ 17 & Ex. P (Email Chain between J. Levy and J. Oliveri (May 13-14, 2021)).

finding process," the attorney-client privilege must be **"'narrowly construed.'"** *In re Veiga*, 746

F. Supp. 2d at 34 (quoting *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981)).

## ARGUMENT

I.    **Defendants Disregarded the Court's Order and Chose Not to Produce a Proper Privilege Log—Despite Having Had *Three* Chances to Do So—And Have Thus Failed to Carry Their Burden of Proving Their Privilege Claims.**

Despite now having had ***three*** opportunities to produce a sufficient privilege log,

Defendants have chosen not to do so.  And Defendants have chosen not to do so ***despite the Court***

***ordering*** them "to submit to plaintiffs an updated privilege log with additional detailed information

sufficient to allow determination of defendants' claims of privilege."[47]  As such, Defendants have

failed to meet their burden of demonstrating that the documents they are withholding are

privileged, and the Court should compel them to produce those documents.  *E.g.*, *Walker v. Ctr.*

*for Food Safety*, 667 F. Supp. 2d 133, 138 (D.D.C. 2009) (compelling production when party had

multiple opportunities to produce a sufficient privilege log but failed to do so); *In re Chevron*

*Corp.*, No. 10-mc-371, 2013 WL 11241413, at *3 (D.D.C. Apr. 22, 2013) (same).

The law governing the information that must be included in a privilege log is well-settled.

A party withholding documents based on claims of attorney-client privilege or work-product must

"describe the nature of the documents, communications, or tangible things not produced or

disclosed—and do so in a manner that, without revealing information itself privileged or protected,

will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).  Thus, a privilege

log must, for each document withheld, "state[] the basis upon which the privilege is claimed,

***the subject matter***, ***number of pages***, author, date created, and the identity of all persons to whom

the original or any copies of the document were shown or provided," *English v. Wash. Metro. Area*

---

[47] Order Granting Pls.' Mot. to Compel re Defs.' Privilege Log (Mar. 30, 2021).

*Transit Auth.*, 323 F.R.D. 1, 9 n.2 (D.D.C. 2017), **and** must provide all "facts necessary to find the attorney-client privilege or work product doctrine protect the sought-after documents," *In re Veiga*, 746 F. Supp. 2d at 40.

"[T]he intendment to the Rule is clear: the opposing party should be able, from the entry in the log itself, to assess whether the claim of privilege is valid." *Chevron Corp. v. Weinberg Grp.*, 286 F.R.D. 95, 98 (D.D.C. 2012). Thus, a privilege log must contain ***"individualized and detailed"*** privilege descriptions for all documents withheld. *United States v. KPMG LLP*, 316 F. Supp. 2d 30, 40 (D.D.C. 2004). Descriptions that simply "recit[e] [] the applicable legal standard" are insufficient. *In re Chevron Corp.*, 2013 WL 11241413, at *3. If a party fails to produce an adequate privilege log despite having multiple opportunities to do so, it fails to carry its burden of proving its privilege claims and must produce the documents it is withholding. *E.g.*, *Walker*, 667 F. Supp. 2d at 138 (collecting cases); *In re Chevron Corp.*, 2013 WL 11241413, at *3.

Here, Defendants have had ***three*** opportunities to produce a proper privilege log—and were even ordered by the Court to amend their second (revised) privilege log and produce a third privilege log with "additional detailed information" to enable Plaintiffs to meaningfully assess their privilege claims—but Defendants chose not to do so. Even a cursory look at Defendants' third privilege log makes that clear. Defendants expressly ignored the Court's admonition to provide "detailed information" to support their privilege claims and just repeated the same hypergeneric privilege descriptions that simply "recit[e] [] the applicable legal standard" for almost every document on their third privilege log:

> "Confidential research [or "communication regarding research"] prepared at the direction of Perkins Coie and in anticipation of litigation, and for the purpose of providing legal advice" or

13

"Confidential communication [or "communication with counsel"] in anticipation of litigation and for the purpose of obtaining legal advice."[48]

A complete list of the documents Defendants are withholding based on these same descriptions is provided in **Appendix A** and **Appendix B** to this Motion.

Plainly, those conclusory descriptions do not provide the "detailed information" (or *any* information) necessary for Plaintiffs (or the Court) to assess Defendants' privilege claims. For example, they do not describe the subject-matter of the communications or research, do not describe what type of research was performed, do not indicate how that research was used to provide legal (as opposed to political, policy, business, or other) advice, do not indicate how the research related to litigation, do not explain what litigation was anticipated or how or why it was anticipated, and so forth. Rather, Defendants just "recit[e] [] the applicable legal standard" for each document withheld. That is plainly insufficient, and it is especially insufficient because (as detailed below) many of the communications documents for which Defendants provide that conclusory description did not involve attorneys and/or were shared with third parties—and are thus facially unprivileged given the nature of Defendants' work.

Importantly, the main case on which Defendants have relied to argue that their privilege log is sufficient, *Feld v. Fireman's Fund Insurance Co.*, 991 F. Supp. 2d 242 (D.D.C. 2013), in fact confirms that Defendants' third privilege log is ***not*** sufficient. Even a cursory comparison of the "[r]epresentative examples" of the "detailed [privilege] descriptions" that the *Feld* court found sufficient to Defendants' third privilege log demonstrates the insufficiency of Defendants' log. *See id.* at 248. Those "representative examples" from *Feld* include:

Email between Fulbright attorneys attaching draft letter to C. Kirk, dated 10/27/09, addressing FFIC questions re: potential conflicts of interest and splitting defense

---

[48] *See, e.g.*, Clare Decl. Ex. M (Defs.' Third Privilege Log) at PRIV0000014-421, PRIV0000432-474.

14

costs, and seeking attorney impressions and conclusions re: same. WP in anticipation of potential litigation with FFIC.

Email from Fulbright attorneys to client attaching for review draft litigation budget requested by FFIC, describing process used to create same and rates FFIC 'willing to pay.' WP in anticipation of potential litigation with FFIC.

Email from Fulbright attorneys to client re: status of Underlying Action, including discovery conference with Magistrate Judge Kay, settlement proposal, depositions, and remaining fact discovery, attaching 1/22/11 letter to Judge Kay and 1/24/11 order re: discovery issues. WP re: Underlying Action.

*Id.* As the *Feld* court explained, those are "specific, individualized descriptions." *Id.* Unlike Defendants' cursory privilege descriptions, the privilege descriptions in *Feld* enabled the parties there to assess the privilege claims: they described the subject-matter of the communications and documents withheld, they described how those documents related to the provision of legal advice and litigation, they described what litigation was anticipated (and against whom), and so forth. In short, the privilege descriptions in *Feld* did everything that Defendants' privilege descriptions do not.

Critically, ***Defendants know*** that they have not provided sufficient information to justify their claims of privilege—they have ***deliberately chosen*** to disregard the Court's Order and refused to provide that information. Indeed, although Defendants' counsel argues that simply providing "Email Subject," "File Name," and "Date Created" information without in any way modifying their privilege descriptions was sufficient to comply with the Court's March 30 and to provide sufficient information for Plaintiffs to assess Defendants' privilege claims, Defendants' counsel stated the exact opposite (under penalty of perjury) in a sworn Declaration:

15



11.      The Privilege Log did not include e-mail subject lines or file names. None of the e-mail subject lines or file names would reasonably assist Plaintiffs in assessing Defendants' privilege invocations. Rather, the subject lines and file names are generally generic and/or vague. For example, a number of subject lines and file names refer only in generic terms to either the Plaintiffs, Alfa, then-candidate Trump, or Russia. And other subject lines and file names contain no substantive information as to the subject of the underlying communication (e.g., "fyi" or "here").

