# Exhibit D

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
————————————————————X
:
MIKHAIL FRIDMAN, PETR AVEN, AND : Case 1:17-CV-02041 (RJL)
GERMAN KHAN, :
 :
                     Plaintiffs, : **PLAINTIFFS' FIRST SET**
 : **OF DOCUMENT REQUESTS**
        -v- : **TO DEFENDANTS**
 :
BEAN LLC (A/K/A FUSION GPS) AND GLENN :
SIMPSON, :
 :
                     Defendants. :
 :
————————————————————X

      Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules") and the Local Rules of the District Court for the District of Columbia (the "Local Rules"), Plaintiffs Mikhail Fridman, Petr Aven, and German Khan ("Plaintiffs"), by and through their undersigned counsel, hereby request that Defendants Bean LLC (a/k/a Fusion GPS) ("Fusion") and Glenn Simpson ("Simpson") respond to the following requests for the production of documents (the "Requests" – each individually a "Request") and produce for inspection and copying the documents and things requested herein within thirty days of service of these Requests at the offices of Carter Ledyard & Milburn LLP, 2 Wall Street, New York, New York 10005.

## DEFINITIONS

    A.    The terms "you," "your," and "yourself" refer to the party or parties to whom these Requests are directed, any persons or entities acting on their behalf or in concert with them, and their present or former agents, affiliates, employees, independent contractors, predecessors,

1

successors, assigns, parents, subsidiaries, officers, employees, directors, members, partners, shareholders, consultants, and representatives, or any one or more of the foregoing.

B. "Defendants" means, collectively, Fusion and Glenn Simpson, and any of their present or former agents, affiliates, predecessors, successors, assigns, parents, subsidiaries, officers, employees, directors, members, partners, shareholders, consultants, and representatives, or any one or more of the foregoing.

C. The "Action" means the above-captioned litigation, including all pleadings and proceedings filed or had therein.

D. The "Complaint" means the Amended Complaint filed by Plaintiffs on December 12, 2017 in this Action.

E. The "Dossier" means the compilation of 17 memoranda, totaling 35 pages, prepared by Christopher Steele, as described in Paragraphs 1 and 2 of the Complaint.

F. "CIR 112" means Company Intelligence Report ("CIR") 112 entitled "RUSSIA/US PRESIDENTIAL ELECTION: KREMLIN-ALPHA GROUP CO-OPERATION," which was part of the Dossier, and the contents therein.

G. "Alfa" means the conglomerate of entities including ABH Holdings S.A., Alfa Capital, AlfaStrakhovanie Group, Alfa Asset Management (Europe) S.A., A1, X5 Retail Group, Rosvodokanal Group, and IDS Borjomi International Group.

H. The "Answer" means the answer to the Complaint filed by Defendants in the Action on January 29, 2019, which includes a Counterclaim by Defendant Fusion under the Anti-SLAPP Act.

I. "Orbis" means Orbis Business Intelligence Ltd., the London-based firm founded by Christopher Steele, and any representatives.

J. "Steele" means Christopher Steele, the former British intelligence officer and founder of Orbis who compiled the Dossier, as referenced in Paragraph 3 of the Complaint, and any representatives.

K. "Perkins Coie" means the law firm of Perkins Coie LLP, and any representatives.

L. "McCain" means Senator John S. McCain III, and any representatives.

M. "Kramer" means David J. Kramer, and any representatives.

N. "Winer" means Jonathan M. Winer, and any representatives.

O. The "Briefings" means the briefings by Steele to members of the media in 2016, as referenced in Paragraph 6 of the Complaint.

P. The "Yahoo Article" means the article entitled "U.S. intel officials probe ties between Trump adviser and Kremlin", by Michael Isikoff, published by Yahoo! News on September 23, 2016, which is referenced in footnote 2 of the Complaint.

Q. The "Mother Jones Article" means the article entitled "A Veteran Spy Has Given the FBI Information Alleging a Russian Operation to Cultivate Donald Trump: Has the bureau investigated this material?", by David Corn, published by Mother Jones on October 31, 2016, which is referenced in footnote 3 of the Complaint.

