**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 1:17-2041-RJL** |
| **BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,** | |
| **Defendants.** | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' *SECOND* MOTION FOR LEAVE TO**
**AMEND THEIR ANSWER TO ADD AFFIRMATIVE DEFENSE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ................................................................................................................... 1

RELEVANT BACKGROUND .................................................................................................... 4

      A.    Defendants Author and Publish Defamatory Statements About Plaintiffs and Work With the Media to Have Them Republished to a Broad Audience—and Buzzfeed Obliges and Republishes Defendants' Defamatory Statements to the World. ................................................................................................................ 5

      B.    This Lawsuit:  Plaintiffs Sue Defendants for Their Original Publications of Their Defamatory Dossier and the Foreseeable Republications of Their Defamatory Dossier. ....................................................................................... 7

      C.    Plaintiffs Separately Sue Buzzfeed in New York for Its Republication of Defendants' Defamatory Dossier, But the New York Court Holds Buzzfeed—*Not* Defendants—Protected from Liability by the "Fair Report Privilege." .......... 7

      D.    Defendants' Instant (Second) Motion to Amend Their to Add Issue Preclusion as an Affirmative Defense. ................................................................................. 9

ARGUMENT ........................................................................................................................ 10

I.    Defendants' Motion to Amend Must Be Denied As Futile Because Defendants Cannot Satisfy the Requirements for Issue Preclusion to Attach to the Relevant Issue:  The New York Court Did Not Decide That the Fair Report Privilege Can Protect *Defendants* (as Opposed to *Buzzfeed*) from Liability and Damages for the Foreseeable Republication of Defendants' Defamatory Dossier. ...................................................... 11

II.    Defendants' Motion to Amend Must Be Denied As Futile Because Even if the Fair Report Privilege Can Protect *Buzzfeed* from Republication Liability, It Cannot Shield *Defendants* from Liability or Damages from the Republication of Defamatory Statements That Defendants Originally Published. ....................................................... 13

CONCLUSION ...................................................................................................................... 16

CERTIFICATE OF SERVICE ................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp. LLC*,
  783 F.3d 1328 (D.C. Cir. 2015) ............................................................... 1

*Amore ex rel. Estates of Amore v. Accor, S.A.*,
  484 F. Supp. 2d 124 (D.D.C. 2007) ......................................................... 10

*Amway Corp. v. Procter & Gamble Co.*,
  346 F.3d 180 (6th Cir. 2003) ........................................................... 4, 14, 16

*Dameron v. Wash. Mag., Inc.*,
  779 F.2d 736 (D.C. Cir. 1985) ........................................................ 12, 14, 16

*English v. Wash. Metro. Area Transit Auth.*,
  323 F.R.D. 1 (D.D.C. 2017) .................................................................. 1

*Foman v. Davis*,
  371 U.S. 178 (1962) ...................................................................... 10, 13, 16

*GeigTech E. Bay LLC v. Lutron Elecs. Co.*,
  No. 18-cv-5290, 2019 WL 1768965 (S.D.N.Y. Apr. 4, 2019) ................................. 15

*Johnson v. Dist. of Columbia*,
  No. 17-cv-883, 2019 WL 3767103 (D.D.C. Aug. 9, 2019) ...................................... 1

*Lee v. TMZ Prods. Inc.*,
  710 F. App'x 551 (3d Cir. 2017) ....................................................... 8, 12, 14

*Lugo v. U.S. Dep't of Justice*,
  No. 16-5297, 2018 WL 1896491 (D.C. Cir. Apr. 3, 2018) ..................................... 10

*Myers v. D.C. Hous. Auth.*,
  No. 20-cv-700, 2021 WL 1167032 (D.D.C. Mar. 26, 2021) .............................. 4, 12, 14, 16

*Nwachukwu v. Karl*,
  222 F.R.D. 208 (D.D.C. 2004) ............................................................... 10

*Oparaugo v. Watts*,
  884 A.2d 63 (D.C. 2005) ..................................................................... 7

*Reed v. Dep't of Navy*,
  899 F. Supp. 2d 25 (D.D.C. 2012) ........................................................... 11

*Reporters Comm. for Freedom of Press v. Am. Tel. & Tel. Co.*,
  593 F.2d 1030 (D.C. Cir. 1978) ............................................................. 13

*Republic Tobacco Co. v. N. Atl. Trading Co.*,
  381 F.3d 717 (7th Cir. 2004) ............................................................................... 4, 14

*Rosenblatt v. Baer*,
  383 U.S. 75 (1966) ................................................................................................. 15

*Shipkovitz v. Wash. Post Co.*,
  571 F. Supp. 2d 178 (D.D.C. 2008) ......................................................................... 8

*Straw v. Harris*,
  828 F. App'x 725 (D.C. Cir. 2020) ......................................................................... 10

*Tavoulareas v. Piro*,
  759 F.2d 90 (D.C. Cir. 1985) *vacated in part on other grounds on reh'g*,
  763 F.2d 1472 (D.C. Cir. 1985), *and aff'd on reh'g*,
  817 F.2d 762 (D.C. Cir. 1987) .................................................................................. 7

