# Exhibit E

## CARTER LEDYARD & MILBURN LLP

*Counselors at Law*

**Alan S. Lewis**
**Partner**
•
*Direct Dial: 212-238-8647*
*Email: lewis@clm.com*

*2 Wall Street*
*New York, NY 10005-2072*
•
*Tel (212) 732-3200*
*Fax (212) 732-3232*

*570 Lexington Avenue*
*New York, NY 10022-6856*
*(212) 371-2720*

May 28, 2020

**VIA EMAIL**

Joshua A. Levy, Esq.
Levy Firestone Muse LLP
1401 K St. NW, Suite 600
Washington, DC 20005

      Re:    *Fridman v. Bean LLC a/k/a Fusion GPS, et al.*, 17-cv-2041 (D.D.C. 2017)

Dear Josh:

      We write in connection with Defendants' production, revised document responses, and privilege log.

### I.    The Privilege Log Is Facially Deficient

      Defendants' privilege log fails to set forth the required information. Its deficiencies, which make it impossible to assess the appropriateness of the assertions of privilege, include the omission of the subject line for all of the e-mails—and instead the provision of the same generic description for the majority of documents: "Confidential communication regarding research prepared at the direction of Perkins Coie and in anticipation of litigation, and for the purpose of providing legal advice." Notably, you never disclose what that litigation was, or the substance of each e-mail on your log.

      This falls far short of what is required under Rule 26. This is also particularly problematic given the facial inapplicability of the privilege to the majority of these communications, on which no lawyer appears to have been a participant).[1] As one court observed, "[g]iven today's litigation technology, there is no good reason why privilege logs should not include—where to do so would not itself reveal privileged or protected information []—other readily accessible metadata for electronic documents, including, but not limited to: addressee(s), copyee(s), blind

---

[1] *See Loftin v. Bande*, 258 F.R.D 31, 33 (D.D.C. 2009) (a party invoking a privilege must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Privilege logs must "state the basis upon which the privilege is claimed, state the subject matter, number of pages, author, date created, and the identity of all persons to whom the original or any copies of the document were shown or provided.").

Joshua A. Levy, Esq.
May 28, 2020
Page 2

copyee(s), date, time, subject line, file name, file format, and a description of any attachments."[2] We therefore request that you supplement your privilege log with these fields so that a determination can be made with respect to the appropriateness of the various privilege assertions.

Defendants' privilege log reflects hundreds of emails, including internal Fusion emails, with no attorney copied on most of the communications. Of the approximately 300 e-mail communications listed on the log, only approximately 30 involved an attorney. This clearly appears to be an attempt to shield non-privileged communications (especially since some of those communications pre-date any relationship with Perkins Coie). The core problem with the log is that there is insufficient detail to even allow Plaintiffs to evaluate any privilege assertions. Instead, Defendants simply repeat the same boilerplate explanation of privilege (without referencing any applicable litigation). For some documents which appear not to be associated with an e-mail (identified as "loose documents"), there is virtually no descriptive information.[3]

If the documents are being withheld on the basis of the work product doctrine, Defendants must identify the litigation involved (which Defendants fail to do for the vast majority of the entries where privilege is asserted). If the documents are being withheld on the basis of attorney-client communications, such an assertion of privilege is dubious in the absence of any attorneys on the communication. At a minimum, Defendants must specifically identify that legal advice was discussed and its subject matter. The fact that Defendants listed attorney-client privilege and work product doctrine for virtually every single document on the log—including attachments—makes the log less than transparent, as it is unlikely that both privileges apply to all documents. Please revise or supplement your privilege log so that the claims of attorney-client privilege and work product doctrine can be specifically assessed.

For example, Defendants identify emails and attachments in early January 2016 (see Documents PRIV0000049-52, 149-53, 154-65, 354-410, 428-31, 497), the majority of which include no attorneys, as relating to "research prepared at the direction of Perkins Coie." However, Fusion was not engaged by Perkins Coie until three months later (in April 2016), thus it is impossible that these documents related to research that had been "prepared at the direction of" counsel. Please produce these documents.

Defendants' log also lists approximately 200 documents described as "attachment" or "loose document"—without identifying the type of document (memo, notes, etc.) or the author of such document and with the same boilerplate description ("research prepared at the direction of Perkins Coie." Again, more information must be provided to enable Plaintiffs to assess the privilege claim asserted. And if attachments are not independently privileged, they should be produced. Please revise the log accordingly.

Of the approximately 300 communications on the log for the agreed upon 22-month period (January 1, 2016 to October 3, 2017), there are only 13 emails with Orbis or Steele. Thus,

---

[2] *See Favors v Cuomo*, 285 F.R.D. 187, 223 (E.D.N.Y. 2012) *citing SEC v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 145 (S.D.N.Y. 2004).

