# Exhibit F

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

# CARTER LEDYARD & MILBURN LLP

*Counselors at Law*

**Alan S. Lewis**
Partner
•
*Direct Dial: 212-238-8647*
*Email: lewis@clm.com*

*2 Wall Street*
*New York, NY 10005-2072*
•
*Tel (212) 732-3200*
*Fax (212) 732-3232*

*570 Lexington Avenue*
*New York, NY 10022-6856*
*(212) 371-2720*

June 25, 2020

**VIA EMAIL**

Joshua A. Levy, Esq.
Levy Firestone Muse LLP
1401 K St. NW, Suite 600
Washington, DC 20005

Re:   <u>*Fridman v. Bean LLC a/k/a Fusion GPS, et al*., 17-cv-2041 (D.D.C. 2017)</u>

Dear Josh:

We respond to your June 10 letter (defending the adequacy of Defendants' responses to Plaintiffs' discovery requests) and to your June 2 letter (challenging Plaintiffs' responses to Defendants' discovery requests).

**A.   Defendants' Responses and Production (A Subject Raised Initially in our May 28 Letter)**

### I.   Privilege Log Deficiencies

#### a.   *The Privilege Log Does Not Contain Sufficient Detail*

We acknowledge your commitment to provide a supplemental privilege log containing "additional non-privileged information regarding the documents listed therein." While we await that supplemental log, we continue to maintain that Defendants' existing log is inadequate. In defense of your log, you cite *Feld v. Fireman's Fund Ins*. Co, but the information missing from your log contrasts it with the much more fulsome log provided in *Feld* - as that court's description of the log makes clear:

> The log includes the following information about each document: date, **title (typically, the subject line of an email)**, type of document (that is, email, attachment, or standalone computer file), document identification number, from, to, and carbon copy recipients, the privilege type (that is, attorney-client privilege,

Joshua A. Levy, Esq.
June 25, 2020
Page 2

> attorney work product, or both), **any additional notes, and the "privilege basis."**

*Feld v. Fireman's Fund Ins*. Co., 991 F. Supp. 2d 242, 248 (D.D.C. 2013) (emphasis added).

Moreover, no case cited in your June 10 letter stands for the proposition that "D.C. courts do not require the type of information [Plaintiffs] seek." To the contrary, the cases you cite hold that where, as here, the "subject" line of an e-mail does not contain information sufficient to evaluate the claim of privilege being asserted, additional information must be provided. *See Hornbeck Offshore Transp., LLC v. United States Coast Guard*, 2006 U.S. Dist. LEXIS 14389, *47 (D.D.C. 2006) ("Here, the description of Documents # 26 and # 15 provided by the Agency… 'gives no indication as to the confidentiality of the information on which they are based. It simply states the subject, source, and recipient of the legal opinion rendered.' On its face, with no further detail provided by the Agency regarding the communications between Eareckson and Vachon, it is impossible to determine if confidential information was supplied with the expectation of secrecy that was not known or disclosed to any third party.") (Internal citation omitted). *See also Loftin v. Bande*, 258 F.R.D. 31, 33 (D.D.C. 2009) ("The descriptions for Document Nos. 403 and 490 are insufficient because they do not specify the subject matter of the teleconferences…. Finally, the description for Document No. 762 is insufficient because it simply refers to 'revised redlines' or 'draft agreements.' This sparse description does not adequately describe the subject matter of those drafts.").

