**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN,<br><br>    Plaintiffs,<br><br>  v.<br><br>BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,<br><br>    Defendants. | Civil Case No. 1:17-cv-2041-RJL |

<u>**DEFENDANTS BEAN LLC'S AND GLENN SIMPSON'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR REASONABLE EXPENSES INCURRED IN MOVING TO COMPEL DISCOVERY**</u>

## TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................ 1

**BACKGROUND** ................................................................................................. 3

  **I.**     Plaintiffs Allege That Defendants Defamed Plaintiffs and Alfa. ...................... 3

  **II.**    Plaintiffs Refused to Produce Any of Their Alfa Documents and Refused to Produce, *inter alia*, Documents Bearing on Plaintiffs' Status as Public Figures and the Substantial Truth or Falsity of CIR 112 ....................................................... 3

      **A.**  Plaintiffs Claimed to Lack Control of Their Alfa Documents ..................... 5

      **B.**  Plaintiffs Refused to Produce Several Categories of Responsive Documents within Their Possession ................................................................................ 7

          i.    UK Proceeding Documents ........................................................... 7

          ii.   Mueller Documents ....................................................................... 8

          iii.  Spanish Proceeding ...................................................................... 9

          iv.  Kroll Report ................................................................................. 9

      **C.**  Plaintiffs Refused to Incorporate Defendants' Affirmative Defenses When Reviewing Their Documents and Refused to Produce Documents Generated Prior to 2016. ........................................................................................... 10

  **III.**   Defendants Moved to Compel Production of Plaintiffs' Documents. ............... 12

      **A.**  Motion to Compel Plaintiffs' Alfa Documents, ECF No. 78 ..................... 12

      **B.**  Motion to Compel Plaintiffs' Review and Production Documents Responsive to Plaintiffs' Public Figure Status and the Substantial Truth or Falsity of CIR 112 ............................................................................................................ 12

  **IV.**   The Court Granted Both of Defendants' Motions to Compel ............................. 13

  **V.**    Prior to the Opening of Discovery in This Case, Plaintiffs Produced Their Alfa Documents in Parallel Litigation Concerning CIR 112. ..................................... 14

  **VI.**   In the Same UK Litigation Concerning CIR 112, Plaintiffs Represented that the Relevant Period of Discovery Was 1994-2016 .................................................. 16

  **VII.**  The Instant Dispute. ........................................................................................... 17

**LEGAL STANDARDS** ..................................................................................... 17

**ARGUMENT** ...................................................................................................... 18

  **I.**     Plaintiffs Unjustifiably Withheld Their Alfa Documents, Even Though They Had Produced the Same Documents in Separate Legal Proceedings. ....................... 20

      **A.**  Defendants Pressed Plaintiffs for Months to Produce Their Corporate Documents without Court Action. ............................................................. 20

      **B.**  Plaintiffs Already Had the Requested Documents in Their Possession, Custody, or Control. ............................................................................................... 21

**C.**  Plaintiffs Never Denied That They Could Exercise Their Authority, Collectively, to Obtain the Requested Documents from Alfa and LetterOne, If Necessary .................................................................................................... 22

**II.**  Plaintiffs Improperly Withheld Documents as "Publicly Available" and Unjustifiably Attempted to Limit the Scope of Discovery Based Solely on Their Own Theory of Relevance. ............................................................................................. 25

**A.**  Defendants Satisfied Their Obligation to Attempt in Good Faith to Obtain the Requested Documents before Filing Their Motion to Compel. .................... 26

**B.**  Plaintiffs' Refusal to Produce Documents from the UK Proceedings Was Entirely Unjustified and Was Emblematic of Their Vexatious Conduct Throughout Discovery. ................................................................................................. 26

**C.**  The Law Bars Plaintiffs from Unilaterally Dictating the Meaning of the Allegedly Defamatory Statements. ................................................................................ 28

**D.**  Plaintiffs' Other Objections to Producing Obviously Relevant Documents Were Likewise Unjustified. .................................................................................... 30

**CONCLUSION** ............................................................................................ 33

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Alexander v. F.B.I.*,
  186 F.R.D. 144 (D.D.C. 1999)........................................................................ 18

*Alexander v. F.B.I.*,
  194 F.R.D. 316 (D.D.C. 2000)........................................................................ 31

*Arpaio v. Zucker*,
  414 F. Supp. 3d 84 (D.D.C. 2019) ................................................................. 29

*Benic v. Reuters Am., Inc.*,
  357 F. Supp. 2d 216 (D.D.C. 2004) ............................................................... 29

*Boca Investerings P'ship v. U.S.*,
  No. CIV.A. 97-602PLF/JMF, 1998 WL 647214 (D.D.C. Sept. 1, 1998)....................... 22

*Bush v. Ruth's Chris Steak House, Inc.*,
  286 F.R.D. 1 (D.D.C. 2012)............................................................................ 22

*Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*,
  138 F.R.D. 438 (D.N.J. 1991).......................................................................... 21

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987)........................................................................................ 30

*Clyburn v. News World Commc'ns, Inc.*,
  903 F.2d 29 (D.C. Cir. 1990)........................................................................... 30

*Cobell v. Norton*,
  226 F.R.D. 67 (D.D.C. 2005)..................................................................... 17, 22

*DL v. District of Columbia*,
  251 F.R.D. 38 (D.D.C. 2008)........................................................................... 17

*Engel v. Town of Roseland*,
  No. 06-CIV-430, 2007 WL 2903196 (N.D. Ind. Oct. 1, 2007) ...................... 22

*Fridman v. Orbis Bus. Intel. Ltd.*,
  229 A.3d 494 (D.C. 2020) .............................................................................. 33

*Fridman v. Orbis Bus. Intel. Ltd.*,
  No. 20-693, 2021 WL 78212 (S. Ct. Jan. 11, 2021);..................................... 33

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)........................................................................................ 30

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
535 U.S. 826 (2002) ..................................................................................... 29

*In re Commodity Exch., Inc. Gold Futures & Options Trading Litig.*,
No. 14-MC-2548 (VEC), 2019 WL 1988525 (S.D.N.Y. May 6, 2019) ........................ 24

*In re Grand Jury*,
490 F.3d 978 (D.C. Cir. 2007) ...................................................................... 32

*In re NTL, Inc. Sec. Litig.*,
244 F.R.D. 179 (S.D.N.Y. 2007) ................................................................... 22

*In re Vitamins Antitrust Litig.*,
No. 99-197TFH, 2001 WL 1049433 (D.D.C. June 20, 2001) ........................... 24

*Jankovic v. Int'l Crisis Grp.*,
822 F.3d 576 (D.C. Cir 2016); ...................................................................... 30

*Kahl v. Bureau of Nat'l Affs., Inc.*,
856 F.3d 106 (D.C. Cir. 2017) ...................................................................... 30

*Khan v. Orbis Bus. Intel. Ltd.*,
No. 2018 CA 002667 B, 2018 WL 11232420 (D.C. Super. Ct. Aug. 20, 2018)............ 33

*Lincoln Prop. Co. v. Roche*,
546 U.S. 81 (2005) ...................................................................................... 29

*Moss v. Stockard*,
580 A.2d 1011 (D.C. 1990) ......................................................................... 29

*OAO Alfa Bank v. Ctr. for Pub. Integrity*,
387 F. Supp. 2d 20 (D.D.C. 2005) ........................................................... 3, 33

*Parsi v. Daioleslam*,
778 F.3d 116 (D.C. Cir. 2015) ...................................................................... 21

*Pierce v. Underwood*,
487 U.S. 552 (1988) .................................................................................... 21

*Rickels v. City of South Bend*,
33 F.3d 785 (7th Cir. 1994) .......................................................................... 17

*SJ Berwin & Co. v. Evergreen Entm't Grp.*,
1994 WL 501753 (S.D.N.Y. Sept. 14, 1994)................................................. 27

*S.E.C. v. Gibraltar Global Sec., Inc.*,
No. 13-CV-2575, 2015 WL 1514746 (S.D.N.Y. 2015)................................... 25

*Shatsky v. Syrian Arab Republic*,
   312 F.R.D. 219 (D.D.C. 2015) (Leon, J.). ..................................................... 28

*Sigma-Tau Industrie Framaceutiche Riunite, S.P.A. v. Lonza, Ltd.*,
   106 F. Supp. 2d 8 (D.D.C. 2000) ................................................................. 18

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*,
   482 U.S. 522 (1987) ..................................................................................... 24

*Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*,
   357 U.S. 197 (1958) ..................................................................................... 24

*Spirit Realty, L.P. v. GH&H Mableton, LLC*,
   319 F.R.D. 474 (S.D.N.Y. 2017) ................................................................. 27

*U.S. Int'l Trade Comm'n v. ASAT, Inc.*,
   411 F.3d 245 (D.C. Cir. 2005) ..................................................................... 21

*U.S. v. All Assets Held at Bank Julius Baer & Co., Ltd.*,
   No. CV 04-798 (PLF/GMH), 2018 WL 8867711 (D.D.C. Jan. 19, 2018) ..................... 22

## Statutes

Fed. R. Civ. P. 26 ........................................................................................... 10, 19, 29

Fed. R. Civ. P. 37 ........................................................................................... 2, 17, 18

Fed. R. Crim. P. 6 ........................................................................................... 9, 32

## INTRODUCTION

Throughout this litigation, Plaintiffs Mikhail Fridman, Petr Aven, and German Khan ("Plaintiffs") have forced Defendants Bean LLC and Glenn Simpson ("Defendants") to seek the Court's assistance in compelling Plaintiffs to comply with the bare minimum of their Rule 34 discovery obligations.

