# Exhibit D



**THOMAS A. CLARE, P.C.**
tom@clarelocke.com
(202) 628-7401

# C L A R E L O C K E
L   L   P

**JOSEPH R. OLIVERI**
joe@clarelocke.com
(202) 628-7405

10 Prince Street
Alexandria, Virginia 22314

(202) 628-7400

www.clarelocke.com

May 12, 2021

*Via Electronic Mail*

Joshua A. Levy
Levy Firestone Muse LLP
1701 K Street, NW, Ste 350
Washington, D.C. 20006
jal@levyfirestone.com

        Re:    *Fridman v. Bean LLC*, 17-cv-2041 (JRL) – Your May 5, 2021 Letter

Dear Josh:

    We write in response to your May 5, 2021 letter regarding Plaintiffs' April 29, 2021 production, which Plaintiffs made in compliance with the Court's March 30 Orders on various discovery motions. In your letter, you claim that Plaintiffs' production was insufficient or improper for various reasons, but as explained below, none of your claims has merit. We address each of your asserted deficiencies in turn.

**I.    Plaintiffs' Confidentiality Designations Are Entirely Proper.**

    You begin your letter not by challenging the substance of Plaintiffs' production, but rather by questioning Plaintiffs' designation of the documents they produced under the Protective Order in this case. According to your letter, Plaintiffs used "blanket" "Highly Confidential" designations that "do not appear justified." You are incorrect.

    As an initial matter, Plaintiffs did not simply apply "blanket" confidentiality designations to the documents in their April 29 production; rather, counsel applied confidentiality designations to each document as appropriate. And Plaintiffs' confidentiality designations are entirely appropriate.

    *First*, Plaintiffs properly and appropriately designated the documents in their April 29 production as "Highly Confidential – Personal Data" because each document in that production was obtained and produced through a cross-border transfer to the United States from a country with a strict data protection regime—the United Kingdom, Spain, or Russia—and is subject to restrictions on transfer and dissemination imposed by data protection laws.



As you know, the United Kingdom, Spain, and Russia have strict and comprehensive legal regimes governing the transfer of data.

The European Union General Data Protection Regulation ("GDPR")[1] provides protections for personal data, which is defined as "*any information relating to a data subject*," and governs cross border transfers of personal data outside of the European Economic Area.[2] It protects a fundamental right to privacy, or data protection, of a data subject. Any controller or processor of data that includes personal data of a data subject must adhere to requirements under the GDPR for the processing and transfer of data. Key requirements under the GDPR include, for example, "data minimization." This requires that data processed should be "*adequate, relevant and limited to what is necessary for the purposes for which they are processed*."[3] The GDPR is also purpose-driven and, as such, any data that is not strictly necessary for the relevant purpose should **not** be processed. Further, the GDPR applies irrespective of whether data is public—*i.e.*, even if information is "publicly available," that public availability is not a "defense" against compliance with GDPR by controllers and processors. Regulatory guidance from the U.K. Information Commissioner's Office (the relevant supervisory authority in the United Kingdom) explains that, among other things, in the context of special category data, whether data is theoretically in the public domain (including before a court) is not the pertinent question: "*information is not necessarily public just because you have access to it*."[4]

The GDPR continues to apply in the United Kingdom following its exit from the European Union by way of the United Kingdom Data Protection Act of 2018 ("UK DPA"), Data Protection, Privacy and Electronic Communications Act ("UK DPPEC"), and associated regulations,[5] which are together known as the "UK GDPR."

Similarly, Russian Federation Federal Law of 27 July 2006 No. 152-FZ on Personal Data[6] provides protection for personal data, or a set of information that allows a person's identity to be established. Moreover, the law has been recently amended to place further restrictions on the making of personal data available online to an "indefinite number of persons," which would include the inclusion of documents containing personal data on a public court docket.[7] And like the UK GDPR, the fact that information is publicly available does not exempt that information from protection if it would be used for a purpose other than the one for which it was made public.

