# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN,**

              **Plaintiffs,**

**v.**

**BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,**

              **Defendants.**

**Civil Action No. 1:17-2041-RJL**

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR REASONABLE EXPENSES INCURRED IN MOVING TO COMPEL DISCOVERY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................ 1

RELEVANT BACKGROUND .......................................................................................... 3

I.      Facts Relevant to Defendants' Allegations about Plaintiffs, Alfa, and LetterOne. ............. 3

        A.      Plaintiffs Are Only Indirect Shareholders of Alfa and LetterOne. .......................... 3

        B.      Defendants Demand That Plaintiffs Produce Alfa's and LetterOne's
                Documents—and Plaintiffs Object Because They Do Not Control Those
                Entities or Their Documents. ...................................................................... 4

        C.      Alfa's and LetterOne's Counsel Contact Defendants' Counsel and Offer to
                Negotiate a Document Production from Alfa and LetterOne. ................................ 5

        D.      Defendants Wait Seven Months and Then Move to Compel *Plaintiffs* to
                Produce Alfa's and LetterOne's Documents; The Companies Move to
                Intervene and Provide Foreign Counsel Declarations and Evidence That
                Plaintiffs Do Not Control Them or Their Documents. .......................................... 6

        E.      Alfa's and LetterOne's Agreement to Provide Their Documents to Plaintiffs to
                Produce After the Court Granted Defendants' Motion to Compel Does Not
                Mean Plaintiffs Could Compel Alfa and LetterOne to Do So. ............................... 9

II.     Facts Relevant to the Temporal Scope of Plaintiffs' Production: Plaintiffs Did *Not*
        Refuse to Produce Relevant "Pre-2016" Documents That Plaintiffs Believed Were in
        *Their* Possession, Custody, or Control. ............................................................... 10

III.    Facts Relevant to Defendants' Other Document Requests to Which Plaintiffs Objected
        and Defendants Moved to Compel. ...................................................................... 10

        A.      Documents Produced in UK Proceedings. ...................................................... 10

        B.      Documents Produced in a Spanish Proceeding. ............................................... 11

        C.      The "Kroll Report." .................................................................................. 12

        D.      Mueller Investigation Documents. ................................................................ 13

IV.     The Court's March 30, 2021 Discovery Orders Granting Motions by *Both* Plaintiffs
        *and* Defendants. ............................................................................................ 14

ARGUMENT .................................................................................................................. 14

I.      Plaintiffs' Are Not Entitled to Fees with Respect to Plaintiffs' Objection to Producing Documents Controlled by Foreign Corporate Entities Alfa and LetterOne. .....................18

        A.      Plaintiffs had an objectively reasonable belief that they could not collect, review, and produce corporate documents in the absence of company approval and legal authority. ..............................................................................................18

        B.      Defendants failed to make a good-faith effort to obtain Alfa and LetterOne documents without court intervention. ..................................................................22

        C.      Production of some company documents in a separate UK proceeding does not remotely demonstrate that Plaintiffs' objections to producing company documents in this litigation were unjustified..........................................................23

        D.      Plaintiffs did not refuse to produce pre-2016 documents in their possession. .......25

II.     Plaintiffs' Objections to Producing the "Kroll Report," "Spanish Proceeding" Documents, "UK Proceeding" Documents, and "Mueller Documents" Were Substantially Justified...........................................................................................................25

        A.      The Kroll Report was not and is not relevant. ........................................................26

        B.      The Spanish Proceeding documents are not relevant. .............................................28

        C.      Plaintiffs were substantially justified in declining to produce publicly available UK court records. .....................................................................................................28

        D.      Case law fully supports Plaintiffs' objection to producing grand jury materials absent a court order...................................................................................................29

III.    An Award of Fees Would be Inequitable When Defendants Have Engaged in Dilatory Conduct and Were Also on the Losing End of a March 30, 2021, Order on a Motion to Compel. ................................................................................................................................31

CONCLUSION ........................................................................................................................32

CERTIFICATE OF SERVICE ................................................................................................33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Maplan Corp. v. Heilmayr*,
  203 F.R.D. 499 (D. Kan. 2001) ..............................................................................21

*Bd. of Educ. of Evanston Twp. High Sch. v. Admiral Heating & Ventilating*, Inc.,
  104 F.R.D. 23 (N.D. Ill. 1984) ...............................................................................23

*Boca Investerings P'ship v. United States*,
  No. 97-cv-602, 1998 WL 647214 (D.D.C. Sept. 1, 1998) .................................15, 21

*Borum v. Brentwood Vill., LLC*,
  No. 16-cv-1723, 2020 WL 5291982 (D.D.C. Sept. 4, 2020) ...................................15

*Cobell v. Norton*,
  226 F.R.D. 67 (D.D.C. 2005) .........................................................................15, 21, 30

*Colaco v. ASIC Advantage Simplified Pension Plan*,
  301 F.R.D. 431(N.D. Cal. 2014) .............................................................................30

*Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*,
  136 F.R.D. 334 (D.D.C. 1991) ................................................................................29

*Groupwell Int'l (HK) Ltd. v. Gourmet Express, LLC*,
  277 F.R.D. 348 (W.D.K.Y. 2011) ...........................................................................27

*Harper v. City of San Jose*,
  No. 09-cv-5758, 2011 WL 1002021 (N.D. Cal. Mar. 21, 2011).............................28

*Holland v. Freeman United Mining Coal Co.*,
  No. 07-cv-490, 2008 WL 11501533 (D.D.C. Mar. 18, 2008 .................................19

*In re Grand Jury*,
  490 F.3d 978 (D.C. Cir. 2007)..................................................................................30

*In re Sealed Motion*,
  880 F.2d 1367 (D.C. Cir. 1989)...............................................................................30

*In re Vitamins Antitrust Litig.*,
  No. 99-cv-197, 2001 WL 1049433 (D.D.C. June 20, 2011) ...................................22

*Klein v. Torrey Point Grp., LLC*,
  979 F. Supp. 2d 417 (S.D.N.Y. 2013) ....................................................................15

*Marsch v. Rensselaer Cty.*,
    218 F.R.D. 367 (N.D.N.Y. 2003) ........................................................23

*Neumont v. Monroe Cty., Fla.*,
    225 F.R.D. 266 (S.D. Fla. 2004)........................................................27

*Noami v. Zaid*,
    283 F.R.D. 639 (D. Kan. 2012) ........................................................21

*Peterson v. Hantman*,
    227 F.R.D. 13 (D.D.C. 2005) ........................................................21

*Pierce v. Underwood*,
    487 U.S. 552 (1988) ........................................................15

*SEC v. Oakford Corp.*,
    141 F. Supp. 2d 435 (S.D.N.Y. 2001) ........................................................30

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
    482 U.S. 522 (1987) ........................................................22

**Rules**

Fed R. Civ. P. 34........................................................21, 31

Fed. R. Civ. P. 37........................................................2, 14, 16, 17, 18, 19, 22, 23, 27, 31, 32

**Other Authorities**

8 John Wigmore, Evidence In Trials At Common Law § 2362 (McNaughton rev., 1961) ..........30

Plaintiffs, by and through undersigned counsel, respectfully submit this Memorandum in Opposition to Defendants Bean LLC's and Glenn Simpson's Motion for Reasonable Expenses Incurred in Moving to Compel Discovery ("Motion") [Dkt. 156].

## INTRODUCTION

Defendants' Motion seeking attorneys' fees based on two successful motions to compel—granted the same day the Court also granted relief on a motion to compel that Plaintiffs filed against Defendants—should be denied.  Defendants have not satisfied, and cannot satisfy, Federal Rule of Civil Procedure 37's requirements for an award of fees, because with respect to every dispute that the Court resolved, Plaintiffs' objections to the discovery sought were substantially justified, and the issues constituted a genuine and good-faith dispute between the parties.

