UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN,<br><br>Plaintiffs,<br><br>v.<br><br>BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,<br><br>Defendants. | Civil Case No. 1:17-cv-2041-RJL |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR AN ORDER TO SHOW CAUSE**

Contrary to the hyperbole in Plaintiffs' memorandum in support of their Motion to Show Cause ("Motion"), the events about which Plaintiffs complain have not "threatened the integrity of this proceeding." ECF No. 158-1 at 2. Rather, according to Plaintiffs' own motion, more than three months ago, a prior attorney of record for Defendants, William Taylor, made one brief telephone call to Plaintiff German Khan's son-in-law, Alex van der Zwaan. Within days, Mr. van der Zwaan had disclosed that call to Plaintiffs' counsel, who promptly called Mr. Taylor to discuss the subject of the call. Since then, Defendants' counsel of record, Joshua Levy, assured Plaintiffs' counsel that Mr. Taylor's call was isolated and that there would be no similar contacts with anyone who is not Plaintiffs' counsel of record in this case. The parties proceeded with the case, which had been unaffected by Mr. Taylor's call to Mr. van der Zwaan.

However, despite Plaintiffs having suffered no injury as a result of the single phone call at issue, counsel for Plaintiffs continued to hound Mr. Levy for answers to questions that he could not answer without divulging privileged communications or protected work product. Mr. Levy communicated that to counsel for Plaintiffs. Yet Plaintiffs' counsel sought a Rule 7(m) conference

on the instant Motion for July 6, 2021, at which Plaintiffs' counsel made clear that the only remedy they were seeking through this motion was sanctions, and they could articulate no other harm to their clients or their clients' case. Plaintiffs' counsel said that they needed to understand the full extent of what occurred, even though Defendants' counsel had already provided a written assurance that the call was a one-off (with zero impact on the case) and would not happen again. On July 8, 2021, despite this assurance and the absence of harm, Plaintiffs filed the instant Motion. In it, Plaintiffs' counsel declares they are "loathe to level accusations" and "prefer to focus their efforts on litigating the merits of this case." *Id.* Their motion shows this to be false.

There is no basis for Plaintiffs' Motion. Plaintiffs have not demonstrated that they suffered any harm; there is nothing for the Court to remedy. Plaintiffs have not shown – or even alleged – that any counsel for Defendants acted in bad faith. And Plaintiffs have not alleged any conduct at all that suggests that any attorney at Levy Firestone Muse LLP did anything that violated any Rule of Professional Conduct. The only thing Plaintiffs have shown is that Mr. Levy did not reply to communications from Plaintiffs' counsel that demanded information he could not provide.

Plaintiffs' Motion should be denied.

**I.     THERE IS NO BASIS FOR THE COURT TO SANCTION DEFENSE COUNSEL**

The Court should deny Plaintiffs' Motion because it is already clear that there is no justification to impose sanctions on defense counsel. First and foremost, Plaintiffs have not been harmed by the events described in the Motion, so there is no injury for this Court to redress. Second, Plaintiffs have not alleged—let alone demonstrated—that defense counsel acted in bad faith. And finally, Plaintiffs have not set forth any facts that show that Mr. Levy, or any other attorney at Levy Firestone Muse LLP, violated the D.C. Rules of Professional Conduct.

### A. Plaintiffs Have Suffered No Harm.

Mr. Taylor's call to Mr. van der Zwaan was on April 8, 2021. ECF No. 158-1 ¶ 3. Even according to Plaintiffs' affidavits, this call did not create a "back-channel" with Plaintiffs in circumvention of their counsel. Within mere days, Plaintiffs' counsel had been informed of Mr. Taylor's call to Mr. van der Zwaan, learned Mr. van der Zwaan's account of the contents of that call, and reached out to both Mr. Taylor and Mr. Levy to discuss the subject of the call. *See* ECF No. 158-3 (Clare Decl.) ¶ 2; ECF No. 158-4 (Clare Decl. Ex. A).

Moreover, while being mindful of his obligation to maintain his clients' privileges and confidences, Mr. Levy timely assured Plaintiffs' counsel that this type of communication was isolated and would not happen again. On May 17, 2021, Mr. Levy wrote to Plaintiffs' counsel: "[T]o the extent that you seek assurance that **no attorney for my clients will contact anyone associated with your clients about this case, other than you or others at your firm, you have that assurance.**" ECF No. 158-12 (Clare Decl. Exhibit I).[1] And on July 6, 2021, Mr. Levy once again confirmed in an email to Plaintiffs' counsel that, other than the call between Mr. Taylor and Mr. van der Zwaan, "Defendants' counsel have not had any contact with Plaintiffs through anyone other than their counsel and are not aware of contact with Plaintiffs other than through counsel, and we have previously assured you that **Defendants' counsel will have no contacts with Plaintiffs other than through counsel in the future.**" ECF No. 158-15 (Clare Decl. Ex. L).

