## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN,<br><br>    Plaintiffs,<br><br>  v.<br><br>BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON,<br><br>    Defendants. | Civil Case No. 1:17-cv-2041-RJL |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR REASONABLE EXPENSES INCURRED IN MOVING TO COMPEL DISCOVERY

The rules of discovery in the federal courts are intended to encourage "open and forthright sharing of information by all parties to a case with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness as much as practicable." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, No. 04-cv-798 (PLF/GMH), 2019 WL 1167743, at *6 (D.D.C. Mar. 13, 2019) (quoting, in parenthetical, *Bd. of Regents of Univ. of Neb. v. BASF Corp.*, No. 4:04 CV 3356, 2007 WL 3342423, at *5 (D. Neb. Nov. 5, 2007)). Plaintiffs, throughout this litigation, have failed to conduct themselves in accordance with these aims. This conclusion, long in evidence, has become inescapable in light of Plaintiffs' recent admission that they were, in fact, already in possession of a significant number of responsive documents from Alfa and LetterOne, *see* Opposition to Defs.' Mot. for Reasonable Expenses, ECF No. 159, at 23-24 ("Opposition"), even as they repeatedly insisted to Defendants and this Court that they had no such documents and were unable to obtain them from the companies.

Plaintiffs' unwillingness to abide by the rules of discovery are the reasons Defendants had no choice but to file a pair of motions seeking to compel Plaintiffs to produce the requested

corporate records, produce additional categories of responsive documents that Plaintiffs withheld without substantial justification, and review their documents for material that bears on Defendants' affirmative defenses in this case. Having now granted both of those motions in full, this Court must award Defendants their reasonable expenses in making the motions, unless Plaintiffs satisfy their burden of establishing that an award is impermissible under Rule 37(a)(5)(A)(i)-(iii). Plaintiffs have failed to meet their burden.

Plaintiffs' opposition brief was deficient in several respects. First, Plaintiffs simply regurgitated their meritless excuses for not producing documents at the companies they co-founded, collectively own and control. In addition, Plaintiffs utterly failed to address the Court's Order granting Defendants' motion to compel production of pre-2016 documents relevant to Defendants' defense that the alleged defamatory statements are substantially true and that Plaintiffs are public figures (except to misrepresent that Plaintiffs did not object to the production of those documents, when they did). Plaintiffs also rehashed their rejected reasons for not producing the Kroll Report, the Spanish investigation documents, the UK litigation documents, and Plaintiff Aven's grand jury material. Plaintiffs' brief exposes that their reasons for withholding these documents were nothing more than contrivances designed to flout their Rule 34 obligations.

In their opposition, Plaintiffs invoke other smokescreens to distract from their knowing recalcitrance. First, although Defendants' counsel engaged with Plaintiffs' counsel over several months to negotiate the production of Plaintiffs' documents at Alfa, Plaintiffs now argue based on no supporting facts that Defendants rushed to Court with their motions to compel. Plaintiffs' argument makes no sense. Second, Plaintiffs should not be rewarded for their failed attempts to pressure Defendants to negotiate with Alfa (instead of Plaintiffs themselves), regarding *Plaintiffs'* Rule 34 obligations. Third, Plaintiffs make the baseless assertion that Defendants' right to a

reimbursement of costs for having to litigate the two motions to compel granted in full by the Court is somehow nullified because the Court separately granted in part and denied in part a motion to compel that Plaintiffs filed. That is not how Rule 37 works.

## BACKGROUND

Plaintiffs' Opposition mischaracterizes the record in this case and attempts to obfuscate this Court's holdings. Accordingly, Defendants offer a brief point of clarity.

1.   **The Court rejected Plaintiffs' claims about control and relevance and granted in full both of Defendants' Motions to Compel.**

Plaintiffs were ordered by the Court to produce "all responsive Alfa documents." Order (Mar. 30, 2021). In so doing, the Court has held that Plaintiffs have possession, custody, or control of the Alfa documents responsive to Defendants' document requests.[1] That decision is controlling in this case. Plaintiffs, throughout their opposition, attempt to sidestep and undermine that Order by claiming they have now produced Alfa documents only because Alfa "relented and permitted them to do so." Opposition at 1.[2] Plaintiffs' efforts to relitigate a binding decision of this Court by claiming continued lack of control are meritless. *Id.* at 1-10.

---

[1] "Alfa," as used throughout Defendants' briefing, includes Alfa-Bank, LetterOne and the corporate progeny of Alfa Group, the conglomerate of multi-national entities founded by Plaintiff Fridman in 1989. *See* ECF No. 156-2, Memorandum in Support of Defs.' Motion for Reasonable Expenses at 5, n.2 ("Defs.' Mem.")

[2] Although the Court found otherwise, Plaintiffs still seem to be claiming that the vast majority of documents at the Alfa entities are within Alfa's control, and neither they nor their counsel have possession or custody of such documents. Defendants are therefore left to presume that Plaintiffs and their counsel have never reviewed relevant documentary evidence in this case prior to filing this defamation suit. Inasmuch as this is the case, it is questionable how Plaintiffs' counsel met their obligation to ensure the complaint's claims are, to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," based on factual contentions that "have evidentiary support," Fed. R. Civ. P. 11, including but not limited to their claim that the alleged defamatory statements in CIR 112 are false. In the event Plaintiffs did not meet those obligations, they should not be permitted to proceed with their case.

