IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIKHAIL FRIDMAN, PETR AVEN, and GERMAN KHAN, <br><br> Plaintiffs, <br><br> v. <br><br> BEAN LLC a/k/a FUSION GPS, and GLENN SIMPSON, <br><br> Defendants. | Civil Action No. 1:17-2041-RJL |

**PLAINTIFFS' REPLY IN SUPPORT OF
THEIR MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS'
COUNSEL SHOULD NOT BE SANCTIONED FOR THEIR BACK-CHANNEL
OUTREACH TO PLAINTIFFS DESPITE KNOWING PLAINTIFFS ARE
REPRESENTED IN THIS CASE**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................3

I.     Defendants' and Mr. Taylor's Oppositions Do Not Answer the Key Questions or Deny the Key Facts Warranting an Order to Show Cause. ..........................................................3

II.    Defendants' Legal Arguments Against an Order to Show Cause Are Meritless. .................5

III.   Defendants' Counsel's Attempt to Invoke Privilege to Shield Their Misconduct Fails. ....................................................................................................................................8

CONCLUSION .......................................................................................................................9

CERTIFICATE OF SERVICE ..............................................................................................11

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Hale*,
  202 F.R.D. 548 (N.D. Ill. 2001) ................................................................................................ 9

*Boggs v. Diguglielmo*,
  No. 04-cv-5882, 2006 WL 563025 (E.D. Pa. Mar. 6, 2006),
  *aff'd*, 264 F. App'x 165 (3d Cir. 2008) .................................................................................... 6

*Dareltech, LLC v. Xiaomi Inc.*,
  No. 18-cv-8729, 2019 WL 10966202 (S.D.N.Y. Apr. 11, 2019) ............................................. 6

*EEOC v. Lutheran Social Servs.*,
  186 F.3d 959 (D.C. Cir. 1999) ................................................................................................. 8

*Elkins v. Dist. of Columbia*,
  250 F.R.D. 20 (D.D.C. 2008) ................................................................................................... 8

*In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*,
  439 F.3d 740 (D.C. Cir. 2006) ................................................................................................. 8

*NXIVM Corp. v. O'Hara,*
  241 F.R.D. 109 (N.D.N.Y. 2007) ............................................................................................ 8

*Pinsky v. Statewide Grievance Comm.*,
  578 A.2d 1075 (Conn. 1990) ................................................................................................... 6

*Rambus, Inc. v. Infineon Tech. AG*,
  220 F.R.D. 264 (E.D. Va. 2004) .............................................................................................. 9

*Spinnell v. Statewide Grievance*,
  No. 98-cv-579597, 1998 WL 809519 (Conn. Super. Ct. Nov. 6, 1998) .................................. 6

*Tax Analysts v. I.R.S.*,
  117 F.3d 607 (D.C. Cir. 1997) ................................................................................................. 8

*Zimmerman v. Wells Fargo Advisors, LLC*,
  No. 15-cv-14311, 2016 WL 11601249 (E.D. Mich. Feb. 8, 2016) .......................................... 9

**Rules**

D.C. R. Prof. Conduct 4.2 ............................................................................................... 1, 3, 4, 5, 6, 8

D.C. R. Prof. Conduct 8.4 .................................................................................................. 1, 3, 5, 6, 8


Fed. R. Civ. P. 26 ............................................................................................................................ 8

LCvR 83.15 ................................................................................................................... 1, 3, 5, 6, 8

**Other Authorities**

ABA/BNA Lawyer's Manual on Professional Conduct (1989) § 71:303 ....................................... 6

**INTRODUCTION**

Defendants' and Mr. Taylor's Oppositions to Plaintiffs' Motion for an Order to Show Cause provide no valid reasons why this Court should not enter an Order to Show Cause why Defendants' counsel should not be sanctioned for contacting Plaintiff Khan's son-in-law to establish a back-channel line of communication with Plaintiffs—thereby violating D.C. Rules of Professional Conduct 4.2 and 8.4 and this Court's Local Civil Rule 83.15. In fact, their oppositions raise more questions than they provide answers.

