<pre>
 1                    BEFORE THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF COLUMBIA
 2

 3   MIKHAIL FRIDMAN, et al.,         .
                                      .  Case Number 17-cv-2041
 4            Plaintiffs,             .
                                      .
 5        vs.                         .
                                      .  Washington, D.C.
 6   BEAN LLC, et al.,                .  September 23, 2021
                                      .  3:42 p.m.
 7            Defendants.             .
     - - - - - - - - - - - - - - - -

 8

 9                    TRANSCRIPT OF STATUS CONFERENCE
                 BEFORE THE HONORABLE RICHARD J. LEON
10                   UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Plaintiffs:        THOMAS CLARE, ESQ.
                                JOSEPH OLIVERI, ESQ.
13                              Clare Locke LLP
                                10 Prince Street
14                              Alexandria, Virginia 22314

15   For the Defendants:        JOSHUA LEVY, ESQ.
                                EDWARD A. SHARP, ESQ.
16                              Levy Firestone Muse LLP
                                1701 K Street Northwest
17                              Suite 350
                                Washington, D.C. 20006
18

19

20   Official Court Reporter:   SARA A. WICK, RPR, CRR
                                United States District Court
21                                for the District of Columbia
                                333 Constitution Avenue Northwest
22                              Room 4704-B
                                Washington, D.C. 20001
23                              202-354-3284

24

     Proceedings recorded by stenotype shorthand.
25   Transcript produced by computer-aided transcription.
</pre>

```
 1                    P R O C E E D I N G S
 2            (Call to order of the court.)
 3            COURTROOM DEPUTY:  Your Honor, this is Civil Case
 4      17-2041, Mikhail Fridman, et al., versus Bean LLC, et al.
 5            Counsel, please come forward to identify yourselves,
 6      starting with the plaintiffs.
 7            MR. CLARE:  Good afternoon, Your Honor.  May it please
 8      the Court.  Tom Clare and Joe Oliveri from the law firm Clare
 9      Locke LLP appearing on behalf of the plaintiffs.
10            THE COURT:  Welcome.
11            MR. LEVY:  Good afternoon, Your Honor.  Joshua Levy
12      and Andrew Sharp at the law firm of Levy Firestone Muse on
13      behalf of the defendants.
14            THE COURT:  Welcome.
15            All right.  Let's start with the plaintiffs.  Why don't you
16      share with the Court your perspective on where things stand
17      right now.
18            MR. CLARE:  Thank you, Your Honor.
19            We requested this status conference jointly with Mr. Levy
20      because the case has, unfortunately, ground to a halt.  Earlier
21      this year, at the end of March, the Court entered a series of
22      minute orders granting various discovery motions that were then
23      pending resolving some, but not all, of the outstanding
24      discovery issues between the parties.  Other issues remain
25      outstanding.
```

1       We were very happy -- we, the plaintiffs, were very happy

2  to see these orders, and we interpreted the Court's orders as a

3  direction from the Court, albeit a silent one, that we should be

4  making productive use of our time and continuing with discovery

5  in order to try to move the case forward towards summary

6  judgment and trial.

7       And we tried over the last seven months, six months to do

8  exactly that.  We've offered deposition dates for the last

9  remaining plaintiff to be deposed.  We've requested deposition

10  dates from the defendants.  And we've also tried to advance

11  third-party discovery.  There's a significant amount of

12  third-party discovery that remains to be going on.

13       The defendants have refused to cooperate with us in trying

14  to move the case forward during this period.  They have gone so

15  far as to represent in other court proceedings that discovery in

16  the court is closed in this case, and that's been a position

17  that is now echoed by third parties when we go and try to move

18  things forward with them.  That's what we hear back, is

19  discovery is closed and, therefore, come back to us when you've

20  got an order moving the case forward and discovery is reopened.

21       And so now we have this issue of how do we move the case

22  forward.  So we have a modest proposal on how to do that, how to

23  break up the logjam and how to move the case forward for

24  trial -- for summary judgment and then ultimately for trial.

25       It's really a two-party proposal.  The first is a purely

1   ministerial item, that -- Your Honor granted one of the minute

2   orders back in March, was our request for Hague discovery, to go

3   through the Hague process at the end of March.  And the Court

4   directed us to submit to the Court a updated letter of request

5   that would then go to the Hague and begin that process.