And Defendants' counsel's Declaration was absolute correct: the generic file name and subject line information that Defendants provided—the only substantive addition to their third privilege log—did ***not*** "assist Plaintiffs in assessing Defendants' privilege invocations." *See In re Apollo Grp., Inc. Sec. Litig.*, 251 F.R.D. 12, 31 (D.D.C. 2008) ("[T]he generic titles in the subject line of an email often do not convey information concerning the specific matter being discussed."), *aff'd*, 329 F. App'x 283 (D.C. Cir. 2009).

Defendants (and their counsel) are playing games with Plaintiffs and the Court, plain and simple. Defendants have ***deliberately*** chosen not to comply with the Court's March 30 Order and ***deliberately*** chosen not to provide a sufficient privilege log. As such, they have failed to meet their "burden of demonstrating facts sufficient to establish [any] privilege's applicability." *In re CFTC Subpoena*, 439 F.3d at 750. And because Defendants have failed to meet that burden despite having had numerous opportunities to do so—and having been ordered by the Court to do so—the proper remedy is an order compelling Defendants to produce the documents they are withholding. *Walker*, 667 F. Supp. 2d at 138 (collecting cases); *In re Chevron Corp.*, 2013 WL 11241413, at *3.[49]

---

[49] In the alternative, the Court should order Defendants to produce those documents to the Court for *in camera* inspection to confirm that they are not privileged and then order their production.

II.     **Substantial Evidence Confirms That the Documents Defendants Are Withholding as Privileged Are _Not_ Attorney-Client Privileged or Work Product.**

Notably, not only have Defendants failed to meet their "burden of demonstrating facts sufficient to establish [any] privilege's applicability" to the documents they are withholding, *In re CFTC Subpoena*, 439 F.3d at 750, but all available evidence affirmatively demonstrates that those documents are ***not*** attorney-client privileged or work-product protected—for multiple reasons.

A.     **Substantial Evidence Makes Clear That the Attorney-Client Privilege Is Inapplicable to the Documents Defendants' Are Withholding as Privileged.**

Although Defendants claim attorney-client privilege over all but five of the documents on their third privilege log, all available evidence makes clear that those documents are not privileged—for multiple reasons.

**Defendants' Work Relating to CIR 112 and the Dossier Was Political, Not Legal Work.**  Defendants cite the fact that they performed work for Perkins Coie as the sole basis to justify their privilege claims over the overwhelming majority of the documents they are withholding.  (*See* **Appendix A** for a list of all such documents.)  But the work that Defendants may have performed for Perkins Coie cannot, as a matter of law, justify Defendants' privilege claims.

It is axiomatic that all communications exchanged with attorneys are not privileged; rather only "confidential communications" between attorneys and their clients "made for the purpose of securing [or providing] ***legal*** advice or services" are privileged, *Tax Analysts v. I.R.S.*, 117 F.3d 607, 618 (D.C. Cir. 1997), as are some such communications involving an attorney's agent as long as they are "made for 'the purpose of obtaining ***legal*** advice from the lawyer,'" *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resol. Tr. Corp.*, 5 F.3d 1508, 1515 (D.C. Cir. 1993) (quoting *FTC v. TRW, Inc.*, 628 F.2d 207, 212 (D.C. Cir. 1980)).  An attorney's "advice on political, strategic, or policy issues, valuable as it may be," is "***not*** [] shielded from disclosure by

the attorney-client privilege." *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998); *accord Jud.*

*Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 144-45 (D.D.C. 2013); *Citizens*

*for Resp. & Ethics in Wash. v. Gen. Servs. Admin.*, No. 18-cv-2071, 2021 WL 1177797, at *7

(D.D.C. Mar. 29, 2021) (same).

   Here, Defendants' own numerous admissions make clear that the work they performed for

Perkins Coie was ***not*** work aiding the provision of legal advice or legal services, but instead was

unprivileged political opposition research work.  Among other things, Defendants have admitted

that:

- Defendants were never clients of Perkins Coie;[50]

- Defendants approached Perkins Coie (which represented the DNC and HFACC) because
  they (Defendants) were performing "political" "opposition research" on Donald Trump and
  they "believed that demand for information on Trump would soon shift to the
  Democrats";[51]

- Perkins Coie hired Defendants in a "political context" to perform "political work,"
  specifically "deep research on Trump." [52]

- Defendants themselves (***not*** Perkins Coie) "were the architects of the[ir] research and we
  [Defendants] made most of the decisions about what to look for and where to look."[53]

- The Dossier (including CIR 112) is (in Defendants' own words) "perhaps the most famous
  work of opposition research in American politics."[54]

Consistent with these admissions, this Court has previously recognized that the work Defendants

performed for Perkins Coie during the 2016 Presidential election campaign was "opposition

research" that was "political in nature."  *Bean LLC v. John Doe Bank*, 291 F. Supp. 3d 34, 46

---

[50] Clare Decl. Ex. B (*Crime in Progress*) at 79.

[51] *Id.* at 54-57.

[52] *See, e.g.*, *id.* at 54-57, 59, 70; *see also supra* Relevant Background Part A.

[53] Clare Decl. Ex. C at 22 (Interview of Glenn Simpson by the House Permanent Select Committee
on Intelligence).

[54] Clare Decl. Ex. B (*Crime in Progress*) at 57, 269.

(D.D.C. 2018) (Leon, J.).  In sum, because Defendants' work for Perkins Coie was political, not legal, it is not protected by the attorney-client privilege.

This conclusion is not changed by Defendants' trial counsel's self-serving declaration in support of Defendants' prior privilege log.  Although Defendants' counsel's made-for-litigation declaration attempts to overcome Defendants' outside-of-litigation (and, thus, not-made-for-litigation) admissions, it cannot.  As an initial matter, much of the substance of Defendants' counsel's declaration—which attempts to state what "Perkins [Coie] anticipated," what Perkins Coie believed, and why Perkins Coie did certain things—is inadmissible hearsay (and clearly beyond the actual knowledge of the declarant).  *See* Fed. R. Evid. 801-802.[55]  Moreover, the declaration makes nothing more than conclusory claims that are not, as a matter of law, competent evidence.  *See, e.g.*, *Smith v. Janey*, 664 F. Supp. 2d 1, 12 (D.D.C. 2009) ("conclusory statements" in affidavit are not "competent evidence"), *aff'd sub nom. Smith v. Rhee*, No. 09-7100, 2010 WL 1633177 (D.C. Cir. Apr. 6, 2010); *Singh v. Dist. of Columbia*, 55 F. Supp. 3d 55, 69 (D.D.C. 2014) (rejecting "conclusory affirmations").  Furthermore, the declaration's general assertions about what "research firms *such as* Fusion" do or what "[l]awyers *often* require" do not even address the specifics of Defendants' work for Perkins Coie.[56]  And, of course, Defendants have admitted that they themselves (***not*** Perkins Coie) "were the architects of the[ir] research and we [Defendants]

---

[55] *See also, e.g.*, *United States v. Kupau*, 781 F.2d 740, 745 (9th Cir. 1986) ("Since [one person's] opinion of [another person's] state of mind would have constituted speculation, the judge did not plainly err in excluding it."); *Combs v. Cordish Cos.*, No. 14-cv-227, 2018 WL 1464033, at *12 (W.D. Mo. Mar. 23, 2018) (excluding affidavit purporting to attest to "[b]eliefs, perceptions, and feelings about another person's state of mind").
[56] J. Levy Decl. ¶ 5 (Ex. A to the Clare Decl.).

made most of the decisions about what to look for and where to look" and went "where the story led [them]."[57]