R. The "BuzzFeed Article" means the article entitled "These Reports Allege Trump Has Deep Ties to Russia", by Ken Bensinger, Miriam Elder, and Mark Schoofs, published by BuzzFeed News (together with BuzzFeed, Inc., and any representatives, "BuzzFeed") on January 10, 2017, which is referenced in footnote 5 of the Complaint.

S. The "CNN Article" means the article entitled "Intel Chiefs presented Trump with claims of Russian efforts to compromise him", by Evan Perez, Jim Sciutto, Jake Tapper, and

Carl Bernstein (published on January 10, 2017), to which the BuzzFeed Article provided a hyperlink.

T.  The "Guardian Article" means the article entitled "How Trump walked into Putin's Web", by Luke Harding, published by The Guardian on November 15, 2017, which is referenced in footnote 8 of the Complaint.

U.  The terms "person" or "persons" mean natural persons as well as legal entities including, without limitation, firms, companies, proprietorships, corporations, partnerships, limited liability companies, associations, unincorporated associations, and governmental bodies, agencies, and officials and every other type of organization or entity.

V.  The terms "representative" or "representatives" when used in reference to a person, mean any past or present officer, director, partner, associate, member, employee, consultant, agent, subsidiary or affiliate of such persons, and any other person acting on behalf of, or in concert with, such person.

W.  The terms "document" and "documents" have the same meaning and scope as the broadest usage given to these terms in or pursuant to the Federal Rules and applicable federal law, including (without limitation) the following: all writings and records of any kind; electronic or computerized data compilations; embedded data and metadata; originals, drafts, and all non-identical copies; written or electronic correspondence, e-mail, voice mail, instant messages, text messages, communications, records, memoranda, notes, diaries, calendars, statistics, letters, telegrams, minutes, contracts, agreements, reports, price lists, agendas, manuals, studies, checks, statements, ledgers of account and work papers; inter-office and intra-office communications; notes and notations in any form; recordings of telephone calls or meetings; minutes of meetings or other communications; bulletins; printed matter (including newspapers, magazines and other

communications and articles and clippings); press releases; printouts; teletypes and telecopies; ledgers; work sheets; graphic or oral records of representations or presentations of any kind (including without limitation photographs, charts, graphs, and PowerPoint presentations); microfiche, microfilm, and digital, video or film recordings; electronic, mechanical or electrical records; tapes, cassettes, disks, recordings or transcriptions thereof; any drafts, alterations, modifications, changes and amendments of any of the foregoing; and any other documents as defined in the Federal Rules and under applicable federal law.  The terms "document" and "documents" specifically include electronic data or information contained in or on computer networks, mainframes, computer files, pocket organizers, personal digital assistants, personal computers, LAN's local workstations, computer disks, file servers, e-mail systems, CD-ROMs, e-mails, hard drives, printer buffer or memories, fax memories, voice mail systems, or any related back-up or archived systems or tapes.

   X. The terms "communication" or "communications" mean the transmittal of data or information (in the form of facts, images, ideas, inquiries or otherwise) by any means or methodology, including (without limitation) any meeting, conversation, discussion, document, correspondence, message, e-mail, note, text message, or other means of transmittal.

   Y. The terms "concern" or "concerning" mean discussing, referring to, relating to, or mentioning in any way, whether explicitly or implicitly.

### RULES OF CONSTRUCTION

   A. The use of the singular form of any word includes the plural and vice versa.

   B. The masculine includes the feminine and neutral genders, and vice versa.

8539535.4

C. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all documents that might otherwise be construed to be outside of its scope.

D. The use of the terms "any" and "all" shall be construed to mean "any and all" as necessary to bring within the scope of these Requests all documents that might otherwise be construed outside of its scope.

E. The term "including" shall not be construed as a limiting phrase but, rather, shall be construed to mean "including, without limitation."

F. Each of the words "discussing," "reflecting," "concerning," "relating," "involving," "evidencing," or "referring" shall have common meanings and shall include indirect as well as direct references to the subject matter of the Request.

G. The use of a verb in any tense shall be construed as the use of the verb in all other tenses as necessary to bring within the scope of these Requests all documents that might otherwise be construed to be outside of its scope.

## **INSTRUCTIONS**

A. The provisions and definitions contained in the Federal Rules and Local Rules are incorporated by reference as if fully set forth herein.