*United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*,
  235 F.R.D. 521 (D.D.C. 2006) .................................................................................. 1

*United States v. Dean*,
  989 F.2d 1205 (D.C. Cir. 1993) .............................................................................. 13

*Volpe v. Paniccioli*,
  72 N.Y.S.3d 519 (N.Y. Sup. Ct. 2017) ................................................................... 15

*Von Kahl v. Bureau of Nat'l Affs., Inc.*,
  810 F. Supp. 2d 138 (D.D.C. 2011) ................................................................... 12, 14

*White v. Fraternal Order of Police*,
  909 F.2d 512 (D.C. Cir. 1990),
  *aff'd*, 408 F. App'x 376 (D.C. Cir. 2010) ............................................................... 8

*Williams v. Williams*,
  246 N.E.2d 333 (N.Y. 1969) ......................................................................... 4, 15, 16

**Rules**

D.D.C. LCvR 7(m) .......................................................................................................... 1

Fed. R. Civ. P. 15 ........................................................................................................ 10

**Other Authorities**

1 *Rights and Liabilities in Media Content* § 6:83 .......................................................... 12

2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 5:11 ................. 13

2 Rodney A. Smolla, *Law of Defamation* § 8:3 ........................................................... 12

Restatement (Second) of Torts § 611 ........................................................................ 4, 14

Plaintiffs, by and through undersigned counsel, respectfully submit this Memorandum in Opposition to Defendants' *Second* Motion for Leave to Amend Their Answer to Add Affirmative Defense ("Motion") [Dkt. 146].[1]

## INTRODUCTION

Defendants' Second Motion to Amend Their Answer to add issue preclusion as an affirmative defense is nothing more than their latest attempt to avoid litigation—and adjudication—of the merits of Plaintiffs' claims against them.

Since the beginning of this case, Defendants have done everything they can to avoid litigating the merits of this case. Defendants began by not only filing a meritless motion to dismiss but also by filing a motion to strike under the D.C. "Anti-SLAPP Act" that the D.C. Circuit has unequivocally held cannot apply in federal court.[2] After the Court denied Defendants' motions (including because the D.C. Anti-SLAPP Act cannot apply in federal court), Defendants filed a counterclaim under that same anti-SLAPP Act that this Court held inapplicable in accordance with

---

[1] Defendants' Motion should be denied at the outset because Defendants failed to comply with Local Rule 7(m). Local Rule 7(m) requires that "[b]efore filing any nondispositive motion in a civil action, counsel *shall discuss* the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement. D.D.C. LCvR 7(m). (Emphasis added unless otherwise noted.) This District has held that this rule "require[s] in person or telephone communications," *Johnson v. District of Columbia*, No. 17-cv-883, 2019 WL 3767103, at *2 (D.D.C. Aug. 9, 2019), and even if it may be satisfied by email, "[t]he obligation to confer may not be satisfied by perfunctory action," *United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006), such as an exchange of emails in which a question is asked and an objection is stated and no further discussion follows, *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1 (D.D.C. 2017). "[F]ailure to comply with the conference requirement is sufficient basis to deny a motion to compel." *Pogue*, 235 F.R.D. at 529. Here, although Defendants' counsel emailed Plaintiffs' counsel to ask if Plaintiffs would consent to Defendants' Motion, after Plaintiffs' counsel stated that Plaintiffs would not consent, Defendants' counsel entirely failed to discuss the matter with Plaintiffs' counsel before filing their Motion. *See* Decl. of Thomas A. Clare, P.C. (June 10, 2021) ("Clare Decl.") ¶ 2 & Ex. A (Email Chain between J. Levy & T. Clare (Mar. 23-24, 2021)).

[2] *See Abbas v. Foreign Policy Grp. LLC*, 783 F.3d 1328, 1333-37 (D.C. Cir. 2015) (Kavanaugh, J.).

settled D.C. Circuit law.[3]  Defendants then moved to stay this case and to interlocutorily appeal the Court's denial of Defendants' motions under settled precedent, both of which the Court summarily denied.[4]  Since then, Defendants have repeatedly frustrated the progress of discovery. For example, Defendants' have withheld as privileged nearly 500 documents relating to their defamatory publication at issue in this case while producing under 750 total documents, necessitating Plaintiffs' *First* Motion to Compel regarding those documents, which the Court granted.[5]  Then Defendants flouted the Court's Order, requiring Plaintiffs to *again* move to compel regarding those documents (Plaintiffs' motion is pending).[6]  To further avoid producing documents, Defendants moved to stay all discovery pending resolution of their non-dispositive motion for partial summary judgment and have taken advantage of the Court's busy docket to effectively grant their own pending motion by refusing to participate in discovery (including by refusing to make key persons available for depositions), citing the technical lapse of the discovery period under the current scheduling order.[7]

In a further attempt to avoid litigating the merits of Plaintiffs' claims and the "case-specific" issues[8] they present, Defendants have now moved—for the second time—to amend their Answer to add issue preclusion as an affirmative defense, citing the resolution of different issues in different cases not involving Defendants, which Defendants want to argue control this case.