[3] In some cases, Defendants failed to include "to" and "from" information for e-mail in the log. *See, e.g.* PRIV0000410.

9600208.1

Joshua A. Levy, Esq.
May 28, 2020
Page 3

since no communications involving Orbis and Steele were produced, it is assumed that Defendants have only 13 such communications.  Please advise if this is correct and advise whether other communications with Orbis or Steele once existed but were destroyed or returned, and the date and details of such destruction or return.[4]

## II.     Defendants Have Failed to Produce Responsive Documents

We believe Defendants' production to be deficient.  Indeed, even to the extent that responsive documents were located and identified, they were largely withheld.   Given that Defendants have withheld so many documents (including internal Fusion communications) and have not produced any documents relating to CIR 112 or the Dossier, it is highly likely that documents are being unreasonably and improperly withheld.  This tactic will not pass muster in court.

Unsurprisingly, in light of Defendants' overly broad and unsupported privilege assertions, Defendants' initial production of 726 items (many of which appear to be exact duplicates), contains virtually no documents or communications referencing or specifically relating to CIR 112 or the other sixteen memos by Christopher Steele that comprise the "Dossier."  Thus, Defendants have produced no documents in the following categories:

- Communications with Christopher Steele or Orbis - Fusion's contractor and the author of CIR 112 and the other memos considered to be part of the Dossier.

- Internal or external communications about the preparation, receipt, and eventual dissemination of CIR 112.

- Communications regarding "Project Bangor," Fusion's internal code-name for its engagement that resulted in the creation of the "Trump Dossier."[5]   Nor do there appear to be pre-publication communications about the compilation of the CIRs or the Dossier more generally (with very limited post publication communications concerning the reaction to the publication).

Moreover, Defendants produced virtually no communications or documents regarding either the defamatory statements in CIR 112 or Defendants' attempts to verify them.  The two

---

[4] Plaintiffs reserve their right to seek discovery regarding the spoliation of relevant documents and to seek appropriate sanctions if documents were not preserved.

[5] According to the Washington Post such internal documents or e-mails appear to exist.  *See* https://www.washingtonpost.com/investigations/journalism-for-rent-inside-the-secretive-firm-behind-the-trump-dossier/2017/12/11/8d5428d4-bd89-11e7-af84-d3e2ee4b2af1_story.html ("Only a handful of internal documents obtained by The Post relate to the examination of Trump during the 2016 election, a project that was code-named "Bangor" and was financed in part by Hillary Clinton's campaign.")

9600208.1

Joshua A. Levy, Esq.
May 28, 2020
Page 4

documents included in the production that are arguably related to the subject matter of the defamatory statements post-date the dissemination and publication of CIR 112.[6]

Based on a review of the privilege log, which contains nearly as many items as the production, it appears that the responsive documents located were withheld. For instance, while *no* communications with Christopher Steele were produced, some e-mails between Steele/Orbis have been logged on the privilege log. *See* PRIV0000010; PRIV0000014; PRIV0000156; PRIV0000159; PRIV0000206–209; PRIV0000295; PRIV0000298; PRIV0000300. Although attorney-client and work-product privilege is asserted for these documents, like the vast majority of documents on the log, no attorney is described as a participant in these communications.

Plaintiffs are also unable to determine whether documents were in fact produced based on Defendants' Responses and Objections (the problems with which are discussed in further detail below). In their Supplemental Responses, Defendants indicate that they produced documents responsive to Requests 1, 14, 15, 23, 25, 35, 45, 46, 47, 48, however Plaintiffs have not been able to locate any such responsive documents in Defendants' production. In response to Plaintiffs' Interrogatory 11 and 12, and Document Requests 9 and 10, Defendants indicate that they produced documents relating to the scope and terms of Defendants' engagement by Perkins Coie and Defendants' engagement of Orbis and/or Steele, however—with the exception of a document reflecting a payment—Plaintiffs have been unable to locate any such responsive documents in Defendants' production. Plaintiffs request that Defendants confirm they have, in fact, produced such documents responsive to these requests and specify them.

In your Response to Interrogatory No. 18, you listed 92 documents. We requested you produce those documents we could not find in the public domain. We could not locate the following two documents in the production: "Edward Baumgartner, Report re: ALFA Dossier Open Source" and "Fusion GPS, Conflict With IPOC, date unknown." If these documents were produced, please provide the Bates numbers. As discussed in further detail above, the privilege log is missing some crucial fields that would allow us to evaluate whether these documents are on the privilege log. If they are in fact on the privilege log, please identify the entry numbers.