Nor does *Apollo*, another case that you cite, endorse the blanket proposition that the mere provision of an e-mail's subject line in a privilege log satisfies the obligation of the party asserting the privilege to produce an adequate privilege log. In that case, the court "agree[d] …that the generic titles in the subject line of an email *often do not* convey information concerning the specific matter being discussed" but found that (in that specific instance) the additional information provided by agency affiants in declarations regarding the specific subject of the communications ("DOE's decisions as to how to conduct the Program Review") provided sufficient detail. *In re Apollo Group, Inc. Sec. Litig*., 251 F.R.D. 12, 31 (D.D.C. 2008). Indeed, the court recognized that the description was deficient, but accepted the DOE's representation that the subject line would not inform the relevant analysis with respect to deliberative privilege (for the purposes of which internal decision-making process communications are privileged).[1]

In the aggregate, the teaching of the cases you cite is that where it is not clear from the "subject" line whether the e-mail is privileged (*i.e.*, a generic title), Defendants have an *additional* obligation to explain the basis for the assertion of privilege. *See, e.g., Feld*, 991 F. Supp. 2d at 248. That is particularly so where the e-mail does not involve an attorney in the to, from, or cc lines. If you contend that providing the title of a specific e-mail would disclose legal advice, as you appear to suggest, you should indicate so in the entry for that specific document while also providing a description of the e-mail sufficient to enable the assertion of privilege to

---

[1] *Elliott v Fed. Bur. of Prisons*, 521 F Supp 2d 41, 57 (D.D.C. 2007), another case you cite, merely recognizes the unremarkable rule that "an e-mail sent by an attorney to his or her client for the purposes of providing legal advice might well fall within the scope of the attorney-client privilege." The issue in the case was inadvertent waiver, not the appropriateness of excluding the subject line of the e-mail from a privilege log.

9686476.1

be assessed. [2] Withholding the subject line for all communications and documents on that basis is indefensible.

The information supplied by Defendants in support of the assertion of work-product privilege is similarly inadequate (a subject addressed under the sub-heading "Identification of litigation" in your June 10 Letter). Defendants' privilege log includes the same generic description—"Confidential communication regarding research prepared at the direction of Perkins Coie and in anticipation of litigation, and for the purpose of providing legal advice"—for nearly all entries. This is unreasonable, as it provides no information about the specific subject of the individual documents that would allow us to assess the claim of privilege. A log needs to provide such information in sufficient detail to permit assessment of the assertions of attorney-client and work-product privilege. One of the cases that you cited, *Jud. Watch, Inc. v United States HUD*, 20 F. Supp. 3d 247, 256-258 (D.D.C. 2014), underscores the point. There, for each entry, the index provided "(1) a document number; (2) a brief description of the document including the author, any recipients of the document, and the date and time the document was sent (if applicable); (3) the exemption relied upon for withholding or redacting the document; and (4) a narrative "justification" for withholding or redacting the document." The narrative justification used descriptive terms that "help[ed] convey the relevant content of documents without divulging the privileged information." The court held that a sufficient narrative "provides a sufficient basis for plaintiff and the Court to assess whether an attorney-client relationship existed and whether the content of the communications was confidential." *Id.* at 259. That is the level of detail required, but which is missing here.

We appreciate your willingness to provide further detail about your engagement with Perkins Coie and to confirm that the engagement letter was logged at PRIV0000497.[3] But that further detail should be provided on a *document by document* basis, because the purpose of a privilege log is to permit assessment of the asserted privilege, *in each instance* in which it is asserted.

In sum, we expect Defendants to provide the "subject" information and an adequate explanation for the basis of the privilege assertion in their supplemental privilege log. For the

---

[2] *See generally Jones v. Carson*, 2018 U.S. Dist. LEXIS 67400, *13-14 (D.D.C. March 30, 2018) ("measured by these standards, the government's original privilege log … was insufficient. … [It] identified only the author and recipients of the document in question, and provided only very general descriptions of the basis for the privilege asserted … [that] are too brief to adequately inform the requestor of the character of the information being withheld from him or her.") (internal citations and quotation marks omitted).

[3] Please explain the basis for withholding your engagement letter with Perkins Coie from production, as such final engagement letters are not generally considered to be confidential. *See, e.g.*, *United States ex rel. Rubar v. Hayner Hoyt Corp*., No. 5:14-CV-830 (GLS/CFH) 2018 US Dist. LEXIS 189274, at *27-28 (N.D.N.Y. Nov. 5, 2018) ("The final engagement letter sets forth Dannible's fees, payment structure, the general extent of the services Dannible was to perform, and boilerplate language about how Dannible and Lynn Law Firm would address disputes regarding payment. The final engagement letter is not privileged."). *See also United States v. Pape*, 144 F2d 778, 782 (2d Cir 1944) ("The authorities are substantially uniform against any privilege as applied to the fact of retainer or identity of the client. The privilege is limited to confidential communications, and a retainer is not a confidential communication, although it cannot come into existence without some communication between the attorney and the - at that stage prospective - client.").