First, Plaintiffs claimed they lacked the ability to obtain and produce their Alfa documents, asking both Defendants and the Court to ignore their collective majority ownership of Alfa Bank and LetterOne, as well as their ongoing control over the various entities comprising Alfa Group, the conglomerate of multi-national entities founded by Plaintiff Fridman in 1989. After the Court rejected Plaintiffs' claims and granted Defendants' motion to compel production of Plaintiffs' Alfa documents, Plaintiffs' April 29, 2021 production confirmed that Plaintiffs not only had the ability to obtain and produce these documents all along, but had previously done so in their UK lawsuit concerning the same statements that Plaintiffs challenge here. *See infra* at 14-16.

Second, in the spring of 2020, Defendants identified specific categories of responsive discovery Plaintiffs had not produced that were undeniably in Plaintiffs' possession. In response, Plaintiffs invented a variety of frivolous objections, continued to withhold these documents, and represented that their document production as of May 2020—175 pages of court filings, six printed copies of Plaintiffs' resumes, and 59 emails—was the full extent of responsive items Plaintiffs were obligated to produce. Defendants moved to compel production of these additional categories of discovery, and the Court granted Defendants' motion in full. Plaintiffs' Court-ordered April 29, 2021 production has confirmed that Plaintiffs had produced some of these categories of documents in their UK lawsuit at the time they refused to produce such documents in this lawsuit.

Finally, Plaintiffs' first document productions also indicated that Plaintiffs had refused to review and produce pre-2016 documents relevant to Defendants' affirmative defenses. Plaintiffs eventually confirmed as much, maintaining—contrary to the law—that Plaintiffs' interpretation of the alleged defamatory statements controlled the scope of relevant discovery. Defendants filed a motion to compel the review and production of additional documents bearing on Defendants' affirmative defenses that Plaintiffs are public figures for the purposes of CIR 112 and that statements in CIR 112 are substantially true. The Court granted the motion in full. Plaintiffs' Court-ordered April 29, 2021 production has confirmed that Plaintiffs had produced pre-2016 documents in their UK lawsuit at the time they refused to produce such documents in this lawsuit.

Each of Plaintiffs' obstruction efforts was at odds with the Federal Rules of Civil Procedure, relevant caselaw, and the facts of this case. As will be discussed in this brief, Plaintiffs also intentionally withheld relevant and responsive documents in their possession, custody, or control without any justification. Though Defendants were eventually successful in obtaining relief from the Court, *see* Minute Orders (March 30, 2021), litigating the merits of each dispute was a burdensome endeavor that required Defendants to expend time, money, and investigative resources that would have been spent more efficiently elsewhere. In other words, Plaintiffs' efforts to harass Defendants through unnecessary litigation worked exactly as intended.

Plaintiffs, however, have sued in U.S. federal court, where the rules contemplate this precise circumstance. Rule 37 of the Federal Rules holds that where a motion to compel discovery is granted in full, the party whose conduct necessitated the motion must pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A). Accordingly, Defendants now respectfully ask the Court to order Plaintiffs to pay the

reasonable expenses incurred by Defendants in bringing their motions to compel Plaintiffs to meet their discovery obligations (ECF Nos. 78 & 94).

## BACKGROUND

### I.    Plaintiffs Allege That Defendants Defamed Plaintiffs and Alfa.

Plaintiffs Mikhail Fridman, Petr Aven, and German Khan ("Plaintiffs") are suing Defendants Bean LLC d/b/a Fusion GPS and Glenn Simpson ("Defendants") for money damages based on a report titled Company Intelligence Report 2016/112 ("CIR 112"). Defendants commissioned CIR 112 from a well-regarded former British intelligence officer, Christopher Steele, and his business intelligence company, Orbis. Plaintiffs claim that statements in CIR 112 are false and defamatory as to both Plaintiffs and Alfa Group.[1]

### II.    Plaintiffs Refused to Produce Any of Their Alfa Documents and Refused to Produce, *inter alia*, Documents Bearing on Plaintiffs' Status as Public Figures and the Substantial Truth or Falsity of CIR 112.

On October 11, 2019, Defendants served document requests and interrogatories bearing on the substantial truth of CIR 112 and Plaintiffs' public figure status. *See* Defs.' Reqs. for Prod. of Docs., ECF No. 78-4; Defs.' Mot. to Compel, ECF No. 94, at 5-7.

On November 11, 2019, Plaintiffs served their responses and objections to Defendants' requests, Pls.' Resps., ECF No. 78-5, including the following general objections:

- Plaintiffs object to the Requests . . . to the extent that they seek or are intended to seek documents not within Plaintiffs' possession, custody, or control, and/or documents within the possession, custody, or control of non-parties over whom Plaintiffs have no authority and/or control. . . . For the avoidance of doubt, Plaintiffs are not responding on behalf of the Alfa conglomerate of entities,

---

[1] Plaintiffs contend that CIR 112 "defamed the Plaintiffs and Alfa," Am. Compl. ¶ 33, ECF No. 17, and allege that "Defendants are liable for the defamation of Plaintiffs and Alfa." *Id.* ¶ 35. Two decades ago, Plaintiffs Fridman and Aven joined Alfa Bank as Plaintiffs in an unsuccessful defamation suit litigated in this same court. *See OAO-Alfa Bank v. Ctr. for Pub. Integrity*, Case No. 1:00-cv-2208 (JDB) (filed Sept. 14, 2000); *OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 57 (D.D.C. 2005). Plaintiffs and Alfa, however, chose to file the instant suit without joining Alfa as a plaintiff.

> including Alfa-Bank JSC (also known as JSC Alfa-Bank and Alfa-Bank AO), ABH Holdings S.A., Alfa Capital, AlfaStrakhovanie, Alfa Asset Management (Europe) S.A., Al, X5 Retail Group, Rosvodokanal Group, and IDS Borjomi International Group ("Alfa"), or any of their subsidiaries or affiliates, Letterone Holdings S.A. and Letterone Investment Holdings S.A., or any of their subsidiaries or affiliates . . . .

> [ . . . ]

> • Plaintiffs object to requests that they produce documents . . . prior to 2016, except as to documents relating to the allegation of bribery in the 1990s involving Oleg Govorun.

*Id.* at 3-4, Supp. Resps. at 2.

The parties engaged in months of discussions concerning discovery. Those discussions yielded agreement on some issues, but Plaintiffs made clear that they refused to produce: *i)* any of their Alfa documents; *ii)* documents bearing on their public figure status; *iii)* documents created prior to 2016 and bearing on the truth or falsity of CIR 112's allegedly defamatory statements concerning Plaintiffs and the Kremlin; and *iv)* specific categories of documents relevant to the issues in this action and in Plaintiffs' possession. Defendants spent several months exchanging calls, emails, and letters with Plaintiffs' counsel in an attempt to obtain these documents without creating additional litigation burdens for the parties and the Court.

The parties memorialized their positions in the correspondence identified below, all of which has been previously filed with the Court:

- Ltr. from J. Levy to A. Lewis (Feb. 19, 2020), ECF No. 78-7

- Ltr. from A. Lewis to J. Levy (Mar. 12, 2020), ECF No. 78-8

- Email from A. Lewis to J. Levy et al. (Apr. 2, 2020), ECF No. 78-9

- Ltr. from J. Levy to A. Lewis (Apr. 16, 2020), ECF No. 78-10

- Letter. from A. Lewis to J. Levy (Apr. 24, 2020), ECF No. 78-11

- Ltr. from J. Levy to A. Lewis (Apr. 29, 2020), ECF No. 78-12

- Ltr. from A. Lewis to J. Levy (May 15, 2020), ECF No. 78-13

- Ltr. from J. Levy to A. Lewis (May 22, 2020), ECF No. 78-15

- Ltr. from A. Lewis to J. Levy (May 28, 2020), ECF No. 78-16

- Ltr. from A. Lewis to J. Levy (June 2, 2020), ECF No. 78-17

- Ltr. from J. Levy to A. Lewis (June 10, 2020), ECF No. 78-18

- Ltr. from A. Lewis to J. Levy (June 25, 2020), ECF No. 94-5

- Ltr. from J. Levy to A. Lewis (June 30, 2020), ECF No. 94-3

- Ltr. from A. Lewis to J. Levy (Aug. 4, 2020), ECF No. 94-4

The disagreements about document production set forth in this correspondence and which ultimately formed the grounds for Defendants' motions to compel that are at issue here (ECF Nos. 78 & 94) are set forth in more detail in the following sections.