In order to comply with these comprehensive data protection regimes, LetterOne and the Alfa companies obtained consents from the custodians of the documents collected and ultimately produced by Plaintiffs, including from Plaintiffs' assistants, counsel for LetterOne and the Alfa

---

[1] Regulation (EU) 2016/679 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC ("GDPR" or "EU Data Protection Directive").
[2] *See id.* Article 4(1); Article 45; Article 46.
[3] *See id.* Article 5.
[4] *See* Independent Commissioner's Office, *What Are the Conditions for Processing?*, https://ico.org.uk/for-organisations/guide-to-data-protection/guide-to-the-general-data-protection-regulation-gdpr/special-category-data/what-are-the-conditions-for-processing (last visited May 12, 2021).
[5] *See* U.K. Data Protection Act (2018) ("UK DPA"); U.K. Data Protection, Privacy and Electronic Communications (Amendments etc.) (EU Exit) Regulations (2020) ("UK DPPEC").
[6] Russian Federation Federal Law of 27 July 2006 No. 152-FZ on Personal Data.
[7] *See id.* Article 10.1.

2



group of companies, and Plaintiffs' U.K. counsel, and implemented certain very-limited redactions of sensitive personally identifiable information (as required by the applicable data protection laws). Plaintiffs designated such documents "Highly Confidential – Personal Data" under the terms of the Protective Order in this case to comply with data protection laws and also to ensure that Defendants were provided with the information in a meaningful manner for review purposes. Such designation (in lieu of extensive redaction of personally identifiable information) is entirely consistent with (and required by) the applicable data protection regimes, which do not allow personal data to be disclosed more broadly than is absolute necessary. In short, Plaintiffs' confidentiality designations in their April 29 production enabled them to produce *more* documents and *more* information to Defendants (and in unredacted form), and there is nothing improper about that.

*Second*, Plaintiffs properly designated three limited categories of documents as "Highly Confidential – AEO" under the Protective Order in this case: (1) "documents received by, produced by, or served upon Plaintiffs" in connection with the Special Counsel Office ("SCO" or "Mueller") investigation ("SCO Documents"); (2) the Spanish litigation case file; and (3) the Kroll Report. The SCO documents are subject to strict grand jury secrecy requirements under Federal Rule of Criminal Procedure 6(e), and they are properly designated as "Highly Confidential – AEO." *See, e.g.*, *Dunham v. City of New York*, No. 11-cv-122, 2021 WL 918373, at *1 n.1 (S.D.N.Y. Mar. 10, 2021) (collecting cases requiring sealing/confidentiality of grand jury related documents); *Martin v. Naval Crim. Investigative Serv.*, No. 10-cv-1879, 2012 WL 6553408, at *3 (S.D. Cal. Dec. 14, 2012) ("[Grand jury] materials can be designated as confidential under the existing protective order."), *objections overruled*, 2013 WL 2896879 (S.D. Cal. June 11, 2013). The Spanish litigation casefile is likewise confidential and subject to the GDPR's restrictions on sharing criminal offense data,[8] and it is thus properly designated. Further, under Spanish procedural law, only parties and interested entities have a right to obtain the complete case file, without regard to whether items have been declared secret or reserved.[9] And the Kroll Report contains protected and sensitive information, including information regarding banking operations and potential criminal exposures, which is protected from disclosure under the GDPR, the Russian Federation Federal Law of 27 July 2006 No. 152-FZ on Personal Data, and Article 26 of the Russian Federation Federal Law of 2 December 1990 No. 395-1 on Banks and Banking Activities.