First, Defendants spend the bulk of their Motion arguing that Plaintiffs Mikhail Fridman, Petr Aven, and German Khan's objection to producing documents in the possession of foreign corporate entities Alfa Bank and LetterOne was "unjustifiable" and a "contrivance."  But no amount of hyperbole can obscure the fact that Plaintiffs' had an objectively legitimate basis to object to producing, in this litigation filed in their individual capacities, documents owned by the companies and maintained in their ordinary course in company files, servers, and devices where the companies rejected Plaintiffs' request to be permitted to collect and produce those documents, and where the companies moved to intervene in this case by arguing—and providing foreign legal opinions showing—that it would be improper, and indeed unlawful, for Plaintiffs to do so absent authorization.  Plaintiffs also noted that the documents of the companies contain privileges belonging to the companies.  While the Court ultimately ordered Plaintiffs to produce company documents, and in light of this ruling the companies relented and permitted them to do so given that Plaintiffs would have faced being in violation of a Court order, Plaintiffs have more than

1

demonstrated that their hesitance to produce company documents absent a court order was substantially justified.

Second, with respect to the specific documents or categories of documents that Defendants successfully moved to compel, Plaintiffs likewise had a good-faith and reasonable basis to object to disclosure.  Although the Court ordered Plaintiffs to produce the so-called "Kroll Report" and documents from a Spanish investigation based on Defendants' uninformed speculation as to what those documents might reveal, Plaintiffs' relevance objections have ultimately been proven not only substantially justified, but entirely correct—those materials have no relevance to any disputed issue in this case, and Defendants' Motion does not even attempt to argue otherwise.  With respect to Plaintiffs' objection to producing publicly available court records from a related UK proceeding filed by Plaintiffs but involving different Defendants, Plaintiffs' objection was substantially justified based on the parties' memorialized agreement that neither side need produce materials that are in the public domain—a position also supported by case law in this District.  And Plaintiffs' objection to producing attorney proffer and other materials related to Plaintiff Petr Aven's engagement with the grand jury assisting Special Counsel Robert Mueller's investigation of 2016 election interference was also substantially justified, and entirely consistent with, case law holding that a civil litigant has a right to decline to produce grand jury materials unless and until the requesting party shows a need for the information and obtains a court order compelling disclosure.

Finally, an award of fees is also not appropriate here under Rule 37 because other circumstances make such an award unjust.  Although Defendants make no mention of it in their Motion for obvious reasons, the same day that the Court entered its March 30 Orders granting ***Defendants'*** motions to compel, the Court also granted in part ***Plaintiffs'*** motion to compel regarding Defendants' longstanding refusal to provide a proper privilege log justifying their

withholding of nearly 500 relevant documents.  Defendants, having won some and lost some on the very same day, are not entitled to fees for their win while simultaneously avoiding paying Plaintiffs' fees for their loss.  It is sensible and proper that the parties should bear their respective costs for those motions.

## RELEVANT BACKGROUND

Because Defendants omit and mischaracterize key facts in their Motion that demonstrate its lack of merit, Plaintiffs provide the relevant background in some detail below.

**I.      Facts Relevant to Defendants' Allegations About Plaintiffs, Alfa, and LetterOne.**

**A.      Plaintiffs Are Only Indirect Shareholders of Alfa and LetterOne.**

Although Defendants have asserted throughout this litigation that Plaintiffs own, control, and are legally one-and-the-same as the Alfa and LetterOne, that is simply incorrect.

As relevant here, Plaintiffs Mikhail Fridman, Petr Aven, and German Khan—international businessmen with interests in various businesses—each own *a portion* of the outstanding shares of Luxemburg company ABH Holdings S.A., which in turn owns Russian joint-stock company AO AB Holding, which in turn owns Russian joint-stock company Alfa Bank ("Alfa").[1]  As such, each individual Plaintiff is an *indirect, minority* shareholder in Alfa.  None of Plaintiffs are officers of Alfa, and while Mr. Fridman and Mr. Aven serve as directors of Alfa (but *not* the only directors of Alfa), Mr. Khan is not an Alfa director.[2]  Similarly, Plaintiffs are only *indirect* shareholders in Luxemburg company LetterOne Holdings S.A. ("LetterOne") by virtue of being shareholders of its beneficial owner LetterOne Investment Holdings S.A.[3]  None of Plaintiffs are officers of LetterOne, and although they are LetterOne directors, they are not LetterOne's only directors.[4]

[1] *See* Decl. of Aleksandr V. Berezin ¶¶ 2-4 (July 2, 2020) [Dkt. 80-1].
[2] *Id*. ¶¶ 3-4.
[3] *See* Decl. of Philippe Hoss ¶ 1.7 (July 2, 2020) [Dkt. 80-2].
[4] *Id*. ¶ 3.2.2.2.

Plaintiffs filed this action in their individual capacities—not purporting to act for, control, or stand in the place of Alfa or LetterOne—to redress harm to their individual reputations from Defendants' false and defamatory statements accusing them of, among other things, bribery, extortion, and interference in the 2016 U.S. Presidential Election, in an "intelligence" memorandum titled "Company Intelligence Report 2016/112" ("CIR 112"), which Defendants commissioned from Christopher Steele and his firm, Orbis Business Intelligence.[5]   Although Defendants' defamatory publication mentions Alfa (which it misspells throughout as "Alpha"), Alfa is ***not*** a party to this suit, and neither is LetterOne.

### B.     Defendants Demand That Plaintiffs Produce Alfa's and LetterOne's Documents—and Plaintiffs Object Because They Do Not Control Those Entities or Their Documents.

On October 11, 2019, Defendants served their first set of Requests for Production on Plaintiffs.[6]   As relevant here, Defendants requested from Plaintiffs the production of various documents belonging to—and in the possession, custody, and control of—the Alfa Companies and LetterOne.

Plaintiffs objected to producing documents not within their possession, custody, or control, and specifically stated that they were responding (and could only respond) to Defendants' Requests for Production on behalf of themselves, not on behalf of Alfa, LetterOne, or their affiliates, which are separate and distinct legal entities.[7]   As Defendants acknowledge, Plaintiffs have "from the outset of discovery" been upfront, clear, and consistent in their discovery responses and correspondence, repeatedly explaining that they "lacked the ability and/or authority to obtain,

---

[5] *See, e.g.*, Am. Compl. ¶¶ 1-10, 13, 31 (Dec. 12, 2017) [Dkt. 17].
[6] *See* Defs.' Reqs. for Prod. (Oct. 11, 2019) [Dkt. 78-4].
[7] Pls.' Resps. & Objs. to Defs.' Reqs. for Prod. (Nov. 11, 2019) [Dkt. 78-5].

among other things, their mobile phones, text messages, calendars, communications sent on their behalf, and emails written to or from their accounts with Alfa [or LetterOne] aliases."[8]

Notably, Plaintiffs' objection was not based on some technicality; as Plaintiffs affirmatively demonstrated to Defendants, they both legally and practically lacked the ability to compel Alfa and LetterOne to give Plaintiffs documents in the companies' possession.   On April 24, 2020, Plaintiffs' counsel wrote to Defendants' counsel to inform Defendants that Plaintiffs "made a request of counsel for Alfa and LetterOne, and we were advised that 'documents in the possession, custody, or control of Alfa and LetterOne will not be made available to Plaintiffs for production by Plaintiffs in this action.'"[9]  Counsel for Alfa and LetterOne confirmed the same to Defendants' counsel and the Court, explaining that "Plaintiffs sought permission from the Companies to produce the requested documents, but the Companies denied their request on the ground that the documents are within the exclusive possession, custody, or control of the companies."[10]

### C.   Alfa's and LetterOne's Counsel Contact Defendants' Counsel and Offer to Negotiate a Document Production from Alfa and LetterOne.

Counsel for Alfa and LetterOne proactively contacted Defendants' counsel—multiple times—offering to negotiate an agreement whereby the companies would collect, review, and produce documents in their possession to Defendants:

> Josh,
>
> I hope this email finds you safe and well.  As I understand [Plaintiffs' counsel] has informed you, Skadden represents Alfa and LetterOne with respect to issues related to the pending Bean litigation in the U.S. District Court for the District of Columbia. We understand that you have requested the plaintiffs produce Alfa and LetterOne

---

[8] Defs.' Mem. at 5.
[9] Letter from A. Lewis to J. Levy (Apr. 24, 2020) [Dkt. 78-11].
[10] Mem. of P. & A. in Supp. of Mot. by AO Alfa-Bank, ABH Holdings S.A., LetterOne Holdings S.A., and LetterOne Investment Holdings S.A. for Leave to Intervene for the Limited Purpose of Responding to Defs.' Mot. to Compel Pls. Prod. of Docs. at 2 (July 2, 2020) [Dkt. 80].

documents, including email from their Alfa or LetterOne email accounts and related work devices. On behalf of the plaintiffs, [their counsel] asked whether Alfa and LetterOne would give them access to such documents for use in the Bean litigation. On behalf of Alfa and LetterOne, we denied that request on the basis that such documents are within the possession, custody, or control of Alfa or LetterOne. To be clear, our position is that the plaintiffs do not have possession, custody, or control of their company email accounts, company devices, or any related company documents.