---

[1] Plaintiffs' counsel did not respond to this May 17, 2021 email. And it is noteworthy that Plaintiffs' counsel did not raise the issue again, until Plaintiffs and Alfa Bank started losing. To wit, Plaintiffs' counsel resuscitated this issue 46 days later, on July 1, 2021, just hours after Defendants' counsel had emailed to ask when Plaintiffs' counsel would be responding to Defendants' counsel's May 25, 2021 letter regarding Plaintiffs' failure to comply with the Court's March 30, 2021 Order granting Defendants' Motions to Compel, and a week after the Maryland Circuit Court quashed a subpoena that Alfa Bank had served on Defendants' co-principal Peter Fritsch for lack of subject matter jurisdiction.

Plaintiffs' Motion does not allege that Mr. Taylor's call with Mr. van der Zwaan had any impact whatsoever on Plaintiffs' position with respect to either litigation or potential settlement. Indeed, Plaintiffs' have alleged nothing that happened as a result of that call, other than that Mr. van der Zwaan called Mr. Clare. Plaintiffs have simply suffered no injury.

Since Plaintiffs have suffered no harm from the events described in their motion, there is no injury that sanctions could redress. Respectfully, the Court's inquiry should end there.

**B.    Defense Counsel Did Not Act in Bad Faith.**

Even if the Court found that Plaintiffs had suffered some nominal injury from Mr. Taylor's brief conversation with Mr. van der Zwaan, sanctions would still be inappropriate because Plaintiffs have not established—nor can they—that defense counsel acted in bad faith.

Trial courts have inherent authority to sanction attorneys for misconduct, but "there must first be a showing of bad faith before the court may wield that power." *Bredehoft v. Alexander*, 686 A.2d 586, 589 (D.C. 1996). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). Due to these "stringent standards, the awarding of attorneys' fees for bad faith litigation is proper only under extraordinary circumstances or when dominating reasons of fairness so demand." *In re Jumper*, 909 A.2d 173, 177 (D.C. 2006) (citing *In re Estate of Delaney,* 819 A.2d 968, 998 (D.C. 2003)).

More than simple error or misjudgment is required to establish bad faith. *See In re Jumper*, 909 A.2d at 177 ("Bad faith must be distinguished from, for example, negligence . . ."). In *Jumper*, the trial court noted at least seven examples of counsels' conduct and written representations that were potentially sanctionable, including "[meeting] with Ms. Jumper outside the presence of her attorney without notifying her attorney or advising Ms. Jumper to consult her attorney, and

4

convinc[ing] her to make changes to her estate plan that were favorable to appellant Anderson." *Id.* at 174-75. Yet, the D.C. Court of Appeals held that in the absence of an improper motive, such as acting "vexatiously, wantonly, or for oppressive reasons," an award of sanctions pursuant to the court's inherent authority was not justified. *Id.* at 177.

Even as Plaintiffs allege them, Defense counsel's actions in this case come nowhere near the facts in *Jumper*. Mr. Taylor did not contact a party directly, nor did his call to Mr. Khan's son-in-law cause Mr. Khan or any other Plaintiff to take action that was disadvantageous to them. Moreover, Mr. Taylor's call to Mr. van der Zwaan was not made "vexatiously, wantonly, or for oppressive reasons." *Id.* at 177. Plaintiffs have not even claimed as much. To the contrary, Mr. Levy has demonstrated his good faith by stating unequivocally that none of Defendants' counsel will have any contact with Plaintiffs other than through counsel going forward. Therefore, sanctions against defense counsel are not warranted here.

      **C.**     **Plaintiffs Have Not Alleged Any Fact That Would Support an Argument That Counsel of Record Has Violated Any Rule of Professional Conduct.**

Finally, Plaintiffs' Motion also should be denied because Plaintiffs have not asserted any fact that would show that any of Defendants' counsel of record violated any of the D.C. Rules of Professional Conduct.

D.C. Rule of Professional Conduct 4.2 states that "[d]uring the course of representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a person known to be represented by another lawyer in the matter . . . ." D.C. Rule of Prof. Conduct 4.2(a). D.C. Rule of Professional Conduct 8.4 further provides that it is also misconduct to "knowingly assist or induce another" to violate the Rules of Professional Conduct or violate them "through the acts of another." D.C. Rule of Prof. Conduct 8.4(a).

It is undisputed that Mr. Levy did not communicate with Plaintiffs, Mr. van der Zwaan, or anyone else associated with Plaintiffs, other than their counsel. Plaintiffs have not asserted any fact that supports their statement that Mr. Levy "caused," "knowingly assist[ed]" or "induce[d]" Mr. Taylor to do so, nor is there any basis for the Court to conclude that Mr. Levy was acting through Mr. Taylor. The declaration that Plaintiffs submitted from Mr. van der Zwaan does *not* state that Mr. Taylor made any representation that he was reaching out at Mr. Levy's behest or on his behalf. *See* ECF No. 158-2 (Decl. of Alex van der Zwaan). Indeed, the only mention of Mr. Levy and his firm in Mr. van der Zwaan's declaration is Mr. Taylor's accurate relation to him that Mr. Levy is currently representing Defendants. *Id.* ¶ 6.