The Court also rejected Plaintiffs' objections to searching for and producing documents bearing on Plaintiffs' public figure status and Defendants' interpretation of statements in CIR 112. Plaintiffs' Opposition attempts to erase their unsupported objections from the record of this case. Here, Plaintiffs claim they "did ***not*** withhold any such documents on relevance grounds," Opposition at 10 (emphasis in original), but in their Opposition to Defendants' Motion to Compel, Plaintiffs made repeated objections to producing their documents consistent with Defendants' interpretation of the issues in this case, based on a relevance objection. *See* ECF No. 105 at 7 ("Defendants' motion . . . require[s] the production of irrelevant documents. Plaintiffs, as masters of their complaint, have primarily sued Defendants for publishing statements that allege Plaintiffs' purported misconduct in 2016. Accordingly, documents created before 2016 would not supply evidence of the truth or the falsity of those allegations."). The Court considered those objections, granted Defendants' motion in full, and ordered Plaintiffs to perform searches consistent with Defendants' interpretation of relevance.

Plaintiffs have not shown that their withholding of documents falls within any of the exception in Fed. R. Civ. P. 37(a)(5)(A).

## ARGUMENT

Defendants' motion for reasonable expenses seeks nothing other than a rote application of Rule 37(a)(5)(A). Plaintiffs' argument that it somehow would not be "sensible and proper" to grant the motion betrays a fundamental misunderstanding of the rule. *See* Opposition at 3.

Rule 37(a)(5)(A) states that, after granting a motion to compel in full, "the court *must* . . . require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the court determines that one of three expressly

enumerated exceptions applies.[3] Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). The Rule's exceptions are as follows:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

*Id.* The burden rests with the party who opposes the imposition of a fees award to persuade the Court that an exception precludes Defendants' recovery. *See Sigma-Tau Industrie Framaceutiche Riunite, S.P.A. v. Lonza, Ltd.*, 106 F. Supp. 2d 8, 12 (D.D.C. 2000).

## I. Defendants Are Entitled to an Award of Expenses for Moving to Compel Production of Plaintiffs' Alfa Documents, as Plaintiffs Have Failed to Establish Any Basis for Denying Recovery Under Rule 37(a)(5)(A).

It is Plaintiffs' burden to establish that Defendants are not entitled to recover the reasonable expenses incurred in moving to compel Plaintiffs to produce their corporate documents. *See Alexander v. FBI*, 186 F.R.D. 144, 147 n.2 (D.D.C. 1999) ("[T]he burden of persuasion rests upon the party that filed the losing motion to compel."). Plaintiffs have not met their burden. First, they cannot establish that their opposition to the motion to compel production of Alfa documents was substantially justified, as there were no legitimate grounds for refusing to produce discoverable material that had already been obtained and produced in separate legal proceedings. Second, there can be no question that Defendants—through four months of diligent outreach to Plaintiffs' counsel—made ample efforts to resolve the dispute before filing the motion.

---

[3] Plaintiffs' Opposition misstates the rule. *See* Opposition at 14. First, Plaintiffs fail to recognize that "the language of the Rule itself is mandatory, dictating that the Court must award expenses upon granting a motion to compel disclosure unless one of the specified bases for refusing to make such an award is found to exist." *Cobell v. Norton*, 226 F.R.D. 67, 90 (D.D.C. 2005). Second, Plaintiffs incorrectly imply that the Court may, in its discretion, decline to award expenses even if none of the enumerated exceptions has been found to apply.

**A.  Plaintiffs' Refusal to Produce Documents They Had Already Submitted in Another Legal Proceeding Cannot Possibly Be Substantially Justified.**

Buried in the middle of Plaintiffs' Opposition is a stunning admission: Plaintiffs had already obtained an unspecified number of the same corporate documents at issue in this dispute and had already produced them in separate legal proceedings in the United Kingdom. *See* Opposition at 23-24.

The implications of this acknowledgment are difficult to overstate. Above all else, it shows that Plaintiffs were not being forthcoming when they averred, both in private correspondence with defense counsel and in filings submitted to this Court, that they lacked possession, custody, or control of these documents. *See* Ltr. from A. Lewis to J. Levy (May 15, 2020), ECF No. 78-13,  at 2; ECF No. 84, at 1 (insisting that "Plaintiffs do not own or control the Companies' documents"). For months, Plaintiffs insisted, falsely, that the only way they could produce the documents was if Alfa and LetterOne agreed to turn the documents over to them,[4] when, in fact, the companies had already done so.

Plaintiffs' lack of candor had real consequences, both for the parties and for the Court. If not for Plaintiffs' charade, Defendants never would have had to move to compel Plaintiffs to produce the documents, would have received the documents a year earlier, and the Court would never had had to spend time reviewing the motion and ruling on it. In short, Plaintiffs mired the parties in a prolonged discovery dispute that left Defendants with no choice but to seek this Court's intervention. This is exactly the sort of conduct the Rule 37(a)(5)(A) cost-shifting mechanism was designed to deter. *See LM Ins. Corp. v. ACEO, Inc.*, 276 F.R.D. 592, 592-93 (N.D. Ill. 2011)

---

[4] *See, e.g.*, Ltr. from A. Lewis to J. Levy (Mar. 12, 2020), ECF No. 78-8, at 5 ("Plaintiffs confirm that they do not have a legal right to obtain responsive documents from Alfa or any of the Other Entities.").