Neither Defendants nor Mr. Taylor dispute the basic facts giving rise to Plaintiffs' Motion—and those facts compel the conclusion that, at the very least, there is a material question of fact whether Defendants' counsel violated Rules 4.2 and 8.4 and Local Civil Rule 83.15, thus warranting an Order to Show Cause:

- On April 8, 2021, Defendants' counsel William (Bill) Taylor called Plaintiff Khan's son-in-law.[1]
- During that call, Mr. Taylor stated that he continues to represent Defendant Fusion GPS, told Plaintiff Khan's son-in-law that "I know you are savvy," alluded to various rulings by this Court, and told Plaintiff Khan's son-in-law that it would be in Plaintiffs' interests to settle this case in light of those rulings.[2]
- Mr. Taylor further told Plaintiff Khan's son-in-law during that call that "it would be helpful" if he conveyed that message to his father-in-law, Plaintiff Khan.[3]

Likewise, neither Defendants nor Mr. Taylor dispute that, after Mr. Taylor's conversation with Plaintiff Khan's son-in-law, Plaintiffs' counsel contacted Mr. Taylor and Defendants' current counsel-of-record to inquire about Mr. Taylor's outreach to Plaintiffs through Plaintiff Khan's son-in-law and asked (1) what (if anything) did Defendants' current counsel-of-record (Mr. Levy and Ms. Clattenburg) knew about Mr. Taylor's outreach, (2) whether Defendants' counsel had

---

[1] Decl. of Alex Rolf van der Zwaan ¶¶ 2-3 (July 8, 2021) [Dkt. 158-2] ("van der Zwaan Decl."); Decl. of William W. Taylor, III ¶ 8 (July 20, 2021) [Dkt. 160-1] ("Taylor Decl.").
[2] van der Zwaan Decl. ¶¶ 4-5; Taylor Decl. ¶ 8.
[3] van der Zwaan Decl. ¶¶ 4-5; Taylor Decl. ¶ 8.


attempted to contact Plaintiffs on other occasions through Plaintiffs' family members or any other intermediaries, and (3) to provide assurances that Defendants' counsel would engage in no further back-channel outreaches to Plaintiffs circumventing Plaintiffs' counsel.[4]

And neither Defendants nor Mr. Taylor dispute that although Plaintiffs asked Defendants' counsel to provide answers to those questions no fewer than six times, Defendants' counsel refused. All Defendants' counsel would do is (1) state that other than Mr. Taylor's outreach, Defendants' counsel had not "had any [actual] contact with Plaintiffs through anyone other than their counsel"—without addressing whether they had made any other *attempts* to contact Plaintiffs other than through counsel or whether any agents for Defendants' counsel made any attempts to contact Plaintiffs other than through counsel —and (2) provide forward-looking assurances that Defendants' counsel would not engage in further back-channel outreach to Plaintiffs "in the future."[5]

Defendants' counsel's (and Mr. Taylor's) response to Plaintiffs' counsel's inquiries thus left unanswered many critical questions, including:

(a) How did Mr. Taylor's back-channel outreach to Plaintiffs through Plaintiff Kahn's son-in-law come about? Who authorized it?

(b) Were Mr. Levy and/or Ms. Clattenburg (Defendants' current counsel-of-record) aware of Mr. Taylor's back-channel outreach to Plaintiffs through Plaintiff Khan's son-in-law (before or after that outreach)?

(c) Did Mr. Levy and/or Ms. Clattenburg authorize Mr. Taylor's back-channel outreach to Plaintiffs?

(d) Have Mr. Levy, Ms. Clattenburg, Mr. Taylor, or any of Defendants' other counsel (or their agents) contacted or attempted to contact Plaintiffs on other occasions, whether through Plaintiffs' family members or other intermediaries?