6       And we filed that with the Court.  We're only awaiting the

7   Court's signature on that.  The Court has already granted us the

8   relief that we've asked for.  So if we can get the Court's

9   signature on that Hague request, that unlocks a whole set of

10  discovery in the U.K. that --

11          THE COURT:  Not a problem.

12          MR. CLARE:  So that is the easy part.

13          THE COURT:  That will be done today.

14          MR. CLARE:  I appreciate it.  We have a hand-up copy,

15  if it would be helpful, of exactly what needs to be signed, but

16  it is also filed on the docket at number 144.

17      So the rest of it relates to the party and third-party

18  discovery here that's not subject to the Hague proceeding.

19      Now, if we go back in time and do a little archeology on

20  the scheduling order in the case, the operative scheduling order

21  was entered in January of 2020, in a whole different world, that

22  had a fact discovery cutoff in January of 2021.

23      There was a joint motion, filed jointly between the

24  parties, in October of 2020 requesting the extension of fact

25  discovery to March, so roughly a six-month extension of fact

1    discovery for a bunch of reasons that were laid out in that

2    joint motion.

3         That joint motion has not been ruled on, and so what we

4    have at the moment is we don't have an operative discovery

5    cutoff or an extension of discovery, because the technical end

6    of discovery under the prior order has now lapsed.

7         And so what we need and would respectfully request from the

8    Court is an order to move things forward to give the parties

9    some direction about moving forward expeditiously with discovery

10   and setting forth a framework that will allow us to both resolve

11   the pending discovery issues, many of which are kind of critical

12   to finishing discovery and taking depositions, and then also

13   allow us to, you know, set a deadline beyond that so we don't

14   have to continue to come back to the Court.

15        THE COURT:  What's your thinking on whether or not

16   setting such a schedule makes sense prior to the Court ruling on

17   whether or not the plaintiffs are public figures?

18        MR. CLARE:  So the defendants' position, obviously, is

19   that all discovery should be stayed until the Court rules on

20   that motion.  We respectfully reject that position, because

21   regardless of the Court's ruling on that issue -- and we

22   vehemently disagree with the conclusion.

23        But regardless of the Court's ruling on that issue, this

24   discovery is going to have to move forward.  It's not a

25   dispositive motion.  It is to determine a standard of fault, and

1    it will, obviously, have an impact about how the Court will look

2    at summary judgment and the standard that will be applied.

3         THE COURT:  Will it affect the discovery process?

4         MR. CLARE:  It will not affect the discovery process.

5    In fact, I would respectfully submit that the discovery process

6    may very well inform the Court's view on that particular

7    question.  When Your Honor decided the motion to dismiss in this

8    case, you correctly said, in our view, that the question of

9    whether the plaintiffs are or are not a limited-purpose public

10   figure should be decided on the basis of a factual record, a

11   fully developed factual record.  And that's what we're trying to

12   do and finish up with discovery.

13        One of the many concerns I would have, first of all, of not

14   making progress, while we can -- there are things that we can

15   definitely do that have nothing to do with the question of

16   public figure, and we should be, in my view, making productive

17   use of our time to do those things.

18        But one of the other things that I am concerned about is if

19   we hold things up and we have a hearing on the motion for

20   partial summary judgment and Your Honor will rule however Your

21   Honor will rule, then we take depositions, including the

22   deposition of the remaining plaintiff, we take depositions of

23   their third parties, someone, either we or they, will find a way

24   to say a-ha, there's now something that's happened in the

25   discovery subsequent to the Court's ruling that requires us to

revisit the question or that we will certainly ask the Court to

do that.

So just in terms of the Court's own resources in deciding

that issue once, we think it makes the most sense to decide it

at the summary judgment stage, after there's a fully developed

factual record, after discovery has been closed.

THE COURT:  Okay.

MR. CLARE:  And so --

THE COURT:  How long do you think you need to complete

discovery?  Assuming for the sake of discussion I were to take

your approach hypothetically, how many months do you think you

need?

MR. CLARE:  This is where I think there's another

divide between the parties.  I will explain our position, and

then I will explain what our response is, I think, to Mr. Levy's

position.