Nor can Defendants avoid the conclusion that their work for Perkins Coie is not privileged by citing the Second Circuit's 60-year-old decision in *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961), on which Defendants have previously heavily relied.  As the D.C. Circuit has explained, *Kovel* simply recognized that when an attorney utilizes the services of a third party (there, an accountant) to assist the attorney in his provision of legal advice and legal services by putting "information obtained from the client" into "usable [documentary] form" for the attorney, those documents fall within the scope of the attorney-client privilege.  *TRW, Inc.*, 628 F.2d at 212 (discussing *Kovel* and explaining that "[t]he [*Kovel*] court analogized the role of the accountant to that of a translator who puts the client's information into terms that the attorney can use effectively" to provide legal advice).  But "[b]eyond this limited role, the privilege would not extend." *Id.* (citing *Kovel*, 296 F.2d at 922).  As the *Kovel* court (and the D.C. Circuit) emphasized, "'[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining ***legal*** advice from the lawyer.  If what is sought is not legal advice but only accounting service'"—or, here, political advice or work—"'no privilege exists.'" *Id.* (quoting *Kovel*, 296 F.2d at 922).  As detailed above, Defendants have repeatedly admitted that they were hired by Perkins Coie in a "political context" to perform "political work" (specifically "deep research on Trump"), and in fact generated "perhaps the most famous work of opposition research in American politics."[58]

---

[57] Clare Decl. Ex. C at 22 (Interview of Glenn Simpson by the House Permanent Select Committee on Intelligence); Clare Decl. Ex. B (*Crime in Progress*) at 59.
[58] Clare Decl. Ex. B (*Crime in Progress*) at 54-57, 59, 70, 269.

**Documents and Communications Not Involving Any Attorneys.**  In addition, nearly 450 of the almost 500 documents Defendants are withholding as privileged do not involve (and were not shared with) attorneys—and most of these communications are entirely internal to Defendant Fusion.  (*See* **Appendix C** for a list of all such documents.)  Of course, the attorney-client privilege only protects communications between attorney and client made to receive or provide legal advice, *Tax Analysts*, 117 F.3d at 618—and Defendants have not provided any facts to prove (or even remotely suggest) that these documents contained or conveyed attorney legal advice.  As such, these documents are facially unprivileged.[59]

**Documents and Communications Exchanged with Third Parties.**  Defendants have also withheld as privileged over 170 documents that they exchanged with third parties.  (*See* **Appendix D** for a list of all such documents.)  Again, the attorney-client privilege only protects "confidential communications" between attorneys and their clients (made to obtain or provide legal advice), *id.*—and Defendants have not provided any facts to prove (or even remotely suggest) that any applicable attorney-client privilege was not lost when these documents were shared with third parties.  As such these documents are also facially unprivileged.[60]

**Documents Pre-Dating Defendants' Hiring by Perkins Coie.**  Even if the fact that Defendants performed their political work for Perkins Coie could support their privilege claims (as described above, it cannot), Defendants are withholding numerous documents that they claim were "prepared at the direction of Perkins Coie" that date prior to the date on which Defendants were hired by Perkins Coie attorney Marc Elias perform work for Perkins Coie.  (*See* **Appendix E**

---

[59] As explained above, Defendants also have not demonstrated that they were working as an agent of an attorney to assist in the provision of legal advice.

[60] Again, Defendants also have not demonstrated that they were working as an agent of an attorney to assist in the provision of legal advice.

for a list of all such documents.)  Defendants have admitted that (1) they met with Mr. Elias to discuss performing work for Perkins Coie on **April _20_**, 2016, (2) "formalizing the engagement with Perkins Coie ... would take weeks," and (3) their April 20, 2016 "meeting with Marc Elias [] occurred **before** [Defendants] were hired" by Perkins Coie.[61]  But  Defendants are withholding 12 documents dated **April _19_**, 2016 as "prepared at the direction of Perkins Coie" (and more documents from the following weeks).  Plainly that is not possible and Defendants' privilege claim is untrue.[62]

**The File Names on Defendants' Privilege Log Strongly Suggest That Many Documents Are Not Privileged.**  Finally, the limited information that Defendants have included in their third privilege log strongly suggest that many of the documents they are withholding are not privileged.  Examples include:

- Defendants are withholding documents with file names that make clear that they are ordinary—unprivileged—Fusion work, such as "FusionGPS Weekly Report [number] [date]," "Weekly Writeup for FusionGPS [date]," "Chronology for FusionGPS updated [date]," "Report for Fusion GPS," and "FusionGPSWhosWho [date]."[63]

---

[61] Clare Decl. Ex. B (*Crime in Progress*) at 54-57, 59, 284.

[62] Defendants' outside-of-litigation admissions in their "tell-all" book belie their assertion in response to Plaintiffs' previous motion to compel that Perkins Coie hired them on April 11, 2016. To the extent an "April 11, 2016" engagement letter with Perkins Coie exists, it appears in light of Defendants' admissions to have been backdated.  And, in any event, Defendants cannot rely on such a withheld document.  *See, e.g.*, *Koch v. Cox*, 489 F.3d 384, 390 (D.C. Cir. 2007) (parties may not "employ privileges both as a sword and as a shield").  Indeed, Defendants' withholding of that agreement itself highlights Defendants' improper privilege claims because "[i]t is established that ... retainer agreements usually are not privileged." *United States v. Naegele*, 468 F. Supp. 2d 165, 171 (D.D.C. 2007).

[63] *See* Clare Decl. Ex. M (Defs.' Third Privilege Log) at PRIV0000021, PRIV0000022, PRIV0000030, PRIV0000045, PRIV0000055, PRIV0000057, PRIV0000059, PRIV0000060, PRIV0000063, PRIV0000064, PRIV0000079, PRIV0000081, PRIV0000083, PRIV0000085, PRIV0000086, PRIV0000088, PRIV0000138.  Transmittal emails for these documents are identified as: PRIV0000020, PRIV0000054, PRIV0000056, PRIV0000058, PRIV0000062, PRIV0000078, PRIV0000080, PRIV0000082, PRIV0000084, PRIV0000087, PRIV0000137.

- Defendants are withholding numerous ***non*-attorney** invoices (and related communications),[64] but even attorney-invoices are routinely produced in litigation, with any actually-privileged material in them redacted.  *See, e.g.*, *Fudali v. Pivotal Corp.*, No. 03-cv-1460, 2010 WL 4910263, at *2 (D.D.C. Dec. 2, 2010); *see also United States v. Naegele*, 468 F. Supp. 2d 165, 171 (D.D.C. 2007) ("It is established that billing statements ... usually are not privileged.").  And Defendants know that, as confirmed by the fact that they have produced some invoices to Plaintiffs even as they withhold others.

- Defendants are withholding documents with file names that make clear the political (*i.e.*, non-legal) nature of the work to which they relate, such as "Trump Russia Memo [date]," "Trump Russia master," and "Trump-ChristieNJ [date]."[65]

### B.   Substantial Evidence Makes Clear That the Work-Product Doctrine Is Inapplicable to the Documents Defendants' Are Withholding.

Defendants claim work-product protection over every document on their third privilege log, but all available evidence makes clear that those documents are not protected work-product—for multiple reasons.

**Work Relating to CIR 112 and the Dossier Was Political Work, Not Work Prepared in Anticipation of Litigation.**  Defendants similarly cite the fact that they performed work for Perkins Coie as the sole basis to justify their work-product claims over the overwhelming majority of the documents they are withholding.  (*See* **Appendix A** for a list of all such documents.)  But as explained above, the work that Defendants performed relating to CIR 112 and the Dossier was political opposition research, not work for providing legal advice.  And for the same reason, it was not work prepared in anticipation of litigation.