B. These Requests shall be deemed continuing, and to the extent that your responses may be enlarged, diminished, supplemented, or otherwise modified by documents or information acquired subsequent to your initial response to the Requests, you shall promptly supplement your responses and production. Plaintiffs reserve the right to supplement these Requests and seek supplementary responses to these Requests.

C. In producing documents and other things, you shall furnish all responsive documents or things in your possession, custody, or control.

D. Documents and things requested herein shall be produced as they are kept in the usual course of business, with information indicating their source (*e.g.,* the person(s) from whom the documents were obtained).

E. A Request calling for the production of any document shall be deemed to include, in addition to the document itself, a request for any and all exhibits or attachments to the document and any enclosures sent or kept with the document. Documents attached to each other shall not be separated.

F. Documents maintained or stored electronically may be produced on CD, DVD, File Transfer Protocol site, portable hard or flash drive, or other reasonably accessible media format. All such documents shall be produced in Group IV, 300 DPI, single-page TIFF format with document-level extracted text files, and standard Concordance load files (.DAT, .OPT), and shall include all metadata (including, without limitation, document boundaries, custodian identification information, date and time, etc.). If the text cannot be extracted, Optical Character Recognition ("OCR") text must be provided. In addition to producing TIFF files with text, metadata, and standard load files, native files shall be produced for any PowerPoint presentations containing audio or video, any Excel documents, any Access databases, or documents created under equivalent software packages. Data files shall not be zipped, encrypted, or otherwise restricted or proprietarily protected for specific use. If the native file format is derived from software not accessible with Microsoft Office applications (or other common applications), please state so in your response.

G. Documents maintained in hardcopy shall be produced in TIFF image format with corresponding OCR text, associated data identifying the beginning and ending Bates numbers and, to the extent applicable, information associating document families or attachment ranges.

H. Documents requested herein shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was located or stored and the business address of each document's custodian.

I. The file or other container in which a document is kept is deemed to be an integral part of the document and shall be produced with the document. Whenever a document or group of documents is maintained in the ordinary course of business in any file, folder, container, box or other document storage or organization device, each Request herein shall be deemed to call for the production of copies of, or the identification of, such file, folder, container, box or other document storage or organization device and any labels or other form of identification set forth thereon.

J. Unless otherwise indicated, the documents to be produced include all documents prepared, sent, dated, or received, or which otherwise existed or were possessed at any time during the Relevant Period.

K. You shall produce both original and all non-identical copies of all responsive documents in your possession, custody or control, regardless of the location where the documents are stored or the manner in which the documents are stored, electronically or otherwise. As such, you shall produce all responsive documents stored in or originating from personal computers or laptops, Blackberries, or any devices similar to any of the foregoing used by you or your officers, directors or employees, whether or not such documents were sent or

received through any or your corporate computer network(s). You shall also produce all audio, video, graphic, electronic or handwritten responsive documents.

L. Each document and thing requested herein shall be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire document to be relevant or responsive to the Requests. If you have redacted any portion of the document, you shall stamp the word "redacted" on each page of the document that you have redacted. If any document covered by these Requests contains a redaction, you shall identify such document and all redactions on a log prepared in accordance with Federal Rule 26(b)(5), specifically identifying the following: (i) the type of document; (ii) any addressor and addressee; (iii) any indicated or blind copies; (iv) the document's date; (v) the general subject matter of the document, number of pages, and a description of any attachments or appendices; (vi) all persons to whom the document was distributed, shown, or explained; and (vii) the nature and basis of the privilege or grounds for redaction being asserted.

M. If any document requested herein is withheld from production on the basis of any claim or privilege or other protection or immunity from disclosure, you shall furnish a log in accordance with Federal Rule 26(b)(5), specifically identifying the following: (i) the type of document; (ii) any addressor and addressee; (iii) any indicated or blind copies; (iv) the document's date; (v) the general subject matter of the document, number of pages, and a description of any attachments or appendices; (vi) all persons to whom the document was distributed, shown, or explained; and (vii) the nature and basis of the privilege or grounds for withholding being asserted.