---

[3] *See* Defs.' Answer & Counterclaim (Jan. 29, 2019) [Dkt. 50]; *see also* Mem. Op. Denying Defs.' Mot. to Dismiss & Mot. to Strike at 4-5 (Jan. 15, 2019) [Dkt. 48].

[4] *See* Defs.' Mem. in Supp. of Mot. to Amend Order & Appeal (Feb. 12, 2019) [Dkt. 52]; Defs.' Mot. to Stay (Feb. 12, 2019) [Dkt. 53]; Minute Order Denying Defs.' Mot. to Amend Order & Appeal and Mot. to Stay (May 8, 2019).

[5] Pls.' [First] Mot. to Compel re Defs.' Docs. Withheld as Privileged (Aug. 14, 2020) [Dkt. 95]; Minute Order Granting Pls.' Mot. to Compel (Mar. 30, 2021).

[6] Pls.' [Second] Mot. to Compel re Defs.' Docs. Withheld as Privileged (May 21, 2021) [Dkt. 147].

[7] *See* Defs.' Cross-Mot. for a Stay of All Discovery (Mar. 1, 2021) [Dkt. 129]; *see also* Joint Mot. for a Status Conf. (May 27, 2021) [Dkt. 149].

[8] *See* Mem. Op. Denying Defs.' Mot. to Dismiss & Mot. to Strike at 10 [Dkt. 48].

In their *first* motion to amend their answer to add issue preclusion as an affirmative defense[9]—which Defendants strategically (and improperly) waited to file for more than two-and-a-half years after the decision to which they seek to accord preclusive effect—Defendants attempt to make an end-run around this Court's considered decision to defer adjudication of whether Plaintiffs are private or public figures until after the close of discovery, after which Plaintiffs "may be able to produce a factual basis for a finding that [they] should be considered [] private figure[s] with regard to the allegedly defamatory statements."[10]  And to do so, Defendants asked the Court to adopt and treat as final another court's holding that different defendants had "made a *prima facie* case that ... Plaintiffs are limited-purpose public figures"—a question very different from whether Plaintiffs *actually are* public (or private) figures.  As explained in Plaintiffs' Oppositions to Defendants' earlier motion and related motion for partial summary judgment, Defendants' motion to amend must be denied as futile because Defendants cannot satisfy the requirements for issue preclusion to apply to the public-figure issue raised in their motion such that amendment would be futile.[11]

Defendants fare no better with their *second* motion to amend their Answer to add issue preclusion as an affirmative defense—this time based on a decision (which is currently on appeal) from a New York trial court in a case between Plaintiffs and Buzzfeed (not Defendants here).  In their latest Motion, Defendants assert that the New York trial court's holding that the fair report privilege "afford[s] immunity ***to [Buzzfeed]***" for ***its*** now-famous republication of Defendants' defamatory CIR 112 and Dossier to a global audience compels the conclusion that ***Defendants*** are ***also*** protected by the fair report privilege from liability or damages stemming from that

---

[9] Defs.' [First] Mot. for Leave to Amend Their Answer to Add Aff. Def. (Feb. 5, 2021) [Dkt. 126].
[10] *See* Mem. Op. Denying Defs.' Mot. to Dismiss & Mot. to Strike at 11 [Dkt. 48].
[11] *See* Pls.' Opp'n to Defs.' [First] Mot. for Leave to Amend to Add Aff. Def. (Mar. 5, 2021) [Dkt. 136]; Pls.' Opp'n to Defs.' Mot. for Partial Summ. J. (Mar. 5, 2021) [Dkt. 135].

republication.  So Defendants seek leave to amend their Answer so they can later assert that issue preclusion defense.

But, as explained herein, Defendants' Motion must be denied as futile for multiple, independent reasons.

*First*, amendment would be futile because the issue that Defendants will seek to preclude Plaintiffs from litigating in this case (by adding issue preclusion to their Answer as an affirmative defense)—whether *Defendants* (as opposed to *Buzzfeed*) can claim the fair report privilege and satisfy its elements so as to avoid liability for Buzzfeed's foreseeable (and intended) republication of Defendants' defamatory Dossier—was not "actually litigated" (much less actually decided) by the New York court in the Buzzfeed case.  The parties in the Buzzfeed case only litigated (and the court could only possibly have decided) whether *Buzzfeed* could claim the fair report privilege and satisfy its elements.  *See infra* Argument Part I.

*Second*, amendment would be futile because even if the New York trial court's holding that the fair report privilege shields *Buzzfeed* from liability for republishing Defendants' defamatory statements could be entitled to preclusive effect, that would be of no help to Defendants because, under settled law, the fair report privilege cannot shield the original publisher of a libel (here, Defendants) from liability or damage arising from the republication of his libel.  *See infra* Argument Part II; *see also, e.g.*, *Myers v. D.C. Hous. Auth.*, No. 20-cv-700, 2021 WL 1167032, at *5-6 (D.D.C. Mar. 26, 2021); *Williams v. Williams*, 246 N.E.2d 333, 337 (N.Y. 1969); *Amway Corp. v. Procter & Gamble Co.*, 346 F.3d 180, 186 (6th Cir. 2003); *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717 (7th Cir. 2004); Restatement (Second) of Torts § 611, cmt. c.