### III. Defendants' Supplemental Responses Fail to Inform Plaintiffs of What Documents Were Withheld

During the meet-and-confer process Defendants represented that they would be supplementing their discovery responses so as to make clear what documents, if any, were withheld from the production (on the basis of privilege or otherwise). Based on an initial review of Defendants' Supplemental Responses to Plaintiffs' Document Requests, it appears that Defendants have largely failed to do that. This is particularly problematic because, as discussed

---

[6] *See* DEFS0011238-11251 (a Draft "Backgrounder" titled "Russia's Alfa Group US Influence Operations & Benczkowski Nomination" which appears to have been created in August of 2017, after Brian Benczkowski was nominated as Assistant Attorney General in June of 2017), and DEFS0011729-11743 (a Memorandum titled "Democracy Project Case Theory" which appears to have been created by Glenn Simpson after the publication of CIR 112, as it references news articles that post-date publication).

Joshua A. Levy, Esq.
May 28, 2020
Page 5

above, the privilege log makes it generally impossible to determine the nature of the documents withheld from product.

In large part, the responses fail to inform Plaintiffs whether Defendants are withholding documents on the basis of one or more of Defendants' objections. Plaintiffs' inability to discern whether documents are being withheld stems primarily from the Defendants' assertion—in response to nearly every document request—of an objection based on "the attorney-client privilege and the attorney work product doctrine." That objection, coupled with the supplemental response that "Defendants have produced all responsive, non-privileged documents in their possession, custody, or control," or that "Defendants have no responsive, non-privileged documents in their possession, custody, or control" fails to inform Plaintiffs whether Defendants are withholding documents they contend are protected by the attorney-client privilege or the work product doctrine (or both).[7] This strategy leaves us wondering whether no responsive documents exist for a request, or whether they exist but are being withheld as privilege. This lack of transparency is exacerbated by the utter lack of specificity in describing the subject of documents on the privilege log.

We ask that you clarify your supplemental responses to indicate whether, where Defendants have objected on the grounds of the attorney-client privilege or work product doctrine, Defendants are withholding documents on the basis of the objections.

### IV.     Defendants' Search Terms

It appears, based on your April 29, 2020 e-mail, that Defendants have rejected the following search terms, which on March 23 Plaintiffs asked you to run:

- Bangor or Kompromat - without limiters[8]

- L1 or Alpha - in addition to Alfa or LetterOne

- Kramer and ("Dossier" or "CIR" or "intelligence report!")[9]

- Putin and ("Alfa" or "Alpha" or "cash" or "bag carrier" or "driver" or "TNK" or "bid!" or "corrupt!" or "Petersburg!" or "Leningrad!" or "lever!" or "favor!" or "favour!" or "advi!" or "pressure" or "bribe!")

---

[7] *See* FED. R. CIV. P. 26(c) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."); *see also Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190-91 (D.D.C. 1998) (A discovery response indicating that the defendant will produce "relevant, non-privileged" documents "leaves the plaintiff wondering what documents are being produced and what documents are being withheld.").

[8] At the very least the limiters should be expanded to include: Russia OR Trump OR Khan OR Aven OR Fridman OR Alfa OR Putin.

[9] The "Crime in Progress" book references communications between Simpson and Kramer regarding the Dossier both before and after publication, thus any written communications (e.g., email or text) between them should exist.

9600208.1

Joshua A. Levy, Esq.
May 28, 2020
Page 6

- Kremlin and ("Alfa" or "Alpha" or "cash" or "bag carrier" or "driver" or "TNK" or "bid!" or "corrupt!" or "Petersburg!" or "Leningrad!" or "lever!" or "favor!" or "favour!" or "advi!" or "pressure" or "bribe!")

- ("Trump" or "GOP" or "Republican!" or "Democrat!" or "Hillary" or "Clinton") and ("dirt" or "oppo!" or "research")

- ("Verif!" or "reliab!" or "rumor!" or "rumour!" or "gossip") and ("Dossier" or "CIR" or "intelligence report!" or "memo!" or "source!")

- Source! and ("Dossier" or "CIR" or "intelligence report!" or "memo!")

- (Steele or Chris!) and ("Dossier" or "CIR" or "intelligence report!" or "memo!" or "source!")

- Ohr and ("Dossier" or "CIR" or "intelligence report!")[10]

- Sergei or Millian

We ask that Defendants run these additional terms or explain why they believe them to be overbroad. Such an explanation should include search hit reports generated by your e-discovery vendor.

\*     \*     \*     \*     \*

This letter is without waiver of or prejudice to Plaintiffs' rights or remedies, all of which are expressly reserved.

Sincerely,

*Alan Lewis*

Alan S. Lewis

ASL:bp

---

[10] This would capture communications about the Ohrs and the CIRs, not merely communications with the Ohrs.

9600208.1