9686476.1

Joshua A. Levy, Esq.
June 25, 2020
Page 4

avoidance of doubt, Plaintiffs are asking for precisely the type of log that the court in *Feld* found to be sufficient.

### b. Dates

There indeed appears to be some misunderstanding with respect to the assertion of privilege over specific documents that pre-date Fusion's engagement by Perkins Coie. Specifically, we were referring to documents on the log during the period of January 2016 (the earliest dates on the log) to April 2016 (when Fusion was engaged).

Defendants' log starts with documents with dates of 1/13/16 and 4/14/2016, thus we logically concluded that the dates are in month/date/year format, as you confirm. For the documents that we provided as examples in our May 28 letter, the dates reflected are 1/6/2016, 1/9/2016, 1/11/2016, 1/12/2016, and 1/4/2016. We assumed that the same dating convention was used throughout, and those documents are from January of 2016. If that is not the case, please let us know.

If Defendants are withholding e-mails from January of 2016 (months before Fusion was engaged by Perkins Coie), please explain how these e-mails could possibly relate to research prepared at the "direction of counsel."

We expect that you will address this in your supplemental privilege log.

### c. Orbis and Steele

Your production did not contain any communications with Orbis and Steele and, according to your privilege log, only 13 such responsive e-mails are in Defendants' possession. This apparently includes *all* e-mails with Orbis and Steele regarding CIR 112 and "generally relating to the 'Dossier,' or generally relating to Steele's reports or investigations" (but not including e-mails relating *solely* to other CIRs). *See* Levy June 10 Ltr at 2-3.

We are profoundly skeptical of the notion that only 13 communications ever existed between Defendants, on the one hand, and Orbis and/or Steele, on the other, regarding the preparation and publication of CIR 112. That is why we requested, among other things, that you explain "whether other communications with Orbis or Steele once existed but were destroyed or returned, and the date and details of such destruction or return." *See* Lewis May 28 Ltr. at 2-3. Your letter fails to address this (other than a vague statement that other communications with Orbis and Steele might exist, but which you deemed non-responsive). We therefore request, once again, that you apprise us whether or not any responsive documents or communications ever existed and were since destroyed or returned to Orbis and Steele (or to some other third-party).

### d. Attorney Client Privilege and the Work of Third Parties

9686476.1

Joshua A. Levy, Esq.
June 25, 2020
Page 5

You continue to assert attorney client privilege for communications and records that you describe as having been made "for the purpose of assisting Perkins Coie in providing legal advice to its clients." June 10 Ltr. At 4. While we cannot fully vet your claim of privilege given the extremely limited amount of information you have provided, your statement of assistance to Perkins Coie and purpose for rendering that assistance does not establish that all of the subject communications are privileged. While you rely on *Kovel* and its progeny for your contention, you have exaggerated *Kovel's* protection for the work product of third parties and ignored its limitations. When analyzing whether communications with those who are neither attorney nor client are privileged "[w]hat is vital . . . is that the communication be made in confidence *for the purpose of obtaining legal advice from the lawyer*" and if no legal advice is sought "no privilege exists." *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir. 1961). Thus, there are "limitations on the protection accorded the work of third persons" because, without such limitations, "the attorney-client privilege would engulf all manner of services performed for the lawyer that are not now, and should not be, summarily excluded from the adversary process." *FTC v. TRW, Inc.*, 628 F.2d 207, 212 (D.C. Cir. 1980). A limitation of the privilege is that the reports of third parties "put in usable form information obtained *from the client*." *Id*.