### A. Plaintiffs Claimed to Lack Control of Their Alfa Documents.

From the outset of discovery, Plaintiffs took the position that they lacked the ability and/or authority to obtain, among other things, their mobile phones, text messages, calendars, communications sent on their behalf, and emails written to or from their accounts with Alfa aliases.[2] Plaintiffs took this position even though they had sued based on claims that a few

---

[2] "Alfa," as used throughout Defendants' briefing, includes Alfa-Bank, LetterOne and the corporate progeny of Alfa Group, the conglomerate of multi-national entities founded by Plaintiff Fridman in 1989. More specifically, in Defendants' motion to compel, granted in full by the Court, "Alfa" was used as an umbrella term to refer to relevant Alfa entities previously identified by Plaintiffs' discovery requests. *See* ECF No. 78, at 8-9. Accordingly, "Alfa" as used in this motion and as used in Defendants' Motion to Compel, refers to "the conglomerate of entities including ABH Holdings S.A., Alfa Capital, AlfaStrakhovanie Group, Alfa Asset Management (Europe) S.A., A1, X5 Retail Group, Rosvodokanal Group, and IDS Borjomi International Group . . . and LetterOne, the international investment business co-founded by Plaintiffs in 2013." *Id. See also* ECF No. 78-20, Pls.' First Set of Doc. Reqs. to Defs., Definitions; ECF No. 78-21, Pls.' Proposed

statements in CIR 112 "defamed the Plaintiffs *and Alfa*," and they sought damages for alleged "serious injury to their personal, *professional*, and *institutional* reputations." Am. Compl. ¶ 33 (emphasis added). Plaintiffs further represented to Defendants that "most of Plaintiffs' potentially responsive electronic communications" were controlled by Alfa and thus they would not produce the majority of their responsive documents. Ltr. from J. Levy to A. Lewis (Apr. 16, 2020), ECF No. 78-10, at 7.

As the parties' correspondence unfolded over several months, Plaintiffs repeatedly insisted they lacked possession, custody, or control of their Alfa documents:

> Plaintiffs . . . are unable to produce documents that belong to Alfa and LetterOne in this litigation (including email) because they lack control over those documents. [Counsel], on behalf of Plaintiffs, made a request of counsel for Alfa and LetterOne, and we were advised that "documents in the possession, custody, or control of Alfa and LetterOne would not be made available to Plaintiffs for production by Plaintiffs in this action."

Ltr. from A. Lewis to J. Levy (Apr. 24, 2020), ECF No. 78-11, at 5; *see also* Email from A. Lewis to J. Levy (April 2, 2020), ECF No. 78-9; Ltr. from A. Lewis to J. Levy (Mar. 12, 2020), ECF No. 78-8, at 5.

Defendants requested that Plaintiffs (the majority owners of Alfa) collectively seek to obtain their documents by, at the very least, submitting to Alfa a written request to obtain their documents. Plaintiffs declined to make any such effort to obtain their documents:

> Plaintiffs' request to Alfa and LetterOne for documents was made through counsel, *orally*. . . . Skadden . . . responded *orally* that the documents belong to the entities and . . . denied Plaintiffs' request for access to the documents for purposes of Plaintiffs' production in connection with this litigation. . . .

Ltr. from A. Lewis to J. Levy (June 2, 2020), ECF No. 78-14, at 3 (emphasis in original).

---

Search Terms for Pls.' Doc. Reqs. To Defs., Mar. 23, 2020 (requesting that Defendants perform document searches for "Alfa or Alpha or LetterOne or L1").

Rather than memorialize any concerted effort to obtain their documents, Plaintiffs repeatedly relayed to Defendants the substance of a single *oral* conversation, treated that oral conversation as the end of the matter, and referred Defendants to counsel for LetterOne and Alfa.

Defendants, in turn, emphasized that Plaintiffs' Alfa documents were within Plaintiffs' control and that those documents should be produced. Moreover, Defendants contended that requiring Defendants to negotiate the scope of party discovery with "non-party" counsel was a farcical exercise. As Defendants wrote in May 2020:

> We are skeptical that Plaintiffs and Alfa and LetterOne have not coordinated this dynamic as a means to shield documents from discovery and to impose an undue burden on Defendants to negotiate the production of Plaintiffs' documents from a third-party and, if necessary, litigate any disputes against such third-party.

Ltr. from J. Levy to A. Lewis (May 22, 2020), ECF No. 78-15, at 5.

### B.   Plaintiffs Refused to Produce Several Categories of Responsive Documents within Their Possession.

In parallel to the dispute concerning Plaintiffs' Alfa documents, Plaintiffs also withheld categories of documents that Plaintiffs conceded were in their possession, custody, or control. Each of Plaintiffs' objections to producing these documents violated the parties' prior discovery agreements, the law, or both.

#### 1.   *UK Proceeding Documents*

Plaintiffs refused to produce documents related to *Aven v. Orbis*, QB-2018-6349, a parallel proceeding in which Plaintiffs brought suit against a United Kingdom defendant to contest the publication of the same CIR 112 statements Plaintiffs have challenged in this action. Plaintiffs never denied the relevance of these documents; instead, Plaintiffs claimed the documents were "publicly available" and thus they had no obligation to produce them. *See, e.g.,* Ltr. from A. Lewis to J. Levy (June 25, 2020), ECF No. 94-5, at 9. Defendants informed Plaintiffs that obtaining *Aven*

*v. Orbis* documents would require Defendants to submit an application to the High Court and likely attend a hearing in the UK, and that therefore the documents were not "publicly available" and equally accessible to either party. *See* Ltr. from J. Levy to A. Lewis (June 10, 2020), ECF No. 78-18. When Plaintiffs refused to produce these relevant documents within their control, Defendants emphasized that acquiring *Aven v. Orbis* documents from the public domain "requires the expenditure of resources and time for US-based defendants to engage UK counsel for the purpose of obtaining permission of UK courts to access UK court documents." Ltr. from J. Levy to A. Lewis (June 30, 2020), ECF No. 94-3, at 5. Plaintiffs, however, again refused to produce their documents. *See* Ltr. from A. Lewis to J. Levy (Aug. 4, 2020), ECF No. 94-4, at 4 ("If U.K. court filings are obtainable by the general public, they are publicly available.").

### 2. *Mueller Documents*

Plaintiffs refused to produce documents related to Petr Aven's cooperation with the Mueller Investigation. Defendants informed Plaintiffs:

> Based on the publicly available, redacted version of Plaintiff Aven's 302 and the publicly available, redacted version of the Mueller Report, the actions that are the subject of Plaintiff Aven's interview, proffer, and grand jury testimony are relevant to the substantial truth of CIR 112, namely that Plaintiffs perform favors for Putin and provide him with advice on foreign policy matters.

Ltr. from J. Levy to A. Lewis (June 30, 2020), ECF No. 94-3, at 4. As justification for withholding these documents, Plaintiffs first claimed, falsely, that documents related to Mr. Aven's cooperation with the Mueller Investigation were beyond the temporal scope of discovery. Plaintiffs later claimed, also falsely, that such documents were subject to "grand jury secrecy" and "immune from production." Ltr. from A. Lewis to J. Levy (Aug. 4, 2020), ECF No. 94-2, at 3.[3]

---

[3] After Plaintiffs agreed to a process in which the parties would first produce documents created between January 1, 2016 and October 3, 2017, and thereafter would make separate requests for relevant documents outside that date range, Plaintiffs claimed that requests for "production of

### 3. *Spanish Proceeding*

Plaintiffs refused to produce documents relevant to Spain's criminal investigation of Fridman—an investigation that included accusations that Mr. Fridman made illicit payments to the son of the Russian Minister of the Interior. Defendants informed Plaintiffs that such documents bear directly "on the substantial truth of CIR 112, specifically co-operation between Alfa and the Kremlin, the exchange of favors between them, and Plaintiffs' involvement in bribery." Ltr. from J. Levy to A. Lewis (June 30, 2020), ECF No. 94-3, at 4. In turn, Plaintiffs claimed that documents from this investigation "have nothing to do with the defamatory allegations . . . that Plaintiffs purportedly have a relationship with Putin involving corruption and bribery." Ltr. from A. Lewis to J. Levy (Aug. 4, 2020), ECF No. 94-2, at 3.

### 4. *Kroll Report*

Plaintiffs refused to produce the Kroll Report, a 1990s investigation of post-Soviet corruption that Plaintiff Aven claimed was in his possession. Plaintiffs claimed that the Kroll Report, commissioned to investigate allegations of corruption throughout the Russian Government during years in which Aven and Putin interacted as government officials, "relates to activities that occurred decades before the publication of CIR 112 . . . and does not relate in any way to Vladimir Putin, to the Plaintiffs, or . . . CIR 112." *Id*. Plaintiffs ignored Defendants' contention that a report concerning a widely publicized 1990s investigation examining post-Soviet corruption in the Russian government while Aven was serving as a Kremlin minister bears directly on the

---

Mueller Investigation documents once again ignore the fact that any such documents are outside the date range agreed to by the parties . . . " *See* Ltr. from A. Lewis to J. Levy (Aug. 4, 2020), ECF No. 94-4, at 4. Defendants were accused of "bullying tactic[s]" by relying on the aforementioned agreement between the parties. *Id.* Plaintiffs, apparently acknowledging the bald inaccuracy of their accusations, abandoned this objection before the Court and relied instead upon a misreading Fed. R. Crim. P. 6(e). *See* Pls.' Opp'n, ECF No. 105, 16-20; Defs.' Reply, ECF No. 106, at 9-13.

substantial truth or falsity of CIR 112, a document that concerns, *inter alia,* "the history and current state of relations" between Plaintiffs and the Kremlin.

### C. Plaintiffs Refused to Incorporate Defendants' Affirmative Defenses When Reviewing Their Documents and Refused to Produce Documents Generated Prior to 2016.