In sum, the materials in Plaintiffs' April 29 production are the precise types of materials that are protected by the Protective Order in this case, which provides that a producing party "may designate Discovery Material as 'Highly Confidential—Personal Data" pursuant to this order if the Discovery Material contains personal data and is subject to restriction under applicable data protection or privacy laws and regulations."[10]

We trust that the above explanations—especially together with citations of the applicable "law[s] [and] regulation[s]" pursuant to which Plaintiffs made their confidentiality designations—resolve your concerns on this issue. To the extent you have questions about the confidentiality designations of specific documents in Plaintiffs' April 29 production, please let us know, and we

---

[8] *See* GDPR Article 10,
[9] *See, e.g.*, Organic Law of the Spanish Judiciary Act ("Ley Orgánica del Poder Judicial" ("LOPJ")), Articles 234-235.
[10] Protective Order § 2.C.



would be happy to discuss those specific documents with you in good faith in accordance with the procedures set forth in the Protective Order. Your blanket assertion that "all" of Plaintiffs' confidentiality designations are improper and your blanket demand that Plaintiffs provide written justifications for every single confidentiality designation in their production does not comport with those procedures. As such, a meet and confer regarding Plaintiffs' confidentiality designations is premature at this time. We reiterate, though, our willingness to promptly meet and confer regarding the designation of any particular documents under the Protective Order in this case.

* * *

A final point about your (and Defendants') unsupported rush to challenge Plaintiffs' designation of documents under the Protective Order in this case warrants mention here. While we will not level allegations of bad faith (as you have frequently done in this case), we find it curious that, less than a week after Plaintiffs provided their April 29 production, you rushed to challenge Plaintiffs' designation of documents under the Protective Order—and that you have done so while ignoring numerous questions about Defendants' own discovery responses that we have previously asked you.[11]

Your immediate focus on the designation of discovery materials under the Protective Order is especially curious—and raises potential cause for concern—in light of Defendants' previous public statements that they "relish" "using [] defamation suit[s] to pry [] information out of" litigation opponents, which Defendants then use, including "in political campaigns ... to expose an opponent's vulnerabilities, provide source material for the media, and feed attack ads."[12]  Indeed, Defendants have publicly boasted that they have previously sought out funding "to back a full discovery campaign against" a party who sued them for defamation in order to leverage that discovery outside of litigation.[13]  We hope and trust that is not your or Defendants' intention here.

II.     **Plaintiffs' Have Not Improperly Withheld Documents; Your Accusations That Plaintiffs Made "Misrepresentations" to the Court Are Baseless; and Your Sanctions Threat Is Unwarranted.**

You next assert in your May 5 letter that Plaintiffs acted improperly by not producing the documents they produced in their April 29 production (in accordance with the Court's orders) sooner, before the Court ruled on Defendants' motions to compel. And you further assert that Defendants are entitled to sanctions as a result. You are incorrect.

As you know, Plaintiffs and Defendants have disagreed about the discoverability of various documents in this case. And, as happens when parties disagree about the discoverability of documents and are unable to resolve their disagreement on their own, the parties have filed various motions to compel. (Plaintiffs have won some motions and Defendants have won some motions.)

---

[11] You have also failed to respond to our questions regarding the improper attempt to communicate with Plaintiff German Khan, which we raised in both an April 16 letter and April 28 email. We again reiterate our request that you confirm that Defendants will cease attempting to communicate with Plaintiffs outside of the proper channel and again ask that you respond to the other issues we raised in our prior communications to you.

[12] Glenn Simpson & Peter Fritsch, *Crime in Progress* 31, 239, 241 (2019).

[13] *Id.* at 239.

4



Plaintiffs long ago produced documents sought by Defendants in discovery, with the exception of documents that Plaintiffs contended were not discoverable (just as Defendants have refused to produce documents they contend are not discoverable)—and Defendants moved to compel the production of those documents. When the Court granted two of Defendants' motions to compel and ordered Plaintiffs to produce various documents by a certain date, Plaintiffs fully complied with the Court's Orders and produced those documents by that date. Of course, the mere fact that the Court granted two of Defendants' motions to compel does not mean that Plaintiffs lacked a good-faith basis for objecting to the discovery at issue in those motions—and contrary to your claim, the Court certainly did not find that Plaintiffs lacked a good-faith basis for doing so. And, of course, the mere fact that a party prevails on a motion to compel does not entitle that party to an award of sanctions against the other party.