As we understand [Plaintiffs' counsel] has informed you, we are willing to work with you to produce documents related to the matters at issue in the Bean litigation. Specifically, we are willing to negotiate with you in good faith—in the absence of a subpoena—and to consider producing documents without requiring compliance with the Hague Evidence Convention and letters rogatory procedures provided that we are able to come to a mutual agreement as to the scope of any request. Our hope is that we can reach a mutually agreeable resolution that avoids the need to litigate these issues before Judge Leon.[11]

Defendants' counsel, however, refused to even entertain Alfa's and LetterOne's offer, even after the companies' counsel reiterated that "Alfa and LetterOne rejected the plaintiffs' request for access to and the use of company documents for the purposes of this litigation,"[12] and further reiterated Alfa's and LetterOne's good-faith desire to agree on a scope of production with Defendants and to review and produce responsive documents.

**D.    Defendants Wait Seven Months and Then Move to Compel *Plaintiffs* to Produce Alfa's and LetterOne's Documents; The Companies Move to Intervene and Provide Foreign Counsel Declarations and Evidence That Plaintiffs Do Not Control Them or Their Documents.**

Inexplicably, Defendants never even discussed with counsel for Alfa or LetterOne their offer to produce documents. Instead, seven months after Alfa and LetterOne offered to negotiate a document production to Defendants, Defendants moved to compel *Plaintiffs* to produce Alfa's and LetterOne's documents.[13] Defendants did so despite knowing and acknowledging that "[f]rom

---

[11] Email Correspondence Between M. Krawiec & J. Levy (May 1-8, 2020) [Dkt. 78-33].
[12] *Id.*
[13] Pls.' Resps. & Objs. to Defs.' Reqs. for Prod. of Docs. (Nov. 11, 2019) [Dkt. 78-5].

the outset of discovery," Plaintiffs consistently explained that "they lacked the ability and/or authority" to produce Alfa and LetterOne documents.[14]

In response to Defendants' motion to compel—which made numerous incorrect statements about Alfa and LetterOne and their ownership and control, Alfa and LetterOne moved to intervene to oppose Defendants' motion [Dkt. 80], and the Court granted the motion to intervene.[15] Alfa and LetterOne explained that the individual plaintiffs in this case do not have authority to compel Alfa and LetterOne to produce their documents without the companies' approval, which the companies had declined to give, and cited case law supporting the argument that company documents are not in the possession, custody, or control of the individual Plaintiffs. In further support, Alfa and LetterOne also filed declarations of two lawyers practicing in Russia and Luxembourg, the jurisdictions where Alfa and LetterOne are incorporated, respectively.[16]

*First*, Russian attorney Aleksandr V. Berezin submitted a detailed, 21-page Declaration addressing the question of "whether Mikhail Fridman, Petr Aven, and German Khan (collectively, the 'Plaintiffs'), as indirect shareholders of Alfa, have the legal right to obtain Alfa's documents under Russian law."[17] Mr. Berezin explained that, for many reasons, the answer was 'no.' Under Russian law, Alfa is the proprietor of any information created, acquired or accumulated in the process of its activities, including employee emails.[18] Alfa also has the exclusive right to regulate the terms of access to, and disclosure of, such information.[19] Status as director or shareholder does not grant the right to access and use Alfa's information in pursuit of personal litigation, as "the

---

[14] Mem. at 5.
[15] *See* Aug. 20, 2020 Minute Order.
[16] Decl. of Aleksandr V. Berezin (July 2, 2020) [Dkt. 80-1] ("Berezin Decl."); Decl. of Philippe Hoss (July 2, 2020) [Dkt. 80-2] (July 2, 2020) ("Hoss Decl.").
[17] Berezin Decl. ¶ 3.
[18] *Id.* ¶ 6.A-C.
[19] *Id*.

Bank's information disclosure mechanisms may not be used by individual shareholders in pursuit of purposes other than the Bank's management and their investment decision-making."[20]

*Second*, Luxembourg attorney Philippe Hoss submitted a Declaration addressing the question of "whether Plaintiffs have the legal right under the laws of Luxembourg to obtain documents from [LetterOne], in which they hold stakes as ultimate beneficial owners and/or in which they hold the positions of board members."[21]  Mr. Hoss explained that under the country's laws, "documents and data in whatever form, including emails … constitute tangible or intangible assets forming part of the assets of the relevant Company."[22]  Mr. Hoss further explained that even direct shareholders—which Plaintiffs are not with respect to LetterOne—have no right to obtain company documents for their own purposes, and that "Plaintiffs, because they are not [even] direct shareholders of the Companies, have ***no legal right*** to obtain documents and data from the Companies."[23]  Mr. Hoss further explained that, as directors of LetterOne, Plaintiffs do have certain information rights, but that they are limited as necessary for the exercise of their mandate as a company director, and "[a] Director may as a result not request or use company data or documents for personal purposes."[24]

In sum, Alfa and LetterOne's filing confirmed the validity of Plaintiffs' explanation to Defendants that they cannot compel Alfa or LetterOne to provide documents to them to produce: Plaintiffs have no legal right or authorization to obtain and use Alfa or LetterOne documents for their personal litigation purposes, and Alfa and LetterOne had expressly rejected Plaintiffs' requests for such authorization.

---

[20] *Id*. ¶ 6.E.
[21] Hoss Decl. ¶ 1.7.
[22] *Id*. ¶ 3.1.9.
[23] *Id*. ¶ 3.2.1.7-10.
[24] *Id*. ¶ 3.2.2.6-9.

**E.      Alfa's and LetterOne's Agreement to Provide Their Documents to Plaintiffs to Produce After the Court Granted Defendants' Motion to Compel Does Not Mean Plaintiffs Could Compel Alfa and LetterOne to Do So.**

Although Defendants have suggested otherwise, the fact that, ultimately, Alfa and LetterOne agreed to make documents in their possession available to Plaintiffs after the Court entered its March 30 Order granting Defendants' motion to compel—thereby enabling Plaintiffs to obtain and produce those documents in this case—does not somehow mean that Plaintiffs had possession, custody, or control of those documents.  Indeed, as Plaintiffs' counsel explained to Defendants' counsel when they asserted exactly that in a letter, there are many reasons why Alfa and LetterOne may have decided to allow Plaintiffs' access to produce Alfa's and LetterOne's documents after the Court entered its Order, even though they refused to do so before.[25]  For example, "[w]hile [Plaintiffs' counsel] cannot speak to the thought processes of LetterOne and the Alfa companies, we suspect that they appreciated the impact of a binding court order and the fact that Plaintiffs could be sanctioned by the Court if the companies did not allow them to obtain and produce certain documents in this case—and presumably those sanctions could have had negative consequences for the companies.[26]  Ironically, Defendants are now attempting to sanction Plaintiffs not for refusing to provide documents after the motion to compel was granted, but for actually providing the documents.  Also, "the entry of a binding court order is a relevant factor in determining whether documents can be disclosed under the [European Union's General Data Protection Regulation] and other data protection regimes," which may also have affected the calculus of Alfa's and LetterOne's decision-making.[27]

---

[25] Declaration of Thomas A. Clare, P.C. ("Clare Decl.") ¶ 2 & Ex. A (July 20, 2021) (Letter from T. Clare & J. Oliveri to J. Levy at 5 (May 12, 2021)).
[26] *Id.*
[27] *Id.*

II.     **Facts Relevant to the Temporal Scope of Plaintiffs' Production: Plaintiffs Did *Not* Refuse to Produce Relevant "Pre-2016" Documents That Plaintiffs Believed Were in *Their* Possession, Custody, or Control.**

Although Defendants assert in their Motion that Plaintiffs refused to produce any pre-2016 documents bearing on the truth or falsity of Defendants' defamatory statements, or on the issue of whether Plaintiffs are public figures,[28] that assertion is not accurate.