Mr. Taylor's affidavit, submitted as an exhibit to his Motion to Intervene, makes it plain that it was Mr. Taylor's idea to call Mr. van der Zwaan. Motion to Intervene Ex. A at ¶ 8. As a result, Mr. Levy did not "cause" Mr. Taylor to make the call, nor did he "assist" him or "induce" him to call Mr. van der Zwaan.

Moreover, even if Mr. Levy had been aware of Mr. Taylor's contact with Mr. van der Zwaan, undersigned counsel was not able to locate any case—and Plaintiffs have cited none—in which an attorney's mere knowledge of another's actions, without any participation in those actions, was sufficient to find a violation Rule 4.2 or Rule 8.4.

Plaintiffs' decision to include Ms. Clattenburg in their Motion and Order is even more troubling. Though Mr. Levy's law partner Rachel Clattenburg is also counsel of record for Defendants, she is not mentioned in Mr. van der Zwaan's declaration, nor is she involved in any of the communications attached as exhibits to Plaintiffs' motion. She is not lead counsel on the case. Tellingly, Plaintiffs' counsel did not mention her or ask a single question about her during the July 6, 2021 Rule 7(m) meet and confer on this motion. Based on the information provided by

6

Plaintiffs, there is no explanation why she is included. For lawyers who claim to be "loathe to level accusations," the inclusion of Ms. Clattenburg is a bizarre and unsupported *ad hominem*.

## II. THE COURT SHOULD NOT COMPEL DEFENSE COUNSEL TO DISCLOSE PRIVILEGED OR WORK PRODUCT MATERIALS TO PLAINTIFFS

Plaintiffs' motion claims that Defendants' counsel have left "critical questions unanswered" and asks the Court to compel counsel to provide "complete information" about Mr. Taylor's call to Mr. van der Zwaan and other attempts by defense counsel to contact Plaintiffs, if any. ECF No. 158-1 at 7, 10. Leaving aside for the moment the fact that these questions are not "critical" because Plaintiffs suffered no harm regardless of the circumstances of Mr. Taylor's call to Mr. van der Zwaan, *see supra*, Plaintiffs claim, without any analysis, that these questions "do not implicate privileged information." ECF No. 158-1 at 8. Plaintiffs are incorrect.

Defense counsel cannot further respond to the questions posed by Plaintiffs' counsel, such as whether Mr. Levy was aware of Mr. Taylor's call to Mr. van der Zwaan and "how this effort came about," *see* ECF No. 158-1 at 6, without divulging attorney-client communications and/or attorney work product. Mr. Levy informed Plaintiffs' counsel of this by email on May 17, 2021, explaining that "[e]ach of your questions would require me to reveal privileged information. We will not disclose privileged communications in response to your questions." ECF. No. 158-12 (Clare Decl. Ex. I). Mr. Levy's privilege concerns are well-founded.

For Plaintiffs to show that Mr. Levy or Ms. Clattenburg "caused," "knowingly assist[ed]" or "induce[d]" Mr. Taylor to call Mr. van der Zwaan – as they must to show a violation of Rule 4.2 – they would have to show that there was a conversation or other communication between counsel for Defendants. If such a communication happened and Defendants were involved in that communication, the communication would be covered by the attorney client privilege. *See Jones v. United States,* 828 A.2d 169, 175 (D.C. 2003); *Adams v. Franklin*, 924 A.2d 993, 998-99 (D.C.

7

2007) ("The attorney-client privilege is one of the oldest recognized privileges for confidential communications, and privileged communications are traditionally deemed worthy of maximum legal protection."). If such a communication happened and Defendants were not involved, it would be a communication between counsel for the purpose of developing strategy in the case and would be covered by the attorney work product doctrine."[2] *English v. Washington Metropolitan Area Transit Authority*, 323 F.R.D. 1, 15 (D.D.C. 2017). Opinion work product is "virtually undiscoverable." *Id.* However, voluntary disclosure of any such communications by Mr. Levy to counsel for Plaintiffs—his clients' adversary in the current litigation—would result in waiver of privilege over those communications as well as all communications on the same subject. *See United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010); *Chubb Integrated Systems Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 63, 67 (D.D.C. 1984).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion should be denied.

Dated:  July 22, 2021                                            Respectfully submitted,

                                                                                /s/ Joshua A. Levy

                                                                    Joshua A. Levy (D.C. Bar No. 475108)
                                                                    Rachel M. Clattenburg (D.C. Bar No. 1018164)
                                                                    Edward A. Sharp (D.C. Bar No. 1719505)
                                                                    **LEVY FIRESTONE MUSE LLP**
                                                                    1701 K St. NW, Suite 350
                                                                    Washington, DC 20006
                                                                    Tel: (202) 845-3215
                                                                    Fax: (202) 595-8253
                                                                    jal@levyfirestone.com
                                                                    rmc@levyfirestone.com

---

[2] Such a conversation could, of course, also be privileged if it reflected communications with Defendants.

8

eas@levyfirestone.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 22, 2021, the foregoing Opposition was filed using CM/ECF, which serves a copy on all counsel of record.

                                                  */s/* Joshua A. Levy
                                                  Joshua A. Levy