(awarding expenses against a corporate party whose counsel had failed to ask company executives or employees to search for certain requested documents).

It is simply incredible that Plaintiffs continue to deny they had any obligation to comply with Defendants' discovery request, even after acknowledging that they had already obtained the documents in question. The rules are clear and straightforward: "Federal Rule of Civil Procedure 34(a)(1) provides that, upon a request, a party must produce discoverable records in its 'possession, custody, or control.'" *Harris v. Med. Transp. Mgmt., Inc.*, No. 17-cv-01371 (APM), 2018 WL 11247600, at *1 (D.D.C. Aug. 28, 2018) (quoting Fed. R. Civ. P. 34(a)(1)). "'Control,' for purposes of the rule, means 'the legal right, authority or ability to obtain documents upon demand.'" *Id.* (quoting *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 254 (D.C. Cir. 2005)).

To claim, as Plaintiffs do, that the requested Alfa documents were not in their "possession, custody, or control," even after Plaintiffs produced them in the UK proceedings, strains all credibility. There can be no doubt that Plaintiffs, at the very least, had the practical ability to obtain the documents from their own lawyers in the UK litigation. It is therefore inarguable that Plaintiffs had "control" over these documents throughout their months-long correspondence with Defendants and their briefing before the Court. *See Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006) ("Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control."). Any assertions to the contrary cannot possibly be substantially justified.

Plaintiffs attempt to relitigate the issue, again claiming that they could not produce the documents because Alfa and LetterOne would not provide the necessary access. Yet this claim (if

it were ever true) is a distraction. Plainly, Plaintiffs did not need the companies to offer them access to many of the requested documents, because Plaintiffs already had access to those documents.

Plaintiffs, moreover, as Defendants have repeatedly noted, are the ultimate beneficial owners and controlling shareholders of Alfa, and the documents were within their control. *See* ECF No. 78 at 8-11. Plaintiffs have never denied that, *collectively*, they had the authority and practical ability to obtain the documents from their own companies. ECF No. 89 at 1. That Plaintiffs never tried to exercise this authority—and, indeed, submitted no sworn affidavits attesting that they lacked such authority—is telling.

This dispute did not present any novel questions of law, as Plaintiffs would have this Court believe. *See* Opposition at 19-21. For all of Plaintiffs' counsel's efforts to identify out-of-circuit cases "holding that merely being an officer or stakeholder in a corporate entity does not establish possession, custody or control," Opposition at 21 (citing two inapposite cases from the US district court in Kansas), none of those cases has any relevance to the circumstances at hand. Among the Plaintiffs in this action, neither Fridman nor Aven can properly be labeled a "mere[] . . . officer or stakeholder" in their companies. Plaintiffs are, collectively, controlling shareholders of Alfa Bank and continue to collectively own and control Alfa Group. Their jointly held authority was never legitimately in dispute.

### B. Defendants' Persistent Attempts over Four Months to Persuade Plaintiffs to Fulfill Their Legal Duty to Produce the Documents Were More Than Adequate under the Federal and Local Rules.

It is baseless to argue, as Plaintiffs now do, that Defendants filed the motions to compel before attempting to obtain the discovery without court action. *See* Opposition at 22-23. For months, Defendants' counsel engaged with Plaintiffs' counsel on the production of Plaintiffs' documents at Alfa, but Plaintiffs' counsel refused to fulfill their Rule 34 obligations. Instead,

Plaintiffs' counsel and Alfa's counsel inappropriately joined together to pressure Defendants' counsel to seek Plaintiffs' documents from non-party Alfa—not Plaintiffs. Plaintiffs now absurdly argue that Defendants should be penalized because Defendants' counsel did not follow Plaintiffs' counsel's plan, notwithstanding Defendants' counsel's extensive efforts to engage *Plaintiffs'* counsel on the subject.

This case bears no resemblance whatsoever to the case Plaintiffs attempt to liken it to, *Marsch v. Rensselaer County*, 218 F.R.D. 367 (N.D.N.Y. 2003).[5] *See* Opposition at 23. In *Marsch*, defense counsel faxed plaintiff's counsel a letter asking the plaintiff to consent to sit for a follow-up psychiatric examination. 218 F.R.D. at 369. Seven days later, without attempting any further communications with plaintiff's counsel, the defendants filed a Rule 35 motion to compel the plaintiff to submit to an examination. *Id.* The district court, after granting the Rule 35 motion, declined to order an award of costs and attorney's fees under Rule 37(a), explaining that such an award was not warranted "[w]here, as here, the moving party has sent a single letter to opposing counsel and taken no further steps to confer on the issue." *Id.* at 372.