---

[4] Decl. of Thomas A. Clare, P.C. ¶ 3 & Ex. A at 1-2 (July 8, 2021) [Dkt. 158-3].
[5] *Id.* ¶ 14 & Ex. L (Email from J. Levy to J. Oliveri (July 6, 2021)).

2

These (and other) questions need answers, and because Defendants' counsel would not provide them (including because they baselessly assert that the answers to those questions about violations of D.C. Rules of Professional Conduct are privileged (as explained below, they are not)), Plaintiffs had no choice but to file their Motion for an Order to Show Cause.[6]

## ARGUMENT

### I. Defendants' and Mr. Taylor's Oppositions Do Not Answer the Key Questions or Deny the Key Facts Warranting an Order to Show Cause.

Defendants' and Mr. Taylor's Oppositions to Plaintiffs' Motion for an Order to Show Cause *still* do not provide answers to the basic questions that Plaintiffs' counsel have asked them regarding their improper outreach to Plaintiff Khan through his son-in-law.

**Mr. Taylor's Declaration** is notable for what it omits. Although Mr. Taylor states in his Declaration that he promised, on a going-forward basis, that he "would make no further contacts with persons associated with the plaintiffs,"[7] and states (unlike Mr. Levy and Ms. Clattenburg) that other than his outreach to Plaintiff Khan's son-in-law, he "ha[s] had no contacts with anyone associated with plaintiffs and ha[s] not attempted to do so,"[8] his Declaration leaves many questions unanswered regarding the circumstances of his outreach to Plaintiffs through Plaintiff Khan's son-in-law. In his Declaration, Mr. Taylor *does not deny* discussing his outreach with Defendants' current counsel-of-record (Mr. Levy and Ms. Clattenburg); he *does not deny* coordinating that outreach with Defendants' current counsel-of-record; and although he self-servingly states that he "fully expected that Mr. Van der Zwaan would advise counsel for plaintiffs of [their]

---

[6] Contrary to Defendants' counsel's accusations, Plaintiffs did not rush to seek sanctions against them. Not only did Plaintiffs go to great lengths to avoid needing to bring their instant motion, but Plaintiffs have merely moved for an *Order to Show Cause* why Defendants' counsel should not be sanctioned in light of their clear and unexplained violations of D.C. Rules of Professional Conduct 4.2 and 8.4 and this Court's Local Civil Rule 83.15.
[7] Taylor Decl. ¶ 14.
[8] *Id.* ¶ 15.

3

conversation,"[9] he ***does not deny*** asking Mr. van der Zwaan to convey his message directly to his father-in-law, Plaintiff Khan, and ***does not suggest*** that he advised Mr. van der Zwaan to take his message to Plaintiffs' counsel.  In fact, Mr. Taylor's statement that he "understood that there had been discussions about a resolution of the case between counsel"[10] suggests that, immediately before his outreach to Plaintiffs through Plaintiff Khan's son-in-law, he likely spoke with Defendants' counsel-of-record, including about that outreach.  Considering that Mr. Taylor states that he was aware that counsel for Defendants and Plaintiffs were already in "discussions about a resolution," Mr. Taylor also ***fails to explain*** what possible reason he may have had for suggesting Mr. van der Zwaan pass along a message about that resolution to Plaintiff Khan other than to attempt to bypass counsel.  Moreover, although Mr. Taylor (self-servingly) states that he "did not intend to violate Rule of Professional Conduct 4.2,"[11] he admits that at the time he reached out to Plaintiffs through Plaintiff Khan's son-in-law, he "continue[d] to have an attorney client relationship with the defendants" and states that as part of that relationship "Defendants [] look to him for legal advice" (without denying that he provides legal advice to Defendants about this case)—thus undermining his assertion in his Opposition that Rule 4.2 "does not apply" to him here.[12]  *See* D.C. Rule of Prof. Conduct 4.2 (applicable where, as here, "[d]uring the course of representing a client," an attorney "communicate[s] or cause[s] another to communicate about the subject of the representation with a person known to be represented by another lawyer in the matter").  Indeed, Defendants' meritless claim that any conversation between Mr. Taylor and Defendants' counsel would be privileged further undermines Mr. Taylor's assertion.