Some of the discovery motions, not all, but some of the

discovery motions that are still pending before Your Honor are

foundational to the discovery that remains to be done.  I will

give you my -- one example.  There are many, but one example is

that we have filed a motion relating to the withholding of

documents based on privilege.  We've produced tens of thousands

of documents.  They have produced relatively few documents.  But

a cursory privilege log that the Court has asked them --

directed them to update multiple times, we still don't have a

resolution on the legitimacy of their claims of privilege, and
there are over -- close to 500 documents that we are seeking
that will be critical to some, but not all, of those
depositions.

And so for example, if Your Honor chooses to rule on that
motion and finds that some subset of those are not privileged
and turns them over to us, that will, obviously, impact the
number and the type and the scope of discovery that we will take
from there.

So our view -- and this is a view that as recently as
January the defendant shared when we were approaching -- it's
changed, but in January, we all were agreed that the Court
should resolve these sets of motions, we should have a ruling on
that set of motions, and then there would be a period of time, a
fixed period of time -- we are now proposing 180 days.  But
after the Court resolves the last of those motions, 180 days
from there.

That will also allow us, we believe, adequate time to go
through the Hague proceedings, over which we have very little
control, but we're hopeful that doing it that way would allow us
to complete the discovery in the Hague and also --

THE COURT:  I'm guessing, but probably the Hague's got
COVID issues, too, in terms of the speed at which they can
process and handle whatever it is that they do over there that's
going to be helpful to the parties.

1          MR. CLARE:  We suspect that that is going to be

2     correct.  We're about to start that process tomorrow when we

3     unlock that.  But I suspect that's right.

4          And given the geographic scope of the parties and the

5     witnesses and there's all sorts of new Fifth Amendment issues

6     that are some of the witnesses in the case, so there are a lot

7     of thorny issues that we're going to have to sort out.

8          And our view, respectfully, is that when the Court rules on

9     these motions in whatever time the Court and whatever way the

10    Court wants to rule on them, the parties will have the guidance.

11    We can then have 180 days to complete discovery.

12         And we can update the Court.  We can have another status

13    conference set at the Court's convenience to say here's where

14    things stand in the Hague, here's what progress we've made in

15    discovery, let's set a cutoff.

16         We are very anxious to get this --

17              THE COURT:  So which motions are those?

18              MR. CLARE:  So there are several of them.  And I have

19    a proposed order which I could hand up which lists them out for

20    you, but I can go kind of briefly through the orders, the

21    motions if you want.

22         The first one is a motion to compel the deposition and

23    documents from a key witness in this case, Mr. Danchenko.  He's

24    a critical witness.  He's a source for the dossier.

25              THE COURT:  What's the docket number?

1          MR. CLARE:  109.

2          THE COURT:  Okay.

3          MR. CLARE:  There's a motion by a nonparty, Ambassador

4    Richard Burt, who is a third party in this case, who has filed a

5    motion to modify his deposition subpoena and seeking a

6    protective order.  That's at 110.  We have not taken a position

7    on that motion, but obviously, to the extent that defendants

8    want to depose Ambassador Burt, I'm sure he would want a

9    resolution of that.

10         The next is defendants' motion to compel plaintiffs'

11   financial documents at 111.  There's another motion related to

12   Mr. Danchenko at 122.  Those two kind of go together.

13         And then finally, there are second motion to compel the

14   privileged assertions, which is docket number 147.

15         And these are all fully briefed, and from the plaintiffs'

16   perspective, Your Honor, we are happy for the Court to rule on

17   them on the papers, or if it would be helpful to the Court for

18   us to come in and provide guidance on any of the motions or

19   argument, we are happy to do that as well, but whatever will

20   give us the most expeditious resolution, because we are very

21   anxious to get the case to trial, recognizing the trouble of

22   COVID and all the things that we have to do.

23         THE COURT:  What will give you the most expeditious

24   resolution is if the Court doesn't have to author an opinion.

25         MR. CLARE:  Well, I would leave that to the Court's

1  discretion on how to rule.  Some of these motions are very, I

2  think, relatively straightforward and easy to rule on, and I

3  leave it to the Court.  But we're happy to have the Court rule

4  on the papers in whatever form you think is appropriate.

5          THE COURT:  I think that's what I will do.  I don't

6  think we will have oral arguments.