---

[64] *See id.* at PRIV0000069, PRIV0000071, PRIV0000075, PRIV0000106, PRIV0000158, PRIV0000160, PRIV0000164, PRIV0000297, PRIV0000299.  Transmittal emails and communications relating to these documents are identified as: PRIV0000067, PRIV0000070, PRIV0000074, PRIV0000077, PRIV0000103, PRIV0000108, PRIV0000109, PRIV0000156, PRIV0000159, PRIV0000163, PRIV0000295, PRIV0000300.

[65] *See id.* at PRIV0000029, PRIV0000031, PRIV0000033, PRIV0000035, PRIV0000038, PRIV0000040, PRIV0000042, PRIV0000044.  Transmittal emails for documents are identified as: PRIV0000028, PRIV0000032, PRIV0000037, PRIV0000039, PRIV0000041.

It is axiomatic that the work-product doctrine only protects certain materials "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3); *Elkins v. Dist. of Columbia*, 250 F.R.D. 20, 26 (D.D.C. 2008) (citing *EEOC v. Lutheran Social Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999)). To determine whether a document was "prepared in anticipation of litigation," the D.C. Circuit applies "the 'because of' test, asking 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010) (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)). If the same or essentially similar documents would have been created whether or not litigation was foreseen, "it cannot fairly be said that they were created because of actual or impending litigation." *Willingham v. Ashcroft*, 228 F.R.D. 1, 4 (D.D.C. 2005) (brackets omitted).

Here, with the exception of five documents, Defendants (despite having had three chances) have not identified *any* litigation for which the documents they are withholding were supposedly prepared, and Defendants have certainly not explained how the documents they are withholding were prepared in anticipation of that unidentified litigation.[66] At most, Defendants' counsel's made-for-litigation declaration in support of Defendants' previous privilege log claimed that Defendants' research helped Perkins Coie evaluate "potential litigation risks relating to information distributed in connection with the 2016 election cycle"[67]—but even if that assertion is

---

[66] The limited exception is five documents that Defendants claim were prepared in anticipation of litigation in *United States v. Prevezon*—but Defendants still fail to properly identify how or why work product protection applies to those documents. Defendants offer only generic and boilerplate privilege descriptions that parrot the legal elements of the work-product doctrine. (*See* Clare Decl. Ex. M (Defs.' Third Privilege Log) at PRIV000001, PRIV000002, PRIV000004, PRIV000012, and PRIV000013).

[67] Levy Decl. ¶ 6 (Ex. A to the Clare Decl.). As purported support, Defendants' counsel generically stated that "[f]or example" "attorneys" (without specification) "in this space often rely on research findings from sub-vendors when performing legal review of public communications to confirm

*(cont'd)*

accepted at face value (despite all contrary evidence), that is nothing more than the "[g]eneralized steps to avoid non-specific litigation [that] are not accorded work product protection." *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 547, 553 (S.D.N.Y. 2013) (collecting cases, and further explaining that "[w]hile legal risks may ripen into litigation, not all risk management qualifies as anticipation of litigation"); *In re Grand Jury Proceedings*, No. 11-mc-189, 2001 WL 1167497, at *15 (S.D.N.Y. Oct. 3, 2001) ("[A] generalized desire to avoid litigation is insufficient to meet the 'in anticipation of litigation' requirement."); *Prowess, Inc. v. Raysearch Labs. AB*, No. 11-cv-1357, 2013 WL 509021, at *7 (D. Md. Feb. 11, 2013) (similar; "it is not enough that the mere possibility of litigation exists." (alterations omitted)).

In addition, the limited information that Defendants included in their third privilege log strongly suggests that many documents being withheld are not privileged.  For example (and as detailed above), Defendants are withholding documents with file names such as "Chronology for FusionGPS updated [various dates]," "Weekly Writeup for Fusion GPS [date]," "FusionGPS Weekly Report [number] [date]," "Trump Russia Memo [date]," "Trump Russia master [date]," "Trump ChristieNJ [date]," and so forth[68] that suggest they are typical Fusion work, ***not*** work prepared in anticipation of litigation.

### **Defendants Have Admitted to Destroying Documents—Which Undermines Their "Anticipation of Litigation" Claims.**  Defendants' verified Interrogatory Responses further belie their broad claims of work-product protection.  In response to Plaintiffs' Interrogatories, Defendants stated that "[a]t the end of each engagement, Defendants return or destroy the work product as directed by the[ir] client," and have stated that documents related to CIR 112 were

---

that there is an adequate factual basis for any claims or allegations, so their client does not run the risk of civil litigation."  Levy Decl. ¶ 5.

[68] *See supra* notes 63 & 65.

either "returned to the[ir] client or destroyed."[69]   But under black-letter law, a "duty to preserve [evidence] arises when litigation is reasonably foreseeable," and the destruction (or return) of "relevant records" when "litigation was reasonably foreseeable" is grounds for the imposition of sanctions for spoliation.  *E.g.*, *Kurtiev v. Shell*, No. 15-cv-1839, 2020 WL 2838523, at *15 (D.D.C. June 1, 2020) (citing *Gerlich v. Dep't of Justice*, 711 F.3d 161, 265 (D.C. Cir. 2012)).  Plainly, Defendants cannot have it both ways.  If Defendants actually anticipated litigation, then they admittedly spoliated evidence and Plaintiffs are entitled to substantial sanctions (including adverse inferences) after discovery reveals the full extent of that spoliation.  Or Defendants did not anticipate litigation and their work-product claims are meritless.

**Documents and Communications Not Involving Any Attorneys.**   In addition, nearly 450 of the almost 500 documents Defendants are withholding as work-product do not involve (and were not shared with) attorneys—and most of these communications are entirely internal to Defendant Fusion.  (*See* **Appendix C** for a list of all such documents.)  These documents are facially not work-product, much less attorney-work product—and Defendants have not demonstrated any facts to indicate otherwise.

**Documents Pre-Dating Defendants' Hiring by Perkins Coie.**   As with Defendants' privilege claims, even if the fact that Defendants performed their political work for Perkins Coie could support their work-product claims (it cannot), Defendants (as described above) cannot properly or truthfully withhold documents created on April **_19_**, 2016 as work product "prepared at the direction of Perkins Coie" when Defendants had not yet been hired by Perkins Coie as of their

---

[69] Clare Decl. ¶¶ 18-19, Ex. Q (Defs.' Revised Resps. to Pls.' IROGs, at Resp. No. 21 (May 18, 2020)), Ex. R (Defs.' Revised Resps. to Pls.' IROGs 9 & 23, at Resp. No. 23 (Aug. 7, 2020)).

April **20**, 2016 meeting with Perkins Coie attorney Marc Elias (and "formalizing the engagement with Perkins Coie" took "weeks").[70]  (*See* **Appendix E** for a list of all such documents.)

### III. Even If Defendants Satisfied Their Burden of Establishing That a Privilege Applied, Defendants Waived That Privilege.

Finally, even if Defendants had met their burden of proving that the documents they are withholding are privileged or protected work-product (they have not), the record evidence demonstrates that Defendants have waived that privilege/protection.

"In the attorney-client context," the D.C. Circuit "adheres to a strict rule on waiver of privileges. 'The confidentiality of communications covered by a privilege must be jealously guarded by the holder of the privilege lest it be waived.'"  *S.E.C. v. Lavin*, 111 F.3d 921, 929 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989)).  "If the [privilege] holder wishes to preserve its privilege, 'it must treat the confidentiality ... like jewels— if not crown jewels'[;] [i]n other words, the holder must zealously protect the privileged materials, taking all reasonable steps to prevent their disclosure."  *Id.* (quoting *In re Sealed Case*, 877 F.2d at 980).  If otherwise privileged materials are disclosed to a third party, "the privilege is lost[,] even if the disclosure is inadvertent."  *In re Sealed Case*, 877 F.2d at 980.  Work-product protection is similarly waived where a disclosure of otherwise protected materials is "inconsistent with the maintenance of secrecy from the disclosing party's adversary."  *United States v. All Assets Held at Bank Julius Baer & Co.*, 315 F.R.D. 103, 109 (D.D.C. 2016).  Notably, where a person waives the attorney-client privilege or work-product protection by disclosing protected documents to third parties, the waiver extends to "all other documents involving the same subject matter as well."  *Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 73 (D.D.C. 2017) (privilege waiver); *Elkins*, 250 F.R.D. at 24 (work-product waiver).