N. Documents not otherwise responsive to the Requests shall be produced if such documents mention, discuss, refer to or explain the documents which are called for by these

Requests or constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

O. If any documents requested herein have been lost, discarded or destroyed, they shall be identified as completely as possible, including, without limitation, the following information: (i) the date of disposal; (ii) the manner of disposal; (iii) the reason(s) for disposal; (iv) the person authorizing disposal; and (v) the person disposing of the document.

P. Each Request should be interpreted broadly, so as to include all documents that could be responsive to each Request.

## DOCUMENTS TO BE PRODUCED

1. All documents or communications concerning any efforts by you to corroborate, verify, or investigate the contents of CIR 112, including documents evidencing any method you have used to investigate the truth or falsity of the contents of CIR 112.

2. All documents evidencing any investigative methods used by Orbis or Steele in the compiling or preparing of CIR 112 and the Dossier.

3. All documents and communications (including oral, written, or recorded statements by you or on your behalf) regarding the subject matter of this Action, Alfa, or the Plaintiffs, or any individual or entity believed by you to be associated with any of the Plaintiffs.

4. All communications with and documents provided by Orbis or Steele regarding CIR 112 and the Dossier.

5. All documents reflecting the delivery to you by Orbis or Steele of the CIRs that comprise the Dossier, including CIR 112, as set forth in paragraph 3 of the Answer, or otherwise how and from whom you obtained the CIRs that comprise the Dossier.

6. All communications with and documents provided by you, Steele, or Orbis to Kramer, McCain, or Perkins Coie or any persons acting on their behalf, regarding the Dossier, CIR 112, or the contents therein.

7. All communications with and documents provided by you, Steele, or Orbis to journalists or members of the media, or any persons acting on their behalf, relating to the Dossier, CIR 112, or the contents therein.

8. Documents sufficient to identify any code names you used for matters relating to CIR 112 or the Dossier, and all documents reflecting such code names.

9. Documents reflecting the scope and terms of your engagement by the *Washington Free Beacon* in 2015 and by Perkins Coie (or the Democratic National Committee, the campaign of Hillary Clinton, or HFACC, Inc.), as referenced in Paragraph 15 of the Answer, and the amounts paid to you in connection with such engagements.

10. Documents reflecting the scope and terms of your engagement of Orbis and/or Steele, as referenced in Paragraph 3 of the Answer, and the amounts paid to Orbis and/or Steele in connection with such engagements.

11. All documents concerning your policies or methodologies relating to efforts and procedures undertaken to verify or research information obtained from investigative firms prior to publishing or disseminating the information to third parties, including clients or the media.

12. All documents concerning Defendants' assertion that the publication or transmission of CIR 112 or the Dossier constitutes a report of a judicial proceeding, legislative proceeding, or other official proceeding, or otherwise is protected by New York Civil Rights Law § 74, including all documents concerning your knowledge of such proceedings on or before January 10, 2017.

13. All documents or communications concerning any efforts or investigation, on or before January 10, 2017, to determine whether CIR 112 was the subject of any official government proceeding or action.

14. All documents or communications concerning the Briefings to the media, or briefings of President Obama, President-elect Trump, or other government officials relating to CIR 112 or the Dossier.

15. All documents concerning the truth or falsity of the allegations set forth in CIR 112 or the Dossier, including documents concerning Steele's reported comments that as much as 30% of the Dossier's content may not be accurate, as set forth in the Guardian Article.

16. All documents produced by you or to you in any litigation or court or governmental proceeding concerning Plaintiffs, the Dossier, CIR 112, and the subject matter of this Action, including in *Gubarev v. Orbis and Steele*, No. HQ1700413, in the High Court of Justice, Queen's Bench Division, and *Nunes v. Fusion GPS*, Case No. 19-cv-1148, pending in the Eastern District of Virginia.

17. Transcripts of all testimony, including but not limited to deposition testimony, given or taken by you in any litigation or proceeding concerning the Dossier, CIR 112, and the subject matter of this Action, including in *Gubarev v. Orbis and Steele*, No. HQ1700413, in the High Court of Justice, Queen's Bench Division, and *Nunes v. Fusion GPS*, Case No. 19-cv-1148, pending in the Eastern District of Virginia.

18. All documents relating to any interviews, communications, or testimony to or with government officials, including members of Congress, relating to CIR 112 or the Dossier.