## RELEVANT BACKGROUND

Because Defendants omit and mischaracterize key facts in their Motion that demonstrate its lack of merit, Plaintiffs provide the relevant background in some detail below.

4

A.   **Defendants Author and Publish Defamatory Statements About Plaintiffs and Work With the Media to Have Them Republished to a Broad Audience—and Buzzfeed Obliges and Republishes Defendants' Defamatory Statements to the World.**

As the Court knows, Plaintiffs' defamation claim in this case arises from Defendants' publication of false statements accusing Plaintiffs of, among other things, bribery, extortion, and interference in the 2016 U.S. Presidential Election.[12]  Defendants published those statements in an "intelligence" memorandum titled "Company Intelligence Report 2016/112" ("CIR 112"), which Defendants commissioned from Christopher Steele and his firm, Orbis Business Intelligence.[13]  Defendants compiled CIR 112 together with similar reports prepared by and for Defendants into what has become collectively known as the "Steele Dossier" or just the "Dossier."[14]

Notably—and as especially relevant to Defendants' Motion—Defendants did not just commission, prepare, and publish CIR 112 and the rest of the Dossier with the intent that it be shared with only a small audience.  Rather, Defendants commissioned, created, and originally published CIR 112 and the rest of the Dossier as part of "political" "opposition research"[15] that they performed leading up to the 2016 Presidential Election, first for the anti-Trump *Washington Free Beacon* and then for the Democratic National Committee (DNC) and Hillary for America Campaign Committee (HFACC).[16]  And for CIR 112 and the Dossier to be effective as political opposition research, Defendants needed to share those documents with as broad an audience as possible.

---

[12] *See, e.g.*, Am. Compl. ¶¶ 1-10, 13, 31 (Dec. 12, 2017) [Dkt. 17].

[13] *See, e.g.*, *id.*

[14] *See, e.g.*, *id.* ¶ 1.

[15] *See* Clare Decl. ¶ 3 & Ex. B (Glenn Simpson & Peter Fritsch, *Crime in Progress* 54, 56-57 (2019) (excerpts)).  Because Defendant Simpson (who is a principal of Defendant Bean) wrote *Crime in Progress*, Defendants' numerous admissions in the book constitute non-hearsay party admissions.  *See* Fed. R. Evid. 801(d).  Defendants have called the Dossier "the most famous work of opposition research in American politics."  Clare Decl. Ex. B at 269 (*Crime in Progress*).

[16] Clare Decl. Ex. B at 54-56 (*Crime in Progress*).

To do so, and to ensure that their defamatory statements caused the greatest possible harm (or, from Defendants' perspective, had the greatest political impact), Defendants worked "active[ly] with the media, the people they knew best."[17]  Defendants began by initially "quietly assist[ing] the media," with "Fusion's office [] becom[ing] something of a public reading room for journalists" and Fusion employee Jacob Berkowitz becoming a "go-to resource for news organizations" looking for dirt on then-Presidential candidate Donald Trump.[18]  But soon, Defendants took a more "active" role and "involve[d]" the media to spread their defamatory CIR 112 and Dossier.[19]  To that end, throughout 2016 and even after the Presidential Election, Defendants repeatedly "brief[ed] the American media," holding numerous meetings with journalists to share their defamatory "facts" with them.[20]  Defendants "intended ... that if the Dossier's contents were made available to third parties, including journalists, such provocative material would be published and republished, including to the public at large."[21]

On January 10, 2017, Buzzfeed obliged Defendants.  As Defendants not only anticipated and foresaw, but intended in widely sharing their defamatory Dossier with the media and others, Buzzfeed published Defendants' defamatory Dossier to a national and global audience.[22]  And not surprisingly, the damage to Plaintiffs caused by the republication of Defendants' defamatory Dossier to that worldwide audience was magnified exponentially.[23]

---

[17] *Id.* at 88.

[18] *Id.* at 87.

[19] *Id.* at 88, 108

[20] *See, e.g.*, *id.* at 108-110; *see also* Am. Compl. ¶ 6.

[21] Am. Compl. ¶ 6.

[22] *Id.* ¶ 9 ("Defendants intended ... that allowing their clients, ... third parties, ...  and the media access to the Dossier's defamatory content would result in its republication by news media outlets, including online news media such as Buzzfeed.").

[23] *Id.* ¶ 35.