Your assertion of *Kovel* protection goes well beyond this limitation, by evidently seeking the protection of privilege for communications which do not express information obtained from Perkins Coie's client(s). *See ECDC Envtl., L.C. v. New York Marine & Gen. Ins. Co*., 1998 U.S. Dist. LEXIS 8808, *23-24 (S.D.N.Y. 1998) (analyzing *Kovel* and finding that privilege does not apply to analysis performed by a consultant because the "test data was either not confidential or did not originate with [the client]."); *United States ex rel. Barko v. Halliburton Co.*, 75 F. Supp. 3d 532, 541 (D.D.C. 2014) (because "the privilege protects communications between a client and his attorney, but does not protect an agent's work product that does more than record such confidential communications," no privilege lied where in-house counsel "used the investigators in part to gather bid information and contract completion information," and not "because only the investigators could decipher or interpret technical material."); *Durling v. Papa John's Int'l, Inc.*, 2018 U.S. Dist. LEXIS 11584, *10 (S.D.N.Y. Jan. 24, 2018) ("On the other hand, where an attorney seeks out a third party in order to obtain information that his client does not have, the third party's role is 'not as a translator or interpreter of client communications, and the principle of *Kovel* does not shield his discussions with the attorney.") (internal quotations marks, citations and alterations omitted).

Applying these principles, it is apparent that many of the communications for which you are asserting privilege are not privileged. For example, communications about or based on allegations reported by Fusion or Orbis (neither of whom was a client of Perkins Coie), such as CIR 112, cannot be privileged.

Indeed, it is well established that political opposition research of the kind Fusion and Orbis conducted falls outside any sort of attorney-client privilege (even *if* an attorney is present in the conversation). *See, e.g., Caparrós v. Lynch*, No. 3:15-cv-2229-JL, 2017 U.S. Dist. LEXIS 109041, at *23 (D.P.R. June 15, 2017) (citing *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998)) ("advice on political, strategic, or policy issues . . . would not be shielded from disclosure by the attorney-client privilege").

9686476.1

Joshua A. Levy, Esq.
June 25, 2020
Page 6

      In this case Defendants' invocation of privilege is even weaker given that no attorney was included in the majority of the communications claimed to be privileged, rendering untenable any claim that Fusion was "translating" client data for the purpose of legal advice by Perkins Coie (*e.g.* the *Kovel* test). *See Caparrós*, 2017 U.S. Dist. LEXIS 109041, at *17 ("The document described at log no. 114 reflects communications among only USAO employees regarding whether to seek advice from the GCO -- not discussing advice from GCO. Insofar as no GCO attorney participated in that communication, it is not protected by the attorney-client privilege."). At the very least, sufficient information must be disclosed in the privilege log to allow Plaintiffs to assess whether legal advice was being discussed in those communications. *FTC v. Boehringer Ingelheim Pharms., Inc*., 892 F.3d 1264, 1269 (D.C. Cir 2018) ("Where a privilege claimant has closely intertwined purposes—a legal purpose as well as a business purpose—it must still establish to a 'reasonable certainty,' that 'obtaining or providing legal advice was one of the significant purposes' animating each communication withheld[.]") (internal citations omitted).

      Particularly under the circumstances, it is not "sufficient to offer as support privilege logs with bare, conclusory assertions that the listed communications were made for the purpose of securing legal advice." *Id*.[4]

      If Defendants do not provide a supplemental privilege log that corrects the above-described defects, Plaintiffs will move to compel the same. Please advise whether you will provide a supplemental log.

      **II.      Defendants' Production**

      We take your response to mean that, other than documents (1) produced by Defendants,[5] (2) withheld by Defendants on the basis of privilege (the appropriateness of which is addressed above), and (3) document specifically identified as being in the public domain, there are no additional responsive documents in Defendants' possession, custody, or control. This includes specifically any pre-publication documents relating to the defamatory statements in CIR 112, or to the "Dossier" generally. *See* Lewis 5/28 Ltr at 3. If that is not the case please advise us specifically with respect to what documents exist but were not produced, or logged on the privilege log, for the agreed upon period.