In asserting affirmative defenses in this lawsuit, Defendants contend that Plaintiffs' actions, including their decades of engagement with the media and government, necessarily make Plaintiffs public figures for the purposes of the statements in CIR 112. Likewise, Defendants contend that the statements in CIR 112—reflecting a decades-long pattern of conduct among Plaintiffs, Alfa, Vladimir Putin, and the Russian government—are substantially true. Accordingly, Defendants emphasized that Plaintiffs must produce documents relevant to these affirmative defenses, because Rule 26 defines the scope of discovery as including documents "relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Documents relevant to Defendants' affirmative defenses include pre-2016 documents.

Although Plaintiffs agreed to review and produce responsive documents according to those terms, Ltr. from A. Lewis to J. Levy (Apr. 24, 2020), ECF No. 78-11, at 3, Plaintiffs' production breached the agreement. As of May 4, 2020—the deadline for producing documents—Plaintiffs had produced a total 240 documents, only *three* of which were generated prior to 2016.[4]

When Defendants asked Plaintiffs to justify the limited scope of their production, Plaintiffs were reluctant to memorialize their incorrect position on relevance, as evidenced by their evasive responses in correspondence, as set forth below:

**Defendants:** "[Plaintiffs agreed to] review and produce documents created before January 1, 2016 that are related to either (a) the substantial truth or falsity of the

---

[4] In total, Plaintiffs produced 175 documents generated in previous litigation, six printed copies of Plaintiffs' resumes, and 59 personal e-mails and stray documents from Plaintiffs Fridman and Aven. Plaintiff Khan produced no documents.

alleged defamatory statements or (b) Plaintiffs' or their representatives' communications with the media . . . [P]lease specify whether you are withholding responsive documents that pre-date January 1, 2016 . . . "

Ltr. from J. Levy to A. Lewis (May 22, 2020), ECF No. 78-15, at 3-4.

    **Plaintiffs:** "[S]ubject to the General Statements and Objections, Plaintiffs are not withholding documents responsive to the Requests and Interrogatories other than as indicated in the original Responses and Supplemental Responses."

Ltr. from A. Lewis to J. Levy (June 2, 2020), ECF No. 78-17, at 1.

    **Defendants:** "This response still does not clarify whether you are withholding documents . . . on the grounds of any of your "General Statements and Objections." . . . If you have not done so already, please review Plaintiffs' pre-2016 documents for relevance based on Defendants' position on what is relevant . . . "

Ltr. from J. Levy to A. Lewis (June 10, 2020), ECF No. 78-18, at 8-9.

    **Plaintiffs:** "Plaintiffs confirm that they . . . did not withhold documents on the basis of Plaintiffs' General Objections. . . . Plaintiffs did not identify responsive documents that may exist dated outside the initial date ranges, as set forth in the General Statements and Objections, as being withheld."

Ltr. from A. Lewis to J. Levy (June 25, 2020), ECF No. 94-5, at 8.

    **Defendants:** "[W]e asked whether you reviewed Plaintiffs' documents based on Defendants' position that documents and events prior to 2016 are relevant to this case or whether you reviewed them based only on Plaintiffs' position that, with exception of documents related to Govorun, pre-2016 documents are not relevant to this case. Please clarify whether you have reviewed . . . documents for relevance, ***based on Defendants' position*** that CIR 112 and the allegedly defamatory statements . . . relate to events that transpired between the 1990s and 2016."

Ltr. from J. Levy to A. Lewis (June 30, 2020), ECF 94-3, at 1 (emphasis in original).

    **Plaintiffs:** "[D]ocuments are relevant to truth or falsity insofar as they are relevant to the truth or falsity of the specific defamatory statements challenged by Plaintiffs in this lawsuit. Aside from the Govorun-related defamatory statement, the defamatory allegations challenged by Plaintiffs in this lawsuit are about Plaintiffs' purported conduct in 2016. . . . In this regard, Plaintiffs have not withheld pre-2016 documents."

Ltr. from A. Lewis to J. Levy (Aug. 4, 2020), ECF 94-4, at 1.

Each time Defendants requested that Plaintiffs clarify the scope of their document review, Plaintiffs offered dissembling answers and reiterated that the documents Plaintiffs had produced as of May 2020—three documents—were the totality of documents generated prior to 2016 that relate to either Plaintiffs' public figure status or the substantial truth or falsity of CIR 112.

### III.   Defendants Moved to Compel Production of Plaintiffs' Documents.

#### A.   *Motion to Compel Plaintiffs' Alfa Documents, ECF No. 78*

On June 12, 2020, Defendants moved to compel the production of Plaintiffs' Alfa documents. *See* Defs.' Mot. to Compel, ECF No. 78. Litigation of the dispute included an appearance by Alfa Bank, which moved to intervene to defend Plaintiffs' failure to comply with their discovery obligations. *See* Alfa Mot. to Intervene, ECF No. 80.

Defendants argued, *inter alia*: "Plaintiffs have the legal right, authority, or practical ability to obtain their Alfa documents and thus are required to do so . . . Plaintiffs' claims that they cannot review or produce *their* Alfa documents . . . are untenable. Plaintiffs have not even . . . [sent] Alfa's other officers and directors a letter requesting access to their documents for their lawsuit." Defs.' Mot. to Compel, ECF No. 78, at 2 (emphasis in original).

Plaintiffs contended, *inter alia*: "Under applicable Russian law . . . Plaintiffs do not have the legal right to obtain Alfa Bank documents . . . Nor do Plaintiffs' indirect ownership interests in Alfa Bank enable them to access Alfa Bank's documents to use in this litigation." Pls.' Opp'n, ECF No. 84, at 8-9.

#### B.   *Motion to Compel Plaintiffs' Review and Production Documents Responsive to Plaintiffs' Public Figure Status and the Substantial Truth or Falsity of CIR 112.*

On August 14, 2020, Defendants moved to compel the production of relevant documents being withheld by Plaintiffs because Plaintiffs refused to review their documents for relevance to Defendants' affirmative defenses. *See* Defs.' Mot. to Compel, ECF No. 94.

Defendants argued, *inter alia*, that "[i]n order to avoid the daunting challenge of disproving the existence of their well-established relationship with Putin and the Kremlin, Plaintiffs have implausibly tried to cabin the meaning of CIR 112 and the alleged defamatory statements within it, and thereby deny Defendants discovery that is relevant to the substantial truth or falsity of CIR 112..." Defs.' Mot. to Compel, ECF No. 94, at 1.

Plaintiffs contended, *inter alia*, that "the imposition of a requirement to produce documents created over a thirty-year time frame would . . . require the production of irrelevant documents. Plaintiffs, as masters of their complaint, have primarily sued Defendants for publishing statements that allege Plaintiffs' purported misconduct in 2016." Pls.' Opp'n, ECF No. 105, at 12.

## IV.    The Court Granted Both of Defendants' Motions to Compel.

On March 30, 2021, this Court granted both of Defendants' Motions to Compel in full. With respect to Plaintiffs' obligation to produce their Alfa and LetterOne documents advanced by both Plaintiffs and Alfa, the Court held:

> Upon consideration of [78] Motion to Compel Plaintiffs to Produce their Documents, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that, within 30 days of the date of this Order, plaintiffs shall collect, review, and produce all responsive documents from Alfa, including but not limited to plaintiffs e-mails, electronic documents, calendars, hard-copy documents, text messages and other messaging apps, and communications of anyone on behalf of plaintiffs. SO ORDERED.

Minute Order (Mar. 30, 2021).

With respect to Plaintiffs' refusal to produce specific categories of responsive discovery as well as Plaintiffs' refusal to incorporate Defendants' affirmative defenses when reviewing their documents, the Court held:

> "Upon consideration of [94] Motion to Compel Plaintiffs Production of their Documents, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that, within 30 days of the date of this Order, plaintiffs shall collect, review, and produce all documents within their possession, custody, or control

relevant to: (a) the substantial truth or falsity of CIR 112 and the alleged defamatory statements within it, and (b) defendants public figure defense. It is further ORDERED that, within 30 days, plaintiffs shall produce to defendants (1) a copy of the Kroll Report, (2) documents relating to the Spanish investigation of Plaintiff Fridman, (3) relevant documents relating to the Mueller investigation, and (4) exhibits and documents from Aven v. Orbis. SO ORDERED. Minute Order Upon Consideration of [78] Motion to Compel Plaintiffs to Produce Their Documents (Mar. 30, 2021).

Minute Order (Mar. 30, 2021).

On April 29, 2021, in response to these Court Orders and a nearly a year after their documents were due to be produced, Plaintiffs produced additional documents to Defendants.[5]

## V.    Prior to the Opening of Discovery in This Case, Plaintiffs Produced Their Alfa Documents in Parallel Litigation Concerning CIR 112.

Plaintiffs' court-ordered April 29, 2021 production included the documents they produced in *Aven v. Orbis*, their parallel United Kingdom lawsuit concerning CIR 112. The *Aven v. Orbis* documents make clear that when Plaintiffs misrepresented to this Court that "Plaintiffs do not have the influence Defendants ascribe to them, and . . . Plaintiffs do not have the ability to obtain the documents," Pls.' Opp'n, ECF No. 84, at 13,[6] Plaintiffs not only had responsive Alfa documents in their possession, custody, or control, but they had already produced them in litigation concerning CIR 112.[7] As one example of how this arrangement worked in practice: Plaintiffs claimed in this

---

[5] Plaintiffs' April 29, 2021 production remains deficient. While the Parties are in the process of conferring further in an attempt to resolve this dispute out of court, Plaintiffs have failed to comply with the majority of the Court's Orders. Among the deficiencies that remain outstanding, nearly 14 months after documents were due and three months after the Court's March 30 Orders: Plaintiffs produced almost no correspondence with the Russian government, no correspondence with Oleg Govorun, almost no Alfa calendar entries or hard copy documents, almost no documents related to Plaintiff Khan, no documents related to the Russian government's $27.73 billion purchase of Alfa's energy company, TNK, and no documents related to media reports that Vladimir Putin's daughter, Maria Vorontsova (née Faassen), has been employed by Alfa-Endo.