Moreover, contrary to the assertions in your letter, Plaintiffs have **_not_** made "misrepresentations" to the Court (or anyone) regarding discovery (or anything else).

*First*, Plaintiffs were entirely truthful when they stated that they did not have control over documents in the possession of LetterOne and the Alfa companies and lacked the ability to compel their production in this litigation. As you well know, long before Defendants moved to compel the production of documents in the possession of LetterOne and the Alfa companies, Plaintiffs' counsel repeatedly offered to connect you with counsel for those companies, who indicated a willingness to accept service of a document subpoena.[14] But you repeatedly declined to engage with them.[15] Plaintiffs made that offer because the documents Defendants were seeking were in the possession of LetterOne and the Alfa companies. Plaintiffs (as indirect shareholders of those companies) lacked the authority to compel the companies to turn those documents over to them, and the companies refused Plaintiffs' requests to do so voluntarily. Although the companies granted Plaintiffs permission to produce some documents in the U.K. *Aven v. Orbis* litigation matter (documents that Plaintiffs did not subsequently possess in their own files because their use was restricted by the companies), they denied Plaintiffs permission to obtain and produce documents in this case in light of the different applicable data protection legal regimes and differences in the scope of the two litigations. (For example, documents in the possession of LetterOne and the Alfa companies could be produced in the U.K. *Aven v. Orbis* litigation without needing to effectuate a cross-border transfer of materials to a jurisdiction without a data protection regime.)

Ultimately, LetterOne and the Alfa companies agreed to make documents in their possession available to Plaintiffs after the Court entered the March 30 Orders, thereby enabling Plaintiffs to obtain and produce them in this case. While we cannot speak to the thought processes of LetterOne and the Alfa companies, we suspect that they appreciated the impact of a binding court order and the fact that Plaintiffs could be sanctioned by the Court if the companies did not allow them to obtain and produce certain documents in this case—and presumably those sanctions could have had negative consequences for the companies. Moreover, as you surely know, the entry of a binding court order is a relevant factor in determining whether documents can be disclosed under the GDPR

---

[14] *See, e.g.*, Letter from A. Lewis to J. Levy (Mar. 12, 2020); Email from A. Lewis to J. Levy (Apr. 2, 2020); Letter from A. Lewis to J. Levy (Apr. 24, 2020).
[15] *See, e.g.*, Letter from J. Levy to A. Lewis (Apr. 16, 2020); Letter from J. Levy to A. Lewis (Apr. 29, 2020).

5



and other data protection regimes.  Simply stated, Plaintiffs have been entirely consistent in their representations, and those representations have been truthful.

*Second*, you assert in your letter that Plaintiffs' inclusion of pre-2016 documents in their April 29 production makes their previous statement that they had "produced all relevant pre-2016 documents" a misrepresentation.  Not so.  Plaintiffs were entirely truthful when they previously stated that they had "produced all relevant pre-2016 documents."  The only pre-2016 documents that Plaintiffs produced on April 29 that were in their possession were the Kroll Report and documents in the Spanish investigation case file, which Plaintiffs consistently and in good-faith maintained were neither relevant nor discoverable, and select *Aven v. Orbis* documents, which Plaintiffs consistently maintained were outside the scope of production due to the parties' agreement not to produce publicly available documents.  The fact that, ultimately, the Court disagreed with Plaintiffs and granted Defendants' motion to compel those documents' production does not render Plaintiffs' position improper or transform their statements into misrepresentations.  The only other pre-2016 documents in Plaintiffs' April 29 production were documents in the possession of LetterOne or the Alfa group companies to which those companies only allowed Plaintiffs access *after* the Court entered its March 30 Orders, as explained above.