As Plaintiffs clearly and consistently explained to Defendants long before they filed their motion to compel, while Plaintiffs did not concede the relevance of documents dating prior to 2016, which is when Defendants accused Plaintiffs of having a corrupt relationship with Vladimir Putin and of attempting to improperly influence the 2016 U.S. presidential election, Plaintiffs ***did not*** withhold any such documents on relevance grounds.[29]  Rather, Plaintiffs agreed to produce any such documents in their personal possession, custody, or control while explaining that they did not have the authority to compel Alfa and/or LetterOne to produce any such documents on their servers or otherwise in their possession.

III.    **Facts Relevant to Defendants' Other Document Requests to Which Plaintiffs Objected, and Defendants Moved to Compel.**

A.      **Documents Produced in UK Proceedings.**

In their Requests for Production, Defendants also demanded from Plaintiffs court records from a proceeding filed by Plaintiffs in the United Kingdom, in which Plaintiffs prevailed against different defendants regarding false statements in the so-called "Steele Dossier."[30]

---

[28] Defs.' Mem. at 28-30.

[29] Letter from A. Lewis to J. Levy at 1 (Aug. 4, 2020) [Dkt. 94-4] ("Nevertheless, at your request, without conceding the relevance of same, Plaintiffs agreed to review and produce pre-2016 documents in their possession, custody, or control.  In this regard, Plaintiffs have not withheld pre-2016 documents.").

[30] *See* Defs.' Reqs. for Prod. at No. 81 (Oct. 11, 2019) [Dkt. 78-4].

Plaintiffs objected, citing *the parties' agreement*, as explained by Defendants' own counsel, that "neither party is required to produce responsive documents that are publicly available," with "the term 'publicly available' ha[ving] the same meaning as "public domain."[31] Plaintiffs explained that the witness statements, trial transcript, and trial exhibits from the U.K. proceeding were available from the English Court's electronic filing system, and that in any case, documents not accessible through those means could be obtained by submitting a request form to the court—and Plaintiffs even explained to Defendants exactly how to submit such a request and which forms to use.[32]  Plaintiffs' position was entirely consistent with Defendants' own responses to Plaintiffs' RFPs—for example, Defendants refused to produce a transcript of one of Defendant Fusion's principals in a related U.S. case and insisted that Plaintiffs make an application to the court to obtain it.[33]

### B.    Documents Produced in a Spanish Proceeding.

In their Requests for Production Nos. 20 and 21, Defendants demanded production of "all documents" received from or served by "prosecutor Jose Grinda or any other Spanish law enforcement or judicial official, or agency," as well as all documents sent to prosecutor Grinda "or any other Spanish law enforcement or judicial official, or agency."[34]

Plaintiffs objected on relevance grounds, arguing that the Spanish proceedings in question "have nothing to do with the defamatory allegations challenged in this lawsuit," in which Defendants falsely accused Plaintiffs of bribery, extortion, and interference in the 2016 U.S. Presidential Election.[35]  As Plaintiffs explained in opposing Defendants' motion to compel, the

---

[31] *See* Letter. from J. Levy to A. Lewis at 2-3 (Apr. 16, 2020) [Dkt. 78-10]; Letter from A. Lewis to J. Levy at 4-5 (Aug. 4, 2020) [Dkt. 94-4].
[32] *Id*.
[33] *See* Letter from J. Levy to A. Lewis at 6 (Apr. 16, 2020) [Dkt. 78-10].
[34] Defs.' Reqs. for Prod. (Oct. 11, 2019) [Dkt. 78-4].
[35] Letter from A. Lewis to J. Levy at 4 (Aug. 4, 2020) [Dkt. 94-4].

Spanish proceedings concerned a company called Zed Group and unverified allegations by the CEO of that company—which went bankrupt, and who was himself accused of fraud—that a company in which Plaintiff Fridman is a shareholder took improper actions to depress the value of Zed Group and cause it to go into bankruptcy.[36]  As Plaintiffs explained, not only were those mere allegations, but (1) they were allegations of improper payments by a company in which Mr. Fridman happened to be a shareholder, but over which he had no operational control; and (2) they bore no relation to the truth or falsity of the statements that are at issue in this case.[37]

Notwithstanding Plaintiffs' good-faith objections, when this Court granted Defendants' motion to compel the production of these documents, Plaintiffs produced all documents in their possession relating to the Spanish proceedings.[38]

###    C.    The "Kroll Report."

In a June 30, 2020 letter—long after Defendants served their Request for Production on Plaintiffs—Defendants' counsel raised for the first time the so-called "Kroll Report."[39] Defendants' counsel claimed that the Kroll Report reflects "bribery of officials" in Russia and, thus, even though it does not mention or relate to Plaintiffs, it is nevertheless relevant to Defendants' request for "documents relating to Plaintiffs' history with Putin, including their exchange of significant favors, payments to Putin, as well as any 'kompromat' on Putin and his corrupt business activities from the 1990s held by Plaintiffs or Alfa."[40]  Defendants pointed to testimony from Plaintiff Aven in UK proceedings to the effect that he had a copy of the Kroll Report and insisted that he produce it.

---

[36] Pls.' Mem. of P. & A. in Opp'n to Defs.' Mot. to Compel Pls.' Prod. of Their Docs. at 13-15 (Sept. 11, 2020) [Dkt. 105].
[37] *Id.*
[38] *See generally* Defs.' Mem.
[39] Letter from J. Levy to A. Lewis at 3-4 (June 30, 2020) [Dkt. 94-3].
[40] *Id.*

In response, Plaintiffs' counsel informed Defendants' counsel that Defendants' counsel's understanding of the contents of the Kroll Report was incorrect.  Plaintiffs' counsel explained that, as Mr. Aven testified under oath, the Kroll Report "does not relate in any way to Vladimir Putin, to the Plaintiffs, or to any of the matters that are the subject of CIR 112."[41]  Thus, Plaintiffs' counsel explained, the document "does not relate to the truth or falsity of the defamatory statements at issue in this case or to any other fact relevant to this lawsuit."[42]

However, when the Court granted Defendants' motion to compel and ordered Plaintiffs to produce the Kroll Report, Plaintiffs timely did so.  Tellingly, Defendants—despite now possessing (and presumably having reviewed) the Kroll Report—do not dispute the accuracy of Plaintiffs' explanation of it as not implicating Putin, the Plaintiffs, or any of the disputed issues in this case.[43]

### D.    Mueller Investigation Documents.

In their Request for Production No. 14, Defendants demanded "[a]ll documents received by, produced by, or served upon you in connection with the Mueller Investigation."[44]  Plaintiffs responded by stating that Plaintiffs Fridman and Khan did not possess any documents responsive to Defendants' request, while Plaintiff Aven objected, *inter alia*, on the grounds that the request sought materials protected by grand jury secrecy.[45]

Defendants moved to compel these documents on the basis of relevancy, and Plaintiffs opposed citing caselaw holding that a grand jury witness has a legal right to decline to disclose

---

[41] Letter from A. Lewis to J. Levy at 3 (Aug. 4, 2020) [Dkt. 94-4].
[42] *Id*.
[43] *See* Defs.' Mem. at 9-10.
[44] Defs.' Reqs. for Prod. of Docs. at No. 14 (Oct. 11, 2019) [Dkt. 78-4].
[45] Pls.' Resps. Objs. to Defs.' Req. for Prod. of Docs. (Nov. 11, 2019) [Dkt. 78-5].

such information in civil litigation—unless and until the party seeking disclosure obtains a court order compelling disclosure on the basis of showing a substantial need for the information.[46]

## IV.   The Court's March 30, 2021 Discovery Orders Granting Motions by *Both* Plaintiffs *and* Defendants.

On March 30, 2021, the Court issued a series of Minute Orders addressing a number of outstanding discovery issues.  While the Court granted the two motions to compel filed by Defendants that are the subject of the instant Motion, the Court *also* granted in part Plaintiffs' motion to compel regarding Defendants' claims of privilege over nearly 500 withheld documents and ordered Defendants to produce a compliant (third) privilege log within thirty days.  Notably, none of the March 30, 2021 Minute Orders reflected any finding by the Court that Plaintiffs' positions on the discovery disputes were taken in bad faith or without substantial justification.