To say that Defendants' extensive outreach to Plaintiffs' counsel stands in sharp contrast to the lone fax in *Marsch* would be an understatement. Defendants, here, engaged in roughly four months of back-and-forth communications with Plaintiffs' counsel in hopes of resolving this issue amicably. *See* Ltr. from J. Levy to A. Lewis (Feb. 19, 2020), ECF No. 78-7, at 5-6 (asking Plaintiffs to "[p]lease clarify whether any of the Plaintiffs have the legal right to obtain responsive

---

[5] Inexplicably, Plaintiffs also cite to *Board of Education of Evanston Township High School District No. 202 v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23 (N.D. Ill. 1984). That case, though, was not even decided under Rule 37(a)(5)(A). There, in contrast with the circumstances here, the motion to compel was granted in part and denied in part, leaving the court to decide whether, as a matter of discretion, to "apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner" under a precursor of Rule 37(a)(5)(C). 104 F.R.D. at 37 (quoting Fed. R. Civ. P. 37(a)(4) (1981)).

documents from Alfa or any of the Other Entities"); Ltr. from J. Levy to A. Lewis (Apr. 16, 2020), ECF No. 78-10, at 7-9 (reiterating Defendants' position that the requested corporate documents were in Plaintiffs' possession, custody, or control and cautioning that failure to produce the documents would force Defendants to file a motion to compel); Ltr. from J. Levy to A. Lewis (Apr. 29, 2020), ECF No. 78-12, at 3 (restating Defendants' position and requesting communications between Plaintiffs and the companies regarding access to the documents); Ltr. from J. Levy to A. Lewis (May 22, 2020), ECF No. 78-15, at 5-6 (same); Ltr. from J. Levy to A. Lewis (June 10, 2020), ECF No. 78-18, at 10-11 (advising of Defendants' intent to file a motion to compel and seeking to schedule a Rule 7(m) conference). Those communications culminated with a Rule 7(m) conference on June 11, 2020. *See* ECF No. 78, at 2 n.2. Defendants' efforts to resolve the dispute were more than adequate under the Local Rules, and there is no reason why anything further should have been required under Rule 37(a)(5)(A).

Nor is this an example where "both sides have contributed materially to the protraction of [the] discovery dispute," *Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202 v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 37 (N.D. Ill. 1984), Opposition at 23, as Plaintiffs calculatingly tried to pawn Defendants off onto Alfa to negotiate *Plaintiffs*' Rule 34 obligations. The failure to reach an agreement here was Plaintiffs' failure alone. Nevertheless, Plaintiffs argue yet again that Defendants should have sought the documents through third-party discovery. *See* Opposition at 23 (chiding Defendants for their "stubbornness"). The Court's March 30 ruling, however, vindicates Defendants' position. Plaintiffs had no justification for refusing to fulfill their Rule 34 obligations.

## II.  Plaintiffs' Opposition Ignores the Primary Relief Sought by Defendants' Second Motion to Compel That the Court Granted in Full.

Plaintiffs make only passing reference to the primary relief sought by Defendants' second Motion to Compel, for which Defendants also seek reasonable fees under Rule 37(a)(5)(A). *See*

Defs.' Mem. at 2, 10-13, 16-17, 25, 28-29; Opposition at 10, 25. *See generally* ECF Nos. 94, 105, 106. The issue that Defendants' second motion to compel sought to resolve was that Plaintiffs had refused to review and produce documents relevant to Plaintiffs' public figure status and Defendants' interpretations of the meaning of the alleged defamatory statements in CIR 112.[6]

Defendants are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1) (emphasis added), but Plaintiffs only produced documents relevant to Plaintiffs' claims and Plaintiffs' theory of the case, including their insistence that only publicly available documents are relevant to Plaintiffs' public figure status and that the vast majority of relevant discovery bearing on the truth or falsity of CIR 112 should be limited to 2016.[7] Defendants moved to compel Plaintiffs to collect, search, and produce documents relevant to Defendants' interpretations of those issues. *See* ECF No. 94 at 8-9 (quoting Plaintiffs' Answer to Interrog. No. 2); *id.* at 32-34 (objecting to Plaintiffs' refusal to produce a variety of relevant public figure evidence generated prior to 2016); *see also* ECF No. 106 at 5-8. In addition to seeking relief from Plaintiffs' broad and unsupported objection to producing any documents relating to Plaintiffs' conduct prior to 2016, Defendants stressed to the Court that Plaintiffs' searches for material relevant to the substantial truth of the statements CIR 112 must not be limited to documents that literally describe criminal behavior. ECF No. 106 at 5-9. In both their briefing and correspondence with Plaintiffs, Defendants explained that CIR 112 described conduct much broader than criminal conduct, and Plaintiffs were required to collect, review and produce

---

[6] Plaintiffs' motion became necessary after Plaintiffs refused, over the course of months, to confirm that they had searched their documents for material relevant to Defendants' affirmative defenses and relevant to Defendants' interpretation of CIR 112. *See* Defs.' Mem. at 10-12.