---

[9] *Id.* ¶ 10.
[10] *Id.* ¶ 6.
[11] *Id.* ¶ 9.
[12] Taylor Opp'n to Mot. for an Order to Show Cause at 2 (July 22, 2021) [Dkt. 160].

4

**Defendants' (and Their Counsel-of-Record's) Opposition** (neither Mr. Levy nor Ms. Clattenburg provided a Declaration to support the factual assertions they make in their Opposition—which is itself highly noteworthy) is likewise notable for what it omits. Although Defendants' counsel repeat their previous forward-looking statements that "Defendants' counsel will have no contacts with Plaintiffs other than through counsel *in the future*," and that "Defendants' counsel have not had any contact with Plaintiffs [*i.e.*, actual, successful contact] other than through their counsel and are not aware of contact with Plaintiffs [*i.e.*, actual, successful contact] other than through counsel," Defendants' counsel ***did not deny*** being aware of Mr. Taylor's outreach to Plaintiff Khan through his son-in-law, ***did not deny*** authorizing that outreach, ***did not deny*** asking (*i.e.*, causing) Mr. Taylor to engage in that outreach, and ***did not deny*** attempting to contact (or cause Mr. Taylor or anyone else to contact) Plaintiffs through persons other than Plaintiffs' counsel.[13]

Simply put, Defendants' counsel and Mr. Taylor *still* have not provided an explanation regarding their outreach to Plaintiffs through Plaintiff Khan's son-in-law that would make their conduct not a violation of D.C. Rules of Professional Conduct 4.2 and 8.4 and this Court's Local Civil Rule 83.15. Thus, an Order to Show Cause is clearly warranted.

**II.   Defendants' Legal Arguments Against an Order to Show Cause Are Meritless.**

None of Defendants' three arguments for why this Court should not enter an Order to Show Cause has merit.

*First*, Defendants' counsel argue that sanctions are not warranted because, according to them, "Plaintiffs have suffered no harm" from their improper outreach to Plaintiffs through Plaintiff Khan's his son-in-law. (Defs.' Opp'n 3-4.) To begin, Defendants misconstrue the relief

---

[13] Emphasis added unless otherwise noted.

5

Plaintiffs seek in their Motion:  Plaintiffs seek an Order to Show Cause, not (yet) the imposition of sanctions.  But, in any event, Defendants are wrong that, even if Plaintiffs were not harmed by Defendants' counsel's violation of Rules 4.2 and 8.4 and this Court's Local Civil Rule 83.15, those violations are not sanctionable.  Courts that have addressed this question have held that ***"a finding of prejudice or harm" is not a "prerequisite for finding a violation of rule 4.2 of the Rules of Professional Conduct."***  *E.g.*, *Spinnell v. Statewide Grievance*, No. 98-cv-579597, 1998 WL 809519, at *4 (Conn. Super. Ct. Nov. 6, 1998).  The reason is simple:  "The general thrust of [Rule 4.2] is to prevent situations in which a represented party *may* be taken advantage of by adverse counsel."  *Dareltech, LLC v. Xiaomi Inc.*, No. 18-cv-8729, 2019 WL 10966202, at *3 (S.D.N.Y. Apr. 11, 2019); *Boggs v. Diguglielmo*, No. 04-cv-5882, 2006 WL 563025, at *9 (E.D. Pa. Mar. 6, 2006), *aff'd*, 264 F. App'x 165 (3d Cir. 2008); *Pinsky v. Statewide Grievance Comm.*, 578 A.2d 1075, 1079 (Conn. 1990) ("The rule is designed to prevent situations in which a represented party *may* be taken advantage of by opposing counsel." (citing ABA/BNA Lawyer's Manual on Professional Conduct (1989) § 71:303)).  The undisputed facts here that Mr. Taylor contacted Plaintiff Khan's son-in-law, told him that "I know you are savvy," told him that settlement would (supposedly) be in Plaintiffs' interests, and asked him to take that message to Plaintiff Khan (*not* Plaintiff Khan's counsel) are exactly the situation that Rule 4.2 is designed to prevent: "a situation[] in which a represented party may be taken advantage of by adverse counsel." *E.g.*, *Dareltech*, 2019 WL 10966202, at *3; *Boggs*, 2006 WL 563025, at *9.  Defendants' counsel's argument that they and Mr. Taylor should get a free pass because they were caught before their back-channel communications to represented parties could cause more substantial harm is directly at odds with the letter and spirit of the rule against communicating with represented parties.  Defendants' counsel directly undermined the integrity of this proceeding.