7          MR. CLARE:  So that is our respectful proposal.  We

8  have an order, a proposed order, that I've shared with Mr. Levy

9  that memorializes this proposal.  If it would be helpful, I have

10  it in paper and electronic, but that's our position.

11          THE COURT:  Okay.  Thank you.

12      Mr. Levy?

13          MR. LEVY:  Thank you, Your Honor.

14      Your Honor, both parties have come before the Court to ask

15  for its help to resolve this one disagreement on the fact

16  discovery schedule.  The plaintiffs have proposed that discovery

17  continue without end, an indefinite extension.  The defendants

18  oppose that.

19          THE COURT:  I thought he just said he just wants six

20  months.

21          MR. LEVY:  He wants six months after the Court rules

22  on six motions.  So he wants discovery to begin now.  And mind

23  you, mind the Court, the parties have both engaged in 16 months

24  of discovery already.  And the plaintiffs want the Court to

25  resume discovery right now and then rule on the six motions, and

1    then once those rulings occur, whenever they occur, tack on an

2    additional six months, which by the way is two months more than

3    they asked for in their papers.

4         THE COURT:  No, but if I understood him correctly, and

5    he can correct me if I misunderstood him, he wants me to rule on

6    the motions first and then set the schedule.

7         MR. LEVY:  Meaning discovery would not begin until the

8    rulings occur?  I don't believe that was clear in his papers,

9    and I don't believe that's what the proposed order says.

10        THE COURT:  Well, let's make it simple.  That's how

11   it's going to go down if it goes down at all.

12        MR. LEVY:  Okay.  Well, we would appreciate a --

13        THE COURT:  If I don't have to author an opinion, it

14   will be sooner rather than later, because I'm authoring lots of

15   opinions these days.

16        MR. LEVY:  Understood, Your Honor.

17        The defendants would like a definitive period of discovery.

18   At some point, this needs to end, and we need certainty.  Our

19   clients are small businesspeople in the District.  They have

20   limited means.  They've been through 16 months of discovery

21   already.  They've worked in good faith.  Any delays in this case

22   are not their own.  And we would like certainty.

23        We have asked for two proposals that the plaintiffs have

24   rejected.  One, as Your Honor alluded to, is to rule first on

25   our motion for partial summary judgment on the question of

1    whether the plaintiffs are public figures, and --

2           THE COURT:  He makes a pretty good argument along the

3    lines of I should wait to see what the discovery yields before

4    reaching a final conclusion on that issue.

5           MR. LEVY:  We respectfully disagree with the

6    plaintiffs' position.  We would like the Court to look at the

7    D.C. Court of Appeals ruling where the issue of public figures,

8    whether the plaintiffs are public figures for the limited

9    purpose of the same document that's at issue here.  CIR 112, the

10   same memo, was actually litigated in the D.C. Superior Court.

11   The D.C. Superior Court and the D.C. Court of Appeals found that

12   the plaintiffs are public figures.

13       And so under the Full Faith and Credit Act, the federal

14   court should adopt the finding, the holding of the D.C. Court of

15   Appeals and the D.C. Superior Court.  And then no discovery in

16   this case need be taken.

17       Both parties have told the Court in their papers that they

18   otherwise would intend to take discovery and whether the

19   plaintiffs are public figures.  If the Court were to grant our

20   motion for partial summary judgment, that part of the discovery

21   would not be necessary anymore, period.

22       And so we have asked the Court to begin discovery after

23   that one ruling and then extend that -- then resume that period

24   of discovery for 30 days in our paper.  However, we have sent a

25   proposed order of our own to Mr. Clare today, which we can

1    provide a copy to the Court, and as a compromise, in an effort

2    to try to work this out, we have extended it to a 120-day

3    period.  And we can begin that now, or we can begin it after the

4    Court rules on the motion for partial summary judgment.  All we

5    ask the Court for is a finite period of discovery and a brief

6    one, not one without end.

7         THE COURT:  What's your impression as to the extent to

8    which the issue of whether or not they're public figures is

9    going to be an intricate or involved part of discovery?