---

[70] Clare Decl. at Ex. B (*Crime in Progress*) at 54-57, 59, 284.

Here, both before and after publication of CIR 112 (and the rest of the Steele Dossier), Defendants engaged in a media blitz, repeatedly disclosing their research—and other information related to CIR 112 and the Dossier—to numerous third parties, including to the media and government officials.[71]  Indeed, Defendant Simpson repeatedly briefed journalists (including from *The New York Times*, *ABC*, and *The Washington Post*) on Defendants' research and the contents of the Steele Dossier.[72]  Even more, Defendant Simpson has published the New York Times #1 best-selling tell-all book *Crime in Progress: Inside the Steele Dossier and the Fusion GPS Investigation of Donald Trump* in which he described in great detail Defendants' research and communications regarding CIR 112 and the Dossier as a whole.[73]  Consistent with the book's title, Defendant Simpson has billed the book as "tell[ing] the true story [*i.e.*, Defendants' side of the story] of [their] investigations into Trump and [their] work with Christopher Steele."[74]

Quite simply, there may never have been a better case for waiver of the attorney-client privilege and work-product protection than there is here.  And Defendants cannot avoid that conclusion by asserting (as they did in their opposition to Plaintiffs' previous motion to compel) that any privilege belonged to the DNC or HFACC and "Defendants could not have waived

---

[71] *See, e.g.*, Clare Decl. at Ex. B (*Crime in Progress*) at 109-10 (describing Defendants' "one-hour sessions" briefing numerous journalists, including "Jane Mayer of *The New Yorker*, Michael Isikoff of *Yahoo News*, Matthew Mosk of ABC News, and Eric Lichtblau and David Sanger of *The Times*," as well as "Tom Hamburger and Dana Priest" of *The Washington Post*); *id.* at 113 (explaining that Defendant Bean/Fusion principal Peter Fritsch "went to [State Department official Jonathan] Winer's house with a copy of all the reports Steele had produced to date" and "allowed Winer to read them and take notes, for the express purpose of making [Secretary of State] Kerry aware of the substance of Steele's reporting"); *id.* at 118 ("That weekend, [Mother Jones reporter David] Corn and Simpson met ... Simpson described the contents of the dossier and then ... let him review a copy."); *id.* at 127-31 (describing Defendants' disclosure of the Dossier to David Kramer); *id.* at 139-41 (describing Defendants' disclosure of the Dossier to *New York Times* reporter Eric Lichtblau).

[72] *See, e.g.*, *id.*

[73] *See generally id.*

[74] *Id.* at Preface.

privileges that they themselves did not own."[75]   To begin, as explained above, Defendants have failed to demonstrate that they performed legal (not political) for Perkins Coie.  But even if they had, the law is clear that even when "disclosure [of privileged material] occurs" because a third party (*i.e.*, not the privilege-holder) discloses that material—even where, unlike here, the disclosure results from "the inadvertence of a third party"—"waiver occurs unless the privilege-holder promptly takes 'reasonable steps to reclaim the protected material.'"  *The Navajo Nation v. Peabody Holding Co.*, 255 F.R.D. 37, 45 (D.D.C. 2009) (quoting *Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 253 (D.D.C. 2004)).  Here, it has been years since Defendants published their tell-all *Crime in Progress* book, disclosed purportedly-privileged materials, and waived any privilege relating to their work on CIR 112 and the Dossier—and the DNC and HFACC (and Perkins Coie) have taken no steps whatsoever "to reclaim the protected material."  *See id.*[76]  Thus, even if Defendants' argument is fully accepted, Defendants *still* waived any privilege/protection.

In sum, Defendants have repeatedly publicly disclosed information about the very subject-matter that they now claim is privileged.  As such, even if the documents that Defendants are withholding were privileged (they were not), Defendants have waived that privilege and must produce those documents to Plaintiffs.  *See, e.g.*, *Banneker Ventures*, 253 F. Supp. 3d at 73; *Elkins*, 250 F.R.D. at 24.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order Defendants to produce their withheld documents or, in the alternative, order Defendants to produce those

---

[75] *See* Defs.' Opp'n to Pls.' [Previous] Mot. to Compel re Defs.' Privilege Log at 20 (Sept. 11, 2020) [Dkt. 104].

[76] Indeed, the DNC and HFACC plainly wanted (for their political purposes) Defendants to disclose the Dossier and related research.

documents to the Court for *in camera* inspection to confirm that they are not privileged and then order their production.

Dated:  May 21, 2021

Respectfully submitted,

  /s/ Thomas A. Clare, P.C.
Thomas A. Clare, P.C. (DC Bar No. 461964)
Elizabeth M. Locke, P.C. (DC Bar No. 976552)
Joseph R. Oliveri (DC Bar No. 994029)
Andrew C. Phillips (DC Bar No. 998353)
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Tel: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com
joe@clarelocke.com
andy@clarelocke.com

*Counsel for Plaintiffs Mikhail Fridman,*
*Petr Aven, and German Khan*

# APPENDIX A

**Defendants' Withheld Documents with the Following Hypergeneric Description:**

"Confidential research [or "communication regarding research"] prepared at the direction of Perkins Coie [or "counsel"] and in anticipation of litigation, and for the purpose of providing legal advice"

| | | | |
|---|---|---|---|
| PRIV000006 | PRIV000049 | PRIV000092 | PRIV000131 |
| PRIV000007 | PRIV000054 | PRIV000093 | PRIV000132 |
| PRIV000008 | PRIV000055 | PRIV000094 | PRIV000133 |
| PRIV000009 | PRIV000056 | PRIV000095 | PRIV000134 |
| PRIV000010 | PRIV000057 | PRIV000096 | PRIV000135 |
| PRIV000011 | PRIV000058 | PRIV000097 | PRIV000136 |
| PRIV000014 | PRIV000059 | PRIV000098 | PRIV000137 |
| PRIV000015 | PRIV000060 | PRIV000099 | PRIV000138 |
| PRIV000016 | PRIV000061 | PRIV000100 | PRIV000139 |
| PRIV000018 | PRIV000062 | PRIV000101 | PRIV000140 |
| PRIV000019 | PRIV000063 | PRIV000102 | PRIV000141 |
| PRIV000020 | PRIV000064 | PRIV000103 | PRIV000142 |
| PRIV000021 | PRIV000065 | PRIV000104 | PRIV000143 |
| PRIV000022 | PRIV000066 | PRIV000106 | PRIV000144 |
| PRIV000023 | PRIV000067 | PRIV000108 | PRIV000145 |
| PRIV000024 | PRIV000068 | PRIV000109 | PRIV000146 |
| PRIV000025 | PRIV000069 | PRIV000110 | PRIV000147 |
| PRIV000026 | PRIV000070 | PRIV000111 | PRIV000148 |
| PRIV000027 | PRIV000071 | PRIV000112 | PRIV000149 |
| PRIV000028 | PRIV000074 | PRIV000113 | PRIV000150 |
| PRIV000029 | PRIV000075 | PRIV000114 | PRIV000151 |
| PRIV000030 | PRIV000076 | PRIV000115 | PRIV000152 |
| PRIV000031 | PRIV000077 | PRIV000116 | PRIV000153 |
| PRIV000032 | PRIV000078 | PRIV000117 | PRIV000154 |
| PRIV000033 | PRIV000079 | PRIV000118 | PRIV000155 |
| PRIV000035 | PRIV000080 | PRIV000119 | PRIV000156 |
| PRIV000037 | PRIV000081 | PRIV000120 | PRIV000157 |
| PRIV000038 | PRIV000082 | PRIV000121 | PRIV000158 |
| PRIV000039 | PRIV000083 | PRIV000122 | PRIV000159 |
| PRIV000040 | PRIV000084 | PRIV000123 | PRIV000160 |
| PRIV000041 | PRIV000085 | PRIV000124 | PRIV000161 |
| PRIV000042 | PRIV000086 | PRIV000125 | PRIV000162 |
| PRIV000044 | PRIV000087 | PRIV000126 | PRIV000163 |
| PRIV000045 | PRIV000088 | PRIV000127 | PRIV000164 |
| PRIV000046 | PRIV000089 | PRIV000128 | PRIV000165 |
| PRIV000047 | PRIV000090 | PRIV000129 | PRIV000166 |
| PRIV000048 | PRIV000091 | PRIV000130 | PRIV000167 |