19. All documents referred to in, or used in the preparation of, Defendants' responses to any interrogatories in this Action.

11

20. All documents you may use to support, or which evidence, your assertions, defenses, and counterclaims in this Action, as reflected in the Answer or otherwise.

21. All documents concerning any efforts or investigation by you to determine whether the Dossier which was prepared for you and transmitted by you to others was the same as the Dossier which the CNN Article claimed was the subject of governmental briefings or other official action.

22. All documents relating to communications (oral or written) with news or media organizations regarding the Dossier, any information or content in the Dossier, and publication of the Dossier.

23. All documents reflecting the transmission or publication of CIR 112, the Dossier, or any information in the Dossier by you to any third parties, including news or media organizations, Senator McCain, Kramer, Winer, Perkins Coie, and/or the FBI, as set forth in Paragraphs 1 through 3 of the Affirmative Defenses in the Answer.

24. All documents and communications regarding your decision to transmit CIR 112 or the Dossier to any third parties, including news or media organizations, and your decision to transmit the entire Dossier instead of portions of the Dossier.

25. All documents or communications concerning the Yahoo Article, the Mother Jones Article, the BuzzFeed Article, and the CNN Article, including communications (oral or written) of or relating to any information or content in the Dossier.

26. Documents or communications sufficient to show how and from whom Orbis or Steele, and those assisting them, obtained the information regarding Plaintiffs and Alfa contained in CIR 112.

27. All documents received from or communications with the sources from which Orbis or Steel obtained the information regarding Plaintiffs and Alfa contained in CIR 112.

28. Documents or communications concerning Plaintiffs, CIR 112 or the Dossier to, from, or referencing any of the following:

   a) Other employees, representatives, or contractors of Fusion (including former employees);
   b) Christopher Steele;
   c) Christopher Burrows;
   d) Any employee, representative, or contractor of Orbis;
   e) Any employee or representative of Alfa;
   f) Any official, partner, employee, or contractor of Perkins Coie;
   g) Any employee, representative, or contractor of the Democratic National Committee, the campaign of Hillary Clinton, or HFACC, Inc.;
   h) Any employee, representative, or contractor of the McCain Institute for International Leadership;
   i) Senator John McCain or members of his staff;

j) David Kramer;
k) Jonathan M. Winer;
l) Bruce Ohr;
m) Representative Adam Schiff or members of his staff;
n) Any official or employee of the United States Government (or any person acting as an intermediary between any such official or employee);
o) Any official or employee of the Russian Federation (or any person acting as an intermediary between any such official or employee);
p) Michael Isikoff;
q) David Korn;
r) Jane Mayer;
s) Ken Bensinger;
t) Miriam Elder;
u) Mark Schoofs;
v) Luke Harding;
w) Edward Baumgartner;
x) Any employee, representative, or contractor of BuzzFeed;
y) Any employee, representative, or contractor of CNN;
z) Any employee, representative, or contractor of The Washington Post;
aa) Any employee, representative, or contractor of The New York Times;
bb) Any employee, representative, or contractor of The Guardian;
cc) Any employee, representative, or contractor of The Hill;
dd) Any employee, representative, or contractor of Mother Jones; and
ee) Any employee, representative, or contractor of Yahoo.

29. All documents concerning Plaintiffs, the Dossier, CIR 112, or the contents therein, that you provided to the FBI, and all documents relating to any investigation by the FBI concerning Plaintiffs, the Dossier, CIR 112, or the contents therein.

30. All documents concerning each of the Plaintiffs, including Defendants' assertion that each of the Plaintiffs are public figures as indicated in Paragraph 13 of the Affirmative Defenses (in the Answer).

31. All documents concerning your allegations in Paragraph 13.a. of the Affirmative Defenses (in the Answer) that a "public controversy exists concerning the entanglement of Russian oligarchs' political and business interests and those of the Russian state and/or President Putin, including the questionable, unethical and illegal conduct by actors on both sides."

32. All documents concerning any involvement by Plaintiffs in the conduct or activities referenced in the previous Request.

33. All documents concerning your allegations in Paragraph 13.b. of the Affirmative Defenses (in the Answer) that a "public controversy exists concerning the attempt to interfere in the 2016 U.S. Presidential election by the Russian Government and/or President Putin, including the alleged participation of Russian oligarchs."