**B.** **This Lawsuit:  Plaintiffs Sue Defendants for Their Original Publications of Their Defamatory Dossier and the Foreseeable Republications of Their Defamatory Dossier.**

On October 3, 2017, Plaintiffs filed this defamation suit against Defendants seeking redress for the devastating harm caused by Defendants' defamatory Dossier.[24]  As relevant here, Plaintiffs allege that Defendants are liable for damages stemming from multiple publications of their defamatory Dossier.  ***First***, Plaintiffs allege that Defendants are liable for their own publications of CIR 112 and the Dossier to numerous people, including Perkins Coie, the DNC, the HFACC, employees of those organizations, numerous journalists, and others.[25]  ***Second***, Plaintiffs allege (in accordance with settled law[26]), that "Defendants are liable for the defamation of Plaintiffs ... and the resulting harm caused by the news media coverage of the Dossier, *including the republication [of CIR 112 and the Dossier] by Buzzfeed* and countless other media"— republications that Defendants not only reasonably foresaw but intended.[27]

**C.** **Plaintiffs Separately Sue Buzzfeed in New York for Its Republication of Defendants' Defamatory Dossier, But the New York Court Holds Buzzfeed— *Not* Defendants—Protected from Liability by the "Fair Report Privilege."**

Completely separately from this lawsuit (and nearly five months before Plaintiffs filed it), Plaintiffs sued Buzzfeed for defamation in state court in New York for its republication of Defendants' defamatory Dossier—a completely separate question from whether Defendants could

---

[24] *See generally* Compl. (Oct. 3, 2017) [Dkt. 1].

[25] Am. Compl. ¶ 18.

[26] *See, e.g.*, *Oparaugo v. Watts*, 884 A.2d 63, 73 (D.C. 2005) ("The original publisher of a defamatory statement may be liable for republication if the republication is reasonably foreseeable."); *Tavoulareas v. Piro*, 759 F.2d 90, 136 n.56 (D.C. Cir. 1985) ("The maker of a slanderous statement may be held accountable for its republication if such republication was reasonably foreseeable."), *vacated in part on other grounds on reh'g*, 763 F.2d 1472 (D.C. Cir. 1985), *and aff'd on reh'g*, 817 F.2d 762 (D.C. Cir. 1987).

[27] Am. Compl. ¶ 35; *see also id.* ¶¶ 6, 9.

be held responsible for that republication.[28]  Buzzfeed moved for summary judgment[29] on the ground that, regardless whether the Defendants in this lawsuit (as the original publishers of the defamatory Dossier) could be held liable for its publication and foreseeable republication, *Buzzfeed* could not be held liable for *its* republication of that Dossier because *Buzzfeed* is shielded from republication liability by the "fair report privilege."  *See, e.g.*, *Shipkovitz v. The Wash. Post Co.*, 571 F. Supp. 2d 178, 183 (D.D.C. 2008) ("Th[e] 'fair report privilege' is an exception to the general rule that a republisher of a defamation is held to have adopted the defamation as its own." (citing *White v. Fraternal Order of Police*, 909 F.2d 512, 527 (D.C. Cir. 1990)), *aff'd*, 408 F. App'x 376 (D.C. Cir. 2010).[30]

The New York trial court granted Buzzfeed's motion and held that New York's fair report privilege (codified as N.Y. Civil Rights Law § 74) "afford[s] immunity to [Buzzfeed]" for its republication of the Dossier.[31]  ***The court did*** ***not*** ***opine about*** (and could not possibly have considered) whether *Defendants* in this case (who were not a party to that lawsuit) could themselves assert the "fair report privilege" and satisfy its elements as a shield against liability or damages for Buzzfeed's republication of Defendants' defamatory Dossier.  (As explained below, under settled law, Defendants, as the original publishers of the defamatory Dossier, ***cannot*** assert the fair report privilege as a shield against liability or damages stemming from the republication of their defamatory Dossier.)

---

[28] *See* Clare Decl. ¶ 4 & Ex. C (Compl., *Fridman v. Buzzfeed Inc.*, No. 154895/2017 (N.Y. Sup. Ct. May 26, 2017)).

[29] *See* Notice of Mot. for Summ. J., *Fridman v. Buzzfeed Inc.*, No. 154895/2017 (N.Y. Sup. Ct. June 18, 2019) [Dkt. No. 139].

[30] *See also, e.g.*, *Lee v. TMZ Prods. Inc.*, 710 F. App'x 551, 557 (3d Cir. 2017) ("The fair-report privilege is an exception to the general principle of defamation law that those who repeat or republish defamatory statements *of another* may themselves be held liable for defamation.").

[31] Clare Decl. ¶ 5& Ex. D (Decision & Order on Motion, *Fridman v. Buzzfeed Inc.*, No. 154895/2017 (N.Y. Sup. Ct. Mar 18, 2021)).

In addition, although Defendants fail to disclose it in their Motion, Plaintiffs have appealed the New York trial court's decision, and that appeal is currently pending.[32]

### D.    Defendants' Instant (Second) Motion to Amend Their to Add Issue Preclusion as an Affirmative Defense.

Two months after the New York trial court issued its summary judgment opinion holding that New York's fair report privilege "afford[s] *immunity to [Buzzfeed]*" for *its* republication of Defendants' defamatory Dossier, Defendants filed their instant (second) Motion to Amend Their Answer.  In their Motion, Defendants ask this Court to allow them to amend their Answer to add issue preclusion as an affirmative defense so they can later argue that the New York trial court's holding (which is on appeal) that *Buzzfeed* could assert the fair report privilege and was shielded from republication liability by that privilege means that *Defendants* (the original publishers of Dossier) can claim the protection of that privilege (and satisfy its elements) so as to also be shielded from liability and damages caused by Buzzfeed's foreseeable (and intended) republication of their Dossier.