      With respect to Document Request No. 45 (relating to Govorun) and specific documents identified in response to Interrogatory No. 18 (Edward Baumgartner, Report re: ALFA Dossier Open Source" and "Fusion GPS, Conflict With IPOC, date unknown"), we requested that you identify the entry numbers on the privilege log. *See* Lewis 5/28 Ltr. at 4. Please do so, as it is not apparent to us from the descriptions provided.

      **III.      Defendants' Search Terms**

---

[4] In fact, in *TRW* (on which Defendants rely), the Court denied privilege protection due to the proponent's failure to provide sufficient information to assess the applicability of the claimed privilege. *TRW*, 628 F.2d at 213.
[5] This includes the four "Kompromat" documents recently produced.

9686476.1

Joshua A. Levy, Esq.
June 25, 2020
Page 7

Thank you for providing additional detail about the additional searches you preformed. Without any waiver of Defendants' rights, we have the following follow up questions:

a. **Bangor**: This is an internal codename your client chose for the relevant project in this case and is therefore an important term. You state that limiters were appropriate because the term, standing alone, produced "many" false hits for the city "Bangor, ME." Please advise what constitutes "many,"[6] and whether you considered complex searches that include ("Bangor") BUT NOT ("Bangor, ME")? If not, please advise why, so that we can evaluate the suggested burden.

b. **Kompromat / Alfa / LetterOne / Ohr**: Thank you for agreeing to run the searches, and for producing the additional four documents the use of "Kompromat" returned. Please confirm whether the searches resulted in any additional documents being added to the privilege log, in addition to the four additional documents produced.

c. **Alpha**: Please advise whether Defendants' vendor applied limiting terms (*e.g.* (Alpha) BUT NOT ("SeekingAlpha" OR "Alpha Travel" OR "Alphanex" OR "Alpha and Omega")) to cull these documents. If not, please advise why, so that we can evaluate your contention of burden.

d. **L1:** We understand that Defendants do not wish to review 6,500 documents consisting of HTML code. We ask that you run a report on L1 in conjunction with other search terms—Kremlin, Putin, Alpha, Kramer, Steele, and Ohr—to check if any documents were inadvertently overlooked. We also would like you to search "L1" which should identify the term as used in the body of an email or document and eliminate false hits where "L1" appears in an HTML code string. If "L1" still returns a large number of false hits that is not feasible to search, please inform us of the total hit count.

e. **Kramer and ("Dossier" or "CIR" or "intelligence report!")**: Thank you for confirming this was searched.

f. **Putin / Kremlin and ("Alfa" or "Alpha" or "cash" or "bag carrier" or "driver" or "TNK" or "bid!" or "corrupt!" or "Petersburg!" or "Leningrad!" or "lever!" or "favor!" or "favour!" or "advi!" or "pressure" or "bribe!")**: We agree that the connector Alfa is not necessary if all documents were reviewed. Our understanding is that you initially objected to "Alpha" as a standalone search term, and therefore believe that (at minimum) "Putin and Alpha" together should be searched. We request that

---

[6] Your use of that vague description, rather than providing the actual hit counts as you did with the other test searches, makes the statement hard to evaluate.

9686476.1

Joshua A. Levy, Esq.
June 25, 2020
Page 8

> you (or your discovery vendor) compare the unique hits between the Putin and Kremlin searches to identify how many documents (total) would be returned by the additional search so that we can assess the suggested burden in reviewing these additional documents.
>
> **g. (Steele or Chris!) and ("Dossier" or "CIR" or "intelligence report!" or "memo!" or "source!"):** This search was narrowly tailored to capture communications with or about Christopher Steele's "Dossier" and CIR 112. Considering that there are only 13 e-mails on your privilege log, and none in your production, with Orbis and Steele, we question the thoroughness of your review if there are almost 12,000 e-mails about that subject which you have *not* reviewed. We will need additional information about what these documents are (and whether they can be further culled by applying excluding terms) before we can agree that your search was adequate.