[6] Plaintiffs also stated: "Plaintiffs do not own or control the Companies' documents," Opp'n 1, ECF No. 84, and "Plaintiffs . . . have denied having control over the Companies' documents," *id.* at 18-19. These statements were false.

case that they lacked control over the personnel file relating to Oleg Govorun's employment at Alfa Bank and refused to produce it to Defendants on that basis. Pls.' Resps., ECF No. 78-5, at 28. *See also* CIR 112, ¶ 2. Meanwhile, Plaintiffs had already produced the same file in *Aven v. Orbis*—a fact that was confirmed by Plaintiffs' Court-ordered April 29, 2021 production in this case, which included that file among a tranche of documents produced in the UK proceeding. Plaintiffs' Court-ordered production even included an English translation of the Govorun personnel file that was previously produced in the UK and appears to have been prepared specifically for litigation concerning CIR 112. *See Aven v. Orbis* Documents, Ex. A (Sealed), at "Govorun Alfa Bank Files."

Plaintiffs's Court-ordered April 29, 2021 production also included an array of documents Plaintiffs had previously claimed were beyond their possession, custody or control—despite having produced the same documents in *Aven v. Orbis*. For example, Plaintiffs produced the following documents in the UK before later withholding the same documents in this proceeding:

- An email to the Alfa Bank addresses of Plaintiffs Fridman and Aven and the TNK-BP address of Plaintiff Khan detailing the media's coverage of Alfa's long-running dispute with British Petroleum.

- An email from Richard Burt, an American public relations specialist, to Plaintiff Aven's Alfa Bank email address concerning outreach to the Trump Transition Team, as later cited in the Mueller Report.

- An email from a UK public relations specialist to Plaintiff Aven's Alfa Bank address and Plaintiff Fridman's LetterOne address, outlining proposed talking points for conversations with U.S. lawmakers.

- An email from Richard Burt to Plaintiff Aven's Alfa Bank address and Plaintiff Fridman's LetterOne address, discussing lunch with a former US Ambassador to the Russian Federation.

- An email from a UK public relations specialist to Plaintiff Khan's LetterOne email address, in which the parties discussed strategy concerning a proposed photo shoot with Vladimir Putin.

*See Aven v. Orbis* Documents, Ex. A (Sealed), at Excerpts from Plaintiffs' UK Production.

This obfuscation is another example of Plaintiffs' pattern of manufacturing any excuse, however flimsy, to shirk their Rule 34 obligations and force Defendants to expend resources on additional litigation.

**VI.     In the Same UK Litigation Concerning CIR 112, Plaintiffs Represented that the Relevant Period of Discovery Was 1994-2016.**

In *this* litigation, Plaintiffs took the irrational position that relevant discovery should be limited to the year 2016, *see* Pls.' Opp'n, ECF No. 105, at 7 ("DEFENDANTS' REQUESTS FOR DOCUMENTS SPANNING A THIRTY-YEAR TIME PERIOD SEEK IRRELEVANT DOCUMENTS"); however, the *Aven v. Orbis* documents make clear that Plaintiffs took a different position in their UK litigation concerning CIR 112.

Plaintiffs' compliance with UK civil procedure rules included the completion of a form outlining the scope of their electronic discovery in advance of document production in *Aven v. Orbis*. *See Aven v. Orbis* documents, Ex. A (Sealed), at "Plaintiffs' Disclosures re: Electronic Discovery."[8] Plaintiffs' disclosures, submitted May 22, 2019, identify the date range of their document review as January 1, 1994 to September 30, 2016. *Id.* In the instant action, Plaintiffs produced only *three* documents generated prior to 2016, repeatedly disputed Defendants' position

---

[8] Plaintiffs applied confidentiality designations to each page of the more than 20,000 documents they recently produced, including these disclosures—court documents that Plaintiffs long maintained are "publicly available." *See* Pls.' Opp'n, ECF No. 105, at 16-20. Defendants asked whether Plaintiffs would remove these designations to permit for a public filing of these documents, especially since Plaintiffs have claimed these same documents are "publicly available;" Plaintiffs refused. Defendants maintain that Plaintiffs lack justfication for these designations, and that Plaintiffs' overbroad designations are a violation of the Protective Order in this case. *See* Protective Order, ECF No. 67, at 4 ("Each Party . . . that designates information or items for protection . . . must take care to limit any such designations"). In order to timely pursue the instant motion, and after conferring with Plaintiffs, Defendants have sought leave of the Court to file under seal the documents contained in Exhibit A that Plaintiffs have designated as "Highly Confidential." Defendants, however, do not waive their objections to these designations and maintain that Plaintiffs have improperly designated their documents as "Highly Confidential."

that CIR 112 concerns conduct that spans nearly 30 years, and left Defendants with no alternative but to seek further relief from the Court.

## VII. The Instant Dispute.

Pursuant to Rule 37(a)(5)(A), and in light of the months of additional time and expense incurred as a result of Plaintiffs' conduct, Defendants now move to recover the reasonable expenses incurred in moving to compel Plaintiffs to meet their discovery obligations.

## LEGAL STANDARDS

Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure requires a court, after granting a motion to compel discovery, to order the opposing parties, their counsel, or both to reimburse the movant for "reasonable expenses" associated with the successful motion, barring certain limited exceptions. Fed. R. Civ. P. 37(a)(5)(A). Rule 37(a)(5)(A) provides:

> If the motion [to compel] is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>     (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>     (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>     (iii) other circumstances make an award of expenses unjust.

*Id.*

"[T]he language of the Rule itself is mandatory, dictating that the Court *must* award expenses upon granting a motion to compel disclosure unless one of the specified bases for refusing to make such an award is found to exist." *DL v. District of Columbia*, 251 F.R.D. 38 (D.D.C. 2008) (emphasis added) (quoting *Cobell v. Norton*, 226 F.R.D. 67, 90 (D.D.C. 2005)); *see Rickels v. City of South Bend*, 33 F.3d 785, 786 (7th Cir. 1994) (Easterbrook, J.) (explaining that the rule "presumptively requires every loser to make good the victor's costs"). The opposing

party—that is, the party against whom an award of expenses is sought—bears the burden of persuading the court that one of the specified exceptions applies. *See Sigma-Tau Industrie Framaceutiche Riunite, S.P.A. v. Lonza, Ltd.*, 106 F. Supp. 2d 8, 12 (D.D.C. 2000); *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 144, 147 n.2 (D.D.C. 1999).

Rule 37(a)(5)(A) is not punitive. Rather, the purpose behind the rule's cost-shifting mechanism is to disincentivize gamesmanship in discovery. *See* Fed. R. Civ. 37 advisory committee's note (1970) (characterizing Rule 37(a)(4)—now Rule 37(a)(5)(A)—as "the most important available sanction to deter abusive resort to the judiciary"). Through its "great operative principle," *i.e.*, that "the loser pays," 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2288 (3d ed. 1998), the rule coaxes parties to cooperate during discovery and to resolve disputes without the court's intervention. *See Rickels*, 33 F.3d at 787 ("Fee shifting . . . curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims.").

## ARGUMENT

This Court granted in full Defendants' Motions to Compel at issue here. *See* Minute Orders of Mar. 30, 2021; ECF Nos. 78 & 94. Accordingly, under Rule 37(a)(5)(A), Defendants are entitled to recover their reasonable expenses in making the motions. None of the Rule's exceptions applies to the facts at hand, and Plaintiffs cannot meet their burden to show otherwise.

First, Defendants made ample efforts to obtain party discovery without resort to judicial action. *See* Fed. R. Civ. P. 37(a)(5)(A)(i). In making their motions, Defendants properly certified under Rule 37(a)(1) that they had conferred with opposing counsel in an effort to obtain the discovery without court action. In turn, Plaintiffs acknowledged that the parties had engaged in a months-long meet-and-confer process, during which Plaintiffs were unequivocal in stating they

would not turn over the requested documents. *See* Background, *supra* at 3-11. Defendants satisfied their obligations under Rule 37(a)(1) and Local Rule 7(m) and are now properly pursuing reimbursement for their reasonable expenses under Rule 37(a)(5)(A).

Second, Plaintiffs' obstruction was not substantially justified. Indeed, their refusal to produce their Alfa documents cannot be justified on any grounds at all. Plaintiffs, it is now clear, were not merely in control of these documents; they had the documents in their actual possession and had, in fact, already produced them in separate legal proceedings concerning CIR 112. Both as a matter of law and a matter of fact, Plaintiffs' repeated insistence that they lacked "possession, custody, or control" over these documents was false.