*Third*, you assert that Plaintiffs falsely stated that documents related to the SCO (Mueller) Investigation were protected by the grand jury privilege.  That was Plaintiffs' position, and Plaintiffs argued exactly that—with citations to federal caselaw and rules—in opposing Defendants' motion to compel their production.  The fact that the Court ultimately disagreed with Plaintiffs' position that this rendered them outside the scope of production does not render it a "misrepresentation."  Your citation to a "Project A" email that was produced in the *Aven v. Orbis* case (PDDC-JLO-0001249) does not suggest otherwise.  That document was responsive to issues in the *Aven v. Orbis* case but it was not produced in response to a request for SCO documents and it was not produced in the form in which it was disclosed to the SCO.  As such, the document produced in that case was not subject to the grand jury secrecy restrictions of Federal Rule of Criminal Procedure 6(e).  Moreover, that underlying document was in the possession of the Alfa companies—not Plaintiffs—until after the Court entered its March 30 Orders.

In sum, Plaintiffs have fully complied with their discovery obligations and the Court's March 30 Orders; Plaintiffs have not made any misrepresentations to the Court, Defendants, or anyone else; and Defendants have no basis for any sanctions against Plaintiffs.

### III.     Plaintiffs Privilege Log Is Forthcoming; Plaintiffs Have Not Waived Any Privilege Claims.

Your assertion in your May 5 letter—notably unaccompanied by any citation to supporting authority—that Plaintiffs have waived any claims of privilege over documents responsive to the Court's March 30 Orders that they are withholding as privileged is meritless.  As you may imagine, the volume of work (and attorney-hours) required to obtain, process, review, and produce over 20,000 pages of documents from across the globe while navigating cross-border transfers of materials subject to complex national and international data protection regimes in the thirty days following the Court's entry of its March 30 Orders was immense, to say the least.  And Plaintiffs and their



counsel devoted all available resources to do that and to comply with the Court's Order—which did not require the contemporaneous production of a privilege log.

That said, Plaintiffs' counsel are actively preparing a detailed privilege log of documents responsive to the Court's March 30 Orders that they are withholding on the ground of privilege, and Plaintiffs intend to produce that privilege log on or about May 20, barring any unexpected delays. Unlike Defendants' *three* iterations of their privilege log—which simply repeated the same hypergeneric, boilerplate "privilege description" that merely parroted the elements of a privilege claim for almost every document listed, notwithstanding the Court's order to provide "detailed information" regarding all documents Defendants are withholding as privileged[16]—Plaintiffs' privilege log will contain more than sufficient information to enable Defendants (and the Court) to meaningfully assess Plaintiffs' privilege claims.

Defendants have no basis to assert that Plaintiffs have waived any claim of privilege. *See, e.g., Centennial Bank v. Servisfirst Bank Inc.*, No. 16-cv-88, 2016 WL 3574587, at *5 (M.D. Fla. July 1, 2016) (rejecting the argument that a party waived privilege claims because it produced its privilege log "shortly after providing responsive documents" rather than "simultaneously" therewith); *Almont Ambulatory Surgery Ctr. LLC v. UnitedHealth Grp., Inc.*, No. 14-cv-3053, 2018 WL 5816111, at *2 (C.D. Cal. May 22, 2018) (no privilege waiver where "the timing of the service of [a party's] privilege log (while not as soon as could have been) was not unreasonable"). Indeed, Defendants did not produce their first (patently inadequate) privilege log in this case until *after* they produced documents to Plaintiffs, and Defendants *still* have not produced a proper privilege log despite the Court expressly ordering them to do so.

### IV. Plaintiffs Produced Document PDDC-JLO-0001207 in the Exact Form It Was Produced in the U.K. *Aven v. Orbis* Litigation; Plaintiffs Did Not Redact Documents for Relevance.