## ARGUMENT

Defendants are not entitled to an award of expenses or attorney's fees in connection with their two motions to compel.  Contrary to Defendants' assertion, is it simply not true that "Rule 37 of the Federal Rules holds that where a motion to compel discovery is granted in full, the party whose conduct necessitated the motion *must* pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[47]   Instead, the Rule provides that in many circumstances, a court *may not* order payment of expenses or fees, including when (i) the movant failed to make a good-faith effort to obtain disclosure without court action; (ii) the opposing party's objections to disclosure were substantially justified; or (iii) other circumstances make an award of expenses unjust.  With respect to the second factor, and particularly relevant to this Motion, the

---

[46] *See* Defs.' Mem. of Law in Supp. of Their Mot. to Compel Pls.' Prod. of All Responsive & Relevant Docs. at 26-29 (Aug. 14, 2020) [Dkt. 94]; Pls.' Mem. of P. & A. in Opp'n to Defs.' Mot. to Compel Pls.' Prod. of their Docs. at 16-20 (Sept. 11, 2020) [Dkt. 105].

[47] *See* Defs.' Mem. at 2.

"substantially justified" standard is "a forgiving one," *Boca Investerings P'ship v. United States*, No. 97-cv-602, 1998 WL 647214, at *1 (D.D.C. Sept. 1, 1998), and a party on the losing end of a motion to compel may not be required to pay the movant's expenses if the issue was a "genuine dispute" over which "reasonable people could differ." *Cobell v. Norton*, 226 F.R.D. 67, 90-91 (D.D.C. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  Relevance objections are considered substantially justified unless the position taken was "an unreasonable, frivolous, or completely unsupported reading of the law," *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013), and an objection to production is also substantially justified where there is no clear controlling precedent governing the issue and the party opposing disclosure cites case law that supports its objection, *see Boca*, 1998 WL 647214, at *1 ("Speaking more practically, when there is no controlling precedent on the issue, and counsel marshals what authority there is in support of her position, the position she articulates will be found to be substantially justified even if it does not prevail.").

Here, as explained below, Plaintiffs' discovery objections and oppositions to Defendants' motions to compel were more than substantially justified.  Indeed, in ruling on Defendants' motions to compel that are at issue—as well as in granting in part Plaintiffs' motion to compel filed the same day—this Court made no finding whatsoever that any of the Plaintiffs' positions lacked justification or were taken in bad faith.  And under these circumstances, where "the Court ultimately rejected [Plaintiffs'] arguments," but "did not issue any opinion suggesting [Plaintiffs'] objections were illegitimate and without reason," an award of fees would be improper.  *Borum v. Brentwood Vill., LLC*, No. 16-cv-1723, 2020 WL 5291982, at * 9 (D.D.C. Sept. 4, 2020) (refusing to award fees).

Here, as explained below, an award of fees is not available to Defendants under Rule 37 for multiple reasons.

***First***, with respect to the primary dispute—whether Plaintiffs were obligated to produce documents controlled by corporate entities Alfa and LetterOne—Plaintiffs' objection that they lacked possession, custody, and control over Alfa's and LetterOne's documents was substantially justified.  Plaintiffs demonstrated that they made a request to the companies' counsel asking that they be permitted to collect, review, and produce materials on the companies' servers and in the companies' files, and the companies declined.  Moreover, the companies took the position, supported by declarations from Russian and Luxembourgian attorneys, that it would be improper under the law of the companies' home jurisdictions for Plaintiffs to obtain and disseminate company materials for use in personal litigation without such authorization.  Ultimately, in light of the Court's granting of the Defendants' motion to compel, the companies agreed to allow Plaintiffs to produce the disputed documents rather than face violation of a court order—but that does not remotely mean that Plaintiffs' good-faith hesitance to act in derogation of company directives in the absence of a court order was not substantially justified.

Moreover, Defendants are also not entitled to fees for moving to compel production of Alfa and LetterOne documents for the separate and independent reason that they failed to make a good-faith effort to obtain the disputed materials without court intervention.  Defendants claim they met this good-faith standard because they checked the box of meeting and conferring with ***Plaintiffs*** concerning the dispute, but they neglect to mention that counsel for Alfa and LetterOne repeatedly reached out to Defendants' counsel and offered that the companies would agree to collect, review, and produce their documents that Defendants sought—and even offered to do so without requiring Defendants to follow the relatively onerous foreign subpoena process.  Defendants ignored those

offers and instead forced the parties to litigate an issue that could have been amicably and expeditiously resolved without the Court's intervention.

**_Second_**, Defendants claim entitlement to fees for successfully moving to compel certain other specific documents or categories of documents, but in all instances, Plaintiffs' objections to producing those documents were substantially justified. Plaintiffs objected to producing the so-called "Kroll Report" on the grounds that it was not relevant, and informed Defendants before they moved to compel its production that Defendants' belief that the document had anything to do with either Plaintiffs or Vladimir Putin was mistaken. But Defendants refused to take Plaintiffs at their word and moved to compel. Tellingly, Defendants' instant Motion does not even claim that the Kroll Report is in fact relevant to any issue in this case. Similarly, with respect to the so-called "Spanish Proceedings"—a case in which wholly uncorroborated allegations were lobbed against Plaintiff Fridman that are unrelated to the issues in this case—**_Defendants do not now contend_** that those documents are in fact relevant to this case. As for Defendants' demand that Plaintiffs produce witness statements, filings, and transcripts from a court proceeding in the United Kingdom, Plaintiffs objected based on the parties' agreement—supported by case law in this District—that a civil litigant is not obligated to produce court records that are publicly available. And last, with respect to Plaintiff Aven's communications with Robert Mueller's Special Counsel's Office, Plaintiffs' objection that those materials were protected by grand jury secrecy was fully consistent with case law holding that a grand jury witness has a right to decline to disclose grand jury matters in civil litigation unless and until the party seeking disclosure demonstrates a need for the information and obtains a court order compelling disclosure.

**_Finally_**, Rule 37's exception for "other circumstances" that make an award of fees unjust is fully applicable here. Defendants' Motion of course focuses on Defendants' two motions to

compel that the Court granted on March 30, 2021, but not surprisingly, Defendants fail to mention that the very same day, the Court granted in part Plaintiffs' motion to compel Defendants to produce a sufficient privilege log justifying their withholding of nearly 500 relevant documents— which Defendants had long refused to do (and Defendants still have not complied with that Order). Given that both Plaintiffs and Defendants were simultaneously victors and losers on competing motions to compel resolved on the same day, the appropriate outcome is for the parties to bear their own expenses associated with those motions.

**I.      Plaintiffs' Are Not Entitled to Fees with Respect to Plaintiffs' Objection to Producing Documents Controlled by Foreign Corporate Entities Alfa and LetterOne.**

The Court should reject Defendants' request for attorney's fees associated with moving to compel production of documents controlled by Alfa and LetterOne, two legally-distinct foreign corporate entities in which Plaintiffs are indirect shareholders, for two primary reasons.  First, Plaintiffs' sincerely held belief that they lacked corporate and legal authority to collect, review, and produce company documents for personal use was "substantially justified.  *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).  Second, Defendants' refusal to entertain the companies' efforts to reach a solution that would allow for the companies to be responsible for producing their documents that Defendants' sought amounts to a lack of good-faith effort to resolve the dispute without the need for court intervention.  *See* Fed. R. Civ. P. 37(a)(5)(A)(i).

**A.      Plaintiffs had an objectively reasonable belief that they could not collect, review, and produce corporate documents in the absence of company approval and legal authority.**

The majority of Defendants' Motion focuses on Plaintiffs' objection to producing documents owned and maintained in the normal course by corporate entities Alfa and LetterOne, a position that Defendants contend was "unjustifiabl[e]" and a "contrivance" because Defendants

contend that Plaintiffs "control" these entities.[48]  But notwithstanding Defendants' ongoing efforts to portray the individual Plaintiffs and corporate entities Alfa and LetterOne as indistinguishable, that is simply not the case.  Alfa and LetterOne are distinct, formal, corporate entities, of which Plaintiffs are indirect shareholders and directors.[49]   Thus, Defendants' demand that these individual Plaintiffs collect, review, and produce files maintained by the companies created a novel and legitimate dispute as to whether Plaintiffs had the authority to do so, and Plaintiffs' hesitance to act in the absence of company permission and in derogation of the law of the companies' home countries was substantially justified.  *See Holland v. Freeman United Mining Coal Co*., No. 07-cv-490, 2008 WL 11501533, at *4 (D.D.C. Mar. 18, 2008) (declining to award expenses under Rule 37 where the "litigation presents novel questions of law" that led "the parties [to] have legitimate disputes.").