[7] Ltr. from A. Lewis to J. Levy (Apr. 24, 2020), ECF No. 78-11, at 2 ("[P]re-2016 documents cannot, by definition, be relevant to any issues in this litigation, aside from the truth or falsity of the Govorun-related defamatory statement. For instance, pre-2016 documents are not relevant to the question of whether Plaintiffs are 'limited public figures.'").

documents relating to, *inter alia*: any "favors" or transactions between Alfa and Plaintiffs, on one hand, and Putin and the Kremlin, on the other; "Kremlin-Alpha Co-Operation"; "continuing sensitivity of the PUTIN-Alpha relationship"; and the "history and current state" of that relationship. ECF No. 94 at 17-22; ECF No. 106 at 5-9. *See also* Ltr. from J. Levy to A. Lewis (Apr. 16, 2020), ECF No. 78-10, at 3

Opposing Defendants' motion, Plaintiffs never denied that they had failed to incorporate Defendants' interpretations of CIR 112's statements when reviewing and producing their documents. *See generally* ECF No. 105. Plaintiffs represented only that they had agreed to review their documents for relevance to the truth or falsity of CIR 112 (subject to objections and an absurdly narrow interpretation of the statements in CIR 112) and told the Court that they were not withholding any documents responsive to Defendants' requests. ECF No. 105 at 7-9.[8] The Court rejected Plaintiffs' claims, granted Defendants' motion in full, and ordered Plaintiffs to collect, review, and produce documents that relate to Defendants' defenses in this case.

Now opposing the instant motion, in an attempt to obfuscate their own misconduct and downplay the Court's holding, Plaintiffs represent to the Court that "Plaintiffs were *not withholding such documents based on a relevance objection*." Opposition at 25 (emphasis in original). This is demonstrably false.

---

[8] Before the Court, Plaintiffs announced they *had* performed searches for responsive documents created prior to 2016 and found none "evidencing any misconduct or corruption involving themselves and Putin at any time." ECF No. 105 at 9. This representation is an example of the vague discovery responses from Plaintiffs that made Defendants' motion a necessity. The alleged defamatory statements in CIR 112 do not even include the words "misconduct" or "corruption." Nor do they specifically refer to "misconduct or corruption involving [Plaintiffs] and Putin." Yet Plaintiffs, offering no further detail about their review, argued this "search" fully discharged their obligations.

Plaintiffs' representation in their Opposition is directly contradicted by their discovery responses in this case. Plaintiffs agreed to search for documents bearing on the truth or falsity of CIR 112 "subject to Plaintiffs' General Objections," and later added as a general objection that "Plaintiffs object to requests that they produce documents . . . prior to 2016, except as to documents relating to the allegation of bribery in the 1990s involving Oleg Govorun."[9] When Defendants pressed Plaintiffs to identify the documents they were withholding on the basis of that objection, Plaintiffs wrote, "Plaintiffs did not identify responsive documents that may exist dated outside the initial date ranges, as set forth in the General Statements and Objections, as being withheld." Ltr. from A. Lewis to J. Levy (June 25, 2020), ECF No. 94-5, at 8. To translate that deliberately opaque construction: Plaintiffs said they did not technically withhold documents because Plaintiffs did not produce documents they did not consider relevant, and, in turn, they did not identify irrelevant documents as being withheld. This claim was—and is—meaningless.[10]

Plaintiffs never confirmed then, and do not confirm now, that they collected, searched and reviewed their documents for relevance to Defendants' affirmative defenses. Instead, Plaintiffs bury their substantive response to Defendants' second motion, claim they never withheld any documents Defendants would have deemed relevant, and accuse Defendants of trying to "gin up an additional dispute that did not exist." Opposition at 25. Plaintiffs, here, attempt to confuse the Court with circular language about documents they withheld[11] and offer no citation to case law

---

[9] Pls.' Resps. and Supp. Resps., ECF No. 78-5, at RFPs 1-8, 10; Supp. Resp. at 2.

[10] *See Spendlove v. RapidCourt, LLC*, No. 3:18-CV-856, 2019 WL 7143664, at *5 (E.D. Va. Dec. 23, 2019) ("[A] party may not unilaterally withhold information or documents that are responsive to a discovery request by stating that 'all relevant, non-privileged' responsive information or documents have been, or will be, produced." (quoting *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 541 (D. Kan. 2006))).

[11] Collecting and reviewing all relevant documents in their "personal possession," Opposition at 25, Plaintiffs produced 59 personal e-mails and stray documents from Plaintiffs Fridman and Aven.

justifying their previous responses in discovery. *Id.* Plaintiffs' vague and evasive response is further confirmation that they had no legal or factual justification for refusing to review and produce documents relevant to Defendants' affirmative defenses. Moreover, Plaintiffs' persistent delusion that last year's discovery responses satisfied their discovery obligations and complied with Rule 26(b)(1) exemplifies why Defendants had to seek relief from this Court.

### III.   Plaintiffs Withheld Additional Categories of Responsive Documents and Fail to Demonstrate That Any of Their Objections Were Justified by Either Law or Fact.

Plaintiffs fail to demonstrate that they were substantially justified in any of their other efforts to obstruct discovery.

First, Plaintiffs withheld production of the *Aven v. Orbis* documents in defiance of their own definition of "publicly available" documents; Plaintiffs' continued attempts to rely on a misstatement of their own definition of "publicly available" do not justify their refusal to produce the UK documents. Opposition at 11, 28-29.

Second, Plaintiffs also withheld Petr Aven's Mueller Investigation documents by citing irrelevant case law and have again failed to point to a single case that supports their position. Opposition at 29-30.