6

***Second***, Defendants' counsel assert that sanctions are "inappropriate because Plaintiffs have not established—nor can they—that defense counsel acted in bad faith." (Defs.' Opp'n 4-5.) To begin (again), Defendants misconstrue the relief Plaintiffs seek in their Motion: Plaintiffs seek an Order to Show Cause—to make a full factual record on this issue—not (yet) the imposition of sanctions. And Defendants are (again) wrong on the law. None of Defendants' caselaw addresses violations of the Rules of Professional Conduct and sanctions for their violation; rather, Defendants cite caselaw addressing courts' general, inherent authority to sanction attorneys and parties. *That* is the scenario that (Defendants contend) requires a showing of bad faith—but that is *not* the scenario here. And, in any event, Defendants' counsel's knowing and intentional outreach to Plaintiffs through Plaintiff Khan's son-in-law—despite knowing that Plaintiffs are represented by counsel in this case—is not, as Defendants' suggest, a "simple error." (Defs.' Opp'n 4.) It is the very definition of bad faith.

***Third***, Defendants' counsel assert that "Plaintiffs have not asserted any fact that would show that any of Defendants' counsel of record violated any of the D.C. Rules of Professional Conduct." (Defs.' Opp'n 5-7.) That assertion—noticeably made without any Declaration from Defendants' counsel-of-record and, thus, without any competent evidence to support it—simply blinks reality. And, again, Defendants ignore that what Plaintiffs seek here is an Order to Show Cause—to compel Defendants to answer the questions they have conspicuously refused to answer about their back-channel outreach to Plaintiffs through Plaintiff Khan's son-in-law.[14] Based on the record already developed on this issue (and Defendants' counsel's stark refusal to even deny incriminating facts), there is a near certainty that a completely developed record will confirm that

---

[14] Defendants' counsel's position would also lead to a perverse situation in which they would be rewarded for refusing to provide basic facts about their improper outreach to Plaintiffs.

7

Defendants' counsel violated D.C. Rules of Professional Conduct 4.2 and 8.4 and this Court's Local Civil Rule 83.15.

**III.     Defendants' Counsel's Attempt to Invoke Privilege to Shield Their Misconduct Fails.**

*Finally*, Defendants' counsel are simply wrong that information about their back-channel outreach to Plaintiffs through Plaintiff Khan's son-in-law is protected from disclosure by the attorney-client privilege or work-product doctrine.

As an initial matter, it is axiomatic that not all communications exchanged between attorney and client or among attorneys are privileged/protected from disclosure. To be privileged, a communication must be a "confidential communication[]" between attorney and client "made for the purpose of securing [or providing] legal advice or services," *Tax Analysts v. I.R.S.*, 117 F.3d 607, 618 (D.C. Cir. 1997), and to be work-product-protected, a document must be "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3); *Elkins v. Dist. of Columbia*, 250 F.R.D. 20, 26 (D.D.C. 2008) (citing *EEOC v. Lutheran Social Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999)). The proponent of the privilege or protection bears the "burden of demonstrating facts sufficient to establish [the] privilege's applicability." *E.g.*, *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750 (D.C. Cir. 2006).