10        MR. LEVY:  If the Court denies the motion for partial

11   summary judgment, we have already taken discovery on that issue,

12   and we will continue to do so.  It consumed several hours of the

13   depositions of the two plaintiffs in this case.  We intend to

14   depose the third plaintiff.  And I anticipate that if there's no

15   ruling on that motion or an adverse ruling from a denial of that

16   motion, we would be spending several hours with Mr. Khan asking

17   him questions about his public-figure status.

18        In addition, we have noticed and subpoenaed at least two,

19   if not three different third-party witnesses, and we would be

20   asking questions of them.  We've taken document discovery

21   through third-party subpoenas, and we will continue to do that

22   and pursue that.

23        And plaintiffs, for their part in their opposition to our

24   motion to amend the answer, have also indicated to the Court

25   that the plaintiffs seek to take discovery on the question of

1   whether plaintiffs are public figures.  We don't know what that

2   would be, but they have made that position clear in their

3   papers.

4        And so to obviate the need for all of that discovery, the

5   Court can simply grant that partial motion for summary judgment

6   and obviate the need for it, and then we can have discovery on

7   the rest of the case.

8                THE COURT:  Okay.

9                MR. LEVY:  Thank you.

10               THE COURT:  You're welcome.

11        Mr. Clare?  What's your thinking on whether or not you can

12   hold off on conducting discovery with regard to their public-

13   figure status pending the Court's ruling and just proceed with

14   other discovery?

15               MR. CLARE:  Sure.  We can certainly -- there is plenty

16   of other discovery that can be conducted and we are anxious to

17   begin that have nothing to do with public figure or not public

18   figure.

19        Now, to some extent, as Your Honor is familiar with the

20   standard for whether somebody is a limited-purpose public

21   figure, it's not quite as limited as Mr. Levy made it sound.

22   It's not just a couple of hours with the plaintiff.  One of the

23   inquiries that the Court is going to have to grapple with is

24   what is the controversy here, to define the controversy in the

25   first instance, and then what were the plaintiffs' roles in that

controversy in deciding whether they're a limited-purpose public figure.

So to some extent, the discovery that we are doing about the underlying events define the arguments that both parties will end up making to the Court on what the controversy should be defined as for purposes of the Court's ruling.

So to answer directly, Your Honor, we have plenty of other discovery that we can do that don't really bear on that, and we would like to get started on that, too.

The question of limited-purpose public figure is, obviously, going to be an important one for summary judgment, no doubt.  But the motion is based on, as you heard Mr. Levy describe, a D.C. Superior Court case that applied an entirely different standard than the one that Your Honor will be required to apply, because the District of Columbia's Anti-SLAPP statute, which does not apply here in federal court, was the one that was being applied in D.C. Superior Court.

And in that decision, the Court only made a determination that the defendants had made a prima facie showing of limited-purpose public figure, not having done it.

So we're going to have to delve into together kind of questions of issue preclusion and whether or not it was actually litigated and decided under a different standard that does not and cannot apply here in federal court.  It's sort of independent of the discovery, but it does require, in our view,

1    because of the controversy -- and I believe Your Honor shared

2    this view in the motion to dismiss ruling -- doing so on a fully

3    developed factual record of what is that controversy and what

4    was the plaintiffs' role in that controversy and what was the

5    defendants' role.  Because of course, there is a notion in the

6    doctrine of limited-purpose public figure that if the defendants

7    are the ones that create the controversy, they can't

8    involuntarily, only under certain circumstances, make people a

9    public figure.

10           THE COURT:  So if the Court sets a discovery period

11   schedule that hypothetically would go for somewhere around six

12   months and only ended up ruling on this motion for partial

13   summary judgment about two months into that six months, would

14   that still leave you enough time to do whatever discovery was

15   needed to complete the discovery on the issue of public figure?

16           MR. CLARE:  On the question of limited-purpose public

17   figure, I think the answer to that is yes.  On the broader set

18   of discovery, the key there is going to be the rulings on the

19   discovery motions.

20       Because what I'm concerned about, and the reason why we've

21   structured our proposed order in the way that we have, is -- and

22   I mean this respectfully, but they're running out the clock on

23   us.  If we get rulings late in the discovery period on hundreds

24   of privileged documents that we believe we're entitled to or we

25   get a deposition of critical witnesses like Mr. Danchenko late

in the discovery period or the Hague process takes a lot longer
than we're expecting, then we, as the plaintiffs who are the
ones that have been seeking and we've been diligently trying to
pursue this discovery, we're the ones that are going to be
prejudiced.