| | | | |
|---|---|---|---|
| PRIV000168 | PRIV000211 | PRIV000254 | PRIV000299 |
| PRIV000169 | PRIV000212 | PRIV000255 | PRIV000300 |
| PRIV000170 | PRIV000213 | PRIV000256 | PRIV000301 |
| PRIV000171 | PRIV000214 | PRIV000257 | PRIV000302 |
| PRIV000172 | PRIV000215 | PRIV000258 | PRIV000303 |
| PRIV000173 | PRIV000216 | PRIV000259 | PRIV000304 |
| PRIV000174 | PRIV000217 | PRIV000260 | PRIV000305 |
| PRIV000175 | PRIV000218 | PRIV000261 | PRIV000306 |
| PRIV000176 | PRIV000219 | PRIV000262 | PRIV000307 |
| PRIV000177 | PRIV000220 | PRIV000263 | PRIV000308 |
| PRIV000178 | PRIV000221 | PRIV000264 | PRIV000309 |
| PRIV000179 | PRIV000222 | PRIV000265 | PRIV000310 |
| PRIV000180 | PRIV000223 | PRIV000266 | PRIV000311 |
| PRIV000181 | PRIV000224 | PRIV000267 | PRIV000312 |
| PRIV000182 | PRIV000225 | PRIV000268 | PRIV000313 |
| PRIV000183 | PRIV000226 | PRIV000269 | PRIV000314 |
| PRIV000184 | PRIV000227 | PRIV000270 | PRIV000315 |
| PRIV000185 | PRIV000228 | PRIV000271 | PRIV000316 |
| PRIV000186 | PRIV000229 | PRIV000273 | PRIV000317 |
| PRIV000187 | PRIV000230 | PRIV000274 | PRIV000318 |
| PRIV000188 | PRIV000231 | PRIV000275 | PRIV000319 |
| PRIV000189 | PRIV000232 | PRIV000276 | PRIV000320 |
| PRIV000190 | PRIV000233 | PRIV000277 | PRIV000321 |
| PRIV000191 | PRIV000234 | PRIV000278 | PRIV000322 |
| PRIV000192 | PRIV000235 | PRIV000279 | PRIV000323 |
| PRIV000193 | PRIV000236 | PRIV000280 | PRIV000324 |
| PRIV000194 | PRIV000237 | PRIV000281 | PRIV000325 |
| PRIV000195 | PRIV000238 | PRIV000283 | PRIV000326 |
| PRIV000196 | PRIV000239 | PRIV000284 | PRIV000327 |
| PRIV000197 | PRIV000240 | PRIV000285 | PRIV000328 |
| PRIV000198 | PRIV000241 | PRIV000286 | PRIV000329 |
| PRIV000199 | PRIV000242 | PRIV000287 | PRIV000330 |
| PRIV000200 | PRIV000243 | PRIV000288 | PRIV000331 |
| PRIV000201 | PRIV000244 | PRIV000289 | PRIV000332 |
| PRIV000202 | PRIV000245 | PRIV000290 | PRIV000333 |
| PRIV000203 | PRIV000246 | PRIV000291 | PRIV000334 |
| PRIV000204 | PRIV000247 | PRIV000292 | PRIV000335 |
| PRIV000205 | PRIV000248 | PRIV000293 | PRIV000336 |
| PRIV000206 | PRIV000249 | PRIV000294 | PRIV000337 |
| PRIV000207 | PRIV000250 | PRIV000295 | PRIV000338 |
| PRIV000208 | PRIV000251 | PRIV000296 | PRIV000339 |
| PRIV000209 | PRIV000252 | PRIV000297 | PRIV000340 |
| PRIV000210 | PRIV000253 | PRIV000298 | PRIV000341 |

| | | | |
|---|---|---|---|
| PRIV000342 | PRIV000362 | PRIV000382 | PRIV000403 |
| PRIV000343 | PRIV000363 | PRIV000383 | PRIV000404 |
| PRIV000344 | PRIV000364 | PRIV000384 | PRIV000405 |
| PRIV000345 | PRIV000365 | PRIV000385 | PRIV000406 |
| PRIV000346 | PRIV000366 | PRIV000386 | PRIV000407 |
| PRIV000347 | PRIV000367 | PRIV000387 | PRIV000408 |
| PRIV000348 | PRIV000368 | PRIV000388 | PRIV000409 |
| PRIV000349 | PRIV000369 | PRIV000390 | PRIV000410 |
| PRIV000350 | PRIV000370 | PRIV000391 | PRIV000411 |
| PRIV000351 | PRIV000371 | PRIV000392 | PRIV000412 |
| PRIV000352 | PRIV000372 | PRIV000393 | PRIV000413 |
| PRIV000353 | PRIV000373 | PRIV000394 | PRIV000414 |
| PRIV000354 | PRIV000374 | PRIV000395 | PRIV000415 |
| PRIV000355 | PRIV000375 | PRIV000396 | PRIV000416 |
| PRIV000356 | PRIV000376 | PRIV000397 | PRIV000417 |
| PRIV000357 | PRIV000377 | PRIV000398 | PRIV000418 |
| PRIV000358 | PRIV000378 | PRIV000399 | PRIV000419 |
| PRIV000359 | PRIV000379 | PRIV000400 | PRIV000420 |
| PRIV000360 | PRIV000380 | PRIV000401 | PRIV000421 |
| PRIV000361 | PRIV000381 | PRIV000402 | PRIV000497 |

# APPENDIX B

### Defendants' Withheld Documents with the Following Hypergeneric Description:

"Confidential communication [or "communication with counsel"] in anticipation of litigation and for the purpose of obtaining legal advice."

| | | | |
|---|---|---|---|
| PRIV000430 | PRIV000448 | PRIV000464 | PRIV000479 |
| PRIV000431 | PRIV000449 | PRIV000465 | PRIV000480 |
| PRIV000432 | PRIV000451 | PRIV000466 | PRIV000481 |
| PRIV000433 | PRIV000453 | PRIV000467 | PRIV000483 |
| PRIV000434 | PRIV000454 | PRIV000468 | PRIV000484 |
| PRIV000435 | PRIV000455 | PRIV000469 | PRIV000486 |
| PRIV000436 | PRIV000456 | PRIV000470 | PRIV000487 |
| PRIV000437 | PRIV000457 | PRIV000471 | PRIV000492 |
| PRIV000438 | PRIV000458 | PRIV000472 | PRIV000493 |
| PRIV000439 | PRIV000459 | PRIV000474 | PRIV000494 |
| PRIV000441 | PRIV000460 | PRIV000475 | PRIV000496 |
| PRIV000443 | PRIV000461 | PRIV000476 | |
| PRIV000444 | PRIV000462 | PRIV000477 | |
| PRIV000446 | PRIV000463 | PRIV000478 | |