13

34. All documents concerning any involvement by Plaintiffs in the conduct or activities referenced in the previous Request.

35. All documents concerning your allegations in Paragraph 13.d of the Affirmative Defenses (in the Answer) that "[t]he same facts apply to Plaintiff Khan," referring to your allegations that "[t]he United States District Court for the District of Columbia has already determined that Plaintiffs Fridman and Aven were public figures more than ten years ago, for purposes of another defamation case against a digital media organization" and that "Fridman and Aven are recognized as two of the most powerful Russian oligarchs" and have "maintained a close relationship to the highest reaches of the Russian government and forged a series of friendships and alliances with Russian luminaries and politicians."

36. All documents concerning your allegations in Paragraph 13.f. of the Affirmative Defenses (in the Answer) that "Plaintiffs' business and political conduct, including their relationship to President Putin, has continually attracted intense public scrutiny."

37. All documents concerning your allegations in Paragraph 13.h of the Affirmative Defenses (in the Answer) that "[i]n 2015, the government of the United Kingdom ordered Fridman and Khan to sell all of their oil assets in that country, out of concern that their connections to the Russian government could invite sanctions" and that "[t]he controversy was covered by all major international and U.S. media."

38. All documents concerning your allegations in Paragraph 13.i. of the Affirmative Defenses (in the Answer) that any of the Plaintiffs participated in meetings with President Putin and boasted of such participation.

39. All documents concerning your allegations in Paragraph 13.j. of the Affirmative Defenses (in the Answer) that the "United States government has repeatedly scrutinized the Plaintiffs and Alfa's business activities."

40. All documents concerning your allegations in Paragraph 13.k. of the Affirmative Defenses (in the Answer) that "Plaintiffs have widespread access to the international media and other channels of communications within the United States and around the world."

41. All documents concerning Plaintiffs' alleged "political or business relationships with the Russian state and/or President Putin" as indicated in Paragraph 13.n. of the Affirmative Defenses (in the Answer).

42. All documents concerning your allegations in Paragraph 13.l. of the Affirmative Defenses (in the Answer) that "Plaintiffs have spoken to numerous influential organizations in the U.S., such as the Keenan Institute and the Carnegie Endowment for International Peace."

43. All documents concerning your allegations in Paragraph 13.m of the Affirmative Defenses (in the Answer) that "[b]oth Fridman and Aven met several times with officials at the Obama White House."

44. All documents concerning the allegations in CIR 112 that "significant favours continue to be done" between Alfa and President Putin and that Fridman and Aven give "informal advice to Putin" on the United States and foreign policy.

45. All documents concerning the allegations in CIR 112 that the "key intermediary" in the alleged Putin-Alfa relationship is Oleg Govorun.

46. All documents concerning the allegations in CIR 112 that "Putin [was] personally unbothered" by Alfa's "lack of investment" in the Russian economy but was "under pressure from colleagues over this" and "able to exploit" Alfa's "lack of investment" in the Russian economy (including its alleged "failure to reinvest the proceeds of its TNK oil company sale") as leverage over Alfa, Fridman, or Aven to "make them do his political bidding."

47. All documents concerning the allegations in CIR 112 that Oleg Govorun was the "driver and bag carrier used by Fridman and Aven to deliver large amounts of illicit cash to the Russian President, at that time deputy Mayor of St. Petersburg."

48. All documents concerning any contacts or communications between Putin and any of the Plaintiffs or Alfa (or any intermediaries therefor), including the allegations in CIR 112 that any such contacts or communications were entrusted to Oleg Govorun.

Dated:   New York, New York
         October 11, 2019

                                        CARTER LEDYARD & MILBURN LLP

                              By:       /s/ Alan S. Lewis_____
                                        Alan S. Lewis
                                        John J. Walsh
                                        2 Wall Street
                                        New York, NY 10005
                                        (212) 732-3200

                                        Kim H. Sperduto
                                        Sperduto Thompson & Gassler PLC
                                        1747 Pennsylvania Ave., NW, Suite 1250
                                        Washington, DC 20006
                                        Phone: (202) 408-8900

                                        *Attorneys for Plaintiffs*