As explained below, those are two completely separate questions and resolution of the latter (whether *Defendants*, as the original publishers of the defamatory CIR 112 and Dossier, can assert the fair report privilege (and satisfy its elements) to avoid liability for damages stemming from the republication of their Dossier (they cannot)) involves different questions of law (and fact) than those resolved by—or even presented to—the New York court.  Defendants try to conflate those distinct questions in their Motion by mischaracterizing the relevant question as whether a publication in the abstract (here, Buzzfeed's republication of the Dossier) is privileged rather than whether Buzzfeed and/or Defendants can assert a privilege (which belongs to the person holding

---

[32] *See* Clare Decl. ¶ 6 & Ex. E (Notice of Appeal, *Fridman v. Buzzfeed Inc.*, No. 154895/2017 (N.Y. Sup. Ct. filed Apr. 13, 2021), *appeal docketed as* No. 2021-01352 (N.Y. App. Div.)).

that privilege, not to an inanimate object like a "publication") as immunity from liability or damages for their actions.

## ARGUMENT

When, as here, the time within which a party may amend its Answer as a matter of course has expired, the party may "amend its pleading **only** with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Although Defendants trumpet the oft-repeated line that leave to amend should be "freely give[n] ... when justice so requires" (Mot. at 6), that maxim is subject to important limitations designed to ensure fairness to the opposing litigant.  Thus, courts deny leave to amend a pleading when there is "undue delay, bad faith or dilatory motive on the part of the movant," when the amendment would unduly prejudice the opposing party, or when the amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see, e.g.*, *Straw v. Harris*, 828 F. App'x 725, 726 (D.C. Cir. 2020) (affirming denial of leave to amend as futile); *Lugo v. U.S. Dep't of Justice*, No. 16-5297, 2018 WL 1896491, at *1 (D.C. Cir. Apr. 3, 2018) (summarily affirming denial of leave to amend as futile).[33]

Here, as explained below, Defendants' Motion for Leave to Amend must be denied as futile for multiple separate and independent reasons.

---

[33] The cases that Defendants cite for the proposition that the Court should *sua sponte* consider issue preclusion "regardless of Defendants' pleadings" (Mot. at 8) are wholly inapposite.  Unlike here, where allowing Defendants to amend their Answer to assert an affirmative defense of issue preclusion would be futile and would prejudice Plaintiffs, the courts in the cases cited by Defendants concluded that applying *res judicata* or issue preclusion would *not* be futile and would *not* prejudice or "work unfairness" to the opposing party.  *See Nwachukwu v. Karl*, 222 F.R.D. 208, 212 (D.D.C. 2004); *Amore ex rel. Estates of Amore v. Accor, S.A.*, 484 F. Supp. 2d 124, 130 (D.D.C. 2007).

**I.      Defendants' Motion to Amend Must Be Denied As Futile Because Defendants Cannot Satisfy the Requirements for Issue Preclusion to Attach to the Relevant Issue:  The New York Court Did Not Decide That the Fair Report Privilege Can Protect *Defendants* (as Opposed to *Buzzfeed*) from Liability and Damages for the Foreseeable Republication of Defendants' Defamatory Dossier.**

As an initial matter, Defendants' Motion to Amend Their Answer must be denied as futile because Defendants fail to satisfy the requirements for issue preclusion to attach to the relevant issue: whether the fair report privilege protects *Defendants* (as distinct from *Buzzfeed*) from liability for Buzzfeed's foreseeable (and intended) republication of Defendants' defamatory Dossier to a global audience.

As Defendants concede in their motion, in order to invoke issue preclusion under D.C. law, Defendants must establish that "*(1) the issue was actually litigated*; (2) was determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the party; (4) under circumstances where the determination was essential to the judgment."  (Mot. at 10); *accord Reed v. Dep't of Navy*, 899 F. Supp. 2d 25, 36 (D.D.C. 2012).  Here, Defendants' Motion fails at Requirement Number One because the issue Defendants seek to preclude Plaintiffs from litigating in this case was not "actually litigated," much less actually decided, by the New York trial court in the Buzzfeed case.

The issue that Defendants will seek to preclude Plaintiffs from litigating in this case (by adding issue preclusion to their Answer as an affirmative defense) is straightforward: Whether *Defendants* can claim the fair report privilege (and satisfy its elements) as a defense against liability or damages from Buzzfeed's foreseeable (and intended) republication of Defendants' defamatory Dossier.  Stated differently, the issue is whether the fair report privilege protects *Defendants* from liability for that republication.

But, fatally to Defendants' Motion, that question was never "actually litigated" in the New York Buzzfeed case.  And, accordingly, it was never decided by the court in that case.  Rather,

***Plaintiffs and Buzzfeed litigated a separate issue in the Buzzfeed case:*** whether **Buzzfeed** (a third-party republisher of Defendants' defamatory Dossier) could assert the fair report privilege and satisfy its elements so as to avoid being "liable for republication ***of another's*** [*i.e.*, Defendants'] defamatory statements" in the Dossier. *See* 2 Rodney A. Smolla, *Law of Defamation* § 8:3 (2d ed., 2021 update); 1 *Rights and Liabilities in Media Content* § 6:83 & n.53.62 (2d ed.) (same); *Dameron v. Wash. Mag., Inc.*, 779 F.2d 736, 739 (D.C. Cir. 1985) (The fair report privilege "is an exception to the [] rule that one who repeats or republishes a defamation uttered ***by another*** 'adopts' it as his own.").[34]  Because Defendants were not parties in the Buzzfeed case, the parties in that case had no occasion to brief, argue, or litigate whether *Defendants* could properly claim the fair report privilege or satisfy its elements so as to shield themselves from liability.