Finally, with respect to the other searches you identified (Nos. 10, 11 and 14), please have your discovery vendor identify which terms in those search bullions are pulling in potentially non-responsive documents, so that we can confer on how to narrow those searches. For instance, if it is the term "memo!" as opposed to "CIR" or "intelligence report!" we can have an informed discussion about the topic.

**B.**   **Plaintiffs' Responses and Production (June 2 Letter)**

  **I.**   **Plaintiffs' Production**

   ***a. Document Objections***

Plaintiffs confirm that they have produced responsive documents and, except as specifically indicated in their initial and supplemental responses, did not withhold documents on the basis of Plaintiffs' General Objections. Consistent with Defendants' approach (in their Revised Responses to Plaintiffs' Document Requests), Plaintiffs did not identify responsive documents that may exist dated outside the initial date ranges, as set forth in the General Statements and Objections, as being withheld.

   ***b. Interrogatory Objections***

Plaintiffs refer Defendants to the response immediately above.

   ***c. Searches of Pre-2016 Documents***

Plaintiffs' documents were reviewed manually, and Plaintiffs did not exclude from production pre-2016 documents concerning the truth or falsity of the allegations in CIR 112.

   ***d. Documents Designated Highly Confidential***

9686476.1

Joshua A. Levy, Esq.
June 25, 2020
Page 9

It is well settled that email addresses are considered personal data entitled to protection under the GDPR and Russian Personal Data law. We understand that we disagree as to the appropriateness of the Highly Confidential designation but appreciate your desire to compromise. Plaintiffs will agree to consider the redaction of specific documents (that are easily redacted) which Defendants deem necessary in connection with any court filing but believe this is premature at this juncture.

   *e. UK Proceeding Documents*

The parties agreed that they were not required to produce documents that are in the public domain. This was reflected in your Revised Responses, as memorializing the parties' agreement: "Lastly, the parties agreed that responsive documents shall not include publicly available responsive documents; thus, any statement herein indicating the absence of responsive documents does not include publicly available responsive documents." *See* Defendants' May 18, 2020 Revised Responses to Plaintiffs' First Set of Document Requests at 2. The language you quote applied specifically to the limited public figure status of Plaintiffs and was referring to newspaper articles that are widely available to both parties. *See* Lewis 3/12 Ltr at 8. It was not intended to limit the meaning of "publicly available"—as you suggest. It also cannot be fairly read as limiting a later agreement memorialized in Defendants' own Responses. To be clear, if court filings are obtainable by the general public, we deem them publicly available.

It is our understanding that the documents you request are, in fact, publicly available. Some are available on the English Court's electronic filing system. We further understand that all transcripts, orders, judgments, and statements of the case, are available by simple request using form EX107. Other documents can be obtained by using from N244, which entails a simple application to the High Court. This procedure is no more burdensome than what you have required us to undertake in obtaining Mr. Fritsch's prior testimony.

In any event, it appears that you have been able to obtain documents from that U.K. proceeding, including witness statements and transcripts, as they are attached to and cited in your recently filed Motion to Compel. *See, e.g.*, Levy Aff., Exhs. 42, 66 – 67.

We additionally think this is a reasonable way to proceed as this avoids the need for the parties to engage in a protracted U.K. Data Protection Law analysis with respect to which documents can, and cannot, be produced by Plaintiffs to Defendants absent additional confidentiality and data processing agreements. As a result, Plaintiffs believe they have complied with both the spirit and the letter of the parties' agreement with respect to these documents.

   **II.   The Alfa Documents**

Given your recently filed motion to compel, we will refrain from further addressing this issue here.

Joshua A. Levy, Esq.
June 25, 2020
Page 10

\* \* \* \* \*

      This letter is without waiver of or prejudice to Plaintiffs' rights or remedies, all of which are expressly reserved.

      Sincerely,

      *Alan Lewis*

      Alan S. Lewis

ASL:bp

9686476.1