Nor was there any excuse for Plaintiffs' refusal to produce relevant and responsive documents illuminating their decades-long relationship with Vladimir Putin and other Kremlin officials. The Federal Rules of Civil Procedure are quite clear: each party in a civil case is entitled to pursue discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Here, it is Defendants' position that the challenged statements are substantially true and that Plaintiffs are limited-purpose public figures. *See* Defs.' Answer, ECF No. 50, at 8-9. As a rote matter of civil procedure, Defendants were entitled to request documents relevant to those affirmative defenses and obtain production of all items in Plaintiffs' possession that were responsive to such requests. Plaintiffs' recalcitrance, premised on the theory that nothing is relevant unless they deem it so, lacked any basis in the law. *See* Pls.' Opp'n, ECF No. 105, at 7 ("Plaintiffs, as masters of their complaint, have primarily sued Defendants for publishing statements that allege Plaintiffs' purported misconduct in 2016").

Finally, given Plaintiffs' conduct and circumstances, an award of expenses is not unjust. Plaintiffs have vast resources to spend on legal services. They chose to withhold documents

without substantial justification, after repeated demands by Defendants and multiple opportunities to cure their discovery deficiencies, requiring Defendants to expend resources to seek court orders compelling Plaintiffs to meet their discovery obligations. It is fair and appropriate to order Plaintiffs to reimburse Defendants for their reasonable expenses, as Rule 37(a)(5)(A) requires.

## I.   PLAINTIFFS UNJUSTIFIABLY WITHHELD THEIR ALFA DOCUMENTS, EVEN THOUGH THEY HAD PRODUCED THE SAME DOCUMENTS IN SEPARATE LEGAL PROCEEDINGS.

Defendants' first motion sought to compel Plaintiffs to produce their responsive Alfa e-mails, electronic documents, calendars, hard-copy documents, text messages, communications on other messaging apps, and communications of anyone on behalf of Plaintiffs. Defendants' motion, granted in full by the Court on March 30, 2021, became necessary because Plaintiffs insisted they lacked the ability and/or authority to obtain, review, and produce their Alfa documents. *See* Pls.' Resps., ECF No. 78-5, at 3-4 (representing that Plaintiffs would not produce "documents within the possession, custody, or control of non-parties over whom Plaintiffs have no authority and/or control"); ECF No. 84, at 13 ("[T]hat the [Alfa] Companies have refused Plaintiffs' requests for the documents indicates that Plaintiffs do not have the influence Defendants ascribe to them, and that Plaintiffs do not have the ability to obtain the documents").

This was false. Plaintiffs, we now know, had access to their Alfa documents and produced them in *Aven v. Orbis*. Their refusal to produce the same documents here was a breach of their discovery obligations that generated an avoidable dispute and became a drain on the resources of both Defendants and the Court.

### A. Defendants Pressed Plaintiffs for Months to Produce Their Documents without Court Action.

Defendants attempted in good faith to resolve this issue without involving the Court, as evidenced by the parties' extensive communications in the months leading to the filing of

Defendants' motion in June 2020. *See* Background, *supra* at 3-6. Defendants maintained, and the Court's March 30 Order confirmed, that the Federal Rules entitled them to obtain *Plaintiffs'* responsive documents directly from Plaintiffs. After months of correspondence made it clear that Plaintiffs would not alter their position or use their influence at Alfa entities to obtain and produce their responsive discovery, Defendants were forced to seek relief from the Court.

### B. Plaintiffs Already Had the Requested Documents in Their Possession, Custody, or Control.

Plaintiffs cannot credibly assert that their objection to producing their Alfa documents was substantially justified, a threshold that implies a reasonable basis in both law and fact. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (drawing on Rule 37 precedent and determining that the phrase "substantially justified" means there is a "reasonable basis both in law and fact" for the party's contention, such that it is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person" (internal quotations omitted)). *See also Parsi v. Daioleslam*, 778 F.3d 116, 127 (D.C. 2015) ("A party is 'substantially justified' in opposing discovery . . . 'if reasonable people could differ as to the appropriateness of the contested action.'" (quoting *Pierce*, 487 U.S. at 565)). Plaintiffs repeatedly insisted that they "do not have possession, custody, or control of Alfa and LetterOne documents (including their corporate email accounts)." *See* Ltr. from A. Lewis to J. Levy (May 15, 2020), ECF 78-13, at 2. What is now clear is that Plaintiffs' representations to defense counsel were misleading, if not outright dishonest.

A party's obligation to produce documents under its "control" is well established. "'Control' is defined as the legal right, authority or ability to obtain documents upon demand." *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 254 (D.C. Cir. 2005) (quoting *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991)). "[W]hen a party has a right to obtain a copy of a document, it controls that document and must produce it when requested

to do so under Rule 34." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, No. CV 04-798 (PLF/GMH), 2018 WL 8867711, at \*9 (D.D.C. Jan. 19, 2018) (quoting, in parenthetical, *Engel v. Town of Roseland*, No. 06-CIV-430, 2007 WL 2903196, at \*4 (N.D. Ind. Oct. 1, 2007)). "Control," as even Plaintiffs acknowledged, requires nothing more than a "practical ability to obtain" the requested documents. *Bush v. Ruth's Chris Steak House, Inc.*, 286 F.R.D. 1, 5 (D.D.C. 2012) (quoting *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007); Pls.' Opp'n, ECF No. 84, at 2.

In the instant action, Plaintiffs had previously obtained many of the same documents requested by Defendants. Not only were those documents squarely within Plaintiffs' control, but Plaintiffs had produced them for parallel litigation concerning CIR 112. *See* Background, *supra* at 14-16. Plaintiffs misrepresented to this Court and Defendants that the requested documents were not accessible to them. *See* Pls.' Opp'n, ECF No. 84, at 1 ("Plaintiffs do not own or control the Companies' documents"); *id.* at 18-19 ("Plaintiffs . . . have denied having control over the Companies' documents."). Given Plaintiffs' access to their Alfa documents, there is no question that they had the practical ability to obtain and produce them and thus had an "unequivocally clear obligation" to produce the documents, just as they had in the UK proceedings. *Cobell*, 226 F.R.D. at 91 (stating that "a party's position is not substantially justified" for purposes of Rule 37(a)(5)(A) if, in response to a request for documents, the party "defies an unequivocally clear obligation" to produce the documents) (quoting *Boca Investerings P'ship v. United States*, No. 97-602PLF/JMF, 1998 WL 647214, at \*2 (D.D.C. Sept. 1, 1998)).

### C. Plaintiffs Never Denied That They Could Exercise Their Authority, Collectively, to Obtain the Requested Documents from Alfa and LetterOne, If Necessary.

Plaintiffs could have, and should have, acknowledged that many of the requested Alfa documents were already within their possession or custody and simply produced their responsive Alfa documents to Defendants, obviating the need to involve the Court. Instead, Plaintiffs contrived a dispute over whether they, as ultimate beneficial owners and controlling shareholders of Alfa, had "control" over their corporate documents. This contrivance forced Defendants to seek relief from the Court, which determined that Plaintiffs were dutybound to produce the documents. Plaintiffs never marshalled any reasonable arguments to the contrary.

Defendants' core argument, supported by case law, was that Plaintiffs' *collective* majority ownership of Alfa and its affiliated entities was so comprehensive that there could be no doubt they had the practical ability to obtain and produce the requested documents. *See* Defs.' Mot. to Compel, ECF 78, at 20-29. Clearly this is true, as evidenced by the fact that Plaintiffs *did* obtain many of these documents and produce them in the UK proceedings. Plaintiffs' memorandum in opposition to the motion sidestepped this point, preferring to characterize Plaintiffs merely as "three individual persons." *See* Pls.' Opp'n, ECF 84, at 1; *see also id.* at 14 (describing Plaintiffs as "three natural persons"). The memorandum went so far as to claim that "Plaintiffs do not control their corporate email or other corporate documents any more than any other employees of the Companies," *id.* at 12, as though Plaintiffs had no greater authority or influence than entry-level employees. Such an assertion is absurd on its face.

Plaintiffs, submitting no sworn affidavits, never expressly challenged Defendants' contention that the three of them, *acting jointly*, could have obtained the documents from the companies. Even after Defendants asked Plaintiffs to seek the documents from Alfa in writing, Plaintiffs refused. Instead, Plaintiffs, who created Alfa and own 66% of its flagship enterprise, Alfa Banking Group, left the request to their US litigation counsel, who did nothing more than call

Alfa's US litigation counsel on the phone. Plaintiffs never personally appealed to the company they own and control for their documents. No one representing them ever reduced the request to writing. It is equally telling that Plaintiffs never asserted, in any of their pre-motion communications, that foreign law precluded them from complying with their discovery obligations and producing the requested documents. *See, e.g.,* Email from A. Lewis to J. Levy, ECF No. 78-9 (stating that outside counsel for Alfa and LetterOne declined Plaintiffs' counsel's oral request for documents, with no indication of the reason for the refusal). It was only after Defendants moved to compel that foreign law supposedly became an obstacle (an argument this Court rejected). Pls.' Opp'n, ECF No. 84, at 17.

Plaintiffs' invocation of foreign law was a smokescreen. First, "a federal court may order a party to comply with discovery, even if such compliance may violate another sovereign's law." *In re Vitamins Antitrust Litig.*, No. 99-197TFH, 2001 WL 1049433, at *10 n.20 (D.D.C. June 20, 2001); *see Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987) ("It is well settled that [foreign blocking] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." (citing *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204-06 (1958))). While a US district court may, as a matter of international comity, give some consideration to the "nature of the [foreign state's] sovereign interests in nondisclosure," the court is by no means "required to adhere blindly to the directives of such a statute." *Aerospatiale*, 482 U.S. at 544 n.29.