You next assert in your letter that "Plaintiffs have withheld a document from the UK Proceedings as 'Placeholder – Not Relevant,'" citing document PDDC-JLO-0001207. Plaintiffs have neither withheld nor redacted that document.

In accordance with the Court's March 30 Order, Plaintiffs produced document PDDC-JLO-0001207 in the exact form it was produced in the U.K. *Aven v. Orbis* proceeding. That document was produced as "Placeholder – Not Relevant" in the U.K. *Aven v. Orbis* proceeding; in other words, the attorneys in that proceeding created the "Placeholder – Not Relevant" document that was produced in that case, and Plaintiffs have produced that document without modification as PDDC-JLO-0001207 in this case. In full compliance with the Court's order in this case, Plaintiffs have produced the documents that the claimants and the defendants produced in the U.K. *Aven v. Orbis* proceeding as well as the documents that were included in the trial bundle in that case. Plaintiffs did not withhold or redact any documents from these categories on the basis of relevance. In short, Plaintiffs have produced to Defendants exactly what they requested.[17]

---

[16] *See generally* Letter from T. Clare & J. Oliveri to J. Levy (May 4, 2020).

[17] The *only* changes made to any of the *Aven v. Orbis* documents were redactions of personal identifying information or other sensitive information that was redacted in the U.K. prior to the documents' transfer to the United States in order to comply with the applicable data protection laws and regulations. The Bates numbers of those documents are:

7



### V.   Plaintiffs Have Not Improperly Redacted Documents in Their April 29 Production.

Finally, you assert in your May 5 letter that Plaintiffs have improperly redacted "a substantial number of documents for which relevance to this action is beyond dispute," and in support of your assertion, you cite four documents: (1) PDDC-JLO-0001264, (2) PDDC-JLO-0008437, (3) PDDC-JLO-0008472, and (4) PDDC-JLO-0007144.  Again, you are incorrect.

Contrary to your assertion, Plaintiffs have not improperly redacted any documents in their production.  With regard to the specific documents you cite in your letter:

- PDDC-JLO-0001264:  This document was produced as redacted in the U.K. *Aven v. Orbis* case and Plaintiffs have produced it here exactly as it was produced in that case.

- PDDC-JLO-0008437 and PDDC-JLO-0008472:  Plaintiffs have only redacted from these documents material that is protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Plaintiffs will list and describe these redactions on their forthcoming privilege log.

- PDDC-JLO-0007144:   Plaintiffs only redacted this document to remove protected personally identifiable information in accordance with governing GDPR restrictions and protections.

To ensure compliance with data protection laws, Plaintiffs redacted certain personally identifiable and sensitive information, including personal email addresses, personal cell phone numbers, bank account information, passport information, and information related to health from certain documents (including PDDC-JLO-0007144).  The Bates numbers of those documents are provided in **Appendix A** to this letter.  We would be happy to discuss any issues you have with the redaction of the personal identifying or sensitive information for any documents listed on Appendix A.

\*          \*          \*

We trust that the explanations herein resolve the issues raised in your May 5 letter.  As we explained above, if you have any questions or concerns regarding particular documents in Plaintiffs' production, please raise those concerns with us and we would be happy to meet and confer and discuss them with you.

---

PDDC-JLO-0004250; PDDC-JLO-0004723; PDDC-JLO-0004735; PDDC-JLO-0004743; PDDC-JLO-0004755; PDDC-JLO-0004779; PDDC-JLO-0005268; PDDC-JLO-0004078; and PDDC-JLO-0004200.



This is not a full statement of Plaintiffs' rights and remedies, all of which are expressly reserved.

Sincerely,

*Thomas A. Clare, P.C.*
Thomas A. Clare, P.C.