It is important to note at the outset that Plaintiffs never took the position that relevant documents controlled by Alfa or LetterOne's were entirely ***non-discoverable,*** or that Defendants were not entitled to obtain such documents.  Indeed, because Plaintiffs have never engaged in bribery of Vladimir Putin or attempted to influence a U.S. election, Plaintiffs had (and have) no incentive to try to withhold from discovery documents that would prove the falsity of the defamatory statements at issue in this case.  Rather, the dispute concerned ***from whom*** those documents should be obtained.  Plaintiffs' consistent position was that they did not have possession and control over the disputed materials because they lacked the authority to collect, review, and produce for their personal purposes materials that are the property of those corporate entities—and that Defendants should therefore obtain those materials directly from the companies that have

---

[48] *See* Defs.' Mem. at 20, 23.
[49] Plaintiff Khan is an indirect shareholder of Alfa but is not a director.  None of the Plaintiffs hold executive officer positions with either company.

possession and control over them.[50]  Plaintiffs actively tried to assist Defendants in obtaining those documents from the companies themselves by providing Defendants' counsel with the contact information for Alfa and LetterOne's U.S. counsel who then, after Defendants' counsel made no effort to initiate a dialogue, proactively reached out to counsel for Defendants to reach agreement on the scope of materials sought so that the companies could collect, review, and produce them to Defendants.[51]  Plaintiffs also confirmed to Defendants' counsel that they had sought permission from the companies' counsel to collect and produce the company documents themselves, and that that permission had been denied.[52]

When Defendants moved to compel Plaintiffs to produce the company documents, both Alfa and LetterOne intervened to oppose the motion.  Both companies confirmed that they had denied Plaintiffs permission to produce the companies' documents.  Moreover, Alfa and LetterOne provided declarations from counsel practicing in the countries where the companies are located attesting that, under the laws of Russia (Alfa) and Luxembourg (LetterOne), the documents Defendants sought were the property of the companies, and that Plaintiffs' status as indirect shareholders and directors did not give them the legal right to make unauthorized use of company property for their personal lawsuit.

Thus, Plaintiffs were objectively justified, in the absence of a court order, in refusing to collect and produce Alfa- and LetterOne-controlled documents where (1) the companies had explicitly denied Plaintiffs authorization to do so, and (2) the companies took the position—

---

[50] See Pls.' Mem. in Opp'n to Defs.' Mot. to Compel Prod. by Pls. of Non-Party Docs. at 19 (July 10, 2020) [Dkt. 84] (arguing that the Court should direct Defendants to obtain Alfa and LetterOne documents directly from the companies).

[51] Email Correspondence Between M. Krawiec & J. Levy (May 1, 2020-May 8, 2020) [Dkt. 78-33].

[52] Ltr. A. Lewis to J. Levy at 5 (Apr. 24, 2020) [Dkt. 78-11].

supported by declarations of foreign counsel—that for Plaintiffs to do so absent authorization would be a violation of the law of the countries where Alfa and LetterOne are based.  As this Court has recognized, where a party reasonably believes that it lacks legal authority to produce requested materials, it is substantially justified in declining to do so absent court intervention.  *See Peterson v. Hantman*, 227 F.R.D. 13, 17 (D.D.C. 2005) (finding defendant was substantially justified in objecting to producing materials it believed were rendered confidential by statute).

Additionally, Plaintiffs' position that they lacked the authority to produce the companies' documents is also substantially justified because there was no controlling precedent establishing that Plaintiffs' status as directors and indirect shareholders of Alfa and LetterOne necessarily meant that they have possession, custody, and control over the companies' documents with regard to a Rule 34 discovery request.  *See Boca*, 1998 WL 647214, at *2 (an objection to disclosure is substantially justified if no precedent directly controlled the issue in dispute); *Cobell*, 226 F.R.D. at 91 (same).  In opposing Defendants' motion to compel, Plaintiffs cited numerous cases holding that merely being an officer or stakeholder in a corporate entity does not establish possession, custody, or control over corporate-held documents.[53]  *See, e.g., Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 502 (D. Kan. 2001); *Noami v. Zaid*, 283 F.R.D. 639, 642 (D. Kan. 2012).  And Defendants, for their part, did not cite any controlling precedent establishing that Plaintiffs necessarily had such control over Alfa and LetterOne documents; instead, Defendants argued that the concept of control in this context is "highly fact-specific," and requires a court to "look to a variety of non-exclusive factors."[54]

---

[53] Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Compel Prod. by Pls.' of Non-Party Docs. at 11-12 (July 10, 2020) [Dkt. 84].

[54] Defs.' Mem. of Law in Supp. of Their Mot. to Compel Pls.' Prod. of Their Docs. at 18 (June 12, 2020) [Dkt. 78].

Finally, Defendants contend that Plaintiffs' justifiable concerns about violating company directives and foreign law do not excuse their objections because "a federal court may order a party to comply with discovery, even if such compliance may violate another sovereign's law,"[55] and "[foreign] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that [foreign] statute."[56]   But these arguments speak only to whether this Court ultimately had the authority to order Plaintiffs to produce Alfa and LetterOne's documents, notwithstanding their objections to doing so, which Plaintiffs do not dispute.  That this Court had the authority to compel Plaintiffs to produce the disputed materials on motion does not remotely establish that Plaintiffs' hesitance to do so in the absence of a directive from the Court—and, only then, with permission of the companies—was not substantially justified.

### B.     Defendants failed to make a good-faith effort to obtain Alfa and LetterOne documents without court intervention.

Defendants are also not entitled to fees for moving to compel documents controlled by Alfa and LetterOne for the separate and independent reason that Defendants "filed the motion before attempting in good faith to obtain the disclosure or discovery without court action."  Fed. R. Civ. P. 37(a)(5)(A)(i).  As explained above, while Plaintiffs objected to producing company documents and made clear that they did not believe they had authority to do so, Plaintiffs also encouraged Defendants to obtain the documents directly from Alfa and LetterOne, who were better positioned to collect, review, and produce their own documents.[57]   While Defendants never made any effort to do so, U.S. counsel for the companies proactively reached out to counsel for Defendants on

---

[55] Defs.' Mem. at 24 (quoting *In re Vitamins Antitrust Litig.*, No. 99-cv-197, 2001 WL 1049433, at *10 n.20 (D.D.C. June 20, 2011)).

[56] *Id*. at 24 (quoting *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987).)

[57] Ltr. A. Lewis to J. Levy (Apr. 24, 2020) [Dkt. 78-11].

multiple occasions, offering to agree on a scope of discovery and make a production—and to even do so without requiring Defendants to serve a subpoena or follow the onerous requirements to obtain discovery from foreign entities.[58]  Defendants refused to even explore that solution to the dispute, and instead simply insisted that the documents must be collected and produced by Plaintiffs.

While Defendants were ultimately able to persuade the Court that Plaintiffs should produce Alfa and LetterOne documents, resolution by the Court likely would not have been necessary if Defendants had simply engaged with counsel for the companies who was trying to assist Defendants in obtaining the discovery they sought.  Thus, Defendants' motion to compel was in large part necessitated by Defendants' own stubbornness and lack of good-faith effort to obtain the disputed materials without resorting to a motion.  In such circumstances, an award of fees is not warranted.  *See, e.g., Marsch v. Rensselaer Cty.*, 218 F.R.D. 367, 371-72 (N.D.N.Y. 2003) (holding that a pre-motion letter demanding compliance with a discovery request was insufficient and that "further steps" to obtain discovery without court intervention are necessary to satisfy Rule 37's "good-faith" standard); *Bd. of Educ. of Evanston Twp. High Sch. v. Admiral Heating & Ventilating*, Inc., 104 F.R.D. 23, 37 (N.D. Ill. 1984) (holding that where "both sides have contributed materially to the protraction of the discovery dispute," Rule 37 is "best served by letting the expenses rest where they have fallen").