Third, Plaintiffs reiterate their objections to producing the Kroll Report or the Spanish Investigation documents and argue those positions have been vindicated because Defendants failed to cite facts confirming their relevance. Opposition at 26-28. Defendants, however, are not required to introduce facts further establishing the documents' relevance to the claims in this case, as the Court has already held that this evidence is relevant and discoverable; Defendants have demonstrated that these requests were not overly burdensome and are relevant to their affirmative defenses. Plaintiffs' argument, failing to show that Defendants' requests were "burdensome, overly broad, vague or outside the scope of discovery," *United States v. Kellogg Brown & Root*

*Servs., Inc.*, 284 F.R.D. 22, 33 (D.D.C. 2012), instead raises concern that Plaintiffs still do not comprehend the proper scope of discoverable evidence in this case.

### A. Plaintiffs fail to demonstrate they were substantially justified in withholding production of their *Aven v. Orbis* documents.

Plaintiffs have no justification for withholding their documents from another proceeding concerning CIR 112, *Aven v. Orbis*. Plaintiffs appear to have withheld these documents because producing them in this case would have exposed that they have access to their Alfa documents, *see supra* at 6-8, and forcing Defendants to spend even more money on lawyers to obtain documents from a foreign proceeding is part and parcel of Plaintiffs' use of this proceeding specifically and the US courts generally to harass Defendants.

Plaintiffs, who claim they had no obligation to produce publicly available documents, misstate the parties' agreed-upon definition of "publicly available" and ignore multiple places in Defendants' motion in which Defendants highlighted that definition explicitly. *Cf.* Opposition at 11; Defs.' Mem. at 7-8, 26-28. Plaintiffs were the ones who defined the parameters of "publicly available" documents in this case, and by their own definition, "publicly available" meant "documents that are freely available online or are available through a service such as Lexis or Westlaw." Ltr. from A. Lewis to J. Levy (Mar. 12, 2020), ECF No. 78-8, at 10. The UK documents did not fall within this definition, yet Plaintiffs repeatedly insisted that because these documents were theoretically available to Defendants, Defendants—at significant expense—were required to obtain UK counsel, submit an application to the High Court, and undertake the onerous process of obtained these documents in London. *See* Defs.' Mem. at 7-8. Reiterating that sentiment in opposition to the instant motion, Plaintiffs have nothing more to offer the Court than selective editing that omits contradictory language from Plaintiffs' own counsel. Opposition at 11 (citing an

April 16, 2020, letter from Defendants' counsel and omitting the portion of that letter that explicitly incorporates the definition and terms proposed by Plaintiffs' counsel on March 12, 2020).

Plaintiffs offer only one case in support of their position, *Dushkin Publishing Group, Inc. v. Kinko's Service Corp.*, 136 F.R.D. 334 (D.D.C. 1991), and then misconstrue its holding. The *Dushkin* court denied the plaintiff's motion to compel requested records that were filed publicly in the Southern District of New York. The Court found that those records were available to either party upon request, and "[i]t is well established that discovery need not be required of documents of public record which are equally accessible to all parties." *Dushkin Pub.*, 136 F.R.D. at 335 (D.D.C. 1991) (quotation and citation omitted). Here, the *Aven v. Orbis* documents were not "equally accessible to all parties." *Id.* Plaintiffs had them in their possession, and Defendants did not. Defendants could not access them online. Defendants could not access them in the United States. Defendants would have been required to retain counsel in the UK, where it is not a party to any proceeding there, in order to apply for access with a UK court. Plaintiffs were obligated to produce these documents, and their failure to do so was not substantially justified. Their attempts to misconstrue holdings and misstate the parties' agreements do not demonstrate otherwise.[12] "The Federal Rules do not shield publicly available documents from discovery merely because of their accessibility. A limitation of this nature would lead to patently absurd consequences." *Shatsky v.*

---

[12] Plaintiffs also attempt to create a false equivalence between the parties' conduct by stating that Defendants refused to produce unsealed portions of Peter Fritsch's deposition in an alternate case. Opposition at 29. To clarify: portions of Mr. Fritsch's deposition transcript had been sealed pursuant to a protective order issued in parallel litigation in the Southern District of Florida. Defendants directed Plaintiffs to contact the parties' or the court to obtain the unsealed portions they requested. Incidentally, Defendants' discovery response is supported by a holding in the same case cited (and misconstrued) by Plaintiffs in their Opposition. *See Dushkin*, 136 F.R.D. at 335 ("As for those documents shielded by . . . protective order, this court as a matter of comity respects the order issued by the District Court for the Southern District of New York . . . To the extent that the plaintiff should desire to obtain those additional documents, that request should be addressed to the issuing court in the Southern District of New York.").

*Syrian Arab Republic*, 312 F.R.D. 219, 223 (D.D.C. 2015) (Leon, J.) (sanctioning the party who failed to timely produce publicly available documents).