Here, Defendants' counsel offer no explanation as to how information about their improper back-channel outreach to Plaintiffs could possibly be attorney-client-privileged or work-product-protected—and they certainly offer no evidence to satisfy their burden of proving that. Because they cannot. That information is just not privileged or protected.

Moreover, even if information about Defendants' counsel's improper back-channel outreach to Plaintiffs *could* be attorney-client-privileged or work-product-protected (and it cannot be), the crime-fraud exception would apply with full force to vitiate that privilege/protection. *See, e.g.*, *NXIVM Corp. v. O'Hara,* 241 F.R.D. 109, 135 (N.D.N.Y. 2007) (explaining that "the

8

crime/fraud exception is not relegated solely to crimes, criminal fraud, or common law fraud" and that "[a party's attorney] should have known that an attorney cannot have any *ex parte* contact with an adversary who is represented by counsel," and holding that "[a]ny improper contact of this nature or naked disregard of" Rules of Professional Conduct are subject to "the crime/fraud exception"); *Zimmerman v. Wells Fargo Advisors, LLC*, No. 15-cv-14311, 2016 WL 11601249, at *5 (E.D. Mich. Feb. 8, 2016) (collecting cases).[15]  As such, Defendants' counsel's attempt to use the attorney-client privilege and work-product doctrine to shield their own misconduct fails.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order to Show Cause why Defendants' counsel should not be sanctioned (and, if appropriate, referred to the Committee on Grievances), to compel Defendants' counsel to provide complete information about their back-channel outreach to Plaintiffs and any similar outreach that they have engaged in, authorized, or are aware of, and to issue sanctions if appropriate.

---

[15] *See also, e.g.*, *Anderson v. Hale*, 202 F.R.D. 548, 558 (N.D. Ill. 2001) ("[B]ecause we agree that Defendants' counsel engaged in unethical conduct [relating to taped conversations], any work-product protection that otherwise may have existed is vitiated and Defendants' tapes must be disclosed to Plaintiff."); *Rambus, Inc. v. Infineon Tech. AG*, 220 F.R.D. 264, 283 (E.D. Va. 2004) (holding that communication and work-product used in furtherance of the spoilation of evidence fell within the crime/fraud exception even though it is not a crime, fraud, or tort but rather was not advancing the observance of the law and counseling misconduct).

9

Dated:  July 28, 2021                                Respectfully submitted,

     */s/ Thomas A. Clare, P.C.*
Thomas A. Clare, P.C. (DC Bar No. 461964)
Elizabeth M. Locke, P.C. (DC Bar No. 976552)
Joseph R. Oliveri (DC Bar No. 994029)
Andrew C. Phillips (DC Bar No. 998353)
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Tel: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com
joe@clarelocke.com
andy@clarelocke.com

*Counsel for Plaintiffs Mikhail Fridman,
Petr Aven, and German Khan*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Reply in Support of Plaintiffs' Motion for an Order to Show Cause Why Defendants' Counsel Should Not Be Sanctioned for Their Back-Channel Outreach to Plaintiffs Despite Knowing Plaintiffs Are Represented in This Case was filed electronically with the Clerk of Court on July 28, 2021, using the CM/ECF system, which will send notification of such filing to all counsel of record.

I further certify that on July 28, 2021 a true and correct copy of the foregoing Reply was served on William (Bill) W. Taylor, III, through his counsel, William H. Jeffress, Jr., via electronic mail and Federal Express overnight, postage pre-paid, to the following address:

William H. Jeffress, Jr. (D.C. Bar No. 041152)
BAKER BOTTS LLP
700 K Street, NW
Washington, DC 20001
(202) 639-7751
william.jeffress@bakerbotts.com

                                         */s/ Thomas A. Clare, P.C.*
                                         Thomas A. Clare, P.C.