And so I'm happy to move in parallel on both the limited-
purpose public figure discovery and the things that don't.  And
Your Honor can decide, as far as I'm concerned, whenever you
want to set a ruling or a hearing on the motion for partial
summary judgment is fine with us.  I actually think that the
discovery is going to largely be the same regardless of how that
comes out.

THE COURT:  All right.  And how about that issue of
when the clock starts running?  Before or after those five
motions are ruled on?

MR. CLARE:  So we would like the clock to start
running now.  We would like the -- because we have -- as
evidenced by the fact that since March we've been asking for
deposition dates and going out to third parties and trying to
move that process along, we have -- in an effort to be
productive during this time period, we've identified the
discovery that we can accomplish that doesn't require those
discovery motions to be ruled on.  We'll start on that right
away.

THE COURT:  Where are most of the people you need to

1    depose located?

2              MR. CLARE:  Some are here in the Washington, D.C.,

3    metropolitan area.  Some are going to be in the Hague

4    proceedings overseas, and many of whom are going to be the

5    principals and the agents of the defendants, which their

6    depositions still need to be taken.  So they are located here.

7              THE COURT:  Where are your clients located?

8              MR. CLARE:  Our clients are located primarily in the

9    U.K. and in Russia.

10             THE COURT:  And how are they going to be deposed?

11             MR. CLARE:  Well, with an ever-evolving set of

12   international COVID protocols, the answer to that question

13   depends kind of on the day and travel restrictions and the like.

14       But we are committed and our clients are committed --

15   there's only one plaintiff that still needs to be deposed, one

16   of the three, and we're committed to doing whatever we need to

17   do to move the case forward.

18             THE COURT:  Which one is that?

19             MR. CLARE:  Mr. Khan, German Khan.

20             THE COURT:  Where does he live or reside principally?

21             MR. CLARE:  I'm not sure of that.  I would not want

22   to -- but he is not in the United States.  He's outside the

23   United States.

24             THE COURT:  The reason why I ask is because to depose

25   someone like that in certain countries requires the approval of

1    their equivalent of the State Department.

2              MR. CLARE:  Right.

3              THE COURT:  And I don't know which country, and you

4    don't -- well, you apparently don't know which country.  But my

5    guess is, and it's just a guess, if he's located in Russia,

6    getting permission to depose him from the equivalent of our

7    State Department might be a very lengthy and difficult process.

8              MR. CLARE:  There's no desire to go through that

9    process.  We will make him available in the U.K. at a minimum,

10   and that's not to say we couldn't also make him available here

11   in the United States.  We have not gone down that road because

12   we offered his deposition date a few months ago, and for the

13   reasons that bring us here today, they did not want to proceed

14   with it.

15       So once we are able to figure out where and when he can be

16   deposed, we will look at the COVID protocols, but we have no

17   desire to do the State Department, any of those things.  We will

18   make him available in a place where he can be deposed.

19             THE COURT:  Okay.  All right.  Anything else?

20             MR. LEVY:  Yes, Your Honor.

21             THE COURT:  Mr. Levy?

22             MR. LEVY:  Your Honor, you can see that the plaintiffs

23   have clarified their position for you and as well their intent.

24   They want to drag defendants through endless discovery.  They

25   want to start the process now, continue it for 180 days after

1    the Court's ruled on six motions, and consume us with

2    depositions and litigation and subpoena within the discovery

3    process that we've already been subjected to.

4        And this delay is of the plaintiffs' own making.  We are

5    not trying to beat the clock.  That the plaintiffs have not done

6    certain key things at the beginning of the discovery process is

7    not the fault of the defendants, and defendants should not be

8    punished because the plaintiffs have been dilatory in

9    prosecuting their own discovery in their own case in federal

10   court.

11       For example, the plaintiffs took all of eight months to

12   notice a deposition of Christopher Steele.  The plaintiffs did

13   not notify the Court with this letter of international

14   assistance until August of 2020.  It took them over 10 months to

15   do that.  And the plaintiffs had told us last fall that they

16   wanted to depose a number of third parties before they deposed

17   the defendants.  That was their strategic choice.  This has

18   nothing to do with COVID.  It has nothing to do with the

19   defendants' conduct.