# APPENDIX C

## Defendants' Withheld Documents/Communications That Do Not Include Any Attorneys

| | | | |
|---|---|---|---|
| PRIV000001 | PRIV000044 | PRIV000089 | PRIV000130 |
| PRIV000002 | PRIV000045 | PRIV000090 | PRIV000131 |
| PRIV000003† | PRIV000046 | PRIV000091 | PRIV000132 |
| PRIV000004 | PRIV000047 | PRIV000092 | PRIV000133 |
| PRIV000005† | PRIV000048 | PRIV000093 | PRIV000134 |
| PRIV000006 | PRIV000049 | PRIV000094 | PRIV000135 |
| PRIV000007 | PRIV000054 | PRIV000095 | PRIV000136 |
| PRIV000008 | PRIV000055 | PRIV000096 | PRIV000137† |
| PRIV000009 | PRIV000056 | PRIV000097 | PRIV000138 |
| PRIV000010 | PRIV000057 | PRIV000098 | PRIV000139 |
| PRIV000011 | PRIV000058 | PRIV000099 | PRIV000140 |
| PRIV000014 | PRIV000059 | PRIV000100 | PRIV000141 |
| PRIV000015 | PRIV000060 | PRIV000101 | PRIV000142 |
| PRIV000016 | PRIV000061 | PRIV000102 | PRIV000143 |
| PRIV000017† | PRIV000062 | PRIV000103 | PRIV000144 |
| PRIV000018 | PRIV000063 | PRIV000104 | PRIV000145 |
| PRIV000019 | PRIV000064 | PRIV000105† | PRIV000146 |
| PRIV000020 | PRIV000065 | PRIV000106 | PRIV000147 |
| PRIV000021 | PRIV000066 | PRIV000107† | PRIV000148 |
| PRIV000022 | PRIV000067 | PRIV000108 | PRIV000149 |
| PRIV000023 | PRIV000068 | PRIV000109 | PRIV000150 |
| PRIV000024 | PRIV000069 | PRIV000110 | PRIV000151 |
| PRIV000025 | PRIV000070 | PRIV000111 | PRIV000152 |
| PRIV000026 | PRIV000071 | PRIV000112 | PRIV000153 |
| PRIV000027 | PRIV000072 | PRIV000113 | PRIV000154 |
| PRIV000028 | PRIV000073 | PRIV000114 | PRIV000155 |
| PRIV000029 | PRIV000074 | PRIV000115 | PRIV000156 |
| PRIV000030 | PRIV000075 | PRIV000116 | PRIV000157 |
| PRIV000031 | PRIV000076 | PRIV000117 | PRIV000158 |
| PRIV000032 | PRIV000077 | PRIV000118 | PRIV000159 |
| PRIV000033 | PRIV000078 | PRIV000119 | PRIV000160 |
| PRIV000034† | PRIV000079 | PRIV000120 | PRIV000161 |
| PRIV000035 | PRIV000080 | PRIV000121 | PRIV000162 |
| PRIV000036† | PRIV000081 | PRIV000122 | PRIV000163 |
| PRIV000037 | PRIV000082 | PRIV000123 | PRIV000164 |
| PRIV000038 | PRIV000083 | PRIV000124 | PRIV000165 |
| PRIV000039 | PRIV000084 | PRIV000125 | PRIV000166 |
| PRIV000040 | PRIV000085 | PRIV000126 | PRIV000167 |
| PRIV000041 | PRIV000086 | PRIV000127 | PRIV000168 |
| PRIV000042 | PRIV000087 | PRIV000128 | PRIV000169 |
| PRIV000043† | PRIV000088 | PRIV000129 | PRIV000170 |

| | | | |
|---|---|---|---|
| PRIV000171 | PRIV000214 | PRIV000257 | PRIV000300 |
| PRIV000172 | PRIV000215 | PRIV000258 | PRIV000301 |
| PRIV000173 | PRIV000216 | PRIV000259 | PRIV000302 |
| PRIV000174 | PRIV000217 | PRIV000260 | PRIV000303 |
| PRIV000175 | PRIV000218 | PRIV000261 | PRIV000304 |
| PRIV000176 | PRIV000219 | PRIV000262 | PRIV000305 |
| PRIV000177 | PRIV000220 | PRIV000263 | PRIV000306 |
| PRIV000178 | PRIV000221 | PRIV000264 | PRIV000307 |
| PRIV000179 | PRIV000222 | PRIV000265 | PRIV000308 |
| PRIV000180 | PRIV000223 | PRIV000266 | PRIV000309 |
| PRIV000181 | PRIV000224 | PRIV000267 | PRIV000310 |
| PRIV000182 | PRIV000225 | PRIV000268 | PRIV000311 |
| PRIV000183 | PRIV000226 | PRIV000269 | PRIV000312 |
| PRIV000184 | PRIV000227 | PRIV000270 | PRIV000313 |
| PRIV000185 | PRIV000228 | PRIV000271 | PRIV000314 |
| PRIV000186 | PRIV000229 | PRIV000272[†] | PRIV000315 |
| PRIV000187 | PRIV000230 | PRIV000273 | PRIV000316 |
| PRIV000188 | PRIV000231 | PRIV000274 | PRIV000317 |
| PRIV000189 | PRIV000232 | PRIV000275 | PRIV000318 |
| PRIV000190 | PRIV000233 | PRIV000276 | PRIV000319 |
| PRIV000191 | PRIV000234 | PRIV000277 | PRIV000320 |
| PRIV000192 | PRIV000235 | PRIV000278 | PRIV000321 |
| PRIV000193 | PRIV000236 | PRIV000279 | PRIV000322 |
| PRIV000194 | PRIV000237 | PRIV000280 | PRIV000323 |
| PRIV000195 | PRIV000238 | PRIV000281 | PRIV000324 |
| PRIV000196 | PRIV000239 | PRIV000282[†] | PRIV000325 |
| PRIV000197 | PRIV000240 | PRIV000283 | PRIV000326 |
| PRIV000198 | PRIV000241 | PRIV000284 | PRIV000327 |
| PRIV000199 | PRIV000242 | PRIV000285 | PRIV000328 |
| PRIV000200 | PRIV000243 | PRIV000286 | PRIV000329 |
| PRIV000201 | PRIV000244 | PRIV000287 | PRIV000330 |
| PRIV000202 | PRIV000245 | PRIV000288 | PRIV000331 |
| PRIV000203 | PRIV000246 | PRIV000289 | PRIV000332 |
| PRIV000204 | PRIV000247 | PRIV000290 | PRIV000333 |
| PRIV000205 | PRIV000248 | PRIV000291 | PRIV000334 |
| PRIV000206 | PRIV000249 | PRIV000292 | PRIV000335 |
| PRIV000207 | PRIV000250 | PRIV000293 | PRIV000336 |
| PRIV000208 | PRIV000251 | PRIV000294 | PRIV000337 |
| PRIV000209 | PRIV000252 | PRIV000295 | PRIV000338 |
| PRIV000210 | PRIV000253 | PRIV000296 | PRIV000339 |
| PRIV000211 | PRIV000254 | PRIV000297 | PRIV000340 |
| PRIV000212 | PRIV000255 | PRIV000298 | PRIV000341 |
| PRIV000213 | PRIV000256 | PRIV000299 | PRIV000342 |