The fact that the New York trial court ultimately held that ***Buzzfeed*** could claim the fair report privilege and satisfy its elements so as to be shielded from republication liability does ***not*** mean that **Defendants** can claim that privilege or satisfy its elements so as to be shielded from liability for the republication of the defamatory Dossier that they originally published. Indeed, as explained below (*see infra* Argument Part II), settled caselaw holds that the original publishers of defamatory statements cannot assert the fair report privilege to avoid liability for the republication of their defamatory statements—thus further demonstrating that the issues of whether *Buzzfeed* (a third-party republisher of Defendants' defamatory Dossier) or *Defendants* (the original publishers of their defamatory Dossier) can assert the fair report privilege are distinct. And Defendants cannot avoid that simple fact by artfully claiming that Buzzfeed's "publication"

---

[34] *See also, e.g.*, *Myers v. D.C. Hous. Auth.*, No. 20-cv-700, 2021 WL 1167032, at \*2 (D.D.C. Mar. 26, 2021) (same); *Von Kahl v. Bureau of Nat'l Affs., Inc.*, 810 F. Supp. 2d 138, 143-44 (D.D.C. 2011) (same); *Lee v. TMZ Prods. Inc.*, 710 F. App'x 551, 557 (3d Cir. 2017) (same).

was privileged.  It is black-letter law that a privilege belongs to (and may be asserted or waived by) the *person* who holds that privilege, not an inanimate object.[35]  *See, e.g.*, 2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 5:11.  A privilege is personal to its holder. *See, e.g.*, *United States v. Dean*, 989 F.2d 1205, 1206 (D.C. Cir. 1993) ("[T]he Fifth Amendment privilege ... is a personal one."); *Reporters Comm. for Freedom of Press v. Am. Tel. & Tel. Co.*, 593 F.2d 1030, 1054 n.82 (D.C. Cir. 1978) (holding that, in certain circumstances, "the First Amendment gives rise" to a "[p]ersonal" privilege).

Because the parties in the New York Buzzfeed case did not "actually litigate"—and the court in that case did not decide—whether *Defendants* (as opposed to third-party republisher Buzzfeed) can claim the fair report privilege and satisfy its elements so as to avoid liability for Buzzfeed's intended republication of Defendants' defamatory Dossier, the issue preclusion defense that Defendants seek to add to their Answer would be futile, and Defendants' Motion to Amend Their Answer must be denied.  *See Foman*, 371 U.S. at 182.

## II.  Defendants' Motion to Amend Must Be Denied As Futile Because Even if the Fair Report Privilege Can Protect *Buzzfeed* from Republication Liability, It Cannot Shield *Defendants* from Liability or Damages from the Republication of Defamatory Statements That Defendants Originally Published.

Defendants' Motion to Amend Their Answer must also be denied as futile because even if the New York trial court's holding that the fair report privilege shields *Buzzfeed* from liability for republishing Defendants' defamatory statements were given preclusive effect, that would be of no help to Defendants because, under settled law, the fair report privilege cannot shield the original publisher of a libel (here, Defendants) from liability or damage arising from its republication.

---

[35] Example are numerous.  The Fifth Amendment privilege against self-incrimination belongs to a criminal defendant or potential criminal defendant.  The attorney-client privilege belongs to an attorney's client.   The doctor-patient privilege belongs to a patient.   The spousal privilege/immunity belongs to a spouse.  The so-called "monopoly privilege" belongs to a copyright-holder.  And so on.

The law governing the fair report privilege is clear.  Although it is sometimes said (as Defendants note) that the fair report privilege provides "broad protection" when it applies (Mot. at 5), the privilege's application is subject to important limitations.  As relevant here, courts have consistently held that the original publisher of a defamatory statement cannot take advantage of the fair report privilege to escape liability for the republication of his own defamatory statements—even if (unlike here) the original publication was itself privileged.  Cases explaining this limitation on the fair report privilege generally arise from a fact pattern in which a defendant originally publishes a libel in a judicial or official proceeding (which is thus privileged), and then republishes his libel outside of that proceeding (such as in a press release) and claims that his republication is protected by the fair report privilege because it reports on his prior statement from the judicial or other official proceeding.  Courts, however, have consistently refused to extend the fair report privilege to protect that republication, explaining that *"[a] person cannot confer th[e] [fair report] privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated."*  *E.g.*, *Myers v. D.C. Hous. Auth.*, No. 20-cv-700, 2021 WL 1167032, at *5-6 (D.D.C. Mar. 26, 2021); *Amway Corp. v. Procter & Gamble Co.*, 346 F.3d 180, 186 (6th Cir. 2003); *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 732 (7th Cir. 2004); Restatement (Second) of Torts § 611, cmt. c.  This makes sense, because, again, "the fair report privilege is an exception to the normal [] rule rendering a speaker liable for republication *of another's* defamatory statement."  2 Rodney A. Smolla, *Law of Defamation* § 8:3; *accord Dameron*, 779 F.2d at 739; 1 *Rights and Liabilities in Media Content* § 6:83 & n.53.62.[36]

---

[36] *See also, e.g.*, *Myers*, 2021 WL 1167032, at *2; *Von Kahl*, 810 F. Supp. 2d at 143-44; *Lee*, 710 F. App'x at 557.