Second, it was Plaintiffs' burden, as the party invoking foreign law as a basis for resisting discovery, to "prov[e] what the foreign law is and why it impedes production." *In re Commodity Exch., Inc. Gold Futures & Options Trading Litig.*, No., 2019 WL 1988525, at *2 (S.D.N.Y. May

6, 2019) (quoting *S.E.C. v. Gibraltar Global Sec., Inc.*, No. 13-CV-2575, 2015 WL 1514746, at *2 (S.D.N.Y. 2015)). Plaintiffs did not come close to establishing that foreign laws deny Plaintiffs the practical ability to obtain their own work emails or other requested documents, or that Plaintiffs would encounter legal consequences of any kind if they acted on said abilities to meet their obligation in this case. Indeed, since the Court granted Defendants' motion, Plaintiffs have produced at least a portion of their relevant documents and have done so without subjecting themselves to any apparent reprisals in Russia or Luxembourg.

In sum, Plaintiffs' flurry of objections to the production of their corporate documents were not substantially justified. Plaintiffs' objections were not merely misplaced as a matter of law, they were utterly baseless and have been unsupported by fact at every turn.

## II.   PLAINTIFFS IMPROPERLY WITHHELD DOCUMENTS AS "PUBLICLY AVAILABLE" AND UNJUSTIFIABLY ATTEMPTED TO LIMIT THE SCOPE OF DISCOVERY BASED SOLELY ON THEIR OWN THEORY OF RELEVANCE.

Defendants' second motion, which this Court likewise granted in full, sought to compel specific categories of Plaintiffs' responsive discovery identified as well as Plaintiffs' documents relevant to two of Defendants' affirmative defenses: first, that CIR 112 and the statements therein are substantially true; and, second, that Plaintiffs' are limited-purpose public figures for purposes of the speech challenged in this lawsuit. Having succeeded on the motion, Defendants are now entitled to recoup their reasonable expenses under Rule 37(a)(5)(A). Plaintiffs cannot show that any of the Rule's enumerated exceptions bar recovery.

First, Plaintiffs' insistence that certain responsive documents in their possession need not be produced because they were "publicly available"—when, by their own definition, the documents were not freely available to Defendants—was needlessly vexatious and without justification. *See* LCvR App. A, D.C. Bar Voluntary Standards for Civility in Professional Conduct

(stating that attorneys should "not use any form of discovery . . . for harassment, unjustified delay, to increase litigation expenses, or any other improper purpose").

Second, Plaintiffs' attempt to broaden and misread the restrictions imposed by Federal Rule of Criminal Procedure 6(e) was a desperate and unjustified attempt to shield Petr Aven from complying with his discovery obligations and producing documents generated in the course of the Mueller Investigation.

Finally, there was no justification whatsoever for Plaintiffs' attempt to unilaterally dictate the scope of discovery. Plaintiffs' supposition that an allegedly defamatory statement means only what the plaintiff says it means is not only wrong as a matter of law, but it is undermined by the plain text of CIR 112 and Plaintiffs' previous disclosures in the United Kingdom. *See supra* at 16.

## A. Defendants Satisfied Their Obligation to Attempt in Good Faith to Obtain the Requested Documents before Filing Their Motion to Compel.

Defendants' motion followed months of discussions with opposing counsel in which Defendants implored Plaintiffs to fulfill their obligation to produce the requested documents. These communications, culminating with a Rule 7(m) conference on August 12, 2020, satisfied Defendants' pre-motion obligations under the Federal Rules. *See* Background, *supra* at 6-11.

## B. Plaintiffs' Refusal to Produce Documents from the UK Proceedings Was Entirely Unjustified and Was Emblematic of Their Vexatious Conduct Throughout Discovery.

Any argument that Plaintiffs' opposition to Defendants' second motion to compel was "substantially justified" would be unavailing, first and foremost because of Plaintiffs' bad-faith refusal to produce documents that had previously been disclosed in the UK proceedings.

The parties agreed in March 2020 that neither party would have to search for or produce documents that are "publicly available," which *Plaintiffs themselves* defined as "documents that are freely available online or are available through a service such as Lexis or Westlaw." Ltr. from

A. Lewis to J. Levy (Mar. 12, 2020), ECF No. 78-8, at 10. Defendants, in correspondence, informed Plaintiffs that *Aven v. Orbis* documents were neither "freely available online" nor "available through a service such as Lexis or Westlaw." To obtain the documents, Defendants would have had to retain UK counsel and apply for a court order, with the understanding—spelled out in an official notice to High Court applicants—that "[m]ost applications will require a hearing and you will be expected to attend." *See* Ltr. From J. Levy to A. Lewis (June 10, 2020), ECF No. 78-18, at 9-10. Despite notice of these procedures, Plaintiffs refused to produce the documents. *See* Ltr. from A. Lewis to J. Levy (June 25, 2020), ECF. No. 94-5, at 9.

Plaintiffs were the party who drafted the parties' definition of "publicly available," and the same party who tried to alter the term's meaning when the agreed-upon definition became inconvenient, as production of the *Aven v. Orbis* documents would have exposed the varied misrepresentations advanced elsewhere in the course of Plaintiffs' discovery correspondence. This is exactly the sort of chicanery the Rule 37(a)(5)(A) cost-shifting mechanism was designed to deter. *See Spirit Realty, L.P. v. GH&H Mableton, LLC*, 319 F.R.D. 474, 475 (S.D.N.Y. 2017) ("Monetary sanctions under these rules serve two purposes: 'In part, they are intended to deter discovery abuses. At the same time, they are designed to compensate the prevailing party for expenses it would not have incurred had the sanctioned party conducted itself properly.'" (quoting *SJ Berwin & Co. v. Evergreen Entm't Grp.*, 1994 WL 501753, at *2 (S.D.N.Y. Sept. 14, 1994))).

It is of no moment to argue, as Plaintiffs did, that Defendants could have applied for an order from a foreign court to obtain the documents. Plaintiffs' initial definition of "publicly available" discovery was founded on the reasonable proposition that parties should be relieved of an obligation to produce documents in the public domain where such documents are equally accessible to either party. Plaintiffs' subsequent, audacious attempts to mischaracterize their *Aven*

*v. Orbis* documents as equally accessible to either party were at odds with the law. "The Federal Rules do not shield publicly available documents from discovery merely because of their accessibility. A limitation of this nature would lead to patently absurd consequences." *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 223 (D.D.C. 2015) (Leon, J.). The mere availability of an alternate process, however onerous, by which Defendants could have conceivably obtained the documents does not relieve Plaintiffs of their obligations to reduce litigation burdens where possible and produce these documents to Defendants directly. Plaintiffs' attempts to skirt those obligations were unreasonable and unjustified.

### C. The Law Bars Plaintiffs from Unilaterally Dictating the Meaning of the Allegedly Defamatory Statements.

Plaintiffs' abdication of their duties in the discovery process did not end there. Plaintiffs also fought to conceal documents they did not want to produce, on the false pretext that they, as the "masters of their complaint," were entitled to unilaterally decide what the allegedly defamatory statements mean, and therefore were permitted to narrow the scope of "relevant" documents. *See* Pls.' Opp'n, ECF No. 105, at 7, 12. Their arguments were not substantially justified. On the contrary, they were plainly and emphatically wrong as a matter of law.

Plaintiffs have identified the following statements as allegedly defamatory: (a) "RUSSIA/US PRESIDENTIAL ELECTION: KREMLIN-ALPHA GROUP COOPERATION" and (b) "Significant favours continued to be done in both directions, primarily political ones for PUTIN and business/legal ones for Alpha." Pls.' Suppl. Resp. to Interrog. No. 2, ECF No. 78-6. Defendants, seeking to show, among other things, that these statements were substantially true, sought documents illustrating the longstanding ties between Alfa and the Kremlin. Plaintiffs, however, insisted that the statements must be read to refer exclusively to events transpiring in 2016 and that, therefore, documents created before 2016 cannot be relevant and need not be produced.

28

*See* Pls.' Opp'n, ECF No. 105, at 7-8. Plaintiffs' position was rejected by the Court for obvious reasons.

First, the Federal Rules are clear: unless otherwise limited by the court, the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Defendants' defenses include substantial truth, and they are entitled to all nonprivileged documents relevant to this defense.

Second, Plaintiffs' undisputed right to *identify* the statements in CIR 112 that they consider defamatory does not include a right to *construe* those statements however they see fit. In assessing the substantial truth of an allegedly defamatory statement, a finder of fact must take the "publication . . . as a whole, and in the sense in which it would be understood by [those] to whom it was addressed." *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990). Plaintiffs are not entitled to unilaterally impose their interpretations of CIR 112 on Defendants and the Court. An analysis of a statement's substantial truth turns not on the interpretation offered by a defamation plaintiff, but on how the publication's intended audience understands the statement. *See Arpaio v. Zucker*, 414 F. Supp. 3d 84, 90 (D.D.C. 2019) ("'Substantially true' means that the 'gist' of the statement is true or that the statement is substantially true, as it would be understood by its intended audience." (quoting *Benic v. Reuters Am., Inc.*, 357 F. Supp. 2d 216, 221 (D.D.C. 2004))). Defendants were entirely within their rights to request documents establishing that statements in CIR 112, as a typical reader would interpret them, were substantially true. Plaintiffs' objections to these requests were without merit.[9]

---

[9] Plaintiffs' repeated characterization of themselves as "masters of their own complaint" was a complete non-sequitur. *See* ECF No. 105, at 7, 12. The dictum that a plaintiff is the master of his complaint generally refers to a plaintiff's power to choose which individuals or entities to name as defendants and whether the claims against them will derive from state or federal law. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005); *Holmes Grp., Inc. v. Vornado Air Circulation Sys.*,

### D. Plaintiffs' Other Objections to Producing Obviously Relevant Documents Were Likewise Unjustified.

Plaintiffs withheld many other responsive, relevant documents, all of which this Court ordered Plaintiffs to produce. In no instance were Plaintiffs' objections substantially justified.