*Joseph R. Oliveri*
Joseph R. Oliveri



# Appendix A
**Documents in Plaintiffs' April 29 Production with Personally Identifiable Information Redactions**

| | | |
|---|---|---|
| PDDC-JLO-0001292 | PDDC-JLO-0007291 | PDDC-JLO-0007841 |
| PDDC-JLO-0004078 | PDDC-JLO-0007299 | PDDC-JLO-0007859 |
| PDDC-JLO-0004200 | PDDC-JLO-0007301 | PDDC-JLO-0007860 |
| PDDC-JLO-0004250 | PDDC-JLO-0007319 | PDDC-JLO-0007861 |
| PDDC-JLO-0004723 | PDDC-JLO-0007321 | PDDC-JLO-0007862 |
| PDDC-JLO-0004735 | PDDC-JLO-0007380 | PDDC-JLO-0007863 |
| PDDC-JLO-0004743 | PDDC-JLO-0007381 | PDDC-JLO-0007869 |
| PDDC-JLO-0004755 | PDDC-JLO-0007395 | PDDC-JLO-0007899 |
| PDDC-JLO-0004779 | PDDC-JLO-0007399 | PDDC-JLO-0007903 |
| PDDC-JLO-0005268 | PDDC-JLO-0007408 | PDDC-JLO-0007904 |
| PDDC-JLO-0006835 | PDDC-JLO-0007422 | PDDC-JLO-0007905 |
| PDDC-JLO-0006956 | PDDC-JLO-0007424 | PDDC-JLO-0007935 |
| PDDC-JLO-0006963 | PDDC-JLO-0007439 | PDDC-JLO-0007969 |
| PDDC-JLO-0006981 | PDDC-JLO-0007440 | PDDC-JLO-0007971 |
| PDDC-JLO-0006998 | PDDC-JLO-0007445 | PDDC-JLO-0007973 |
| PDDC-JLO-0007006 | PDDC-JLO-0007517 | PDDC-JLO-0007977 |
| PDDC-JLO-0007041 | PDDC-JLO-0007609 | PDDC-JLO-0008139 |
| PDDC-JLO-0007045 | PDDC-JLO-0007665 | PDDC-JLO-0008159 |
| PDDC-JLO-0007049 | PDDC-JLO-0007672 | PDDC-JLO-0008171 |
| PDDC-JLO-0007057 | PDDC-JLO-0007723 | PDDC-JLO-0008229 |
| PDDC-JLO-0007062 | PDDC-JLO-0007731 | PDDC-JLO-0008245 |
| PDDC-JLO-0007068 | PDDC-JLO-0007740 | PDDC-JLO-0008421 |
| PDDC-JLO-0007074 | PDDC-JLO-0007753 | PDDC-JLO-0008592 |
| PDDC-JLO-0007085 | PDDC-JLO-0007759 | PDDC-JLO-0008600 |
| PDDC-JLO-0007086 | PDDC-JLO-0007768 | PDDC-JLO-0008609 |
| PDDC-JLO-0007088 | PDDC-JLO-0007771 | PDDC-JLO-0008625 |
| PDDC-JLO-0007091 | PDDC-JLO-0007774 | PDDC-JLO-0008642 |
| PDDC-JLO-0007097 | PDDC-JLO-0007783 | PDDC-JLO-0008674 |
| PDDC-JLO-0007099 | PDDC-JLO-0007785 | PDDC-JLO-0008702 |
| PDDC-JLO-0007105 | PDDC-JLO-0007787 | PDDC-JLO-0008704 |
| PDDC-JLO-0007111 | PDDC-JLO-0007789 | PDDC-JLO-0008761 |
| PDDC-JLO-0007140 | PDDC-JLO-0007812 | PDDC-JLO-0008770 |
| PDDC-JLO-0007144 | PDDC-JLO-0007816 | PDDC-JLO-0008973 |
| PDDC-JLO-0007155 | PDDC-JLO-0007822 | PDDC-JLO-0009147 |
| PDDC-JLO-0007194 | PDDC-JLO-0007831 | |
| PDDC-JLO-0007195 | PDDC-JLO-0007837 | |