### C. Production of some company documents in a separate UK proceeding does not remotely demonstrate that Plaintiffs' objections to producing company documents in this litigation were unjustified.

Defendants' Motion makes much of the fact that a subset of Alfa and LetterOne documents were produced in a UK proceeding against different defendants, involving different causes of

---

[58] Email Correspondence Between M. Krawiec & J. Levy (May 1-8, 2020) [Dkt. 78-33].

action, and contend that this means that Plaintiffs had the ability and authority to produce those company documents in this case.[59]  But in fact, it demonstrates just the opposite—that the decision whether or not to release documents controlled by Alfa or LetterOne was for the companies to make, not Plaintiffs.  As Plaintiffs explained in correspondence to Defendants' counsel, the companies granted permission to disclose a limited subset of company documents in the UK *Aven v. Orbis* litigation but denied that permission in this litigation—indeed, this case involves a cross border transfer and obtaining associated consents, along with an overwhelmingly larger volume of documents at issue.[60]  Specifically, Plaintiffs explained that the wholly different circumstances revealed an obvious rationale for the companies' decision; namely, the applicable data protection regimes meant documents in the possession of Alfa or LetterOne could be produced in the UK without needing to effectuate a cross-border transfer of materials to a jurisdiction without such data protection, and the United Kingdom's stringent data protection laws would also protect the dissemination of the companies' documents to third parties.[61]  The companies may also have taken into account the far more limited scope of the discovery in the UK action.  Moreover, the documents at issue—including the Oleg Govorun employment file referenced in Defendants' Motion[62]—are ***helpful*** to Plaintiffs' position in this litigation, as they demonstrate the falsity of Defendants' claims that Plaintiffs have a history of bribing Vladimir Putin.  That Plaintiffs were unable to produce those company documents in this litigation (until the companies granted permission in light of the Court's March 30, 2021 Order) only serves to support Plaintiffs' substantially justified belief that they lacked actual or legal authority to produce documents

---

[59] *See* Defs.' Mem. at 20-22.
[60] Clare Decl. ¶ 2 & Ex. A (Letter from T. Clare to J. Levy at 5 (May 12, 2021)).
[61] *Id.*
[62] *See* Defs.' Mem. at 15.

maintained on the companies' servers and in the companies' files without permission from the companies to do so.

### D.     Plaintiffs did not refuse to produce pre-2016 documents in their possession.

Finally, Plaintiffs did not refuse to produce any pre-2016 documents bearing on the truth or falsity of the statements at issue, or on the issue of whether Plaintiffs are public figures, as Defendants claim.[63]  Plaintiffs made clear in meet-and-confer discussions that while they did not concede the relevance of documents dated prior to the timeframe of the defamatory statements at issue in this case, Plaintiffs *were not withholding such documents based on a relevance objection*.[64]  Instead, Plaintiffs agreed to produce any such documents in their personal possession, while maintaining their position that Plaintiffs did not have the authority to produce Alfa or LetterOne documents.  This is merely an attempt by Defendants to gin up an additional dispute that did not exist, when in reality, the issue is part and parcel of the genuine dispute over whether Plaintiffs had the authority to produce Alfa and LetterOne documents.  For the reasons set forth above, Plaintiffs' objections on that front were substantially justified, and thus Defendants are not separately entitled to fees for moving to compel on this non-existent dispute.

### II.    Plaintiffs' Objections to Producing the "Kroll Report," "Spanish Proceeding" Documents, "UK Proceeding" Documents, and "Mueller Documents" Were Substantially Justified.

Plaintiffs' objections to producing the so-called "Kroll Report," "all documents" from the Spanish investigative proceeding, documents from the "UK Proceeding," and "documents related to Peter Aven's cooperation with the Mueller Investigation" were also substantially justified.  With

---

[63] Defs.' Mem. at 28-30.

[64] Letter from A. Lewis to J. Levy at 1 (Aug. 4, 2020) [Dkt. 94-4] ("Nevertheless, at your request, without conceding the relevance of same, Plaintiffs agreed to review and produce pre-2016 documents in their possession, custody, or control.  In this regard, Plaintiffs have not withheld pre-2016 documents.")

respect to the Kroll Report and documents from the Spanish proceeding, Defendants' unsubstantiated belief that those materials bore some relevance to this action was simply incorrect, and indeed, now that they are in possession of those materials, Defendants do not even attempt to claim that they, in fact, have any relevance to any issue in this case.   Accordingly, Plaintiffs position that those documents are irrelevant clearly was substantially justified, and Defendants are not entitled to expenses and fees for having engaged in a speculative and fruitless exercise of moving to compel the production of documents, that Plaintiffs accurately told them, have no bearing on the issues in this case.  Additionally, Plaintiffs' objection to producing documents from a UK court proceeding that are in the public domain was substantially justified by the parties' express agreement that such documents need to be produced.  Finally, with respect to "documents related to Petr Aven's cooperation with the Mueller Investigation," Plaintiffs' objection to producing those materials absent a court order was substantially justified and supported by case law.

## A.    The Kroll Report was not and is not relevant.

As set forth above, when Defendants first demanded production of the so-called "Kroll Report," they asserted that the document was relevant to the claims in this case because they believed it contained information about "Plaintiffs' history with Putin, including their exchange of significant favors, payments to Putin, as well as any 'kompromat' on Putin and his corrupt business activities from the 1990s held by Plaintiffs or Alfa."[65]   But Plaintiffs' counsel flatly informed Defendants' counsel that their speculation about the contents of the Kroll Report was mistaken, that it "does not relate in any way to Vladimir Putin [or] to the Plaintiffs," and that it "does not relate to the truth or falsity of the defamatory statements at issue in this case or to any other fact

---

[65] *Id.*

relevant to this lawsuit."[66]  Nevertheless, in compliance with the Court's March 30, 2021 Order, Plaintiffs produced the Kroll Report to Defendants on April 29, 2021.

Defendants' argument as to why they should be awarded expenses and fees for successfully moving to compel production of the Kroll Report is buried at the tail end of their brief, and that argument is most conspicuous for what is lacking.[67]  Defendants do not even superficially describe the actual contents of the document, they do not claim that it reveals any information about Plaintiffs at all, and they do not attempt to claim that it actually has any relevance to any disputed issue in this case.  That is because, as Plaintiffs always maintained, the document does not even refer to Plaintiffs.  Defendants were simply wrong with respect to what they believed the contents of that document to be, and they chose to ignore Plaintiffs' efforts to correct their misapprehensions.  Given that they now have the document in their possession, Defendants' total inability to articulate how the contents of the document have any relevance to this case demonstrates that Plaintiffs' objection to production based on its lack of relevance was substantially justified, and thus Defendants are not entitled to costs and fees for wasting both parties' time and resources in litigating that issue.  *See* Fed. R. Civ. P. 37(a)(5)(a)(ii); *Groupwell Int'l (HK) Ltd. v. Gourmet Express, LLC*, 277 F.R.D. 348, 361 (W.D.K.Y. 2011) (declining to award fees to movant where the opposing party's belief that disputed materials lacked relevance was substantially justified); *Neumont v. Monroe Cty., Fla.*, 225 F.R.D. 266, 267 (S.D. Fla. 2004) (declining to award fees to movant where, despite successfully moving to compel, the disputed requests "ultimately did not lead to any [admissible] evidence.").

---

[66] *Id*.
[67] *See* Defs.' Mem. at 32-33.