**B. Plaintiffs fail to demonstrate their withholding of the Kroll Report and the Spanish government's investigation documents was substantially justified.**

The Kroll Report is relevant to Defendants' affirmative defense that CIR 112 is substantially true. In a case where Plaintiffs argue that their relationship with the Kremlin spanning more than 25 years has not involved any corruption, the Kroll Report helps show that corruption was endemic among Russian officials operating in the post-Soviet landscape during the years in which Aven and Putin served together in Russian government. Aven himself testified that "this whole report [is] devoted to some former Soviet Union bureaucrats. . . . They were former ministers, some high-level bureaucrats, and Kroll have found some of the accounts outside of the country." Aven Dep. 245:9-13, Dec. 9, 2020. The report was commissioned by either Aven or his mentor and direct superior in the Russian Government, Yaigor Gaidar; in either case, the report demonstrates that Aven had personal knowledge of widespread corruption in Russian government in 1992.[13] This evidence also bears on the substantial truth of the CIR 112 statement that Alfa obtained *kompromat* on Putin during an era in which Aven and Putin both served in Russian government. Plaintiffs were obligated to produce a copy of this report in light of public reports describing its contents[14] and Aven's testimony in the United Kingdom, in which he proclaimed that he was "the only one who has in my hands Kroll report." *See* ECF No. 94 at 22. Plaintiffs,

---

[13] *Cf.* Aven Dep. 245:9-13, Dec. 9, 2020 ("Q Did you recommend Kroll for this investigation? A No, I did not. They came through -- Gaidar brought them in."); Catherine Belton, *Putin's People* 60 (2020) ("'They didn't find anything,' said Pyotr Aven, the government minister whose initiative it was to bring in Kroll in the first place.").

[14] *See, e.g.* Karen Dawisha, *Putin's Kleptocracy: Who Owns Russia?* 19, 118 (2014), ECF No. 94-11*;* Catherine Belton, *Putin's People* 60 (2020); Celestine Bohlen, *U.S. Company to Help Russia Track Billions*, N.Y. Times (Mar. 3, 1992), https://www.nytimes.com/1992/03/03/world/us-company-to-help-russia-track-billions.html.

now reiterating relevance objections long since discarded by the Court, continue to rely on their own interpretation of their documents, their own interpretation of the statements in CIR 112, and their own interpretation of the core issues in this case. Plaintiffs' insistence that this evidence should never have been discoverable, Opposition at 27, raises concern that Plaintiffs continue to misunderstand their discovery obligations.

Similarly, the Spanish Investigation documents arise from an investigation in which Spanish authorities allege that Plaintiff Fridman, *inter alia*, made payments totaling more than $20 million to the son of the Russian Minister of the Interior in exchange for services that were not worth "a tenth of that," and that such payments began in 2013. Spanish Criminal Complaint Against Vimpelcom (Aug. 19, 2016), ECF No. 94-12, ¶ 2. Plaintiffs justify their refusal to produce documents related to this investigation by claiming that the "wholly unsubstantiated allegations to Spanish prosecutors against Plaintiff Fridman . . . bear no relation to the statements at issue in this case." Opposition at 28. Plaintiffs erroneously insist that documents relating to a foreign government's investigation into allegations that Plaintiff Fridman bribed the family member of a high-ranking Russian minister—conduct that is directly relevant to the favors between Alfa and the Kremlin, described in CIR 112—are not *discoverable* and "bear no relation to the statements at issue in this case." *Id*. This position speaks to Plaintiffs' continued failure to comprehend their discovery obligations in this action. Documents relating to an investigation of criminal wrongdoing by Plaintiffs and Alfa are relevant to the truth or falsity of CIR 112, even based on Plaintiffs' narrow interpretations of its allegedly defamatory statements. *See* Pls.' Suppl. Resp. to Interrog. No. 2 (arguing that CIR 112's discussion of "significant favours" refers only to "corruption and bribery"). Defendants requested these documents and Plaintiffs had no justification for withholding them. Relevant discovery "encompass[es] any matter that bears on, or that reasonably

could lead to other matter that could bear on, any issue that is or may be in the case," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

### C. Plaintiffs' misreading of Rule 6(e) does not justify Petr Aven's refusal to produce documents relating to the Mueller Investigation.

Plaintiffs argue that Plaintiff Aven's Mueller Investigation documents were privileged, that "case law fully supports" that claim, and that the Court, ordering production of Aven's Mueller Investigation documents, "must have concluded that Defendants had made a showing of necessity that overcame Plaintiff Aven's right to resist disclosure." Opposition at 29-30. This is pure fantasy; Plaintiffs presuppose the availability of the so-called "grand jury privilege" to a civil plaintiff who initiates litigation and puts in issue his prior submissions to the government. Claiming the grand jury privilege under these circumstances is neither supported "fully by law" nor supported by any law. Plaintiffs failed to cite a single case in which a civil plaintiff successfully invoked the grand jury privilege to foreclose production of grand jury materials. Plaintiffs, citing cases in which third-party witnesses or civil defendants were protected against compulsory disclosure of their grand jury submissions, nevertheless attempted to broaden the protections afforded by Federal Rule of Criminal Procedure 6(e) in a strained attempt to block the production of material that Aven, himself, put in issue by initiating this litigation. Opposition at 30; Defs.' Mem. at 8, 32

Plaintiff Aven cooperated with the Mueller Investigation while suing Defendants to contest the truth or falsity of CIR 112, a document which contains allegedly defamatory statements that align with the Mueller Investigation's published findings relating to Aven's conduct in 2016.[15] Yet