20       And so now -- and I would add that the plaintiffs did not

21   produce a number of documents.  We had to go to the Court to

22   seek relief.  And that's not the defendants' fault either.

23       The fact that there are motions pending before the Court,

24   that the plaintiffs have not taken swift action at the beginning

25   of the discovery process is not defendants' fault, and

1    defendants should not be required now for another year of

2    discovery or even another six months or eight months of

3    discovery --

4           THE COURT:  How did you come up with a year?  He

5    didn't propose a year.

6           MR. LEVY:  I don't know how long this is going to be,

7    Your Honor, because I don't know how long the Court is going to

8    take to rule on the six motions.  And I know that whatever

9    amount of time that will take, it will be that plus another 180

10   days under the plaintiffs' proposal.

11          THE COURT:  It will not take that long.

12          MR. LEVY:  That's great to hear, on the one hand.  On

13   the other hand, we would say to the Court that we only have

14   about three or four months of discovery left in this case.

15   We've done our jobs.  We've taken remote depositions of two

16   plaintiffs.  We worked very hard to get those depositions taken.

17   We would like to take the deposition of the third plaintiff.  We

18   imagine that will happen in short order.

19          THE COURT:  Well, if you need three or four more

20   months and they need six in total, the delta is only two to

21   three months.  That's not some huge gulf, as far as I can see

22   it.

23          MR. LEVY:  We agree, Your Honor, and that's why our

24   proposed order recommends four months.

25          THE COURT:  Don't worry about the proposed orders,

1   Counsel.

2           MR. LEVY:  Thank you.

3           THE COURT:  I know how to how to do the orders.  Don't

4   you worry about the proposed orders.

5           MR. LEVY:  All right.

6           THE COURT:  Anything else?

7           MR. LEVY:  No, thank you.

8           THE COURT:  All right.  I've been in this business 19

9   years, and I know enough to know that you can't promise too much

10  because of unexpected twists and turns that can come in at any

11  moment in time.  But I will give you -- it's not a promise, but

12  I will give you my sense of where I see this going.

13      Point number 1, I will not be ruling on this in the next

14  week.  Point number 2, I expect to rule on those six motions

15  that Mr. Clare is seeking a ruling on in early October.

16      Point number 3, I want to rule on and I will try to rule

17  on, because I think there will be an opinion necessary to be

18  written, on the partial summary judgment motion by the end of

19  the year.

20      But if I rule on the six motions that Mr. Clare is seeking

21  assistance on in the first few weeks of October, then I will be

22  in a position to set the schedule for a six-month period, 180

23  days, and rule in the first 60 days of that 180 days on the

24  partial summary judgment.

25      If I rule in favor of the plaintiff, then there's still

1    plenty of time for them to do whatever they need to do.  If I

2    rule in favor of the defendant, there's still plenty of time to

3    do what needs to be done in the 180-day period.

4         When we get to the end of that 180-day period, there are

5    going to be motions for summary judgment, I'm sure, probably

6    cross-motions for summary judgment filed by the parties.  Okay?

7    And it will take a while for those to get not only written but,

8    of course, to be -- there will have to be oral argument on

9    those, because that's an extensive amount of information.  It

10   will be helpful to have the advocates lay out their position on

11   that.

12        So that would put us -- six months from October is April

13   roughly.  So some time next summer, there will be summary

14   judgment motions that will be filed, and after they're filed, we

15   will set an oral argument some time in probably June or July or

16   something like that, and the Court will have to rule on that.

17   And depending upon how the Court rules, there may or may not be

18   a trial.

19        So it's not a year, Mr. Levy.  Relax.  It's not going to be

20   a year.  That, I will promise you.

21             MR. LEVY:  I appreciate that, Your Honor.

22             THE COURT:  All right.  Anything else there,

23   Mr. Clare?

24             MR. CLARE:  No, Your Honor.  Thank you for your time

25   today.

1          THE COURT:  Anything else, Mr. Levy?

2          MR. LEVY:  No, thank you, Your Honor.

3          THE COURT:  Have a nice day, Counsel.

4     (Proceedings adjourned at 4:14 p.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER

I, Sara A. Wick, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Sara A. Wick                    November 22, 2021

SIGNATURE OF COURT REPORTER        DATE