| | | | |
|---|---|---|---|
| PRIV000343 | PRIV000370 | PRIV000397 | PRIV000432 |
| PRIV000344 | PRIV000371 | PRIV000398 | PRIV000433 |
| PRIV000345 | PRIV000372 | PRIV000399 | PRIV000434 |
| PRIV000346 | PRIV000373 | PRIV000400 | PRIV000471 |
| PRIV000347 | PRIV000374 | PRIV000401 | PRIV000472 |
| PRIV000348 | PRIV000375 | PRIV000402† | PRIV000473† |
| PRIV000349 | PRIV000376 | PRIV000403† | PRIV000474 |
| PRIV000350 | PRIV000377 | PRIV000404† | PRIV000475 |
| PRIV000351 | PRIV000378 | PRIV000405† | PRIV000476 |
| PRIV000352 | PRIV000379 | PRIV000406 | PRIV000477 |
| PRIV000353 | PRIV000380 | PRIV000407 | PRIV000478 |
| PRIV000354 | PRIV000381 | PRIV000408 | PRIV000479 |
| PRIV000355 | PRIV000382 | PRIV000409 | PRIV000480 |
| PRIV000356 | PRIV000383 | PRIV000410 | PRIV000481 |
| PRIV000357 | PRIV000384 | PRIV000411 | PRIV000482† |
| PRIV000358 | PRIV000385 | PRIV000412 | PRIV000483 |
| PRIV000359 | PRIV000386 | PRIV000413 | PRIV000484 |
| PRIV000360 | PRIV000387 | PRIV000414 | PRIV000485† |
| PRIV000361 | PRIV000388 | PRIV000415 | PRIV000486 |
| PRIV000362 | PRIV000389† | PRIV000416 | PRIV000487 |
| PRIV000363 | PRIV000390 | PRIV000417 | PRIV000488 |
| PRIV000364 | PRIV000391 | PRIV000418 | PRIV000489 |
| PRIV000365 | PRIV000392 | PRIV000419 | PRIV000490 |
| PRIV000366 | PRIV000393 | PRIV000420 | PRIV000491 |
| PRIV000367 | PRIV000394 | PRIV000421 | PRIV000495 |
| PRIV000368 | PRIV000395 | PRIV000430 | PRIV000496 |
| PRIV000369 | PRIV000396 | PRIV000431 | PRIV000497 |

† = The privilege identifiers marked with "†" are identified as "error attachment file" on Defendants' privilege log.

# APPENDIX D

## Defendants' Communications and Documents Exchanged with Third Parties

| | | | |
|---|---|---|---|
| PRIV0000010 | PRIV0000162 | PRIV0000227 | PRIV0000300 |
| PRIV0000011 | PRIV0000166 | PRIV0000230 | PRIV0000301 |
| PRIV0000014 | PRIV0000167 | PRIV0000231 | PRIV0000340 |
| PRIV0000067 | PRIV0000168 | PRIV0000232 | PRIV0000341 |
| PRIV0000068 | PRIV0000169 | PRIV0000233 | PRIV0000342 |
| PRIV0000069 | PRIV0000170 | PRIV0000234 | PRIV0000343 |
| PRIV0000070 | PRIV0000172 | PRIV0000235 | PRIV0000344 |
| PRIV0000071 | PRIV0000173 | PRIV0000236 | PRIV0000345 |
| PRIV0000098 | PRIV0000174 | PRIV0000237 | PRIV0000346 |
| PRIV0000099 | PRIV0000175 | PRIV0000238 | PRIV0000347 |
| PRIV0000110 | PRIV0000179 | PRIV0000239 | PRIV0000348 |
| PRIV0000111 | PRIV0000180 | PRIV0000240 | PRIV0000350 |
| PRIV0000117 | PRIV0000181 | PRIV0000241 | PRIV0000351 |
| PRIV0000122 | PRIV0000182 | PRIV0000242 | PRIV0000354 |
| PRIV0000125 | PRIV0000183 | PRIV0000243 | PRIV0000357 |
| PRIV0000126 | PRIV0000185 | PRIV0000244 | PRIV0000361 |
| PRIV0000127 | PRIV0000186 | PRIV0000245 | PRIV0000362 |
| PRIV0000128 | PRIV0000187 | PRIV0000246 | PRIV0000363 |
| PRIV0000129 | PRIV0000190 | PRIV0000247 | PRIV0000364 |
| PRIV0000130 | PRIV0000191 | PRIV0000248 | PRIV0000365 |
| PRIV0000132 | PRIV0000192 | PRIV0000249 | PRIV0000394 |
| PRIV0000133 | PRIV0000193 | PRIV0000250 | PRIV0000406 |
| PRIV0000134 | PRIV0000194 | PRIV0000251 | PRIV0000407 |
| PRIV0000135 | PRIV0000195 | PRIV0000252 | PRIV0000408 |
| PRIV0000136 | PRIV0000199 | PRIV0000274 | PRIV0000409 |
| PRIV0000139 | PRIV0000200 | PRIV0000275 | PRIV0000410 |
| PRIV0000140 | PRIV0000201 | PRIV0000276 | PRIV0000412 |
| PRIV0000141 | PRIV0000203 | PRIV0000277 | PRIV0000414 |
| PRIV0000142 | PRIV0000204 | PRIV0000278 | PRIV0000426 |
| PRIV0000143 | PRIV0000206 | PRIV0000279 | PRIV0000433[*] |
| PRIV0000144 | PRIV0000207 | PRIV0000280 | PRIV0000434[*] |
| PRIV0000145 | PRIV0000208 | PRIV0000281 | PRIV0000435[*] |
| PRIV0000146 | PRIV0000209 | PRIV0000282[†] | PRIV0000436[*] |
| PRIV0000147 | PRIV0000213 | PRIV0000285 | PRIV0000437[*] |
| PRIV0000148 | PRIV0000215 | PRIV0000286 | PRIV0000453 |
| PRIV0000149 | PRIV0000216 | PRIV0000287 | PRIV0000456 |
| PRIV0000154 | PRIV0000222 | PRIV0000295 | PRIV0000457 |
| PRIV0000156 | PRIV0000223 | PRIV0000296 | PRIV0000458 |
| PRIV0000157 | PRIV0000224 | PRIV0000297 | PRIV0000465 |
| PRIV0000158 | PRIV0000225 | PRIV0000298 | PRIV0000466 |
| PRIV0000161 | PRIV0000226 | PRIV0000299 | PRIV0000478 |

| PRIV0000479 | PRIV0000487 | PRIV0000489 | PRIV0000491 |
| PRIV0000486 | PRIV0000488 | PRIV0000490 | |

† = The privilege identifier marked with "†" is identified as "error attachment file" on Defendants' privilege log.

* = The 5 privilege identifiers marker with "*" are communications that included Defendants' counsel but also included a third party for whom Defendants have not indicated (much less established) any facts to demonstrate that the third party's presence on the communication vitiated any claim of privilege or work-product protection.

# APPENDIX E

## Documents Claimed Privileged by Defendants Based on Engagement by Perkins Coie That Pre-Date That Engagement

| | | | |
|---|---|---|---|
| PRIV0000006 | PRIV0000009 | PRIV0000014 | PRIV0000017† |
| PRIV0000007 | PRIV0000010 | PRIV0000015 | PRIV0000018 |
| PRIV0000008 | PRIV0000011 | PRIV0000016 | PRIV0000019 |

† = The privilege identifier marked with "†" is identified as "error attachment file" on Defendants' privilege log.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Points and Authorities in Support of Plaintiffs' Second Motion to Compel Defendants to Produce Documents Improperly Withheld as Privileged was filed electronically with the Clerk of Court on May 21, 2021, using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas A. Clare, P.C.*
Thomas A. Clare, P.C.