Notably, even New York's highest court[37] has consistently adhered to this rule, explaining that

> it was never the intention of the Legislature in enacting section 74 to allow "any person" to maliciously institute a judicial [or other "official"] proceeding alleging false and defamatory charges, and to then circulate a press release or other communication based thereon and escape liability by invoking the statute.

*Williams v. Williams*, 246 N.E.2d 333, 337 (N.Y. 1969); *Volpe v. Paniccioli*, 72 N.Y.S.3d 519 (N.Y. Sup. Ct. 2017) (observing that *Williams* began "a long line of precedent"). To allow otherwise would be to allow a person "to take advantage of the privilege" and wield it as a sword rather than use it as a shield. *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18-cv-5290, 2019 WL 1768965, at *5 (S.D.N.Y. Apr. 4, 2019) (citing *Williams*, 246 N.E.2d at 337). And such a vast interpretation of the fair report privilege would undermine society's "pervasive and strong interest in preventing and redressing attacks upon reputation," which "the courts are delegated with the responsibility of protecting." *Williams*, 246 N.E.2d at 337 (citing *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966)).

This key limitation of the fair report privilege applies with full force here and prevents Defendants from asserting the privilege as a sword to avoid liability for Buzzfeed's republication of their defamatory Dossier—which Defendants not only reasonably foresaw (which is all that is required) but intended.[38] It is irrelevant that under the uncommon fact pattern here it was Buzzfeed who (as Defendants intended) republished Defendants' defamatory Dossier rather than Defendants republishing it (again) themselves. The law and logic of the rule as set forth by courts in this

---

[37] Although Defendants suggest that New York's fair report privilege would apply, they provide no analysis or support for that suggestion—and in reality the *District of Columbia's* fair report privilege would apply in this case involving D.C.-resident Defendants. But for present purposes, that distinction is immaterial because (as explained herein) Defendants cannot claim the protection of the fair report privilege under either New York or D.C. law.

[38] *See supra* Relevant Background § A.

District (*e.g.*, *Myers*), New York (*Williams* and its progeny), and across the country (*e.g.*, *Amway*, *Republic Tobacco*), and by the Restatement (Second) of Torts, apply with full force.  And it is similarly irrelevant that Buzzfeed (a third-party republisher) may itself be shielded from liability by the fair report privilege.  Indeed, the fact that Buzzfeed may[39]—but Defendants cannot—be shielded from liability here by the fair report privilege is not only consistent with but required by the fact that, as explained  by the D.C. Circuit, this District, and leading treatises and courts across the country, "the fair report privilege is an exception to the normal [] rule rendering a speaker liable for republication *of another's* defamatory statement."  *E.g.*, 2 Rodney A. Smolla, *Law of Defamation* § 8:3 (2d ed., 2021 update); *Dameron*, 779 F.2d at 739.

Simply put, Defendants, as the original publishers of their defamatory Dossier, cannot assert the fair report privilege avoid liability for the foreseeable (or intended) republication of their defamatory Dossier by Buzzfeed.  As such, it would be futile to allow Defendants to amend their Answer to add an issue preclusion defense based on the New York trial court's holding that *Buzzfeed* was shielded from republication liability by the fair report privilege, and Defendants' Motion to Amend Their Answer must be denied.  *See Foman*, 371 U.S. at 182.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Second Motion for Leave to Amend Their Answer to Add Affirmative Defense.

---

[39] Plaintiffs have appealed the New York trial court's holding that Buzzfeed satisfied the elements of the fair report privilege.

Dated: June 16, 2021    Respectfully submitted,

         */s/ Thomas A. Clare, P.C.*
         Thomas A. Clare, P.C. (D.C. Bar No. 461964)
         Elizabeth M. Locke, P.C. (D.C. Bar No. 976552)
         Joseph R. Oliveri (D.C. Bar No. 994029)
         Andrew C. Phillips (D.C. Bar No. 998353)
         CLARE LOCKE LLP
         10 Prince Street
         Alexandria, VA 22314
         (202) 628-7400
         tom@clarelocke.com
         libby@clarelocke.com
         joe@clarelocke.com
         andy@clarelocke.com

         *Counsel for Plaintiffs Mikhail Fridman,*
         *Petr Aven, and German Khan*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically with the Clerk of the Court on June 16, 2021, using the CM/EMF system, which will send notification of such filing to all counsel of record.

  */s/ Thomas A. Clare, P.C.*   
Thomas A. Clare, P.C.