First, Plaintiffs refused to search for or produce documents relevant to the issue of whether Plaintiffs are limited-purpose public figures, maintaining that only publicly available documents can bear on the analysis. *See* ECF 105, at 9. This is manifestly incorrect and at odds with the Court's own holdings on the issue. *See* Mem. Op., ECF No. 48 at 10 (noting that in spite of the publicly available reporting cited in Defendants' Motion to Dismiss, "I unfortunately cannot resolve the public figure issue at this stage on the record before me"). Many non-publicly available documents bear on the Court's public figure analysis—for example, documents showing that Plaintiffs hired public relations consultants, cultivated relations with members of the media, established lines of communication with people in positions of power or influence, or were otherwise seeking to influence public viewpoints. Plaintiffs' refusal to acknowledge these basic legal realities was unreasonable.[10]

---

*Inc.*, 535 U.S. 826, 831 (2002); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987). What the dictum most certainly does *not* stand for is the proposition that plaintiffs in a defamation suit have the right to decide what challenged statements mean, and how all parties are required to interpret those statements when evaluating the scope of relevant discovery.

[10] Courts engaged in the public figure analysis look to such factors as whether the defamation plaintiffs "assumed the risk of publicity and had access to channels of communication to defend themselves," *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 584-85 (D.C. Cir 2016); whether the plaintiffs "'thrust themselves to the forefront' of a public controversy 'in order to influence the resolution of the issues involved,'" *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 115 (D.C. Cir. 2017) (Kavanaugh, J.) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)); and whether their voluntary relationships with high-level officials show that they have "engaged in conduct that [they] knew markedly raised the chances that [they] would become embroiled in a public controversy," *Clyburn v. News World Commc'ns, Inc.*, 903 F.2d 29, 33 (D.C. Cir. 1990).

Second, Plaintiffs denied the relevance of Spanish investigation documents bearing on Defendants' affirmative defenses in this case. *See* ECF 105, at 15 ("Defendants fail to . . . show how an overvalued Spanish contract [provided by Alfa's subsidiary, Vimpelcom, to a company owned by the son of a Russian Minister] supplies evidence of the Plaintiffs' purported exchange of political and economic favors with *Putin*" (emphasis in original)). Here again, Plaintiffs advanced their own narrow definition of the conduct described in CIR 112 to justify their failure to produce documents that relate to Defendants' affirmative defense that CIR 112's statements accurately describe longstanding patterns of conduct between Plaintiffs and their agents, on one hand, and members of Vladimir Putin's government, on the other. Plaintiffs, without any justification, attempted to substitute their own proposed definition of relevance for longstanding principles of civil litigation. *See Alexander v. FBI*, 194 F.R.D. 316, 326 (D.D.C. 2000) ("(D)iscovery is not to be denied because it relates to a claim or defense that is being challenged. . . . " (quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2008 (2d ed. 1994)). To be clear: Documents related to allegations that Plaintiff Fridman bribed the family member of a high-ranking member of Putin's government (in furtherance of a scheme to depress the value of a Spanish company that Fridman was trying to acquire) bear directly on Defendants' defense that statements in CIR 112 are substantially true.[11] Plaintiffs were obligated to produce such documents.

---

[11] Plaintiffs also represented that Vimpelcom, Alfa's telecommunications subsidiary, is a "publicly traded company in which Mr. Fridman has no involvement in operational management . . . he merely sits on the Supervisory Board." Pls.' Opp'n, ECF No. 105, at 14. That statement is undermined by public statements by the Spanish prosecutor overseeing the investigation, who said that "a series of WhatsApps [messages] and emails . . . show that Fridman was aware of everything that was happening." *See Russia Oligarch Questioned by Spanish Criminal Court*, Agence France-Presse (Oct. 21, 2019), https://www.courthousenews.com/russia-oligarch-questioned-by-spanish-criminal-court/. Mr. Fridman has not produced a single text message or WhatsApp message in this case.

Third, Plaintiffs insisted that "grand jury secrecy" prevented them from producing documents related to the Mueller investigation. *See* Pls.' Opp'n, ECF No. 105, at 16-20. Federal Rule of Criminal Procedure 6(e), cited by Plaintiffs to support this position, applies to classes of individuals such as prosecutors and the grand jurors themselves, but imposes no limitations on a grand jury *witness*. *See* Fed. R. Crim. P. 6, Advisory Committee Notes, 1944 Adoption, Note to Subdivision (e) ("The Rule does not impose *any* obligation of secrecy on witnesses." (emphasis added)). Plaintiffs' attempts to misconstrue this rule were wholly lacking in merit. *See In re Grand Jury,* 490 F.3d 978, 989 (D.C. Cir. 2007) ("A grand jury witness is legally free to tell, for example, his or her attorney, family, friends, associates, reporters, or bloggers what happened in the grand jury . . . the witness can stand on the courthouse steps and tell the public everything the witness was asked and answered.") Plaintiffs likewise cited cases standing for the proposition that a party must meet heightened standards when compelling grand jury materials from a *third-party witness* or a *defendant*, none of which applied to the facts at hand. Misconstruing rules and introducing wholly irrelevant applications of the law, Plaintiffs had no legal justification for withholding their Mueller Investigation documents.[12]

Finally, Plaintiffs had no legitimate grounds to refuse to produce the Kroll Report. Plaintiffs' insistence that the report is irrelevant is belied by the facts, not the least of which is that Aven was the person who commissioned the report, and the report has since been cited by authors discussing the origins of Aven's relationship with Putin. *See Aven vs. Orbis* Trial Tr. Day 2, ECF No. 94-8, at 26:23–27:8 (Aven testified, "I'm the only one who has in my hands Kroll report. I have it. I have Kroll report . . . This [commission's report] was based on Kroll report. I have Kroll

---

[12] See also *supra* at 8 n.3. Plaintiffs' initial objections in correspondence with Defendants were so disingenuous that they abandoned them when briefing the Court.

report.") Even if this report were exactly what Plaintiffs claimed and supported Plaintiffs' contention that CIR 112's statements are false, Plaintiffs were still required to produce it to Defendants as evidence that bears directly on the case. *See also* Karen Dawisha, *Putin's Kleptocracy: Who Owns Russia?* 19, 118 (2014); Catherine Belton, *Putin's People* 60 (2020) (describing corruption during the years in which Aven and Putin worked together in St. Petersburg government, and noting that while Aven commissioned Kroll's independent report, "The reason Kroll came back largely empty-handed was that it received no assistance from the Russian government at all.").[13]

For more than a year, Plaintiffs' discovery tactics frustrated Defendants' fact-finding efforts, delayed adjudication of this case, and increased Defendants' litigation expenses in the interim. Plaintiffs, throughout these disputes, substituted their judgment and gamesmanship for the law. Plaintiffs' objections were made without substantial justification and do not excuse them from the cost-shifting procedures set forth by Rule 37(a)(5)(A).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion in full, ordering Plaintiffs or their counsel to pay the reasonable fees incurred by Defendants in moving to compel discovery.

---

[13] In the United Kingdom, Plaintiffs are now suing this author, Catherine Belton, and her publisher, Harper Collins. *See* Kadhim Shubber, Alex Barker, Henry Foy and Max Seddon, *Russian billionaires file lawsuits over book on Putin's rise*, The Irish Times (May 2, 2021), https://www.irishtimes.com/news/world/europe/russian-billionaires-file-lawsuits-over-book-on-putin-s-rise-1.4553684. In the United States, Plaintiffs have previously pursued defamation actions against the Center for Public Integrity, Christopher Steele, and Buzzfeed—losing all three actions. *See OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 57 (D.D.C. 2005); *Khan v. Orbis Bus. Intel. Ltd.*, No. 2018 CA 002667 B, 2018 WL 11232420 (D.C. Super. Ct. Aug. 20, 2018), aff'd, *Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494 (D.C. 2020), cert. denied, No. 20-693, 2021 WL 78212 (S. Ct. Jan. 11, 2021); Decision & Order on Mot., *Fridman v. BuzzFeed*, Index No. 154895/2017 (N.Y. Sup. Ct., Mar. 18, 2021).

Dated:  July 6, 2021

By:＿＿＿＿*/s/* Joshua A. Levy＿＿＿＿＿＿

Joshua A. Levy (D.C. Bar No. 475108)
Rachel M. Clattenburg (D.C. Bar No. 1018164)
Edward A. Sharp (D.C. Bar No. 1719505)
LEVY FIRESTONE MUSE LLP
1701 K St. NW, Suite 350
Washington, DC 20005
Tel: (202) 845-3215
Fax: (202) 595-8253
jal@levyfirestone.com
rmc@levyfirestone.com
eas@levyfirestone.com

*Counsel for Defendants*

34