**B.      The Spanish Proceeding documents are not relevant.**

Similarly, as explained above, Plaintiffs' position that the "Spanish proceedings" were not relevant to the issues in this case was substantially justified.   Defendants' interest in those proceedings was based solely on the fact that a biased businessman, himself accused of fraud by the Spanish authorities, had made wholly unsubstantiated allegations to Spanish prosecutors against Plaintiff Fridman that bear no relation to the statements at issue in this case accusing Mr. Fridman of having a corrupt relationship with Vladimir Putin and of involvement in an effort to interfere with the 2016 U.S. presidential election.   And as with the Kroll Report, despite having now been in possession of those Spanish proceedings documents for months, Defendants instant Motion does not even attempt to claim that any information in those materials has proven to be relevant to this case.[68]   Plaintiffs' position that those materials are not relevant was not only substantially justified but correct, and thus Defendants are not entitled to fees and expenses for moving to compel their disclosure.   *See Harper v. City of San Jose*, No. 09-cv-5758, 2011 WL 1002021, at *2 (N.D. Cal. Mar. 21, 2011) (declining to award fees and finding opposing party's relevance objection "substantially justified" where the relevance of the materials sought in the motion to compel was "tenuous" and a "close call").

**C.      Plaintiffs were substantially justified in declining to produce publicly available UK court records.**

Defendants' objection to producing publicly available documents from the related *Aven v. Orbis* proceeding in the United Kingdom was also substantially justified.   As noted above, those documents were freely available to Defendants, either on the English Court's public website, or by making a form request to the English Court.[69]   And the parties had an ***express agreement*** that

---

[68] *See* Defs.' Mem. at 31.
[69] Letter from A. Lewis to J. Levy at 4-5 (Aug. 4, 2020) [Dkt. 94-4].

neither Plaintiffs nor Defendants were required to produce publicly available documents.[70]  Indeed, even absent such an agreement, case law in this District makes clear that civil litigants are not required to produce court records that are available to the general public.  *See Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991) (denying a motion to compel a party to produce court records because the moving party could obtain them from the court).  This alone demonstrates that Plaintiffs' objection to producing these court records was substantially justified.  Additionally, as noted above, Defendants themselves took the position that they were not required to produce a deposition transcript that Plaintiffs could obtain by making an application to the U.S. District Court for the Southern District of Florida.[71]

### D.   Case law fully supports Plaintiffs' objection to producing grand jury materials absent a court order.

Finally, Defendants assert that they should be awarded fees for successfully moving to compel the production of "documents related to Petr Aven's cooperation with the Mueller Investigation,"[72] specifically, documents consisting of attorney proffers, pre-testimony witness interviews, and grand jury testimony.  Defendants claim that Plaintiff Aven's objection to producing these materials was not substantially justified because "Plaintiffs had no legal justification for withholding" those documents pertaining to the Grand Jury investigation led by the Special Counsel's Office because there are no "limitations on a grand jury *witness*" disclosing information concerning grand jury proceedings.[73]  But Defendants misconstrue the nature of Plaintiffs' objection and ignore the substantial case law that Plaintiffs presented in support of it.

---

[70] *Id*.

[71] *See* Letter from J. Levy to A. Lewis at 6 (Apr. 16, 2020) [Dkt. 78-10].

[72] Defs.' Mem. at 8, 32.

[73] *Id*. at 32.

While it is true that a grand jury witness may choose to ***voluntarily*** disclose information concerning the proceedings without fear of penalty, *see In re Grand Jury*, 490 F.3d 978, 989 (D.C. Cir. 2007), it is equally true—as Plaintiffs demonstrated in their opposition to Defendants' motion to compel—that a grand jury witness has a ***right and privilege*** to decline to disclose such information in a civil proceeding unless and until the party seeking disclosure makes a showing of necessity ***and*** obtains a court order compelling disclosure.  *See, e.g., SEC v. Oakford Corp.*, 141 F. Supp. 2d 435, 437 (S.D.N.Y. 2001) ("[A] witness may not be compelled to testify whether or not he had appeared and testified before a grand jury as to a particular matter, absent a court order to do so … [and] absent a strong showing of necessity"); *In re Sealed Motion*, 880 F.2d 1367, 1372 (D.C. Cir. 1989) (noting that "the secrecy of the testimony of a grand jury witness belongs to the witness and thus the privilege is his to waive"); *In re Grand Jury*, 490 F.3d at 985 ("[T]he theory of grand jury secrecy is that 'the witness is guaranteed against compulsory disclosure; the privilege must therefore be that of the witness, and rests upon his consent") (quoting 8 John Wigmore, Evidence In Trials At Common Law § 2362 (McNaughton rev., 1961).)  Ultimately, because this Court ordered the documents at issue to be disclosed, it must have concluded that Defendants had made a showing of necessity that overcame Plaintiff Aven's right to resist disclosure.  But the case law persuasively demonstrates that Plaintiff Aven was substantially justified in asserting his right to decline to disclose grand jury materials until the Court made that finding and compelled him to do so.  *See, e.g., Cobell v. Norton*, 226 F.R.D. 67, 91 (D.D.C. 2005) (a party's objection to a discovery request is substantially justified where there is legal authority supporting the position); *Colaco v. ASIC Advantage Simplified Pension Plan*, 301 F.R.D. 431, 436 (N.D. Cal. 2014) (party substantially justified in objecting to an RFP where "the case law on [the] issue is not fully delineated," and the party relied on "persuasive authority" supporting its objection).

**III.    An Award of Fees Would be Inequitable When Defendants Have Engaged in Dilatory Conduct and Were Also on the Losing End of a March 30, 2021 Order on a Motion to Compel.**

Finally, Defendants are not entitled to fees because "other circumstances make an award of expenses unjust."  *See* Fed. R. Civ. P. 37(a)(5)(A)(iii).  Defendants claim an entitlement to fees because the Court granted their two related motions to compel by minute orders on March 30, 2021, and complain that Plaintiffs forced Defendants to "expend time, money, and investigative resources that would have been spent more efficiently elsewhere."[74]  But Defendants neglect to mention that on the same day, the Court also granted in part ***Plaintiffs'*** motion to compel concerning Defendants' privilege log, and held that Defendants had not provided sufficient information to substantiate their claim of privilege over nearly ***500 documents*** that Defendants have withheld since the outset of discovery.[75]  Plaintiffs spent months repeatedly trying to obtain a sufficient log from Defendants, and their refusal to provide one required Plaintiffs to seek Court intervention.[76]  Not only did Defendants then fail to comply with the Court's March 30, 2021 Order, necessitating another motion to compel that remains pending, but Defendants still-insufficient, updated log makes clear that Defendants claims of privilege over those nearly 500 documents are meritless.[77]  To date, over a year-and-a-half after Plaintiffs served their first Rule 34 requests for production, Defendants have produced virtually no documents relating to the creation and publication of the defamatory statements that are at issue in this case.[78]

---

[74] Defs.' Mem. at 2.
[75] *See* Minute Order re Plaintiffs' Motion to Compel (Mar. 30, 2021); Mem. of P. & A. in Supp. of Pls.' Mot. to Compel Prod. of Docs. Withheld as Privileged by Defs. at 5-6 (Aug. 14, 2020) [Dkt. 95-1].
[76] *Id*. at 5-10.
[77] *See generally* Mem. of P. & A. in Supp. of Pls.' Second Mot. to Compel Defs. To Prod. Docs. Improperly Withheld as Privileged (May 21, 2021) [Dkt. 147-1].
[78] *See id.* at 5.

If Defendants are entitled to an award of fees because the Court granted their motions to compel on March 30, then Plaintiffs are also entitled to fees for their successful motion to compel resolved the same day—and Plaintiffs certainly will seek such fees if Defendants' instant Motion is granted.  But given that both parties won on some of the discovery disputes adjudicated on March 30 and lost on others, Rule 37 would be best served by letting the parties bear their own fees and expenses associated with those motions.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Reasonable Expenses Incurred in Moving to Compel Discovery.

Dated: July 20, 2021

Respectfully submitted,

 /s/ Thomas A. Clare, P.C.
Thomas A. Clare, P.C. (D.C. Bar No. 461964)
Elizabeth M. Locke, P.C. (D.C. Bar No. 976552)
Joseph R. Oliveri (D.C. Bar No. 994029)
Andrew C. Phillips (D.C. Bar No. 998353)
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7400
tom@clarelocke.com
libby@clarelocke.com
joe@clarelocke.com
andy@clarelocke.com

*Counsel for Plaintiffs Mikhail Fridman,*
*Petr Aven, and German Khan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed electronically with the Clerk of the Court on July 20, 2021, using the CM/EMF system, which will send notification of such filing to all counsel of record.

_/s/ Thomas A. Clare, P.C._
Thomas A. Clare, P.C.