---

[15] "Aven told the Office that he met on a quarterly basis with Putin . . . According to Aven, although Putin did not expressly direct him to reach out to the Trump Transition Team, Aven understood that Putin expected him to try to respond to the concerns he had raised." Special Counsel Robert

when Defendants read the Special Counsel's Report and expressed that any materials provided to the Special Counsel's Office were obviously relevant to this case and should be produced,[16] Plaintiffs refused. First Plaintiffs incorrectly argued that the requested materials were outside the temporal scope of discovery, then they incorrectly argued that the materials were "immune from production" pursuant to Rule 6(e) principles of grand jury secrecy,[17] and finally they attempted to graft an inapposite grand jury privilege onto the instant facts—all to foreclose production of discovery that bears directly on the statements Plaintiffs allege are false and defamatory. A party's conduct in discovery is substantially justified when it is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Plaintiffs' refusal to produce their Mueller Investigation documents failed to meet the standard.

### IV.   Plaintiffs Have Failed to Meet Their Burden of Establishing That an Award of Expenses under Rule 37(a)(5)(A) Would Be Unjust under the Circumstances.

While Plaintiffs try to evade their obligations under Rule 37(a)(5)(A) by showing that "other circumstances make an award of expenses unjust," Fed. R. Civ. P. 37(a)(5)(A)(iii), that is simply not possible here. Plaintiffs' failure to produce responsive documents was not an innocent mistake;[18] it was a deliberate choice. Plaintiffs, with the aid of counsel, made a strategic decision

---

S. Mueller, III, Report On The Investigation Into Russian Interference In The 2016 Presidential Election ("Mueller Report") (2019), ECF No. 94-13, at 146-147.

[16] Ltr. from J. Levy to A. Lewis (June 30, 2020), ECF No. 94-3, at 4.

[17] Ltr. from A. Lewis to J. Levy (Aug. 4, 2020), ECF No. 94-4, at 4. *Cf. In re Grand Jury,* 490 F.3d 978, 989 (D.C. Cir. 2007) ("A grand jury witness is legally free to tell, for example, his or her attorney, family, friends, associates, reporters, or bloggers what happened in the grand jury . . . the witness can stand on the courthouse steps and tell the public everything the witness was asked and answered.").

[18] *Cf. Gordon v. Borigini*, 297 F.R.D. 1, 3 (D.D.C. 2013) (determining it would be "unjust" to award expenses under Rule 37(a)(5)(B), as movant's counsel had made an innocent error in filing the motion to compel in the wrong court).

to conceal documents, and there is no legitimate reason why they should be excused from the consequences of that decision.

Despite Plaintiffs' arguments to the contrary, *see* Opposition at 31-32, an award of expenses does not become "unjust" simply because the Court, in a separate ruling, granted in part Plaintiffs' motion on an unrelated issue.[19] The "great operative principle" of Rule 37(a)(5)(A) is that, upon a decision to grant a motion to compel in full, the loser of *that specific motion* is to bear the victor's costs in bringing the motion. *Rickels v. City of South Bend*, 33 F.3d 785, 786 (7th Cir. 1994) (quoting Wright & Miller, 8 *Federal Practice & Procedure* § 2288 at 787 (1970)); *see* Fed. R. Civ. P. 37(a)(5)(A) (stating that the prevailing party is entitled to expenses incurred in making "the motion"). This principle exists both to "deter discovery abuses" and to "compensate the prevailing party for expenses it would not have incurred had the sanctioned party conducted itself properly." *Spirit Realty, L.P. v. GH&H Mableton, LLC*, 319 F.R.D. 474, 475 (S.D.N.Y. 2017). Here, Plaintiffs' strategy of concealment necessitated two motions to compel, both of which have been granted in full. Plaintiffs should shoulder the cost of their own strategic choices. Such an outcome is entirely just and consistent with the purpose of Rule 37(a)(5)(A).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion in full and order Plaintiffs or their counsel to pay the reasonable fees incurred by Defendants in moving to compel discovery.

---

[19] Plaintiffs' claim that they, too, are "entitled" to fees for their motion to compel is wrong as a matter of law. The Court did not grant Plaintiffs' motion in full. Therefore, Rule 37(a)(5)(A) is inapplicable. *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 130 F. Supp. 3d 326, 336-37 (D.D.C. 2015) ("[P]laintiff's claim that she is 'entitled' to fees under Rule 37(a)(5)(A) is simply incorrect as a matter of law, as her motion to compel was at best only partially successful.").

Dated:   July 27, 2021                    _____/s/ Joshua A. Levy_____

Joshua A. Levy (D.C. Bar No. 475108)
Rachel M. Clattenburg (D.C. Bar No. 1018164)
Edward A. Sharp (D.C. Bar No. 1719505)
Scott Brooks (D.C. Bar No. 1673708)
**LEVY FIRESTONE MUSE LLP**
1701 K St. NW, Suite 350
Washington, DC 20005
Tel: (202) 845-3215
Fax: (202) 595-8253
jal@levyfirestone.com
rmc@levyfirestone.com
eas@levyfirestone.com
sbrooks@levyfirestone.com

*Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on July 27, 2021, the foregoing memorandum was filed using CM/ECF, which serves a copy on all counsel of record.


*/s/* Joshua A. Levy

Joshua A. Levy